## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DR. LEONARD E. SALTZMAN, KENT EUBANK, THOMAS RIVA, LUBO and MAIRA HADJIPPETKOV, WILLIAM and NANCY EHORN, individually and on behalf of all others similarly situated; | |
| | |
| Plaintiff, | No.: 06 C 4481 |
| | |
| | The Honorable James B. Zagel |
| v. | |
| | |
| PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation, | |
| | |
| Defendants. | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Dr. Leonard E. Saltzman, Kent Eubank, Thomas Riva, Lubo and Maria

Hadjipetkov, and William and Nancy Ehorn, individually and on behalf of all others similarly

situated, allege as and for their Class Action Complaint against defendants Pella Corporation and

Pella Windows and Doors, Inc. (collectively "Pella" or "Defendants"), upon personal knowledge

as to themselves and their own acts, and as to all other matters upon information and belief,

based upon, *inter alia*, the investigation made by their attorneys, as follows:

## INTRODUCTION

1.      This is a proposed class action brought by Plaintiffs on behalf of themselves and

other consumers of Pella brand windows and doors (collectively, "Pella windows"), as defined

more fully herein.  Plaintiffs and the proposed class are owners of structures that contain Pella

aluminum-clad windows.  Unknown to Plaintiffs and the Class, Pella aluminum-clad windows

contain a latent defect that allows water to penetrate and leak behind the aluminum cladding, resulting in premature wood rot and other physical damage to both the window and main structure.  Pella's acts and omissions in connection with its sale and delivery of these defective windows violate the consumer protection laws of the states of residence of Plaintiffs and the class, and constitute common law fraud, breach of implied warranty, unjust enrichment and declaratory relief as appropriate.

## PARTIES

2.      *Dr. Leonard E. Saltzman.*  Plaintiff Dr. Leonard E. Saltzman is a natural person and citizen of Illinois.

3.      *Kent Eubank.*  Plaintiff Kent Eubank is a natural person and citizen of Iowa.

4.      *Thomas Riva.*  Plaintiff Thomas Riva is a natural person and citizen of Florida.

5.      *Lubo and Maria Hadjipetkov.*  Plaintiffs Lubo and Maria Hadjipetkov are natural persons and citizens of New Jersey.

6.      *William and Nancy Ehorn.*  Plaintiffs William and Nancy Ehornare natural persons and citizens of California.

7.      *Pella Corporation.*  Defendant Pella Corporation is a corporation organized under the laws of Iowa with its principal place of business in Pella, Iowa.

8.      *Pella Windows and Doors, Inc.*  Defendant Pella Windows and Doors, Inc., is a Delaware corporation with its principal place of business in Pella, Iowa.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value

of $5,000,000, exclusive of interest and costs, and is a class action in which members of the putative plaintiff class are citizens of States different from Defendants.

10.     Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391. Defendants regularly transact and solicit business in this District.

## OVERVIEW

11.     This case concerns Pella's failure to disclose to purchasers of its aluminum clad windows and doors (collectively, "Pella windows") that there was a substantial risk those windows would develop leaks because of the defect alleged herein, and that (a) the defect might not exhibit itself until after the warranty period expired, and that (b) if the latent defect did not exhibit itself until after the warranty expired, Pella was not committing to repair it.

12.     In essence, Pella knew, prior to sale to Plaintiff and the Class that, for the indefinite future, there was a substantial risk that its aluminum clad windows would leak and would have wood rot.  Nevertheless, Pella failed to disclose that risk and thereby deprived consumers of the opportunity to negotiate additional warranty coverage, negotiate a lower price to reflect the risk or simply avoid the risk altogether by purchasing a different manufacturer's windows.  Thereafter, the undisclosed risk occurred – Plaintiffs' windows (and thousand of others) have leaked – and Plaintiffs and the Class have been damaged in the amount it will cost, or they paid, to repair the condition.

13.     U.S. consumers reasonably expect that their windows will not leak due to defective design and manufacturing processes, and U.S. consumers simply had no expectation that Pella's windows would leak.

14.     Further, consumers reasonably expect that if Pella knew that it had an inherent defect problem with leaks developing:

(a)     that a manufacturer such as Pella would make a disclosure to
        consumers if it determined there was a widespread leakage problem –
        i.e., that Pella would make a disclosure if it determined that the leakage
        risk was no longer insubstantial;

(b)     that a manufacturer such as Pella would repair the latent defect – even
        if the defect did not exhibit itself until after the warranty period expired
        – because the potential causes of the defect are within the control and
        responsibility of the manufacturer (not the consumer).

### PELLA'S CONDUCT WITH RESPECT TO THE WIDESPREAD LEAKAGE PROBLEM AT ISSUE HERE

15.     Prior to Plaintiffs' purchases, if not before, Pella was aware that its windows
contained an inherent defect that permitted leakage.

16.     Pella knew (or but for its reckless indifference would have known) that it was
receiving and was going to continue receive reports of leakage.  Based on its leakage experience,
Pella also knew that even if it diligently investigated its widespread problem, it could take years
to: (a) determine why the problem had developed, (b) conclude what steps should be taken to
solve the problem, and then (c) implement those fixes.

17.     Thus, Pella knew (or but for its reckless indifference would have known) that for
the indefinite future: (a) the risk of leakage was substantial, (b) Pella's customers were unaware
of that substantial risk, and (c) those customers had a reasonable expectation that Pella would
disclose that risk and cure the latent defect, even if the defect (leakage) did not exhibit itself until
after the warranty period had expired.

18.     Despite such knowledge, Pella did not disclose to prospective purchasers that: (a)
there was a substantial risk there windows would manifest the defect (leaks), (b) the defect might
not exhibit itself until after the warranty expired, and that (c) if the latent defect did not exhibit
itself until after the warranty expired, Pella was not committing to repair it.

-4-

19.     Furthermore, when questioned about leakage problems, Pella would claim faulty installation as the culprit, or would deny claims as "out of warranty" without disclosing the defect.

20.     On information and belief, in an attempt to correct the defect, Pella recently changed the way it applies glue sealant to the window's sash line.  While the sealant had previously been manually applied, in or about April 2006, Pella purchased a machine that now applies the glue sealant.

21.     On information and belief, in an attempt to correct the defect, Pella recently changed the sealant applied to the wood behind the aluminum cladding.  The previous wood sealant had failed to protect the wood when exposed to moisture from leaking.

## NAMED PLAINTIFFS' ALLEGATIONS

22.     **Dr. Leonard Saltzman**.       On or about August 31, 1995, Plaintiff purchased several Pella "ProLine" aluminum-clad wood windows for installation at his residence in Lake Forest, Illinois.  The cost of the windows and installation was $29,846.03.

23.     Pella aluminum-clad wood windows, unknown to Plaintiff, were defective in that they allowed water to penetrate the area behind the aluminum cladding, which ultimately caused condensation, wood rot, leaks and other failures.

24.     The characteristics of the window defect (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the windows when they left the factory, and were part of the window by design and manufacture.

25.     In or about May, 2005, Plaintiff discovered water leaks, condensation, wood rot and other damage to the windows and main structure of his home.

26.     Upon discovering the aforesaid damage, Plaintiff contacted Pella and requested repair or replacement of the windows at Pella's expense, which it refused on grounds that the windows were no longer under warranty.  Pella further, as part of its scheme to defraud, attributed the damage to faulty installation.

27.     The following are representative of the defect and damage:



28.     **Kent Eubank.**          Plaintiff built his home in 1992, and had Pella "ProLine" aluminum-clad windows installed in his residence in West Des Moines, Iowa.  The cost of the windows, not including installation of finishing of wood trim, was approximately $20,000.00.

29.     Pella aluminum-clad wood windows, unknown to Plaintiff, were defective in that they allowed water to penetrate the area behind the aluminum cladding, which caused condensation, wood rot, leaks and other failures.

30.     The characteristics of the window defect (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the windows when they left the factory, and were part of the window by design and manufacture.

31.     In 2001, Plaintiff contacted Pella to correct a few problems at Pella's expense, which it refused on the grounds that the windows were no longer under warranty.  Pella did put silicon caulk around the windows as a repair and charged Plaintiff for it.

32.     In September 2006, Plaintiff discovered that several sashes had deteriorated, including one that had deteriorated to the point that the glass had fallen down about an inch behind the aluminum clad of the window.

33.     Upon discovering the aforesaid damage, Plaintiff again contacted Pella and requested repair or replacement of the windows at Pella's expense, which it refused on grounds that the windows were no longer under warranty.

34.     The following are representative of the defect and damage:



35.     **Thomas Riva.**          Plaintiff built his home in 2001, and had Pella "Architect" and "ProLine" aluminum-clad windows installed in his residence in Sarasota, Florida.  The cost of the windows and installation was approximately $20,000.

36.     Pella aluminum-clad wood windows, unknown to Plaintiff, were defective in that they allowed water to penetrate the area behind the aluminum cladding, which caused condensation, wood rot, leaks and other failures.

37.     The characteristics of the window defect (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the windows when they left the factory, and were part of the window by design and manufacture.

38.     In approximately 2004, Plaintiff discovered water leaks, condensation, wood rot and other damage to the windows and main structure of his home.

39.     Upon discovering the aforesaid damage, Plaintiff contacted Pella and requested repair or replacement of the windows at Pella's expense, which it refused and required Plaintiff to pay $75.00 per window to measure and replace.

40.     The following are representative of the defect and damage:

 

41.     **Lubo and Maria Hadjipetkov.**     Plaintiffs added a second story to their home in 2003, and had Pella "Architect" aluminum-clad windows installed in their residence in Montclair, New Jersey.  The cost of the windows and installation was in excess of $20,000.00.

42.     Pella aluminum-clad wood windows, unknown to Plaintiffs, were defective in that they allowed water to penetrate the area behind the aluminum cladding, which caused condensation, wood rot, leaks and other failures.

43.     The characteristics of the window defect (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the windows when they left the factory, and were part of the window by design and manufacture.

44.     In approximately late 2004, Plaintiffs, upon moving back into the house, discovered water leaks, condensation, and other damage to the windows and main structure of his home.

45.     Upon discovering the aforesaid damage, Plaintiff contacted Pella and requested repair or replacement of the windows at Pella's expense, which it refused and told Plaintiffs that the leaks were due to improper installation and improper maintenance.

46.     The following are representative of the defect and damage:



47.     **William and Nancy Ehorn.**  In October 1990, Plaintiffs installed Pella Architect Series windows in their home in Smith River, California.

48.     Pella aluminum-clad wood windows, unknown to Plaintiffs, were defective in that they allowed water to penetrate the area behind the aluminum cladding, which caused condensation, wood rot, leaks and other failures.

49.     The characteristics of the window defect (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the windows when they left the factory, and were part of the window by design and manufacture.

50.     Plaintiffs have water leaks, condensation, wood rot and other damage to the windows and main structure of his home.

51.     Beginning in January 1992, and continuing to the present, Plaintiffs have contacted Pella and requested repair or replacement of the windows at Pella's expense, which it refused and told Plaintiffs that the leaks were due to improper installation and improper maintenance.

52.     The following are representative of the defect and damage:

 

53.     The latent defect described herein is found on Pella's ProLine, Architect Series and Designer Series aluminum-clad windows.  With respect to the defect at issue, these aluminum-clad wood windows share the same design characteristics and manufacturing methods. The design characteristics and manufacturing methods used by Pella to produce aluminum-clad wood windows resulted in the damages caused Plaintiff and the class.

54.     The latent defect at issue here is a necessary cause of the water leaks and resulting wood rot and damage; the presence of water leaks and the resulting wood rot and other damages necessarily implies that the latent defect preceded it.  The presence of the latent defect, however, does not imply that water leaks and the resulting wood rot and damage will occur.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs bring all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below.

**A.     Class Definition(s)**

56.     The (b)(2) Injunctive Relief Class consists of:

All persons who own a structure with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "Class").[1]

57.     The (b)(3) State Sub-Classes consist of:

**Illinois**: All persons who own a structure, on property located in Illinois, with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "Illinois Sub-Class");

**Iowa**:  All persons who own a structure, on property located in Iowa, with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "Iowa Sub-Class"); and

[1]     Plaintiff reserves the right to amend the class definition based upon future investigation, discovery and the proofs at trial.

**Florida**:  All persons who own a structure, on property located in Florida, with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "Florida Sub-Class").

**New Jersey**:  All persons who own a structure, on property located in New Jersey, with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "New Jersey Sub-Class").

**California**:  All persons who own a structure, on property located in California, with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "California Sub-Class").

**Texas**:  All persons who own a structure, on property located in Texas, with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "Texas Sub-Class").

**New York**:  All persons who own a structure, on property located in New York, with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "New York Sub-Class").

**Ohio**:  All persons who own a structure, on property located in Ohio, with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "Ohio Sub-Class").

**Michigan**:  All persons who own a structure, on property located in Michigan, with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "Michigan Sub-Class").

**North Carolina**:  All persons who own a structure, on property located in North Carolina, with Pella ProLine, Architect Series and Designer Series aluminum-clad windows and doors (the "North Carolina Sub-Class").

Excluded from the Class(es) are:  Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons immediate families, and the presiding judge(s) in this case and his, her or their immediate family.

B.      **Numerosity**

58.     At this time, Plaintiffs do not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class members are so numerous that joinder of all members is impracticable.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery.

C.      **Commonality**

59.     There are questions of law or fact common to the class, including at least the following:

(a)     Whether Pella aluminum clad windows and doors contain the latent defect alleged herein;

(b)     Whether the complained of defect caused the damages of Plaintiffs and other members of the Class;

(c)     Whether the latent defect is a necessary cause of the water leaks and resulting wood rot and damage;

(d)     Whether Defendants had actual or imputed knowledge of the defect but failed to disclose it to Plaintiffs or the Class;

(e)     Whether Defendants have a pattern and practice of attributing damages claimed by Plaintiffs and the Class to "faulty installation" or improper maintenance, and not due to the complained of defect;

(f)     Whether Defendants have a pattern and practice of denying Plaintiffs' and the Class' claims as 'out of warranty', and not due to the complained of defect;

(g)     Whether Defendants have acted or refused to act on grounds generally applicable to the Class;

(h)     Whether Defendants' conduct constitutes consumer fraud and/or common law fraud;

(i)     Whether Defendants were unjustly enriched by their conduct;

(j)     Whether Plaintiffs and other members of the Class have been damaged, and if so, what is the proper measure of such damages?

**D.    Typicality**

60.    Plaintiff has the same interests in this matter as all other members of the Class, and his claims are typical of all members of the class.

**E.    Adequacy**

61.    Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiffs will fairly and adequately represent the interests of the Class members and do not have interests adverse to the Class.

**F.    The Prerequisites of Rule 23(b)(2) are Satisfied**

62.    The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

63.    The prosecution of separate actions by members of the class would create a risk of establishing incompatible standards of conduct for Defendants.  For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal.  Individual actions may, as a practical matter, be dispositive of the interest of Class members, who would not be parties to those actions.

64.    Defendants' actions are generally applicable to the Class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the class as a whole.

65.     Defendants' systemic policy and practices make declaratory relief with respect to the class as a whole appropriate.

**G.     The Prerequisites of Rule 23(b)(3) are Satisfied**

66.     This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.  This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the class defined above.

<u>**FRAUDULENT CONCEALMENT**</u>

67.     Throughout the Class period, Defendants affirmatively concealed from Plaintiffs and Class the defect described herein.

68.     Defendants had a duty to inform Plaintiffs and Class of the defect described herein, which it knew of or should have known.  Notwithstanding their duty, Defendants never disclosed the defects to Plaintiffs or the Class; rather, Defendants attributed resulting damage to faulty installation, maintenance or other third-party conduct.

69.     Despite exercising reasonable diligence, Plaintiffs and Class could not have discovered the defects or Defendants' scheme to avoid disclosure of the defect.  Thus, running of the statute of limitations has been tolled with respect to any claims that Plaintiffs or the Class

have brought or could have brought as a result of the unlawful and fraudulent course of conduct

described herein.

70.     Defendants are further estopped from asserting any statute of limitations defense,

contractual or otherwise, to the claims alleged herein by virtue of its acts of fraudulent

concealment.

## CAUSES OF ACTION

### COUNT I

### (Violation of Illinois Consumer Fraud and Deceptive Business Practices Act and Substantially Similar Laws of Certain Other States)

71.     Plaintiffs repeat and reallege the allegations of the prior paragraphs as if fully

stated herein.

72.     At all times relevant hereto, there was in full force and effect the Illinois

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. and substantially

similar state consumer protection statutes (the "Act"). Similar statutes, identical in their material

respects, are in effect in many jurisdictions within the United States.[2]

73.     Section 2 of the Act provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or
> practices, including but not limited to the use of or employment of
> any deceptive, fraud, false pretense, false promise,
> misrepresentation or the concealment, suppression or omission of
> any material fact, with intent that others rely upon the concealment,
> suppression or omission of such material fact, or the use of
> employment of any practice described in Section 2 of the "Uniform
> Deceptive Trade Practices Act," approved August 5, 1965, in the

---

[2]     The consumer fraud claims of Plaintiff and resident absent class members is brought under the Illinois
Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.  The consumer fraud claims of
nonresident absent class members are brought under the consumer protection statute(s) of their respective states of
residence.  See e.g., Cal. Bus. & Prof. Code § 17200 et seq., and Cal. Bus. & Prof. Code § 17500 et seq.
(California); Fla. Stat. Ann. § 501.201 et seq. (Florida); Mich. Stat. Ann. § 19.418(1) et seq. (Michigan); N.J. Rev.
Stat. § 56:8-1 et seq., N.J. Rev. Stat. § 56:12-1 et seq. (New Jersey); N.Y. Gen. Bus. Law. § 349 et seq. (New York);
N.C. Gen. Stat. § 75-1 et seq. (North Carolina).

> conduct of any trade or commerce are hereby declared unlawful
> whether any person has in fact been misled, deceived or damaged
> thereby,  In construing this section consideration shall be given to
> the interpretations of the Federal Trade Commission and the
> federal courts relating to Section 5(a) of the Federal Trade
> Commission Act.

815 ILCS 505/2 (footnotes omitted).

74.     Plaintiffs and other Class members are consumers within the meaning of

Consumer Fraud Acts given that Defendants' business activities involve trade or commerce, are

addressed to the market generally and otherwise implicate consumer protection concerns.

75.     Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, renders unlawful

the "use or employment of any deception [including the] concealment, suppression or omission

of any material fact, with intent that others rely upon the concealment, suppression or omission

of such material fact ... in the conduct of any trade or commerce…"  Illinois case law holds that

reliance on the deception is not an element of a consumer fraud claim.

76.     Except as noted below, the consumer fraud statutes and/or interpretative case law

of Illinois' sister states have also either: (a) expressly prohibited omissions of material fact,

without regard for reliance on the deception, or (b) have not addressed those issues.

77.     Once the defect's risk became significant, consumers (such as Plaintiffs) were

entitled to disclosure of that fact because:

(a)     A significant risk of leakage would be a material fact in a
consumer's decision-making process, and

(b)     Without Pella's disclosure, consumers would not know that there is
any risk of leakage.

78.     Moreover, because Pella's warranties are limited in duration, consumers were

further entitled to know that leakage might not exhibit itself until after their warranties expired,

and if that occurred, Pella was not committing to repair the condition.  All of these facts were material to consumers' (such as Plaintiffs') purchase decisions.

79.     Specifically, at all times relevant, Pella continuously and consistently failed to disclose to consumers (such as Plaintiffs):

      (a)     there was a substantial risk of leakage or wood rot;

      (b)     that leakage or wood rot may not exhibit itself until after the warranty has expired; and

      (c)     that if leakage or wood rot exhibited itself after the warranty period expired Pella was not committing to repair the condition.

Pella failed to make these disclosures despite opportunities through its employees, sales literature, advertising and its website.

80.     Pella intended that Plaintiffs and the Class would rely on the deception by purchasing its windows, unaware of the material facts described above.  This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

81.     Plaintiffs and the Class have been damaged by Pella's deception because: (a) they purchased Pella windows that developed the undisclosed risk/defect – leakage and wood rot, (b) in many instances the condition exhibited itself after Plaintiffs' warranty period expired, and (c) Pella refused to pay to repair the condition because the warranty had expired.

82.     If Pella had disclosed the above facts to Plaintiffs, they could have (and would have) prevented economic injury by either negotiating additional warranty coverage, negotiating a lower price to reflect risk or simply avoiding the risk altogether by purchasing a different manufacturer's windows.

83.     Defendants have committed deceptive acts or practices within the meaning of the Act by engaging in the acts and practices alleged herein, including, but not limited to, its failure to disclose the material defects.

84.     Defendants' conduct alleged herein is furthermore unfair insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

85.     As a direct and proximate result of the unfair acts or practices of Defendants alleged herein, Plaintiffs and other members of the Class were damaged.

**WHEREFORE,** Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Class defined herein;

B.     Designating Plaintiffs as representatives of the Class and their counsel as Class counsel;

C.     Entering judgment in favor or Plaintiffs and the Class and against Defendants;

D.     Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.     Compelling Defendants to establish a program to inspect, replace and install defective Pella windows;

F.     Compelling Defendants to establish a program to reimburse its warranty claims previously denied or paid in part, reimburse Pella customers who have had to pay to repair and/or replace defective Pella windows; and

G.     Granting such further relief as the Court deems just

## COUNT II
### (Violation of Similar Uniform Deceptive Trade Practices Acts)

86.     Plaintiffs repeat and reallege the allegations of the prior paragraphs as if fully stated herein.

87.     At all times relevant hereto, there was in full force and effect the Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1.  Similar statutes, identical in their material respects, are in effect in many jurisdictions within the United States.[3]

88.     The UDTPA prohibits, *inter alia*, representing that goods have characteristics, ingredients, uses, or benefits that they do not have.  815 ILCS 510/2(5).

89.     Specifically, at all times relevant, Pella continuously and consistently represented to the marketplace that:

        (a)     Pella windows were durable;

        (b)     Pella windows were manufactured to high quality standards;

        (c)     Pella windows were maintenance free; and

        (d)     Pella would stand behind its products.

90.     Defendants have committed deceptive acts or practices within the meaning of UDTPA by engaging in the acts and practices alleged herein, including, but not limited to, its failure to disclose the material defects.

91.     As a result of Defendants' violation of UDTPA, Plaintiffs and other members of the Class sustained loss or damages and are entitled to equitable relief.

---

[3] *See e.g.*, Fla. Stat. Ann. § 501.204(1) *et seq.* (Florida); Iowa Code § 714.16.2(a) *et seq.* (Iowa); N.J. Rev. Stat. § 56:8-2 *et seq.;* (New Jersey); Colo. Rev. Stat. § 6-1-101 *et seq.* (Colorado); Del. Code Ann. Tit. 6, § 2513 *et seq.* (Delaware); Ga. Code Ann. § 10-1-393(a) *et seq.* (Georgia); Me. Rev. Stat. Ann. Tit. 5, § 207 *et seq.* (Maine); Minn. Stat. § 325D.44 *et seq.* (Minnesota); N.M. Stat. Ann. § 57-12-3 *et seq.* (New Mexico); Ohio Rev. Code Ann. § 1345.02(a) *et seq.* (Ohio); Or. Rev. Stat. § 646.605 *et seq.* (Oregon).

92.     Plaintiffs seek relief including compelling Defendants to establish a program to inspect, replace and install defective Pella windows; and compelling Defendants to establish a program to reimburse its warranty claims previously denied or paid in part, reimburse Pella customers who have had to pay to repair and/or replace defective Pella windows.

**WHEREFORE,** Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Class defined herein;

B.     Designating Plaintiffs as representatives of the Class and their counsel as Class counsel;

C.     Entering judgment in favor or Plaintiffs and the Class and against Defendants;

D.     Awarding Plaintiffs and Class members their attorneys' fees and allowing costs, including interest thereon;

E.     Compelling Defendants to establish a program to inspect, replace and install defective Pella windows;

F      Compelling Defendants to establish a program to reimburse its warranty claims previously denied or paid in part, reimburse Pella customers who have had to pay to repair and/or replace defective Pella windows; and

G.     Granting such further relief as the Court deems just

## COUNT III
### (Common Law Fraud by Omission)

93.     Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

94.     Pella, through its experience, was in a position of superiority over Plaintiffs and class members with respect to knowledge that: (a) there was a substantial risk that its windows would develop leaks and wood rot, (b) the defect might not exhibit itself until after the warranty period expired, and that (c) Pella was not committing to repair the latent defect if it exhibited itself after the warranty period expired.

95.     In other words, once the risk of the leaks became significant, consumers (such as Plaintiffs) were entitled to disclosure of that fact because:

    (a)     A significant risk of window leakage would be a material fact in a consumer's decision-making process; and

    (b)     without Pella's disclosure, consumers would not know that there is any risk of leakage.

96.     Moreover, because Pella's warranties are limited in duration, consumers were further entitled to know that leakage might not exhibit itself until after their warranties expire, and if that occurred, Pella was not committing to repair the condition.  All of these facts were material to consumers' (such as Plaintiffs') purchase decisions.

97.     Specifically, at all times relevant, Pella continuously and consistently failed to disclose to consumers (such as Plaintiffs):

    (a)     there was a substantial risk of leakage or wood rot;

    (b)     that leakage or wood rot may not exhibit itself until after the warranty has expired; and

    (c)     that if leakage or wood rot exhibited itself after the warranty period expired Pella was not committing to repair the condition.

Pella failed to make these disclosures despite opportunities through its employees, sales literature, advertising and its website.

98.     Plaintiffs and the Class reasonably relied on Pella to disclose those material facts. If Pella had disclosed the above facts to Plaintiffs and the Class, they could have (and would have) prevented economic injury by either negotiating additional warranty coverage, negotiating a lower price to reflect the risk or simply avoiding the risk by purchasing a different manufacturer's windows.

99.     Pella failed to disclose those material facts and, as a proximate result, Plaintiffs and the Class have been damaged because: (a) they purchased Pella windows that developed the undisclosed risk – leakage, (b) the condition exhibited itself after Plaintiffs' warranty period expired, and (c) Pella refused to repair the condition because the warranties had expired.

**WHEREFORE,** Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Class defined herein;

B.     Designating Plaintiffs as representatives of the Class and their counsel as Class counsel;

C.     Entering judgment in favor or Plaintiffs and the Class and against Defendants;

D.     Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.     Imposing a constructive trust on amounts wrongfully collected from Plaintiffs and the Class members pending resolution of their claims herein;

F.     Compelling Defendants to establish a program to inspect, replace and install defective Pella windows;

G.      Compelling Defendants to establish a program to reimburse its warranty claims previously denied or paid in part, reimburse Pella customers who have had to pay to repair and/or replace defective Pella windows; and

H.      Granting such further relief as the Court deems just

## COUNT IV
### (Breach of Implied Warranty of Merchantability)

100.    Plaintiffs repeat and reallege the allegations of the prior paragraphs as if fully stated herein.

101.    The Pella windows installed in structures owned by Plaintiffs and the Class were defectively made, having left Defendants' manufacturing facilities with the latent defect.

102.    At all times relevant hereto, there was duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used, and that product be acceptable in trade for the product description.

103.    Notwithstanding the aforementioned duty, at the time of delivery, Pella aluminum-clad windows sold to Plaintiffs and the Class were not merchantable.

104.    As documented in its own business records and elsewhere, Defendants were notified that its aluminum-clad windows were not merchantable with a reasonable time after the latent defect manifested itself to Plaintiffs and the Class.

105.    As a result of the non-merchantability of the Pella aluminum-clad windows described herein, Plaintiffs and other members of the Class sustained a loss or damages.

**WHEREFORE,** Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Class defined herein;

B.      Designating Plaintiffs as representatives of the Class and their counsel as Class counsel;

C.      Entering judgment in favor or Plaintiffs and the Class and against Defendants;

D.      Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.      Imposing a constructive trust on amounts wrongfully collected from Plaintiffs and the Class members pending resolution of their claims herein;

F.      Compelling Defendants to establish a program to inspect, replace and install defective Pella windows;

G.      Compelling Defendants to establish a program to reimburse its warranty claims previously denied or paid in part, reimburse Pella customers who have had to pay to repair and/or replace defective Pella windows; and

H.      Granting such further relief as the Court deems just

## COUNT V
### (Unjust Enrichment)

106.    Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

107.    The latent defects were a result of the design of the windows.

108.    The latent defects did not exhibit themselves until after the warranty period had

expired.

109.    Plaintiffs and the Class have conferred benefits on Defendants by purchasing Pella

windows.

110.    Defendants have knowingly and willingly accepted these benefits from Plaintiffs

and the Class.

111.    Under the circumstances, it is inequitable for Defendants to retain these benefits at

the expense of Plaintiffs and the Class.

112.    Defendants have been unjustly enriched at the expense of and detriment of

Plaintiffs and the Class by wrongfully collecting money to which Defendants, in equity, is not

entitled.

113.    Plaintiffs and the Class are entitled to recover from Defendants all amounts

wrongfully collected and improperly retained by Defendants, plus interest thereon.

114.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and

the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement

from Defendants of the benefits conferred by Plaintiffs and the Class.

115.    Plaintiffs and the Class have no adequate remedy at law.

116.    Plaintiffs seek to obtain a pecuniary benefit for the Class in the form of all

reimbursement, restitution and disgorgement from Defendants.  Plaintiffs' counsel are entitled to

recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary

benefit on behalf of the Class, and will seek an award of such fees and expenses at the

appropriate time.

**WHEREFORE,** Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Class defined herein;

B.      Designating Plaintiffs as representatives of the Class and their counsel as Class counsel;

C.      Entering judgment in favor or Plaintiffs and the Class and against Defendants;

D.      Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.      Imposing a constructive trust on amounts wrongfully collected from Plaintiffs and the Class members pending resolution of their claims herein;

F.      Compelling Defendants to establish a program to inspect, replace and install defective Pella windows;

G.      Compelling Defendants to establish a program to reimburse its warranty claims previously denied or paid in part, reimburse Pella customers who have had to pay to repair and/or replace defective Pella windows; and

H.      Granting such further relief as the Court deems just

**COUNT VI**
**(Declaratory Relief Pursuant To 28 U.S.C. § 2201)**

117.    Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

118.    There is an actual controversy between Pella and the Class concerning the validity of the time limitations in the warranty on Pella's windows, and concerning installation and

maintenance defenses to otherwise valid warranty claims.  A copy of Pella's warranty is attached as Exhibit 1.

119.     Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

120.     Pella has wrongfully denied warranty claims as untimely or based on installation and maintenance defenses despite the root cause of leaks and wood rot being the latent defects described herein.

121.     Accordingly, Plaintiffs seek a declaration that the Pella window warranties regarding the 10 year time limitations on manufacturing defects in material or workmanship are void, invalid and not enforceable.

**WHEREFORE,** Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Declaratory Relief Class defined herein;

B.     Designating Plaintiffs as representatives of the Class and their counsel as Class counsel;

C.     Entering judgment in favor or Plaintiffs and the Class and against Defendants;

D.     Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.     Compelling Defendants to establish a program to inspect, replace and install defective Pella windows;

F.      Compelling Defendants to establish a program to reimburse its warranty claims

previously denied or paid in part, reimburse Pella customers who have had to pay to repair and/or

replace defective Pella windows; and

G.      Granting such further relief as the Court deems just

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  November 8, 2006                    Respectfully submitted,

                                            **DR. LEONARD E. SALTZMAN, et al.,**
                                            **Class Plaintiffs,**

                                            By:      s/George K. Lang
                                                    One of Their Attorneys

                                            Paul M. Weiss #6217260
                                            Jonathan B. Piper #6196071
                                            William M. Sweetnam # 6226203
                                            George K. Lang #6211537
                                            **FREED & WEISS LLC**
                                            111 West Washington Street, Suite 1331
                                            Chicago, Illinois  60602
                                            (312) 220-0000
                                            Paul@freedweiss.com
                                            Jon@freedweiss.com
                                            BillS@freedweiss.com
                                            George@freedweiss.com

                                             Bradley M. Lakin
                                             Charles Chapman
                                             Richard J. Burke
                                             **THE LAKIN LAW FIRM, P.C.**
                                             301 Evans Avenue, P.O. Box 27
                                             Wood River, Illinois  62095
                                             Jonathan Shub
                                             **SHELLER LUDWIG & SHELLER**
                                             1528 Walnut Street, 3rd Floor
                                             Philadelphia, PA 19102

                                            **Counsel for Plaintiffs and**
                                            **Proposed Plaintiff Classes**