IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. LEONARD E. SALTZMAN, KENT EUBANK, THOMAS RIVA, LUBO and MAIRA HADJIPPETKOV, WILLIAM and NANCY EHORN, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation,<br><br>      Defendants. | 06 CV 4481<br><br>JUDGE ZAGEL<br>MAGISTRATE JUDGE ASHMAN<br><br>JURY TRIAL DEMANDED<br><br>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT |

## INTRODUCTION

The addition of four named plaintiffs does nothing to strengthen the merits of Plaintiffs' claims. Instead, the Amended Complaint vividly illustrates that this lawsuit is a collection of disparate express warranty claims, dressed up in multiple overreaching theories hoping to yield a nationwide class action. The Amended Complaint illustrates that these claims have no commonality or relationship to each other. Therefore, Defendants Pella Corporation ("Pella"), and Pella Windows and Doors ("PWD") bring this motion for dismissal of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and 23. Because Plaintiffs' claims fail on the pleadings, Plaintiffs' Amended Complaint should be dismissed. If Plaintiffs' claims survive this motion, they are not sustainable as a multi-state or nationwide class action, and

Defendants seek, in the alternative, dismissal of Plaintiffs' multi state or nationwide class allegations, leaving for resolution the question of whether even an Illinois class can be certified.[1]

Plaintiffs' claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and the purportedly "substantially similar laws" of certain other states ("state CFAs") fails because Plaintiffs do not plead the allegations of fraud underlying their state CFA claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. In fact, Plaintiffs completely fail to specifically identify or plead the elements of the "similar" state CFAs. Plaintiffs' claims for common law fraudulent concealment likewise fail on this ground and because Plaintiffs cannot show that Pella was under any special duty to disclose to Plaintiffs, as required by the law of all of the Plaintiffs' states of residence.

Plaintiffs purport to seek "injunctive" relief under the Uniform Deceptive Trade Practices Act ("UDTPA"). Plaintiffs' claim has two fatal flaws. First, Plaintiffs point to no specific, non-puffery representations made by Pella, as required by the UDTPA. Second, Plaintiffs do not seek injunctive relief, as required by the UDTPA, but rather merely couch their request for monetary damages in terms of a request for Court-ordered reimbursement.

Finally, Plaintiffs' claims for breach of implied warranty and unjust enrichment both fail. The majority of the named Plaintiffs' implied warranty claims are barred by the applicable four-year statute of limitations. Further, because Plaintiffs are not in privity with Pella, and seek only property damage, their breach of implied warranty claim fail in certain states. Plaintiffs' unjust enrichment claims fail because the parties' relationship is governed, as Plaintiffs themselves admit, by the Pella Express Warranty. Yet, the Amended Complaint makes no claim based on

---

[1] Given, among other things, the lack of typicality and the voluminous and predominant individual issues of fact, Defendants believe no class at all should ever be certified. If these cases are to proceed at all, it should be as individual warranty claims.

Pella's Express Warranty. Finally, Plaintiffs' request for declaratory relief fails to plead the requisite elements for reformation of the Pella Express Warranty and thus must be dismissed.

Even if some of Plaintiffs' individual claims survive, Plaintiffs' multi-state and *nationwide* class allegations cannot be sustained and should be dismissed. Plaintiffs' attempt to encompass the Consumer Protection, common law fraud, implied warranty, and unjust enrichment laws of ten jurisdictions renders their multi-state class facially unmanageable and their class allegations subject to a motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. PELLA CORPORATION

Pella Corporation ("Pella") is an Iowa corporation with its headquarters and principal place of business in Pella, Iowa. (Am. Compl. at ¶ 3.)[2] Pella does not sell its products directly to homeowners, rather, Pella products are sold through distributors and retailers, nationally.

### II. PLAINTIFFS' ALLEGATIONS AND THEIR PROPOSED CLASSES

The five named Plaintiffs allege that between 1990 and 2003, they purchased Pella "ProLine" or "Architect Series" aluminum-clad wood windows for installation at their residences in Illinois, Iowa, Florida, New Jersey, and California. (*Id.* at ¶¶ 22, 28, 35, 41, 47.) Plaintiffs allege that the windows had an unspecified "defect." Specifically, they alleged that the defect allowed water to penetrate the area behind the aluminum cladding which caused condensation, wood rot, leaks or other failures. (*Id.* at ¶¶ 1, 24, 29, 36, 38, 42, 48.) The Amended Complaint nowhere identifies what or where the alleged defect is, only that the windows allegedly have a propensity to leak. Plaintiffs allege that the unidentified defect was present at the time the

---

[2] Pella Windows and Doors ("PWD") is a Delaware corporation with retail locations in Rockford and Carol Stream, Illinois. (*Id.* at ¶ 4.) PWD sells Pella products in Chicago and surrounding areas. Although the Amended Complaint adds named Plaintiffs from Iowa, Florida, New Jersey, and California, it does not add the corresponding distributors. It is unclear what putative class or subclass of Plaintiffs, if any, bring a claim against PWD.

3

windows left the factory and was part of the window by design and manufacture. (*Id.* at ¶ 24, 30, 37, 43, 49.) Although Plaintiffs' alleged purchases are limited to specific vintages of Pella's "ProLine" and "Architect Series" windows, the Amended Complaint nonetheless alleges that ***all*** aluminum-clad windows share this same alleged "latent defect." Plaintiffs acknowledge that the Pella windows were covered by the Pella Express Warranty, and that the warranty expired for some, but not all, Plaintiffs. (*Id.* at ¶ 26, 31.)

On behalf of themselves and purported multi-state and nationwide classes of all owners of any vintage, style, or brand of Pella aluminum-clad windows, Plaintiffs bring claims for: Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and "substantially similar" state CFAs (Count I); Violation of the Uniform Deceptive Trade Practices Act (Count II); Common Law Fraud by Omission (Count III); Breach of Implied Warranty of Merchantability (Count IV); Unjust Enrichment (Count V); and Declaratory Relief (Count VI).

## ARGUMENT

**I.   PLAINTIFFS' FRAUD-BASED CLAIMS (COUNTS I & III) SHOULD BE DISMISSED FOR FAILURE TO MEET THE PLEADING STANDARDS OF Fed. R. Civ. P. 9(b).**

   **A.   Plaintiffs' Fraud Claims Must Be Pled With Particularity.**

Fed. R. Civ. P. 9(b) mandates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fraudulent concealment is a form of common law fraud that must be pled with particularity. *Hirsch v. Feuer,* 702 N.E. 2d 265, 272 (1 Dist. (Ill.) 1998); *See, e.g., Beauchem v. Rockford Prod. Corp.,* No. 01 C 50134, 2004 WL 432328, at *1 (N.D.Ill. Feb.6, 2004); Fla. R. Civ. P. 1.120(b) (2006); *Steyr Daimler Puch v. A & A Bicycle Mart, Inc.,* 453 So. 2d 1149, 1150 (Fla. 4th DCA 1984); *Schauer v. Mandarin Gems of Cal., Inc.,* 125 Cal. App. 4th 949, 961 (Cal. Ct. App. 2005); *Palko*

4

*v. Palko*, 375 A. 2d 625, 628 (N.J. 1977). Further, claims under state CFAs are also fraud claims that must be pled with particularity under Fed. R. Civ. P. 9(b). *Scott v. Glaxosmithcline Consumer Healthcare, L.P.*, 2006 WL 952032 at *3 (N.D. Ill. April 12, 2006). Thus, the heightened pleading standard embodied in Fed. R. Civ. P. 9(b) applies to both Plaintiffs' common law fraud by omission and state CFA claims.

According to the Seventh Circuit, "this [pleading requirement] means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. (Ill.) 1990). The reason for the heightened pleading requirement in fraud cases is to "force the plaintiff to do more than the usual investigation before filing his Complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

Greater pre-Amended Complaint investigation is warranted in fraud cases because public charges of fraud harm the reputation of a business, because fraud frequently is charged irresponsibly by people who suffer a loss and want to find someone to blame, and because charges of fraud frequently ask courts in effect to rewrite the parties' contract or otherwise disrupt established relationships. *Id.* Requiring Plaintiffs to conduct an in-depth pre-Amended Complaint investigation assures that the charge of fraud is responsible and supported, rather than defamatory and extortionate. *Id.* Rule 9(b) requires heightened pleading of fraud claims in ***all*** civil cases brought in the federal courts, whether or not the applicable state law allows a lower standard of proving fraud. *Id.*

> **B.     Plaintiffs' Illinois Consumer Fraud Act and State CFA Claims (Count I) Fail To Meet the Particularity Standards of 9(b).**

In order to state a claim under the state CFAs, Plaintiffs must plead, with the particularity described above, that Pella engaged in "the concealment, suppression or omission of a ***material fact***, with intent that others rely upon the concealment, suppression or omission." 815 ILCS

5

505/2 (emphasis added); *see also* Fed. R. Civ. P. 9(b); Iowa Code § 714.16(2); N.J. Stat .Ann. 56:8-2. Plaintiffs' Amended Complaint fails to plead a material fact with the requisite specificity, instead offering only the most general allegation that *all* aluminum-clad Pella windows contain an unspecified "latent defect" at an undefined location in the window that allows "water to penetrate and leak behind the aluminum cladding."[3] (Am. Compl. at ¶1).

Plaintiffs never identify the alleged mechanism of failure, or even contain the allegations to the vintage, style, or brand of Pella windows that they themselves own. Instead, Plaintiffs make the sweeping allegation:

> The latent defect described herein is found on Pella's ProLine, Architect Series and Designer Series aluminum-clad wood windows. With respect to the defect at issue, these aluminum-clad wood windows share the same design characteristics and manufacturing methods.

Am. Compl. at ¶ 53. Despite the references above, Plaintiffs fail to specify *what* these allegedly defective "design characteristics" and "manufacturing methods" might be. Instead, the Amended Complaint appears to attempt to allege a uniform defect in all styles, vintages, and brands of Pella aluminum-clad wood windows produced at any time since the company began manufacturing aluminum-clad windows *decades* ago. In fact, Pella's product offerings continually evolve to respond to market trends and take advantage of new technologies. Its product offerings and manufacturing methods therefore have varied significantly over time. In addition, Pella manufactures a number of different brands of aluminum clad windows and Pella manufactures different styles of windows within those brands such as double-hung and fixed and

---

[3] Plaintiffs' allegations fail in comparison to the allegations in the Illinois state case *Pappas v. Pella.* 844 N.E. 2d 995, 1001 (Ill. App. 1st Dist. 2006). In *Pappas,* the Illinois Court of Appeals held that the plaintiffs, who owned Pella Architect Series Windows, at the pleading stage had "specif[ied] a feature of the windows that allowed water to enter the frames and cause damage to the windows." Pella disputes the plaintiffs' allegations in the *Pappas* case in this regard. Nonetheless, Plaintiffs here have failed to allege any such feature in Pella's ProLine windows, thus they do not fall within the decision in *Pappas.*

6

venting casement units, having many different features and manufacturing processes. *See generally*, www.Pella.com. Yet Plaintiffs attempt to sweep all of these highly varied window designs into an unspecified "latent defect."

Plaintiffs' allegations of defect are central to their allegations of fraud by omission. Yet they do not reflect any investigation at all, much less the "more than the usual investigation" required by Rule 9(b). *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Without supporting facts alleged with particularity, Plaintiffs make the general allegation that *all* Pella aluminum-clad windows ever manufactured contain an unspecified latent defect that Pella knowingly concealed. Such an allegation risks "great harm to the reputation" of Pella. *Id.* Plaintiffs' allegations come nowhere close to meeting the particularity requirements of Rule 9(b), and implicate exactly the concerns with fraud claims articulated by the Seventh Circuit in the *Ackerman* case—they are easily and irresponsibly made, and risk harm to Pella's reputation. Plaintiffs' state CFA claims should be dismissed for failure to plead with the requisite particularity of Rule 9(b).

### C. Plaintiffs' Common Law Fraudulent Concealment Claim (Count III) Likewise Fails.

As described above, Plaintiffs fail to plead a non-disclosed "material fact" with the requisite specificity. Each relevant state law requires non-disclosure of a "material fact" for common law fraud. *Kelly v. Sears Roebuck & Co.*, 720 N.E.2d 683, 692 (1st Dist. (Ill.) 1999) ("a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to the plaintiff."); *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 176 (Iowa, 2002); *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla. 1984); *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 661 (N.J., 1989); *Weiner v. Fleischman*, 816 P.2d 892, 894 (Cal. 1991). Thus, Plaintiffs' common law fraudulent concealment claims fail along with their state CFA claims.

In addition to the concealment of a material fact, a plaintiff must plead that a relationship existed "creating a duty to speak." *Trustees of the AFTRA Health Fund v. Biondi,* 303 F.3d 765, 777 (7th Cir. (Ill.) 2002). Under the relevant state laws, common law fraudulent concealment exists only if the person failing to disclose the information ***owed a duty*** to disclose that information." *See, Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.,* 946 F. Supp. 1358, 1366 (N.D. Ill. 1996) (internal quotation omitted); *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 176 (Iowa, 2002); *State v. Mark Marks, P.A.* 698 So.2d 533, 539 (Fla. 1997); *Bonnco Petrol, Inc. v. Epstein,* 560 A. 2d 655, 661 (N.J., 1989); *Weiner v. Fleischman,* 816 P. 2d 892, 894 (Cal., 1991).

Plaintiffs make the single conclusory allegation that "Pella, through its experience was in a position of superiority of Plaintiff and class members" as to knowledge of the alleged defects. (Compl. ¶ 94.) This allegation does not plead the required relationship necessary to state a claim for fraudulent concealment.[4] The manufacturer's duty to warn in certain circumstances under product liability law and the common, ordinary relationship of a manufacturer of a good to a purchaser of a good does not create a legal fiduciary relationship, and there is nothing special or extraordinary about the particular relationship here. *See, e.g, Connick v. Suzuki,* 675 N.E. 2d 584, 593 (Ill. 1996). Plaintiffs fail to plead any facts showing that Pella concealed a material fact or that they had a confidential relationship with Defendants that gave rise to a legal duty to disclose, and thus Plaintiffs fail to state a claim for fraudulent concealment.

## II. PLAINTIFFS' UDTPA CLAIM (COUNT II) SHOULD BE DISMISSED.

Count II of Plaintiffs' Amended Complaint alleges that Defendants violated the prohibition under the UDTPA of "representing that goods have characteristics, ingredients, uses, or benefits that they do not have." Compl. ¶ 55 (citing 815 ILCS 510/2(5)). Plaintiffs fail,

---

[4] In the *Pappas* case, the trial court dismissed the plaintiffs' fraudulent concealment claims on this ground. The *Pappas* plaintiffs did not appeal this dismissal. *See* Roberts Aff. Ex. A at ¶3.

8

however, to identify any *specific* representations made by Defendants, much less any representations particular to the characteristics, uses, or benefits of Pella windows. This allegation is insufficient to bring Plaintiffs' claims within the purview of the UDTPA by its terms. *See Lynch Ford, Inc. v. Ford Motor Co.*, 957 F. Supp 142, 147 (N.D. Ill. 1997) (holding that for a violation of the UDTPA to occur, a defendant must make some form of a **representation** to the public or the buyer regarding a good or service). Here, Plaintiffs' alleged representations are mere puffery that do not support their UDTPA claims.

Further, although Plaintiffs claim to seek equitable or injunctive relief in the form of programs "to inspect, replace, and install defective Pella windows" and "compelling Defendants to establish a program to reimburse its warranty claims previously denied" these "programs" are simply a thinly-veiled claim for monetary damages, a remedy not available under the UDTPA. 815 ILCS 510/1 *et seq.; see Smith v. Prime Cable of Chicago,* 658 N.E.2d 1325, 1337 (Ill. App. 1 Dist.1995) (noting the UDTPA does not allow an award of damages); *see also Latona v. Carson Pirie Scott & Co.,* 1997 WL 109979, at *2 (N.D. Ill. March 7, 1997). Plaintiffs also do not plead a likelihood that they will suffer future harm if Pella's practices are not enjoined. Plaintiffs' claim fails to meet the requirements of the UDTPA and should be dismissed. *Latona, 1997 WL 109979 at *2.*

### III. PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED WARRANTY (COUNT IV) FAILS.

Plaintiffs also seek damages based upon breach of implied warranty. As an initial matter, the claims of Plaintiffs Saltzman, Eubank, Ehorn, and Riva are barred by the four-year statute of limitations. Under the Uniform Commercial Code ("UCC"), as adopted by their respective states, an action for breach of any contract for sale must be commenced within four years after

the cause of action accrued. 810 ILCS 5/2-725(1); N.J. Stat. Ann. § 12A:2-725(1); Fla. Stat. § 95.11(3)(k); Cal. Com. Code § 2725(1)[5]; Iowa Code §§ 614.1(4) (5 years).

A warranty cause of action accrues when the breach occurs, and a breach of warranty occurs when the tender of delivery is made regardless of Plaintiffs' lack of knowledge of the breach. *E.g.,* 810 ILCS 5/2-725(2). Here, Plaintiffs allege that they purchased the Pella windows for their residences in 1995, 1992, 1990, 2001 respectively. (Am. Compl. ¶¶ 22, 28, 35, 47.) Thus, except for New Jersey Plaintiffs the Hadjipetkovs, the statute of limitations has long run on Plaintiffs' breach of implied warranty claims.[6]

Under Illinois, Iowa, California and Florida law, based on the contract principles of the UCC, in order to state a claim for breach of implied warranty, privity must exist between Plaintiff and each Defendant. *Board of Education v. A, C, and S, Inc.*, 546 N.E.2d 580, 595-596 (Ill. 1989); *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 108 (Iowa 1995) (citing *Szajna v. General Motors Co.*, 503 N.E.2d 760, 767 (Ill. 1986); *Hauter v. Zogarts,* 534 P. 2d 377, 383 n. 8 (Cal. 1975); *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 229 (Cal. Ct. App. 2006); *Indem. Ins. Co. N. Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 539 (Fla. 2004); *Kramer v. Piper Aircraft Corp.,* 520 So.2d 37, 39 n.4 (Fla. 1988). Some of these states have recognized an exception for physical injury, holding that privity is not required "when a buyer who has sustained personal injury predicates recovery against a remote manufacturer on the theory of implied warranty." *Id.* (*citing Szajna v. General Motors Corp.*, 503 N.E.2d 760 (Ill. 1986)). *See*

---

[5] *But see Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 231 (Cal. Ct. App. 2006) (holding implied warranty of merchantability claims under California law are limited to one year under Cal. Civ. Code §1791.1(c))

[6] To the extent that only the implied warranty claims of the Hadjipetkovs' (or any named Plaintiff other than the Saltzman's) remain following this motion to dismiss, venue is not proper in this Court under 28 U.S.C. 1391(a). No Plaintiffs other than the Saltzmans can possibly bring a claim against PWD, and Pella does not "reside" in Illinois for venue purposes. 28 U.S.C. § 1391(a)(1); (Am. Compl. at ¶ 3). Further, for the non-Illinois named Plaintiffs, no part of the events or omissions giving rise to their claims occurred in the Northern District of Illinois. 28 U.S.C. § 1391(a)(2).

*Neb. Innkeepers, Inc. v. Pittsburg-Des Monies Corp.*, 345 N.W.2d 124, 129 (Ia. 1984); *Cunningham v. Kartridg Pak Co.*, 332 N.W.2d 881, 885 (Ia. 1983).

Plaintiffs here seek only property damage, and they are not in privity with Pella. Plaintiffs' breach of implied warranty claims should therefore be dismissed as to Pella, and the implied warranty claims of all of the non-Illinois Plaintiffs should be dismissed as to PWD.

IV. **Plaintiffs' Unjust Enrichment Claim is Barred Because the Parties' Relationship Is Governed By the Pella Express Warranty.**

Plaintiffs' unjust enrichment claims are not viable. Plaintiffs themselves acknowledge that the Pella Express Warranty ("PEW") covers the purchasers of the windows. (Am. Compl. ¶ 108.) Thus, Pella's obligations to Plaintiffs are governed by the warranty. Under the laws of all relevant states, a plaintiff cannot recover for unjust enrichment where there is a specific written contract – such as the PEW here – governing the relationship of the parties.[7] Accordingly, Plaintiffs' claims for unjust enrichment fail to state valid claims.

V. **PLAINTIFFS REQUEST FOR DECLARATORY RELIEF SHOULD BE DISMISSED BECAUSE IT SEEKS REFORMATION OF PELLA'S EXPRESS WARRANTY WITHOUT PLEADING THE REQUIRED ELEMENTS FOR REFORMATION.**

While Plaintiffs frame Count VI of the Amended Complaint as a request for declaratory relief, it is readily apparent that Plaintiffs seek unilateral reformation of Pella's express warranty. (*See* Am. Compl. at Ex. 1) The PEW offers Pella's customers a ten-year warranty on the window

---

[7] *See First Commodity Traders, Inc. v. Heinhold*, 766 F.2d 1007, 1011 (7th Cir. 1985); *see also Klekamp v. City of Burbank*, 639 N.E.2d 241, 245 (Ill. Ct. App. 1994) ("The law will not imply a contract where an express contract exists..."); *Allied Wire Prod., Inc. v. Marketing Techniques, Inc.*, 424 N.E.2d 1288, 1296 (Ill. Ct. App. 1981) (if an enforceable express contract exists, a party may not recover on an unjust enrichment theory); *Chariton Feed and Grain, Inc. v. Harder*, 369 N.W.2d 777, 791 (Iowa 1985); *Williams v. Bear Sterns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998); *Van Orman v. American Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982) (applying N.J. law) (citing *St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co.*, 158 A. 2d 825, 826 (N.J. 1960)); *Cal. Medical Ass'n v. Aetna U. S. Healthcare of Cal.*, 94 Cal. App. 4th 151, 172 (Cal. Ct. App. 2001); *Hedging Concepts v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419 (Cal. Ct. App. 1996).

elements at issue here. (*Id.*) The Amended Complaint asks the Court to reform the PEW to remove the 10 year time limitation on manufacturing defects in material or workmanship.

Under the UCC and all relevant state laws, an express warranty is a contract. The reformation of the PEW that Plaintiffs seek would unilaterally impose new terms of the sales contract between Pella and its customers: an express warranty with no time limitations. Plaintiffs' claim for reformation fails because they cannot show that the PEW reflects a mutual mistake, or that Pella engaged in fraud creating a unilateral mistake on the part of the Plaintiffs.

A written contract is presumed to express the parties' actual intention, and the party seeking reformation bears the burden to overcome that presumption. *Dictor v. David & Simon, Inc.*, 106 Cal.App.4th 238, 253, 130 Cal.Rptr.2d 588 (Cal. App. 2 Dist. 2003). A court of equity may revise a written instrument to make it conform to the *real* agreement, but it has no power to make a *new* contract for the parties. *R & B Auto Center, Inc. v. Farmers Group, Inc.* 140 Cal. App. 4th 327, 44 Cal.Rptr.3d 426 (Cal.App. 4 Dist. 2006). Under the law of the states at issue, the Plaintiffs must establish a mutual mistake to justify the Court imposing different contract terms on the parties. Here, there is no allegation of a mutual mistake.

Further, to state a claim for reformation based on the existence of an alleged unilateral mistake, courts look to whether the parties have reached a mutual agreement; and whether the defendant, knowing that the instrument finally prepared does not accurately reflect that agreement, has concealed that from the plaintiff at the time of execution. *Klemp v. Hergott Group, Inc.*, 641 N.E.2d 957 (Ill. App. 1 Dist.,1994). In other words, absent competent allegations of fraud in the execution of the contract, a mutual mistake or a mistake shared by both parties must be shown. *Green v. Stone*, 54 N.J. Eq. 387, 396, 34 A. 1099, 1102 (E. & A. 1896). *Providence Square Assoc. v. Biancardi,* 507 So.2d 1366, 1370 (Fla.1987) (reformation

only corrects the defective written instrument so that it accurately reflects the true terms of the agreement). *See also Schuknecht v. Western Mut. Ins. Co.*, 203 N.W.2d 605 (Iowa 1973).

Here, Plaintiffs seek a unilateral reformation of the PEW without alleging that both parties intended a different agreement. This is not the purpose of reformation. A court, in reforming a contract, may not impose an agreement more favorable to either party than was intended. The purpose of reformation is to effectuate the understanding and intent of the parties where the document does not reflect that understanding or intent. "If the writing accords with the expressed intentions of one party, the court will not hold him bound by a different contract." *Green*, 34 A. at 1102. (citations omitted). Plaintiffs' vague allegations of consumer or common law fraud cannot support a claim of unilateral mistake in the formation of the warranty contract. Plaintiffs' request for a declaratory reformation of the PEW should be dismissed.

## VI. PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS ARE FACIALLY UNSUSTAINABLE AND SHOULD BE DISMISSED.

Although it is far from clear, Plaintiffs appear to plead a multi-state class action for money damages, with state-specific sub-classes, under the state CFAs and common law of ten specific states: Illinois, Iowa, Florida, New Jersey, California, Texas, New York, Ohio, Michigan, and North Carolina. The named Plaintiffs are residents of the first five states. There are no named plaintiffs from the second five states. Plaintiffs also appear to plead a *nationwide* class action for declaratory relief and injunctive relief under state UDTPA laws and common law for of all fifty-one jurisdictions nationwide for fraudulent concealment, breach of implied warranty, and unjust enrichment. Should any of Plaintiffs' claims survive the instant motion, the multi-state and nationwide class allegations for each surviving claim should still be dismissed.

Plaintiffs fail to account for the significant variations in state CFAs and do not specifically plead the elements of any state CFA other than Illinois'. Most glaringly, Plaintiffs

13

plead a CFA claim on behalf of Iowa residents notwithstanding the fact that the Iowa Consumer Fraud statute does not provide a private cause of action. *See, e.g., Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 228 (Iowa, 1998). But this is just one example. The various Acts contain different scienter requirements, and statutes of limitations differ.

Because of these variations, federal courts sitting in Illinois repeatedly deny certification of nationwide classes under mutliple states' consumer fraud acts. *See, e.g., Zapka v. Coca-Cola Co.*, No. 99 C 8238, 2000 WL 1644539 at *4 (N.D. Ill. 2000) (holding nationwide certification of a class, ***or even of subclasses***, under state consumer fraud acts "would not be manageable because of the multiple and different variables that would have to be proved as to each class member"). *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 507126 at *2-3 (N. D. Ill. 2002) (denying motion for certification of a nationwide class on claim of violation of consumer fraud laws as unmanageable). Because Plaintiffs fail to plead a viable cause of action under the consumer fraud statutes of other states, the nationwide class allegations must be stricken.

As with the Plaintiffs' class allegations under the various states' consumer fraud acts, Plaintiffs' class pleadings seeking a nationwide class based on fraudulent concealment are futile. First, the Plaintiffs' allegations would create an "insurmountable" choice of law question for the Court. *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 498 (S.D. Ill. 1999); *see also In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1302 (7th Cir. (Ill.) 1995); *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520 (N.D. Ill. 1998). In addition, the "significant variations in the law of fraudulent concealment from state to state" would swamp any common issues. *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D. La. 1998). Thus, because Plaintiffs' fraudulent concealment claim is not viable as a class action, it should be stricken.

14

Likewise the laws of all states regarding breaches of implied warranties differ in many material aspects such as privity requirements. *See Szajna,* 503 N.E.2d at 763 (noting that the law of privity requirements for implied warranty claims as it applies to recovery for economic loss is "far from clear and most certainly not uniform in all jurisdictions"). This makes it impossible to adjudicate these claims together. And, Plaintiffs' class allegations for unjust enrichment fail for much the same reasons. As with fraudulent concealment, the choice of law questions that would face the Court applying unjust enrichment to a nationwide class remains an "insurmountable obstacle." *Clay,* 188 F.R.D. at 498. Furthermore, "[t]he laws of unjust enrichment vary from state to state and require individualized proof of causation." *Id.* at 500; *Lilly,* 2002 WL 507126 at *2 (denying motion to certify nationwide class on plaintiffs' claim of unjust enrichment). This is true not only in the proof required for the cause of action but also in the defenses available. *See Clay,* 188 F.R.D. at 501; *Lilly,* 2002 WL 507126 at *2. For example, many states permit an equitable defense of unclean hands to unjust enrichment claims, and the requirements to establish the defense vary significantly. *Clay,* 188 F.R.D. at 501. Thus, because Plaintiffs' nationwide class claim for unjust enrichment is not viable as a class action, it should be stricken.

## CONCLUSION

For the reason stated above, Defendants respectfully request that this court dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

Dated: December 6, 2006

James A. O'Neal
John P. Mandler
Angela M. Crandall
FAEGRE & BENSON LLP
2200 Wells Fargo Center, 90 S. 7th St.
Minneapolis, MN 55402-3901
Phone: (612) 766-7000

/s/ John A. Roberts

Douglas L. Prochnow
John A. Roberts
WILDMAN, HARROLD, ALLEN & DIXON
225 West Wacker Drive, 30th Floor
Chicago, IL 60606-1229
Phone: (312) 201-2121

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing *Motion to Dismiss Plaintiffs' First Amended Class Action Complaint* on:

Paul M. Weiss
William M. Sweetnam
Jonathan B. Piper
George K. Lang
**FREED & WEISS LLC**
111 West Washington Street
Suite 1331
Chicago, IL 60602

Bradley M. Lakin
Charles Chapman
**THE LAKIN LAW FIRM, P.C.**
300 Evans Avenue, P.O. Box 229
Wood River, Illinois 62095

Jonathan Shub
**SHELLER LUDWIG & SHELLER**
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102

**ATTORNEYS FOR PLAINTIFF**

via the Case Management/Electronic Case Filing system (CM/ECF), as well as Ordinary U.S. Mail, from 225 West Wacker Drive, Chicago, IL 60606, this 6th day of December, 2006.

|  |  |
|---|---|
|  | /s/ John A. Roberts |
| James A. O'Neal | Douglas L. Prochnow |
| John P. Mandler | John A. Roberts |
| Angela M. Crandall | WILDMAN, HARROLD, ALLEN & DIXON |
| FAEGRE & BENSON LLP | 225 West Wacker Drive, 30th Floor |
| 2200 Wells Fargo Center, 90 S. 7th St. | Chicago, IL 60606-1229 |
| Minneapolis, MN 55402-3901 | Phone: (312) 201-2121 |
| Phone: (612) 766-7000 |  |
|  | ATTORNEYS FOR DEFENDANTS |