**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DR. LEONARD E. SALTZMAN, KENT EUBANK, THOMAS RIVA, LUBO and MAIRA HADJIPPETKOV, WILLIAM and NANCY EHORN, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation,<br><br>Defendants. | No.: 06 C 4481<br><br>The Honorable James B. Zagel<br>Magistrate Judge Ashman<br><br>PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT |

## INTRODUCTION

Defendants Pella Corporation and Pella Windows and Doors, Inc. ("Pella" or "Defendants") marketed aluminum clad windows at premium prices that they knew were defective, damaging Plaintiffs. As alleged in the Complaint, the Pella windows at issue "were defective in that they allowed water to penetrate the area behind the aluminum cladding," causing "condensation, wood rot, leaks and other failures." (First Amended Class Action Complaint ("FAC") ¶¶ 11, 12, 18, 68, 69, 79, 89, 97.) Problems in the wood sealant used inside the windows are the probable cause of the leaks. (FAC, ¶¶ 20-21.) Defendants were aware of these defects, but nonetheless continued to market the windows as having high quality, resulting in actual and threatened future water damage to the Plaintiffs. Despite written warranties, Pella has refused to replace windows and repair home damage caused by the windows.

Pella's arguments for dismissing the Complaint are meritless. Pella wrongly contends that Plaintiffs have failed to specify what was defective in the windows, despite clear allegations that

the windows are defective because their defective design allows water to leak through the aluminum into the wooden core of the windows. Pella further erroneously contends that it had no duty to disclose the known defects, despite its superior knowledge and its contrary representations as to the high quality of the windows. Pella mistakenly argues that Plaintiffs' demand for court-ordered inspection of the windows and enforcement of its warranty is a disguised claim for "damages." Pella asserts that Plaintiffs' warranty claims fail because of the statute of limitations, ignoring Plaintiffs' allegations that the statute was tolled due to fraudulent concealment, and because of lack of privity, ignoring the applicable exceptions to the privity requirement in Illinois and the other states at issue. Pella's arguments on unjust enrichment and declaratory relief are similarly misguided.

Finally, Pella asks this court to predetermine the geographical scope of the potential class in this case, speculating that insurmountable variations in state laws will preclude class certification. In reality, Plaintiffs are seeking a multistate injunctive relief class, and statewide subclasses for purposes of damages.  Such classes are well within the bounds of reasonable manageability, and Pella's class challenges are both premature and unfounded.

## ARGUMENT

### A. Plaintiffs Have Adequately Described Defendants' Fraud Against its Consumers.

Defendants argue that Plaintiffs have not pled their claims relating to fraud with the particularity required under Rule 9 of the Federal Rules of Civil Procedure.  Specifically, Defendants argue that Plaintiffs have failed to allege what the concealed defect was.

Initially, "Rule 9(b) does not negate the general pleading requirements of Rule 8 (*viz* a short, plain statement of a claim and simple, concise, direct allegations.)"  *Coca-Cola Co. Foods Div. v. Olmarc Pakaging Co.*, 620 F.Supp. 966, 973 (N.D.Ill. 1985).  Rather, "the balance

between Rule 9(b) and 8 requires [a plaintiff] to plead the particularities of the fraud (time, place and contents), but does not require [a plaintiff] to plead evidence." *Id.*

Plaintiffs' factual allegations meet and exceed the particularity standard for claims under the Illinois Consumer Fraud Act. *See Connick v. Suzuki Motor Company, Ltd.*, 174 Ill. 2d 482 (1996), *cited in Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 867-868 (N.D. Ill. 2006). In *Connick*, a consumer class action concerning the defendant's sport utility vehicle, plaintiffs alleged that the defendant committed consumer fraud by concealing "material facts regarding the Samurai's safety risk." In reversing the dismissal of plaintiffs' CFA claim, the Illinois Supreme Court held that plaintiffs' fraud by omission allegations sufficiently stated a CFA claim:

> Plaintiffs alleged that Suzuki was aware of the Samurai's safety problems, including its tendency to roll over and its inadequate protection for passengers. Plaintiffs further alleged that Suzuki failed to disclose these defects. Finally, plaintiffs alleged that the safety problems were a material fact in that they would not have purchased the vehicles if Suzuki had disclosed the Samurai's safety defects. [*Connick*, 174 Ill.2d at 505.]

Here, as in *Connick*, Plaintiffs allege (1) that Pella was aware of a latent defect in its windows that caused or was likely to cause leakage prior to the time Pella sold the windows to class members, (FAC, ¶ 12); (2) that Pella failed to disclose the defect, (*Id.*, ¶¶ 12, 18, 79, 97) and (3) that Pella's omission was material because Plaintiffs would have cut a different deal with Pella or purchased their windows from a different manufacturer had Pella disclosed the nature of the windows. *Id.*, ¶¶ 80, 82, 98. Plaintiffs have further alleged that one apparent cause of the leaks is a defective wood sealant. *Id.*, ¶¶ 20-21. These allegations meet the standard in *Connick*.

Defendants would have this Court ignore *Connick* and employ a new pleading standard, one that requires a complete explanation of the engineering or scientific mechanism that causes

3

the windows to leak. That is not the law, and the Illinois Court of Appeals recently rejected a similar argument by Pella in a parallel case, observing that a "material fact exists where a buyer of a product would have acted differently if it had known about the allegedly omitted information, or where that information is the kind a buyer would be expected to rely on in deciding whether to purchase the product." *Pappas v. Pella*, 844 N.E.2d 995, 1001 (Ill. App. 1st Dist. 1991). Plaintiffs have met the standard in *Pappas* by alleging that Pella omitted and otherwise misrepresented the fact that its windows leaked and caused rot.

However, even if a "material fact" allegation requires a description of the mechanism causing the leak, Plaintiffs have adequately described this in their Complaint. Plaintiffs allege that a defect exists in the windows when they leave the factory, which allows water to penetrate the area behind the aluminum cladding, ultimately causing condensation, wood rot, leaks and other physical damage to both the window and the main structure. (FAC, ¶¶ 1, 20- 24, 29, 30, 36, 37, 42, 43, 48, 53.) Furthermore, Plaintiffs allege that with respect to the defect at issue, the aluminum-clad wood windows share the same design characteristics and manufacturing methods. *Id.* at ¶¶ 24, 53. Requiring anything more would improperly demand evidentiary proofs as part of the Complaint.

Because Plaintiffs meet the pleading standard of Rule 9(b), Defendants' motion to dismiss should be denied.[1]

### B. Pella's Active Concealment of the Defect is Actionable.

Pella argues that it had no duty to disclose any alleged defect to its customers, and absent that duty to disclose, it is not liable for fraudulent concealment. Pella's claim that it may legally peddle defective goods without disclosing a known defect is incorrect.

---

[1] If the Court wishes more specificity on the design defect, the Court should grant leave to replead.

"On a motion to dismiss, the facts alleged by [plaintiff] are taken as true. Thus, the only argument the Court can consider is whether [plaintiff] has alleged that [defendant] had a duty to disclose . . ." *Coca-Cola*, 620 F.Supp. at 974. Plaintiffs plainly allege that Pella had a duty to disclose the existence of the defect to Plaintiffs and the class, because, in part, Pella was in a "position of superiority" to its customers. FAC, ¶¶ 68, 94. Allegations of such a position are sufficient to establish Defendants' duty to its consumers to disclose material facts, like defects in its products. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1997).

"The concealment of a material fact during a business transaction is actionable if done 'with the intention to deceive under circumstances creating an opportunity and duty to speak.'" *W.W. Vincent and Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 969 (Ill. App. 1st Dist. 2004); *See also Coca-Cola*, 620 F.Supp. at 973 (a duty to make an affirmative statement arises "when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's apprehension"); *ZC Ins. Co. v. Brooks*, 847 So.2d 547, 551 (Fla. App. 4th Dist. 2003) ("Florida law recognizes that fraud can occur by omission, and places a duty on one who undertakes to disclose material information to disclose that information fully"); *Strawn v. Canuso*, 638 A.2d 141, 149 (N.J. Super. App. Div.1994) ("Even where no duty to speak exists, one who elects to speak must tell the truth when it is apparent that another may reasonably rely on the statements made"); *Pavicich v. Santucci*, 85 Cal.App.4th 382, 398, 102 Cal.Rptr.2d 125, 137 (Cal. App. 6th Dist. 2000) ("where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. One who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud").

As alleged in the complaint, Pella repeatedly advertised the superior quality of their windows; it therefore took on the duty to disclose all material facts, including the leakage defect. By repeatedly actively deceiving its consumers, Pella violated that duty. The very cases cited by Pella in its motion establish that its argument is misguided. In *Wright v. Brooke Grp Ltd.*, 652 N.W.2d 159 (Iowa 2002), the Supreme Court of Iowa recognized that a manufacturer is duty-bound to disclose facts to consumers when it contributes to a consumer's misapprehension or latter learns that what it had said earlier was either untrue or misleading. *Id.*, at 177; *see also Lefebvre Intergraphics, Inc. v. Sanden Machine Ltd.*, 946 F.Supp. 1358, 1366 (N.D.Ill. 1996) (noting that "silence accompanied by deceptive conduct or suppression of material facts results in active concealment" by a manufacturer and is actionable fraud by omission).

Thus, Plaintiffs need only to allege existence of a duty. Plaintiffs' complaint *repeatedly* alleges that Pella had a duty to inform class members of the defect, had the opportunity to do so, and remained silent:

- Pella had a duty to inform consumers of the defect, but failed to fulfill its duty. FAC, ¶ 68
- "Pella, through its experience, was in a position of superiority over Plaintiffs and class members with respect to knowledge that . . . there was a substantial risk that its windows would develop leaks and wood rot." *Id.* at ¶ 94
- "Pella "continuously and consistently represented to the marketplace that: Pella windows were durable; . . . Pella windows were maintenance free; and Pella would stand behind its products." *Id.* at ¶ 89
- "Pella intended that Plaintiffs and the Class would rely on [its] deception by purchasing windows, unaware of the material facts described above." *Id.* at ¶ 80
- "Pella failed to make these disclosures despite opportunities through its employees, sales literature, advertising and its website." *Id.* at ¶ 97
- Rather, "when questioned about leakage problems, Pella would claim faulty installation as the culprit, or would deny claims as 'out of warrant' without disclosing the defect." *Id.* at ¶ 19
- "Plaintiffs and the Class reasonably relied on Pella to disclose those material facts. If Pella had disclosed the above facts to Plaintiffs and the Class, they could have (and would have) prevented economic injury by either negotiating additional warranty coverage, negotiating a lower price to reflect the risk [of rot] or simply avoiding the risk by purchasing a different manufacturer's windows." *Id.* at ¶ 98

Because Plaintiffs have fully alleged Defendants' duty to disclose the defect as well as the factual basis of that duty to Plaintiffs and the class, Defendants' Motion must be denied.

### C.     Plaintiffs' UDTPA Claim is Fully Articulated.

Defendants argue that Plaintiffs failed to plead a specific representation; that the representations pled are mere puffery; that the relief requested is a veiled request for damages; and that Plaintiffs failed to allege likelihood of future harm. Defendants are incorrect on all counts. Defendants' argument that no specific representations were made ignores the plain language of the complaint:

> "Specifically, at all time relevant, Pella continuously and consistently represented to the marketplace that: (a) Pella windows were durable; (b) Pella windows were manufactured to high quality standards; (c) Pella windows were maintenance free; and (d) Pella would stand behind its products." FAC, ¶ 89.

Defendants further claim that these representations are mere puffery. But the dispute over whether these statements are mere puffery or material misrepresentations presents a question of fact for the jury, not a ground for dismissal. *See Bussian v. Daimler Chrysler Corp.*, 411 F.Supp.2d 614, 619-620 (M.D.N.C. 2006); *McFadden v. Dryvit Sys., Inc.*, No. CV-04-103-ST, 2004 WL 2278542 *13-14 (D.Or. 2004).

Pella also grossly mischaracterizes the injunctive relief that Plaintiffs seek, which is an order "compelling Defendants to establish a program to inspect, replace and install defective Pella windows." FAC, Count II, Prayer for Relief, para. E. A program to inspect and fix the leaky windows has no resemblance to an award of damages—a distinction captured in the saying "An ounce of prevention is worth a pound of cure." Plaintiffs simply request that Pella honestly abide by its warranty, which it always should have done, and "establish a program to reimburse its warranty claims previously denied or paid in part . . ." *Id.* at para F. *See In Re Eagle Corp.*,

1990 WL 606666, 113 F.T.C. 792 (1990) (car manufacturer ordered to review its warranty claims files and implement a redress program for cars with oil leaks).

Finally, Defendants preposterously argue that failure to allege "a likelihood of future harm" renders Plaintiffs' claim incomplete. A leaky window creates an obvious likelihood of future damage, a risk that is apparent throughout the Complaint, and if the absence of the "future harm" catch phrase is a problem, it can easily be cured by repleading.

### D. Neither the Statute of Limitations nor Lack of Privity Forecloses Plaintiffs' Claim for Breach of the Implied Warranty of Merchantability.

Defendants argue that Plaintiffs' claim for breach of implied warranty of merchantability is barred by the statute of limitations. However, Defendants' alleged fraudulent concealment tolls the statute of limitations. The U.C.C.'s four-year statute of limitations for contracts of sale "does not alter the law on tolling of the statute of limitations." 810 ILCS 5/725(4); *accord Evans ex rel Husted v. General Motors Corp.*, 314 Ill. App. 3d 609 (1st Dist. 2000); *Continental Grain Co. v. Pullman Standard, Inc.,* 690 F. Supp. 628, 634 (N.D. Ill. 1988). Illinois law requires that all statutes of limitation be tolled in instances of "fraudulent concealment."

> If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

735 ILCS 5/13-215 (2006). Plaintiffs have specifically pled fraudulent concealment on the part of Defendants. (FAC, ¶¶ 67-70.)

Pella also asserts that lack of privity between Plaintiffs and Pella Corp. defeats the implied warranty claims as to Pella Corp. That argument fails because Illinois, Iowa, California, and Florida all have applicable exceptions to the privity requirement. In Illinois, "generally privity only extends to the parties to the sale and implied warranties are not applicable between

the buyer and a remote manufacturer. This is not true, however, where there is a direct relationship between the manufacturer and the seller." *Frank's Maintenance & Engineering, Inc. v. C. A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. 1st Dist. 1980) (citations omitted). Additionally, "privity is not required when the remote manufacturer knows 'the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements.'" *Crest Container Corp. v. R.H. Bishop Co.*, 445 N.E.2d 19, 25 (Ill. App. 5th Dist. 1982.) (quoting *Frank's*). Florida mirrors Illinois, providing exceptions to the privity requirement when the manufacturer is involved with the seller. *See McMorris v. Wyeth, Inc.*, No. 2:04CV596FTM-29DNF, 2005 WL 1528626, *3 (M.D.Fla. June 27, 2005), and cases cited therein. California has a similar exception, where the manufacturer's awareness of the particular purchaser, or some other "special relationship," forms an additional exception to the contractual privity requirement. *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 279 Cal. Rptr. 533 (Cal. App. 3rd Dist. 1991) (parties dealt with each other directly in purchasing crane). Iowa may provide an exception to the privity requirement were a principal-agent relationship established between the distributor and manufacturer. *See Bruce v. ICI Americas, Inc.,* 933 F. Supp. 781 (S.D.Iowa 1996) (purchasers of pesticide did not establish agency relationship between distributors and manufacturer and so the latter were not actionable for consequential damages for breach of implied warranty).

The Northern District of Illinois has repeatedly applied these exceptions in situations where privity might not otherwise exist. *See Abco Metals Corp. v. J.W. Imports Co., Inc.*, 560 F.Supp. 125, 128 (N.D. Ill. Sept. 13, 1982) (denying motions to dismiss the warranty counts); *see also Omni-Circuits, Inc. v. DRP, Inc.*, No. 85 C 9081, 1987 WL 7290, *3-5 (N.D.Ill. Feb. 23, 1987) (holding that because the manufacturer's agent informed the customer that the

manufacturer's product would meet his needs, privity was not required; however, a written warranty specifically excluding the implied warranty of merchantability ultimately barred the claim); *Canadian Pacific Railway Co. v Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800**,** 2005 WL 782698, *12-13 (N.D.Ill. April 6, 2005) (holding that discussions between manufacturer and the buyer create issues of fact as to whether the manufacturer knew who the ultimate buyer was, thereby obviating the need for privity).

The relationship between Pella Corp. and Plaintiffs satisfies these exceptions to privity under the relevant state laws and defeats Defendants' motion to dismiss the implied warranty count. As will be more fully developed through discovery, there is a direct relationship between the manufacturer and the seller—Pella and Pella Windows and Doors are closely related, appear as one company to the class members, and may be in a principal-agent relationship. Second, the manufacturer is aware of the needs of its customers. When Plaintiff Saltzman had problems with his windows and attempted to have them repaired under the warranty, he dealt directly with Pella. (FAC ¶ 26.) These allegations raise questions of fact barring a motion to dismiss.

> **E.    Plaintiffs' Unjust Enrichment May Proceed Based on Defendants' Tortious Conduct.**

Defendants erroneously assert that Plaintiffs' unjust enrichment claims should be dismissed based on the existence of a written warranty. "Mere invocation of a written contract does not automatically bar an unjust enrichment claim." *Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 856 (N.D. Ill. 2006) (disposing of challenge under the laws of multiple states). To bar an unjust enrichment claim, a determination that the dispute is covered by a contract must first be made. *Id*. at 855. Without such a determination, dismissal of an unjust enrichment claim would be improper. *Emergency Care and Health Organization, Ltd. v. Trinity Med. Ctr.,* 2001 WL 34142437, at *4 (Ill. App. 3rd Dist. Dec. 12, 2001). Additionally, courts

have allowed unjust enrichment claims to stand where, as here, a contract may exist, but tortious conduct is also alleged. *Peddinghaus v. Peddinghaus*, 295 Ill. App. 3d 943, 949 (1st Dist. 1998) (citing *Wolff v. Ampacet Corp.*, 284 Ill. App. 3d 824, 829 (1st Dist. 1996)).  Indeed, Plaintiffs' claims of unjust enrichment far exceed the narrow scope of any conceivable warranty claims. *See e.g.* FAC, ¶ 108.

### F.   The Court May Declare Invalid Certain Terms of a Warranty

Defendants mischaracterize Plaintiffs' declaratory judgment claim as a claim for "reformation" of the warranty. In reality, Plaintiffs simply request this Court to declare that the time limitation of the warranty is unenforceable because Pella engaged in fraudulent and unfair conduct.  Courts routinely hold these limitations unenforceable and Pella has provided this Court with no reason to do otherwise. This is not a "reformation" by "mistake," despite Defendants' effort to recast it as such.

Plaintiffs' request is to invalidate the illegal clauses in the warranty. Courts have repeatedly held that a time limitation on a warranty claim will not be enforced when a manufacturer knows of a latent defect and does nothing to repair it prior to the end of time period.  *Hadar v. Concordia Yacht Builders, Inc.*, 886 F. Supp. 1082, 1099-1100 (S.D.N.Y. 1995) (denying defendant's motion for summary judgment); *Held v. Mitsubishi Aircraft International*, 672 F. Supp. 369, 382-383 (D. Minn. 1987) (denying Defendant's motion for summary judgment on breach of warranty claim because "the time limitations provided in the contract are manifestly unreasonable as applied to an alleged latent design defect"); *Carlson v. General Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1991) (reversing dismissal of breach of implied warranty claim; time limitations in the warranty are "unconscionable and ineffective" when product has an inherent latent defect.) (citations omitted); *State of New York ex rel Abrams*

*v. General Motors*, 466 N.Y.S.2d 124, 127 (Sup. Ct. 1983) (allegations that "marketing an inferior product with knowledge that it was inferior and with knowledge that its warranty was inadequate to protect the consumer" stated a claim for an unconscionable contract).

Here, Plaintiffs have alleged that Defendants knew that their windows were defective, that Defendants did not inform Plaintiffs of this defect, and that this defect was a latent defect that would not be discovered in the warranty period. The warranty failed in its express purpose. The limitation of the warranty is therefore unenforceable, illegal, and void. The Declaratory Judgment Act expressly permits "any court of the United States, upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Plaintiffs simply request this Court to issue such a declaration rendering the time limitation on Defendants' warranty void and unenforceable.

It must be added that Defendants' argument also fails because the law of reformation would permit the relief Plaintiffs' seek. As Defendants concede in their brief, allegations of fraud merit reformation. (Defendants Motion to Dismiss ("MTD") at 12). Plaintiffs have alleged facts supporting a finding of fraud in the inducement. *See e.g.* FAC, ¶ 12 ("Pella knew, prior to sale . . . there was a substantial risk that its aluminum clad windows would leak and would have wood rot. Nevertheless, Pella failed to disclose that risk and thereby deprived consumers of the opportunity to negotiate additional warranty coverage . . . or simply avoid the risk by purchasing a different manufacturer's windows.") The law does not allow Pella to sell windows it knew were defective and then hide behind a warranty to avoid the repair of the known defect. Whether this Court voids the limitation as an illegal warranty—or adopts Pella's reformation theory as the vehicle for doing the same thing—Defendants' motion must be denied.

### G. Plaintiffs May Proceed with Seeking Relief for Consumers from Multiple Jurisdictions.

Finally, Defendants argue that Plaintiffs' allegations seeking certification of a class across more than one state must be stricken. Defendants' challenge to the amenability of the alleged classes to certification is premature. In the absence of discovery the sufficiency of class allegations should be confronted at the certification stage, not through a motion to dismiss. *See e.g. Miller v. Janssen Pharmaceutica Prods., L.P.*, No. 05-CV-4076-DRH, 2006 WL 488636 *1-2 (S.D.Ill. Feb 28, 2006).

Further, at this stage of the proceedings, the burden falls squarely on Defendants to support their motion (at class certification, of course, the burden will shift further toward Plaintiffs).[2] *Crandall v. Hard Rock Cafe Int'l Chicago Inc.*, No. 99 C 6094, 1999 WL 1285864 * 4 (N.D.Ill. Dec 30, 1999) ("As the movant of a motion to dismiss [defendant] bears the burden of demonstrating that as a matter of law the complaint fails to state a claim. . . . We need not conduct [defendant]'s research for it, nor construct its supporting arguments.") However, "the potential application of different states laws is not in itself deterrent to class certification. . . . Illinois decisions have reached a similar conclusion in consumer fraud litigation." *See e.g. Elliott v. ITT Corp.*, 150 F.R.D. 569, 579-80 (N.D.Ill. 1992) (citations omitted). Defendant has done little to contradict this precept. *None* of the opinions on which Defendants rely ordered *dismissal* of class allegations and *none* survey the law of each of the states encompassed by Plaintiffs' Complaint. All but one of Defendants' cases reviewed the issue of class certification

---

[2] Pella's attack on the class pleadings must fail, additionally because it does not systematically analyze or identify any conflict of law that may be unavoidable *in this case*, but only provides a gloss. Accordingly, Plaintiffs have not completed any concerted analysis of their own. However, Plaintiffs request that, if the Court is to receive such an analysis, that Plaintiffs be given leave to supplement this Opposition.

upon motions for certification or decertification, and based upon a complete record and legal analysis.[3]

Indeed, the law is far different from what Defendants urge on the Court. When the matter of multi-jurisdictional class allegations has been presented to this Court at the pleadings stage, allegations seeking relief for consumers under theories of unjust enrichment, implied warranty of merchantability and statutory consumer fraud *on a nationwide basis* have passed muster. *See Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847 (N.D.Ill. 2006). That Plaintiffs in this litigation are seeking simple injunctive relief on a national basis, and monetary relief under the laws of only ten jurisdictions (with each as its own subclass) brings the allegations beyond any cognizable challenge, particularly at this stage:

> "Even though plaintiffs here seek to represent the citizens from the vast majority of states, they have grouped their claims according to common legal elements. . . . . Under these groupings, plaintiffs do not present a single nationwide class, and there is a predominance of common legal issues in each subclass. Plaintiffs have made a sufficient showing at this early stage that the litigants, as grouped, are governed by the same legal rules."

*Id.*, at 872 (quotation and citation omitted).[4]

---

[3] *Szajna v. General Motors Corp.*, 503 N.E.2d 760 (Ill. 1987) involved a motion to dismiss, but the court did not determine whether the suit could be maintained as a class action." *Id* at 761.

[4] The Court in *Muehlbauer* emphasized that full analysis must await a full record and later class-certification briefing. *Id.*

14

## **CONCLUSION**

For all of the aforementioned reasons, Defendants' Motion should be denied in it entirety.

DATED: January 17, 2007                  Respectfully submitted,

**DR. LEONARD E. SALTZMAN, et al.,
Class Plaintiffs,**

By:   /s/ George K. Lang
          One of Their Attorneys

Paul M. Weiss #6217260
Jonathan B. Piper #6196071
William M. Sweetnam #6226203
George K. Lang #6211537
Eric C. Brunick #6285825
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000
Paul@freedweiss.com
Jon@freedweiss.com
BillS@freedweiss.com
George@freedweiss.com
Ericb@freedweiss.com

Bradley M. Lakin
Charles Chapman
Richard J. Burke
**THE LAKIN LAW FIRM, P.C.**
301 Evans Avenue, P.O. Box 27
Wood River, Illinois  62095

Jonathan Shub
Scott Alan George
**SEEGER WEISS LLP**
1200 Walnut Street, Fifth Floor
Philadelphia, PA 19107

**Counsel for Plaintiffs and
Proposed Plaintiff Classes**