**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DR. LEONARD E. SALTZMAN, KENT EUBANK, THOMAS RIVA, LUBO and MAIRA HADJIPPETKOV, WILLIAM and NANCY EHORN, individually and on behalf of all other similarly situated;<br><br>         Plaintiffs,<br><br>   v.<br><br>PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation,<br><br>         Defendants. | **06 CV 4481**<br><br>**JUDGE J. ZAGEL<br>MAGISTRATE JUDGE M. ASHMAN**<br><br>**DEFENDANTS PELLA CORPORATION'S AND PELLA WINDOWS AND DOORS INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING "PHASE I" DISCOVERY** |

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 26(c), Pella Corporation ("Pella") and Pella Windows and Doors, Inc. ("PWD") (collectively "Defendants") hereby request that the Court enter a protective order enforcing the provision in the Joint Report of the Parties and Proposed Scheduling Order (hereafter "Scheduling Order") that limits Phase I discovery to those issues necessary for the determination of Rule 23 certification. (*See* Docket Nos. 37, 48 and 49) Pella and PWD provided Plaintiffs substantial information related to Rule 23 issues as described in their Rule 26 disclosures (Exhibits A - B) including *12,760 pages* of documents. (*See* Exhibits E-L) Pella further agreed to produce witnesses in response to Plaintiffs' Rule 30(b)(6) deposition notice.

In response, Plaintiffs served extremely broad and vague discovery requests, most of which are irrelevant to Rule 23 issues and violate the Phase I (class certification) /Phase II (merits) split discovery to which Plaintiffs stipulated in the Scheduling Order. (*See* Exhibits E-

H)  Plaintiffs' requests to Pella are so broad that they would require the production *of every document* in any way related to the multiple designs of three brands of Pella wood windows over the period of 1990 to the present.   Conversely, Plaintiffs themselves, apparently adopting a slimmed down version of the split discovery approach, produced only minimal documents (233 pages) relating to four homes and served form non-responses to Pella's Phase I interrogatories (*e.g.* "See Plaintiffs' Complaint.  Investigation continues,"  "See *Defendants'* discovery responses" or " Not applicable").  (Exhibits O-R)

Pella and PWD tried to work with Plaintiffs to cooperatively address discovery issues. Pella has provided information and documents under a generous definition of what could possibly be related to Rule 23 issues.  Since the initial Rule 26 conference, the parties have convened two "*meet and confer*" conferences to address the scope of Phase I discovery, during which Pella twice agreed to provide additional information and documents.  Plaintiffs, though, appear more interested in prolonging discovery disputes and engaging in expensive and expansive document productions *before* this Court has heard and decided whether the matter will proceed as a class.

The Court should enforce the Phase I (class certification) / Phase II (merits) discovery split, agreed to by the parties in their Joint Reports, to allow the parties to quickly and efficiently bring the issue of class certification to the Court.

## FACTS AND PROCEDURAL HISTORY

**1.  Phased Discovery**

In December 2006, Defendants provided Plaintiffs with detailed Rule 26(a)(1) Disclosures and Rule 26(a)(2) Disclosures Regarding Electronically Stored Information. (Exhibits A, B)  In those disclosures, Pella and PWD identified broad categories of documents

that Defendants felt may be relevant to Rule 23 issues: advertisements, owners manuals, warranties, design drawings, and warranty claim information. On January 9, 2007, the parties agreed to the stipulated Scheduling Order that was later amended. (Docket Nos. 37, 48 and 49) The Scheduling Order bifurcates discovery into two phases. (Docket No. 37, ¶ 1)

In the Scheduling Order, the parties agreed on specific procedures and timing of various discovery. The parties agreed to undertake only that discovery "sufficient to permit the Court to determine whether the requirements of Federal Rule of Civil Procedure 23 are satisfied." (Docket No. 37, ¶ 1, Docket 48, ¶ 1).

To achieve this goal, the parties also agreed to bifurcate discovery into two phases. The portion of the applicable sections of the respective Joint Reports read:

> Discovery prior to Class Certification must be sufficient to permit the Court to determine whether the requirements of Federal Rule of Civil Procedure 23 are satisfied. However, in order to ensure that a Class Certification decision be issued as soon as practicable, priority shall be given to discovery on class issues ("Phase I"). Once Class Certification is decided, the Court may, upon motion of either party, enter a second scheduling and discovery order, if necessary ("Phase II"). Phase I discovery shall be limited to those issues necessary for the determination of Rule 23 certification including a preliminary investigation of the merits of Plaintiffs' claims only as necessary for class certification purposes. The Parties shall not engage in Phase II discovery on the merits of Plaintiffs' claims until after the resolution of class certification issues. The Parties have entered into a Stipulation for Confidentiality and will submit this Agreement to the Court requesting a proposed Restricting Order per LR 26.2.

(Docket No. 37, ¶ 1, Docket No. 48, ¶ 1).

The intent of bifurcation was to limit the scope of discovery in an effort to save time and costs. If class certification is denied, the scope of relevant discovery available to Plaintiffs will be limited and the magnitude of this action will be greatly reduced. The Scheduling Order streamlines discovery so as to quickly address class certification prior to the accumulation of litigation costs and attorneys' fees.

2.      **Pella's Disclosures / Phase I Document Production**

Complying with the concept of the phased discovery approach, Defendant Pella, in its

Rule 26 disclosure documents and in response to Plaintiffs written discovery, produced the

following documents related to the issue of class certification:

> (a) **<u>advertisements</u>**:  all advertisements for ProLine and Architect Series windows for the period 1990-2003;

> (b) **<u>installation instructions / owners manual</u>**:  all installation instruction and owners manuals for ProLine and Architect Series windows for the period 1990-2003;

> (c) **<u>architectural design manuals</u>**:  all Architectural Design Manuals and Pella Electronic Reference Library (PERL) materials for ProLine and Architect Series Windows for the period 1990-2003;

> (d) **<u>warranties</u>**:  all written warranties regarding all Pella wooden windows and documents regarding the implementation of the ProLine Service Enhancement;

> (e) **<u>sales figures</u>**:  sales figures for the vintages purchase by the named plaintiffs;

> (f) **<u>Returns & Allowances data</u>**:  warranty claims information for issue codes in any way related to the alleged defects identified by the plaintiffs; and

> (g) **<u>Design Drawings</u>**:   All ProLine Series and Architect Series design drawings for casement and double hung windows from 1992 to 2003.  Later Pella produced all Designer Series design drawing for casement and double hung windows from 1992 to 2003.

(*See* Exhibits E-L)  Defendant PWD further agreed to provide: (a) sales records, if any, for the

named Plaintiffs; and (b) customer service records, if any, for the named Plaintiffs.

3.      **Plaintiffs Phase II-Type Discovery Requests**

Despite Defendants' efforts to produce categories of documents relevant to the issue of

class certification as detailed in its Rule 26 disclosures, Plaintiffs pursued a series of

interrogatories and requests for the production of documents that seek information not relevant

whatsoever to the question of class certification.  Plaintiffs' discovery, instead, seeks ***both*** merit

and class based information instead of discovery related solely to Rule 23 class certification.

Examples of material sought by Plaintiffs that is irrelevant to class certification include, but is not limited to, requests for: (a) financial statements; (b) any and all files maintained by certain named individuals; (c) any and all documents relating to nearly every aspect of Pella wood windows identified in the Complaint; (d) documents related to windows not alleged by Plaintiffs to have any defects; (e) any and all documents related to conversations and communications with specific customers; (f) documents related to Defendants' insurance; and (g) information on reserves established related to warranty claims. Plaintiffs' requests are so broad and vague, the breadth of which could potentially include any documents in Defendants' possession created in the last fifteen years. To respond to these requests, Pella would have to conduct document sweeps of the offices and electronic files of dozens of employees in multiple corporate and manufacturing locations; collect documents easily numbering in the hundreds of thousands; review all of those documents for subject matter and content; copy and provide them to the plaintiffs.

This process would take months; could easily cost Defendants in excess of $1 million; and would necessarily interfere with the current Scheduling Order that provides deadlines to allow the Court to address class certification "at an early practicable time." *See* Rule 23(c)(1)(A). What makes Plaintiffs' discovery requests worse is that Plaintiffs are violating the very stipulations they agreed to in January and again less than a month ago to conduct discovery in two phases.

**4.     The Parties' "Meet and Confer" Efforts**

On February 14, 2007, even before responding to Plaintiffs' discovery, Pella and PWD brought its objections to the scope of discovery to the attention of Plaintiffs' counsel and suggested a meet and confer conference to address the issue. (Exhibit C) On February 28, 2007

the parties conferred. During that conference, Pella agreed to consider expanding the documents it would produce to include the design drawings for its Designer Series windows, even though the Plaintiffs' Amended Complaint did not allege that any named plaintiff had issues with that window design. (Exhibit D) The Plaintiffs refused to limit the scope of their discovery requests to Phase I issues but did agree that after Pella provided additional confidential documents, the Plaintiffs would reconsider the scope of their discovery requests. (*Id.*)

After the Court's entry of the Protective Order (Docket Nos. 44, 45), Pella produced all confidential documents and the additional Designer Series design drawings. On April 12, 2007, Plaintiffs sent a letter requesting more information regarding some of Pella's electronic database and the production of further categories of documents. (Exhibit M) Defendants responded the next day, providing additional information requested by Plaintiffs and suggesting a second "*meet and confer*" conference. (Exhibit N)

On April 16, 2007, the parties again conferred regarding the scope of Phase I discovery. During that conference, Pella offered to further expand its Phase I document production to include all certification testing for all of the windows types in its ProLine, Architect and Designer Series windows from 1991 to the present. Plaintiffs continued to seek additional areas of discovery including specific customer communications, manufacturing data and testing, ordering data and specific customer inquiry data – but failed to offer any tenable explanation regarding why this data was need for consideration of Rule 23 certification issues. Moreover, Plaintiffs refused to compromise on the scope of ***any*** of their written discovery.

## ARGUMENT

Rule 26(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that:

> Upon motion by a party or by the person from whom discovery is sought, . . . for good cause shown, the court . . . may make any order which justice requires to

protect a party . . . from annoyance, embarrassment, oppression, or undue burden
or expense, including one or more of the following:

(1)     that the disclosure or discovery not be had;
. . . .
(4)     that certain matters not be inquired into, or that the scope of the
disclosure or discovery be limited to certain matters[.]

Under Rule 26(c), the court may enter an order "for good cause shown . . . to protect a

party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."

*Silva v. Fortis Benefits Ins. Co.*,  437 F.Supp.2d 819, 826 (N.D. Ill. 2006); *Vodak v. City of

Chicago*, No. 03 C 2463, 2006 WL 3267428, at *2 (N.D.Ill. 2006).  It is within the responsibility

of the trial judge to weigh competing hardships to determine the appropriateness of discovery.

*Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984).

Additionally, discovery in class actions is generally tailored to first lead to a

determination on class certification.  In fact, this Court has encouraged parties to class action

litigation to enter into limited discovery plans prior to seeking class certification or summary

judgment.  *Belbis v. Cook County*, 2005 WL 40063, at *1 (N.D. Ill. 2005) (J. Zagel).  The phased

discovery plan discussed in *Belbis* is consistent with the routine bifurcation by the U.S. District

Court for the Northern District of Illinois of class action discovery.  *See e.g.*, *Lawrence E. Jaffe

Pension Plan v. Household Int'l, Inc.*, 2004 WL 2108410, *1 (N.D. Ill. 2004); *Feldman v.

Motorola, Inc.*,1992 WL 137163, *3 (N.D. Ill. 1992); *Elliott v. ITT*, 1992 WL 59102, *4 (N.D.

Ill. 1992).  In *Elliott*, class action discovery was bifurcated.  While the class phase of discovery

was still pending, the defendant sought a protective order claiming the plaintiff refused to

confine discovery to matters relevant to class certification.  The court, in addressing the

reasoning behind the bifurcation, noted:

Rule 23(c)(1) requires that a district court address the issue of class certification
"as soon as practicable" after the commencement of the action. . . . [T]he court

7

bears in mind that a principal purpose of class certification is to save the resources of both the court and the parties by permitting an issue potentially affecting every class member to be litigated in a economical manner. Two other well-established principles are relevant to the determination as whether class discovery should be terminated. Most importantly, in deciding whether to certify a class, the court is to make no determinations as to the merits of the case. Also, plaintiff has the burden of proving that each of the requirements of class certification has been met. Some degree of discovery may be necessary in order to make the necessary class determinations. Indeed, the predominant view is to allow discovery before the motion for class certification. Given Rule 23(c)(1)'s directive that certification be addressed early in the litigation, bifurcation of discovery is appropriate.

*Id.* (citations omitted).

Moreover, it is elementary that parties are bound to the stipulations they enter regarding the proper scope and procedure for the discovery process. *Zenith Radio Corp. v. Matsushita Electric Indus. Co.,* 529 F.Supp. 866, 894 (E.D. Pa. 1981) ("The parties voluntarily entered into [the stipulations] in order to facilitate discovery. . . . Plaintiffs are now attempting to abrogate the agreement. . . . Plaintiff cannot now attempt to undo what they have willingly wrought"). Parties may not carelessly sign agreements only to later evade promises made. *Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 334 (M.D.N.C. 1999) ("It is not appropriate to allow a party to agree to a protective order, only to attempt to undo their agreement at the last possible moment"). While these cases deal with a party attempting to break an agreed upon protective order, the same concept applies when a party attempts to break the terms of an agreed upon discovery procedure. In *Kyles v. J.K. Guardian Sec. Servs.*, No. 97 C 8311, 2006 WL 2349238, at *8 (N.D. Ill. 2006), in addressing a request to vacate a protective order, Magistrate Judge Cole noted that:

It is important to recall that the defendant agreed to the entry of the order. They need not have done so, but having done so, their agreement ought not be blithely cast aside. . . . Parties to litigation like parties to commercial transactions ought to be bound by their agreements absent good reason to excuse them.

In this case, a number of Plaintiffs' Interrogatories and Document Requests are improper in that they have absolutely no relation whatsoever to the question of class certification and do not fall within Phase I of discovery. Plaintiffs seek documents, among many others, on Defendants' financial background, and all documents and all email relating to the windows at issue. Plaintiffs seek documents on routine testing during manufacturing. Plaintiffs seek documents on all recalls "irrespective of time" and irrespective if they are related to any defect identified by Plaintiffs. How these documents have any relation to the question of class certification is baffling. Plaintiffs should be required to demonstrate how these broad discovery requests are related to any issue and adhere to the confines of the Joint Reports.

### Broad Categories of Discovery at Issue

- In Request No. 3, Plaintiffs seek "all files maintained by" a certain set of listed individuals. By making such a Request, Plaintiffs do not even attempt to specifically tailor or limit sought after information to class certification questions. Instead, this is a traditional document request properly reserved for Phase II discovery.

- In Request Nos. 4 and 5 and Interrogatory Nos. 4 and 5, Plaintiffs seek a series of documents or information identifying other types of windows produced by Defendants during the class period. Plaintiffs also seek information on state-by-state sales of windows. In this action, however, Plaintiffs allege damage resulting from only ProLine and Architect series aluminum clad windows. The other types of aluminum clad windows manufactured by Defendants have absolutely no relation to whether a class should be certified for ProLine and Architect series windows. Moreover, a state-by-state breakdown of sales, even if possessed by Defendants, has no relation to the question as to whether the named Plaintiffs have alleged a sufficient class.

- In Request Nos. 9, 10 and 12, Plaintiffs seek documents sufficient to show all testing procedures and "routine tests." Pella has already agreed to produce all certification testing regarding the various designs for each of three window types identified in the Complaint. Documents regarding routine manufacturing testing add nothing to the issue of whether there is sufficient justification to certify a class based upon the Plaintiffs' allegations.

- In Request Nos. 11, 13 and 14, Plaintiffs seek a series of documents related to "any and all" communications with Defendants' consumers, Defendants' dealers and Defendants' suppliers of materials used to manufacture windows. It nearly goes without saying that these Requests are overly broad, unnecessarily vague and unduly burdensome. Moreover, the request for "any and all" documents referring to communications takes these Requests outside the scope of Phase I.

- Request Nos. 16, 17, 18, 19 and 20 seek documents sufficient to show all complaints or inquiries from consumers for aluminum clad windows and doors, investigations by Defendants, procedures for investigation and documents resulting from any investigations. It is unclear how Defendants document protocol, record of complaints and investigations relate to the question of commonality, numerosity, typicality and representivity among the Plaintiffs. In fact, if Plaintiffs need this discovery to establish the existence of a certifiable class, it is difficult to see how class treatment of the claims creates any efficiency at all.

- Request Nos. 21 and 22 seek any and all documents that refer or relate to every lawsuit brought against Defendants and every administrative or other proceeding related to aluminum clad windows. A list of all lawsuits against Defendants based upon aluminum clad windows adds nothing to the question as to whether Plaintiffs' defined class survives the requirements of Rule 23.

- In Request No. 33, Plaintiffs seek documents sufficient to show any and all recalls, the suspension or termination of any product line (irrespective of date), the basis for the action taken, and

the alleged problems with the product. The request for termination of any product lines, "irrespective of date," clearly seeks documents outside the scope of the time constraints placed on the proposed class and outside of the windows lines that are subject of the class allegations. This Request conceivably requires disclosure of any and all documents related to termination of product lines since the creation of Pella in 1925.

- Request No. 35 seeks Pella's financial statements. These documents cannot contribute to the question of commonality, numerosity, typicality and representivity among the Plaintiffs.

- Request Nos. 45, 46 and 47 seek documents related to reserves set aside by Defendants, "on a quarterly basis," to cover actual or potential warranty claims relating to aluminum clad windows and doors; documents relating to increases or decreases in the monthly reserves and all documents relating to any insurance coverage. Reserve amounts and insurance documents have absolutely no relation to class certification. Defendants should not be required to respond to these Requests during Phase I.

## CONCLUSION

Based upon the above, Defendants Pella Corporation and Pella Windows and Doors, Inc. respectfully request that this Court enter an order protecting them from answering Plaintiffs' discovery and requiring Plaintiffs, if they wish to seek legitimate Phase I discovery, to re-serve their discovery while making a good faith effort to identify only that information necessary to address Rule 23 issues.

Dated: April 16, 2007

**WILDMAN, HARROLD, ALLEN & DIXON**

Douglas L. Prochnow
John A. Roberts
225 West Wacker Drive, 30th Floor
Chicago, IL 60606-1229
Phone: (312) 201-2121

and

 s/ John P. Mandler
James A. O'Neal
John P. Mandler
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh St.
Minneapolis, MN 55402-3901
Phone: (612) 766-7000

**ATTORNEYS FOR PELLA CORPORATION**

fb.us.1843430.06