**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DR. LEONARD E. SALTZMAN, KENT EUBANK, THOMAS RIVA, and WILLIAM and NANCY EHORN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No.:  06 C 4481 |
| v. | Honorable James B. Zagel |
| PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation | Magistrate Judge Martin Ashman |
| Defendants. | |

**PLAINTIFFS' STATEMENT OF PROPOSED
CLASS STRUCTURE AND REMEDIES**

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  CLASS STRUCTURE .................................................................................. 1

   A.   Class Definition ..................................................................................... 1

     1. Rule 23(b)(3) Statutory Consumer Fraud Class ..................................... 2

     2. Rule 23(b)(3) Unjust Enrichment Class .................................................. 3

     3. Rule 23(b)(2) Declaratory Judgment Class ............................................ 3

   B.   Causes of Action .................................................................................... 4

     1. Statutory Consumer Fraud ...................................................................... 4

     2. Unjust Enrichment ................................................................................ 10

III. REMEDIES ................................................................................................. 10

   A.   Rule 23(b)(3) Monetary Damages ....................................................... 10

     1.   Statutory Consumer Fraud Monetary Damages ................................ 10

     2.   Unjust Enrichment Monetary Damages ............................................ 11

   B.   Rule 23(b)(2) Declaratory Judgment ................................................... 11

   C.   Remedies Not Provided ........................................................................ 13

IV.  ALTERNATIVES ........................................................................................ 14

   A.   Introduction ........................................................................................... 14

   B.   Class Membership ................................................................................. 14

   C.   Different Causes of Action .................................................................... 14

   D.   Different Remedies ............................................................................... 14

   E.   Scope of the Class ................................................................................. 15

V.   FLOW CHARTS ................................................................................................ 16

   A.   (b)(2) Declaratory Judgment Alternatives ........................................... 16

   B.   (b)(3) Consumer Fraud Alternatives ..................................................... 17

   C.   (b)(3) Unjust Enrichment Alternatives ................................................. 18

   D.   "Hybrid" (b)(2)/(b)(3) Alternatives ...................................................... 19

 VI.   CONCLUSION ................................................................................................. 20

## I.  INTRODUCTION

On November 7, 2008, this Court entered an order and provided certain guidance requesting a supplemental statement from Plaintiffs. (D.E. 143)  The gist of the task presented Plaintiffs was not to re-brief their class certification arguments, but to provide a more precise statement as to how they propose this class action will work, with particular focus on class structure and remedies we propose for the Class and/or Classes.

Class structure and remedies, however, are inextricably interrelated with other aspects of class certification.  Hence, in analyzing alternate remedies, Plaintiffs provide more specific explanations of the manageability of the case, proposed class definitions, the factual and legal elements necessary to establish liability for the underlying causes of action, the allegations of the pleadings, and class-wide proofs.  In accordance with the Court's record discussion, the sections outlined below also attempt to provide various alternatives for the Court to consider.

## II.  CLASS STRUCTURE

### A.      <u>Class Definition</u>

Plaintiffs submit that any one of the following classes can be certified singly or in combination.  The start date we propose for each class is 1991 for two reasons: 1991 was the year ProLine Windows were first manufactured, and in 2006 Defendants ("Pella" collectively) instituted the ProLine Customer Service Enhancement Program ("PSEP") to provide compensation across the United States to its distributors and customers affected by rotting ProLine Windows.  The PSEP program provides compensation for ProLine aluminum clad windows manufactured since 1991.

### 1. Rule 23(b)(3) Statutory Consumer Fraud Class

All persons in the states of Illinois, California, Florida, Michigan, New Jersey, New York, and North Carolina, who purchased a Pella ProLine aluminum clad casement window/s and/or own a structure containing a Pella ProLine aluminum clad case window, between January 1, 1991 and present (date of certification).

*Purchasers*[1] are identified through review of Pella and/or its authorized distributor's records, or through a self-selecting claims process.[2] The Class also includes *owners* of structures that contain a ProLine window even though the owner may not have purchased the window/s directly from Pella and/or an authorized dealer. Structure owners likewise can be identified through Pella's own records or a claims process. Pella's warranty applies to buyers and/or users of Pella windows, and is transferable to subsequent users, and like purchasers, structure owners are eligible for Pella's existing PSEP. Rule 23(b)(3) notice and the opportunity to opt out will be provided to this class. A sample notice is attached as APPENDIX 1 to demonstrate that the notice can be drafted without being overly complex.

---

[1]     A "purchaser" is a person who acquired a Pella ProLine aluminum clad casement window from Pella or through a Pella authorized distributor but not for resale.

[2]     Indeed, to date Plaintiffs counsel has received over 300 inquires from putative class members who are currently experiencing manifest wood rot, or previously paid to replace windows with wood rot and have out-of-pocket expenses. Thus, unlike the plaintiff in *Thorogood v. Sears, Roebuck*, -- F.3d -- (2008 WL 4709500 (7th Cir., Oct. 28, 2008), who apparently was the only person, ever, to suffer the problem alleged in his class action complaint, here, particularly in light of the overwhelming response from putative class members to a lawsuit that has yet to be certified and before any notice has been sent out. The problem is widespread and pervasive. This response further demonstrates the validity of the claims asserted, and should militate in favor of certifying the proposed class / classes.

Pella's invoices likewise self-identify class members:



### 2.  Rule 23(b)(3) Unjust Enrichment Class

All persons in the states of Illinois, California, Florida, Iowa, Michigan, New Jersey, New York, North Carolina and Ohio who purchased Pella ProLine aluminum clad casement windows, between January 1, 1991 and present (date of certification).

This Class is limited to *purchasers* of Pella ProLine aluminum clad casement windows, *e.g.*, those who purchased windows as repair or replacement, *e.g.*, Plaintiffs Saltzman and Riva, or as installation in a construction project, *e.g.*, Plaintiffs Saltzman, Riva and Eubanks.  Purchasers will be identified through review of Pella and its authorized distributors' records, and through a claims process.  Rule 23(b)(3) notice and the opportunity to opt out will be provided to this class.

### 3.  Rule 23(b)(2) Declaratory Judgment Class

All persons in the United States who own structures containing Pella ProLine aluminum clad casement windows manufactured from 1991 to present.

The claim supporting this Class is a federal statute, 28 U.S.C. § 2201, with standard applicability and elements nationwide.  Notice of the declaration allows a

3

prelude to other incidental remedies, including monetary and extra-warranty claims. Therefore, Plaintiffs propose that this Class be certified with notice and also provide an opportunity to opt out, using an exercise of the Court's plenary authority, as though certified with (b)(3) opt out protections.

The following flow chart, and those set out herein, graphically illustrate the various alternatives Plaintiffs propose to manage and prosecute this class action through class certification, trial and judgment:



**B.** **Causes of Action**

Plaintiffs propose structure of the class/es as defined by reference to three causes of action:  statutory fraud, unjust enrichment and/or declaratory judgment/relief.

**1. Statutory Consumer Fraud**

Plaintiffs propose a single Statutory Consumer Fraud Class, or alternatively multi-state and/or statewide (b)(3) classes, comprised of purchasers and owners of structures within the states of Illinois, California, Florida, Michigan, New Jersey, New York and North Carolina ("Class States").  These states require identical elements for statutory liability: (1) defective product; (2) Defendant's knowledge of the defect; (3) materiality of the defect meriting disclosure; (4) Defendant's omission of the material defect;

(5) Defendant's intent that purchasers rely on their omission; and (6) actual injury

proximately caused by deceptive omission.  APPENDIX 2 contains a listing of each State's

elements for a consumer fraud claim.

All Class States proscribe the non-disclosure of material facts in trade or

commerce as deceptive or unfair practices giving rise to right of recovery for damages.

The materiality of the omitted fact, coupled with Defendants' knowledge, establishes the

statutory duty to disclose.  Plaintiffs alleged Defendants failed to disclose that its Proline

aluminum clad casement windows had an inherent design defect shortening their useful

life against the reasonable expectations of purchasers and owners.  Pella denies the

existence of the defect, thereby denying both any duty to disclose and admitting its non-

disclosure.  This establishes a common question of a deceptive/unfair practice by material

omission.  The consumer protection act in each Class State provides a common legal

framework for determining Defendants' liability.

All Class States provide a right of recovery to each person who suffers actual

injury as a result of a violation of the Acts, and allows recovery of actual economic

damages sustained.  Plaintiffs propose to aggregate these rights of recovery in the various

Rule 23(b)(3) classes and (b)(2)/(b)(3) hybrid class, as defined herein.

Accordingly, based on the limited discovery to date, which has not reached the

case's merits or issues relating to "causation," Plaintiffs intend to establish Defendants'

liability for Plaintiffs and every class member through the following common proofs:

> ***Defect:***  This will involve proof that Defendants manufactured ProLine aluminum
> clad casement windows with a design defect in the cladding on the window sash.  The
> defect is articulated as having two aspects: (1) the design allows water to penetrate
> behind the aluminum cladding to expose the wood component beneath.  The evidence
> to date indicates that this design defect is limited to the sash or the sash/frame; and (2)
> the exposure of the wood component of the sash to water resulting in rotting of wood

and shortening of its useful life against the reasonable expectations of both buyer and seller.  The design defect is common to every window.  The following photos show the location of the defect on Pella's design drawings, the resulting failure of the window due to the defect during Plaintiffs' expert's control test and the location of the defect and resulting rot in an installed window.

HIGHLY CONFIDENTIAL - PARTY ACCESS RESTRICTED

PELSAL T0008752



 

 

***Knowledge of the Defect***:  According to Pella's records these windows were first manufactured in 1991 and the window's design has not changed.  All of the windows were manufactured in the same way and according to the same design specifications relating to the sash component.  Whatever knowledge Defendants had or did not have with respect to the defect is common for each window and not subject to individuation.  All of Pella's experts have admitted that the design in fact allows water to penetrate behind the aluminum cladding exposing the wood sash component.  Plaintiffs' expert has opined as to how the design does this and the extent of exposure.  The parties disagree on whether certain countermeasures designed into the windows are adequate to prevent premature wood rot.  Because of the nature of the alleged design defect, and that Defendants included countermeasures, Defendants' knowledge of the propensity of the windows to expose the internal sash wood components to water is not in dispute.

***Materiality of the Defect Meriting Disclosure:***  An issue to be decided by the fact finder is the materiality of the undisclosed defect.  Materiality is determined by an objective standard in each of the Class States.  Whether that defect is material likewise will be decided on an objective basis for all purchasers.

***Omission***:  In each Class State failure to disclose a material fact is, by law, unfair and/or deceptive.  Pella denies the windows are defective and as such admits that it has not disclosed the defect to anyone, let alone to purchasers or structure owners.

***Defendants' Intent That Consumers Rely on their Omission:***  Under the consumer protection statutes of each Class State, intent that others rely on Defendants' omission

7

is likewise established by the existence of the defect, Defendants' knowledge, materiality, and Defendants' knowing non-disclosure.

***Actual Injury Proximately Caused By Deception:***  For all Class States the actual injury protected against is the purchase of a materially defective product without disclosure.  The deceptive practice is the omission of a material fact of the inherent design defect.  The actual injury caused is the purchase of a defective product, and the placement of defective windows in commerce and their presence in structures. Therefore the class is comprised of both purchasers and structure owners.  Both sustained actual injury because they own defective windows placed into commerce through a deceptive or unfair practice prhibited by statute.  The common proof is the existence of an inherent defect which results in rotting of the wood components of the window and shortening its useful life against reasonable expectations.  The damages arising from that injury differ based upon whether the window manifests the defect though wood rot or remains latent, and whether the class member has already repaired / replaced rotted windows and incurred out of pocket expenses.

***Damages*** :  Plaintiffs' propose Phase II bifurcation of damages.

Damages that arise from this injury are different and these differences are driven by latency of the wood rot or manifestation of wood rot.  Where the window does not show any manifest wood rot to the sash component (**Latent Defect**), the remedy may be limited to diminished value of a product whose useful life is shortened against reasonable expectations.  The diminished value is the difference in value between a window with the latent defect and one without.  These different values will be established through common proof.  However, a significant portion of windows have rotted (**Manifest Defect**).  These windows are divided between purchasers and owners who have already repaired/replaced rotted windows (**Manifest Defect-Windows Already Replaced**) and those purchasers and owners who have not replaced rotted windows (**Manifest Defect-Windows Not Already Replaced**). Plaintiffs propose a bifurcated Phase II damages determination as differences in damages are driven by latency of the wood rot or manifestation of wood rot.

**Monetary Damages:**

**1.**      ***Latent Defect Damages***:  In the instances where a class member does not have visible wood rot in the sash component, any wood rot resulting from the alleged defect is latent.  These are essentially diminished value[3] damages. This is a matter for common proof.  The amount determined may differ based upon the model, size and type of the window, but will most likely be a standardized payment, in any event.  In addition, or alternatively, a monetary set-aside fund, calculated as an aggregate for all models, sizes and types, could be established with a payment grid for each model, type and size, with class benefit determined as a per-window value. Payment of the

---

[3]      "Diminished value" represents the monetary difference in value between what Pella charged the purchaser and what the window as defective is actually worth at retail, plus interest.

Latent Defect Damages extinguishes claims going forward in the event of future window failure.

**2.** ***Manifest Defect-Windows Already Replaced***:  Where there is manifest wood rot and the windows have already been repaired/replaced, damages and appropriate remedies are actual out-of-pocket costs of repair/replacement.  This should be available for both purchasers and owners.

**3.** ***Manifest Defect-Windows Not Already Repaired/Replaced***: Where there is manifest wood rot but the purchasers and owner have not repaired/replaced the windows, the measure of damages is the cost to replace them.  This can be determined as a standardized payment equal to the cost of replacement materials, labor and finishing for each model, type and size, times the number of windows involved.  In its determination of the PSEP Program, Pella made a standardized determination of these costs.  As such Plaintiffs could also make a standardized determination through common proof.   In a claims process for eligible purchasers and owners, damages can be assessed based upon the number of window/s requiring replacement.  A claimant may either take a standardized payment/s, or replace a window/s for actual costs.

**4.** ***Combined Latent and Manifest.***  Some class members will likely have a combination of latent defect windows, manifest defect windows and already repaired/replaced manifest defect windows.  The damages measurements, but for actual out-of-pocket costs, are all standardized and established on a per-window basis for each type, model, and size of Proline aluminum clad casement windows.

**5.** ***Window Identification.***  Pella windows have a product identifier that allows for identification in the absence of other means (invoice, Pella's records, warranty information).  This will assist in providing remedies only for windows that are the subject of the litigation:



## 2. <u>Unjust Enrichment</u>

The Class is limited to purchasers.  All states prescribe the same elements for an unjust enrichment claim; APPENDIX 2 contains a breakdown of each state's elements for unjust enrichment.  Plaintiffs will establish liability for each class member through the following common proofs:

*A benefit is conferred upon Defendants:*  Each purchaser paid for a window without an inherent design defect but received one with a defect.  The defect will be proven as set out above.  The purchase of a window will be established through a claims process and/or Pella or its authorized distributors' records.  The benefit conferred is the difference in value between what Pella charged purchasers and what the windows as non-defective are actually worth at retail, plus interest on that money.  A further benefit conferred is the price paid by purchasers to Pella for repair / replacement of windows manifesting the defect, plus interest on that money.

*At the Plaintiff's expense:*  As purchasers of ProLine windows and/or purchasers who paid to repair or replace, the benefit received by Pella was at their expense.  This is because, as alleged, Plaintiffs paid for windows without defect, but Pella instead provided windows with a design defect.  The price for ProLine windows should have been discounted for the diminished value due to the inherent defect.  Whether this was at "plaintiff's expense" itself presents a common question that the Court or a jury will answer.

*Under circumstances making it unjust for Defendant to retain the benefit:*  Because Pella sold windows knowing they contained an inherent defect that results in wood rot and did not disclose this fact, it is unjust or inequitable for Pella to keep "the benefits" it received, whatever the Court or a jury determines those "benefits" to be.  The defect and nondisclosure will be established, as described above.

## III.   REMEDIES

### A.   **Rule 23(b)(3) Monetary Damages**

#### 1.   <u>Statutory Consumer Fraud Monetary Damages</u>

**Actual Costs Expended:**  Available to purchasers and owners who had manifest wood rot and paid to replace their windows; and/or had actual costs incurred out of pocket for replacement materials and labor.

**Standardized payment:**  Available to purchasers and owners who have manifest wood rot but have not yet replaced their windows or incurred out of pocket expenses.  This is

the cost of replacement materials and the reasonable value of the labor determined on a per window basis. In the PSEP, Pella computes a standardized payment for materials and labor. While Plaintiffs will argue and establish that PSEP payments are inadequate and should be markedly higher, they do demonstrate that this is a calculable amount.

**Diminished Value:**  Available to all class members: the difference in cost between what Pella charged and what the window as non-defective is actually worth at retail.

### 2.      <u>Unjust Enrichment Monetary Damages</u>

**Monies Paid to Pella**:  Available to purchasers; includes monies paid to Pella for ProLine windows, and further, monies paid to Pella for pair/replacement of windows for manifest-replaced windows, plus interest on those monies.[4]

**Diminished value**:  Available to all class member purchasers: a standardized payment, as set forth above.



### B.      Rule 23(b)(2) Declaratory Judgment

Plaintiffs request the Court enter the following injunctive/declaratory relief:

**Declaration I**:  The Court finds that all Pella ProLine aluminum clad casement windows, manufactured from 1991 to present, have a defect in the aluminum cladding of the sash component that allows water to get behind the aluminum cladding resulting in premature rotting of the wood component of the sash which wood rot may progress to adjacent wood components.  The rotting of the wood component may not be detectable

---

[4]       Presumably at least some of these persons will be identified through Pella and its authorized distributors' records, *e.g.*, code 06 claimants.

until after the warranty provided by Pella has expired.  The Court finds that this defect is material and requires disclosure to all of these windows.

   **Declaration II:**  In August of 2006 Pella initiated a Pella Service Enhancement Program to provide limited remediation of wood rot in ProLine aluminum clad casement windows manufactured from 1991 to 2003.  All persons who owned structures containing ProLine casement windows manufactured from 1991 to 2003 were eligible for this program.  Pella however did not disclose to the persons eligible either the existence of the enhancement of their warranties, the limited remediation available, or that the windows covered by the program were defective in material and workmanship when manufactured.  The Court finds that the Pella Service Enhancement Program is a modification of Pella's warranty requiring disclosure to all persons eligible for this Program.

   **Declaration III:**  The Court finds that all Pella ProLine aluminum clad casement windows manufactured from 1991 to present have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component, which rot may progress to adjacent wood components, and that the rotting of the wood component may not be detectable until after the existing warranty provided by Pella has expired.  The Court declares that all persons who own structures containing Pella ProLine windows manufactured from 1991 to present are to be provided the best practicable notice of the defect, which cost shall be borne by Pella.

   **Declaration IV:**  In August of 2006 Pella initiated a Pella Service Enhancement Program to provided limited remediation of wood rot in ProLine transom, awning and casement windows manufactured from 1991 to 2003.  Only persons who owned structures containing ProLine transom, awning and casement windows manufactured from 1991 to 2003 and who repeatedly complained to Pella were purportedly included in and eligible for this program.  Because the Court has determined that all Pella ProLine aluminum clad casement windows manufactured from 1991 to present have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component against reasonable expectations, and because the Court has found that Pella knew of this defect when it first manufactured these windows, the Court finds that the Pella Service Enhancement Program is insufficient to remediate the defects know by Pella to exist.  The Court therefore declares that Pella's existing warranty on ProLine aluminum clad casement windows, limited to ten years for this defect is invalid, and, as such that limitation is unenforceable. Pella shall provide notice to all persons covered by that warranty of the removal of this time limitation.

   **Declaration V:**  The Court declares that Pella shall re-audit and reassess all prior warranty claims, including claims previously denied in whole or in part, where the denial was based on warranty or on other grounds, of claims related to ProLine window wood rot, whether internally coded by Pella as 06 or similar.

**Declaration VI:**  The Court declares that Pella shall establish an inspection program and protocol to be communicated to class members, which will require Pella to inspect, upon request, a class member's structure to determine whether wood rot is manifest.  Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to by the parties.



**C.**    **Remedies Not Provided**

1.    Replacement of all windows;

2.    Replacement of windows not manifesting wood rot;

3.    Replacement of windows manifesting wood rot in locations *other* than the sash and progressing thereby;

4.    Diminished value of real estate;

5.    Replacement of anything other than sash and/or sash and frame.

13

## IV.    ALTERNATIVES

### A.    Introduction

Plaintiffs have constructed various class structures and remedies that allow flexibility to adjust and even re-arrange the component parts.  Those component parts include: (1) class membership; (2) cause of action; (3) remedies; and (4) class scope.

### B.    Class Membership

There are two types of class members:  purchasers and owners.[5]  These class members have causes of action, and the Pella warranty is freely transferrable to them. Pella's PSEP program included these persons.  In expanding or narrowing the class, including or excluding either purchasers or owners provides for this flexibility.

### C.    Different Causes of Action

Plaintiffs seek certification of two Rule 23(b)(3) monetary damages causes of action and one (b)(2) class.  Like class membership, the certification can be narrowed or expended by the inclusion or exclusion of these causes of action, or by inclusion or exclusion of any particular state.

### D.    Different Remedies

Plaintiffs seek a combined or "hybrid" Rule 23(b)(2) and (b)(3) class.  The Declaratory Judgment Rule 23(b)(2) class is nationwide.  It can be narrowed to the Class States referenced in the Statutory Consumer Fraud and Unjust Enrichment counts, or to

---

[5]      A purchaser is one who purchases a window from Pella, directly or through an authorized Pella distributor, not for resale.  Most Pella windows are sold through Pella distributors.  Pella owns some but not the majority of these distributors.  Pella windows are also distributed through national accounts such as Lowe's stores and large home builders.  It is the end user that Plaintiffs intend to identify as the "Purchaser."  In addition, as described above, there are persons who own buildings with Pella windows but were not purchasers.

the states of the Class representatives.  Plaintiffs request the Court enter six proposed

Declarations, which provide various remedies from notice of the defect, to window

inspection, to invalidation of warranty limitations relating to the defect alleged.  To be

sure, the declarations may be a prelude to a request for other relief as a consequence of

the declarations made.  Plaintiffs respectfully believe this is proper under *Berger v. Xerox*

*Corporation Retirement Income guarantee Plan*, 338 F. 3d 755, 763 (7th Cir. 2003).

Neither the declaration nor any follow-on, incidental remedies require individual

assessment.  *Palmer v. Combined Insurance Company*, 217 F.D.R. 430, 439 (N.D. Ill.

2003).

> **E.      Scope of the Class**

Plaintiffs seek certification of a single Statutory Consumer Fraud Class.  Plaintiffs

propose this single class rather than seven sub-classes because of the identity of the

common liability elements, and absence of conflicts between statues.  Alternatively, this

Statutory Fraud Class may be broken into seven sub-classes.  This alternative is likewise

available under the multi-state Unjust Enrichment Class.  Another option is to limit the

Class states to the states of residence of the named Plaintiffs.  Plaintiffs wish to note that

undersigned counsel have been contacted by over 300 purchasers and owners throughout

the United States, who have manifest wood rot in their Proline aluminum casement

windows.  As such, if the Court believes it is necessary or appropriate, class

representatives will be added or intervened.

## V.    FLOW CHARTS

### A.    (b)(2) Declaratory Judgment Alternatives



**B.**     <u>**(b)(3) Consumer Fraud Alternatives**</u>



**C.**    **(b)(3) Unjust Enrichment Alternatives**



**D.** **"Hybrid" (b)(2)/(b)(3) Alternatives**



## VI.   **CONCLUSION**

WHEREFORE, Plaintiffs request this Court certify the appropriate Class and/or Classes, and/or alternative proposed Class and/or Classes, to m help as many consumers who have these defective products as possible.

**DATED**:  November 21, 2008                    Respectfully submitted,
                                                **CLASS PLAINTIFFS**

                                                 By:  s/George K. Lang
                                                    One of His Attorneys

                                                Paul M. Weiss #6217260
                                                George K. Lang #6211537
                                                Michael J. Lotus
                                                **FREED & WEISS LLC**
                                                111 West Washington Street, Suite 1331
                                                Chicago, Illinois  60602
                                                (312) 220-0000
                                                 paul@freedweiss.com
                                                george@freedweiss.com

Richard J. Burke
**RICHARD J. BURKE LLC**                          Steven R. Jaffe
1010 Market Street                               Mark S. Fistos
Suite 650                                        **ROTHSTEIN, ROSENFELDT, ADLER**
St. Louis, MO  63101                             401 East Las Olas Blvd, Suite 1650
(314) 621-8647                                   Fort Lauderdale, FL  33301
rich@richardjburke.com                           (305) 372-2772
                                                sjaffe@rra-law.com
                                                mfistos@rra-law.com
Stephen Weiss
Jonathan Shub
Scott A. George                                  **Counsel for Plaintiffs and**
**SEEGER WEISS LLP**                               **Proposed Class / Classes**
1200 Walnut St., 5th Floor
Philadelphia, PA  19107
(215) 735-7582
jshub@seegerweiss.com
sgeorge@seegerweiss.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, affirms that he served a copy of the attached pleading pursuant to Fed. R. Civ. P. 5(b)(2)(D) upon:

John A. Roberts
Douglas L. Prochnow
**Wildman, Harrold, Allen & Dixon**
225 W. Wacker Drive
Suite 3000
Chicago, IL  60606-1229
roberts@wildmanharrold.com
prochnow@wildmanharrold.com

John P. Mandler
Angela M.Crandall
James A. O'Neal
**Faegre & Benson LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
Fax:  612-766-1600
jmandler@faegre.com
acrandall@faegre.com
joneal@faegre.com

DATED:  November 21, 2008

By:    s/George K. Lang