Case: 1:06-cv-04481 Document #: 182-1 Filed: 05/20/10 Page 1 of 11 PageID #:3004
Case: 09-8025 Document: 18-1 Filed: 05/20/2010 Pages: 11

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit



# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-8025

PELLA CORPORATION AND PELLA
WINDOWS AND DOORS, INC.,

           *Petitioners*,

*v.*

LEONARD E. SALTZMAN, KENT
EUBANK, THOMAS RIVA, AND WILLIAM
AND NANCY EHORN, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

           *Respondents*.

Petition for Leave to Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:06-cv-04481—**James B. Zagel**, *Judge.*

SUBMITTED MARCH 12, 2010—DECIDED MAY 20, 2010

Before POSNER, WILLIAMS and TINDER, *Circuit Judges*.

PER CURIAM. Pella Corporation manufactures windows for homes and sells them through its subsidiary, Pella Windows and Doors, Inc. (collectively "Pella"). Over

the last 18 years, Pella has sold more than six million aluminum-clad wood "ProLine" casement windows nationwide. Plaintiffs, owners of structures containing the windows in question, allege that the windows contain a design defect that permits water to seep behind the aluminum cladding and causes the wood to rot at an accelerated rate. In response to the number of windows needing replacement, Pella created the "Pella ProLine Customer Service Enhancement Program" to compensate affected customers. According to Plaintiffs, Pella attempted to modify its warranty through the program but never informed the end consumers of the program's existence or of the defect. Plaintiffs brought suit against Pella, alleging that it committed consumer fraud by not publicly declaring the role that the purported design defect plays in allowing rot. After the district court certified two classes of plaintiffs, Pella sought permission to appeal the certification pursuant to Federal Rule of Civil Procedure 23(f). We grant Pella's Rule 23(f) petition for permission to appeal and affirm the district court's decision certifying the classes.

## I. BACKGROUND

The district court certified two classes of consumers in this action. First, it certified a nationwide class under Federal Rule of Civil Procedure 23(b)(2), consisting of all class members who own structures containing Pella ProLine aluminum-clad casement windows manufactured from 1991 to the present, whose windows

have not yet manifested the alleged defect or whose windows have some wood rot but have not yet been replaced. The district court found the class met the criteria of Rule 23(b)(2) because Pella "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). If successful, these class members would be entitled to six declarations that together essentially declare that all ProLine windows have a defect which results in premature rotting and this defect requires disclosure; that Pella modified its warranty without notice by creating the enhancement program; that Pella must notify owners of the defect; that the ten-year limitation in the original warranty is removed; that Pella will reassess all prior warranty claims related to wood rot; and that Pella, upon a class member's request, will pay the cost of inspection to determine whether the wood rot is manifest, with any coverage disputes adjudicated by a Special Master. This class adjudication process would be followed by an individual claims process in which class members may file a claim with Pella for service "[i]f and when their windows manifest wood rot due to the alleged defect." The district court explained that absent class members also may bring individual suits for money damages.

The second group of certified classes is much narrower and consists of only those who have had a manifest defect and whose windows already have been replaced. The court certified six statewide liability classes

under Federal Rule of Civil Procedure 23(b)(3) in California, Florida, Illinois, Michigan, New Jersey, and New York, on the theory that Pella violated state consumer fraud laws by failing to disclose the defect. Certification under Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The district court explicitly declined to certify issues related to causation, damages, and statute of limitations.

Pella seeks interlocutory review of these class certifications pursuant to Federal Rule of Civil Procedure 23(f), arguing, *inter alia*, that consumer fraud cases as a general matter are not amenable to class treatment, due to problems with causation, reliance, and calculating damages. We grant the petition in order to address the contention that consumer fraud claims are inappropriate for class treatment. *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 835 (7th Cir. 1999) (acceptance of an appeal is appropriate to "facilitate the development of the law" governing class actions). The parties' arguments are clearly set forth in Pella's Rule 23(f) petition and respondents' opposition, and no further briefing or argument is necessary. We affirm the district court's certification of the two classes.

## II. ANALYSIS

While consumer fraud class actions present problems that courts must carefully consider before granting

No. 09-8025                                     5

certification, there is not and should not be a rule that they never can be certified. Pella relies on various decisions from this circuit reversing the grant of class certification in consumer fraud actions to draw the broad conclusion that consumer fraud cases are inappropriate for class treatment as a general matter. But those cases did not opine that class certification was *never* appropriate in consumer fraud cases, only that it was inappropriate in the circumstances before it. *See, e.g, Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 748 (7th Cir. 2008) (no common issues of law because there did not appear to be a single understanding of the significance of labeling or advertising of the allegedly deceptive statements); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (class certification inappropriate because the proposed class representative's claims were not typical of putative class); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018-19 (7th Cir. 2002) (tire-defect class action unmanageable given numerous different designs of allegedly defective tires and varying recalls).

In *Thorogood*, the court noted that there are times when class certification is "a sensible and legally permissible alternative to remitting all the buyers to individual suits each of which would cost orders of magnitude more to litigate than the claims would be worth to the plaintiffs." 547 F.3d at 748. We reassert that proposition here and hold that the district court properly weighed the facts before it and exercised its discretion to conclude that the common predominant issue of whether the windows suffer from a single, inherent design defect leading to wood rot is the essence of the dispute and is better resolved by class treatment.

The district court reasonably determined that the individual issues that necessarily arise in a consumer fraud action would not prevent class treatment of the narrow liability issues here.

Class treatment of consumer fraud cases can certainly present difficulties, and courts should consider these concerns before deciding to grant class certification, as the district court did below. One concern is the risk of error in having complex issues that have enormous consequences decided by one trier of fact rather than letting a consensus emerge from multiple trials. *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 912 (7th Cir. 2003); *see also Thorogood*, 547 F.3d at 745. This is not a case where the issues are so complex, and Pella does not claim that the consequences are so high, that a decentralized process of multiple trials is necessary for an accurate evaluation of the claims. The district court held that the commonality requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) are both satisfied because the central questions in the litigation are the same for all class members—whether the ProLine windows suffered from an inherent defect when they left the factory, whether and when Pella knew of this defect, the scope of Pella's warranty, and the nature of the ProLine Customer Enhancement Program and whether it amended the warranty.

In contrast to *Thorogood* where there were no common issues of law or fact and the court questioned whether anyone besides the plaintiff shared the same concerns with the product, here there is an economy to

class treatment of the question whether the ProLine windows suffer from a basic design defect, the resolution of which has the potential to eliminate the need for multiple, potentially expensive expert testimony and proof that would cost considerably more to litigate than the claims would be worth to the plaintiffs. *See Thorogood*, 547 F.3d at 748. According to class counsel, they already have been contacted by over 350 consumers who have experienced the same wood rot problems set forth in the complaint. Where there are common issues and the accuracy of the resolution of those issues "is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *Mejdrech*, 319 F.3d at 911.

Another concern in consumer fraud cases is the issue of proximate causation. Pella argues that too many individual variances between class members exist, because wood can rot for many reasons other than window design and is affected by specific conditions such as improper installation. Proximate cause, however, is necessarily an individual issue and the need for individual proof alone does not necessarily preclude class certification. 5 William B. Rubenstein, Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 17.28, pp. 413-14 (4th ed. 2002). A district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments. See, e.g., *Arreola v. Godinez*, 546 F.3d 788, 799-800 (7th Cir. 2008); *Carnegie v. Household Int'l, Inc.*, 376 F.3d

8                                                                                  No. 09-8025

656, 661 (7th Cir. 2004). Under the district court's plan, class members still must prove individual issues of causation and damages. While it is almost inevitable that a class will include some people who have not been injured by the defendant's conduct because at the outset of the case many members may be unknown, or the facts bearing on their claims may be unknown, this possibility does not preclude class certification. *Kohen v. Pacific Inv. Management Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009), *citing* 1 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 2:4, pp. 73-75 (4th ed. 2002). The narrow way in which the district court defined the classes here eliminates concern that the definitions are overbroad or include a great many people who have suffered no injury.

Pella also argues that certification under Rule 23(b)(2) was inappropriate because this is really a case about money, and the class does not seek *final* injunctive relief as the rule requires, but only as a stop on the way to damages which individuals must then pursue. Rather than simplifying the litigation, Pella objects that the proposed declarations considered by the district court as injunctive relief are really illusory and will multiply, and even require, individual litigation. However, Pella mischaracterizes the effect of the six declarations contemplated by the district court. It is not necessarily the case that individual litigation would be required. The court split the purchasers of windows into two groups: those who have replaced their windows, and those who have not. Those who have replaced their windows are properly members of the (b)(3) class because they require the award of damages to make them whole. Those who have not replaced their windows but might in

No. 09-8025 9

the future because of the purported design flaw are properly members of a (b)(2) class. Such purchasers would want declarations that there is an inherent design flaw, that the warranty extends to them and specific performance of the warranty to replace the windows when they manifest the defect, or final equitable relief. *Cf. Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 471 (7th Cir. 2004) (suggesting class treatment of the equitable relief to be followed by individual damage proceedings where the equitable relief sought is the same for all class members).

If the district court finds in favor of the class and enters all six declarations, the cumulative effect will be an entitlement to have their windows replaced, and the (b)(2) class will benefit uniformly from the declarations. The contemplated process in which members may file a claim with Pella for service does not appear to be any different than the process by which an owner would file a claim with Pella under a warranty. Having to adjudicate coverage issues with a Special Master is necessary only if there is a dispute; it would not be required for every class member as Pella suggests. Morever, the district court specifically provided that "[t]here is no side-by-side recovery here." It explained that class members whose defect has not yet manifested are not included in the damages class; only once the windows experience any manifest defect, if ever, will the class members be able to submit a claim to Pella for repair.

Finally, Pella suggests that the manner in which the district court proposes to proceed will violate its Seventh Amendment rights because facts found by the

class jury would necessarily be reviewed by the individual juries. Pella argues that the first jury must decide how much the design of the windows, as opposed to other factors, contributed to rot and that the individual juries must then consider the same issue later, but proximate cause is an individual issue and will not be addressed by the class jury. The class jury will be asked to decide only if there was an inherent design defect present in the windows when they left the factory, whether Pella had a duty to disclose the defect, and whether Pella attempted to modify its warranty. Issues of causation and damages issues, such as whether that defect caused the damage to a particular window and how much the design contributed to the rot, will be handled individually. "Thus a class proceeding for equitable relief vindicates the seventh amendment as fully as do individual trials, is no more complex than individual trials, yet produces benefits compared with the one-person-at-a-time paradigm." *Allen*, 358 F.3d at 472.

Pella raises other minor concerns that relate primarily to the manageability of the class, but none of these demonstrate that the district court abused its discretion. Under Rule 23, district courts are permitted to "devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie*, 376 F.3d at 661; *see also Lemon v. Int'l Union of Oper. Engineers*, 216 F.3d 577, 582 (7th Cir. 2000). In making the decision to certify the classes, the district judge had before him hundreds of pages of legal briefing, as well as hundreds of pages of documents, deposition transcripts, and expert reports. Plaintiffs point out that they submitted a sample trial plan with a

comparative legal analysis of each subclass state, suggestions of how the case could be tried in phases, and a statement of class structure and remedies. Even the certification of the six state subclasses demonstrates that the district court carefully considered how the case would proceed, explicitly finding that the consumer protection acts of these six states have nearly identical elements and declining to certify a seventh state subclass that would have required a subjective analysis.

## III. CONCLUSION

The district court's decision to certify the two classes in this case did not contradict circuit precedent. While consumer fraud class actions present challenges that a district court must carefully consider, there are circumstances where certification is appropriate. We conclude that this case is one of those circumstances. We GRANT Pella's Rule 23(f) petition for permission to appeal and AFFIRM the decision of the district court certifying the classes.