# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DR. LEONARD E. SALTZMAN, BRAD ZURN, TIM BASTIAANSE, JOSEPH PALMIOTTO, AND JUDITH MCCLOSKY, individually and on behalf of all others similarly situated; | No.: 06 C 4481 |
| Plaintiffs, | Judge James Zagel |
| v. | Magistrate Judge Martin Ashman |
| PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation. | |
| Defendants. | |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (hereinafter "Agreement") is entered into by and between Dr. Leonard E. Saltzman, Brad Zurn, Tim Bastiaanse, Joseph Palmiotto, and Judith McClosky (the "Named Plaintiffs"), for themselves and on behalf of the Settlement Class (as defined below) and all members of the Settlement Class (collectively "Plaintiffs", as fully defined below), and Defendants Pella Corporation and Pella Windows and Doors, Inc. (collectively "Defendants") for the purpose of settling, and finally and completely resolving certain claims and lawsuits, as set forth herein, which the Named Plaintiffs, the Settlement Class, or any Settlement Class Member (as defined below) currently have/has against Defendants or any of the Releasees (as defined below), as well as any and all future or potential claims which the Named Plaintiffs, the Settlement Class, or any Settlement Class Member could have or may have against Defendants or any of the Releasees whether known or unknown, arising out of or in any way relating to the design, manufacture, sale, distribution, marketing, warranty, service, use,

2

performance, installation or purchase, or in any way relating to Pella ProLine Casement Windows (as defined below).

WHEREAS Named Plaintiffs have alleged that certain windows manufactured and/or sold by Defendants contained manufacturing and/or design defects that they claim have caused or will cause damage to class members' windows, window finishing, homes and/or personal property allegedly resulting from water-related intrusions; and

WHEREAS Named Plaintiffs have asserted various claims in this class-action Lawsuit (as defined below) against Defendants including claims for negligence, negligent misrepresentation, breach of contract, breach of express warranty, products liability, breach of implied warranty of merchantability, unjust enrichment, violation of Illinois Consumer Fraud and Deceptive Business Practices Act and substantially similar laws of certain other States, violation of similar Uniform Deceptive Trade Practices Acts, and common law fraud by omission; and

WHEREAS Defendants deny the allegations in this Lawsuit and assert numerous defenses to the claims alleged by the Named Plaintiffs in this Lawsuit; and

WHEREAS the U.S. District Court for the Northern District of Illinois has certified two litigation classes in this case, which certification was affirmed by the United States Court of Appeals, Seventh Circuit; and

WHEREAS the United States Supreme Court denied Defendants' Petition for Writ of Certiorari in connection with the Seventh Circuit's affirmance; and

WHEREAS the parties to this Agreement (the "Parties"), after having engaged in significant discovery in this Lawsuit, including written discovery, numerous depositions of Defendants' personnel, deposition of Named Plaintiff Dr. Leonard E. Saltzman and the production of documents, and having engaged in extensive arms-length settlement negotiations

3

with the assistance of independent mediators, have now reached an agreement providing for a nationwide resolution of all claims that have been or could have been brought by any Named Plaintiff or Settlement Class Member on behalf of the Settlement Class against the Defendants or any of the Releasees relating to Pella ProLine Casement Windows, with the exception of personal injury claims; and

WHEREAS Named Plaintiffs and Plaintiffs' counsel examined and considered the benefits to be provided to Settlement Class Members under the settlement provided for in this Agreement; considered the limited scope of the Court's class certification ruling and its ramifications for Settlement Class Members; considered the laws of the several States and the claims and defenses that could be asserted under those laws regarding Pella ProLine Casement Windows; and concluded the Agreement to be in the best interest of Settlement Class Members, taking into account the risks of litigation, and the length of time required to complete the litigation and any appeals; and

WHEREAS Defendants have at all times disputed, and continue to dispute, Named Plaintiffs' allegations in the Lawsuit and to deny any liability for any of the claims that have or could have been raised regarding Pella ProLine Casement Windows by Named Plaintiffs or any Settlement Class Member, but believe that the comprehensive resolution of the issues relating to Pella ProLine Casement Windows as provided in this Agreement will avoid the substantial expense and disruption of continued litigation; and

WHEREAS all Parties wish now to compromise their differences and achieve peace with finality on the issues in dispute;

NOW, THEREFORE, in consideration of all of the terms, conditions, covenants, and promises set forth herein, and subject to preliminary court approval, final court approval, entry of

4

judgment and dismissal with prejudice, in the manner required by the U.S. District Court for the

Northern District of Illinois, Eastern Division, under the Federal Rules of Civil Procedure, such

that this Lawsuit is completely and finally concluded, it is hereby agreed by and between the

Parties as follows:

**I.**      **DEFINITIONS**

As used in this Agreement, the following definitions shall apply:

1.   "**Administration Expenses**" means reasonable fees and expenses incurred by the

Settlement Administrator for administering the Settlement, including (1) preparation and mailing

of the Class Notice, part C.1 and the Claim Form, (2) preparation and completing notice by

publication, (3) receipt and determination of Settlement Claims submitted by Settlement Class

Members for compensation and/or benefits under this Settlement, (4) preparation of status

reports to the Parties, (5) preparation of tax returns for any settlement bank accounts, and (6)

distribution of settlement payments to eligible Settlement Class Members who timely submit

valid Claims.

2.   "**Agreement**" means this Class Action Settlement Agreement and the exhibits attached

hereto.

3.   "**Application**" means the application to be filed by Class Counsel in this Lawsuit for

recovery of attorneys' fees and costs incurred in connection with this Lawsuit and in negotiating

this Settlement, and for Class Counsel's future fees and costs to be incurred in connection with

monitoring the Settlement during the Settlement administration process.

4.   "**Arbitration Form**" means the Court-approved form substantially identical in all

material respects to the Arbitration Form attached hereto as Exhibit A, that can be used by

Settlement Class Members for submitting a Settlement Claim under the terms of this Agreement

governing the process for submitting and resolving arbitration claims as set forth in Paragraphs 83-98 of the Agreement. (*See also* ¶¶ 53-64).

5. "**Arbitration Process**" means the process Settlement Class Members must follow to seek, and receive, relief under, and as set forth, in paragraphs 83-98 of the Agreement. (*See also* ¶¶ 53-64).

6. "**CAFA Notice**" means notification of this proposed Settlement to certain federal and state officials, in accordance with 28 U.S.C. §1715.

7. "**Claim**" or "**Claims**" means any and all past, present, future or potential claims, demands, losses, suits, proceedings, payment of obligations, adjustments, executions, offsets, actions, causes of action, costs, defenses, debts, sums of money, assertions of rights, accounts, reckonings, bills, bonds, covenants, contracts, controversies, agreements, promises, expenses (including without limitation court costs and attorneys' fees), requests for relief of any kind, statutory or regulatory obligations, judgments or any liabilities of any nature whatsoever, known or unknown, anticipated or unanticipated, fixed or contingent, matured or un-matured, accrued or un-accrued, whether in law, equity, civil or criminal, whether sounding in tort, contract, equity, nuisance, trespass, negligence or strict liability, and which have been, could have been, or may be asserted by or on behalf of any person.

8. "**Claim Deadline**" means the date set by the Court 270 Days after entry of the Preliminary Approval Order by which the Claim Form or Arbitration Form must be either received by the Settlement Administrator or postmarked.

9. "**Claim Form**" means the Court-approved form substantially identical in all material respects to the Claim Form attached hereto as Exhibit B, that can be used by Settlement Class

Members for submitting a Settlement Claim under the Claims Process terms of this Agreement as set forth in Paragraphs 65-82 of this Agreement. (*See also* ¶¶ 53-64).

10. "**Claims Period**" means the 270-Day period between entry of the Preliminary Approval Order and the Claim Deadline.

11. "**Claims Process**" means the process Settlement Class Members must follow to seek relief under, and as set forth, in Paragraphs 65-82 of this Agreement. (*See also* ¶¶ 53-64).

12. "**Class Counsel**" means Richard J. Burke, Paul Weiss, and Julie D. Miller and the law firm of Complex Litigation Group, LLC; Jonathan Shub, Christopher Seeger and the law firm of Seeger Weiss LLP; Steven Jaffe and Mark Fistos and the law firm of Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.; Ben Schwartzman and the law firm Banduccie Woodward Schwartzman PLLC.

13. "**Class Notice**" means the Court-approved Notice of Proposed Class Action Settlement that is substantially identical in all material respects to that attached hereto as Exhibit C.

14. "**Court**" means the United States District Court, Northern District of Illinois, Eastern Division.

15. "**Date(s) of Sale**" means the date the Pella ProLine Casement Window at issue was sold by Pella Corporation or its authorized dealers or retailers. If a Settlement Class Member cannot establish the date the Pella ProLine Casement Window at issue was sold, the Date of Sale shall be the last day of the month following the month in which the window at issue was manufactured. For example, if a Settlement Class Member cannot establish the date the Pella ProLine Casement Window at issue was sold and the window at issue was manufactured in February of 1998, the Date of Sale would be March 31, 1998.

7

16. "**Day**" or "**Days**" unless otherwise noted, means a calendar day. In the event that any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such a date or deadline shall be on the first business day thereafter.

17. "**Defendants**" means Pella Corporation and Pella Windows and Doors, Inc.

18. "**Discount**" means a percentage off the Retailer's List Price on a Settlement Class Member's next purchase of a single Pella brand product unit which must be redeemed within two years of the date of the Final Approval Order, can be transferred once but only with the sale of a Structure which contains or contained Pella ProLine Casement Windows and only to the purchaser of said Structure, and must be redeemed at one of the Pella sales branches in the list attached hereto as Exhibit D.

19. "**Effective Date**" means the first date that is three Days after the date on which the judgment entered pursuant to the Final Approval Order shall be deemed "Final." The judgment entered pursuant to the Final Approval Order shall be deemed "Final" on the date upon which the judgment is no longer subject to any further appeal or judicial reconsideration or review. Thus, "Final" means, without limitation, the date of expiration of the time for the filing or noticing of any appeal from, or other request for judicial reconsideration or review of, the judgment entered pursuant to the Final Approval Order, without any appeal or other request for judicial reconsideration or review having been filed or noticed; or, if an appeal or other request for further judicial review of the judgment entered pursuant to the Final Approval Order is timely filed or noticed, the date on which all appellate and/or other judicial proceedings resulting from such filing(s) or notice(s) have been finally terminated, and the judgment entered pursuant to the Final Approval Order is effective without the possibility of further review by any court.

20. "**Eligible Claimant**" means each Settlement Class Member who (1) is the current or former owner of real property in the United States with a building or buildings in which a Pella ProLine Casement Window is or was installed; (2) timely signs and submits, under penalty of perjury, a properly completed and notarized Claim Form or Arbitration Form; (3) timely complies with the requirements to supply all information, documents, and photographs as required by this Agreement, and the Claim Form or the Arbitration Form; and (4) meets all the relevant criteria set forth in the Agreement.

21. "**Eligible Damage**" means past water related damage, current water related damage, or water related damage in the future—up to 15 years after the Date of Sale—to a Pella ProLine Casement Window, to the finishing on such window or to other property surrounding such window, such as water related damage to the Structure in which such window was installed because of water penetrating between the aluminum cladding of the window and the window Sash at the corner joint of the cladding or at the glazing/Sash interface. Eligible Damage includes wood deterioration and/or wood durability damage resulting from water penetrating between the aluminum cladding of the window and the window Sash at the corner joint of the cladding or at the glazing/Sash interface.

22. "**Final Approval Hearing**" means the final settlement approval hearing(s) to be conducted by the Court in connection with the determination of the fairness, adequacy, and reasonableness of this Agreement, and the award of attorneys' fees in accord with the Federal Rules of Civil Procedure and Due Process.

23. "**Final Approval Order**" means the Order granting final approval to the class action Settlement Agreement, entry of award of attorneys' fees, and entry of final judgment to be entered by the Court.

24. "**Initial Notice Date**" means that date, not later than 45 Days after the entry of the Preliminary Approval Order, by which the Settlement Administrator shall mail the Class Notice, part C.1. to Settlement Class Members for whom the parties have addresses.

25. "**Lawsuit**" means the class action lawsuit that is the subject of the Parties' Settlement and this Agreement, and which is pending, as of the date of this Agreement, in the Court as Case No. 06 C 4481.

26. "**Lead Class Counsel**" means Richard J. Burke, Paul M. Weiss and Julie D. Miller and the law firm of Complex Litigation Group, LLC; and Jonathan Shub, Christopher Seeger and the law firm of Seeger Weiss LLP.

27. "**Named Plaintiffs**" means Dr. Leonard E. Saltzman, Brad Zurn, Tim Bastiaanse, Joseph Palmiotto, and Judith McClosky.

28. "**Notice Plan**" means the Court-approved plan and schedule for providing class-wide notice of the Settlement and certification of the Settlement Class, including the Class Notice, in accord with the Federal Rules of Civil Procedure and as approved and ordered by the Court, and the CAFA Notice.

29. "**Opt-Out List**" means the complete and accurate list compiled by the Settlement Administrator of all Settlement Class Members who have timely requested exclusion from the Settlement Class and meet the requirements for exclusion, as set forth in this Agreement.

30. "**Opt-Out Period**" means the period beginning on the date Class Notice is provided and ending on the date set by the Court in the Preliminary Approval Order that is no more than 95 Days from the entry date of the Preliminary Approval Order.

31. "**Pella ProLine Casement Window**" or "**Pella ProLine Casement Windows**" means Pella ProLine® brand casement, awning, and/or transom windows (including 250 and 450

10

Series) manufactured by Pella Corporation between January 1, 1991 and December 31, 2006. For purposes of this Settlement, it shall be presumed that a window was manufactured in the same calendar year in which it was originally sold unless clear evidence to the contrary appears.

32. "**Plaintiffs**" or "**Settlement Class Members**" means Dr. Leonard E. Saltzman, Brad Zurn, Tim Bastiaanse, Joseph Palmiotto, and Judith McClosky,  and all members of the Settlement Class.  A Settlement Class Member shall not include any appointees, assignees, claims brokers, claims filing services, claims consultants or third-party claims organizations.

33. "**Pella Representative**" means a current employee of Pella Corporation or one of its wholly owned subsidiaries.

34. "**Prior Notice**" means  that a specific Settlement Class Member who is seeking benefits under this Agreement provided individual notice to a Defendant, any employee of Pella Corporation, or a Pella sales branch listed in Exhibit D, of wood deterioration, wood durability, or water intrusion problems with his or her own Pella ProLine Casement Windows.  Prior Notice for the purposes of this Agreement can be satisfied in two ways: (1) by the Settlement Class Member providing a copy of contemporaneously created documentation reflecting such notice; and (2) without contemporaneous documentation, by (a) the Settlement Class Member attesting under oath that he/she submitted such notice to Defendant, any employee of Pella Corporation, or a Pella sales branch listed in Exhibit D, but does not have contemporaneous documentation of that notice; and (b) upon receiving such an attestation, Pella Corporation checking its electronic data base and determining that it has a record of receiving such notice.  Prior Notice is not satisfied by (a) the filing of this Lawsuit, or (b) merely ordering replacement windows from Defendants.

35. "**ProLine Service Enhancement Program**" or "**PSEP**" refers to the program which provides the following services and benefits to claimants establishing water intrusion and wood durability damage:

1. Service coverage

   a. The program covers service related to wood durability of ProLine® transom, awning and casement windows manufactured from 1991 through 2003 and units of the same style and vintage sold in other channels such as the 250 Series and the 450 Series.

2. Benefit options within the warranty (years 1-10 after Date of Sale)

   a. Branches will provide replacement product or Sash consistent with the current warranty.

   b. Branches are expected to cover all reasonable customer labor and finishing costs (other than interior trim), except in extraordinary circumstances.

3. Benefit options in years 11 through 15 after Date of Sale

   a. Branches will provide the customer the opportunity to purchase replacement product on a sliding percent-off basis as follows:

   | Vintage | % off current Retailer's List Price | |
   | --- | --- | --- |
   | Year 11 | 45% off * | |
   | Year 12 | 40% off * | |
   | Year 13 | 35% off * | |
   | Year 14 | 30% off * | |
   | Year 15 | 25% off * | *per unit/Sash basis |

   b. In addition, the branch may choose to provide a similar discount on finishing and installation for customers in these situations.

12

36. "**Preliminary Approval Order**" means the Order conditionally certifying the Settlement Class, granting preliminary approval of the Settlement and this Agreement, and approving the Notice Plan, to be entered by the Court without material alteration to the form attached hereto as Exhibit E.

37. "**Released Claims**" means any and all past, present, future or potential Claims, including without limitation any claims, demands, losses, suits, proceedings, payment of obligations, adjustments, executions, offsets, actions, causes of action, costs, defenses, debts, sums of money, assertions of rights, accounts, reckonings, bills, bonds, covenants, contracts, controversies, agreements, promises, expenses (including without limitation court costs and attorneys' fees), requests for relief of any kind, statutory or regulatory obligations, judgments or any liabilities of any nature whatsoever, known or unknown, anticipated or unanticipated, fixed or contingent, matured or un-matured, accrued or un-accrued, whether statutory, in law, equity, civil or criminal, whether sounding in tort, contract, equity, nuisance, trespass, negligence or strict liability that the Named Plaintiffs, the Settlement Class, and/or any of the Settlement Class Members ever had, now have, or may later claim to have at any time in the future against the Releasees, whether known or unknown, arising out of or in any way relating to the design, manufacture, sale, distribution, marketing, warranty, service, use, performance, installation or purchase of, or in any way relating to Pella ProLine Casement Windows, including without limitation any and all Claims for breach of contract, breach of express or implied warranty, redhibition, strict liability, products liability, negligence, negligent misrepresentation, violations of state consumer protection and other statutory laws, declaratory relief, injunctive relief, unjust enrichment and/or fraud. The Released Claims include all known and unknown claims, actions, and causes of action, and this Agreement is expressly intended to cover and include all such

claims, actions, and causes of action, for losses or damages of any type, with the exception of personal injury claims which are expressly not released.

38. "**Releasees**" means (1) Defendants; (2) any predecessors and successors in interest, any current or former parent corporations, subsidiary corporations, affiliates, and assigns of Defendants; (3) companies acquiring any or all of Defendants' assets or capital stock; (4) any of Defendants' past or present, divisions, suppliers, distributors, dealers, or sales branches; (5) current or former officers, directors, shareholders, agents, representatives and employees of Defendants; and (6) insurers of any of the foregoing persons or entities.

39. "**Retailer's List Price**" means the retail price, before any discounts, sales, special offers or similar reductions in price, of Pella brand products established from time to time by the Pella sales branches in the list attached hereto as Exhibit D.

40. "**Sash**" means the portion of a Pella ProLine Casement Window that is made up of the glazing (glass) and the surrounding aluminum clad wood frame and which is either vented (i.e. hinged so it may open) or fixed.

41. "**Settlement**" means the Settlement provided for in this Agreement.

42. "**Settlement Administrator**" means the individual(s) and/or firm(s) retained to implement the Notice Plan and administer the Agreement as set forth in this Agreement.

43. "**Settlement Claim**" or "**Settlement Claims**" means the timely submission of a fully and properly completed Claim Form(s) or Arbitration Form(s) to the Settlement Administrator, including all required support.  Only one Settlement Claim can be submitted for each property with buildings in which Pella ProLine Casement Windows were installed, regardless of how many Eligible Claimants own or owned the property.

44. "**Settlement Class**" means all persons in the United States who are current or former owners of Structures containing Pella ProLine® brand casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between January 1, 1991 and December 31, 2006.

The Settlement Class excludes:

1.   All persons who timely opt out of the Lawsuit pursuant to the terms of this Agreement.

2.   All persons who, individually or as a member of a class, initiated legal proceedings against Defendants (other than this Lawsuit initiated by the Named Plaintiffs), whether resolved or not, before the entry of the Preliminary Approval Order by settlement, judgment, release, dismissal, or other final disposition resulting in the termination of the proceedings.

3.   All owners of Pella ProLine® brand casement, awning, and or/transom windows (including 250 and 450 Series) manufactured by Pella Corporation on or after January 1, 2007.

4.   All of Defendants' current employees.

45. "**Structure" or "Structures**" means all buildings located on a single property owned by an Eligible Claimant(s) in the United States.

## II.     PURPOSE

46. The purpose of this Agreement is to memorialize the terms and conditions of the Settlement through and by which the Parties wish to finally and conclusively resolve the Claims and disputes, arising out of or in any way relating to the design, manufacture, sale, distribution, marketing, warranty, service, use, performance, installation, or purchase of, or in any way relating to Pella ProLine Casement Windows, as set forth herein.

## III.     CONDITIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS

47. For the purposes of implementing this Agreement, and for no other purpose, Defendants stipulate to the conditional certification in this Lawsuit of the nationwide Settlement Class, as set forth in the Preliminary Approval Order.

48. If for any reason this Settlement should fail to become effective, the Parties' stipulation to conditionally certify the nationwide Settlement Class provided for in this Agreement shall be null and void, and the Parties shall return to their respective positions in this Lawsuit as those positions existed immediately before the execution of this Agreement.  Specifically, Defendants continue to deny the appropriateness of certifying this case as a litigation class, and only stipulate to the certification of the Settlement Class on the terms stated herein.

## IV.     REQUIRED EVENTS

### A.  PRELIMINARY APPROVAL

49. As soon as practicable after the execution of this Agreement, but at the latest within 28 Days, the Parties shall jointly move the court to enter the Preliminary Approval Order attached hereto as Exhibit E. The Preliminary Approval Order shall specifically include provisions that:

1. Preliminarily approve the Settlement and find that this Agreement is fair, reasonable, and adequate to the Settlement Class.

2. Conditionally certify the Settlement Class for the purpose of effectuating the Settlement.

3. Designate Named Plaintiffs as the representatives of the Settlement Class.

4. Designate Class Counsel as counsel for the Settlement Class.

5. Set a date for the Final Approval Hearing no later than 175 Days after the entry date of the Preliminary Approval Order.

6. Regarding Class Notice,

    a. approve the form and content of the Class Notice attached as Exhibit C;

    b. direct the Settlement Administrator to mail the Class Notice, part C.1. within 45 business Days of the entry of the Preliminary Approval Order (previously defined as the "Initial Notice Date") to all Settlement Class Members for whom the parties have addresses, using first-class mail, and having first updated the addresses using the National Change of Address database;

    c. direct the Settlement Administrator to post the Class Notice and this Agreement, along with other documents as agreed to by the Parties, on a website with the domain name "www.windowsettlement.com" within 10 Days of the entry of the Preliminary Approval Order;

    d. direct the Settlement Administrator to prepare a notice for publication, to be published within 45 Days of the entry of the Initial Notice Date in the publications upon which the Parties and the Settlement Administrator mutually agree.

e.  direct the Settlement Administrator to file proof of mailing of the Class Notice, part C.1. and proof of compliance with the Notice Plan at or before the Final Approval Hearing, along with the Opt-Out List;

f.  direct Defendants to file with the Court a declaration of compliance with the notice requirements, including the CAFA notice requirements, after notice has been given; and

g.  find that the Class Notice and the Notice Plan to be implemented pursuant to this Agreement are reasonable, constitute the best notice practicable under the circumstances, constitute due and sufficient notice of the Settlement and the matters set forth in said notice to all persons entitled to receive notice, and fully satisfy the requirements of due process and of Fed. R. Civ. P. 23.

7.  Regarding opt outs, require that:

a.  Any member of the Settlement Class who desires to request exclusion from the Settlement Class submit to the Settlement Administrator an appropriate, timely request for exclusion in the form set forth in the Class Notice to the address stated in the Class Notice on or before a date set by the Court that is no later than 95 Days from the entry date of the Preliminary Approval Order;

b.  Any exclusion be exercised individually by a Settlement Class Member, not as or on behalf of a group, class, or subclass, not by any appointees, assignees, claims brokers, claims filing services, claims consultants or third-party claims organizations; except that such exclusion request may be submitted by a Settlement Class Member's attorney on an individual basis;

    c. Any Settlement Class Member who does not submit a timely, written request for exclusion from the Settlement Class will be bound by all proceedings, orders, and judgments in the Lawsuit.

8. Regarding objections and requests to intervene, require that:

    a. Any Settlement Class Member that has not submitted a timely request for exclusion from the Settlement Class, and each governmental entity, that wishes to object to the fairness, reasonableness, or adequacy of this Agreement or any term or aspect of the proposed Settlement, or to intervene in the Lawsuit, must provide to the Settlement Administrator (who shall forward it to Lead Class Counsel and Counsel for Defendants) and file with the Court no later than 95 Days after the Initial Notice Date a statement of the objection or motion to intervene, including any support the Settlement Class Member or governmental entity wishes to bring to the Court's attention and all evidence the Settlement Class Member or governmental entity wishes to introduce in support of his or her objection or motion, or be forever barred from objecting or moving to intervene. Such a statement must (1) be made in writing, including a heading that refers to the Lawsuit by name and number; (2) contain the objector's or putative intervener's full name and current address; (3) declare that the objector or putative Settlement Class Member intervener currently owns, or formerly owned, a Structure containing a Pella ProLine Casement Window(s); (4) provide a statement of the objector's or intervener's specific objections to any matter before the Court and the grounds and arguments for the objection or request to intervene; (5) include

19

all documents and other writings the objector wishes the Court to consider and describe any and all evidence the objecting or intervening Settlement Class Member or governmental entity may offer at the Final Approval Hearing, including but not limited to, the names and expected testimony of any witnesses; and (6) be filed with the Court and served on the Settlement Administrator, Lead Class Counsel, and counsel for Defendants on or before a date set by the Court that is no later than 95 Days from the entry date of the Preliminary Approval Order. Any papers not filed and served in the prescribed manner and time will not be considered at the Final Approval Hearing, and all objections not made in the prescribed manner and time shall be deemed waived;

b.  Any Settlement Class Member who objects or requests to intervene shall make themselves available to be deposed by Class Counsel and counsel for Defendants in the county of the objector's or putative intervener's residence within 21 Days of service of his or her timely written objection or motion to intervene;

c.  Any objections or requests to intervene by a Settlement Class Member must be exercised individually by a Settlement Class Member, not as or on behalf of a group, class, or subclass, not by any appointees, assignees, claims brokers, claims filing services, claims consultants or third-party claims organizations; except that such objections or requests may be submitted by a Settlement Class Member's attorney on an individual basis;

20

d.  Any member of the Settlement Class or governmental entity that desires to appear in person at the Final Approval Hearing for purposes of objecting to the Settlement or intervening in the Lawsuit file with the Court and serve on Lead Class Counsel and counsel for Defendants a notice of appearance in the Lawsuit, in addition to simultaneously filing and serving with the written objections or intervention requests described above, on or before a date set by the Court that is no later than 95 Days from the entry date of the Preliminary Approval Order;

e.  Any responses to objections or motions to intervene must be filed with the Court and served upon Lead Class Counsel and counsel for Defendants on or before a date set by the Court that is no later than 135 Days from the entry date of the Preliminary Approval Order;

9.  Regarding attorneys' fees and costs, require that:

a.  Class Counsel, and any party's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs as of June 19, 2012, must file and serve their Application(s) on or before a date set by the Court that is no later than 75 Days from the entry date of the Preliminary Approval Order;

b.  Any objection to Class Counsel's and any party's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs' Application(s) be filed with the Court and served on Class Counsel and counsel for Defendants on or before a date set by the Court that is no later than 105 Days from the entry date of the Preliminary Approval Order;

    c.   Class Counsel, and any party's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs must file and serve any reply in support of their Application(s) on or before a date set by the Court that is no later than 115 Days from the entry date of the Preliminary Approval Order;

10. Regarding Settlement Claims, require that all Claim Forms or Arbitration Forms for damage up to the Claim Deadline must be either received by the Settlement Administrator or postmarked on or before the Claim Deadline set by the Court;

11. Designate Epiq Class Action & Claims Solutions, Inc. or a similarly qualified firm as the Settlement Administrator and instruct the Settlement Administrator to perform the functions specified in this Settlement Agreement, including:

    a.   Implement the Notice Plan;

    b.   Receive, evaluate, and either approve as meeting the requirements of this Agreement or disapprove as failing to meet those requirements, Claim Forms and Arbitration Forms sent by Settlement Class Members seeking to receive benefits provided for in this Agreement, all in accordance with this Agreement;

    c.   Provide to Defendants and Lead Class Counsel respectively true and accurate lists of the names and addresses of all Settlement Class Members who have submitted Claim Forms or Arbitration Forms and whose Claim Forms or Arbitration Forms the Settlement Administrator has determined to be (i) complete and valid or (ii) incomplete or invalid;

d.   Send to each Settlement Class Member who has submitted a Claim Form or Arbitration Form that the Settlement Administrator has determined not to be a valid Settlement Claim, and to Lead Class Counsel and Defendants' counsel, a Notice of Denied Claim in the form attached hereto as Exhibit F, or a Notice of Arbitration Ineligibility in the form attached hereto as Exhibit G, respectively;

e.   Send to each Settlement Class Member who has submitted a Claim Form that the Settlement Administrator has determined to be a complete and valid Settlement Claim for which the appropriate relief is determined under the terms of this Agreement, a Notice of Approved Claim in the form attached hereto as Exhibit H;

f.   Send to Lead Class Counsel, Defendants' counsel, and each Settlement Class Member who has submitted an Arbitration Form that the Settlement Administrator has determined to be a complete and valid Settlement Claim qualifying the Settlement Class Member for arbitration under the terms of this Agreement, a Notice of Arbitration Eligibility in the form attached hereto as Exhibit I;

g.   Process requests for exclusion from the Settlement in accordance with the terms of this Agreement;

h.   Before mailing the Class Notice, part C.1. and the Claim Form, establish a toll-free telephone number that Settlement Class Members can call and which contains recorded answers to frequently asked questions, along with an option permitting callers to speak to live operators or to leave messages in a

voicemail box, to request additional Claim or Arbitration Forms or additional information regarding the Settlement; and

i.  Within 30 Days after the payment of valid Settlement Claims for monetary compensation by the Settlement Administrator, provide (i) to Defendants' counsel and Lead Class Counsel a statement of the total number of Settlement Claims submitted, the total number of Settlement Claims determined to be valid, and the total dollar amount paid to Settlement Class members pursuant to the Agreement; and (ii) to Defendants' counsel all original Claim Forms, Arbitration Forms, and supporting documentation for each Settlement Claim determined to be valid pursuant to this Agreement, with a copy set to Lead Class Counsel.

12. Preliminarily enjoin all Settlement Class Members and their legally authorized representatives, unless and until they have timely and properly excluded themselves from the Settlement Class from:

a.  Filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims;

b.  Filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Member who has not timely excluded his or herself (including by seeking to amend a pending complaint to include class allegations or seeking

24

class certification in a pending action), based on, relating to, or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims; and

    c.  Attempting to effect an opt-out of a class of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based on, relating to or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims.

13. Adopt any additional provisions agreeable to the Parties that might be necessary to implement the terms of this Agreement and the proposed Settlement.

**B.  FINAL APPROVAL**

50. At the Final Approval Hearing the Parties will jointly request the Court to enter a Final Approval Order.  The Parties agree to cooperate in drafting a proposed Final Approval Order at the appropriate time.  The Final Approval Order shall specifically include provisions that:

    1.  grant final approval of the certification of the Settlement Class, designation of the Named Plaintiffs as the representatives of the Settlement Class, and designation of Class Counsel as counsel for the Settlement Class;

    2.  grant final approval of the Settlement and this Agreement as fair, reasonable, and adequate to the Settlement Class;

    3.  adjudge that the Class Notice and Notice Plan implemented for the Settlement Class Members were performed in a reasonable manner, constituted the best notice practicable under the circumstances, constituted due and sufficient notice of the Lawsuit and the Settlement, and fully satisfied the requirements of due process and Fed. R. Civ. P. 23;

4. order the dismissal with prejudice of all claims, causes of action, and counts alleged in the Lawsuit relating to Pella ProLine Casement Windows, and incorporate by reference the releases and covenant not to sue stated in this Agreement, with each of the Parties to bear its or his own costs and attorneys' fees, except as provided in this Agreement;

5. order the dismissal without prejudice of all claims in the Lawsuit that do not relate to Pella ProLine Casement Windows;

6. provide for the release of all Released Claims and permanently enjoin the Settlement Class Members from asserting, filing, maintaining, or prosecuting any of the Released Claims in the future;

7. having heard and considered any and all claims for attorneys' fees, costs, expenses, and disbursements by any party's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs in Saltzman et. al. v. Pella Corporation et al., Case No: 06 C 4481 as of June 19, 2012, authorize and direct the payment by Defendants of any such claim of attorneys' fees and expenses, which Order shall determine the extent of Defendants' obligation for the payment of attorneys' fees, costs, expenses, and disbursements; and shall provide that Defendants have no obligation for any attorneys' fees, costs, expenses, or disbursements to any counsel or law firm, for any party, beyond that awarded in the Final Approval Order and consistent with the terms of this Agreement;

8. authorize and direct the payment by Defendants of complete and valid Settlement Claims as approved by the Settlement Administrator as complete and valid Settlement Claims, in accordance with the term of this Agreement;

26

9. preserve the Court's continuing jurisdiction over the administration of the Settlement and enforcement of this Agreement;

10. determine that the Agreement and Settlement provided for herein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption of, concession of, or an admission by any Party of liability or non-liability or of the certifiability or non-certifiability of a litigation class, or of any alleged misrepresentation or omission in any statement or written document approved or made by any Party; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the provisions of this Agreement, as further set forth in this Agreement;

11. approve the Opt-Out List and determine that the Opt-Out List is a complete list of all Settlement Class Members who have timely and properly requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Approval Order and Judgment;

12. authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement and all Exhibits hereto as (1) shall be consistent in all material respects with the Final Approval Order and Judgment and (2) do not limit the rights of the Settlement Class Members.

### C. AGREEMENT TO COOPERATE

51. Plaintiffs, Lead Class Counsel, and Defendants will cooperate and take all reasonable actions to effectuate the Settlement and the terms and conditions of this Agreement. If the Court fails to enter either the Preliminary Approval Order or the Final Approval Order and Judgment, Named Plaintiffs, Lead Class Counsel, and Defendants will use all reasonable efforts that are consistent with this Agreement to cure any defect identified by the Court. If, despite such efforts, the Court does not enter the Preliminary Approval Order and Final Approval Order and Judgment, the Parties will return to their prior positions in the Lawsuit, in accordance with this Agreement.

52. Starting after the Settlement Administrator completes its duties, Pella Corporation, through its counsel, will provide Lead Class Counsel an annual summary of claims made under this Settlement and Agreement and the resolution of those claims through the year 2021. Such summary will be provided in March of the year following the year summarized. If Pella Corporation fails to provide an annual summary by the end of March, Lead Class Counsel may contact Pella Corporation's counsel to request the summary, and Pella Corporation's counsel will provide the summary within 30 Days.

## V. RELIEF TO CLASS MEMBERS, AND PROCEDURES FOR PROVIDING RELIEF TO CLASS MEMBERS

### A. SUMMARY OF RELIEF

53. Settlement Class Members are eligible to seek benefits under this Agreement if they have suffered Eligible Damage.

54. The Settlement provides benefits related to Settlement Class Members' unreimbursed out of pocket expenses for Eligible Damage. Some Settlement Class Members have already experienced Eligible Damage and have already repaired or replaced such damage. Other Settlement Class members have experienced Eligible Damage but have yet to repair or replace such damage. A third group of Settlement Class Members have yet to experience Eligible Damage but may do so in the future. Each of these groups of Settlement Class Members have had different experiences with respect to their Pella ProLine Casement Windows for which the benefits are set forth herein.

### B. SUMMARY OF AVAILABLE CASH BENEFITS

55. A Settlement Class Member may receive cash benefits under the Settlement either through the Claims Process or the Arbitration Process, but not both. Under the Claims Process, Eligible Claimants may receive a maximum cash benefit of up to $750 per Structure by filing a Claim Form containing the requisite information requested in the Claim Form. Under the Arbitration Process, Eligible Claimants may receive up to $6,000 per Structure through participation in an expedited Arbitration Process in which the Settlement Class Member will not have to prove a window defect, however, Defendants will retain all other defenses.

### C. SUMMARY OF AVAILABLE PROCEDURES TO SEEK BENEFITS

56. Settlement Class Members who have replaced or repaired Pella ProLine Casement Windows prior to the Initial Notice Date may submit a Settlement Claim for relief under this

29

Agreement through either the Claims Process or the Arbitration Process, but not both. Determinations under both the Claims Process and the Arbitration Process are binding, final, and not appealable.

57. Settlement Class Members with Eligible Damage to Pella ProLine Casement Windows which were unreplaced or unrepaired prior to the Initial Notice Date may seek relief under this Agreement through either the Claims Process or the Arbitration Process, but not both.

58. Settlement Class Members who have Pella ProLine Casement Windows or Structures that manifest Eligible Damage after the Claims Period ends may seek relief by contacting Pella's Customer Service Department at (800) 374-4758.

59. Settlement Class Members who have Pella brand windows which are not covered by this Agreement may contact Pella's Customer Service Department at (800) 374-4758.

### D.  SUMMARY OF LIMITATIONS

60. Settlement Class Members are eligible to seek benefits under this Agreement if, **and only if,** they have suffered Eligible Damage.  No recovery is allowed without satisfactory evidence of water-related damage consistent with said type of water penetration.

61. Lack of causation is a defense and damages due to failure to follow Pella's installation instructions, as well as other issues of installation, home construction, environmental conditions or maintenance are not compensable under this Agreement.  An example of non-recoverable damage includes, but is not limited to, (i) misuse, or intentional, reckless, accidental, and/ or negligent physical damage to a window caused directly or indirectly by a Settlement Class Member or other person; (ii) damage to windows to the extent resulting from natural disaster including, but not limited to fire, hurricane, wind, flood, earthquake or earth movement; (iii) damage resulting from causes unrelated to window performance (such as plumbing leaks,

interior water spills, fire damage, caulk or putty cracks, or any other defect in the structure); (iv) damage due to racking, covering or blocking of weep holes or drilling holes through the window frame; (v) damage due to improper storage, handling, installation, modification, or maintenance; (vi) damage due to an altered or reinstalled window; (vii) damage due to finishes, sealants or caulking not applied by Defendants or failure to finish the product in a timely manner; (viii) damage caused to wood, medium density fiberboard, or sheetrock, sills or jambs by natural weathering; (ix) damage caused by exterior leaks; and (x) damage caused by interior condensation.

     a.   For the Claims Process described in Paragraphs 65-82 below, a Settlement Class Member can establish causation by providing contemporaneous documentation of wood deterioration damage to one or more Pella ProLine Casement Windows and/or water damage to surrounding property and a statement under oath that the damage was not caused by any alternative cause identified in this paragraph. Pella may claim lack of causation due to an alternative cause of wood deterioration, but Pella shall have the burden to demonstrate lack of causation by contemporaneous documentation of the alternative cause. The Claims Administrator shall determine whether Pella has met its burden of proof to demonstrate lack of causation due to an alternative cause of wood deterioration.

     b. For the Arbitration Process described in Paragraphs 83-98 below, a Settlement Class Member must establish causation of damages from water intrusion behind the aluminum cladding due to the alleged defect. Settlement Class Members will not have to prove that their Pella ProLine Casement Windows have a "defect" in the aluminum cladding of the window and the window Sash at the corner joint of the cladding or at the glazing/Sash

interface, but the Settlement Class Member still has the burden of proving that the
"defect" caused the damages for which he/she is seeking compensation in arbitration.
Pella may provide evidence to an alternative cause of damages for which he/she is
seeking compensation in arbitration. The Arbitrator shall determine whether the
Settlement Class Member has met his/her burden of establishing causation.

62. Settlement Class Members may not obtain double recovery of damages. The benefits
provided by this Settlement are only available for expenditures beyond those for which
Settlement Class Members have already been compensated. Settlement Class Member claims
must be supported by some documentation of unreimbursed expenditures caused by their
Eligible Damage, such as installation, finishing, labor, and material expenses, if applicable, at
least in the amount to be paid. The Cash benefits herein are caps, not liquidated awards.
Benefits are not available for claims by current or former owners for loss of Structure value.

63. Expenditures made by the Settlement Class Member (whether unreimbursed or not) over
the set category caps, as set forth below, are limited by those caps and not subject to payment
under this Agreement.

64. Any relief received under this Agreement involving the replacement of any Pella ProLine
Casement Window shall not extend the warranty period. The warranty period will continue to be
determined only by the Date of Sale of the original windows that are the subject of the
Settlement Class Member's request for benefits under this Agreement.

### E.  SUMMARY OF CLAIMS PROCESS

#### 1.  Summary of Relief Available Under the Claims Process

65. Settlement Class Members who have, or had, windows or Structures with Eligible
Damage may be eligible for limited cash payments, in addition to any Discounts, or benefits

under the agreed scope of the ProLine Service Enhancement Program, as described below. Cash payments are only available for unreimbursed amounts shown on valid receipts or other financial records submitted by the Settlement Class Member and will in all cases be limited to a maximum of $750 per Structure, regardless of how many Pella ProLine Casement Windows exist in each Structure or how many windows or surrounding areas suffered damage. Under this Agreement, a Settlement Class Member shall not be entitled to make more than one Settlement Claim for each Structure owned by the Settlement Class Member. No Structure may be the subject of a Settlement Claim by more than one Eligible Claimant. By submitting a Settlement Claim under the Claims Process, a Settlement Class Member conclusively waives any right to pursue arbitration under this Settlement.

### 2. Total Cash Payment May Not Exceed $750 Per Structure

66. Settlement Class Members who otherwise meet the requirements of the Claim Process as set forth in this Agreement, and who are eligible to receive cash benefits under this Agreement may not receive more than $750 in cash payments per Structure, notwithstanding the number of windows or number of current or former owners of any structure. Regardless of the number of Eligible Claimants who are current or former owners for any given Structure, cash payments on all claims made under this Agreement for a single Structure cannot exceed $750.

### 3. Prior Notice Determination

67. For Settlement Class Members who contend under oath they submitted Prior Notice but do not have contemporaneous documentation of the notice, Pella Corporation will check its electronic data base to determine whether it has any record of having received such notice and the claimant will satisfy the notice requirement of this Agreement if, but only if, documentation of the notice is found in that database;

33

**F. CLAIMS PROCESS BENEFITS FOR ELIGIBLE DAMAGE TO PELLA PROLINE CASEMENT WINDOWS REPLACED OR REPAIRED PRIOR TO THE INITIAL NOTICE DATE**

**1. Windows repaired or replaced before August 18, 2003**

68. Settlement Class Members who have Eligible Damage and otherwise meet the requirements of the Claims Process and this Agreement, and who repaired or replaced a Pella ProLine Casement Window before August 18, 2003, are entitled to the following relief:

    a. **No Prior Notice**:

        If the Eligible Claimant repaired or replaced the window without Prior Notice to Defendants, Defendants will take steps that provide a 15% Discount.

    b. **Prior Notice:**

        If the Settlement Class Member gave Prior Notice of the damage to Defendants prior to the Initial Notice Date and before repairing or replacing the window, Defendants will pay for un-reimbursed expenditures made by the Eligible Claimant as follows:

        **i.  If the date of Prior Notice was within 10 years after the Date of Sale:**

            1.  Up to $175 per window or $100 per Sash for un-reimbursed expenditures for windows, Sashes, installation or finishing.

        **ii.  If the date of Prior Notice was within years 11-15 after the Date of Sale:**

            1.  Up to $60 per window or per Sash for the cost of the window or Sash.

2.   **Windows repaired or replaced on or after August 18, 2003**

69. Settlement Class Members who have Eligible Damage and otherwise meet the

requirements of the Claims Process and this Agreement, and who repaired or replaced a Pella

ProLine Casement Window on or after August 18, 2003, are entitled to the following relief:

   a.   **No Prior Notice:**

   If the Eligible Claimant repaired or replaced the window without Prior

   Notice to Defendants:

      i.   **For Dates of Sale from 1991 through 2003:**

         1.   Defendants will take steps that provide a 15% Discount.

      ii.   **For Dates of Sale from 2004 through 2006:**

         1.   Defendants will take steps that provide a 10% Discount.

   b.   **Prior Notice:**

   If the Eligible Claimant gave Prior Notice of the damage to Defendants

   before repairing or replacing the window, Defendants will pay for un-

   reimbursed expenditures made by the Eligible Claimant as follows:

      i.   **For Dates of Sale from 1991 to 2003:**

         1.   **If the date of Prior Notice was within 10 years after the Date of Sale:**

            a)   Up to $250 per window or $120 per Sash for the cost of

               installation/finishing,

            b)   Up to $100 per window or $60 per Sash for the cost of the

               window or Sash, and

            c)   Up to $100 per structure for other damages to the Structure in

               which the window was installed.

35

      **2.**    **If the date of Prior Notice was within years 11-15 after the Date of Sale:**

           a)    Up to a total of $100 per window or $60 per Sash for the cost of the window or Sash.

**ii.**    **For Dates of Sale from 2004 to 2006:**

           a)    up to $175 per window or $100 per Sash for the cost of installation/finishing,

           b)    up to $100 per window or $60 per Sash for the cost of the window or Sash, and

           c)    up to $100 per Structure for other damages to the Structure in which the window was installed.

### G. CLAIMS PROCESS FOR PELLA PROLINE CASEMENT WINDOWS REPLACED OR REPAIRED PRIOR TO THE INITIAL NOTICE DATE

70. During the Claims Period, the Settlement Administrator shall establish and staff a telephone system in a manner reasonably agreeable to the Parties to answer a toll-free telephone number, to return calls before the end of the next business day or as soon as practical, and to respond to inquiries by Settlement Class Members regarding the Settlement or the Agreement. The Notice Plan shall direct persons who believe they may be Settlement Class Members to (1) call the toll-free number to request a copy of the Class Notice and/or Claim Form be sent to them via regular mail, facsimile, or email; or (2) visit the website "www.windowsettlement.com", which also shall be established prior to the Initial Notice Date, where such information may also be accessed and/or downloaded.

### 1. Process for submitting, processing and resolving claims

#### a. Submitting Settlement Claims

71. To submit a Settlement Claim under the Claims Process, Settlement Class Members must complete a written Claim Form with the requested information, under penalty of perjury, have it notarized, and submit it to the Settlement Administrator together with the required documentation on or before the Claim Deadline. Settlement Class Members must submit documentation and/or photographs for each ProLine Casement Window, as specified in this Agreement and the Claim Form, at issue sufficient to show:

      i.      That each window at issue is, in fact, a ProLine Casement Window;

      ii.     The date when the Pella ProLine Casement Window was sold and installed;

      iii.    Whether the wood portion of the Pella ProLine Casement Window that faces the interior of the building was "finished", i.e., painted,

stained, or varnished, and, if so, and to the extent known, whether the window was sold already finished or whether it was finished after sale or installation by someone other than Defendants (e.g., the owner of the Structure, a contractor or a painter).

iv.     The damage is consistent with having been caused by water penetrating between the aluminum cladding and Sash of the window at the corner joint of the cladding or at the glazing/Sash interface and not with damage from defective installation, home construction, maintenance, etc. (*see eg* ¶¶ 21, 60-61, above);

v.     Verification that the Settlement Class Member is/was the owner of the property at issue during the period when the Pella ProLine Casement Windows were/need to be repaired or replaced (examples of sufficient verification of property ownership include a copy of property tax bills for the relevant year, a copy of property deeds or deeds of trust, a copy of a declaration page from a policy of title or homeowners insurance, a copy of mortgage statement, a copy of mortgage payment coupon, other documentation for the relevant year demonstrating ownership for the relevant year, including the property address). If the Settlement Class Member is the owner of an individual living unit such as a condominium or townhouse, the Settlement Class Member must also provide satisfactory proof that he or she has/had the maintenance obligation during the period when the Pella ProLine Casement Windows were/need to be repaired or

replaced for the types of damage described in this Agreement (an example of satisfactory proof would be a copy of the Covenants, Conditions and restrictions governing the condominium or townhouse);

vi.   That the Settlement Class Member provided Prior Notice to a Defendant of any water-related damage to their Pella ProLine Casement Window before repairing or replacing the windows.  For Settlement Class Members who contend under oath they submitted such notice to a Defendant but do not have contemporaneous documentation of the notice, Pella Corporation will check its electronic data base to determine whether it has any record of having received such notice and the claimant will satisfy the notice requirement of this Agreement if, but only if, documentation of the notice is found in that database;

vii.   If any water-related damage already has been repaired or replaced, a summary of the repair or replacement performed and costs of such repair or replacement (e.g., costs for labor, window product, paint, wallboard, or other materials necessary to repair the damage),  and copies of receipts or other financial records showing the amount of expenditures incurred by the Settlement Class Member to repair or replace the damage, and documentation showing when the repair or replacement was made;

viii.    If any water-related damage to the Structure is evident but has not yet been repaired or replaced, proof of the costs to repair or replace such damage (such as a qualified contractor's written estimate), including costs for labor for installation, for labor for finishing, for paint, stain, or varnish, for wallboard, or other materials necessary to repair the damage to the Structure;

ix.    Acknowledgement that no reimbursement, compensation, settlement, or adjudication from Defendants, a Pella sales branch, a contractor or any other third party (whether or not related to Defendants or a Pella sales branch) already has occurred regarding the Pella ProLine Casement Windows at issue; or alternatively stating the amount of reimbursement, compensation, settlement, or adjudication the Settlement Class Member received.

**b.   Processing Claims**

72. Processing of each Claim Form by the Settlement Administrator shall commence when the Settlement Administrator receives a Claim Form from a Settlement Class Member with the information, documents, and photographs required by the Claim Form and this Agreement. The Settlement Administrator shall advise, in writing, any Settlement Class Member who fails to submit all information, documents, or photographs required by the Claim Form and this Agreement and request the Settlement Class Member to supply the missing information, documents, or photographs, by sending the Settlement Class Member a Notice of Incomplete Claim, in the form attached hereto as Exhibit J. Any request by the Settlement Administrator for additional information, documents, or photographs must be in writing and sent to the Settlement

Class Member within 30 Days after the Settlement Administrator makes the determination that the Settlement Class Member failed to submit the necessary information, documentation, and/or photographs..

73. If a Settlement Class Member does not provide the Settlement Administrator with information, documents, or photographs requested as set forth in this Agreement, within 30 Days after the Settlement Administrator sends such request, the Settlement Claim will be considered denied to the extent the Settlement Class Member has failed to supply the missing information, documents, or photographs, without prejudice to the right of the Settlement Class Member to re-file a Claim Form within the Claims Period and the Settlement Administrator will send the Settlement Class Member a Notice Of Denied Claim in the form attached hereto as Exhibit F. No Claim Form originally submitted after the expiration of the Claims Period will be processed under this Agreement.

### c.  Resolving Settlement Claims

74. For Settlement Class Members whose Settlement Claims meet the terms of this Agreement, the Settlement Administrator will, after the Effective Date, send a Notice of Approved Claim in the form attached hereto as Exhibit H, together with a check in the amount of any cash payment that is awarded, and/or a statement describing any benefits, Discounts, or cash payments for which the Settlement Class Member may be eligible along with an explanation of how to redeem such Discounts and/or request such benefits and/or cash payments.

75. To Settlement Class Members whose Settlement Claims do not meet the terms of this Agreement, the Settlement Administrator will send them a Notice Of Denied Claim in the form attached hereto as Exhibit F. The Settlement Administrator's decisions shall be final. Settlement

Class Members who submit a Claim Form but do not satisfy the eligibility criteria of this Agreement will not recover benefits under this Settlement.

### d. Payments

76. Any award or payment due under this Agreement shall be made after the Effective Date, and made directly and exclusively to the Settlement Class Member. The Settlement Class Member may not assign or otherwise transfer his or her rights under this Agreement, with the exception of a Discount, as set forth in paragraph 18. All communications regarding this Agreement and settlement checks, if applicable, will be sent only to the address for Eligible Claimant or his or her Counsel. Checks may be imprinted with language indicating that they cannot be negotiated by anyone other than the payee stated on the check.

### F. CLAIMS PROCESS BENEFITS FOR PELLA PROLINE CASEMENT WINDOWS WITH DAMAGE UNREPAIRED PRIOR TO THE INITIAL NOTICE DATE

77. Settlement Class Members who have Eligible Damage and otherwise meet the requirements of the Claims Process and this Agreement, and who have Pella ProLine Casement Windows with Eligible Damage unrepaired prior to the Initial Notice Date are entitled to the following relief:

    1.   **For Dates of Sale from 1991 to 2003:**

        a.   **If the Settlement Claim is made within 10 years after the Date of Sale:**

            i.   The remedies and benefits offered by the product warranty and the PSEP, and

            ii.   Additionally, up to $100 per Structure for otherwise unreimbursed expenditures the Settlement Class Member must make to remedy damages to the Structure for Eligible Damage.

       **b.**   **If the Settlement Claim is made within years 11-15 after the Date of Sale:**

          i.   Defendants will take steps that provide the Settlement Class Member the remedies and benefits offered by the PSEP.

  2.   **For Dates of Sale from 2004 to 2006:**

         i.   (a) the remedies and benefits offered by the product warranty, and (b) PSEP benefits of (i) discounts for replacement windows as set forth in paragraph 35, and (ii) labor and finishing benefits after the Settlement Class Member has expended a deductible amount of $100 per unit.

**G. CLAIMS PROCESS FOR PELLA PROLINE CASEMENT WINDOWS WITH DAMAGE UNREPAIRED PRIOR TO THE INITIAL NOTICE DATE**

  1.   **Process for submitting, processing, resolving, and payment of claims**

       **a.**   **Submitting and Processing Settlement Claims**

78. To submit a Settlement Claim under the Claims Process, Settlement Class Members must complete a written Claim Form under penalty of perjury, have it notarized, and submit it to the Settlement Administrator together with the required documentation on or before the Claim Deadline. Settlement Class Member Claim Forms seeking benefits under this section shall be processed in the same manner as set forth above in Paragraphs 71-73.

       **b.**   **Resolving Settlement Claims**

79. The Settlement Administrator will review Settlement Class Members Claim Forms seeking benefits under this section and preliminarily determine whether or not the Settlement Claim meets the eligibility criteria set forth in the Agreement.

80. To Settlement Class Members whose Settlement Claims do not meet the terms of this Agreement, the Settlement Administrator will send a Notice of Denied Claim in the form

attached hereto as Exhibit F.  Settlement Class Members who submit a Claim Form but do not satisfy the eligibility criteria of this Agreement will not recover benefits under this Settlement.

81. To Settlement Class Members whose Settlement Claims the Settlement Administrator preliminary determines meet the eligibility criteria of the Agreement, the Settlement Administrator will, after the Effective Date, send a Notice of Approved Claim in the form attached hereto as Exhibit H.  The Notice of Approved Claim will direct the Settlement Class Member to contact Pella's Customer Service Department at (800) 374-4758 for information regarding possible benefits under the product warranty and the ProLine Service Enhancement Program, and any cash benefits, if applicable.  Pella will administer its product warranty and the PSEP in their normal course, including the ability to reject claims for damages not covered by the Warranty or the PSEP.  Cash benefits, if any, will be determined under the terms of this Agreement.  After all such claims have been processed and paid, if applicable, Pella Corporation, through its counsel, will provide Lead Class Counsel a report of claims applied for and claims paid under this provision.

### c.    Payment of Settlement Claims

82. If Defendants determine that the Settlement Class Member has otherwise unreimbursed damage to his/her Structure of the type of which is covered by this Agreement, Defendants will, after the Effective Date, provide the Settlement Class Member a check for any otherwise unreimbursed expenditures, up to $100 per Structure, consistent with the criteria set forth in this Agreement.  Any award or payment due under this Agreement shall be made directly and exclusively to the Settlement Class Member.  The Settlement Class Member may not assign or otherwise transfer his or her rights under this Agreement, with the exception of a Discount, as set forth in paragraph 18.  All communications regarding this Agreement and settlement checks, if

44

applicable, will be sent only to the address for Eligible Claimant or his or her Counsel. Checks may be imprinted with language indicating that they cannot be negotiated by anyone other than the payee stated on the check.

### H. THE ARBITRATION PROCESS

#### 1. Summary of relief available under arbitration

83. Settlement Class Members who have, or had, Eligible Damage to their Pella ProLine Casement Windows or to other property such as the Structure surrounding those windows may be eligible to seek a cash award in binding arbitration in lieu of the Claims Process, described above, for unreimbursed expenditures made by the Settlement Class Member, and/or for necessary expenditures to remedy existing damage to the Structure (if the Settlement Class Member still owns the Structure). The cash award will in all cases be limited to a maximum of $6,000 per Structure, for all damage, including damage to the window(s) and the structure. Settlement Class Members who submit a claim for arbitration conclusively waive the right to seek relief through the Claims Process.

#### 2. Eligibility criteria for arbitration

84. Settlement Class Members are eligible to seek relief in arbitration only if they:

    a. Establish they are within the Settlement Class; (*see* ¶¶ 44, 71)

    b. Establish (with contemporaneous documentation) that prior to repairing or replacing the window(s) and prior to the Initial Notice date, that notice of wood deterioration, wood durability, or water intrusion problems with their own Pella ProLine Casement Windows or the surrounding Structure covered by this Agreement was provided to one of the Defendants, any employee of Pella Corporation, or a Pella sales branch as listed in Exhibit D. For

45

Settlement Class Members who contend under oath they submitted such notice to Pella but do not have contemporaneous documentation of the notice, Pella Corporation will check its electronic data base to determine whether it has any record of having received such notice and the claimant will satisfy the notice requirement of this Agreement if, but only if, documentation of the notice is found in that database;

c.      Timely complete an Arbitration Form, attached hereto as Exhibit A, with all the requested information and documentation;

d.      Establish they are the original purchasers of Pella ProLine Casement Windows or owned the Structures in which the windows were installed at the time of installation;

e.      Establish they are the current owners of the Structures containing Pella ProLine Casement Windows or in which the Pella ProLine Casement Windows have been replaced or removed while they owned the Structures; or former owners of the Structures containing Pella ProLine Casement Windows in which they repaired or replaced their Pella ProLine Casement Windows while owning the Structures; (*see* ¶ 72 v.)

f.      Establish they have or had Pella ProLine Casement Windows and/or surrounding property that already have Eligible Damage;

g.      Attest under oath the date when any damage to the Pella ProLine Casement Window or surrounding Structure was discovered; and

h.      Can either (i) make the damaged windows and/or surrounding property available to be inspected at Defendants' option and expense; (ii)

46

demonstrate that the windows and/or surrounding property already have been inspected by a Pella Representative; or (iii) attest under oath that they reported the alleged damage to Defendants, any employee of Pella Corporation, or a Pella sales branch as listed in Exhibit D when it was discovered so that Defendants had the opportunity to inspect the alleged damage and such attestation is confirmed by Defendants' review of Pella Corporation's electronic service database. If arbitration eligibility is sought under option (iii), and Defendants' review of the Pella Corporation electronic service database does not locate a record of the alleged notice, then Defendants must submit an attestation to the same under oath, which will create a presumption that the Settlement Class Member is not entitled to pursue arbitration under this Agreement. The presumption may only be rebutted by contemporaneous documentation (such as a copy of an email from the time of the original complaint to Defendants) demonstrating a contact with Defendants, showing that Defendants had an opportunity to inspect the windows in question.

**3. Process for submitting and resolving Settlement Claims under arbitration**

      **a. Submitting Settlement Claims under arbitration**

85. To submit a Settlement Claim under arbitration, Settlement Class Members must complete a written Arbitration Form, have it notarized, and submit it to the Settlement Administrator on or before the Claim Deadline. The Arbitration Form will require Settlement Class Members to show that they satisfy the eligibility criteria for arbitration under this Agreement and also provide:

47

    i.    The Settlement Class Members' identifying information, including name, address, phone, and email address;

    ii.    The addresses of the Structures in which the Pella ProLine Casement Windows for which they seek relief are/were installed;

    iii.    The number of Pella ProLine Casement Windows they claim experienced the Eligible Damage; and

    iv.    A statement that in lieu of opting out of the Settlement Class or seeking benefits under the Claims Process, they elect to pursue the possibility of recovery in arbitration.

**b.   Screening eligible Settlement Claims under arbitration**

86. Beginning after the Effective Date, the Settlement Administrator will review submitted Arbitration Forms. The Settlement Administrator shall advise, in writing, any Settlement Class Member who fails to submit all necessary information and documentation and/or photographs required by the Arbitration Form and this Agreement and request the Settlement Class Member to supply the missing information, documents, or photographs, by sending the Settlement Class Member a Notice of Incomplete Arbitration Form, in the form attached hereto as Exhibit K. Any request by the Settlement Administrator for additional information, documents, or photographs must be in writing and sent to the Settlement Class Member within 30 Days after the Settlement Administrator makes the determination that the Settlement Class Member failed to submit the necessary information, documentation, and/or photographs.

87. If a Settlement Class Member does not provide the Settlement Administrator with information, documents, or photographs requested as set forth in the Arbitration Form and/or this Agreement, within 30 Days after the Settlement Administrator sends such request, the Settlement

48

Claim will be considered denied and the Settlement Administrator will send the Settlement Class member a Notice Of Arbitration Ineligibility in the form attached hereto as Exhibit G. No Arbitration Form originally submitted after the expiration of the Claims Period will be processed under this Agreement.

88. For those Settlement Class Members who do not satisfy the eligibility criteria for Arbitration under this Agreement, the Settlement Administrator will send them a Notice Of Arbitration Ineligibility in the form attached hereto as Exhibit G. Settlement Class Members who submit an Arbitration Form but do not satisfy the eligibility criteria will not recover benefits under this Settlement.

89. The Settlement Administrator will send a Notice of Arbitration Eligibility in the form attached hereto as Exhibit I to Settlement Class Members who satisfy the eligibility criteria for Arbitration under this Agreement. The Settlement Administrator will also send a copy of any Notices of Arbitration Eligibility to Lead Class Counsel and Defendants.

### c. Adjudicating eligible arbitration claims

90. The following rules and procedures will govern the arbitration of eligible Settlement Claims:

### i. Selection of arbitrator

91. Defendants and Lead Class Counsel will mutually agree on third-party arbitrators. Defendants and Lead Class Counsel will jointly identify and agree on acceptable arbitrators in at least five different regions of the United States to maximize convenience for Settlement Class Members.

### ii. Participation by attorneys

92. Attorneys are not required for either party, but either party may choose to be represented by attorneys.

### iii. Costs and fees

93. Defendants will pay the arbitrators' fees, but each side will pay its own attorneys' fees and costs (if any) and the arbitrator will not have the authority to shift attorneys' fees or costs.

### iv. Discovery

94. The parties may engage in abbreviated written discovery limited to damages caused to the specific Pella ProLine Casement Windows at issue and/or the property surrounding those windows, causation of such damages, and issues, if any, relevant to Defendants' defenses, including reasonable and economic production of claim specific documents by Defendants relevant to the Settlement Class Members' Settlement Claim under arbitration, but not including general corporate documents, financial documents, design drawings, marketing materials, or documents related to engineering, design, manufacturing, operations matters, or documents or information relating to whether the Pella ProLine Casement Windows were "defective." Customer service files within the custody or control of Pella Corporation, or other documents that discuss the specific window units in the specific Structure at issue of the Settlement Class Member at issue, are subject to discovery from Defendants. Defendants may elect at their expense to conduct an inspection of the Settlement Class Members' window units, installation, and other components, as well as of the Structure housing the window unit(s). All discovery will be conducted under the auspices of the arbitrator.

### v.    Hearing

95. The arbitrator will conduct a hearing in person, by telephone, or by other reasonable means agreed to by the Settlement Class Members and Defendants, or in the absence of agreement, as determined by the arbitrator. The Settlement Class Members and Defendants may call witnesses at the hearing if they so choose.  The Settlement Class Members may provide documentation in support of their claim such as photographs of the unit(s), reports of contractors, experts, or other fact witnesses, and other documentation as the arbitrator may find to be reasonable to support the claimed Eligible Damages.

### vi.    Rules of decision

96. The arbitration decision or award shall be based upon pure comparative fault with no joint and several liability.  Defendants reserve all defenses, including without limitation statute of limitations, comparative fault, failure to mitigate damages, and lack of causation, and the arbitrator must make written legal and factual rulings on such defenses. Whether the Pella ProLine Casement Windows were "defective" shall not be admitted, but shall not be disputed by Defendants for purposes only of the arbitration. As such, Settlement Class Members will not have to prove that their Pella ProLine Casement Windows have a "defect" in the aluminum cladding of the window and the window Sash at the corner joint of the cladding or at the glazing/Sash interface, but the Settlement Class Member still has the burden of proving that the "defect" caused the damages for which he/she is seeking compensation in arbitration.  The arbitrator will hear evidence and make written findings as to how any of claimant's damages occurred and the reasonable amount of those damages, if any, directly attributable to water penetrating between the aluminum cladding of the window and the window Sash at the corner joint of the cladding or at the glazing/Sash interface of the Pella ProLine Casement Windows.

Any damages not directly attributable to water penetrating between the aluminum cladding of the window and the window Sash at the corner joint of the cladding or at the glazing/Sash interface of the Pella ProLine Casement Windows, such as failure to comply with Pella installation instructions or other installation issues, improper home construction, environmental conditions, or failure to properly maintain the windows, will be excluded from the award. The arbitrator may only award monetary relief for unreimbursed damages established to have been caused by Pella ProLine Casement Windows, for Eligible Damage to the Pella ProLine Casement Windows and the surrounding Structure (and no benefit may be awarded for loss of Structure value) and the maximum amount of money that the arbitrator may award is $6,000 per Structure for all purposes. The arbitrator may not award any non-monetary relief or action, equitable relief, replacement product, attorneys' fees or costs, any other mandatory contribution, or any other monetary relief or contribution.

### vii.    Arbitration decision binding and non-appealable

97. The decision of the arbitrator shall be binding on all parties and may not be appealed.

### viii.    Payments

98. Any award or payment due under the Arbitration Process shall be made by Defendants directly and exclusively to the Settlement Class Member. The Settlement Class Member may not assign or otherwise transfer his or her rights to such payment. All communications regarding payments, if applicable, will be sent only to the address of the Eligible Claimant or his or her legal counsel. Checks may be imprinted with language indicating that they cannot be negotiated by anyone other than the payee stated on the check.

## I.  FUTURE RELIEF

99. For Settlement Class Members who have Eligible Damage and otherwise meet the eligibility criteria of this Agreement and who seek relief for repairs for Eligible Damage after the close of the Claim Period but within the maximum period for which this Settlement provides them benefits, Defendants will take steps that provide Settlement Class Members who contact Pella Customer Service Department at (800) 374-4758, the following relief, which will be administered by Defendants directly and not the Settlement Administrator:

1.  **For Dates of Sale from 1991 to 2003:**

    a.  The remedies and benefits (if any) offered by the product warranty and the PSEP, and

    b.  a 15% Discount.

2.  **For Dates of Sale from 2004 to 2006:**

    a.  **If the Settlement Claim is made within 10 years after the Date of Sale:**

        i.  the remedies and benefits (if any) offered by the product warranty, and (b) PSEP benefits of (i) discounts for replacement windows as set forth in paragraph 35, and (ii) labor and finishing benefits after the Settlement Class Member has expended a deductible amount of $100 per unit.

    b.  **If the Settlement Claim is made within years 11-15 after the Date of Sale:**

        i.  Defendants will take steps that provide the Settlement Class Member the remedies and benefits (if any) offered by the PSEP.

## VI.    COSTS OF NOTICE AND CLAIMS ADMINISTRATION

100.    In addition to providing the benefits described in Section V above, Defendants will pay the Administration Expenses. Defendants shall not be responsible for any cost that may be incurred by, on behalf of, or at the direction of Plaintiffs, Plaintiffs' counsel, or Class Counsel in (a) responding to inquiries about the Settlement, this Agreement, or the Lawsuit; (b) defending this Agreement or the Settlement against any challenge to it; (c) defending against any challenge to any order or judgment entered pursuant to the Settlement and this Agreement; or (4) completing the Claims Process or Arbitration Process.

## VII.   CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS

101.    Class Counsel, and any party's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs as of June 19, 2012, shall file an Application asking the Court for an award of attorneys' fees, costs, expenses, and disbursements in the Lawsuit totaling no more than eleven million dollars (**$11 Million**).  The Named Plaintiffs will apply to the Court for an incentive award to be paid out of the attorneys fee award to Class Counsel.  Class Counsel has recommended an incentive award of $10,000 to Dr. Leonard Saltzman and $5,000 each to plaintiffs Tim Bastiaanse, Joseph Palmiotto, Brad Zurn and Judith McClosky.  Defendants agree not to oppose requests to the Court for attorneys' fees, costs, expenses, and disbursements in the Action totaling no more than eleven million dollars (**$11 Million**), subject to the limitations in the Final Approval Order as described in paragraph 50(7). The ultimate amount of any of these awards will be determined by the Court.

102.    Defendants agree that on or before 10 Days following the Court's entry of the Final Approval Order, Defendants shall deposit the sum awarded and approved by the Court for attorneys' fees, costs, expenses and disbursements, up to eleven million dollars (**$11 Million**),

into an interest-bearing escrow account ("Escrow Account") maintained at Wells Fargo pursuant to an escrow agreement to be entered into among Pella Corporation, Lead Class Counsel, and the depository bank, as escrow agent (the "Escrow Agent"). The Escrow Agreement shall provide the following and will in all other respects be satisfactory to Pella Corporation, Lead Class Counsel, and the Escrow Agent:

(a) The Escrow Account shall be in the name of "Pella Corporation – Saltzman Litigation Attorney Fees Escrow Account," or otherwise titled as Pella Corporation and Lead Class Counsel may determine.

(b) Any and all income earned on the Escrow Account prior to the Resolution Date shall be treated by the Escrow Agent, Pella Corporation, and Lead Class Counsel as earned by Pella Corporation for income tax purposes.

    i. As used herein, "Resolution Date" means the earlier of (1) the Effective Date, or (2) the Final Rejection Date.

    ii. As used herein, "Final Rejection Date" means the first date that is three Days after the date on which the Final Approval Order has been rejected by a court of competent jurisdiction and the order for such rejection is deemed "Final," as defined in the definition of Effective Date in Paragraph 19, above.

(c) Except as specified below, no withdrawals may be made from the Escrow Account.

(d) The Escrow Agent may at any time and from time to time withdraw funds from the Escrow Account to pay costs and expenses of the institution servicing as Escrow Agent (in both its capacity as Escrow Agent and as depository) related to the maintenance or administration of the Escrow Account ("Escrow Agent's Costs").

(e) At any time and from time to time prior to the Resolution Date, Lead Class Counsel may withdraw up to two million dollars (**$2 Million**) from the Escrow Account, but only with prior written approval from Pella Corporation and after providing Pella Corporation with a letter of credit issued from an Acceptable Bank for the benefit of Pella Corporation in an amount not less than the amount Lead Class Counsel desires to withdraw and in all other respects acceptable to Pella Corporation in form and substance.

    i. As used herein, "Acceptable Bank" means a commercial bank that (1) is incorporated under the laws of the United States, (2) has combined current capital and surplus of not less than **$40 Billion**, and (3) is not Wells Fargo.

Any such letter of credit must provide, among other things, that Pella Corporation may draw upon it by presenting a written certificate that states either that the Final Rejection Date has occurred, in whole or in part, or that the existing letter of credit is about to expire and has not been replaced.

(f) At any time on or after the Final Rejection Date, Pella Corporation may direct the Escrow Agent to remit to Pella Corporation the entire balance of the Escrow Account, including interest, less any unpaid Escrow Agent's Costs, including any Escrow Agent's Costs reasonably estimated by the Escrow Agent to incurred after such withdrawal.

(g) At any time on or after the Effective Date, Lead Class Counsel may direct the Escrow Agent to apply the entire balance in the Escrow Account, including interest, in the following order of priority:

     i.     First, to the payment of any unpaid Escrow Agent's Costs, including any Escrow Agent's Costs reasonably estimated by the Escrow Agent to be incurred after such withdrawal;

     ii.    Second, to the reimbursement to Pella Corporation of any taxes pad or to be paid by Pella Corporation with respect to interest on the Escrow Account (determined using any attribution method chosen by Pella Corporation in its reasonable discretion);

     iii.   Third, by wire exchange into a newly established trust account ("Trust Account") to be identified by Class Counsel and approved by the Court, the sum awarded and approved by the Court for attorneys' fees, costs, expenses and disbursements of Class Counsel, or application to such fees, costs, expenses, and disbursements; provided, however, that the amount so withdrawn together with any amounts withdrawn pursuant to paragraph (e) above, shall not exceed eleven million dollars (**$11 Million**) plus the amount of any accrued but undisbursed interest on the Escrow Account.   In no event shall Defendants have to pay into the Trust Account any amount in excess of the balance in the Escrow Account less the amounts paid pursuant sections (i) and (ii) herein.

     iv.    Fourth, the balance, (if any) to Pella Corporation.

103.     Lead Class Counsel shall allocate such attorneys fees, costs, expenses, and disbursements in their sole discretion.  Upon payment into the Trust Account as provided hereinabove, Class Counsel further agree that Defendants shall have no liability in any form arising from said application(s) and disbursement of funds from the Trust Account.

## VIII. RELEASES

104.     The Named Plaintiffs and each and every Settlement Class Member, regardless of whether any Settlement Class Member executes and delivers a written release, on behalf of themselves, as well as on behalf of all of their heirs, successors in interest, assigns, transferees and grantees, fully and forever release, remise, acquit and discharge Releasees from the Released Claims.  By executing this Agreement, the Parties acknowledge that, upon entry of the Final Approval Order by the Court, the Lawsuit shall be dismissed with prejudice pursuant to the terms of the Final Order, an order of dismissal with prejudice shall be entered, and all Released Claims shall thereby be conclusively settled, compromised, satisfied, and released as to the Releasees. The Final Approval Order shall provide for and effect the full and final release, by the Named Plaintiffs and all Settlement Class Members, of all Released Claims.

105.     The Settlement Class Members hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the Released Claims, but that it is still their intention to hereby fully, finally, and forever settle, release, extinguish and waive all of the Released Claims, known or unknown, suspected or unsuspected, that they had, now have or, absent this Agreement, may in the future have had against Releasees.  In furtherance of such intention, the release herein given by the Settlement Class Members to the Releasees shall be and remain in effect as a full and complete general release of the Released Claims notwithstanding any  discovery of the existence of any such additional or different claims or facts.

106.     **Express Waiver of California Civil Code 1542**.  The Settlement Class Members hereby acknowledge that **the release herein given expressly waives all the rights and benefits** of Section 1542 of the California Civil Code, or conferred by any comparable or similar statute

or common law rule, regulation, or principle of law or equity established in any state or other jurisdiction. Section 1542 of the California Civil Code reads as follows:

> Section 1542. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

107. If any Settlement Class Member brings an action or asserts a claim against Releasees contrary to the terms of this Agreement, the counsel of record for such Settlement Class Member shall be provided with a copy of this Agreement. If the Settlement Class Member does not within 20 Days thereafter dismiss his or her action and the action or claim is subsequently dismissed or decided in favor of the Releasees, the Settlement Class Member who brought such action or claim shall pay Releasees' costs and expenses, including reasonable attorneys' fees, incurred by Releasees in the defense of such action or claim.

108. Except as otherwise provided, nothing in this Agreement shall be construed in any way to prejudice or impair the right of Defendants or Defendants' insurers to pursue such rights and remedies as they may have against each other or third parties, who are not Settlement Class Members, under or in connection with any insurance policies.

109. Notwithstanding the above, the Court shall retain jurisdiction over the parties and the Agreement and with respect to the future performance of the terms of the Agreement, and to ensure that all payments and other actions required of any of the Parties by the Settlement and this Agreement are properly made or taken.

## IX.    COVENANT NOT TO SUE

110.    The Named Plaintiffs, on behalf of themselves and the Settlement Class Members, (a) covenant and agree that neither the Named Plaintiffs nor any of the Settlement Class Members, nor any person authorized to act on behalf of any of them, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Agreement, against Releasees in either their personal or corporate capacity, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by Releasees in connection with the Released Claims, (b) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of any of them, and (c) agree that this Agreement shall be a complete bar to any such action.

## X.    CLASS MEMBERS' RIGHT OF EXCLUSION

111.    A Settlement Class Member may opt out of the Settlement Class during the Opt-Out Period.  To exercise the opt-out right set forth in this Section, the Settlement Class Member must complete, sign, and return a request for exclusion.  The request must:

1.  Contain the Settlement Class Member's full name and current address;

2.  Identify the name and address of the Settlement Class Member's counsel, if any;

3.  Declare that the Settlement Class Member owns or owned a Structure or Structures in which Pella ProLine® casement, awning, and/or transom windows have or had been installed and provide the addresses for those properties;

4.  Declare that the Settlement Class Member wants to be excluded from the Settlement Class;

> 5. Identify the date the Pella ProLine® casement, awning, and/or transom windows were installed and/or purchased and be willing to provide verification if requested;
>
> 6. Identify the date the Structure was constructed; and
>
> 7. Be signed by the Settlement Class Member.

112.     The request for exclusion must be sent by mail, addressed to the Settlement Administrator, postmarked on or before the end of the Opt-Out Period. Any Settlement Class Member who elects to opt out of the Settlement Class pursuant to this Section shall not be entitled to relief under this Agreement.

113.     Defendants agree that to the extent the statutes of limitation and/or repose, or any other defense of lapse of time are or have been tolled by operation of law as to a Settlement Class Member's Claim, they will continue to be tolled as to any Settlement Class Member who opts out of the Settlement until 90 Days after the Settlement Administrator's receipt of the request to opt out or for such longer period as the law may provide without reference to this Agreement.

## XI.     PARTIES' RIGHTS OF TERMINATION

114.     Unless the Plaintiffs and Defendants shall agree otherwise in writing, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if (1) the Court declines to certify the nationwide Settlement Class as provided in the Preliminary Approval Order; or (2) the Court materially alters any of the terms of this Agreement (as determined by the Parties); or (3) the Court fails to enter the Preliminary Approval Order or the Final Approval Order in substantially the same form submitted by the Parties.

115.     If 300 or more Settlement Class Members with verified Pella ProLine Casement Windows request exclusion from the Settlement Class, Defendants may elect, unilaterally, to rescind this Agreement by notifying Lead Class Counsel and the Court not less than 20 Days before the date set for the Final Approval Hearing.

116.     If this Agreement is terminated in a manner set forth in this Section, the legal position of each party shall be the same as it was immediately prior to the execution of this Agreement and each party may exercise its legal rights to the same extent as if this Agreement had never been executed.

## XII.     NON-DISPARAGEMENT

117.     The Parties and counsel hereto agree not to disparage each other, Pella brand products, or the compromised claims at issue in the Lawsuit or the Settlement.

## XIII.     ENFORCEMENT OF THIS AGREEMENT

118.     In the event Defendants, the Named Plaintiffs, Class Counsel, or any Settlement Class Member fails to perform under this Agreement, counsel for the aggrieved party shall give counsel for the other party written notice of the breach.  If the alleged breach is not cured to the satisfaction of the aggrieved party within 30 Days, the other party may apply to the Court for relief.

119.     In the event of a breach by Defendants, the Named Plaintiffs, Class Counsel, or any Settlement Class Member, the Court may exercise all equitable powers over the breaching party(ies) to enforce this Agreement, the Final Order, and Judgment, irrespective of the availability or adequacy of any remedy at law.

## XIV.   REPRESENTATIONS AND WARRANTIES

120.      Each of the Parties represents and warrants to, and agrees with, each of the other Parties as follows:

1.  Each of the Parties has had an opportunity to receive, and has received, independent legal advice from his, her or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income-tax consequences of this Agreement, and fully understands and accepts the terms of this Agreement.

2.  Settlement Class Members represent and warrant that no portion of any Claims that the Named Plaintiffs, the Settlement Class, and/or any of the Settlement Class Members ever had, now have, or may later claim to have at any time in the future against the Releasees, whether known or unknown, arising out of or in any way relating to the Pella ProLine Casement Windows, and no portion of any recovery or settlement to which they may be entitled, has been assigned, transferred, or conveyed by or for Settlement Class Members in any manner; and no person other than Settlement Class Members shall have any legal or equitable interest in the Claims or Settlement Claims referred to in this Agreement but the Settlement Class Members themselves.

3.  None of the Parties is relying or has relied on any statement, representation, omission, inducement, or promise of any other party (or any officer, agent, employee, representative, or attorney for any other party) in executing this Agreement, or in making the Settlement provided for herein, except as expressly stated in this Agreement.

4. Each of the Parties has investigated the facts pertaining to the Settlement and this Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that party and his, her or its attorneys.

5. Each of the Parties has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having had the opportunity to consult with, and having in fact consulted with, his, her or its attorneys.

6. Each term of this Agreement, under the titles of the various paragraphs, is contractual and not merely a recital.

## XV.    MISCELLANEOUS

121.    This Agreement is for settlement purposes only.  It has been entered into for the purpose of compromising and settling a disputed matter and is not an admission of any deficiency or defect with or in Pella ProLine Casement Windows or with or in the design, manufacture, sale, distribution, marketing, warranty, service, use, performance, installation or purchase of, or in any way relating to Pella ProLine Casement Windows, any misrepresentations concerning the Pella ProLine Casement Windows, or any failure to disclose information concerning the Pella ProLine Casement Windows.  Neither the execution of this Agreement, nor any of its provisions or attachments, nor any action taken pursuant to its terms shall, in this action or in any other action or proceeding, be construed or considered as evidence of an admission by Defendants of the validity of any Claim that has or could have been made by the Named Plaintiffs, the Settlement Class, or any Settlement Class Member, and Defendants deny there are any deficiencies or defects with or in the Pella ProLine Casement Windows or with or in the design, manufacture, sale, distribution, marketing, warranty, service, use, performance, installation or purchase of, or in any way relating to the Pella ProLine Casement Windows.  This Agreement, however, may be admitted as evidence in any action to enforce its terms.

122.    The certification of a Settlement Class pursuant to the terms of this Agreement shall not constitute, and shall not be construed as, an admission on the part of Defendants that this Lawsuit, or any other proposed class action, are appropriate for certification as a litigation class under any applicable law.  The Parties agree that as of the Effective Date, the Orders certifying the litigation classes in this Action shall be vacated, and the Final Approval Order and Judgment shall instead certify a Settlement Class pursuant to this Agreement.

123.    The Confidentiality Order shall remain in effect.

124.     This Agreement has been negotiated at arm's length by Lead Class Counsel and Defendants' counsel.  If a dispute should later arise regarding any of its terms, no Party shall be deemed to be the drafter of any particular provision of this Agreement.

125.     This Agreement shall be construed under and governed by the laws of the State of Illinois.

126.     Class Counsel have taken substantial discovery in this Lawsuit, including extensive document review and depositions of Defendant personnel with responsibility for design, manufacture, distribution, marketing service, and warranty claim processing for the Pella ProLine Casement Windows.  Based on that discovery, as well as Class Counsel's knowledge of and participation in other class actions, Class Counsel have evaluated the factual bases for the claims asserted in this Action and the defenses raised by Defendants to those claims.  Class Counsel believe they have engaged in more than sufficient discovery to evaluate the terms of this Agreement on an informed basis and to negotiate a fair and reasonable resolution of this Action.

127.     This Agreement, including all attached Exhibits, shall constitute the entire Agreement between the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreement or understandings between the Parties.  The Agreement may not be changed, modified, or amended except in writing signed by Lead Class Counsel and Defendants' counsel and subject to Court approval.  The Parties contemplate that the Exhibits may be modified by subsequent agreement of Defendants' counsel and Lead Class Counsel prior to dissemination to the Settlement Class Members, and subject to Court approval.

128.     This Agreement, if approved by the Court, shall be binding upon and inure to the benefit of the Parties, and their representatives, heirs, successors and assigns.

129.     Any notice, instruction, application for Court approval or application for Court order sought in connection with this Agreement or other document to be given by any Party to any other Party shall be in writing and delivered personally or by facsimile or electronic mail followed by overnight courier, to the following representatives for the Parties:

| DEFENDANTS' COUNSEL: | FOR SETTLEMENT CLASS: |
|---|---|
| James A. O'Neal | Richard J. Burke |
| John P. Mandler | Paul M. Weiss |
| | |
| Faegre Baker Daniels LLP | Complex Litigation Group |
| 2200 Wells Fargo Center | 513 Central Avenue |
| 90 S. Seventh St. | Suite 300 |
| Minneapolis, MN 55402 | Highland Park, IL 60035 |
| | |
| (612) 766-7000 | (847) 433-4500 |
| (612) 766-1600 (FAX) | (847) 433-2500 (FAX) |
| james.o'neal@FaegreBD.com | Info@complexlitgroup.com |
| john.mandler@FaegreBD.com | |

130.     Except as otherwise provided in this Agreement, any filing, submission, Claim, or notice or written communication shall be deemed filed, delivered, submitted, or effective as of the date of its postmark when mailed first-class, registered or certified mail, postage prepaid, properly addressed to the recipient, or when delivered to any commercial one-or-two-day delivery service properly addressed to the recipient, or when actually received by the recipient, whichever occurs first.

131.     In no event shall Defendants, Defendants' counsel, Named Plaintiffs, any Settlement Class Member, or Class Counsel have any liability for claims of wrongful or negligent conduct by any third party with respect to the implementation of any term of this Agreement.

132.    The Parties and their respective counsel agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement.

133.    The Parties are entering into this Agreement for the purpose of compromising and settling disputed claims.  Nothing in this Agreement or in the documents relating to this Agreement shall be construed, deemed or offered as an admission by any of the Parties, or by any Settlement Class Member, for any purpose in any judicial or administrative action or proceeding, whether in law or in equity, regardless of whether this Agreement ultimately becomes effective.

134.    This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

**APPROVED AS TO FORM:**

_s/ Richard J. Burke_____          _s/ James A. O'Neal_____
Richard J. Burke                             James A. O'Neal
Paul M. Weiss                                John P. Mandler
Julie D. Miller

Complex Litigation Group                     Faegre Baker Daniels LLP
513 Central Avenue                           2200 Wells Fargo Center
Suite 300                                    90 S. Seventh Street
Highland Park, IL 60035                      Minneapolis, MN 55402
_Attorneys for Plaintiffs and Settlement Class_   _Attorneys for Defendants_


**NAMED PLAINTIFFS:**                        **DEFENDANTS:**

_____             _____
Dr. Leonard Saltzman                         Name
                                             _For Pella Corporation_

_____
Tim Bastiaanse

_____             _____
Judith McClosky                             Name
                                             _For Pella Windows and Doors, Inc._

_____
Joseph Palmiotto

_____
Brad Zurn

# EXHIBIT A

*Saltzman v. Pella Corporation*
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876

# ARBITRATION FORM INSTRUCTIONS

To make a claim through the binding arbitration process for benefits that may be available as a result of the settlement reached in the litigation titled Dr. Leonard Saltzman et al. v. Pella Corporation et al., you must fill out the following Arbitration Form as completely as you can and send it to the following address so that it is postmarked by _____, 2013

Saltzman v. Pella Corporation
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876

Each property owner making a claim must submit a separate Arbitration Form. You may obtain extra copies by calling Epiq Class Action & Claims Solutions, Inc. 877-276-6840 or Complex Litigation Group, LLC at 847-433-4500, or online at the following address: www.windowsettlement.com

Class members submitting claims may be contacted by representatives of counsel for the class or by the Settlement Administrator for additional information regarding the class member's claims.

**Deadline:** If you do not complete and mail your Arbitration Form to Epiq Class Action & Claims Solutions, Inc. at the address provided above so that it is postmarked by _____, 2013, your application for arbitration will be rejected and you will be precluded from sharing in any benefits provided by the settlement. Do not send your Arbitration Form to the Court or to anyone other than Epiq Class Action & Claims Solutions, Inc, as any such claim will be deemed not to have been submitted.

After submitting your Arbitration Form, the Settlement Administrator will inform you whether or not you qualify for arbitration. If you qualify for arbitration, the Settlement Administrator will provide you more information about the arbitration process. You should be aware that it will take a significant amount of time to process all of the Arbitration Forms.

Based on the information you include in this form and the documentation you submit in support of your claim, if the Settlement administrator cannot verify that you meet the requirements to receive Arbitration and/or benefits, the Settlement administrator will inform you of what you have failed to establish and you will have 30 days to provide sufficient evidence to cure any such defects. If you fail to do so, your claim will be rejected.

## YOU MAY NOT FILE BOTH AN ARBITRATION FORM AND A CLAIM FORM.
## YOU MUST SELECT ONLY ONE.

## Examples of Glass Etch, Product Identity Stamp and Unit ID Labels.

a. **Glass Etch -** This information is located on the glass in one of the corners of each window.



**Figure 1**

b. **Product Identity Stamp -** Located on the sill of the product. To find it, open the sash and examine the frame sill assembly. Examine the area around the pivot head screw or the flat part where the hardware is attached and slides. When looking for the stamp, it may be necessary to clean built up dirt from the sill to be able to see the stamp. The stamp is located approximately 2 to 4 inches from one corner of the unit.



**Figure 2**

c. **Unit ID Label -** Was adhered to the glass of each window. The Label is a string of number that could be 50+ digits long. To find it, examine the interior glass on spacer and the lower corner of the glass.

 

**Figure 3**

**QUESTIONS? Call 1-877-276-6840 or visit www.WindowSettlement.com**

*Saltzman v. Pella Corporation*
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876

YOU MUST SUBMIT YOUR
CLAIM FORM BY <<DATE>>

<<mail id>>
<<Name1>>
<<Name2>>
<<Rep>>
<<Biz>>
<<Address1>>
<<Address2>>
<<City>><<State>><<Zip>>
<<Foreign Country>>                                    <<Date>>

# ARBITRATION FORM

**IT IS IMPORTANT THAT YOU TRY TO ANSWER ALL QUESTIONS AS FULLY AND ACCURATELY AS POSSIBLE. <u>FAILURE TO FULLY ANSWER THE QUESTIONS OR TO PROVIDE THE REQUESTED INFORMATION AND/OR DOCUMENTATION MAY IMPACT YOUR ABILITY TO OBTAIN BENEFITS.</u>**

**I.** By submitting this Arbitration Form, I state that I currently own or formerly owned a structure that contains or contained one or more Pella ProLine brand casement, awning and/or transom window manufactured by Pella between January 1, 1991 and December 31, 2006 (collectively "Pella ProLine Casement Window(s)").

**II.** Identification of Person Submitting this Form.

First Name                                    MI    Last Name

Mailing Address, including apartment, unit or box number

City                                              State    Zip Code

Phone Number

Email

### III.   Claim Information.

If you need additional space to complete this form, please attached additional pages, and clearly identify by question number which question(s) you are answering on your attached pages.

1.  Please identify the address of the building which contains or contained one or more Pella ProLine Casement Window(s) for which this claim applies, if different from the above:

Mailing Address, including apartment, unit or box number

City                                                                          State     Zip Code

   a.  Type of Structure:

      ☐ Single Family Home   ☐ Apartment   ☐ Condo   ☐ Commercial   ☐ Other: _____

   b.  Number of units, if not a single family home:

2.  Identify the number of Pella ProLine Casement Windows(s) installed.

Please attach whatever documentation you have establishing the number of Pella ProLine Casement Windows that are/were installed.  Pella's name may appear on the knob of the window crank.

The following questions seek information and documentation establishing that you meet the requirements to receive Arbitration and/or benefits under the Settlement.  **You will need to produce documentation sufficient to establish these items in order to receive Arbitration and/or benefits under the Settlement.**

3.  If known, please identify the **purchase date** of your Pella ProLine Casement Window(s) identified above and from whom the windows were purchased.  Include all purchase order numbers, if known.

   a.  Date of purchase   [MM] – [DD] – [YYYY]

   b.  From whom the windows were purchased (Individual or Business)

   c.  Purchase order numbers (if known)

Purchase Order 1

Purchase Order 2

Purchase Order 3

4. If known, please identify the **date of installation** of your Pella ProLine Casement Window(s) identified above. If not known, please identify the date your home was built.

Installation Date:

| | | | | | | |
|---|---|---|---|---|---|---|

MM — DD — YYYY

**OR**

Date Home was built:

| | | | | | | |
|---|---|---|---|---|---|---|

MM — DD — YYYY

5. If available, please provide the **glass etch** information for each window. This information is located on the glass in one of the corners of each window.

   **Note:** For examples of *glass etch* information placement please reference **Figure 1** of the instructions page.

Glass Etch 1

Glass Etch 2

Glass Etch 3

6. If available, please provide the **Product Identity Stamps** for window(s) manufactured from 1991 through 1997, and please provide the **Unit ID Labels** for window(s) manufactured from 1997 through 2006.

   a. The **Product Identity Stamp** is located on the sill of the product. To find it, open the sash and examine the frame sill assembly. Examine the area around the pivot head screw or the flat part where the hardware is attached and slides. When looking for the stamp, it may be necessary to clean built up dirt from the sill to be able to see the stamp. The stamp is located approximately 2 to 4 inches from one corner of the unit.

   **Note:** For an example of *Product Identity Stamp* placement please reference **Figure 2** of the instructions page.

Product Identity Stamp 1    Product Identity Stamp 2    Product Identity Stamp 3

   b. The **Unit ID Label** was adhered to the glass of each window. The Label is a string of number that could be 50+ digits long. To find it, examine the interior glass on spacer and the lower corner of the glass.

   **Note:** For an example of *Unit ID* label placement please reference **Figure 3** of the instructions page.

Unit ID 1

Unit ID 2

   Please attach any documentation and/or photographs to show the **purchase date** or **date of installation** of your Pella ProLine Casement Windows, or to show when your home was built. Include any receipts or purchase orders.

You may have documents from the original purchase, documents from Pella identifying the type and vintage (year of manufacture) of the window(s), or other invoices, photographs, or documents with identifying information. This documentation needs to be provided.

7.  Are/were you the original purchaser of the Pella ProLine Casement Window(s) identified above? ☐ No ☐ Yes

    If "Yes", please identify from whom, and when you purchased the windows:

    Date of purchase

    ☐☐ – ☐☐ – ☐☐☐☐
    MM     DD     YYYY

    Name (Individual or Business)

    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

8.  Did you own the structure in which the Pella ProLine Casement Window(s) identified above was installed, at the time the window(s) was/were installed, or did you purchase a new structure which had new Pella Proline Casement Windows already installed? ☐ No ☐ Yes

    If "Yes", please identify from whom, and when you purchased the structure. For example, the name of the builder.

    Date of purchase

    ☐☐ – ☐☐ – ☐☐☐☐
    MM     DD     YYYY

    Name (Individual or Business)

    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

9.  Identify whether the wood portion of the Pella ProLine Casement Window(s) that faces the interior of the building was "finished," i.e., painted, stained, or varnished. ☐ No ☐ Yes

    a.  If the wood portion of the Pella ProLine Casement Window(s) was finished, please identify, if you know, whether the window was sold already finished or whether it was finished after sale or installation by someone other than Pella (e.g., the homeowner, the owner of the building, a contractor or a painter, etc.).

        ☐ Sold Finished ☐ Finished after sale

        Please attach any documentation/photographs you may have to show whether or not the portion of the Pella ProLine Casement Window(s) that faces the interior of the building was "finished."

10. Identify whether your Pella ProLine Casement Window(s) has/have sustained water-intrusion related damage, such as wood rot. ☐ No ☐ Yes

    **If you replied Yes to question 10 above, please answer the following questions:**

11. Identify the date(s) when you discovered the alleged water-intrusion related damage?

    Date 1: ☐☐ – ☐☐ – ☐☐☐☐     Date 3: ☐☐ – ☐☐ – ☐☐☐☐
             MM   DD    YYYY              MM   DD    YYYY

    Date 2: ☐☐ – ☐☐ – ☐☐☐☐     Date 4: ☐☐ – ☐☐ – ☐☐☐☐
             MM   DD    YYYY              MM   DD    YYYY

12. Identify the nature of the damage alleged in the claim you are making as part of this Class Action litigation.

_____

_____

_____

_____

_____

   a. Please specify whether you are making a claim for (check all that apply):

☐ Damage to your window(s) that has/have already been repaired or replaced

☐ Damage to your window(s) that has/have NOT already been repaired or replaced

☐ Damage to your window finish(es) that has/have already been repaired or replaced

☐ Damage to your window finish(es) that has/have NOT already been repaired or replaced

☐ The cost of installing a replacement window(s) that has/have already been replaced

☐ The cost of installing a replacement window(s) that has/have NOT already been replaced

☐ Damage to other property other than your window(s) (such as damage to the structure surrounding the window(s)) caused by water intrusion in the window that has/have already been repaired or replaced

☐ Damage to other property other than your window(s) (such as damage to the structure surrounding the window(s)) caused by water intrusion in the window that has/have NOT already been repaired or replaced

   b. Identify the Location of any property damage in addition to your window(s) (check all that apply):

☐ Wall   ☐ Ceiling   ☐ Floor   ☐ Under/Around Fixtures   ☐ Upstairs   ☐ Downstairs

☐ In Basement   ☐ Other: _____

   c. State the total number of Pella ProLine Casement Window(s) damaged by water intrusion: ☐☐☐

Because the Settlement Administrator must verify that your window(s) experienced damaged covered by the agreement, please attach any photographs or other documentation to verify the damages claimed above.

13. Have you at any time prior to [INSERT DATE] notified Pella Corporation, Pella Window(s) and Doors, Inc. (collectively "Pella"), any employee of Pella Corporation, or a Pella Sales branch of regarding wood rot or water intrusion related to your Pella ProLine Casement Window(s) identified in this Arbitration Form? ☐ No ☐ Yes

If "Yes", state:

Date of notification

☐☐ – ☐☐ – ☐☐☐☐
MM    DD    YYYY

Name (Business or Individual) to whom you made the notification

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

If you have any contemporaneous documentation (documentation made or received at or near the time of the notification) that verifies any such notifications, please attach that documentation. Examples of such documentation would be a copy of a letter or email received from Pella Customer Service.

14. Have you at any time prior to [INSERT DATE] made a claim or claims to Pella Corporation, Pella Windows and Doors, Inc. (collectively "Pella"), any employee of Pella Corporation, or a Pella Sales branch for repair or replace-ment damage to your Pella ProLine Casement Window(s) identified in this Arbitration Form, which you alleged was incurred by the failure of your Pella ProLine Casement Window(s)?  ☐ No  ☐ Yes

If "Yes", state (1) the date of the claim, (2) the nature of the alleged damage, and (3) to whom you made the claim:

Date of the claim

☐☐ – ☐☐ – ☐☐☐☐
MM       DD        YYYY

Name to whom you made the claim (Individual or Business)

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

The nature of the alleged damage: _____

_____

_____

_____

_____

_____

_____

_____

If you have any contemporaneous documentation (documentation made or received at or near the time of the claim) that verifies any such claims, please attach that documentation. Examples of such documentation would be a copy of a letter or email received from Pella Customer Service.

15. If you answered "Yes" to Question No. 14, was or were any of your claims denied?  ☐ No  ☐ Yes

If "Yes", state the ultimate outcome of the claim: _____

_____

_____

_____

_____

_____

_____

If you have any contemporaneous documentation (documentation made or received at or near the time of the claim) that verifies any such denial of claims, please attach that documentation. Examples of such documentation would be a copy of a letter or email received from Pella Customer Service.

16. Did Pella, any employee of Pella Corporation, or a Pella Sales branch inspect the Pella ProLine Casement Window(s) (or the surrounding property) identified in this Arbitration Form, after you discovered the damages alleged in this Arbitration Form?  ☐ No  ☐ Yes

If "Yes", state who preformed the inspection, and the date of the inspection:

Date of the inspection

☐☐ – ☐☐ – ☐☐☐☐
MM        DD        YYYY

Name of who preformed the inspection (Individual or Business)

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

If you have any contemporaneous documentation (documentation made or received at or near the time of the claim) that verifies such an inspection, please attach that documentation. Examples of such documentation would be a copy of a letter or email received from Pella Customer Service.

17. Have you previously repaired any alleged damage to or from the Pella ProLine Casement Window(s) or replaced such Window(s)?  ☐ No  ☐ Yes

If "Yes", state the date of the repair or replacement, and the nature of the repair or replacement:

Date of the repair or replacement

☐☐ – ☐☐ – ☐☐☐☐
MM        DD        YYYY

The nature of the repair or replacement: _____

_____

_____

_____

_____

_____

If "Yes" please also provide how much it cost you:

a. To repair or replace your Pella ProLine Casement Window(s) (if applicable)?  $ ☐☐☐☐☐ . ☐☐

b. To repair or replace the window finish(es) of your Pella ProLine Casement Window(s) (if applicable)?  $ ☐☐☐☐☐ . ☐☐

c. For installation costs, if necessary (if applicable)?  $ ☐☐☐☐☐ . ☐☐

d. To repair or replace property other than your windows caused by water intrusion in your Pella ProLine Casement Window(s)?  $ ☐☐☐☐☐ . ☐☐

Please attach contemporaneous documentation (documentation made or received at or near the time of the repair or replacement) that verifies the date and nature of the repair or replacement and the amount of your repair or replacement costs. Examples of such documentation include receipts, invoices, canceled checks, or other financial records showing the amount of money paid for the repair or replacement and the nature of the repair or replacement performed.



18. Have you or any individual conducting the repair of your Pella ProLine Casement Window(s) removed and/or replaced windows subject to this claim?   ☐ No   ☐ Yes

   If "Yes", have you or someone on your behalf retained said window(s):   ☐ No   ☐ Yes

   If "Yes", please identify who retained said windows:

   Name of person who retianed said windows:

   | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
   |-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

19. If the Pella ProLine Casement Window(s) at issue has been removed, is the window(s) currently available for inspection?   ☐ No   ☐ Yes

   If "Yes", where is the window(s) currently located:

   Mailing Address, including apartment, unit or box number

   | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
   |-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

   City                                                                State       Zip Code

   | | | | | | | | | | | | | | | | | | | | | |
   |-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

20. If the Pella ProLine Casement Window(s) at issue has been removed, is the property surrounding where the Pella ProLine Casement Windows(s) was installed (such as the wall, siding, etc.) available for inspection?

   ☐ No   ☐ Yes

21. If you have not had the alleged damage repaired, how much will it cost you:

   a. To repair or replace your Pella ProLine Casement Window(s) (if applicable)?   $ | | | | | | . | | |

   b. To repair or replace the window finsh(es) of your Pella ProLine Casement Window(s) (if applicable)?   $ | | | | | | . | | |

   c. For installation costs, if necessary (if applicable)?   $ | | | | | | . | | |

   d. To repair or replace property other than your window(s) caused by water intrusion in your Pella ProLine Casement Window(s)?   $ | | | | | | . | | |

   Please attach documentation that verifies the nature of the damage and the costs necessary to repair or replace the damage, including costs for labor, paint, wallboard, or other materials necessary to repair or replace. Examples of such documentation include a qualified contractor's written estimate with line item estimates for each type of cost.

22. Identify whether you have made any claims on your homeowners insurance for water intrusion damage to your Pella ProLine Casement Window(s) or surrounding property damage.   ☐ No   ☐ Yes

   If "Yes", state:

   a. With whom you have your homeowners insurance (Individual or Business)

   | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
   |-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

b.   The amount of the claim:   $ ☐☐☐☐☐☐ . ☐☐☐

c.   Whether the claim was paid:   ☐ No   ☐ Yes

d.   The amount, if any you were paid on your claim:   $ ☐☐☐☐☐☐ . ☐☐

Please attach documentation showing any such claims, any documentation you submitted in support of any such claims, and the result of any such claims.

23.   Identify whether you have made any claims to anyone else (such as a contractor, subcontractor, siding manufacturer, etc.) for water intrusion damage to your Pella ProLine Casement Window(s) or surrounding property damage.

☐ No   ☐ Yes

If "Yes", state:

a.   The amount of the claim:   $ ☐☐☐☐☐ . ☐☐

b.   To whom the claim was made (Individual or Business)

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

c.   The nature of the claim: _____

_____

_____

_____

_____

_____

d.   Whether the claim was paid:   ☐ No   ☐ Yes

e.   The amount, if any, you were paid on your claim:   $ ☐☐☐☐ . ☐☐

Please attach documentation showing any such claims, any documentation you submitted in support of any such claims, and the result of any such claims.

24.   Identify whether you have ever initiated a lawsuit or other legal claims (whether it is resolved or not resolved) against Pella Corporation or Pella Windows and Doors, Inc.?   ☐ No   ☐ Yes

If "Yes", state:

a.   The nature of the lawsuit or other legal claim: _____

_____

_____

_____

_____

b. The location of the lawsuit or other legal claim: _____

_____

_____

_____

_____

_____

c. The date the lawsuit or other legal claim was commenced: ☐☐ – ☐☐ – ☐☐☐☐
  MM     DD      YYYY

d. The lawyer representing you in that lawsuit or other legal claim.

Name

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Mailing Address, including apartment, unit or box number

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

City                                          State    Zip Code

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐   ☐☐   ☐☐☐☐☐

25. Are you currently employed by Pella Corporation or Pella Windows and Doors, Inc.? ☐ No  ☐ Yes

## IV. Settlements.

1. Have you entered into any oral or written Settlement for the damage alleged in this Arbitration Form with Pella Corporation, Pella Windows and Doors, Inc., or received the benefit of any payments to you or on your behalf as a result of those damage allegations? ☐ No  ☐ Yes

If "Yes", provide the following information:

a. Date of Settlement or payment: ☐☐ – ☐☐ – ☐☐☐☐
  MM     DD      YYYY

b. Amount of Settlement or payment: $ ☐☐☐☐☐ . ☐☐

c. Did you sign any written release or Settlement Agreement? ☐ No  ☐ Yes

If "Yes", please attach a copy of the Release or Settlement Agreement.

2. Have you entered into any oral or written settlement for the damage alleged in this Arbitration Form with anyone other than Pella Corporation, Pella Windows and Doors, Inc. (such as a contractor, a siding manufacturer, etc.), or received the benefit of any payments to you or on your behalf as a result of those damage allegations?

☐ No  ☐ Yes

If "Yes", provide the following information:

a. With whom you made the Settlement (Individual or Business)

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

b.  Date of Settlement or payment:

| | | – | | | – | | | | |
|---|---|---|---|---|---|---|---|---|---|

MM        DD         YYYY

c.  Amount of Settlement or payment:    $ | | | | | | . | | |

d.  Did you sign any written release or Settlement Agreement?    ☐ No    ☐ Yes

If "Yes", please attach a copy of the Release or Settlement Agreement.

## V.  Ownership Documentation.

1.  Please attach documentation that verifies that you are the current or former owner of the property containing the Pella ProLine Casement Window(s) identified in your Arbitration Form during the period when the Pella ProLine Casement Window(s) were/need to be repaired or replaced.

   **Examples of sufficient documentation of property ownership include** a copy of property tax bills, a copy of property deeds or deeds of trust, a copy of a declaration page from a policy of title or homeowners insurance, a copy of mortgage statement, a copy of mortgage payment coupon, or other documentation demonstrating ownership, including the property address.  The documentation must be (a) for/from the year in which the repairs or replacements took place, or (b) for/from the current year if the window(s) has/have yet to be repaired or replaced.

   If you are the owner of an individual living unit such as a condominium or townhouse, then you must also provide satisfactory proof that you have/had the maintenance obligation during the period when the Pella ProLine Casement Window(s) were/need to be repaired or replaced, for the damage alleged in your Claim Form.

   **Example of satisfactory proof would be** a copy of the Covenants, Conditions and restrictions governing the condominium or townhouse.

2.  Please attach documentation that verifies that you are the original purchaser of the Pella ProLine Casement Window(s) identified in your Arbitration Form.

   **Examples of sufficient documentation of property ownership include:** receipts, invoices, or other financial documents showing the purchase of the window(s).

3.  Please attach documentation that verifies that you owned the property in which the Pella ProLine Casement Window(s) identified in your Arbitration Form was/were installed, at the time the windows was/were installed.

   **Examples of sufficient documentation of property ownership include:** tax bills for the year of installation, deeds or deeds of trust, and mortgages.

## VI.  Additional Information:

1.  Please state below any additional information which you believe would be helpful in evaluating your claim.

_____

_____

_____

_____

_____

**VII.** **By the filing of this Arbitration Form, you hereby submit to the jurisdiction of the United States District Court for the Northern District of Illinois for the purposes of this claim.**

**VIII.** **The benefits provided by the Settlement are for otherwise unreimbursed costs and expenses incurred by you related to damage covered by the Settlement. By submitting this Arbitration Form, you verify that other than what you disclosed in this Arbitration Form, you have not otherwise been reimbursed or compensated for the costs and expenses you are seeking in this Arbitration Form.**

## IX. Certification, Under the Penalty of Perjury and Notarization.

By signing this Arbitration Form, I am electing to pursue the possibility of recovery in arbitration rather than opting out of the Settlement Class or seeking benefits under the Claims Process.

Pursuant to 28 U.S.C Section 1746, I declare under penalty of perjury that the answers and statements made in the form are true and correct and all enclosures are true and correct copies; and:

1. The Social Security Number or Taxpayer Identification Number for this claimant is correct; and

2. The claimant is NOT subject to backup withholding because: (a) the claimant is exempt from backup withholding, or (b) the claimant has not been notified by the Internal Revenue Service (IRS) that the claimant is subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified the claimant that he or she is no longer subject to the backup withholding; and

3. The claimant is a U.S. citizen or other U.S. person.

*Note: You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.*

**The Internal Revenue Service does not require your consent to any provision of this document other than certifications required to avoid backup withholding.**

Enter your TIN in the appropriate box below.

Social Security Number

☐☐☐ – ☐☐ – ☐☐☐☐

Employer Identification Number

☐☐ – ☐☐☐☐☐☐☐

In addition, please answer the following questions:

1. Are you seeking reimbursement for a structure/product, etc., that you no longer own?     ☐ No   ☐ Yes

2. Did you deduct the cost of installation of the product on your federal tax returns?     ☐ No   ☐ Yes

3. Did you deduct the cost of repairs of the product on your federal tax returns?     ☐ No   ☐ Yes

By signing this Arbitration Form, I certify under the penalty of perjury, that the information I provided in this Arbitration Form is true and correct, to the best of my knowledge.


Subscribed and sworn to before me this


_____ day of _____ , 2012

_____
Signature of Claimant


_____
Notary Public

_____
Date of Signature

# EXHIBIT B

*Saltzman v. Pella Corporation*
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876

# CLAIM FORM INSTRUCTIONS

To make a claim through the claims process for benefits that may be available as a result of the Settlement reached in the litigation titled Dr. Leonard Saltzman et al. v. Pella Corporation et al., you must fill out the following Claim Form as completely as you can and send it to the following address so that it is postmarked by _____, 2013:

Saltzman v. Pella Corporation
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876

Each property owner making a claim must submit a separate Claim Form. You may obtain extra copies by calling Epiq Class Action & Claims Solutions, Inc., 877-276-6840, or Complex Litigation Group, LLC at 847-433-4500, or online at the following address: www.windowsettlement.com.

Class members submitting claims may be contacted by representatives of counsel for the class or by the Settlement Administrator for additional information regarding the class member's claims.

**Deadline:** If you do not complete and mail your Claim Form to Epiq Class Action & Claims Solutions, Inc. at the address provided above so that it is postmarked by _____, 2013, your claim will be rejected and you will be precluded from sharing in any benefits provided by the settlement. Do not send your Claim Form to the Court or to anyone other than Epiq Class Action & Claims Solutions, Inc.

Based on the information you include in this form and the documentation you submit in support of your claim, if the Settlement Administrator cannot verify that you meet the requirements to receive benefits, the Settlement Administrator will inform you of what you have failed to establish and you will have 30 days to provide sufficient evidence to cure any such defects. If you fail to do so, your claim will be rejected.

## Examples of Glass Etch, Product Identity Stamp and Unit ID Labels.

a.  **Glass Etch -**  This information is located on the glass in one of the corners of each window.



**Figure 1**

b.  **Product Identity Stamp -** Located on the sill of the product.  To find it, open the sash and examine the frame sill assembly.  Examine the area around the pivot head screw or the flat part where the hardware is attached and slides.  When looking for the stamp, it may be necessary to clean built up dirt from the sill to be able to see the stamp.  The stamp is located approximately 2 to 4 inches from one corner of the unit.



**Figure 2**

c.  **Unit ID Label -** Was adhered to the glass of each window.  The Label is a string of number that could be 50+ digits long.  To find it, examine the interior glass on spacer and the lower corner of the glass.




**Figure 3**

**QUESTIONS? Call 1-877-276-6840 or visit www.WindowSettlement.com**

*Saltzman v. Pella Corporation*
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876

| YOU MUST SUBMIT YOUR |
| **CLAIM FORM BY <<DATE>>** |

<<mail id>>
<<Name1>>
<<Name2>>
<<Rep>>
<<Biz>>
<<Address1>>
<<Address2>>
<<City>><<State>><<Zip>>
<<Foreign Country>>                                             <<Date>>

# CLAIM FORM

**IT IS IMPORTANT THAT YOU TRY TO ANSWER ALL QUESTIONS AND AS FULLY AND ACCURATELY AS POSSIBLE. <u>FAILURE TO FULLY ANSWER THE QUESTIONS OR TO PROVIDE THE REQUESTED INFORMATION AND/OR DOCUMENTATION MAY IMPACT YOUR ABILITY TO OBTAIN BENEFITS.</u>**

**I.     By submitting this Claim Form, I state that I currently own, or previously owned, a structure that contains or contained one or more Pella ProLine brand casement, awning and/or transom window(s) manufactured by Pella between January 1, 1991 and December 31, 2006 (collectively "Pella ProLine Casement Window(s)").**

**II.    Identification of Person Submitting this Form.**

First Name                                                    MI     Last Name

Mailing Address, including apartment, unit or box number

City                                                                        State     Zip Code

Phone Number

Email

## III. Claim Information.

If you need additional space to complete this form, please attached additional pages, and clearly identify by question number which question(s) you are answering on your attached pages.

1. Please identify the address of the building which contains or contained one or more Pella ProLine Casement Window(s) for which this claim applies, if different from the above:

Mailing Address, including apartment, unit or box number

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

City

| | | | | | | | | | | | | | | | | | | | |

State

| | |

Zip Code

| | | | | |

    a. Type of Structure:

        ☐ Single Family Home   ☐ Apartment   ☐ Condo   ☐ Commercial   ☐ Other: _____

    b. Number of units, if not a single family home: | | | | |

2. Identify the number of Pella ProLine Casement Window(s) installed. | | | |

Please attach whatever documentation you have establishing the number of Pella ProLine Casement Window(s) that are/were installed. Pella's name may appear on the knob of the window crank.

The following questions seek information and documentation establishing that you meet the requirements to receive benefits under the Settlement. **You will need to produce documentation sufficient to establish these items in order to receive benefits under the Settlement.**

3. If known, please identify the **purchase date** of your Pella ProLine Casement Window(s) identified above and from whom the windows were purchased. Include all purchase order numbers, if known.

    a. Date of purchase   | | | – | | | – | | | | |
                                MM     DD       YYYY

    b. From whom the windows were purchased (Individual or Business)

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

    c. Purchase order numbers (if known)

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Purchase Order 1

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Purchase Order 2

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Purchase Order 3

4. If known, please identify the **date of installation** of your Pella ProLine Casement Window(s) identified above. If not known, please identify the date your home was built.

Installation Date: ☐☐ – ☐☐ – ☐☐☐☐  MM DD YYYY  **OR**  Date Home was built: ☐☐ – ☐☐ – ☐☐☐☐  MM DD YYYY

5. If available, please provide the **glass etch** information for each window. This information is located on the glass in one of the corners of each window.

   **Note:** For examples of *glass etch* information placement please reference **Figure 1** of the instructions page.

Glass Etch 1

Glass Etch 2

Glass Etch 3

6. If available, please provide the **Product Identity Stamps** for window(s) manufactured from 1991 through 1997, and please provide the **Unit ID Labels** for window(s) manufactured from 1997 through 2006.

   a. The **Product Identity Stamp** is located on the sill of the product. To find it, open the sash and examine the frame sill assembly. Examine the area around the pivot head screw or the flat part where the hardware is attached and slides. When looking for the stamp, it may be necessary to clean built up dirt from the sill to be able to see the stamp. The stamp is located approximately 2 to 4 inches from one corner of the unit.

   **Note:** For an example of *Product Identity Stamp* placement please reference **Figure 2** of the instructions page.

Product Identity Stamp 1    Product Identity Stamp 2    Product Identity Stamp 3

   b. The **Unit ID Label** was adhered to the glass of each window. The Label is a string of number that could be 50+ digits long. To find it, examine the interior glass on spacer and the lower corner of the glass.

   **Note:** For an example of *Unit ID* label placement please reference **Figure 3** of the instructions page.

Unit ID 1

Unit ID 2

Unit ID 3

Please attach any documentation and/or photographs to show the **purchase date** or **date of installation** of your Pella ProLine Casement Window(s), or to show when your home was built. Include any receipts or purchase orders.

You may have documents from the original purchase, documents from Pella identifying the type and vintage (year of manufacture) of the window(s), or other invoices, photographs, or documents with identifying information. This documentation needs to be provided.

7. Identify whether the wood portion of the Pella ProLine Casement Window(s) that faces the interior of the building was "finished," i.e., painted, stained, or varnished. ☐ No ☐ Yes

    a. If the wood portion of the Pella ProLine Casement Window(s) was finished, please identify, if you know, whether the window was sold already finished or whether it was finished after sale or installation by someone other than Pella (e.g., the homeowner, the owner of the building, a contractor or a painter, etc.).

        ☐ Sold Finished     ☐ Finished after sale

Please attach any documentation and/or photographs you may have to show whether or not the portion of the Pella ProLine Casement Window(s) that faces the interior of the building was "finished".

8. Identify whether your Pella ProLine Casement Window(s) has/have sustained water-intrusion related damage, such as wood rot. ☐ No ☐ Yes

**If you replied Yes to question 8 above, please answer the following questions:**

9. Identify the nature of the damage alleged in the claim you are making as part of this Class Action litigation.

_____

_____

_____

_____

_____

_____

    a. Please specify whether you are making a claim for (check all that apply):

        ☐ Damage to your window(s) that has/have already been repaired or replaced

        ☐ Damage to your window(s) that has/have NOT already been repaired or replaced

        ☐ Damage to your window finish(es) that has/have already been repaired or replaced

        ☐ Damage to your window finish(es) that has/have NOT already been repaired or replaced

        ☐ The cost of installing a replacement window(s) that has/have already been replaced

        ☐ Damage to other property other than your window(s) (such as damage to the structure surrounding the window(s)) caused by water intrusion in the window that has/have already been repaired or replaced

        ☐ Damage to other property other than your window(s) (such as damage to the structure surrounding the window(s)) caused by water intrusion in the window that has/have NOT already been repaired or replaced

b. Identify the Location of any property damage in addition to your window(s) (check all that apply):

☐ Wall  ☐ Ceiling  ☐ Floor  ☐ Under/Around Fixtures  ☐ Upstairs  ☐ Downstairs

☐ In Basement  ☐ Other: _____

c. State the total number of Pella ProLine Casement Window(s) damaged by water intrusion: ☐☐☐

Because the Settlement Administrator must verify that your window(s) experienced damage covered by the Settlement, please attach any photographs or other documentation to verify the damages claimed above.

10. Have you at any time prior to [INSERT DATE] notified Pella Corporation, Pella Windows and Doors, Inc. (collectively "Pella"), any employee of Pella Corporation, or a Pella Sales branch regarding wood rot or water intrusion related to your Pella ProLine Casement Window(s) identified in this Claim Form? ☐ No  ☐ Yes

If "Yes", state:

Date of notification

☐☐ – ☐☐ – ☐☐☐☐
MM         DD         YYYY

Name (Business or Individual) to whom you made the notification

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

If you have any contemporaneous documentation (documentation made or received at or near the time of the notification) that verifies any such notifications, please attach that documentation. Examples of such documentation would be a copy of a letter or email received from Pella Customer Service.

11. Have you at any time prior to [INSERT DATE] made a claim or claims to Pella Corporation or Pella Windows and Doors, Inc. (collectively "Pella"), any employee of Pella Corporation, or a Pella Sales branch for repair or replacement damage to your Pella ProLine Casement Window(s) identified in this Claim Form, which you alleged was incurred by the failure of your Pella ProLine Casement Window(s)? ☐ No  ☐ Yes

If "Yes", state (1) the date of the claim, (2) to whom you made the claim, (3) the nature of the alleged damage:

Date of the claim

☐☐ – ☐☐ – ☐☐☐☐
MM         DD         YYYY

Name to whom you made the claim (Individual or Business)

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

The nature of the alleged damage: _____

_____

_____

_____

_____

If you have any contemporaneous documentation (documentation made or received at or near the time of the claim) that verifies any such claims, please attach that documentation. Examples of such documentation would be a copy of a letter or email received from Pella Customer Service.



05-CA5163
K4115 v.07 06.18.2012

**QUESTIONS? Call 1-877-276-6840 or visit www.WindowSettlement.com**

2D

12. If you answered "Yes" to Question No. 11, was or were any of your claims denied? ☐ No ☐ Yes

If "Yes", state the ultimate outcome of the claim: _____

_____

_____

_____

_____

_____

If you have any contemporaneous documentation (documentation made or received at or near the time of the claim) that verifies any such denial of claims, please attach that documentation. Examples of such documentation would be a copy of a letter or email received from Pella Customer Service.

13. Did Pella, any employee of Pella Corporation, or a Pella Sales branch inspect the Pella ProLine Casement Window(s) (or the surrounding property) identified in this Claim Form, after you discovered the damages alleged in this Claim Form? ☐ No ☐ Yes

If "Yes", state who preformed the inspection, and the date of the inspection:

Date of the inspection

☐☐ – ☐☐ – ☐☐☐☐
MM       DD         YYYY

Name of who preformed the inspection (Individual or Business)

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

If you have any contemporaneous documentation (documentation made or received at or near the time of the claim) that verifies such an inspection, please attach that documentation. Examples of such documentation would be a copy of a letter or email received from Pella Customer Service.

14. Have you previously repaired any alleged damage to or from the Pella ProLine Casement Window(s) or replaced such Window(s)? ☐ No ☐ Yes

If "Yes", state the date of the repair or replacement, and the nature of the repair or replacement:

Date of the repair or replacement

☐☐ – ☐☐ – ☐☐☐☐
MM       DD         YYYY

Nature of the reapair or replacement: _____

_____

_____

_____

_____

_____

_____

_____

15. If you answered "Yes" to Question No. 14 please also provide how much it cost you:

    a.  To repair or replace your Pella ProLine Casement Window(s) (if applicable)?     $ ☐☐☐☐☐☐ . ☐☐

    b.  To repair or replace the window finish(es) of your Pella ProLine Casement Window(s) (if applicable)?     $ ☐☐☐☐☐☐ . ☐☐

    c.  For installation costs, if necessary (if applicable)?     $ ☐☐☐☐☐☐ . ☐☐

    d.  To repair or replace property other than your window(s) caused by water intrusion in your Pella ProLine Casement Window(s)?     $ ☐☐☐☐☐☐ . ☐☐

Please attach contemporaneous documentation (documentation made or received at or near the time of the repair or replacement) that verifies the date and nature of the repair or replacement and the amount of your repair or replacement costs. Examples of such documentation include receipts, invoices, canceled checks, or other financial records showing the amount of money paid for the repair or replacement and the nature of the repair or replacement performed.

16. If you have not had the alleged damage repaired, how much will it cost you to repair the alleged damage to property other than your window(s) caused by water intrusion in your Pella ProLine Casement Window(s)?

    $ ☐☐☐☐☐☐ . ☐☐

Please attach documentation that verifies the nature of the damage and the costs necessary to repair the damage to property other than your window(s), including costs for labor, paint, wallboard, or other materials necessary to repair. Examples of such documentation include a qualified contractor's written estimate with line item estimates for each type of cost.

17. Identify whether you have made any claims on your homeowners insurance for water intrusion damage to your Pella ProLine Casement Window(s) or resulting property damage  ☐ No  ☐ Yes

    If "Yes", state:

    a.  With whom you have your homeowners insurance (Individual or Business)

    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

    b.  The amount of the claim:  $ ☐☐☐☐☐☐ . ☐☐☐

    c.  Whether the claim was paid:  ☐ No  ☐ Yes

    d.  The amount, if any you were paid on your claim:  $ ☐☐☐☐☐☐ . ☐☐

Please attach documentation showing any such claims, any documentation you submitted in support of any such claims, and the result of any such claims.

18. Identify whether you have made any claims to anyone else (such as a contractor, subcontractor, siding manufac-turer, etc.) for water intrusion damage to your Pella ProLine Casement Window(s) or resulting property damage.

☐ No   ☐ Yes

If "Yes", state:

a. The amount of the claim: $ [ ][ ][ ][ ][ ][ ] . [ ][ ]

b. To whom the claim was made (Individual or Business)

[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

c. The nature of the claim: _____

_____

_____

_____

_____

_____

_____

d. Whether the claim was paid:   ☐ No   ☐ Yes

e. The amount, if any, you were paid on your claim:  $ [ ][ ][ ][ ][ ] . [ ][ ]

Please attach documentation showing any such claims, any documentation you submitted in support of any such claims, and the result of any such claims.

19. Identify whether you have ever initiated a lawsuit or other legal claims (whether it is resolved or not resolved) against Pella Corporation or Pella Windows and Doors, Inc.?   ☐ No   ☐ Yes

If "Yes", state:

a. The nature of the lawsuit or other legal claim: _____

_____

_____

_____

_____

_____

b. The location of the lawsuit or other legal claim: _____

_____

_____

c. The date the lawsuit or other legal claim was commenced: [ ][ ] – [ ][ ] – [ ][ ][ ][ ]
                                                              MM      DD       YYYY

d.  The lawyer representing you in that lawsuit or other legal claim.

Name

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Mailing Address, including apartment, unit or box number

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

City                                                                                       State       Zip Code

| | | | | | | | | | | | | | | | | |          | | |          | | | | |

20.  Are you currently employed by Pella Corporation or Pella Windows and Doors, Inc.?  ☐ No   ☐ Yes

## IV.  Settlements.

1.  Have you entered into any oral or written Settlement for the damage alleged in this Claim Form with Pella Corporation, Pella Windows and Doors, Inc., or received the benefit of any payments to you or on your behalf as a result of those damage allegations?   ☐ No   ☐ Yes

If "Yes", provide the following information:

a.  Date of Settlement or payment:   ☐☐ – ☐☐ – ☐☐☐☐
                                        MM       DD        YYYY

b.  Amount of Settlement or payment:   $ ☐☐☐☐☐ . ☐☐

c.  Did you sign any written release or Settlement Agreement?   ☐ No   ☐ Yes

If "Yes", please attach a copy of the Release or Settlement Agreement.

2.  Have you entered into any oral or written settlement for the damage alleged in this Claim Form with anyone other than Pella Corporation, Pella Windows and Doors, Inc. (such as a contractor, a siding manufacturer, etc.), or received the benefit of any payments to you or on your behalf as a result of those damage allegations?

☐ No   ☐ Yes

If "Yes", provide the following information:

a.  With whom you made the Settlement (Individual or Business)

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

b.  Date of Settlement or payment:   ☐☐ – ☐☐ – ☐☐☐☐
                                        MM       DD        YYYY

c.  Amount of Settlement or payment:   $ ☐☐☐☐☐ . ☐☐

d.  Did you sign any written release or Settlement Agreement?   ☐ No   ☐ Yes

If "Yes", please attach a copy of the Release or Settlement Agreement.

## V.     Ownership Documentation.

1.   Please attach documentation that verifies that you are the current or former owner of the property containing the Pella ProLine Casement Window(s) identified above, during the period when the Pella ProLine Casement Window(s) were/need to be repaired or replaced.

> **Examples of sufficient documentation of property ownership include** a copy of property tax bills, a copy of property deeds or deeds of trust, a copy of a declaration page from a policy of title or homeowners insurance, a copy of mortgage statement, a copy of mortgage payment coupon, or other documentation demonstrating ownership, including the property address.  The documentation must be (a) for/from the year in which the repairs or replacements took place, or (b) for/from the current year if the window(s) has/have yet to be repaired or replaced.

If you are the owner of an individual living unit such as a condominium or townhouse, then you must also provide satisfactory proof that you have/had the maintenance obligation during the period when the Pella ProLine Casement Window(s) were/need to be repaired or replaced, for the damage alleged in your Claim Form.

> **Example of satisfactory proof would be** a copy of the Covenants, Conditions and restrictions governing the condominium or townhouse.

## VI.   Additional Information:

1.   Please state below any additional information which you believe would be helpful in evaluating your claim.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**VII.** By the filing of this Claim Form, you hereby submit to the jurisdiction of the United States District Court for the Northern District of Illinois for the purposes of this claim.

**VIII.** The benefits provided by the Settlement are for otherwise unreimbursed costs and expenses incurred by you related to damage covered by the settlement. By submitting this Claim Form, you verify that other than what you disclosed in this Claim Form, you have not otherwise been reimbursed or compensated for the costs and expenses you are seeking in this Claim Form.

**IX.** The benefits provided by the Settlement DO NOT cover damage that was caused by any of the following causes:

(i) misuse, or intentional, reckless, accidental, and/ or negligent physical damage to a window caused directly or indirectly by a Settlement Class Member or other person; (ii) damage to window(s) to the extent resulting from natural disaster including, but not limited to fire, hurricane, wind, flood, earthquake or earth movement; (iii) damage resulting from causes unrelated to window performance (such as plumbing leaks, interior water spills, fire damage, caulk or putty cracks, or any other defect in the structure); (iv) damage due to racking, covering or blocking of weep holes or drilling holes through the window frame; (v) damage due to improper storage, handling, installation, modification, or maintenance; (vi) damage due to an altered or reinstalled window; (vii) damage due to finishes, sealants or caulking not applied by Defendants or failure to finish the product in a timely manner; (viii) damage caused to wood, medium density fiberboard, or sheetrock, sills or jambs by natural weathering; (ix) damage caused by exterior leaks; and (x) damage caused by interior condensation.

By submitting this Claim Form, you verify, under oath and the penalty of perjury, that all of the damage for which you are seeking benefits in this Claim Form was not caused by any of the causes identified in this section.

**X. Certification, Under the Penalty of Perjury and Notarization**

Pursuant to 28 U.S.C Section 1746, I declare under penalty of perjury that the answers and statements made in the form are true and correct and all enclosures are true and correct copies; and:

1. The Social Security Number or Taxpayer Identification Number for this claimant is correct; and

2. The claimant is NOT subject to backup withholding because: (a) the claimant is exempt from backup withholding, or (b) the claimant has not been notified by the Internal Revenue Service (IRS) that the claimant is subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified the claimant that he or she is no longer subject to the backup withholding; and

3. The claimant is a U.S. citizen or other U.S. person.

*Note: You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.*

**The Internal Revenue Service does not require your consent to any provision of this document other than certifications required to avoid backup withholding.**

Enter your TIN in the appropriate box below.

Social Security Number

☐☐☐ – ☐☐ – ☐☐☐☐

Employer Identification Number

☐☐ – ☐☐☐☐☐☐☐

In addition, please answer the following questions:

1. Are you seeking reimbursement for a structure/product, etc., that you no longer own? ☐ No ☐ Yes

2. Did you deduct the cost of installation of the product on your federal tax returns? ☐ No ☐ Yes

3. Did you deduct the cost of repairs of the product on your federal tax returns? ☐ No ☐ Yes

By signing this Claim Form, I certify under the penalty of perjury, that the information I provided in this Claim Form is true and correct, to the best of my knowledge.

Subscribed and sworn to before me this

_____ day of _____ , 2012

_____
Signature of Claimant

_____
Notary Public

_____
Date of Signature

# EXHIBIT C

# EXHIBIT C, part C.1.

# If you are a current or former owner of a home or other structure that contains Pella ProLine Casement Windows, you may qualify for benefits from a class action settlement.

*Para una notificación en Español, llamar o visitar nuestro website.*

A settlement has been reached with Pella Corporation and Pella Windows and Doors, Inc. ("Defendants") about allegedly defective Pella Proline brand casement, awning and/or transom windows manufactured by Pella Corporation between 1991 and 2006 ("Pella ProLine Casement Windows"). The settlement covers damage to class members' windows and property. The United States District Court for the Northern District of Illinois will hold a hearing to decide whether to give final approval to the settlement, so that the benefits can be issued. Those included have legal rights and options, such as submitting a claim for benefits or excluding themselves from or objecting to the settlement. More information is in the detailed notice, which is available at www.XXXXXXXXXXXXXX.com.

## WHAT IS THIS ABOUT?

Plaintiffs allege that Pella ProLine Casement Windows manufactured by Pella Corporation contain defects that have caused water intrusion and resulting damage to the windows and Plaintiffs' property; that some Pella ProLine Casement Window owners have paid for repairs or replacements of their subject windows; and that some owners will require future repairs or replacements of their subject windows. The lawsuit seeks monetary damages from Defendants. Defendants deny Plaintiffs' allegations of wrongdoing and asserts numerous defenses to Plaintiffs' claims. The Court has made no determination about the strengths or weaknesses of any of Plaintiffs' contentions or any of Defendants' defenses. Instead, Plaintiffs and Defendants have entered into a settlement to end the litigation.

## WHO IS INCLUDED?

The Court decided that the Settlement Class includes all persons in the United States who are current or former owners of structures containing Pella ProLine brand casement, awning and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between 1991 and 2006. Each of these persons is a Settlement Class Member. **You received this Notice because records of Pella Corporation indicate that you are a current or former purchaser or owner of Pella ProLine Casement Window manufactured by Pella Corporation from 1991 to 2006**.

## WHAT DOES THE SETTLEMENT PROVIDE?

If you are a Class Member and submit a complete and valid Claim Form for Eligible Damage, satisfy all of the requirements to become an Eligible Claimant as described in the Detailed Notice, and meet the criteria relevant to receive a cash payment, the maximum cash benefit available through the Claims Process is $750 per structure.

If you are a Class Member and submit a complete and valid Claim Form for Eligible Damage, satisfy all of the requirements to become an Eligible Claimant as described in the Detailed Notice, and meet the criteria relevant to receive a Discount, the Discount will be a percentage off the Retailer's List Price on a Eligible Claimant's next purchase of a single Pella brand product unit.

The settlement also creates an arbitration process where Class Members can seek payment for unreimbursed expenses. The maximum award available in the arbitration process is $6,000 per structure.

The Detailed Notice and Settlement Agreement, available at www.XXXXXXXX.com, describe in detail the benefits available under the proposed settlement, including who is an Eligible Claimant and what is Eligible Damage.

## HOW DO YOU ASK FOR BENEFITS?

To obtain any benefits from the settlement you must fill out and submit a Claim Form or an Arbitration Form. If you received this Notice in the mail a Claim Form was included. Arbitration Forms and additional Claim Forms are available at the website or by calling 1-8XX-XXX-XXX. All Claim Forms and Arbitration Forms, together with supporting documentation or information, as applicable, must be mailed by first-class United States Mail, postage prepaid, and postmarked no later than **Month Day, 2013**, to the Settlement Administrator at the address listed on the forms.

## YOUR OTHER OPTIONS.

If you do not want to be legally bound by the settlement, you must exclude yourself from the Class by **Month Day, 2012**, or you will not be able to sue Defendants about the legal claims this settlement resolves, ever again. If you exclude yourself, you cannot get any benefits from the settlement. If you stay in the Class, you may object to it by **Month Day, 2012**. The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in the case, known as *Saltzman et al. v. Pella Corporation et al.*, Case No. 06-cv-4481, on **Month Day, 2012**, to consider whether to approve the settlement, and a request by Class Counsel for attorneys' fees, costs, and expenses of no more than eleven million dollars. The Named Plaintiffs will apply to the Court for an incentive award to be paid out of the attorneys fee award to Class Counsel. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to. For more information, call or go to the website shown below.

**www.XXXXXXXXXX.com**      **1-8XX-XXX-XXXX**

# EXHIBIT C, part C.2.

<span style="text-align:center">UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION</span>

# If you are a current or former owner of a home or other structure that contains Pella ProLine Casement Windows, you may qualify for benefits from a class action settlement.

*This Notice may affect your rights please read it carefully.*

- A settlement has been reached with Pella Corporation and Pella Windows and Doors, Inc. ("Defendants") about allegedly defective Pella ProLine brand casement, awning and/or transom windows manufactured by Pella Corporation between 1991 and 2006 ("Pella ProLine Casement Windows"). The Settlement covers possible water intrusion and damage to class members' windows and property.

- The Claims Process created by the Settlement provides a maximum cash payment of $750 per structure and certain Discounts on a next purchase of a single Pella brand product unit. The Settlement also creates an arbitration process where Class Members can seek payment for unreimbursed expenses. The maximum award available in the arbitration process is $6,000 per structure.

- Your legal rights are affected whether you act or do not act. Read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | Submit a Claim Form seeking cash payment and/or other benefits. |
| **PARTICIPATE IN BINDING ARBITRATION** | Participate in binding arbitration seeking cash payment. |
| **EXCLUDE YOURSELF** | Get no benefits from the Settlement. This is the only option that allows you to start a lawsuit against Defendants about legal claims regarding Pella ProLine Casement Windows. |
| **OBJECT** | Write to the Court about why you do not like the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no benefits. Give up your rights to sue Defendants about legal claims regarding Pella ProLine Casement Windows.. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. If it does, and after any appeals are resolved, benefits will be distributed to those who file a valid and timely claim. Please be patient.

<span style="text-align:center">QUESTIONS? CALL 1-xxx-xxx-xxxx OR VISIT WWW.XXX.COM
SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.</span>

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ...........................................................................................................**PAGE 3**

    1. Why is this Notice being provided?
    2. What is this lawsuit about?
    3. Why is this a class action?
    4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ................................................................................................**PAGE 4**

    5. How do I know if I am part of the Settlement?
    6. Are there exceptions to being included?
    7. What if I am not sure whether I am included in the Settlement?
    8. Who is eligible to seek benefits under the Settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY** ....................................**PAGE 5**

    9. What do "Date(s) of Sale", "Prior Notice" and "Retailer's List Price" mean?
    10. What are the benefits of the Settlement?
    11. What benefits can I receive for repairs made prior to the date of this Notice?
    12. What benefits can I receive for Eligible Damage unrepaired as of the date of this Notice?
    13. What if I want to make a claim for unreimbursed expenses outside the claims process?
    14. Can I seek relief for Eligible Damage after the close of the claims period?

**HOW TO GET A PAYMENT OR OTHER BENEFITS** ................................................................**PAGE 9**

    15. What do I need to do to participate in the Settlement?
    16. How and when will the Settlement Administrator process claims for benefits?
    17. What am I giving up to get a payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .............................................................**PAGE 11**

    18. If I exclude myself, can I get anything from the Settlement?
    19. If I do not exclude myself, can I sue later?
    20. How do I get out of the Settlement?

**THE LAWYERS REPRESENTING YOU** ....................................................................................**PAGE 12**

    21. Do I have a lawyer in the case?
    22. How will the administrative costs and attorneys' fees be paid?

**OBJECTING TO THE SETTLEMENT** ........................................................................................**PAGE 12**

    23. How do I tell the Court if I do not like the Settlement?
    24. What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** .......................................................................................**PAGE 14**

    25. When and where will the Court decide whether to approve the Settlement?
    26. Do I have to come to the hearing?

**GETTING MORE INFORMATION** ............................................................................................**PAGE 14**

    27. How do I get more information?

**QUESTIONS? CALL 1-xxx-xxx-xxxx OR VISIT WWW.XXX.COM**

# BASIC INFORMATION

## 1. Why is this Notice being provided?

A Court authorized this Notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who may be eligible for those benefits, and how to get them.

Judge James B. Zagel of the United States District Court for the Northern District of Illinois, Eastern Division, is overseeing this class action. The Settlement resolves the case known as *Saltzman et al. v. Pella Corporation et al. ("Saltzman v. Pella")*, Case No. 06-cv-4481.

The persons who sued are called "Plaintiffs," and the companies being sued, Pella Corporation and Pella Windows and Doors, Inc. are called "Defendants."

## 2. What is this lawsuit about?

Plaintiffs allege that Pella ProLine Casement Windows manufactured by Pella Corporation contain defects that have caused water intrusion and resulting damage to the windows and Plaintiffs' property; that some Pella ProLine Casement Window owners have paid for repairs or replacements of their subject windows; and that some owners will require future repairs or replacements of their subject windows.  Plaintiffs' lawsuit asserts claims against Defendants for negligence, negligent misrepresentation, breach of contract, breach of express warranty, products liability, breach of implied warranty of merchantability, unjust enrichment, violation of Illinois Consumer Fraud and Deceptive Business Practices Act and substantially similar laws of certain other States, violation of similar Uniform Deceptive Trade Practices Acts, and common law fraud by omission based on alleged defects that have caused or will cause damage to class members' homes or personal property allegedly resulting from water-related intrusion. The lawsuit seeks monetary damages from Defendants. Defendants deny Plaintiffs' allegations of wrongdoing and asserts numerous defenses to Plaintiffs' claims.

The Court has made no determination about the strengths or weaknesses of any of Plaintiffs' contentions or any of Defendants' defenses.  Instead, Plaintiffs and Defendants have entered into a Settlement to end the litigation.  The Court has preliminarily approved a nationwide settlement provided for in the Settlement, but the Settlement will not actually take effect unless and until (a) it is finally approved by the Court after the public Fairness Hearing, which is described below in paragraph 25, and (b) following the Fairness Hearing, the Court grants final approval of the Settlement and, after the entry by the Court of the Final Approval Order and the judgment therein, (i) no notice of appeal of the judgment or any order in the Action has been filed, (ii) the time provided for in the Federal Rules of Appellate Procedure to take any such appeal has expired, and (iii) any right to take any such appeal has been waived or otherwise lost, or each such appeal that has been taken has been finally adjudicated and the judgment and Final Approval Order have been upheld in all respects by each such final adjudication.

## 3. Why is this a class action?

In a class action, one or more people called "Named Plaintiffs" (in this case Dr. Leonard Saltzman, Brad Zurn, Tim Bastiaanse, Joseph Palmiotto, and Judith McClosky) sue on behalf of people who have similar claims.  All of these people are Settlement Class Members.  One court resolves the issues for all class members, except for those who timely exclude themselves from the class.

### 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. Instead, both sides agreed to settle this case to avoid the cost and risk of a trial. The proposed Settlement does not mean that any law was broken or that the Defendants did anything wrong. Defendants deny all legal claims in this case. Named Plaintiffs and their lawyers think the proposed Settlement is best for all Settlement Class Members.

## WHO IS IN THE SETTLEMENT

To see if you will be affected by the Settlement or if you can get a payment from it, you first have to determine if you are a Settlement Class Member.

### 5. How do I know if I am part of the Settlement?

The Court decided that the Settlement Class includes all persons in the United States who are current or former owners of structures containing Pella ProLine brand casement, awning and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between 1991 and 2006. Each of these persons is a Settlement Class Member.

### 6. Are there exceptions to being included?

Yes. The following are not included in the Settlement: (a) all owners of Pella ProLine Brand casement, awning, and/or transom windows manufactured on or after January 1, 2007, (b) all current employees of Defendants, (c) persons who validly request exclusion from the Settlement Class as described in paragraph 20 below, (d) all persons who, individually or as a member of a class, initiated legal proceedings against Defendants (other than *Saltzman v. Pella*) prior to [DATE of entry of the Preliminary Approval Order].

### 7. What if I am not sure whether I am included in the Settlement?

If you are not sure whether you are in the Settlement Class, or have any other questions about the Settlement, visit the Settlement website at www.xxx.com or call the toll free number, 1-xxx-xxx-xxxx. You may also write with questions to Window Settlement, PO Box xxx, Portland, OR 97208-xxxx or send an e-mail to info@xxx.com.

### 8. Who is eligible to seek benefits under the Settlement?

In order to receive benefits, you must have suffered "Eligible Damage" and satisfy certain requirements to be an "Eligible Claimant". The Settlement Agreement defines "Eligible Damage" and "Eligible Claimants" as follows:

**Eligible Damage**: Settlement Class Members are eligible to seek benefits if they have suffered past water related damage, current water related damage, or suffer water related damage in the future—up to 15 years after the Date of Sale—to a Pella ProLine Casement Window, to the finishing on such window or to other property surrounding such window, such as water related damage to the Structure in which such window was installed because of water penetrating between the aluminum cladding of the window and the window Sash at the corner joint of the cladding or at the glazing/Sash interface ("Eligible Damage"). Eligible Damage includes wood deterioration and/or wood durability damage resulting from water penetrating between the aluminum cladding of the window and the window Sash at the corner joint of the cladding or at the glazing/Sash interface. No recovery is allowed absent evidence of water-related damage consistent with said type of water penetration.

**Eligible Claimants**: The Settlement provides the benefits described below in this paragraphs 10-14, but only for "Eligible Claimants." You will not be an Eligible Claimant unless you satisfy each of the following criteria:

1) You are the current or former owner of real property in the United States with a building or buildings in which Pella ProLine Casement Windows manufactured between 1991 and 2006 are or were installed;
2) You timely comply with the requirements to supply all information, documents, and photographs within the time required as described below;
3) You meet all the relevant criteria set forth in the Agreement;
4) You do not opt out of this Settlement on or before [DATE that is no later than 95 days from the date of entry of the Preliminary Approval Order], following the procedures to do so as described below;
5) You are covered by the Class Settlement, as summarized in paragraph 5, above; and

If you are making claims for Eligible Damage occurring up to the close of the Claim Period:

6) You timely sign and submit, under penalty of perjury, a properly completed Claim Form that is notarized or a properly completed Arbitration Form that is notarized; **OR**

If you are making claims for Eligible Damage occurring after the close of the Claim Period:

7) You contact Pella Corporation's Customer Service Department at (800) 374-4758.

# THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

If the Settlement is approved and becomes final, it will provide benefits to qualified Settlement Class Members.

## 9. What do "Date(s) of Sale", "Prior Notice" and "Retailer's List Price" mean?

The Settlement Agreement uses the following terms to help determine the benefits a Class Member may be eligible for.

**Date(s) of Sale:** Date(s) of Sale as used in this Notice means the date the Pella ProLine Casement Window at issue was sold by Pella Corporation or its authorized dealers or retailers. If an Eligible Claimant cannot establish the date the Pella ProLine Casement Window at issue was sold, the Date of Sale shall be the last day of the month in which the window at issue was manufactured.

**Retailer's List Price:** Retailer's List Price as used in this Notice means the retail price, before any discounts, sales, special offers or similar reductions in price, of Pella brand products established from time to time by the Pella sales branches listed at the end of this Notice.

**Prior Notice:** Prior Notice as used in this Notice means notice, as reflected in contemporaneously created documentation that a specific Eligible Claimant who is seeking benefits under the Agreement having provided individual notice to Defendants, any employee of Pella Corporation, or a Pella sales branch listed at the end of this Notice, of wood deterioration, wood durability, or water intrusion problems with his or her own Pella ProLine Casement Windows. Prior Notice is not satisfied by (a) the filing of this Lawsuit, or (b) merely ordering replacement windows from Defendants.

## 10. What are the benefits of the Settlement?

**Claims Process Maximum Cash Benefit**. If you submit a complete and valid Claim Form for Eligible Damage, satisfy all of the requirements to become an Eligible Claimant, as described above, and meet the criteria relevant to receive a cash payment, the maximum cash benefit available through the Claims Process is $750.

**Discount.** If you submit a complete and valid Claim Form for Eligible Damage, satisfy all of the requirements to become an Eligible Claimant, as described above, and meet the criteria relevant to receive a Discount, the Discount will be a percentage off the Retailer's List Price on a Eligible Claimant's next purchase of a single Pella brand product unit which must be redeemed within two years of the date of the Final Approval Order, can be transferred once but only

with the sale of a structure which contains or contained Pella ProLine Casement Windows and only to the purchaser of said structure, and must be redeemed at one of the Pella sales branches listed at the end of this Notice.

## 11. What benefits can I receive for repairs made prior to the date of this Notice?

If you timely submit a complete and valid Claim Form, satisfy all of the requirements to become an Eligible Claimant, as described above, and if you paid for one or more repairs or replacements of a Pella ProLine Casement Window for Eligible Damage for which you were not fully reimbursed, you are entitled to receive benefits as identified below for your unreimbursed repair or replacement of the window(s):

1)  If your window was repaired or replaced before August 18, 2003, Eligible Claimants are entitled to the following relief:

    A.  No Prior Notice.  If the Eligible Claimant repaired or replaced the window without Prior Notice, Defendants will take steps to provide you a 15% Discount.

    B.  Prior Notice.  If the Eligible Claimant gave Prior Notice of the Eligible Damage before repairing or replacing the window, Defendants will pay for un-reimbursed expenditures made by the Eligible Claimant as follows:

        (i)  If the date of Prior Notice was within 10 years after the Date of Sale - up to $175 per window or $100 per sash for un-reimbursed expenditures for windows, sashes, installation or finishing.

        (ii) If the date of Prior Notice was within years 11-15 after the Date of Sale - up to $60 per window or sash for the cost of the window or sash.

2)  If your window was repaired or replaced on or after August 18, 2003, but prior to Initial Class Notice, Eligible Claimants are entitled to the following relief:

    A.  No Prior Notice

        (i)  For Date(s) of Sale from 1991 through 2003 - If the Eligible Claimant repaired or replaced the window without Prior Notice, Defendants will take steps that provide a 15% Discount.

        (ii) For Dates of Sale from 2004 through 2006 - If the Eligible Claimant repaired or replaced the window without Prior Notice, Defendants will take steps that provide a 10% Discount.

    B.  Prior Notice.  If the Eligible Claimant gave Prior Notice of the Eligible Damage before repairing or replacing the window, Defendants will pay for un-reimbursed expenditures made by the Eligible Claimant as follows:

        (i)  For Dates of Sale from 1991 through 2003:

            a.  If the date of Prior Notice was within 10 years after the Date of Sale:

                i.   Up to $250 per window or $120 per sash for the cost of installation/finishing;
                ii.  Up to $100 per window or $60 per sash for the for the cost of the window or sash; and
                iii. Up to $100 per structure for other damages to the structure in which the window was installed.

            b.  If the date of Prior Notice was within 11-15 years after the Date of Sale:

                i.   Up to $100 per window or $60 per sash for the cost of the window or sash.

        (ii) For Dates of Sale from 2004 through 2006:

                i.   Up to $175 per window or $100 per sash for the cost of installation/finishing;
                ii.  Up to $100 per window or $60 per sash for the for the cost of the window or sash; and
                iii. Up to $100 per structure for other damages to the structure in which the window was installed.

Expenditures made by Eligible Claimants (whether unreimbursed or not) over these set category caps are not subject to payment.

## 12. What benefits can I receive for Eligible Damage unrepaired as of the date of this Notice?

If you satisfy all of the requirements to become an Eligible Claimant, as described above, and if you have a Pella ProLine Casement Window and/or surrounding property that has Eligible Damage but has not yet been repaired or replaced, Defendants will take steps that provide the following relief:

    (i)   For Dates of Sale from 1991 through 2003:

        a.  If the Settlement Claim is made within 10 years after the Date of Sale:

            i.  The remedies and benefits offered by the product warranty and the ProLine Service Enhancement Program ("PSEP") (for a more detailed description of the program see www.xxxxxxxxxxx.com); and

            ii.  Up to $100 per structure for otherwise unreimbursed expenditures the Eligible Claimant must make to remedy the Eligible Damage to the structure.

        b.  If the Settlement Claim is made within 11-15 years after the Date of Sale:

            i.  The remedies and benefits offered by the ProLine Service Enhancement Program.

    (ii)  For Dates of Sale from 2004 through 2006:

        a.  The remedies and benefits offered by the product warranty, and

        b.  PSEP benefits of (i) discounts for replacement windows, and (ii) labor and finishing benefits after the Settlement Class Member has expended with a deductible amount of to be paid by the Settlement Class Member of $100 per unit.

Expenditures made by Eligible Claimants (whether unreimbursed or not) over these set category caps are not subject to payment.

Any relief involving the replacement of any Pella ProLine Casement Window shall not extend the warranty period. The warranty period will continue to be determined by the Date of Sale of the Pella ProLine Casement Window(s) manufactured between 1991 and 2006 that are the subject of the Eligible Claimant's claim.

## 13. What if I want to make a claim for unreimbursed expenses outside the claims process?

Eligible Claimants who have, or had Eligible Damage may be eligible to seek a cash award in binding arbitration instead of through the above-detailed claims process for unreimbursed expenditures made by the Eligible Claimant and/or for necessary expenditures to remedy existing damage to the window, finishing, and/or structure containing the window. Defendants will pay the arbitrators' fees, but each side will pay its own attorneys' fees and costs (if any) and the arbitrator will not have the authority to shift attorneys' fees or costs. Settlement Class Members will not have to prove that their Pella ProLine Casement Windows have a "defect" in the aluminum cladding of the window and the window Sash at the corner joint of the cladding or at the glazing/Sash interface, but each Settlement Class Member still has the burden of proving that the "defect" caused the damages for which he/she seeks compensation in arbitration. The cash award in all arbitration cases will be limited to a maximum of $6,000 per structure, for all damage, including damage to the window(s) and the structure. The decision of the arbitrator shall be binding on all parties and is not appealable.

    1)  Arbitration Eligibility: The arbitration option is only available to Eligible Claimants who do all of the following:

        A.  Establish (with contemporaneous documentation) that they provided Prior Notice before repairing or replacing the window;

        B.  Timely complete an Arbitration Form with all the requested information and documentation;

C. Establish that they are the original purchasers of the Pella ProLine Casement Window or owned the structures in which the window was installed at the time of installation;

D. Establish that they are the current owners of the structures containing a Pella ProLine Casement Window or in which a Pella ProLine Casement Window has been replaced or removed while they owned the Structures; or former owners of the Structures containing Pella ProLine Casement Windows in which they repaired or replaced their Pella ProLine Casement Windows while owning the Structures;

E. Establish that they have or had a Pella ProLine Casement Window and/or surrounding property that already have or had Eligible Damage;

F. Attest under oath the date when any damage to the Pella ProLine Casement Window(s) or surrounding Structure was discovered; and

G. Either:

    (i) make the damaged window and/or surrounding property available to be inspected at Defendants' option and expense;

    (ii) demonstrate that the window and/or surrounding property already have been inspected by a Pella Representative; or

    (iii) attest under oath that they reported the alleged damage to Defendants, any employee of Pella Corporation, or a Pella sales branch listed at the end of this Notice, when it occurred so that Pella had the opportunity to inspect the alleged damage.

For Eligible Claimants who contend under oath they reported the Eligible Damage to Defendants, any employee of Pella Corporation, or a Pella sales branch listed at the end of this Notice, but do not have contemporaneous documentation of the report, Pella Corporation will check its electronic service database to determine whether it has any record of having received such a report or notice and the claimant will satisfy the notice and reporting requirement for Arbitration Eligibility if, but only if, documentation of the report or notice is found in that database.

If Defendants' review of the Pella Corporation electronic service database does not locate a record of the alleged report or notice, Defendants must submit an attestation to the same under oath, which will be sufficient to establish that the Eligible Claimant is not entitled to pursue arbitration under the Agreement.

## 14. Can I seek relief for Eligible Damage after the close of the claims period?

If you satisfy all of the requirements to become an Eligible Claimant, as described above, and if you seek relief for repairs for Eligible Damage after the close of the Claim Period, but within the maximum period for which the Settlement provides benefits, Defendants will take steps that provide Eligible Claimants who contact Pella Customer Service the following relief:

    (i) For Dates of Sale from 1991 through 2003:

        a. The remedies and benefits (if any) offered by the product warranty and the ProLine Service Enhancement Program; and

        b. A 15% Discount.

    (ii) For Dates of Sale from 2004 through 2006:

        a. If the Settlement Claim is made within 10 years after the Date of Sale:

            i. The remedies and benefits offered by the product warranty, and

            ii. PSEP benefits (if any) of (i) discounts for replacement windows, and (ii) labor and finishing benefits after the Settlement Class Member has expended with a deductible amount of to be paid by the Settlement Class Member of $100 per unit.

        b. If the Settlement Claim is made within 11-15 years after the Date of Sale:

i. The remedies and benefits offered by the ProLine Service Enhancement Program (if any).

Any relief involving the replacement of any Pella ProLine Casement Window shall not extend the warranty period. The warranty period will continue to be determined by the Date of Sale of the Pella ProLine Casement Window(s) manufactured between 1991 and 2006 that are the subject of the Eligible Claimants claim.

The benefits and relief under this Section will be administered by Defendants, and not by the Settlement Administrator.

# HOW TO GET A PAYMENT OR OTHER BENEFITS

## 15. What do I need to do to participate in the Settlement?

To obtain any benefits from Pella for Eligible Damage that existed or exists prior to [DATE – end of Claims Period], you must follow the Instructions that accompany the Claim Form or Arbitration Form. All Claim Forms and Arbitration Forms, together with supporting documentation or information, as applicable, must be mailed by first-class United States Mail, postage prepaid, and postmarked no later than **Month Day, 2013**, to the Settlement Administrator:

Window Settlement
PO Box xxxx
Portland, OR 97208-xxxx

You cannot submit your Claim Form or Arbitration Form and accompanying materials by telephone or on the Internet. If you change your address and want to receive a Claim Form or Arbitration Form or any payment owed to you by Defendants at your new address, you should notify the Settlement Administrator of your new address by either (i) visiting www.xxxxxxxxxxxxxxxx.com and providing your new address or (ii) sending written notice of your change of address to the Pella Settlement Administrator at the address above. If you meet the eligibility criteria set for in the Agreement and you discover Eligible Damage after [DATE - the close of the Claims Period], you must contact Pella Corporation's Customer Service Department at (800) 374-4758 to determine whether or not you are eligible for benefits under the Agreement.

If you did not receive a Claim Form by mail, or if you need to obtain one or more additional Claim Forms or an Arbitration Form, you should contact the Settlement Administrator in any of the following ways: (1) by Internet by visiting the Settlement Administrator's website, www.xxxxxxxxxxxxx.com; (2) by telephone by calling the Settlement Administrator's toll-free telephone number, _____; or (3) by United States Mail by writing to the Pella Settlement Administrator, Epiq Class Action & Claims Solutions, Inc[street address], _____ [city], _____ _____ [state and zip].

The Claim Form and Arbitration Form each need to be notarized, and you must sign each Claim Form or Arbitration Form you submit under penalty of perjury, which means that you are swearing under oath that the statements you make in your form are true. The submission of a false claim may be a criminal offense.

## 16. How and when will the Settlement Administrator process claims for benefits?

**Validation of Claims for Benefits**. For Claim Forms and Arbitration Forms seeking benefits from Pella for Eligible Damage that existed or exists prior to [DATE – end of Claims Period], the Settlement Administrator will begin reviewing all such Claim Forms and Arbitration Forms and required supporting documentation if, following the Fairness Hearing, the Court grants final approval of the Class Settlement and, after entry by the Court of the Final Approval Order and the judgment therein, no notice of appeal of the judgment or any order in the Action has been filed, the time provided for in the Federal Rules of Appellate Procedure to take any such appeal has expired, and any right to take any such appeal has been waived or otherwise lost, or each such appeal that has been taken has been finally adjudicated and the judgment and Final Approval Order have been upheld in all respects by each such final adjudication. If you timely submit a Claim Form or Arbitration Form, the Settlement Administrator will evaluate it based on all the information and documentation you have provided. If you fail to provide all information, documents, or photographs required by the Claim Form and the Agreement, the Settlement Administrator will notify you in writing of your failure to do so. The

missing information, documents, or photographs must be received by the Settlement Administrator (or postmarked) within 30 days from the postmarked date of that written notice of your failure to provide all necessary information, documents, or photographs.

**Denial of Claims for Benefits**.  If your Claim Form and accompanying materials do not meet all of the requirements of the Settlement, your claim will be deemed invalid, the Settlement Administrator will deny your claim, you will not receive any reimbursement payment, and you will be informed in writing of that decision.

**Payment of Validated Claims for Benefits**.  If you submit a Claim Form seeking benefits for Eligible Damage that was replaced or repaired before the date of this Notice, and the Settlement Administrator approves your Claim Form and accompanying materials as a Valid Claim, the Settlement Administrator will notify you that your claim has been approved, together with sending a check in the amount of any cash payment that is awarded.

If you submit a Claim Form seeking benefits for Eligible Damage that was not replaced or repaired before the date of this Notice, and the Settlement Administrator determines your that Claim Form and accompanying materials present a Valid Claim and preliminarily satisfy the eligibility criteria of the Agreement, the Settlement Administrator will notify you that under the terms of the Agreement you may be entitled to certain benefits and to contact Pella to seek those potential benefits.  Pella will make the final determination as to whether or not your request for benefits complies with all the requirements in the Agreement.  If your request does satisfy all the requirements of the Agreement, Pella will then provide you the benefits to which you are entitled.

**No Payment Until Appeal Exhaustion**.  If any notice of an appeal from the Final Approval Order or the judgment provided therein is timely filed by any party, objector, claimant, or other person, the Settlement will not be or become final or effective, Pella will have no obligation to make any payment to any Settlement Class Member, and the Settlement Administrator will make no payment to any Settlement Class Member, unless and until each such appeal has been finally adjudicated and the Final Approval Order, including the judgment therein, has been upheld in all respects by each such final adjudication.

| 17.  What am I giving up to get a payment? |
|---|

If the Settlement receives final judicial approval, it will result in a release by Plaintiffs and all members of the Settlement Class, including all their heirs, successors in interest, assigns, transferees and grantees (other than those members who timely request to be excluded from the Settlement Class in the manner described below in paragraph 20) of all claims that Plaintiffs or any member of the Settlement Class ever had, now have, or may later claim to have at any time in the future whether known or unknown, arising out of or in any way relating to the design, manufacture, sale, distribution, marketing, warranty, service, use, performance, installation, purchase of, or in any way relating to the Pella ProLine Casement Windows, against (1) Pella Corporation and Pella Windows and Doors, Inc.; (2) any predecessors and successors in interest, any current or former parent corporations, subsidiary corporations, affiliates, and assigns of Defendants; (3) any companies acquiring any or all of Defendants' assets or capital stock; (4) any of Defendants' past or present, divisions, suppliers, distributors, dealers, or sales branches; (5) current or former officers, directors, shareholders, agents, representatives and employees of Defendants; and (6) insurers of any of the forgoing persons or entities.  The Settlement is intended to settle all claims covered by the release in the Agreement.  This includes all claims (known or unknown) of Settlement Class Members that arise in whole or in part out of or in any way relate to alleged defects in Pella ProLine Casement Windows or to any alleged acts, omissions, transactions, or occurrences by Defendants, whether arising under federal, state, territorial, or local common law, statutes, ordinances, or regulations.

The foregoing summary does not supersede the terms of the Agreement and related exhibits and documents, which are available for public inspection during regular business hours in the United States District Court for the Northern District of Illinois, Eastern Division, located at _____ [courthouse name], _____ [street address], _____ [city], Illinois _____ [zip].  A copy of the Agreement can also be found at www.xxxxxxxxxxxxxx.com.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to participate in this proposed Settlement and you want to keep the right to sue Pella about the legal issues in this case, then you must take steps to get out of the Settlement. This is called asking to be excluded from, or sometimes called "opting out" of, the Settlement Class.

**18.  If I exclude myself, can I get anything from this settlement?**

No. If you exclude yourself, you may not apply for any benefits under the Settlement and you cannot object to the proposed Settlement. If you ask to be excluded, however, you may sue or be part of a different lawsuit against the Defendants in the future. You will not be bound by anything that happens in this lawsuit.

**19.  If I do not exclude myself, can I sue later?**

Unless you exclude yourself, you give up the right to sue the Defendants for all of the claims that the proposed Settlement resolves. You must exclude yourself from this Settlement Class to start your own lawsuit relating to the claims in this case.

**20.  How do I get out of the Settlement?**

To exclude yourself from the Settlement and Settlement Class, you must send the Settlement Administrator a request for exclusion that contains the following information:

(1)  The name of the lawsuit, *Dr. Leonard Saltzman et al. v. Pella Corporation et al.*, Case No. 06 C 4481;

(2)  Your full name and current address;

(3)  A specific statement of your intention to exclude yourself from this lawsuit (for example, "Please exclude me from the Settlement Class in the Pella ProLine Casement Window Litigation.");

(4)  The date your Pella ProLine brand casement, awning, and/or transom windows were installed and/or purchased;

(5)  The date the building containing your Pella ProLine brand casement, awning, and or transom windows was constructed; and

(6)  Your signature and the date on which you signed it.

You must mail your request for exclusion postmarked by **Month DD, 2012** to:

> Pella Settlement Administrator
> PO Box xxx
> Portland, OR 97208-xxxx

**If you do not comply with these procedures and the deadline for exclusions, you will remain a Settlement Class Member and lose any opportunity to exclude yourself from the Settlement, and your rights will be determined in this lawsuit by the Agreement, if it receives final judicial approval.**

You cannot ask to be excluded on the phone, by email, or at the website.

# THE LAWYERS REPRESENTING YOU

| **21. Do I have a lawyer in the case?** |
| --- |

The Court designated Richard J. Burke and Paul M. Weiss, and Julie Miller and their law firm of Complex Litigation Group, LLC as Lead Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in the case, you may hire one at your own expense.

If you choose to participate in the Settlement and do not exclude yourself from the Settlement Class in the manner described above in paragraph 20, you will be deemed by the Court to be a "Settlement Class Member." As a Settlement Class Member you will be represented by Class Counsel, but will not be charged for the services of Class Counsel. If you wish to remain a Settlement Class Member, but you do not wish to be represented by Class Counsel, you may hire your own attorney to represent you. If you hire your own attorney, your attorney must file an appearance no later than **Month DD, 2012** [___ days after preliminary approval], with the Clerk of the Court, and must send a copy, by first-class United States Mail, to Class Counsel and Defendants' counsel at the addresses provided below, postmarked no later than **Month DD, 2012** [___ days after preliminary approval]. If you do not exclude yourself from the Class Settlement, you will continue to be a Settlement Class Member, even if you are represented by your own attorney. You will be responsible for any fees and costs charged by your own attorney.

**Why Is Class Counsel Recommending the Class Settlement?** Class Counsel reached this Settlement after weighing the risks and benefits to the Settlement Class of this Settlement compared with those of continuing the litigation. The factors that Class Counsel considered included the uncertainty and delay associated with continued litigation, a trial and appeals, and the uncertainty of particular legal issues that have been, or are yet to be, determined by the Court. Class Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable, and adequate in light of all circumstances and in the best interests of members of the Settlement Class.

| **22. How will the administrative costs and attorneys' fees be paid?** |
| --- |

Pella has agreed to pay the costs of class notice and claims administration, including the costs of mailing this Notice and of distributing any payments owed to Settlement Class Members pursuant to the Settlement. If the Settlement is approved by the Court, Class Counsel will apply to the Court for reasonable attorneys' fees and expenses of no more than eleven million dollars to be awarded by the Court and to be paid by Pella. The Named Plaintiffs will apply to the Court for an incentive award to be paid out of the attorneys fee award to Class Counsel. Class Counsel has recommended an incentive award of $10,000 to Dr. Leonard Saltzman and $5,000 each to plaintiffs Tim Bastiaanse, Joseph Palmiotto, Brad Zurn and Judith McClosky. The Court will determine the amount of the incentive award to be paid. Settlement Class Members will not be responsible for the fees and expenses of Class Counsel, and the payment of attorneys' fees and expenses will not reduce the benefits to Settlement Class Members. Pella will not be responsible for any cost that may be incurred by, on behalf of, or at the direction of the Settlement Class Members, their counsel, or Class Counsel in (a) responding to inquires about the Settlement, the Agreement, or the lawsuit; (b) defending the Agreement or the Settlement against any challenge to it; (c) defending against any challenge to any order or judgment entered pursuant to the Settlement or the Agreement; or (d) completing the Claims Process or Arbitration Process.

# OBJECTING TO THE SETTLEMENT

| **23. How do I tell the Court if I do not like the Settlement?** |
| --- |

If you do not exclude yourself from the Class Settlement, you may, if you wish, object to the certification of the Settlement Class, to the terms of the proposed Settlement, or to Class Counsel's application for an award of attorneys' fees and expenses.

To do so, you or your own attorney must file with the Court, and send to the Settlement Administrator, Class Counsel, and Defendants' counsel, a written objection and supporting papers that contain:

    (1)  the name of this lawsuit, *Dr. Leonard Saltzman et al. v. Pella Corporation et al.*, Case No. 06 C 4481;

    (2)  your full name and current address;

    (3)  whether, on the date of your written objection, you own a home or formerly owned a home containing Pella ProLine Casement Windows manufactured by Pella from 1991 to 2006;

    (4)  each specific reason for your objection;

    (5)  all evidence and supporting papers (including, but not limited to, all briefs, written evidence, and declarations) that you want the Court to consider in support of your objection;

    (6)  your signature; and

    (7)  the date of your signature.

If you wish to appear at the Fairness Hearing, on your own behalf or by your separate counsel, and be heard orally, you may do so only if you state in your written objection your desire to appear personally or by your separate counsel at the Fairness Hearing. Objections must be filed with the Court, and separate copies served on Class Counsel and Defendants' counsel by first-class United States Mail, no later than **Month DD, 2012** [DATE 65 days after Preliminary Approval Order]. The copies to be served on Class Counsel and Defendants' counsel must be mailed to the following addresses:

| CLASS COUNSEL | Counsel for Pella |
|---|---|
| Richard Burke<br>Paul Weiss<br>Complex Litigation Group, LLC<br>513 Central Avenue, Suite 300<br>Highland Park, IL 60035 | James A. O'Neal<br>John P. Mandler<br>Faegre Baker Daniels LLP<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402 |

If you choose to object to the Settlement, you must also make yourself available for deposition within 21 days of service of your objection.

**If you do not comply with these procedures and the deadline for objections, you will lose any opportunity to have your objection considered at the Fairness Hearing or otherwise to contest the approval of the Settlement or to appeal from any order or judgment entered by the Court in connection with the Settlement.**

| 24.   What is the difference between objecting and asking to be excluded? |
|---|

Objecting is simply telling the Court that you do not like something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you cannot object to the Settlement and you will not be eligible to apply for any benefits under the Settlement because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

### 25. When and where will the Court decide whether to approve the Settlement?

On **Month Day, 2012**, at _____ [time], the Court will hold a public hearing in Courtroom _____ of the United States District Court for the Northern District of Illinois, Eastern Division, located at _____ [courthouse name], _____ [street address], _____ [city], Illinois _____ [zip], to determine whether the Settlement Class was properly certified and whether the Settlement is fair, adequate, and reasonable and should be finally approved, with judgment entered accordingly. The Court also will consider Class Counsel's application for an award of attorneys' fees and expense reimbursement and any opposition thereto. This hearing may be continued or rescheduled by the Court without further notice to the Settlement Class. Settlement Class Members who support the Settlement do not need to appear at the hearing or take any other action to indicate their approval of the Settlement. Settlement Class Members who object to the Settlement are not required to attend the Fairness Hearing. If you want to be heard orally in opposition to the Settlement, either personally or through your own separate counsel, you must state in your written objection your intention to appear at the Fairness Hearing as set forth above in paragraph 23.

### 26. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend the hearing at your own expense. If you send in a written objection, you do not have to come to the Fairness Hearing to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend the Fairness Hearing, but their attendance is not necessary.

# GETTING MORE INFORMATION

### 27. How do I get more information?

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can view a copy of the Settlement Agreement and read a list of Frequently Asked Questions at www.xxxxxxxxx.com. You may also write with questions to Pella Windows Settlement, PO Box xxx, Portland, OR 97208-xxxx or send an e-mail to info@xxx.com. You can get a claim form at the website, or have a claim form mailed to you by calling 1-xxx-xxx-xxxx. If you wish to communicate directly with Class Counsel, you may contact them at the address listed above in paragraph 23, or by e-mail at Info@ComplexLitigationGroup.com. You may also seek advice and guidance from your own private attorney at your own expense.

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT, PELLA, OR ANY PELLA WINDOW DEALER OR AGENT FOR INFORMATION ABOUT THE CLASS SETTLEMENT OR THIS LAWSUIT.**

# EXHIBIT D

## Alabama

**Pella Windows & Doors**
2820 Sixth Avenue S
Birmingham, AL  35233
205-259-1966

## Arkansas

**Pella Window & Door Co., Inc.**
8740 Maumelle Boulevard
North Little Rock, AR  72113
501-758-5050

## Arizona

**Pella Windows and Doors Southwest**
730 W Fairmont Drive
Tempe, AZ  85282
480-355-3800

## California

**Pella Doors & Windows of Northern California**
3544 Arden Road
Hayward, CA 94545
510-732-6655

**Pella Windows & Doors - Hawaii & So. Cal.**
640 N. Puente Street
Brea, CA 92821-2830
714-256-0565

## Colorado

**Pella Windows & Doors, Inc**
4200 Carson Street
Denver, CO  80239
303-371-3750

## Connecticut

**Pella Windows & Doors**
220 Monroe Turnpike
Monroe, CT  06468
203-880-6000

## Florida

**Pella Windows & Doors**
350 State Road 434 West
Longwood, FL  32750-5173
407-831-0600

**Pella Window & Door Co.**
8174 Baymeadows Way W.
Jacksonville, FL  32256-7441
407-831-0600

## Georgia

**Pella Window & Door Co. of Georgia**
2605 N Berkeley Lake Road, Ste 400
Duluth, GA  30096
770-962-0555

## Iowa

**Prairie Pella, Inc.**
2163 N.W. 111th St.
Des Moines, IA  50325
515-278-8781

**Pella Co.**
2830 East 53rd Street
Davenport, IA  52807-3009
563-441-1756

**Windows by Pella, Inc.**
3130 West Shaulis Road
Waterloo, IA  50701-9218
319-988-3136

**Wilsey Co - Pella Products & Spec.**
3225 Highway Business 75 N.
Sioux City, IA  51105-2220
712-258-4567

## Illinois

**Illini Pella, Inc.**
1001 N. Country Fair Drive
Champaign, IL  61821
217-356-6474

**Pella Windows & Doors, Inc.**
2505 Enterprise Circle
West Chicago, IL 60185
630-682-4500

**Pella Windows & Doors, Inc.**
2505 Enterprise Circle
Champaign, IL  61821
800-442-1445

## Indiana

**National Building Products, Inc.**
3507 Olive Road, Ste F
South Bend, IN  46628
574-287-2901

**McComb Window & Door Co. Inc.**
5425 W. 74th Street, Ste 200
Indianapolis, IN  46268-2173
317-872-9927

## Kansas

**Pella Windows of Kansas**
2322 SW 6th Street
Topeka, KS  66606
785-233-7454

## Kentucky

**Pella Windows & Doors**
11450 Bluegrass Pkwy
Louisville, KY  40299
502-240-5822

## Massachusetts

**Pella Windows and Doors**
1325 Airport Road
Fall River, MA  02720
508-676-6820

**Pella Products, Inc.**
155 Main Street
Greenfield, MA  01301-9623
413-772-0153

**Pella Windows and Doors, Inc.**
45 Fondi Road
Haverhill, MA  01832
978-373-2500

## Maryland

**K. C. Company, Inc**
12100 Baltimore Avenue Ste 1
Beltsville, MD  20705-1363
301-957-7000

## Michigan

**Pella Windows & Doors, Inc.**
1026 Doris Road
Auburn Hills, MI 48326
248-292-5000

**Horne Building Specialties, Inc.**
2120 Oak Industrial Drive
Grand Rapids, MI  49505
616-235-3600

## Montana

**Pella Windows & Doors, Inc.**
2520 Grand Ave
Billings, MT 59102-2625
406-656-1516

## Minnesota

**E.H. Enterprises**
15300 25th Ave. No. Ste 100
Plymouth, MN 55447-1993
763-745-1400

## Missouri

**Pella Products of Kansas City, Inc.**
1602 Jasper Street
North Kansas City, MO 64116
816-471-0414

**Pella Windows & Doors**
54 Weldon Parkway
Maryland Heights, MO 63403-3222
314-714-0100

## North Carolina

**Pella Window & Door Co.**
220 Seneca Drive
Greensboro, NC 27406
336-379-8550

## Nebraska

**Pella Windows & Doors of Omaha & Lincoln**
9845 S. 142nd Street
Omaha, NE 68138
402-331-9225

## New Jersey

**Pella Windows & Doors**
4 Dedrick Place
West Caldwell, NJ 07006
973-575-0120

## New Mexico

**Pella Windows & Doors**
3700 Rutledge Road NE
Albuquerque, NM 87109
505-345-3502

## New York

**Westny Building Products Company**
2580 Walden Avenue
Buffalo, NY 14225
716-681-2000

**Crawford Door & Window Sales**
529 Third Avenue Extension
Rensselaer, NY 12144
518-286-1900

## Ohio

**Pella Window & Door Company**
26150 Richmond Rd
Bedford Heights, OH 44146-1438
216-831-2420

**Pella Sales, Inc.**
4825 Gateway Circle
Kettering, OH 45440
937-435-0141

**Pella Windows & Doors**
7697 Innovation Way
Mason, OH 45040
513-948-8480

## Oklahoma

**The Womble Company**
537 East Britton Road
Oklahoma City, OK  73114
405-478-4350

## Oregon

**Pella Windows & Doors of Portland, OR**
5600 SW Arctic DR. #120
Beaverton, OR  97005
425-455-5550

## Pennsylvania

**Pella Window & Door Company**
2550 General Amistead Ave
Norristown, PA  19403-5214
610-631-9500

**Pella Window & Door Company**
304 Deer Run Road
Sewickley, PA 15143
412-741-8855

**Pella Products, Inc.**
4 Keystone Industrial Park
Dunmore, PA  18512
570-356-7722

## South Carolina

**Pella Window & Door**
P.O. Box 2268
Irmo, SC  29063-8330
803-407-1112

## South Dakota

**Heartland Pella**
2704 Plant Street
Rapid City, SD  57702
605-718-7966

## Tennessee

**Pella Window & Door Co.**
1150 Antioch Pike – Suite 100
Nashville, TN  37211
615-256-8383

**Pella Window & Door Co. of Tennesssee**
505 Carden Jennings Lane, Ste 200
Knoxville, TN  37932
865-966-9951

## Texas

**Pella Products of South Texas, Inc.**
6510 Blanco Road
San Antonio, TX  78216
210-735-2030

**Pella Windows & Doors – Dallas**
801 Hanover Dr Suite 600
Grapevine, TX  76051
972-988-1555

**Pella Windows & Doors of Houston**
8700 Fallbrook Drive
Houston, TX  77064
281-807-4222

## Utah

**Pella Windows & Doors**
12382 So. Gateway PkPl #300B
Draper, UT  84020
801-566-4131

## Virginia

**Pella Windows & Doors**
2207 Station Road
Richmond, VA 23234-5132
804-275-7809

## Wisconsin

**Ver Halen, Inc.**
500 Pilgrim Way
Green Bay, WI 54304
920-435-3791

## Washington

**Pella Windows & Doors**
1919 A 120th Avenue NE
Bellevue, WA 98005
425-455-5550

## Wyoming

**Prairie Pella Wyoming LLC**
1240 E. Burlington Avenue
Casper, WY 82601
307-234-1518

**Pella Windows & Doors**
3808 North Sullivan Rd, N15 Ste 109
Spokane, WA 99216-1670
509-242-1111

You may also contact Pella Corporation at 877-473-5527.

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DR. LEONARD E. SALTZMAN, BRAD
ZURN, TIM BASTIAANSE, JOSEPH
PALMIOTTO, AND JUDITH MCCLOSKY,
individually and on behalf of all others similarly
situated;

                            Plaintiffs,

    v.

PELLA CORPORATION, an Iowa corporation,
and PELLA WINDOWS AND DOORS, INC., a
Delaware corporation,

                         Defendants.

06 CV 4481
Judge James Zagel

**[PROPOSED] PRELIMINARY
APPROVAL ORDER**

This matter came before the Court on [DATE] in the joint motion of the Plaintiffs and

Defendants requesting an Order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure,

preliminarily approving the proposed settlement agreement between the parties and scheduling a

date for final hearing on the proposed Agreement. (attached hereto as Exhibit 1)  [NAMES]

appeared on behalf of the Plaintiffs, and [NAMES] appeared on behalf of the Defendants Pella

Corporation and Pella Windows and Doors, Inc. (collectively "Defendants").

       The proposed Agreement, together with the exhibits attached thereto, sets forth the terms

and conditions for the proposed settlement of the case, and provides for the dismissal of the

Plaintiffs individual and class claims relating to Pella ProLine Casement Windows  (as defined in

the Agreement) against Defendants with prejudice upon final approval of the Agreement.

Having considered the Agreement and the exhibits attached thereto, the memorandums in

1

support, the arguments of counsel, and the requirements of Rule 23(e) of the Federal Rules of

Civil Procedure,

IT IS HEREBY ORDERED THAT:

1.    The terms Arbitration Form, Claim Deadline, Claim Form, Days, Defendants,

Lawsuit, Named Plaintiffs, Opt-Out List, Pella ProLine Casement Windows,

Preliminary Approval Order, and Structures have the same meaning as the defined

terms of the same designation in the Agreement, attached hereto as Exhibit 1.

2.    **Proposed Settlement Agreement.**  The agreements, terms and conditions of the

parties' proposed settlement, as embodied by the Agreement and the exhibits

attached thereto, appear upon the Court's preliminary review to be fair,

reasonable, and adequate and accordingly preliminarily approved pending a final

hearing on the proposed settlement.

3.    **Conditional Certification of the Settlement Class**.  The following Settlement

Class is conditionally certified for the purpose of effectuating the settlement:

All persons in the United States who are current or former owners of Structures

containing Pella ProLine® brand casement, awning, and/or transom windows

(including 250 and 450 Series) manufactured by Pella Corporation between

January 1, 1991 and December 31, 2006.

The Settlement Class excludes:

1.    All persons who timely opt out of the Lawsuit pursuant to the terms of this

Agreement.

2.    All persons who, individually or as a member of a class, initiated legal

proceedings against Defendants (other than this Lawsuit initiated by the Named

Plaintiffs), whether resolved or not, before the entry of the Preliminary Approval

Order by settlement, judgment, release, dismissal, or other final disposition

resulting in the termination of the proceedings.

3.      All owners of Pella ProLine® brand casement, awning, and/or transom

windows (including 250 and 450 Series) manufactured by Pella Corporation on or

after January 1, 2007.

4.      All of Defendants' current employees. All of Defendants' current

employees.

**4.      Designation of the Class Representatives.**  Dr. Leonard E. Saltzman, Brad Zurn,

Tim Bastiaanse, Joseph Palmiotto, Elizabeth D'Angelo, and Judith McClosky (the

"Named Plaintiffs") are designated as representative for the Settlement Class.

**5.      Designation of Class Counsel.**  Richard J. Burke, Paul Weiss, and Julie D. Miller

and the law firm of Complex Litigation Group, LLC; Jonathan Shub, Christopher

Seeger and the law firm of Seeger Weiss LLP; Steven Jaffe and Mark Fistos and

the law firm of Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.; Ben

Schwartzman and the law firm Banduccie Woodward Schwartzman PLLC are

designated as Class Counsel.  Richard J. Burke, Paul M. Weiss and Julie D. Miller

and the law firm of Complex Litigation Group, LLC; and Jonathan Shub,

Christopher Seeger and the law firm of Seeger Weiss LLP are designated as Lead

Class Counsel.

**6.      Scheduling of the Final Approval Hearing.**  A hearing ("Final Approval

Hearing") will be held by this Court in Courtroom [LOCATION] at [TIME] on

[DATE –no later than 175 Days after the date of the Preliminary Approval Order]

to determine (a) whether the proposed settlement, including payment of the requested attorneys' fees and litigation costs, should be approved as fair, reasonable, and adequate; and (b) whether final judgment should be entered dismissing with prejudice all claims against Defendants herein pursuant to the Agreement. The Court will also hear from any objectors during the Final Approval Hearing.

7. **Objections.**

a. Any Settlement Class Member that has not submitted a timely request for exclusion from the Settlement Class, and each governmental entity, that wishes to object to the fairness, reasonableness, or adequacy of this Agreement or any term or aspect of the proposed Settlement and show cause, if any, why the same should not be approved, or to intervene in the Lawsuit, if any, must provide to the Settlement Administrator (who shall forward it to Lead Class Counsel and Counsel for Defendants) and file with the Court no later than 95 Days after the Initial Notice Date a statement of the objection or motion to intervene, including any support the Settlement Class Member or governmental entity wishes to bring to the Court's attention and all evidence the Settlement Class Member or governmental entity wishes to introduce in support of his or her objection or motion, or be forever barred from objecting or moving to intervene. Such a statement must (1) be made in writing, including a heading that refers to the Lawsuit by name and number; (2) contain the objector's or putative intervener's full name and current address; (3) declare that the objector or putative Settlement Class Member intervener

4

currently owns, or formerly owned, a Structure containing a Pella ProLine Casement Window(s); (4) provide a statement of the objector's or intervener's specific objections to any matter before the Court and the grounds and arguments for the objection or request to intervene; (5) include all documents and other writings the objector wishes the Court to consider and describe any and all evidence the objecting or intervening Settlement Class Member or governmental entity may offer at the Final Approval Hearing, including but not limited to, the names and expected testimony of any witnesses; and (6) be filed with the Court and served on the Settlement Administrator, Lead Class Counsel, and counsel for Defendants on or before a date set by the Court that is no later than 95 Days from the entry date of the Preliminary Approval Order.

b.  Any papers not filed and served in the prescribed manner and time will not be considered at the Final Approval Hearing, and all objections not made in the prescribed manner and time shall be deemed waived.

c.  Any Settlement Class Member who objects or requests to intervene shall make themselves available to be deposed by Class Counsel and counsel for Defendants in the county of the objector's or putative intervener's residence within 21 Days of service of his or her timely written objection or motion to intervene.

d.  Any objections or requests to intervene by a Settlement Class Member must be exercised individually by a Settlement Class Member, not as or on behalf of a group, class, or subclass, not by any appointees, assignees, claims

brokers, claims filing services, claims consultants or third-party claims organizations; except that such objections or requests may be submitted by a Settlement Class Member's attorney on an individual basis.

e.  Any member of the Settlement Class or governmental entity that desires to appear in person at the Final Approval Hearing for purposes of objecting to the Settlement or intervening in the Lawsuit file with the Court and serve on Lead Class Counsel and counsel for Defendants a notice of appearance in the Lawsuit, in addition to simultaneously filing and serving with the written objections or intervention requests described above, on or before a date set by the Court that is no later than 95 Days from the entry date of the Preliminary Approval Order.

f.  Any responses to objections or motions to intervene must be filed with the Court and served upon Lead Class Counsel and counsel for Defendants on or before a date set by the Court that is no later than 135 Days from the entry date of the Preliminary Approval Order.

g.  Service for Lead Class Counsel and Defendants can be made to the following:

FOR DEFENDANTS:
James A. O'Neal
John Mandler
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 S. Seventh St.
Minneapolis, MN 55402

(612) 766-7000
(612) 766-1600 (FAX)

james.o'neal@FaegreBD.com
john.mandler@FaegreBD.com

FOR THE SETTLEMENT CLASS:
Richard J. Burke
Paul M. Weiss

Complex Litigation Group
513 Central Avenue
Suite 300
Highland Park , IL 60035
(847) 433-4500
(847) 433-2500  (FAX)

Info@ComplexLitigationGroup.com

8.    **Notice.**  The parties' proposal as to the form and manner of notice to the Settlement Class are approved, including the Notice of Proposed Class Action Settlement attached to the Agreement, and the Notice Plan, as defined in the Agreement.  The Court finds that notice given pursuant to the terms of the Agreement is reasonable and constitutes the best notice practicable under the circumstances, constitutes due and sufficient notice of the settlement and the matters set forth in said notice to all persons entitled to receive notice, and fully satisfies the requirements of due process and of Federal Rule of Civil Procedure 23.

9.    **Settlement Administrator.** Epiq Class Action & Claims Solutions, Inc. is designated as the Settlement Administrator, as defined in the Agreement.  The Settlement Administrator must perform the functions specified in the Agreement, including but not limited to:

    i.   Implementing the Notice Plan;

    ii.  Before mailing the Notice and Claim Form, establishing a toll-free telephone number that Settlement Class Members can call and which contains recorded answers to frequently asked questions, along with an option permitting callers to speak to live operators or to leave messages in a voicemail box, to request additional Claim Forms or Arbitration Forms or additional information regarding the Settlement;

    iii. mailing the Class Notice, part C.1. within 45 Days of the entry of this Order (the "Initial Notice Date") to all Settlement Class Members for whom the parties have addresses, using first class mail, and having

first updated the addresses using the National Change of Address database;

iv. posting the Class Notice and the Agreement, along with other documents as agreed to by the Parties, on a website with the domain name "www.windowsettlement.com" within 45 Days of the entry of this Order;

v. preparing a notice for publication, and publishing the notice within 45 Days of the entry of this Order in publications upon which the Parties and the Settlement Administrator mutually agree.

vi. receiving, evaluating, and either approving as meeting the requirements of the Agreement or disapproving as failing to meet those requirements, Claim Forms and Arbitration Forms sent by Settlement Class Members seeking to receive benefits provided for in the Agreement, all in accordance with the Agreement;

vii. Providing to Defendants and Lead Class Counsel respectively true and accurate lists of the names and addresses of all Settlement Class Members who have submitted Claim Forms or Arbitration Forms and whose Claim Forms or Arbitration Forms the Settlement Administrator has determined to be (i) complete and valid or (ii) incomplete or invalid;

viii. Sending to each Settlement Class Member who has submitted a Claim Form or Arbitration Form that the Settlement Administrator has determined not to be a valid Settlement Claim, and by e-mail to Lead

Class Counsel and Defendants' Counsel, a Notice of Denied Claim, as defined in the Agreement, or a Notice of Arbitration Ineligibility, as defined in the Agreement, respectively;

ix. Sending to each Settlement Class Member who has submitted a Claim Form that the Settlement Administrator has determined to be a complete and valid Settlement Claim for which the appropriate relief is determined under the terms of the Agreement, a Notice of Approved Claim, as defined in the Agreement;

x. Sending to Lead Class Counsel, Defendants' counsel, and each Settlement Class Member who has submitted a Arbitration Form that the Settlement Administrator has determined to be a complete and valid Settlement Claim qualifying the Settlement Class Member for arbitration under the terms of the Agreement, a Notice of Arbitration Eligibility, as defined in the Agreement;

xi. Processing requests for exclusion from the Settlement in accordance with the terms of the Agreement;

xii. Within 30 days after paying valid settlement claims for monetary compensation by the Settlement Administrator, providing (i) to Defendants' counsel and Lead Class Counsel a statement of the total number of Settlement Claims submitted, the total number of Settlement Claims determined to be valid, and the total dollar amount paid to Settlement Class members pursuant to the Agreement; and (ii) to Defendants' counsel all original Claim Forms, Arbitration Forms,

9

and supporting documentation for each Settlement Claim determined to be valid pursuant to this Agreement, with a copy set to Lead Class Counsel.

xiii. Filing with the Court proof of mailing of the Class Notice, part C.1. and proof of compliance with the Notice Plan at or before the Final Approval Hearing, along with the Opt-Out List.

10. **Declaration of Compliance.** Defendants shall file with the Court a declaration of compliance with the notice requirements, including the CAFA notice requirements, after Class Notice has been given following the terms of the Agreement and this Order.

11. **Exclusions.**

i. Any member of the Settlement Class who desires to request exclusion from the Settlement Class must submit to the Settlement Administrator a request for exclusion in the form set forth in the Class Notice to the address stated in the Class Notice on or before [DATE a date set by the Court that is no later than 95 Days from the date of entry of the Preliminary Approval Order].

ii. Any exclusion must be exercised individually by a Settlement Class Member, not as or on behalf of a group, class, or subclass, not by any appointees, assignees, claims brokers, claims filing services, claims consultants or third-party claims organizations; except that such exclusion request may be submitted by a Settlement Class Member's attorney on an individual basis.

10

      iii. Any Settlement Class Member who does not submit a timely, written request for exclusion from the Settlement Class will be bound by all proceedings, orders, and judgments in the Lawsuit.

**12. Attorney Fees.**

      i. Class Counsel, and any party's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs as of June 19, 2012, shall file and serve their Application(s), as defined in the Agreement, on or before [DATE a date set by the Court that is no later than 75 Days from the date of entry of the Preliminary Approval Order];

      ii. Any objection to Class Counsel's, and any party's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs' Application(s) shall be filed with the Court and served on Class Counsel and Counsel for Defendants on or before [DATE a date set by the Court that is no later than 105 Days from the date of entry of the Preliminary Approval Order];

      iii. Class Counsel, and any party's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs shall file and serve any reply in support of their Application(s) on or before [DATE a date set by the Court that is no later than 115 Days from the date of entry of the Preliminary Approval Order].

13. **Claim Deadline.**  All Claim Forms or Arbitration Forms for damage up to the date of the Claim Deadline must be either received by the Settlement Administrator or postmarked on or before the Claim Deadline set by the Court. The Claim Deadline is [DATE a date set by the Court 270 Days after entry of the Preliminary Approval Order].

14.  **Preliminary Injunction.** All Settlement Class Members and their legally authorized representatives, unless and until they have timely and properly excluded themselves from the Settlement Class are preliminarily enjoined from:

    i.  Filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims;

    ii.  Filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Member who has not timely excluded his or herself (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to, or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims; and

      iii.  Attempting to effect an opt-out of a class of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based on, relating to or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims.

DATE: _____          ENTER:

                                                _____

                                              James B. Zagel
                                              United States District Judge

# EXHIBIT F

# NOTICE OF DENIED CLAIM

Saltzman v. Pella Corporation
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876


Claimant Name1
Claimant Name2
Address1
Address2
City, State Zip Code

(Mail Date)

### Notice of Denial of your Claim Form

Dear [CLAIMANT'S NAME]:

     We received your Claim Form requesting benefits under the Settlement reached in the lawsuit captioned *Dr. Leonard Saltzman et al. v. Pella Corporation et al.*

     Upon review of your Claim Form and associated documentation, if any, we have determined that you are not entitled to benefits under the terms of the Agreement due to the reason(s) listed below:

- Denial Reason 1
- Denial Reason 2


     If you have any questions, you may contact the Settlement Administrator at 1-877-276-6840 or you may visit the Settlement website at www.WindowSettlement.com for more information.


Sincerely,


Saltzman v. Pella Corporation
Settlement Administrator

# EXHIBIT G

# NOTICE OF ARBITRATION INELIGIBILITY

Saltzman v. Pella Corporation
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876


Claimant Name1
Claimant Name2
Address1
Address2
City, State Zip Code

(Mail Date)


## Notice of Denial of your request for Arbitration

Dear [CLAIMANT'S NAME]:

We received your Arbitration Form requesting arbitration under the Settlement reached in the lawsuit captioned *Dr. Leonard Saltzman et al. v. Pella Corporation et al.*

Upon review of your Arbitration Form and associated documentation, if any, we have determined that under the terms of the Agreement you are not eligible to participate in arbitration due to the reason(s) listed below:

- Denial Reason 1
- Denial Reason 2


If you have any questions, you may contact the Settlement Administrator at 1-877-276-6840 or you may visit the Settlement website at www.WindowSettlement.com for more information.


Sincerely,


Saltzman v. Pella Corporation
Settlement Administrator

# EXHIBIT H

# NOTICE OF APPROVED CLAIM

Saltzman v. Pella Corporation
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876


Claimant Name1
Claimant Name2
Address1
Address2
City, State Zip Code

(Mail Date)

## <u>Notice of Approval of your Claim Form</u>

Dear [CLAIMANT'S NAME]:

We received your Claim Form requesting benefits under the Settlement reached in the lawsuit captioned <u>*Dr. Leonard Saltzman et al. v. Pella Corporation et al.*</u>

Upon review of your Claim Form and associated documentation, if any, we have determined that under the terms of the Agreement you:

- Are entitled to a cash payment in the amount of $_____. Enclosed is a check in that amount.

*--and/or--*

- Are entitled to a [10%][15%] discount off the Retailer's List Price on your next purchase of a single Pella brand product unit. This discount must be used within two years of the date of the Final Approval Order, can be transferred once, but only with the sale of the home which contains or contained Pella ProLine Casement Windows and only to the purchaser of said home. This discount can only be used by presenting this letter at any of the Pella branches listed in the enclosed List of Participating Pella Sales Branches.

*--and/or--*

- May be entitled to the remedies and benefits offered by the product warranty and the ProLine Service Enhancement Program. Please contact Pella's Customer Service Department at (800) 374-4758 for information regarding the product warranty and the ProLine Service Enhancement Program. Please present Pella's Customer Service Department a copy of this letter to assist in the determination of whether or not you are eligible.

## NOTICE OF APPROVED CLAIM

*--and/or—*

- May also be entitled to a cash payment in the amount of $_____.  Please contact Pella's Customer Service Department at (800) 374-4758 for information regarding whether or not you are entitled to a cash payment.  Please present Pella's Customer Service Department a copy of this letter to assist in the determination of whether or not you are eligible.

*--and/or--*

- May be entitled to the remedies and benefits offered by the ProLine Service Enhancement Program.  Please contact Pella's Customer Service Department at (800) 374-4758 for information regarding the ProLine Service Enhancement Program.  Please present Pella's Customer Service Department a copy of this letter to assist in the determination of whether or not you are eligible.

*--and/or--*

- May be entitled to the remedies and benefits offered by the product warranty and the ProLine Service Enhancement Program, with a deductible to be paid by you of $100 per unit.  Please contact Pella's Customer Service Department at (800) 374-4758 for information regarding the product warranty and the ProLine Service Enhancement Program.  Please present Pella's Customer Service Department a copy of this letter to assist in the determination of whether or not you are eligible.

If you have any questions, you may contact the Settlement Administrator at 1-877-276-6840 or you may visit the Settlement website at www.WindowSettlement.com for more information.

Sincerely,

Saltzman v. Pella Corporation
Settlement Administrator

# EXHIBIT I

## NOTICE OF ARBITRATION ELIGIBILITY

Saltzman v. Pella Corporation
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876


Claimant Name1
Claimant Name2
Address1
Address2
City, State Zip Code

(Mail Date)


### **Your request for Arbitration**

Dear [CLAIMANT'S NAME]:

We received your Arbitration Form requesting arbitration under the Settlement reached in the lawsuit captioned *Dr. Leonard Saltzman et al. v. Pella Corporation et al.*

Upon review of your Arbitration Form and associated documentation, if any, we have determined that under the terms of the Agreement you are eligible to participate in arbitration. If you prevail in recovering a cash award in arbitration, the cash award is limited to a maximum of $6,000 per Structure for all damage, including damage to the window(s) and the structure.

You can initiate the binding arbitration process by contacting and supplying a copy of this letter to any of the arbitrators on the enclosed List of Participating Arbitrators.

If you have any questions, you may contact the Settlement Administrator at 1-877-276-6840 or you may visit the Settlement website at www.WindowSettlement.com for more information.


Sincerely,


Saltzman v. Pella Corporation
Settlement Administrator

# EXHIBIT J

# NOTICE OF INCOMPLETE CLAIM FORM

Saltzman v. Pella Corporation
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876

Claimant Name1                                        **RESPONSE DEADLINE:**
Claimant Name2
Address1
Address2
City, State Zip Code

(Mail Date)

## Notice of Incomplete Claim Form Submission

Dear [CLAIMANT'S NAME]:

We received your Claim Form requesting benefits under the Settlement reached in the lawsuit captioned *Dr. Leonard Saltzman et al. v. Pella Corporation et al.*

Upon review of your Claim Form and associated documentation, if any, we have determined that you have not provided the information, documents, or photographs required in the Agreement and/or Claim Form. We have determined that your Claim Form was incomplete due to the reason(s) listed below:

- Defective Reason 1
- Defective Reason 2

Enclosed for your review is a copy of your Claim Form. Please send an updated Claim Form which includes the missing information, documents, or photographs as described above.

The missing information must be received by, or postmarked, no later than 30 days after the date of this letter and mailed to the following address:

Saltzman v. Pella Corporation
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876

If you have any questions, please contact the Settlement Administrator at 1-877-276-6840 or you may visit the Settlement website at www.WindowSettlement.com for more information.

Sincerely,

Saltzman v. Pella Corporation
Settlement Administrator

# EXHIBIT K

## NOTICE OF INCOMPLETE ARBITRAITON FORM

Saltzman v. Pella Corporation
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876

Claimant Name1                                    **RESPONSE DEADLINE:**
Claimant Name2
Address1
Address2
City, State Zip Code

(Mail Date)

### Notice of  Incomplete Arbitration Form Submission

Dear [CLAIMANT'S NAME]:

    We received your Arbitration Form requesting arbitration under the Settlement reached in the lawsuit captioned *Dr. Leonard Saltzman et al. v. Pella Corporation et al.*

    Upon review of your Arbitration Form and associated documentation, if any, we have determined that you have not provided the information, documents, or photographs required in the Agreement and/or Arbitration Form.  We have determined that your Arbitration Form was incomplete due to the reason(s) listed below:

- Defective Reason 1
- Defective Reason 2

    Enclosed for your review is a copy of your Arbitration Form. Please send an updated Arbitration Form which includes the missing information, documents, or photographs as described above.

    The missing information must be received by, or postmarked, no later than 30 days after the date of this letter and mailed to the following address:

Saltzman v. Pella Corporation
Settlement Administrator
PO Box 2876
Portland, OR 97208-2876

    If you have any questions, please contact the Settlement Administrator at 1-877-276-6840 or you may visit the Settlement website at www.WindowSettlement.com for more information.

Sincerely,

Saltzman v. Pella Corporation
Settlement Administrator