**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DR. LEONARD E. SALTZMAN, et. al., individually and on behalf of all others similarly situated;<br><br>                          Plaintiffs,<br><br>    v.<br><br>PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation,<br><br>                          Defendants. | No.: 06 C 4481<br><br>The Honorable James B. Zagel<br>Magistrate Judge Martin Ashman |

**MEMORANDUM IN SUPPORT OF MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## I.       PRELIMINARY STATEMENT

Plaintiffs Leonard Saltzman, Brad Zurn, Tim Bastiaanse, Joseph Palmiotto, and Judith McClosky ("Plaintiffs") respectfully submit this Memorandum in support of the parties Joint Motion For Preliminary Approval Of The Class Action Settlement (D.E. # 277), the specific terms of which are set forth in the Class Action Settlement Agreement (D.E. #227-1), dated June 12, 2012 (the "Settlement Agreement").

The settlement submitted for this Court's consideration was the result of significant discovery and an extended arms-length settlement process supervised by two experienced mediators, and the settlement benefit represents an extraordinary benefit to the Class when its value is balanced against the countervailing considerations which include (i) the limiting effect of the liability-only nature of the certified classes; (ii) the risk of potential subsequent decertification; (iii) the long delay that any class member will face (likely many years yet to

come) before a class member would see a penny in the future; (iv) the significant risks inherent in establishing liability in a trial; and (v) the lengthy process of individual damages and causation trials that would follow a liability verdict. Despite these significant barriers, which Class Counsel wrestled with over time, Class Counsel still achieved class benefits that are superior to other window defect class settlements.

The importance of the effect of the liability-only certification of the subject classes cannot be deemphasized. As another Court just last month noted in evaluating a settlement of a class action that was only certified for liability purposes:

> The path from this stage of the litigation to a final judgment on the issue of Defendants' liability . . . would be long, complicated, and expensive. As this Court has explained: "It could be ten years from now before you get anything if everybody goes after everything that he wants." (10/28/11 Tr. at 15:1–3, Dkt. 154.) Notwithstanding the strength of the evidence Plaintiffs elicited during the pre-suit investigation and discovery, additional discovery would be required to establish liability and damages, including depositions of Class Members, Defendants, and Defendants' employees, managers, and partners. A fact-intensive trial would be necessary, and while the Class Members are sure they will win, they might in fact lose. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. Plus, only certain issues would be tried. In particular, damages to the individual Class Members would not be awarded; those would require additional trials, which would be costly and further defer closure. Establishing a mechanism for adjudicating causation and damages will present many of the difficulties that the Claims Administration Process redresses. Thus, if the Settlement is denied, individual Class Members could find themselves in approximately the same position as if it were approved, except that time, resources, and effort would have been bled out of both sides along the way. Finally, post-trial motions and appeal would delay resolution and increase costs still more. . . . The entire process will take years. . . . The Settlement is not, and cannot be, all things to all people. However, I believe that it is fair, reasonable, and adequate to the class as a whole. This is a case where the perfect could easily become the enemy of the good; that would not be in the best interests of the class as a whole. I thus approve the Settlement.

*Charron v. Pinnacle Group N.Y. LLC*, 2012 WL 2053530 at *2 (S.D.N.Y. June 6, 2012).

The Settlement Agreement is structured in a manner consistent with this Court's class certification Order (D.E. # 163), by providing a process for efficient resolution of non-certified questions, including disputed causation claims, limitations, and in particular, contested damage

awards. The claims resolution process is efficient both in terms of time, costs, and process. It provides direct and immediate benefits to settlement class members, including former and current owners of structures with Pella ProLine Casement Windows who have already repaired or replaced damaged windows, those with current manifest window damage, and/or other surrounding property, those whose windows may manifest water-related damage in the future. The Settlement fulfills the process contemplated by the Court's class certification Order because it embodies a simplified resolution process at no cost to the Class. The Settlement resolves the issue of the Window defect favorably to the Class by providing a claims and arbitration process in which the Window defect is not contested, yet reserves to Pella its rights to contest causation, limitations and the amount of damage claims. The Settlement Agreement enhances the warranty benefits to the Class for Proline Casement this brand of Windows by allowing claims to be submitted beyond the original warranty period. The Settlement Agreement was reached after six years of litigation by Class Counsel, including extensive appellate review, and over a year of arms length negotiations between the parties, with the assistance of multiple mediators, and mediations, and numerous in person negotiations.

"In determining whether a proposed settlement is fair, reasonable, and adequate, the court must examine whether the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litigation § 21.61 (4th ed. Supp. 2010), p. 309 ("Manual"). Because the Court's Class Certification Order does not contemplate a trial to resolve *all* matters between the parties resulting in a final award of damages, litigation beyond the matter pending before this Court will be necessary. However, the structure of the proposed Settlement seeks final resolution, and because it seeks final resolution, it must by necessity provide a process to resolve those matters which will remain unresolved even if plaintiffs prevailed on al issues for

class-wide resolution. The fairness, reasonableness and adequacy of this Settlement therefore must be considered within the context of the case.

Federal courts favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). With this principle in mind, the parties ask the Court to take the first step in resolving this case – preliminarily approving, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the proposed class action settlement reached by Plaintiffs and Pella (collectively, the "Parties"). As the Seventh Circuit explained, the purpose of this "first step" is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing" after class members have been given an opportunity to opt-out of the class or to voice any objections to the settlement. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see generally* Manual § 21.632, p. 320.

The proposed Settlement resulted from good faith, arm's-length negotiations among experienced counsel for the Parties over the course of a year. It is an excellent compromise in light of the merits of Plaintiffs' claims and Pella's defenses, and the factual and legal risks of continued litigation and a possible appeal. The Settlement represents a highly favorable result for the putative class, and therefore meets the test for preliminary approval.

For the reasons set forth above and explained in more detail below, Plaintiffs respectfully request that the Court enter an Order, substantially in the form attached as Exhibit E to the Settlement Agreement: (1) preliminarily approving the proposed Settlement; (2) conditionally certifying a class for purposes of settlement (the "Settlement Class"); (3) approving the proposed form and method of providing notice of the pendency of this action and the Settlement to the Settlement Class; (4) directing that notice be provided to the Settlement Class members; and

(5) scheduling a hearing at which the Court can consider the request for final approval of the Settlement and entry of a proposed order and final judgment.

## II.    STATEMENT OF FACTS

### A.    Factual Background and Procedural History

ProLine Casement Windows are aluminum clad wood windows designed and manufactured by Pella Corporation and introduced in the US market in 1991. Pella sells ProLine Casement Windows nationally through Pella-owned and independently-owned Pella distribution stores, and through major retail chains such as Lowes under model names such as "250 Series" and "450 Series".

Plaintiffs have alleged that Pella ProLine Casement Windows were manufactured with an inherent design defect, that Pella knew or should have known about the defect, and that Pella should have disclosed the existence of this alleged defect to its customers. The defect alleged by Plaintiffs results in water penetrating behind the aluminum cladding and causing water related damage to interior wood components', particularly the sash, to window finishes and to other property surrounding the window. Plaintiffs alleged the wood rot to be wide spread affecting not only the window components themselves, but the window frame, window finishing and possibly the structure as well. Plaintiffs further alleged that wood deterioration became so pervasive that in 2006 Pella's window distributors began to complain about excessive warranty returns in the Pella Casement Windows and costs associated with replacement, installation and finishing of the windows, costs in excess of the warranty remedies provided by Pella's 10 year repair or replacement warranty. Upon examination by Pella, it initially projected a 14% failure rate,[1] and in response developed the Performance Service Enhancement Program (or "PSEP") to reimburse

---

[1] Pella does not agree with this failure rate and contests both the "initial" assessment and the actual failure rate of its Proline Casement Windows.

its distributors for the costs they were experiencing in honoring Pella warranties for wood deterioration in their Pella Casement Windows manufactured between 1991 and 2003, and providing to customers enhanced benefits to cover the costs of installation and finishing. Under the PSEP, Pella provided, through the distributors, limited reimbursement for the expenses of installation and finishing over and above the warranty obligation of product repair or replacement. Plaintiffs allege that despite creating the PSEP, Pella did not inform current customers of the alleged defect nor of the availability of PSEP benefits, and did not inform prospective customers of the defect.

Plaintiffs' allege that the ProLine Casement Window defect is latent: the aluminum cladding masks the rot so the rot is commonly not discernible by consumers until several years of progressive deterioration, often after the warranty period has expired. Plaintiffs allege that this rot has similarly affected Plaintiffs and Settlement Class Members even though they reside in different geographical regions of the country, with different climates, thousands of miles apart from one another.

Plaintiffs' further allege that Pella knew or should have known of the existence of the defect and that Pella has uniformly failed to disclose the defect to the Settlement Class *before* they purchased ProLine Casement Windows, or since. Plaintiffs allege that the nature of the alleged defect is supported Plaintiffs' retained window expert Charles Still who opined that the effect of the design defect is to allow water to flow unchecked behind the aluminum cladding to expose the interior wood components, which exposure is the necessary cause of the premature rotting of those components in the ProLine Casement Windows.

Plaintiffs additionally alleged that the PSEP was an amendment to the Pella warranty mandating full disclosure to all Pella ProLine Window purchasers and the owners of structures containing those Pella windows.

Plaintiffs assert in their Third Amended Complaint[2] various claims for negligence, negligent misrepresentation, breach of contract, breach of express warranty, products liability, breach of implied warranty of merchantability, unjust enrichment, declaratory relief pursuant to 28 U.S.C. 2201, violation of Illinois Consumer Fraud and Deceptive Business Practices Act and substantially similar laws of certain other States, violation of similar Uniform Deceptive Trade Practices Acts, and common law fraud by omission. *Id.* ¶¶ 18-27.

On March 20, 2007, the Court denied in part Pella's Motion to Dismiss the First Amended Class Action Complaint. On June 4, 2009, the Court granted, in part, Plaintiffs' Motion for Class Certification. Because this Court's order granting class certification was limited to liability only, a careful consideration of the Court's order, as well as the Circuit Court's affirmation, is important to understand of the Settlement.

In its class certification Order (D.E. # 163), the Court certified two classes of Plaintiffs. The first class is a nationwide FRCP 23(b)(2) declaratory judgment class of all class members who own structures containing Pella ProLine aluminum-clad casement windows manufactured from 1991 to the date of certification (June 4, 2009) whose windows did not yet manifest the alleged defect, or had manifest wood rot but had not been repaired or replaced. Upon successful prosecution this class potentially would be entitled to six declarations essentially declaring that

---

[2] The Parties' Settlement Agreement contemplates the filing of a Third Amended Complaint (D.E. # 275) in order to align the proposed Settlement Class with the Settlement Agreement.

all Pella ProLine Casement Windows contain a defect resulting in premature wood rot meriting disclosure by Pella; and that the PSEP is a warranty modification.[3]

The second class was a six state Rule 23(b)(3) liability class consisting of "[a]ll persons in the states of Illinois, California, Florida, Michigan, New Jersey, and New York, who purchased a Pella ProLine aluminum clad casement window/s and/or own a structure containing a Pella ProLine aluminum clad case window, between January 1, 1991 and present (date of certification)."[4] The Rule 23(b)(3) class was a liability class only, to determine whether Pella had violated state consumer protection laws by failing to disclose the defect. The Court declined to certify the issues of causation, damages, and statute of limitations. As a result the trial on the merits would only determine the scope of Pella's warranty, the nature of the PSEP and whether it amended the warranty, whether and when the Pella aluminum casement windows suffered from an inherent wood durability defect, whether and when Pella knew of the defect, and whether and when Pella publically announced the defect and the PSEP. The trial *would not* determine whether the defect was the cause of the Plaintiffs' damages, nor the amount of those damages. The class was limited to class members whose windows had already been repaired and replaced. As such the trial would not result in an award of damages to the Rule 23(b)(3) class; rather, further proceedings would be required to bring the claims to final resolution.

Pella appealed this decision to the Seventh Circuit Court of Appeals. On May 20, 2010, the Seventh Circuit affirmed the Court's class certification order. Pella subsequently petitioned

---

[3] The additional declarations include Pella's obligation to notify all owners of the defect; that the 10 year limitation on the warranty is removed for the purpose of remediating the defect as warranted; reassessment of prior warranty rejections for the defect; and to provide, at its costs, inspections of all class members' windows.
[4] June 4, 2009.

the Supreme Court of the United States, and on January 18, 2011, the Supreme Court denied the petition for a writ of certiorari.

The circuit court affirmed that this Court had properly concluded that the "essence of the dispute" is the "common predominant issue of whether the windows suffered from a single, inherent design defect leading to wood rot." *Pella Corporation v. Saltzman,* 606 F. 3d. 391, 393 (7th Cir. 2010). And that "individual issues that necessarily arise in a consumer fraud action would not prevent class treatment of the narrow liability issue." *Id.* Similarly the circuit court affirmed that the "central questions in the litigation are …whether the Proline windows suffer from an inherent defect when they left the factory, whether and when Pella knew of this defect, the scope of Pella's warranty, and the nature of the Proline Customer Enhancement Program and whether it amended the warranty." *Id*. at 394. The circuit court acknowledged that the necessity of subsequent proceedings to resolve individual issues, like causation in this instance, was not an impediment to class certification where class treatment could resolve common, predominating questions relieving those subsequent proceedings of "potentially expensive expert testimony and proof that would cost considerably more to litigate than the claims would be worth to the plaintiffs.' *Id*. "Under the district court's plan, class members still must prove individual issues of causation and damages." *Id.* For those Rule 23(b)(2) class members the circuit court stated "such purchasers would want declarations that there is an inherent design flaw, that the warranty extends to them and specific performance of the warranty to replace the windows when they manifest the defect or final equitable relief.' *Id.* at 395 The "cumulative effect" would be "[t]he contemplated process in which members may file a claim with Pella for service" and "[i]ssues of causation and damage issues, such as whether the defect caused the damage to a particular window and how much the design contributed to the rot, will be handled individually." *Id.*

The Settlement provides for the process contemplated by the district and circuit courts:

- For the purpose of the Settlement claims and arbitration processes, Pella does not dispute that the Proline Casement Windows have the alleged design defect as alleged;[5]

- The PSEP benefits are disclosed and enhanced;

- The PSEP is enhanced in amount, coverage and duration, as well as becoming a direct contractual obligation of Pella under the Settlement Agreement;

- Claims Process benefits up to $750 are provided upon establishment of class membership, causation and proof of eligible damage;

- The Arbitration Process provides benefits up to $6000 upon proof of causation and damages, and the arbitration costs are paid by Pella; and

- Benefits are available to past, current and future owners of all structures that have Pella Proline Case Windows up to 15 years from date of manufacture.

Shortly after the Supreme Court denied review, the parties met with a well-respected mediator, Judge Richard Solum, in May 2011 to begin to work towards a settlement. Over the course of the next seven months, the parties met in person, conducted conference calls, and exchanged many emails to reach an appropriate settlement benefit for the class. This mediation resulted in the parties Settlement Term Sheet. After agreeing on the substantive terms of the settlement, the parties then met with a second mediator, Judge Erwin Katz, to negotiate attorneys' fees on December 20, 2011. Then from December 2011 through June 2012, the parties worked zealously to finalize all the details of the Settlement Agreement, culminating in a signed agreement on June 19, 2012 filed together with the parties Joint Motion For Preliminary Approval.

---

[5] The agreement not to dispute the issue of whether the windows have an "inherent defect" is for purposes of settlement only. For its part, Pella does not admit any defect.

### B.     <u>Reasons for Settlement</u>

Every settlement is necessarily the result of a risk-benefit analysis that requires the parties to balance the merits of the claims and defenses asserted, the likelihood of successfully prevailing on the ultimate merits of the suit, and the considerable burdens and risks of litigation. Taking all factors into consideration, the parties have concluded that the benefits of settling this case outweigh the attendant risks of litigation, including the uncertainties and difficulties associated with a severed trial on "liability only", reserving for later individual proceedings to determination causation and damages. The uncertainties of the "liability only trial" are compounded by the uncertainties attendant the subsequent individual proceedings. As the litigation is currently postured, for the Rule 23 (b)(3) class, assuming successful litigation on the defect, secondary proceedings for the resolution of causation, limitations and damages would still be required in order for any damages to be awarded, and these on an individual basis. For the Ruler 23(b)(2) class, assuming they would prevail, would have declarations, which declarations may or may not result in further resolution of warranty claims sometime in the future. As described herein, there are substantial benefits afforded to the Settlement Class by the Settlement.

In light of the risks, costs, and extended period of time of continued litigation, Plaintiffs and their counsel believe that the Settlement – which provides certain and immediate benefits to the class, with all costs of notice, administration, and attorneys' fees, litigation expenses, and other costs to be paid by Pella – is not only reasonable, but is an exemplary recovery for the Settlement Class, especially given the complex nature of the claims, and the posture of the litigation. Moreover, this Settlement not only provides benefits to current owners of structures with Pella Casement Windows manufactured between 1991 and 2006, but also provides benefits

for all prior owners that spent money out of pocket to repair such windows and surrounding property prior to selling their homes, and all future owners of structures who may experience manifestations of the defect in the years to come. Clearly, this represents an excellent result for the members of the Settlement Class and merits preliminary approval, and, ultimately, final approval.

**C.     Terms of the Settlement**

The Settlement provides a framework for the distributions of benefits dependent upon certain class characteristic, e.g., already repaired and replaced, currently manifest damages, future damage, windows within and outside the 10 year warranty. Specific terms of the Settlement Agreement include:

1. A Settlement Class Member may receive cash benefits under the Settlement either through the Claims Process or the Arbitration Process, but not both. Under the Claims Process, Eligible Claimants may receive a maximum cash benefit of up to $750 per Structure by filing a Claim Form containing the requisite information requested in the Claim Form. Under the Arbitration Process, Eligible Claimants may receive up to $6,000 per Structure through participation in an expedited Arbitration Process in which the Window Defect will not be contested by Pella and Pella retains its rights to contest causation, the amount of damages, and limitations. The cost of Arbitration to be paid by Pella

2. Settlement Class Members who have replaced or repaired Pella ProLine Casement Windows prior to the Initial Notice Date may submit a Settlement Claim for relief under this Agreement through either the Claims Process or the Arbitration Process.

3. Settlement Class Members with Eligible Damage to Pella ProLine Casement Windows which were unrepaired or replaced prior to the Initial Notice Date may seek relief under this Agreement through either the Claims Process or the Arbitration Process.

4. Settlement Class Members who have, or had, windows or Structures with Eligible Damage may be eligible for limited cash payments, in addition to any Discounts, or benefits under the ProLine Service Enhancement Program, as described below. Cash payments are available for unreimbursed amounts shown on valid receipts or other financial records submitted by the Settlement Class Member.

5. Settlement Class Members who repaired or replaced before August 18, 2003, are entitled to the following relief

    a.   Eligible Claimant without Prior Notice a 15% Discount;

    b.   Eligible Claimant with Prior Notice Defendants will pay, in addition to the PSEP benefits;

        i.   within 10 years after the Date of Sale, up to $175 per window or $100 per Sash.

        ii.   within 11-15 years after the Date of Sale, up to $60 per window or Sash.

6. Settlement Class Members who repaired or replaced on or after August 18, 2003:
   a. Eligible Claimant repaired or replaced the window without Prior Notice:
      i. For dates of sale from 1991 through 2003, Defendants will provide a 15% Discount.
      ii. For dates of sale from 2004 through 2006, Defendants will provide a 10% Discount.
   b. Eligible Claimant with Prior Notice:
      i. For dates of sale from 1991 through 2003:
         within 10 years after the Date of Sale:
         a. 1.Up to $250 per window or $120 per Sash for the cost of installation/finishing,
         b. Up to $100 per window or $60 per Sash for the cost of the window or Sash, and
         c. Up to $100 per structure for other damages to the Structure in which the window was installed.
            within years 11-15 after the Date of Sale:
               a. Up to a total of $100 per window or $60 per Sash
      ii. For dates of sale from 2004 to 2006:
         1. Up to $175 per window or $100 per Sash for the cost of installation/finishing,
         2. Up to $100 per window or $60 per Sash for the cost of the window or Sash, and
         3. Up to $100 per Structure for other damages to the Structure in which the window was installed.
7. Settlement Class Members who have Eligible Damage unrepaired prior to the Initial Notice Date are entitled to the following relief:
   a. For the Dates of Sale from 1991 to 2003:
      within 10 years after the Date of Sale:
      1. The remedies and benefits offered by the product warranty and Pella's PSEP services, and
      2. Up to an additional $100 per structure for otherwise unreimbursed expenditures the Settlement Class Member must make to remedy damages to the Structure for Eligible Damage.
      within years 11-15 after the Date of Sale:

Pella's PSEP.

    b. For the Dates of Sale from 2004 to 2006:

        i. The remedies and benefits of the product warranty, and PSEP benefits, with a deductible to be paid by the Settlement Class Member of $100 per unit for costs and expenses of installation and finishing only.

8. For Settlement Class Members who seek relief for repairs for Eligible Damage after the close of the Claim Period but within 15 years from date of window manufacture, the following relief, administered by Defendants will be:

    a. For Dates of Sale from 1991 to 2003:

        i. The remedies and benefits offered by the product warranty and the PSEP, and

        ii. A 15% discount.

    b. For Dates of Sale from 2004 to 2006:

        i. within 10 years after the Date of Sale:

            1. The remedies and benefits of the product warranty, and PSEP benefits, with a deductible to be paid by the Settlement Class Member of $100 per unit.

        ii. within years 11-15 after the Date of Sale:

            1. the PSEP.

9. After reaching the agreement as to the substantive terms set forth above, the Parties' then negotiated attorneys' fees and Class Representative incentive fees, which, through arm's-length discussion, resulted in the following agreements, all of which are contingent upon approval by the Court:

    a. *Attorneys' Fees and Costs.* Pella agrees to pay class counsel up to $11,000,000 in attorneys' fees and costs. Attorneys fees paid by Pella will be in addition to, and will not reduce, class benefits.

    b. *Incentive Awards.* As part of the $11,000,000 each original Class representative who has sat for a deposition and been extensively involved in the litigation will be paid an incentive award of $10,000 for participating in this litigation. Also as part of the attorney fees award, each Class representative that has not sat for a deposition but has still been involved in the litigation will be paid an incentive award of $5,000 for participating in this litigation.

**D.**    **Class Notice**

The Settlement Agreement provides a comprehensive Notice Plan more fully described in the Declaration of Cameron Azari, attached hereto as Exhibit 1. **Individual Notice**: The Notice Plan includes First Class mailed notice to all addresses with Pella's database for structures known to contain Proline Casement Windows. This is estimated to be approximately 240,000

unduplicated addresses. These addresses are assumed to be 37% of the number of structures containing the Proline Casement Windows. All addresses will be filtered through the National Change of Address database and all returned mail re-mailed. All persons requesting claim forms and long form notice will receive first class mailed notice of these documents. **Publication Notice**: the Plan includes national newspaper supplements in Parade and USA Weekend having a circulation of 55 million. Summary publication will also be included in People Magazine. **Internet Banner Notices**: These notices will be placed on AOL online networks and Real Media on line networks. The banner notices will appear on a combined 900 on line network sites having a approximate 79.5 million impressions. The banner will be linked to the case notice website. Informational Release: Informational releases will be made to 4,200 print and 5,500 on line press outlets. **Case Website**: All pertinent documents will be made available for review and downloading on the case specific website www.windowsettlement.com. Included with the website will be sponsored search listings with Google, Yahoo, and Bing for key words Pella Proline Settlement" and "Proline Windows Settlement." **Toll-free Telephone Number And Postal Mailing Address**: A toll free number is established with information regarding frequently asked questions, and directions to the website and a live operator for further questions. Class members may mail inquires, or to contact the Settlement Administrator to a designated post off box established for this purpose. **Plain Language Notice**: Plain language notices comporting with the Federal Judicial Center's illustrative "model" notices are prepared. The Notice Plan is calculated to reach 80.1% of all U.S. adults who own a home. It comports with all federal judicial standards and due process and is the best notice practicable.

### III.    ARGUMENT

**THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, CONDITIONALLY CERTIFY THE SETTLEMENT CLASS, APPOINT PLAINTIFFS AS CLASS REPRESENTATIVES, APPROVE THE PROPOSED NOTICE TO CLASS MEMBERS, AND SCHEDULE A FAIRNESS HEARING**

#### A.    Legal Principles Governing Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. There are three steps to the Court's analysis: (1) the Court must preliminarily approve the proposed settlement; (2) members of the Settlement Class must be given notice of the proposed settlement; and (3) a hearing must be held, after which the Court must decide whether the proposed settlement is fair, reasonable, and adequate. *See Gautreaux*, 690 F.2d at 621 n.3; Manual § 21.632. It is long settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 585 (1910).

It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *Seelsby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). In determining whether preliminary approval is warranted, the issue before the Court is whether the Settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the settlement should be given to Class members, and a hearing scheduled to consider final settlement approval. *See Armstrong,* 616 F.2d at 314, *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("The courts of appeals have required that district court approval of a settlement pursuant to Rule 23(e) be given

only where the district finds the settlement fair, reasonable and adequate."). The Court is not required at this point to make a final determination as to the fairness of the settlement. *Isby*, 75 F.3d at 1198. That decision is made only at the final approval stage, after notice of the settlement has been provided to the class members and they have had an opportunity to voice their views of the settlement. *See* 3B J.W. Moore, MOORE'S FEDERAL PRACTICE (2d ed. 1996) ¶ 23.80[2.-1] at 23-479. Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Bromine Antitrust Litig*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

**B.      The Seventh Circuit's Standards Governing Class Action Settlements**

The Settlement consideration described in detail above is fair, reasonable, and adequate, and thus well within the range of possible approval. In addition, Pella's agreement to pay Class Counsel's attorneys' fees and litigation expenses of $11,000,000, and all notice and administration expenses, is fair and reasonable. Indeed, a fee award of $11,000,000 is reasonable when compared to the actual value of the Settlement consideration obtained for the Settlement Class after six years of litigation by Plaintiffs and their counsel. The Settlement provides benefits beyond the class that was certified by this Court because it includes both current owners and former owners (not just current owners as certified by the Court). Furthermore, this settlement provides monetary benefits to the majority of class members, and opportunities to repair windows and surrounding property that need to be repaired under the settlement. Additionally, the Settlement provides warranty coverage for Proline Casement

Windows that was not previously available on a widespread basis, as well as monetary benefits on top of the warranty coverage for many class members.

As is the case with final approval, a court has wide discretion in making the first-stage determination of the appropriateness of a settlement. *Armstrong*, 616 F.2d at 313. The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986); *Isby v. Bayh*, 75 F.3d 1191, 1196-97 (7th Cir. 1996). Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196.

The key question at this preliminary approval stage is whether the settlement is "within the range of possible approval." *Gautreaux*, 690 F.2d at 621 n.3 (internal quotation marks omitted). In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1198-99 (*citing E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)), and identified several factors for analyzing whether a class action settlement should be given final approval including:

1. the strength of the plaintiff's case on the merits measured against the terms of the settlement;
2. the complexity, length, and expense of continued litigation;
3. the amount of opposition to the settlement;
4. the presence of collusion in gaining a settlement
5. the stage of the proceedings; and
6. the amount of discovery completed.

*General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also, e.g., Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818

(N.D. Ill. 2002). In weighing these factors, the district court should "recognize[] that the first factor, the relative strength of the plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199.

The Seventh Circuit urged district courts to be mindful that "[t]he essence of settlement is compromise," and so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Consideration of these factors confirms that the settlement is well "within the range of possible approval." *Gautreaux.*

### 1. The Strength of Plaintiffs' Case Measured Against the Settlement

Class Counsel believes that they have a strong case on the merits. To date, Plaintiffs have been successful up to and through the Class Certification stage, which has been affirmed by the Seventh Circuit, and they believe that, as a result of discovery and their independent investigation, they would be able establish at trial the existence of a defect in Pella Proline aluminum clad casement windows; that Pella knew, or negligently failed to discover the defect; failed to disclose the defect; and, modified their warranty to provide additional warranty benefits without notice to warranty beneficiaries. While Plaintiffs believe in the strength of their case, they must realistically acknowledge that the case could be lost, and many other risks and uncertainties relating to liability and damages, and potential relief are present, including the uncertainties attendant the severance of liability for individual determinations of causation and damages. If Plaintiffs were successful at the trial establishing the existence of a defect and

Pella's knowledge thereof, that would not be the end of the road; rather, the parties would need to resolve on an individual basis issues of causation, damages, limitations and other defenses, through a likely protracted process with uncertain results. This factor weighs in favor of preliminary approval.

Moreover, the benefits the Settlement Class will enjoy if the Settlement is approved are substantial. Under the Settlement, previous owners who spent money to repair their windows, or surrounding property, current owners who discover damage during the claims period, and future owners all participate in the benefits process. Under the Settlement Pella agrees to extend its PSEP benefits directly to class members with enhancements calculated to remediate the costs of installation and finishing of replacement windows. In addition, many Settlement Class Members are entitled to additional monetary relief, with a $750 cap per Structure under the Claims Process or a $6,000 cap per Structure under the Arbitration Process provision of the Settlement.

Further, under the Settlement, Pella agrees to bear the full costs of notice to the class, significant attorneys fees, the costs of settlement administration, and the costs of Arbitration. By contrast, if this case were to be litigated and proceed to judgment, the cost of the notice would be deducted directly from the money distributed to the class. The longstanding rule in federal court is that "the plaintiff must pay for the cost of notice [to a class] as part of the ordinary burden of financing his own suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178-79 (1974). In addition, Pella has agreed to pay the attorneys' fees, the incentive payments to the class representatives, and the costs of the settlement administration. Thus, none of the typical costs associated with class relief will be borne by the Settlement Class.

While it is possible that, if the case were litigated to a conclusion, Plaintiffs would be able to obtain a greater recovery, that recovery would be years in the future, at significantly

greater expense to the Class. In addition, the members of the Settlement Class would have to continue to pay out of pocket for window replacement and repair costs for other water-related damage to property. There is also a significant risk that the Class would receive less or nothing at all if litigation proceeded to the bitter end. This first factor – which the Seventh Circuit has reiterated is "the most important" one, *Isby*, 75 F.3d at 1199; *Hiram Walker*, 768 F.2d at 889 – weighs strongly in favor of approving the settlement because the putative class would receive substantial warranty and monetary benefits despite Pella's significant arguments in its motions to dismiss, class certification opposition, and various appeals. As a factual matter, a favorable ruling on the window defect, Pella's knowledge and the status of the PSEP program at trial would only be one step in a protracted process toward obtaining any relief. The Settlement Agreement, as a practical matter, already resolves these questions in the Class' favor and moves directly to resolution of claims that would not be resolved at trial, even should the Plaintiffs prevail. Absent the Settlement, all questions, including the window defect, Pella's knowledge and the extent to the product warranty remain unresolved, and at the mercy of an adverse determination on the merits.

The Settlement will make Pella's warranty program, with the enhancement of the PSEP benefits available to all eligible claimants. For those who may have been improperly denied warranty coverage in the past and have already repaired and/or replaced their windows, Class Members may be entitled to monetary compensation. The value of this relief, which would not have come about but for the efforts of the Plaintiffs, their counsel, and their negotiation with Pella, is in addition to the monetary compensation available under the Settlement. Moreover, class members will be entitled to fill out a claim form to receive monetary compensation up to $750 per structure or $6,000 per structure through an expedited arbitration process.

In sum, when the many obstacles to success on the merits were this class action to be litigated further are balanced against the monetary benefits contemplated by the Settlement Agreement, this Settlement rests easily "within the range of possible approval."

**2.** **The Complexity, Length and Expense of**
**Continued Litigation if the Settlement is not Approved**

This would be an extremely expensive case to litigate for all parties and would take a very long time to reach final resolution. It also would be complex, not only because of the sheer number of affected Structures, but because of the factual and legal issues raised by a severed process of liability from causation and damages. The costs of testifying experts, discovery, summary judgment motion practice, possible de-certification motion practice, as well as the cost of pre-trial and trial on liability and likely ensuing appeals, then second phase proceedings related to causation and damages, would be substantial. Further, appeals could take years to resolve. This Settlement provides a reasonably prompt resolution with meaningful relief to all Settlement Class members without these additional major expenditures of time and money. Without this Settlement, it would be years – if ever – before any class member would recover any benefit whatsoever. This factor weighs in favor of preliminary approval.

**3.** **The Amount of Opposition to the Settlement**

Other than the pre-settlement objections already filed, and which this Court denied following an extensive evidentiary hearing, no opposition is known. It is understood that the same objector's will object to the Settlement Agreement, in spite of being unwilling to participate in the final development of the Settlement Agreement. Because these objector's objected to the Term Sheet, they were unaware of the full terms of the Settlement. Additionally, because class members have not yet been sent notice – indeed, the point of this

proceeding is to determine whether it is worthwhile for class notice to be sent – consideration of this factor should be postponed to the fairness hearing.

### 4.     The Presence of Collusion in Gaining a Settlement

This Settlement is not the result of collusion between the parties to trade the rights of absent class members for a large fee award for class counsel.  To the contrary, notwithstanding the many impediments to recovery by the class, the Plaintiffs and Pella reached a settlement that would result in the all Settlement Class members getting certain and immediate tangible benefits. As a matter of law, a court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion in the absence of evidence to the contrary. *Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325. This presumption is applicable here.  Those who have claimed that the settlement was tainted by collusive conduct and self-dealing, have already had their day in court. To the contrary, the Settlement was reached only after six years of litigation, and protracted and often spirited arm's-length negotiation among the Parties.

Moreover, no discussion of attorneys' fees or costs or compensation to Plaintiffs occurred prior to the agreement between Pella and Plaintiffs on substantive portions of the Agreement related to the benefits the Settlement would confer on the Settlement Class.  The first mediated negotiations of these fees and compensation to class plaintiffs took place in December 2011, after the core terms of the Agreement had been worked out in the Term Sheet.  The Settlement is thus not the product of collusion in any way.  This factor weighs in favor of preliminary approval.

**5.      The Stage of the Proceedings and the Amount of Discovery
         and Investigation Completed When Settlement was Achieved**

The Settlement comes after six years of vigorous litigation.  Actual, pending litigation –
rather than the mere threat of litigation – informed negotiations.  The parties have gone through
motions to dismiss, class certification, and appeals in the Seventh Circuit and the United States
Supreme Court.   After Pella's Petition for Writ of Certiorari was denied, the parties began
settlement discussions.  For the past year, Plaintiffs and their counsel conducted intensive arm's-
length negotiations with Pella through numerous in person mediations and meetings, telephonic
conferences, and the exchange of several written proposals.  These negotiations were informed
by extensive statistical analysis of Pella warranty and claims data, Class Counsel intake database,
and the settlement valued across a myriad of potential outcomes. The Plaintiffs also conducted
formal discovery over the course of the litigation that allowed them to evaluate the strengths and
weaknesses of their claims and negotiate a complicated Settlement benefit that incorporates the
many different categories of potential class members.   Plaintiffs deposed numerous Pella
personnel, including but not limited to Pella's Senior Product Design Engineer, and its Vice
President of Engineering, together with the three experts they retained.   Plaintiffs likewise
reviewed and catalogued thousands of documents produced by Pella in discovery.  This factor
weighs in favor of preliminary approval.

Additionally, in considering a settlement, a court is required to take the parties' views
into account.  *DeBoer*, 64 F.3d at 1178 ("The views of the parties to the settlement must also be
considered."); *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000)
("Significant weight should be attributed to the belief of experienced counsel that settlement is in
the best interest of the class.") (citation and internal quotation marks omitted); *In re RJR
Nabisco, Inc. Secs. Litig.*, Nos. MDL No. 818 (MBM), 88 Civ. 7905 (MBM), 1992 WL 210138,

at *4, 1992 U.S. Dist. LEXIS 12702 at *12 (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel"). A corollary to this deferential level of scrutiny is the rule that "an individual who objects has a heavy burden of proving the settlement is unreasonable." *Brotherton*, 141 F. Supp. 2d at 904 (citing cases); *see also In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974); *Cotton*, 559 F.2d at 1330 (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"). Also significant is the fact that Pella and its counsel support this Settlement. *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1969) (the Court may consider the views of all involved counsel when deciding whether to approve a settlement).

**D.     Conditional Certification of the Class Under
        Rule 23(b)(3) for Settlement Purposes is Appropriate.**

On June 4, 2009, this Court granted class certification for

> Rule 23(b)(3) Statutory Consumer Fraud Class: All persons in the states of Illinois, California, Florida, Michigan, New Jersey, and New York, who purchased a Pella ProLine aluminum clad casement window/s and/or own a structure containing a Pella ProLine aluminum clad case window, between January 1, 1991 and present (date of certification).

*Saltzman v. Pella*, 257 F.R.D. 471, 475 (N.D. Ill. 2009). The Parties here propose a revised class definition consistent with the Settlement Agreement. The proposed Settlement Class consists of:

> all persons in the United States who are current or former owners of Structures containing Pella ProLine® brand casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between January 1, 1991 and December 31, 2006.

The Settlement Class excludes: (i) all persons who timely opt out of the Lawsuit pursuant to the

terms of this Agreement (ii) all persons who, individually or as a member of a class, initiated

legal proceedings against Defendants (other than this Lawsuit initiated by the Named Plaintiffs),

whether resolved or not, before the entry of the Preliminary Approval Order by settlement,

judgment, release, dismissal, or other final disposition resulting in the termination of the

proceedings; (iii) all owners of Pella ProLine Casement Windows manufactured on or after

January 1, 2007; and (iv) all of Defendants' current employees.

This proposed revised definition is more expansive than the previously certified class, in

that it includes past, current owners and future owners, as well as is expanded to awning and

transom windows in addition to casement windows. Temporally it differs as it cuts the class off

at Proline casement awning and transom windows manufactured after December 31, 2006, as

opposed to 2009, as design changes were made to the windows beginning in 2007.[6]

While a class must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a

class certification" and is "a factor in the calculus." *Amchem Prods., Inc. v. Windsor,* 521 U.S.

591, 619, 622 (1997). Indeed, the Supreme Court "has expressly approved the use of the

settlement class device." *Id.* at 618 ("the 'settlement only' class has become a stock device").

Plaintiffs seek conditional certification of the Settlement Class under Rule 23(b)(3), their

appointment as Class Representatives, solely for purposes of the Settlement, and appointment of

their counsel as Class Counsel. A class may be certified if it satisfies all of the requirements of

Rule 23(a) and one of the three subparagraphs of Rule 23(b), *see McDaniel v. Univ. Fid. Corp.*,

No. 04 C 2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004) (applying Rule 23 at

---

[6] Pella alleges the materiality of these design changes and Class Counsel had reviewed testing data in this regard. The acceptance of the 2007 window cut off was the product of compromise rather than any definitive determination that such design changes were effective in remediation of the alleged defect. The claims of Proline aluminum clad casement windows manufactured after December 31, 2006 are carved out of the release and their claims remain unaffected by this Settlement.

preliminary approval stage), but without regard to whether the class would be manageable for trial. *See Amchem*, 521 U.S. at 620.

## 1. The Settlement Class Satisfies Rule 23(a)

Rule 23(a) establishes four prerequisites to certification of any class: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) the claims raise common questions of law or fact ("commonality"); (3) the claims or defenses of the proposed representatives are typical of those of the class ("typicality"); and (4) the representative parties can fairly and adequately protect the interests of the class ("adequacy"). Like the originally certified class, the proposed Settlement Class here satisfies these prerequisites.

### a. Numerosity

Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable." "While a plaintiff need not identify each class member or even provide an exact number of class members to satisfy th[is] element . . . he or she is required to offer at least a good faith estimate as to the class size." *Smith v. Nike Retail Servs.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006)(citations omitted)("*Smith v. Nike*"); *Morris v. Risk Management Alternatives, Inc.*, 203 F.R.D. 336, 342 (N.D. Ill. 2001) (numerosity satisfied based on inference that large corporation's computer error; court is entitled to make "common-sense assumptions that support a finding of numerosity") (citation omitted); *Gomez v. Illinois State Bd. of Education*, 117 F.R.D. 394, 399 (N.D. Ill. 1987)(good faith estimate permissible). The data provided in discovery is that Pella manufactured approximately 6,000,000 windows during the class period, and estimated indicated that there are approximately 600,000 structures containing these windows. The members of the proposed Settlement Class are sufficiently numerous under Rule 23(a)(1) because joinder of all owners of approximately six million windows, who are

geographically dispersed, would be impracticable. *See In re Bank One Sec. Litig./Chicago S'holder Claims*, 00 CV 0767, 2002 U.S. Dist. LEXIS 8709, at *9 (N.D. Ill. May 9, 2002); *see also, Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed when there are more than 40 class members).

### b.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality focuses on the relationship of common facts and legal issues among class members.  1 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS, § 3:10 at 271 (4th ed. 2002).  The commonality requirement is easily met.  "Courts have consistently found a 'common nucleus of operative fact[s]' when the defendants are alleged to have directed 'standardized conduct toward [the putative class] members.'"  *Chandler v. Sw. Jeep-Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D. Ill. 1995) (*quoting Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)). Here, Pella has engaged in a common course of conduct *vis-à-vis* all Class members stemming from common set of operative facts.  By definition, each Class Member is the owner of a structure in which Pella ProLine Windows were installed.  The Settlement provides for compensation for ProLine Casement Windows and surrounding property which have experienced water-related damages resulting from water penetrating behind the aluminum cladding.

There are no separate issues of law or fact, which would be unique to an individual Class Member because the issues for each boil down to the same course of conduct based on a common nucleus of operative facts and legal issues, including: (1) whether Pella's ProLine Windows suffer from a common defect; (2) whether Pella had actual or imputed knowledge of the defect and when it did; (3) whether it disclosed the defect; (4) whether Pella informed owners

of ProLine windows that it had determined the interior wood components of the windows were subject to non-apparent and premature wood rot; (5) whether Pella modified its window warranty for ProLine aluminum clad windows to provide replacement for failures in wood durability for all such windows manufactured from 1991 to 2003 and informed the owners of those windows of the warranty modification; and 7) whether these non-disclosures are unlawful. As such, at least one common factual *or* legal question is readily apparent and commonality under Rule 23 is easily satisfied. *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("a single conspiracy and fraudulent scheme against a large number of individuals is particularly appropriate for class action").

### c.    Typicality

Rule 23(a)(3) requires that the representative plaintiffs' claims be typical of those of the claims of the other Settlement Class members. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory." *Rosario*, 963 F.2d at 1018 (*quoting De La Fuente v. Stokely-VanCamp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)). Here, the claims of the Plaintiffs arise from the same alleged products and conduct by Pella as do the claims of the other Settlement Class members and Pella's alleged conduct pertinent to proof of liability would not differ among the Settlement Class members. Accordingly, the typicality requirement is satisfied. All proposed class representative of the proffered Third Amended Complaint are members of the class and have windows with manifest defect, un-manifest (latent) defect, and have repaired or replace windows and/or surrounding property caused by the alleged defect.

### d.      Adequacy

Finally, Rule 23(a)(4) requires that the named class representatives "fairly and adequately protect the interests of the class."  The adequacy standard involves two elements: one relates to the adequacy of the named plaintiffs' representation of the class and requires that there be no conflict between the interests of the representative and those of the class in general; the other relates to the adequacy of class counsel's representation.  *Sec'y of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986) (en banc).  As to the first element, "it is clear that adequacy of representation is established when no collusion is shown between the representative and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervener, and when the representative has not failed in the fulfillment of his duty." *Ebersohl v. Bechtel Corp.*, 2010 WL 2266736, at *2 (S.D. Ill. June 7, 2010) (*quoting Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

None of these disqualifying factors is present here.  Plaintiffs' interests are aligned with all Settlement Class members as they are all current and/or former owners of structures containing Pella ProLine aluminum clad casement, transom and/or awning windows.  Plaintiffs have no interests antagonistic to the other Settlement Class members' interests and each has his or its duty to the class by remaining informed of the negotiations with Pella and approving the Settlement prior to any discussion with Pella regarding any compensation that he or it may receive.

As to the second element, the attorneys representing a class must be qualified, experienced, and generally able to conduct the litigation. *See Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002).  Class Counsel – who are highly experienced in consumer class action litigation – exhibit the desire and expertise to vigorously prosecute this class action and to

successfully negotiate a compromise of such litigation. Plaintiffs have retained counsel not only well versed in complex class litigation, but also highly experienced in class actions and investigations specifically involving consumer claims. For several years, all of Plaintiffs' counsel have successfully investigated, commenced and prosecuted class cases, including cases involving product defects. Plaintiffs and their counsel are qualified to serve as class counsel and representatives for Rule 23(a)(4) and (g) purposes.

### 2. The Settlement Class Meets the Requirements of Rule 23(b)(2) and Rule 23(b)(3).

In addition to satisfying Rule 23(a), the Settlement Class satisfies the certification requirements of, and therefore should be certified under, Rule 23(b)(3).

### a. Predominance

Rule 23(b)(3) requires that a plaintiff show that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." The predominance requirement may be satisfied when "the central questions in the litigation are the same for all class members." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). Class action status is appropriate where common questions represent a significant aspect of a case and they can be resolved in a single action. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 528 (2d ed. 1986). Common questions, however, need not be dispositive of the entire action, because "predominate" under the rule does not mean "determinative." *Id.* at 528-29. Courts generally focus on the liability issue, and if the liability issue is common to the class, common questions are held to predominate over individual questions. *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

As previously noted, the central issue in this litigation is whether Pella's windows were inherently defective because of their design, and whether Pella knew or should have known of

the design defect and disclosed the design defect. While some Settlement Class members may have repaired and replaced their windows and others may not have replaced them yet, the predominant question is whether any the design defect exists and is common to the Class. Because that core issue is common to all members of the Settlement Class, the Rule 23(b)(3) predominance requirement is satisfied.

On appeal in *Pella, v. Saltzman*, *id*. the circuit court affirmed the propriety of certifying a class of Pella Proline casement window owners. The "district court [determining whether to certify a class for settlement purposes only] need not inquire into whether the case, if tried, would have intractable management problems…for the proposal is that there be no trial." *Amchem,* 117 S.Ct. at 2248.

### b.     Superiority

Rule 23(b)(3) also requires that the Court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority requirement is necessarily comparative; by its own terms, Rule 23(b)(3) requires the Court to consider other possible means of resolving the claims of the class.

Possible alternatives to the class action device include: joinder, intervention, consolidation, a test case, and an administrative proceeding. 2 Newberg (4th ed. Supp. 2010), *supra*, § 4.27. None of those alternatives is superior to class action treatment of this settlement precisely because the class consists of hundreds of thousands of Structures with defective Pella ProLine Aluminum Clad Casement, Awning and/or Transom Windows and each claim's monetary value is relatively small given the costs of litigation. "Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . most of the

plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

In sum, the Settlement Class's claim for warranty benefits with monetary benefits meet the requirements of Rule 23(b)(3), and should be certified.

C.      **The Proposed Class Notice and Summary Notice Are Adequate**

The form of the Class Notice and Summary Notice are Exhibits attached to the Settlement Agreement. The Class Notice and Summary Notice are addressed to the Settlement Class for which certification under Rules 23(b)(3) is sought. The Notice is governed by both Rule 23(c)(2)(A), which states that ". . . the Court may direct appropriate notice to the Class", and Rule 23(c)(2)(B) which states that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[7]

The Class Notice and Summary Notice satisfy Rule 23's directives and the constitutional due process clause requirements because the Settlement Class will be alerted to and informed about the Settlement, their rights, and their opportunity to appear and be heard at the Fairness Hearing. Pursuant to the terms of the Settlement Agreement, the Settlement Administrator will send notice to each Settlement Class member, at the known address listed in Pella's database of customers of Pella Proline Casement Windows, by First Class United States Mail, proper postage prepaid.

Moreover, the individual notices are supplemented by publication, informational releases to 4200 print and 5500 on line media outlets, Banner Notices on the predominating internet

---

[7] Rule 23(e)(B) similarly directs that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

networks, sponsored search listings, a case specific website, www.windowsettlement.com, and the establishment of a toll-free telephone number and designated address for mailed inquiries, all of which is calculated to reach all persons for whom known addresses are available and 80.1% of all adult homeowners. The notice distribution is enormous: 240,000 individual mailed notices, 900 websites having 79.5 million impressions, publication in 1,100 newspapers, and magazines with readership of 45 million. And internet access to all claims forms and pertinent case related documents. *See, e.g., Investors Business Daily. Gordon v. Hunt*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987)(Both mailing and publishing notice is the "long-accepted norm in large class actions."). The Claims Administrator will also set up a toll-free telephone help line to answer any questions Settlement Class members may have about the Settlement.

As for the content of the Notice, Rule 23(c)(2)(B) provides that the notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and, the binding effect of a class judgment on class members under Rule 23(c)(3). Where notice is being sent in connection with a proposed settlement, it must also inform class members of the terms of the settlement and their options with respect thereto. *See Domestic Air Trans.,* 141 F.R.D. at 553-555. The proposed Class Notice: describes the nature, history and status of the Action; sets forth the definition of the Settlement Class; states the Class' claims and issues; informs members of the Settlement Class of the right to exclude themselves from the settlement of the Rule 23(b)(3) settled claims, as well as the deadline and procedure for doing so; and, warns of the binding effect of the settlement approval proceedings. The Notice

also describes the Settlement, states the parties' disagreement over liability and damages, sets out the attorneys' fees and expenses that Class Counsel intend to seek in connection with final settlement approval, which will be paid by Pella, provides contact information for Class Counsel, and summarizes the reasons the parties are proposing the Settlement. Finally, the Notice outlines the date, time, and place of the Fairness Hearing, and the procedures for commenting on the Settlement and appearing at the Hearing. The Notice, therefore, is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Accordingly, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Class.

## IV.    CONCLUSION

For the foregoing reasons, the Court should preliminarily approve Plaintiffs' Settlement with Pella; conditionally certify the Settlement Class and appoint Plaintiffs as representatives thereof; appoint Plaintiffs' counsel as Class Counsel; approve the manner and form of notice to be furnished to conditional Class members; and schedule a Fairness Hearing under Fed. R. Civ. P. 23(e)(1)(C) for the purpose of determining whether the Settlement is fair, reasonable, and adequate and, therefore, deserving of final approval.

DATED: July 10, 2012                 Respectfully submitted,

                                     **DR. LEONARD E. SALTZMAN, et al.,**
                                     **Class Plaintiffs,**

                                      _/s/ Richard J. Burke_____
                                             One of Their Attorneys

Richard J. Burke
**COMPLEX LITIGATION GROUP LLC**
1010 Market Street, Suite 1340
St. Louis, MO  63101
(847) 433-4500, Ext. 2603
richard@complexlitgroup.com

Paul M. Weiss
Julie D. Miller
**COMPLEX LITIGATION GROUP LLC**
513 Central Avenue, Suite 300
Highland Park, IL 60035
(847) 433-4500, Ext. 2601
paul@complexlitgroup.com
julie@complexlitgroup.com

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA  19102
(215) 564-2300
jshub@seegerweiss.com

*Attorneys for Plaintiffs and Settlement Class*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, affirms that on July 10, 2012, he filed an electronic copy of the foregoing document with the Clerk of Court using the ECF system, which will send notification of such filing to counsel of record.

   /s/ Richard J. Burke
Richard J. Burke
**COMPLEX LITIGATION GROUP LLC**
1010 Market Street, Suite 1340
St. Louis, MO  63101
(847) 433-4500, Ext. 2603
richard@complexlitgroup.com