**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DR. LEONARD E. SALTZMAN, TIM BASTIAANSE, JOSEPH PALMIOTTO, BRAD ZURN, and JUDITH MCCLOSKY individually and on behalf of all others similarly situated;<br><br>        Plaintiffs,<br><br>  v.<br><br>PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation,<br><br>        Defendants. | No.: 06 C 4481<br><br>Honorable James B. Zagel |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION OF CLASS COUNSEL FOR APPROVAL OF ATTORNEYS' FEES,**
**COSTS AND EXPENSES AND FOR APPROVAL OF INCENTIVE AWARDS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.   CLASS COUNSEL'S FEE REQUEST IS JUSTIFIED UNDER BOTH THE LODESTAR
AND PERCENTAGE OF RECOVERY METHOD OF AWARDING FEES TO CLASS
COUNSEL IN CLASS ACTION CASES. ................................................................................ 3

   A.   Class Counsel's Request is Reasonable Under the Lodestar Method. ............................. 4

   B.   Here, in a Non-Common Fund Case, the Fee Class Counsel Seeks Represents a Modest
Lodestar Multiplier Justified by Governing Precedent and the Facts of This Case. ................ 9

   C.   Class Counsel's Request For Fees Is Also Appropriate Under The Percentage Of The
Recovery Method For Determining Fees. ............................................................................ 12

     1.   The Attorneys' Fees Requested By Class Counsel Easily Falls Within the Range of a
Reasonable Market Price for Their Legal Services .......................................................... 13

     2.   The Attorneys' Fees Requested Are No More Than 11.8% of The Proposed Settlement
Value To The Class ......................................................................................................... 17

     3.   The Range of Percentage of the Fund Attorneys' Fee Awards in the Seventh Circuit Is
Between 30% and 40% ..................................................................................................... 17

II.   CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES COMPARES FAVORABLY WITH OTHER
HOME PRODUCT SETTLEMENTS. ...................................................................................... 18

III.   CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLY INCURRED
LITIGATION EXPENSES. .................................................................................................. 22

CONCLUSION ................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)........................................................ 3, 15
*Cartwright v. Viking Indust., Inc.*, No. 07-cv-2159 (E.D. Cal. May 5, 2010) ............. 19
*Cook v. Niedert,* 142 F.3d 1004 (7th Cir. 1998) ........................................................ 9, 17
*Cruz v. Hook-Superx, LLC*, 09 CIV. 7717, 2010 WL 3069558 (Aug. 5, 2010) ........... 20
*DeBouse v. Bayer AG et al.*, 235 Ill.2d 544 (2009) ........................................................ 7
*Ellis v. Flying Tiger Corp.*, 504 F.2d 1004 (7th Cir. 1972) .......................................... 20
*Florin v. NationsBank of Ga., N.A.*, 34 F.3d 560 (7th Cir. 1994) (*Florin I*) ......... 11, 12
*Florin v. NationsBank of Ga., N.A.*, 60 F.3d 1245 (7th Cir. 1995) (*Florin II*) ... 2, 3, 10, 11
*Galanti v. The Goodyear Tire & Rubber Co.*, No. 03-209 (D.N.J. Nov. 17, 2004) ....... 20
*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) ...................................................... 11, 12
*Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996) .................................................. 17
*Gastineau v. Wright*, 592 F.3d 747 (7th Cir.2010) ......................................................... 9
*Harman v. Lyphomed, Inc.,* 945 F.2d 969 (7th Cir.1991)............................................... 9
*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................... 22
*In re AT&T Mobility Wireless Data Services Sales Tax Litig.*, 792 F. Supp. 2d 1028 (N.D. Ill. 2011)................................................................................................................. 18
*In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) .................................. 10
*In Re General Motors Pick Up Truck Fuel Tank Products Liability Litigation*, 55 F. 3d 768 (3rd Cir. 1995)............................................................................................................. 12, 13
*In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 364 (N.D. Il. 2010) ................................................................................................ 15
*In re Synthroid Mktg. Litig.,* 264 F.3d 712 (7th Cir. 2001) ............................................. 4
*In re Vitamins Antitrust Litig.*, MISC. 99-197(TFH), 2001 WL 34312839 (D.D.C. July 16, 2001) ...................................................................................................................... 16
*In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604 (2011) .......................... 20
*In the Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (*Continental I*) ... 12
*Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d 487 (7th Cir.2009) ..... 8
*Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241 (8th Cir. 1996) ................................ 16
*Kitson v. Bank of Edwardsville*, No. 08-507-GPM, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010).. 18
*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ..................................... 16
*Marshall v. H & R Block Tax Services Inc.*, 270 F.R.D. 400 (S.D. Ill. 2010) ............. 19
*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007) .................... 15
*McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806 (E.D. Wis. 2009)....... 15
*Mills v. Electric Auto-Lite Company*, 396 U.S. 375, 90 S. Ct. 616 (1970).................... 3
*Pella Corporation v. Leonard E. Saltzman, et al.*, 606 F.3d 391 (7th Cir. 2010) ....... 2, 6
*Physicians of Winter Haven LLC v. Steris Corp.*, 1:10 CV 264, 2012 WL 406966 (N.D. Ohio Feb. 6, 2012) ................................................................................................... 16
*Schulte v. Fifth Third Bank*, 2011 WL 3269340 (N.D. Ill. July 29, 2011) .................. 18
*Skelton v. Gen. Motors Corp.*, 860 F.2d 250 (7th Cir. 1988) ............................... passim
*Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226 (N.D. Ill. 1993) ............... 22
*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................... 16
*Sutton v. Bernard*, 504 F.3d 688, (7th Cir. 2010) .................................................. 3, 4, 11, 12
*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ...................................... 17, 19

*Williams v. MGM–Pathe Commun. Co.,* 129 F.3d 1026 (9th Cir. 1997) ..................................... 15
*Williams v. State Board of Elections*, 696 F.Supp.2d 1561 (N.D. Ill. 1988) ................................ 8
*Woodard v. Andrus*, 272 F.R.D. 185 (W.D. La. 2010) ................................................................. 20

**Other Authorities**

L. Brandies, *Other Peoples Money* (1913) ................................................................................ 12

**Rules**

Fed. R. Civ. P. 23(h) .................................................................................................................... 3

## PRELIMINARY STATEMENT

Plaintiffs' Counsel ("Class Counsel")[1] in the above-entitled matter (the "Class Action") respectfully submit this Memorandum in Support of Motion For Approval Of Attorneys' Fees, Costs, And Expenses And For Approval of Incentive Awards of $11 million for fees and expenses. The award sought here is justified as Class Counsel have litigated tirelessly on behalf of the Class for more than six years, achieving numerous legal victories, and more importantly, a settlement that provides substantial relief for Class Members who have experienced damage to their Pella windows and provides a method for the efficient adjudication of their warranty claims. The attorneys' fees sought by Class Counsel were themselves the product of arm's length negotiation and are a benefit in addition to the substantive benefits negotiated on behalf of the Class. It is important to note at the outset that settlement negotiations were conducted in two separate phases: Class benefits were negotiated first with the assistance of Mediator Richard Solum; once the terms of the class benefits were reduced to a "Term Sheet" and agreed to by all parties, a separate negotiation concerning attorneys' fees was conducted with the assistance of Mediator Erwin Katz.

The $11 million fee Class Counsel seeks is reasonable under the law in this Circuit governing fee petitions. Class Counsel undertook a significant risk in undertaking this litigation, expending thousands of hours of effort and hundreds of thousands of dollars in litigation expenses, all without any guarantee that they would be compensated or reimbursed. Along the way, Class Counsel obtained a multistate class certification under consumer fraud laws, and Class Counsel obtained, on Rule 23(f) review, a seminal opinion by the United States Court of

---

[1] Class Counsel is comprised of the following firms: Complex Litigation Group; Seeger Weiss; Farmer Jaffe, Weissing, Edwards, Fistos & Lehman; James Hoyer Newcomer & Smiljanich; and Banducci Woodard Schwartzman.

Appeals for the Seventh Circuit approving certification of this multi-state class action.[2] *Pella Corporation v. Leonard E. Saltzman, et al.*, 606 F.3d 391 (7th Cir. 2010). Class Counsel successfully opposed Pella's effort to obtain a *writ of certiorari* from the United States Supreme Court, 131 S.Ct. 998 (U.S. 2011) and, ultimately, Class Counsel engaged in arduous and extended settlement negotiations that resulted in an excellent settlement for the Class given the legal risks going forward and the significant time that would elapse before any Class Member could see relief if settlement is not approved. It is also notable that the settlement provides substantial benefits above and beyond what other consumer home good product settlements have achieved.

Given the course of this litigation, terms of the settlement achieved, and the risk taken over the course of the case, Class Counsel submit that they have earned the fee requested in this case. Under the lodestar method, the fees requested only result in a lodestar multiplier of 1.14 and under the percentage of recovery method, would represent approximately 11.8 % of the reasonable value of the benefit conferred upon the Class. Regardless of which method is used, or a combination thereof, the fee sought is in full compliance with applicable Seventh Circuit and other relevant precedent and is particularly consistent with the Seventh Circuit's directive that "court[s] must [] be careful to sustain the incentive for attorneys to continue to represent such clients on an inescapably contingent basis." *Florin v. NationsBank of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995) (*Florin II*).

---

[2]    Since the opinion came down, it has been cited over 150 times according to Westlaw, including 25 court opinions and 23 law review articles and other secondary sources.

## ARGUMENT

I.    **CLASS COUNSEL'S FEE REQUEST IS JUSTIFIED UNDER BOTH THE LODESTAR AND PERCENTAGE OF RECOVERY METHOD OF AWARDING FEES TO CLASS COUNSEL IN CLASS ACTION CASES.**

It is well-settled that attorneys who achieve a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). The rule "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard,* 504 F.3d 688, 691–92 (7th Cir. 2010) (*citing Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988). "To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Mills v. Electric Auto-Lite Company*, 396 U.S. 375, 393, 90 S. Ct. 616 (1970). Attorney fee awards are committed to the sound discretion of the court. *See* Fed. R. Civ. P. 23(h) (courts "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement").

Courts in this Circuit evaluate the reasonableness of a class counsel's petition for fees using the "percentage of recovery" approach or "lodestar" approach. *See Florin v. Nation's Bank of GA, NA*. 60 F.3d 1245, 1247, n.2 (7th Cir. 1995). Under the lodestar approach, a "lodestar" figure is calculated by multiplying the number of reasonable hours expended by each individual attorney's hourly rate. This base "lodestar" may be adjusted upward via a "multiplier" to reflect the benefit of the settlement to the Class as well as the contingent nature of the attorney's undertaking based on the likelihood of success in obtaining a judgment or settlement measured at the time the attorney began work on the case. *Skelton v. General Motors Corp.*, 860

F.2d 250, 255 (7th Cir. 1988) (citations and quotations omitted). Under the percentage approach, a flat percentage of the settlement benefit is awarded as fees. *Id.* The court's task is to do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market" at the outset of the litigation when the risk of loss still existed. *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir. 2007) (citing *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001)). As Class Counsel explains below, their request is reasonable under either approach.

### A. Class Counsel's Request is Reasonable Under the Lodestar Method.

Class Counsel expended tremendous effort in bringing about this settlement on behalf of thousands of Pella class members. Pella's able defense team fought Class Counsel at every stage, from motion practice here and in the appeals courts, through discovery and then at the settlement table. The settlement itself took over a year to negotiate. (Ex. 1, Affidavit of Richard J. Burke at ¶¶ 47-64. A review of the thirty-two page docket in this case (which totals 310 entries and does not include the substantial work done at the Seventh Circuit and Supreme Court) demonstrates the rigorous defense Pella employed throughout the litigation. The hours Class Counsel expended in battling Pella, which total more than 17,000, are reasonable particularly given that the work included the following:

- **<u>Pre-Complaint Factual Investigation</u>**. Class Counsel began conducting a factual and legal investigation in early 2006 to determine whether there was a cause of action against Pella. This involved working with potential clients and gathering factual background and investigation including in-home inspection of Pella windows and a review of documents, correspondence, agreements, and other relevant materials related to the relationship between Pella and the plaintiffs and the windows at dispute in this case. Class Counsel also researched and discussed issues concerning window construction, the various designs of windows, and whether the issues pertained to all Pella window owners or only those with particular lines of Pella windows.

- **<u>Pre/Post-Complaint Legal Investigation</u>**.  With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape, focusing on other defective window and product litigation and any specific issues related to windows with wood rot problems.  In addition, Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research were concluded, Class Counsel began: (1) formulating the consumer fraud, warranty, and declaratory relief claims; (2) drafting, preparing, and filing the Complaints;  and (3) engaged in ongoing correspondence with clients regarding the complaint and the case in general.  Throughout this process, there were written and telephonic strategic conferences amongst Class Counsel to present the most viable Complaint on behalf of the plaintiffs and putative class.

- **<u>Motion Practice.</u>**  As the litigation progressed, Class Counsel reviewed defendant's motion to dismiss, researched prospective responses, and engaged in substantial briefing.  Class Counsel also researched additional potential claims and issues and drafted, prepared and filed an amended complaint.

- **<u>Experts</u>**.  Class Counsel worked extensively with expert witnesses, including fenestration expert Charles Still who has extensive engineering background in the design, and manufacture of aluminum clad windows and doors.  Class Counsel worked with Mr. Still while he conducted inspections of the named Plaintiffs homes, reviewed the engineering documents provided by Pella in discovery, reviewed the Pella Rule 30(b)(6) depositions taken by Class Counsel, and designed experiments upon exemplar ProLine casement windows for the purpose of determining, and illustrating, the nature and extent of engineering design defects in those windows and prepared an expert report upon which he was deposed.  Class Counsel also retained wood preservatives expert Lee Gjovik who Class Counsel worked with to get a full understanding of his opinion that the aluminum cladding of the Pella ProLine windows, if it allowed water to penetrate and expose the interior wood components, would lead to prolonged moisture exposure and wood rot and that the wood preservative employed by Pella would be ineffective to arrest wood deterioration.  He further opined that the wood deterioration evident in the Plaintiffs windows was the result of prolonged moisture exposure, that the aluminum cladding prevented earlier detection of wood deterioration, and that the manifest wood rot was caused by a common design defect in the ProLine casement windows. Class Counsel also spent numerous hours consulting with a number of experts in the areas of economics, wood pathology, fenestration, wood preservation, statistics, and building and construction engineering.  Class Counsel also worked with experts to assist them in deposing the technical experts proffered by Pella and to conduct data and statistical analysis based on Pella's Returns and Allowances and other underlying data.

- **Discovery**.  The parties engaged in substantial discovery. Defendants produced tens of thousands of pages of documents to Class Counsel, many of which were highly technical, and Class Counsel reviewed and analyzed them.  Furthermore, Class Counsel deposed Defendants through several of their employees, preparing extensively to obtain the most information possible and traveling to Defendants' location for the depositions.  During the inspection and discovery process, Class Counsel discovered an extended-warranty program that Pella was only providing to select customers for ProLine windows, called the ProLine Service Enhancement Program ("PSEP"). Also during this time, Class Counsel engaged in numerous written and telephonic discussions with opposing counsel.

- **Class Certification Briefing**.  Class Counsel filed a Motion for Class Certification of the ProLine casement windows class in May 2008.  Class Counsel engaged various experts (discussed above) regarding window technology and wood rot, consulted them, and produced written expert reports along with their motion for class certification.  This Court requested additional briefing in November of 2008, which Class Counsel diligently researched and filed.  In total, Class Counsel submitted over 200 pages of written class certification briefing, including the substantial appendices analyzing various causes of action under the laws of the 50 states.  Class Counsel's Motion for Class Certification was granted in June of 2009.

- **Interactions With Clients and the Members of the Class**.  This Court is aware that this case generated significant publicity, and that the problems with Pella windows were reported all over the internet.  During the course of the past six years, Class Counsel have received literally thousands of inquiries from Pella windows owners, which has required Class Counsel to take the time to communicate with each individual, determine to the best of their ability what type of windows each person has, collect data to help investigate the case, and regularly keep the people updated with progress in the case.  To date, Class Counsel have communicated with over 4,000 individuals regarding problems with their Pella windows.

- **Seventh Circuit Appeal**.  Defendants appealed this Court's order to the Seventh Circuit pursuant to FRCP Rule 23(f), and Class Counsel had to research and write a response brief addressing Defendants' arguments on appeal.  In May 2010, the Circuit Court affirmed the class certification order.  606 F.3d 391 (7th Cir. 2010).

- **Supreme Court Certiorari Briefing**.  Defendants sought a *writ of certiorari* in the Supreme Court and Class Counsel had to extensively research the issues raised and ultimately file a brief opposing the grant of certiorari after the Supreme Court asked for a written response.  Any Supreme Court brief requires a substantial amount of effort, which Class Counsel expended, and the certiorari petition was denied by the Supreme Court in January 2011.  131 S.Ct. 998 (U.S. 2011).

- **Post-Certiorari Discovery and Briefing.** After certiorari was denied, Class Counsel pushed forward with additional discovery on Pella, serving several additional requests and engaging in lengthy meet and confers along the way. This Court also asked for supplemental briefing on issues such as the meaning and impact of the Illinois Supreme Court's decision in *DeBouse v. Bayer AG et al.*, 235 Ill.2d 544 (2009), as well as a memorandum on the laws that underlay the 50 state Rule 23(b)(2) Class. Class Counsel worked diligently on these additional briefs in order to protect the Class certification that they had obtained. The Court also requested that additional class representatives for each of the subclass (b)(3) states be added. This required the identification and vetting of class representatives from these states and amendment of the Complaint.

- **Settlement**. This court is already well-aware of the substantial and protracted settlement negotiations Class Counsel conducted with Defendants that lasted over a year. The parties hired a well-respected mediator, retired Judge Richard Solum, to assist with negotiations. Class Counsel researched and drafted many memoranda regarding potential settlement structures, analyzed all other construction and home product defect cases, consulted with statistical experts, reviewed discovery provided on an informal basis, and attended numerous in-person mediation sessions as well as numerous follow-up telephone conferences and E-mail exchanges. After eleven months of negotiations, the parties were able to reach an agreement on substantive terms that would provide immediate and direct benefits to the Class. Pella and Class Counsel then engaged another mediator, retired Judge Erwin Katz, to negotiate the attorneys' fees and expenses with Pella. After the class benefit and fees were agreed to, the parties next spent six months finalizing all the details of a very complicated settlement.

- **Objector and Preliminary Approval**. This Court is well aware of the effort Class Counsel has expended addressing the objections that have been lodged, albeit prematurely, to the settlement and to the notice being sent to the Class.

Class Counsels' declarations detail the hours each firm expended in the prosecution of this litigation to date (this does not include any costs or fees associated with preparing this submission). See Declarations attached as Exhibits 1-5. There was little or no duplication of effort as Class Counsel efficiently and productively litigated this case.

To arrive at the base lodestar figure of $9,155,566.20, Class Counsel multiplied the total hours by the current hourly rates[3] of the attorneys and paralegals who worked on this Class

Action.  A reasonable hourly rate should be in line with the prevailing rate in the "community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Jeffboat, LLC v. Director, Office of Workers' Comp. Programs,* 553 F.3d 487, 489 (7th Cir. 2009). Exhibits to each petitioning firm's declaration also detail the calculation of hours for each attorney and paralegal that worked on the case, as well as provide a summary describing the services performed.[4]   The hours reported were compiled from contemporaneous time records maintained by each attorney and paralegal.  Class Counsel respectfully submit that the hours expended on this litigation were reasonable and necessary in this case.

It is important to note that Class Counsel's work in this case is not complete.  Because Class Counsel is filing this Petition prior to final approval of the proposed settlement, the lodestar calculation and description of work set forth above does *not* account for all the time Class Counsel will spend on this Class Action.  Unlike other class action settlements where the efforts of counsel end when final approval is obtained, Class Counsel in this case likely will continue their efforts to monitor and administer the settlement for years to come because the settlement provides numerous future benefits which could extend the benefit for some class members until the year 2021.[5]  The additional services Class Counsel anticipate providing in this

---

[3]    Current hourly rates are generally applied in calculating the lodestar figure.  *See Skelton*, 860 F.2d at 255 n.5.  Moreover, Class Counsel's rates vary appropriately between attorneys and between paralegals, depending on the position and experience level.  The rates for each individual attorney and paralegal are set forth in the Declarations and in the charts and exhibits to the Declarations.

[4]    Class Counsel's detailed reports provide the specific services performed in this Class Action, and have been prepared in accordance with guidelines set forth in previous fee decisions. *See, e.g., Williams v. State Board of Elections*, 696 F.Supp.2d 1561 (N.D. Ill. 1988).

[5]    The settlement provides for window replacement and monetary relief for the cost of installation and finishing for windows that are within the first ten years from manufacture. Therefore, for windows manufactured in 2006, this settlement benefit will be available to some class members through 2016.  The settlement also provides benefits for owners of windows that

case include: (1) monitoring the administration of the Settlement Agreement through 2021, (2) answering the numerous questions from class members that have already started pouring into the phone lines and inboxes of Class Counsel, (3) responding to the current pending objections to the Settlement Agreement as well as any additional objections that arise, and (4) obtaining final approval including briefing any objections.

Inclusion of this additional time will raise Class Counsel's lodestar and accordingly reduce the lodestar multiplier Class Counsel seek, thereby further demonstrating the reasonableness of the fees requested.

**B. Here, in a Non-Common Fund Case, the Fee Class Counsel Seeks Represents a Modest Lodestar Multiplier Justified by Governing Precedent and the Facts of This Case.**

In a common fund case courts now routinely apply a percentage of the fund approach in awarding attorneys' fees. But the class benefit here is not derived from a *per se* common fund. Thus, with the base lodestar in mind, the Court may in its discretion award Class Counsel a fee by adjusting the base lodestar upward depending on certain factors. *See, e.g., Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir.1998); *Skelton,* 860 F.2d at 255. These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). When applying a multiplier to the base lodestar amount, courts also rightfully consider the risk plaintiff's counsel assumes in recovering nothing for the client and therefore earning no fees in connection with the representation. See *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975–76 (7th Cir.1991) (remanding case for recalculation of attorneys' fees because the trial court failed to

---

manifest a defect between the 11th and 15th year from the date of manufacture. Thus, for windows purchased from Pella in 2006, the settlement could be providing benefits to class members through the year 2021. Thus, Class Counsel will be required to monitor compliance with the settlement into the next decade.

award a risk multiplier). As the *Florin* court explained, "[C]ourts use a risk multiplier to compensate the attorneys for the risk that they will not be paid if the litigation is unsuccessful." *Florin v. NationsBank of GA, NA*. 60 F.3d at 1247*]*. The "risk multiplier," like a percentage of recovery method, is employed to "sustain the incentive for attorneys to continue to represent such clients on an 'inescapably contingent basis.'" *Id*. Here, Class Counsel's request attorneys' fees results in a lodestar multiplier of 1.14, a modest multiplier when measured against the substantial risks involved in this case.   It is especially modest when compared to other multipliers awarded in this Circuit. *See In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar); *Florin II*, 60 F.3d at 1247 (finding 1.01 multiplier an abuse of discretion and directing district court to award 1.53 multiplier).  Moreover, the  multiplier will obviously decline as Class Counsel spend additional time on final approval, possible appeals and the long-term process of monitoring the administration of the settlement and interacting with class members.  Here, under the facts of this case, this slight multiplier is amply supported by application of the factors mentioned above.

The result achieved was significant especially in light of the complex posture of the litigation.  Class Counsel was able to achieve a settlement that provides for an efficient and cost free means of resolving what the Court found to be individual issues of causation and damages with the common, predominant question of product defect resolved favorably to the entire Class. The settlement likewise extends the ProLine Service Enhancement Program benefits to the Class, and enhances those benefits well beyond the limitation in the Pella warranty.  As such the settlement is a significantly better outcome than the two-phase process mandated by a liability-

only trial, followed thereafter by an unknown number of individual causation and damages adjudications likely to take years to resolve.

The risk taken by Class Counsel on a contingent basis also supports the attorneys' fees sought here. *See Sutton*, 504 F.3d at 694 ("We recognized that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.") (citations omitted); *see also Florin v. NationsBank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (*Florin I*) ("A court must assess the riskiness of the litigation by measuring the probability of success of this type of case at the outset of the litigation.")"The risk multiplier is an effort to mimic market forces." *Florin II*, 60 F.3d at 1247; *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998)("Because they shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would."); *Skelton*, 860 F.2d at 253 ("The stronger the defense, the higher the risk involved in bringing the suit and the greater the multiplier necessary to compensate plaintiff's attorney for bringing the action.").

As set forth in Plaintiffs' Memorandum in Support of the Motion for Preliminary Approval of Settlement (D.E. #285), there were many steps along the way where Class Counsel risked losing the entire litigation. Many of the arguments raised by Defendants in their motion to dismiss, opposition to class certification, Seventh Circuit appeal, and the Supreme Court petition, if successful, would have minimized or completely eliminated any relief sought by the plaintiffs. In addition to the challenges in establishing liability, Class Counsel also endured the risk that a class would not be certified, as well as potential issues in creating a damages model.

Class Counsel also advanced the public interest in a significant manner in this case. They were able to hold accountable a company that manufactured and sold a sub-standard product.

11

Class Counsel also exposed the secret warranty (the PSEP program) and made sure that all class members received the benefits. As Justice Brandeis once said, "Sunlight is the best disinfectant." L. Brandeis, *Other Peoples Money* (1913). In conclusion, Class Counsel's request for attorneys' fees which includes only a slight enhancement to their lodestar should be granted.

### C.  Class Counsel's Request For Fees Is Also Appropriate Under The Percentage Of The Recovery Method For Determining Fees.

Class Counsel's fee request is also reasonable under the percentage of recovery approach. "In deciding fee levels in common fund cases, we have consistently directed district courts to do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (citation and quotations omitted). While here there is no common "fund" *per se*, we will demonstrate that there is a common *benefit* that can be reasonably valued at approximately $90 million dollars.

The Seventh Circuit has strongly endorsed the percentage of the recovery benefit method as a means of approximating the manner in which attorneys are compensated in the marketplace for class action cases. *See In the Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (*Continental I*); *Florin I*, 34 F.3d at 566; *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998). "The percentage of recovery method resembles a contingent fee in that it awards counsel a variable percentage of the amount recovered for the class." *In Re General Motors Pick Up Truck Fuel Tank Products Liability Litigation*, 55 F. 3d 768, 819 (3rd Cir. 1995). The Seventh Circuit also has recognized "that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin I*, 34 F.3d at 566; *see also Continental I*, 962 F.2d at 573 (noting that it is easier to establish marketplace contingency fee percentages "than it would be to hassle over every item or category of hours and

expense and what multiple to fix and so forth."). Further, "[c]ourts have relied on 'common fund' principles and the inherent management powers of the court to award fees to lead counsel that do not actually generate a common fund." *In Re GM Pick Up Truck*, 55 F.3d 768, 821 (3rd Cir. 1995).

Under the Settlement Agreement, the Settlement Class will realize substantial and immediate benefits once the Settlement Agreement is approved. If litigation were to proceed, there would, at best, be two phases under the Court's class certification order: one to deal with liability and one to deal with causation and damages. Under the first phase, this would be a class-wide trial to determine whether the window design is defective. If Class Counsel were successful at the liability trial, there would then be individualized damages trials for each class member to prove that the defect caused the wood-rot in their windows and the amount of damages they sustained. This process would likely take years, at the very least, and with mixed and uncertain results. The Settlement Agreement alleviates this burden right now and with certainty: every Settlement Class member will receive an immediate and direct benefit either through cash compensation or discounts on replacement products. Thus, the fact that this case settled prior to a trial on liability is not a reason to deny or reduce the attorneys' fees requested.

### 1. The Attorneys' Fees Requested By Class Counsel Easily Falls Within the Range of a Reasonable Market Price for Their Legal Services[6]

The percentage of recovery method presupposes that the settlement is capable of a reasonable valuation such that a percentage can be determined. *In Re GM Pick Up Truck*, 55 F.3d 768. To arrive at a reasonable valuation of the settlement Class Counsel, working with independent professionals, applied a statistical analysis to each component of the class benefit in order to precisely calculate the value of the settlement as a whole and the settlement benefits

---

[6] Class Counsel also requests approval of the agreed upon incentive awards for the Class Representatives detailed in the Settlement Agreement.

applicable to each window vintage from 1991 to 2006 based upon the probability of failure for each year from 1 to 15 years. The valuation was arrived at based on two sets of data analyses. The first regression analysis was performed on Pella's R&A data in order to determine a failure rate.[7] The result produced an overall failure rate of 13-14% at 15 years.

The second analysis took the lower of the failure rate number of 13% and applied it to a series of reasonable assumptions in order to reach an overall valuation of over $93,000,000.[8] Class Counsel retained Veris Consulting to assist in the valuation of the settlement. The settlement terms and all supporting data were provided to put together a spreadsheet in order to assess each component of the settlement, calculate the number of windows subject to settlement

---

[7]     Class Counsel notes that Pella has valued the settlement at a different number. *See* Ex. 1 attached, at paragraphs 59-63, 70. The reason for a difference in valuation numbers lies within the data used to calculate a failure rate and perform a regression analysis. In Class Counsel's regression analysis of Pella R&A data, the data suggested that warranty claims for wood rot greatly increased under the PSEP because Pella acknowledged wood rot as a warrantable defect beginning only in 2006, with the initiation of the PSEP and not before. Therefore, in considering the likelihood for window failure, the proper data to regress was the subset of 1999 to 2002 PSEP data rather than the full 20 years of R&A data that Pella had regressed. Having selected the appropriate subset of the data upon which to conduct a regression, a regression was performed to determine the probability of failure for each vintage within the settlement, i.e., from 1991 to 2006, and for each year for fifteen years from the date of manufacture. Additionally multiple regression methods were tested to determine whether the method produced material differences in the outcome. Under the different methods, including Kaplan-Meier, the outcomes ranged between 13.2% and 14%. Finally, Class Counsel, with the assistance of Veris Consulting, prepared a Valuation Spreadsheet, in which various settlement components, and embedded assumptions, can be adjusted so that (a) different assumptions can be applied; (b) the different settlement components can be valued; and (c) the effect of adjustments in variables can be measured on a comparative basis.

[8]     Using a conservative 13% failure rate resulted in an estimated total of 851,712 windows subject to settlement benefits. Class Counsel and experts at Veris Consulting then employed a series of reasonable assumptions to value these 851,712 windows under the settlement taking into account the various monetary payments available depending on which tier of the settlement each window falls into. Class Counsel used the following assumptions in reaching their valuation: A failure rate of 13%, with an assumed sash to full unit ratio of 80% to 20%, a product cost of $500 for a full unit and $100 per sash, and with enhancements in costs of installation and finishing, exclusive of PSEP rates, and then backed out what Pella has already paid in PSEP benefits ($9.6M).

benefits, their age at probable failure, and attribute a settlement value to each component. This analysis employed conservative assumptions, such as Pella's claim to an 80/20 sash to full unit replacement ratio, regression of the PSEP credit memos issued by Pella, and cost figures from Pella for installation and finishing. It is important to note that there is no cap as to the total amount Pella is liable to pay under the settlement; they are obligated to pay for every claim that gets filed.

The Court should award fees based on the available benefit as the notice program was robust and Class members, even after the final approval of the settlement, will continue to have the opportunity to claim their settlement benefit. As the Supreme Court has explained, "[t]o claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit to the fund created by the efforts of class representatives and their counsel." *Boeing v. Van Gemert*, 444 U.S. 472, 479-80 (1980) (emphasis added); s*ee also Williams v. MGM–Pathe Commun. Co.,* 129 F.3d 1026 (9th Cir. 1997) (reversing district court award of 33% of the claimed fund ($3,300) and awarding attorneys' fees of 33 percent of the available fund ($1.5 million); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007) (finding district court abused its discretion by calculating fees based strictly on the actual recovery and expressly rejecting the idea that basing the award on the available benefit would create a windfall for class counsel); *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 364, 380 (N.D. Il. 2010); *McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (relying on *Boeing* in awarding 33 percent of the available fund; a fee award that exceeded the

amount actually claimed and noting that this was justified because "the settlement amount was available to the entire class").

In addition to the total direct window benefits to be provided to the Class by Pella under the terms of the Settlement Agreement as set forth above, the additional amounts paid by Pella for notice and administration[9] and for attorneys' fees, costs and incentive fees[10] should be added to the total class benefit for purposes of calculating attorneys' fees. Here, the total costs of class notice and administration (both amounts actually incurred to date and those reasonable amounts anticipated in the future due to the continuing claims process) are in excess of $1 million. Likewise, Pella has agreed to pay directly the attorneys' fees, costs and incentive fees with a total

---

[9]      *See, e.g., Mangone v. First USA Bank*, 206 F.R.D. 222, 225-228 (S.D. Ill. 2001) ("The Settlement also provides additional benefits. Defendants paid the costs of identifying and notifying the 18.5 million Class Members, administering the Settlement, calculating the benefits of the Settlement, and attorney's fees, all of which, in the event the case was fully litigated and the Class prevailed, would have been deducted from the Class recovery. ….."); *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ("We conclude that where the defendant pays the justifiable cost of notice to the class-but not, as here, an excessive cost-it is reasonable (although certainly not required) to include that cost in a putative common fund benefiting the plaintiffs for all purposes, including the calculation of attorneys' fees."); *Physicians of Winter Haven LLC v. Steris Corp.*, 1:10 CV 264, 2012 WL 406966, at *7 (N.D. Ohio Feb. 6, 2012) ("to the extent that the settlement agreement provides that administrative costs … are instead to be borne by other than the plaintiffs, this, too, represents a benefit to the class and must, therefore, be included in the total common benefit amount used to calculate a percentage of the fund award of attorneys' fees.").

[10]      *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Although under the terms of each settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); *Physicians of Winter Haven*, 2012 WL 406966, at *7 ("[T]he overall settlement amount on which the percentage is to be calculated must include the amount separately set aside for attorneys' fees since 'such an independent agreement for the defendant to pay attorneys' fees is a benefit to the class.'") (citations omitted); *In re Vitamins Antitrust Litig.*, MISC. 99-197(TFH), 2001 WL 34312839, at *9 (D.D.C. July 16, 2001) ("Courts in other jurisdictions have recognized that in constructive common fund cases, where attorneys' fees are borne by defendants and not plaintiffs, that the attorneys' fees nonetheless are a valuable part of the settlement and thus fairly characterized as part of the common fund.").

value of $11 million. These two additional benefits of the settlement, added to the total direct benefits described above, substantially increase the total class benefit.

### 2. The Attorneys' Fees Requested Are Less Than 12% of The Proposed Settlement Value To The Class

Under the percentage of recovery method, Class Counsel's requested attorneys' fee award is less than 12% of the settlement value to the class. Class Counsel are requesting attorneys' fees in the amount of $11,000,000. The attorneys' fees are being paid separate from and in addition to the benefit to the class. Thus, there is no conflict between the Settlement Class and Class Counsel as the relief each member is entitled to will not be reduced by the attorneys' fees awarded.[11] As further set forth below, the amount of attorneys' fees requested by Class Counsel is well within the range of percentage of the fund amounts approved within the Seventh Circuit.

### 3. The Range of Percentage of the Fund Attorneys' Fee Awards in the Seventh Circuit Is Between 30% and 40%

Class Counsel submit that the requested fee of 12% (actually, 11.8%) is more than reasonable in light of the numerous decisions from this District that have awarded attorneys' fees of 30% or more of a common fund. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (Seventh Circuit approved attorneys' fees in the amount of 30% of the $7.5 million settlement obtained for the class based on the quality of legal services rendered, contingent nature of the case, and significant degree of risk of nonpayment. The Court also noted that lead counsel submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30-39% of the settlement fund); *see also Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (38% fee award); *Kitson v. Bank of Edwardsville*, No. 08-507-

---

[11] *See Cook v. Niedert*, 142 F.3d 1004, 1011 (7th Cir. 1998).

GPM, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) (33% fee award).  Recently, in *In re AT&T Mobility Wireless Data Services Sales Tax Litig.*, 792 F. Supp. 2d 1028 (N.D. Ill. 2011), the court summarized historical class action attorneys' fees data in determining the appropriate percentage of the fund fee to award class counsel as part of the settlement in that case.  That opinion has established a guide to analyzing fee awards that has since been adopted by other courts.  *See, e.g., Schulte v. Fifth Third Bank*, 2011 WL 3269340 (N.D. Ill. July 29, 2011).  Class Counsel's fee request, whether calculated as a percentage of the value of the case or by the lodestar method, falls well within the guidelines analyzed in *In re AT&T*.[12]  Further, when compared to other home product class action settlements, Class Counsels' fee demand is well within the norm.

If the Court were to attempt to recreate the market price for Class Counsel's services, there is no doubt that 12% would be eminently reasonable.  The general practice is that consumer class action cases are taken on a contingent fee basis.  It is also common that the contingent fee is often between 30% and 40%, with 33% (one-third) being the norm.

Thus, Class Counsel' request for attorneys' fees in the amount of 12% of the value to the Settlement Class is well within the range of other similar cases within this District and, indeed, is below the market price for contingent fee consumer class action cases.

## II.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES COMPARES FAVORABLY WITH OTHER HOME PRODUCT SETTLEMENTS.

To further determine that Class Counsel's request for attorneys' fees is fair and reasonable, and to cross check the fee guides in this District, a natural point of comparison is

---

[12]    While the settlement may not be considered a true common fund, it is a claims-made settlement, that fact does not prohibit awarding attorneys' fees on a percentage basis.  *See, e.g.*, *In re AT&T*, (where the court awarded 20% of the cash recovered in a case where the settlement involved obtaining refunds from governmental entities for internet taxes improperly collected by AT&T).

class counsel fee awards in other window and "home products" cases.  *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) ("attorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court.").

*Cartwright v. Viking Indust., Inc.*, No. 07-cv-2159 (E.D. Cal. May 5, 2010) is a defective window class settlement, where Pella was an interested party in that case (Pella bought Viking in 1998).  In that case,[13] plaintiffs alleged that the Viking Series 3000 Aluminum Windows suffered from leaks at the corners when the sealant failed.  The class consisted of windows produced and distributed from 1989-1999 and involved 1,114,186 windows representing 80,000 to 100,000 structures.  Viking agreed to a claims-made settlement with a cap of $500.00 per structure and individual benefits per window of $50 for superficial damage, $100 for deterioration damage, $150 for extended damage, and $100 for each window replaced.  Viking also agreed to pay plaintiffs' attorneys' fees of approximately $4.1 million.

In comparison, the benefits to the class achieved here (a $750 cap, or a $6,000 cap in Arbitration) are much greater than that achieved in the *Viking* case (a $500 cap).  Moreover, the *Viking* case only involved a single state (California only) class thereby curtailing potential conflicts of law and manageability concerns in the class certification analysis that Class Counsel encountered in this case.  Here, this Court certified a six-state (b)(3) class and a nationwide (b)(2) class.[14]  Furthermore, *Viking* involved windows sold with a sticker on each window stating

---

[13]    *Viking* was the result of two cases, a California state case, and a case brought in the district court of California, that were combined for purposes of settlement.

[14]    Other courts have taken notice of the results counsel achieved in *Pella*.  *See Marshall v. H & R Block Tax Services Inc.*, 270 F.R.D. 400, 407 (S.D. Ill. 2010) ("The Court notes that the only multi-state consumer class certified by a district court and thereafter affirmed by the Seventh Circuit since the appellate court's decisions in the line of cases detailed above [citing *In*

that the windows were under a lifetime warranty.  Because the Viking windows arguably were covered under a lifetime warranty, the class merely obtained the originally promised warranty benefits.  In this case, the settlement exceeds the original warranty benefits both in terms of the monetary benefits provided and the scope of the warranty.  The additional benefits include: costs of installation and finishing, an acknowledgement of warrantable defect, benefits extending up to 15 years, monetary awards for past claims, notice of the defect, and expedited arbitration with monetary benefits up to $6,000.  These are all benefits to the Class that would not otherwise have been available without the successful prosecution of the claims against Pella.  *See, e.g., Ellis v. Flying Tiger Corp.*, 504 F.2d 1004, 1006 (7th Cir. 1972) (stating that an appropriate award of attorneys' fees should be determined on the basis of several elements, including the skill and reputation of counsel, the time expended by attorneys in preparing the case, the novelty and difficulty of the legal issues presented, and the benefits conferred upon the class).

*Galanti v. The Goodyear Tire & Rubber Co.*, No. 03-209 (D.N.J. Nov. 17, 2004) is another "home products" class settlement.  In that case, the class consisted of owners of property in which the allegedly defective Entran II hoses (which were not flexible thereby causing leaks/cracks necessitating removal/replacement) was used as a conduit for hydronic heating and/or snow-melting.  In that case, plaintiffs' counsel was granted 30% of the settlement fund (comprised of payments over four years totaling approximately $300 million) as attorneys' fees

---

re Bridgestone/Firestone, Szabo v. Bridgeport Machines, Inc.*, *In re Rhone–Poulenc Rorer Inc.*, and *Thorogood v. Sears, Roebuck and Co.*] is *Saltzman v. Pella Corp.,* 257 F.R.D. 471 (N.D. Ill. 2009), *aff'd,* 606 F.3d 391, 2010 WL 1994653 (7th Cir. May 20, 2010)").  Besides being cited by the Southern and Northern District of Illinois, the Pella Class Certification opinion has been cited by the 7th Circuit and other district courts in the 7th Circuit (*e.g.*, Eastern District of Wisconsin and Northern District of Indiana).  In fact, courts outside of the 7th Circuit have cited the Pella opinion favorably, including the 8th Circuit in *In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 617 (2011), the Southern District of New York in *Cruz v. Hook-Superx, LLC*, 09 CIV. 7717, 2010 WL 3069558 (Aug. 5, 2010), and the Western District of Louisiana in *Woodard v. Andrus*, 272 F.R.D. 185, 199 (2010).

to be taken out of settlement fund. In other words, plaintiffs' counsel received approximately $90 million in fees out of a net benefit to the class of around $210 million (or 42.85% of the net value to the class). Here, the attorneys' fees are to be paid outside of the benefit, and in *addition* to the Class, and are well below 42% of the value of the Class benefit. In short, comparing Class Counsel's request for attorneys' fees to other similar home product cases demonstrates the reasonableness of what counsel is requesting.

Beyond the justifications noted above, there are at least three other powerful considerations establishing that the requested attorneys' fees are fair:

1) *There is no ultimate cap on the settlement.* Here, 100% of the valid claims that are filed will be paid by Pella upon final approval of the settlement. In short, each Settlement Class member who participates in the settlement will get the full value of their claim, regardless of how many claims are filed.

2) The attorneys' fees in this matter were not negotiated until *after* the settlement Class's compensation was agreed upon. The Settlement Agreement was the result of protracted and spirited arms-length negotiations. Only when the benefits to the Settlement Class were established did the parties discuss attorneys' fees.

3) *This is an agreed fee, negotiated between Pella and Class Counsel, to be paid by Pella.* It is common for parties to a class action settlement to agree that a defendant will pay attorneys' fees to plaintiffs' counsel. Such an arrangement poses no particular problem for court approval, so long as the amount of the fee is reasonable under the circumstances. Rule 23(h) of the Federal Rules of Civil Procedure incorporates this principle and provides: "In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs

21

authorized by law or by agreement of the parties." Fed. R. Civ. P. 23(h) (emphasis added); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Furthermore, the entire amount of attorneys' fees, costs of notice, administration, litigation expenses, and other costs will be *paid separately* from the Settlement Fund. Thus, Pella, not the Settlement Class, will be providing the funds for Class Counsel' attorneys' fees. The attorneys' fees do not diminish the value of the settlement to the Settlement Class. Thus, Class Counsel are not profiting at the expense of the Settlement Class.

### III. CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLY INCURRED LITIGATION EXPENSES.

Courts regularly award reimbursement of those expenses that are reasonable and were necessarily incurred. *See Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993). In the prosecution of this Class Action, Class Counsel have advanced litigation costs and expenses in the amount of $419,859.66. These costs and expenses are supported in the affidavits provided by each petitioning firm, and Class Counsel respectfully submit that the costs and expenses were reasonable and necessary to obtain the Settlement Agreement. Class Counsel anticipate additional costs and expenses will be incurred up to the time of final approval and after, and these expenses are included in the $11,000,000 fee request. Again, the costs and expenses awarded to Class Counsel will be paid by Pella and not to the detriment of the Settlement Class.

## CONCLUSION

For all the reasons stated herein, Class Counsel respectfully request that the Court approve the amount of $11,000,000 as attorneys' fees, costs, and expenses and class incentive payments.

Dated:  January 9, 2013                    Respectfully submitted,


     /s/ Richard J. Burke

Richard J. Burke
**COMPLEX LITIGATION GROUP LLC**
1010 Market Street
Suite 1340
St. Louis, MO  63101
(847) 433-4500
rich@complexlitgroup.com

Paul M. Weiss
Julie D. Miller
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, Illinois  60035
(847) 433-4500
paul@complexlitgroup.com
julie@complexlitgroup.com

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market St.
Suite 1380
Philadelphia, PA  19102
(215) 564-2300
jshub@seegerweiss.com

Steven R. Jaffe
Mark Fistos
**FARMER JAFFE, WEISSING, EDWARDS,**
**FISTOS & LEHRMAN, P.L.**
425 North Andrews Ave., Suite 2
Ft. Lauderdale, FL 33301
(954) 524-2820
SJaffe@pathtojustice.com

Ben Schwartzman
**BANDUCCI WOODARD SCHWARTZMAN PLLC**
802 W. Bannock Street, Suite 500
Boise, Idaho 83702
(208) 342-4411
**BScwartzman@BWSlawgroup.com**

**Class Counsel for Plaintiffs and**
**Certified Plaintiff Classes**