2 Walnut Grove
Colts Neck, New Jersey 07722

**FILED**

FEB 0 8 2013

JUDGE JAMES B. ZAGEL
UNITED STATES DISTRICT COURT

**RECEIVED**

FEB 0 8 2013

JUDGE JAMES B. ZAGEL
UNITED STATES DISTRICT COURT

January 29, 2013

*Sent via Regular Mail*
Judge James B. Zagel
Chambers 2588
United States District Court for the Northern District of Illinois, Eastern Division
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

    Re.:    *Saltzman et al. v. Pella Corporation et al.*, Case No. 06-cv-4481
           <u>Objection to Proposed Class Settlement and Opt-Out.</u>

Honorable Judge Zagel:

    As captioned above, this letter is regarding the case *Saltzman et al. v. Pella Corporation et al.*, Case No. 06-cv-4481 which is currently pending before your Court. I write this on behalf of my parents who are owners of a home in New Jersey that was constructed in 1995 with windows produced by Pella Corporation ("Pella"). The total price of these windows in 1995 dollars was more than $50,000, not counting costs of installation. Nearly all seem to be of the Pella ProLine® brand.

    Unfortunately, it has recently come to my attention that several windows in this home are, in fact, experiencing significant water damage. The symptoms are consistent with the allegations of Plaintiffs in this case well below their expected lifetime. Several more are showing signs of a worsening condition and deterioration. A recent estimate to repair **a single multi-frame window in one room** and the surrounding structure was approximated at **$5,000 – $7,000** (for cost of windows, labor, materials, etc.) This seems to be an ongoing condition, with more windows showing symptoms of wood rot as time goes on.

    Plaintiffs and Defendants are presently putting forth a proposed Class Action Settlement Agreement (Dkt. 277-1) ("Proposed Settlement Agreement") which purports to redress this wrong. It offers a choice of either a maximum recovery of "**$750 per Structure**" (i.e., for an entire home) under a "Claims Process" (Proposed Settlement at *29) or, after a lengthy arbitration process a maximum of **$6,000 for an entire home**. Proposed Settlement Agreement at *29. The fine print indicates these damages are "*limited to a maximum . . . regardless of how many Pella ProLine Casement Windows exist in each structure or how many windows or surrounding areas suffered damage.*" Proposed Settlement Agreement at *33. Considering the damages caused by repairing **three** such windows can amount to over $20,000, awarding $750 or even $6,000 results in substantial loss to a class member. Repairing an entire house of such windows amounts to an even greater loss.

Under the "Claims Process" awards of damages are subject to further substantial discounts based upon a contrived "notice" requirement to Pella. The discount amounts vary, but all equal cents on the dollar of actual damages. Proposed Settlement Agreement at *34-36. In any event, Pella has clearly had "notice" of the defects in the ProLine® brand of products through thousands of customers experiencing this type of damage: it should not fall on individuals to "notify" Pella of loss.

This conflicts with the reality of the situation, where an individual might not know of the gravity of finding a single window rotting based upon experience with only his or her home (and, perhaps, less than adequate legal knowledge). The huge conglomerate, one the other hand, clearly obtains notice from even a dozen people having such a problem. The "notice" requirement is simply a means to limit damages to Pella, and thereby negotiate a quick settlement for Plaintiffs' counsel benefit.

The Proposed Settlement Agreement offers, in the alternative, an "Arbitration Process" by which a class member has to prove, in a legal setting, damages and causation before an award of any damages. Proposed Settlement Agreement at *45-52. While the maximum amount awarded ($6,000) seems reasonable at first glance, when considering the **damages resulting from deterioration from only one window is $5,000 – $7,000** this amount seems insignificant. Should a class member be satisfied by only a fraction of damages actually suffered?

This "Arbitration Process" also places a substantial burden on class members to prove damages in a legal setting (a potentially time consuming and costly endeavor) while simultaneously placing an artificial cap on the damages he or she can claim. While an Arbitration Process might be a valuable way to handle thousands of such claims, it should be limited only by **actual damages.**

Another significant issue is that the Proposed Settlement Agreement proposes now to settle damages which have yet to occur. This is a violation of the "ripeness doctrine" which indicates that only damages that have presently manifested themselves can be recovered. In my own parents' example, only a few windows are experiencing full-fledged damages, but rotting is appearing in a number of other windows at early stages. A number of "class members" might not have experienced full symptoms of wood rot and structural damage yet, while the Proposed Settlement Agreement **will extinguish all right to damages before they occur and can be calculated.** The Proposed Settlement Agreement at *53 alleges to address this, but artificially low maximum awards seem to apply.

It becomes apparent that the Proposed Settlement Agreement benefits two parties above all else: Pella and Plaintiffs' Counsel. Little consideration is given to the rights of class members who have suffered damages to their households, while the Proposed Settlement Agreement serves to extinguish an individual's right to his or her day in Court.

I elect to opt-out of the Proposed Settlement Agreement. I should like the opportunity to decide whether or not to "opt-in" of any future proposed settlement.

Sincerely,

*[signature]*

Anthony R. Curro

cc: James A O'Neal
Richard J. Burke
Class Administrator

04481 Document #: 350 Filed: 02/08/13 Page 4 of 4



Anthony R. Curro
2 Walnut Grove
Colts Neck, NJ 07722

RECEIVED
FEB 4 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

29 JAN 2013 PM 6 L

Judge James B. Zagel
Chambers 2588
U.S. Dist. Ct. for the N.D. of Illinois, Eastern Div.
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

60604180099