IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. LEONARD E. SALTZMAN, TIM BASTIAANSE, JOSEPH PALMIOTTO, BRAD ZURN, and JUDITH MCCLOSKY individually and on behalf of all others similarly situated;<br><br>                    Plaintiff,<br><br>  v.<br><br>PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation,<br><br>                    Defendants. | No.: 06 C 4481<br><br>Honorable James B. Zagel |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR APPEAL BOND**

Despite an unusually prolonged period of briefing on preliminary and final approval of this class action Settlement and the full and fair airing that all views received from this Court, Professional Objectors and the Lang Objectors have filed notices of appeal of this Court's decision to grant the Final Approval of this Settlement. The mere act of filing these notices of appeal stops the implementation of this very worthy settlement in its tracks, and the costs of delay should not be imposed upon the class as a whole without a bond from which to remediate those costs.

The delay occasioned by this misplaced appeal has implications all across the class certified by this Court and is likely to sow confusion among the class, who, having received notice, has been told to have certain expectations which now will be in many cases upended at least in terms of timing. The harm to the Class during the potential two year delay occasioned by

1

these improvident appeals is difficult to quantify but is not insignificant. For example, members of the class who have already paid for replacing/repairing their windows are going to have to wait even longer as a consequence of the appeals to get money back. In addition, members of the class who receive replacement windows under the settlement also may qualify under the settlement for a cash payment of up to $100 per structure for damage to the structure, and that payment will be delayed as well.

In addition to these direct harms to the Class from an appeal, Class Counsel will suffer harms that are secureable by a bond in the form of the direct costs of the appeal (printing copying, transcripts, etc.), the cost of supplemental notice Class Counsel will ask this Court to approve, the increased cost of administration of the settlement caused by a delay, and the lost interest (time value of money) that Class Counsel will incur as a result of the delay in the payment of their fees and expenses. Such a bond to Federal Rule of Appellate Procedure Rule 7, is necessary not only to protect the class but also to deter objectors, all of whom are either professional objectors or, in the case of Mr. Lang, a person with an axe to grind (who, while objecting to the settlement, is suing class counsel seeking a referral fee from the Settlement's approval while he has also inexplicably thus fair failed to act to secure his client's incentive fees). Accordingly, Plaintiffs and Class Counsel ask for this Court to impose an appeal bond of $1,202,763 to be paid jointly and severally by the appellants to cover the potential costs of this appeal.

## ARGUMENT

**I.   THERE ARE SIGNIFICANT COSTS TO BE BONDED AGAINST AS A RESULT OF THE FILING OF THE NOTICE OF APPEAL.**

   **A. THE CLASS WILL BE HARMED DURINGTHE PENDENCY OF AN APPEAL OF FINAL APPROVAL.**

None of the cash claims of up to $750 per structure will be paid until the appeal is final, and none of the arbitrations for up to $6000 per structure will even begin until the settlement is final. In addition, the potential cash benefit of up to $100 per structure afforded to class members who have current damage and receive replacement windows from Pella will not be paid until an appeal is final. There is no reliable way to estimate the impact of the delay given that the claims period remains open for another six weeks for the 23(b)(3) class and it is very difficult to estimate how many people are likely to seek the settlement's warranty benefits in the next year. However, precision is not necessary in estimating the future impact of delay given the number of unknowns, and Plaintiffs respectfully submit that a bond of $100,000 is a reasonable number to ensure the Class will have protection from the consequences of the delay caused by this appeal.

### B. CLASS COUNSEL AND PELLA WILL INCUR SIGNIFICANT ADDITIONAL EXPENSES AS A RESULT OF THE APPEAL.

In addition to the damage done to the Class during the pendency of this unnecessary appeal, Class Counsel and/or Pella will have to incur additional expenses because of the appeal. Class Counsel will have to engage in briefing this frivolous appeal, which will be a lodestar expense easily into the tens of thousands (Class Counsel are not asking for a bond to cover this additional lodestar expense), but there are meaningful hard costs which will be inflicted by the appeal.

#### 1. Supplemental Notice Should be Sent to the Class Informing the Class of the Pendency of the Appeal and the Delay in the Implementation of the Settlement Benefits.

The fact of appeal here creates an extremely complicated issue of communicating with the Class about the timing of the benefits under the Settlement. Class Counsel already has fielded hundreds of calls (as has the settlement administrator) from class members inquiring

about claims procedures and timing. This settlement is different from a simple consumer product settlement where, once the consumer has filed their claim, they do not have to do anything more. A check is sent whenever the appeal is resolved. Here, by contrast, the claims deadline is well into the future and the class has to make decisions about which claim option to pursue, whether they should wait to replace until the appeal is over, etc. It would be irresponsible not to inform the class of the appeal and advise them of the likely length of the appeal and what their options are while the appeal remains pending. Class Counsel have obtained an estimate from the notice vendor for such an additional notice, which is predicated on the assumption of a simple two page letter sent to all class members for whom an email or postal address is available. That estimate, as set forth in the affidavit of Carlos Rasch, is estimated to likely cost $135,945. (See Exhibit A attached hereto) Plaintiffs therefore request a bond in the amount of $135,945 to cover this expense. Such a cost of supplemental notice is a cost properly bonded against. In *In re Uponor, Inc.* – yet another case to which Mr. Palmer objected – Class Counsel requested and received a substantial bond "to cover the costs of any additional class notice that may be required due to the delay caused by the appeal." *In re Uponor, Inc.,* 2012 WL 3984542, at *2 (D.Minn. Sept.11, 2012). U.S. District Court Judge Ann D. Montgomery held that "[a] bond in the amount of $125,000 in this case is sufficient to ensure that appellees' rights are protected. This amount reflects that the appeal will result in a significant delay of the claims process and ultimate payment to class members… The Court finds that additional class notice may be required due to the delay occasioned by the appeal, and that a bond of $125,000 is sufficient to protect the appellees." *Id.* at *16-17 (citations omitted). *See also Heekin v. Anthem*, 2013 WL 752637 at *1 (S.D. Ind. Feb. 27, 2013) (approving cost of supplemental notice as part

of bond but finding such notice need not be as expensive as the initial class notice, a dictate which Plaintiffs have followed in obtaining the attached estimate).

### 2. Cost of Administering the Settlement Will Increase as a Result of the Appeal.

As set forth in the declaration of Mr. Rasch, the delay occasioned by the settlement will increase settlement administration costs by approximately $4800 a month. Assuming an appeal will take two years to come to full resolution, this means that the cost of settlement administration will increase by $115,200, and Plaintiffs therefore ask for a bond to be set that includes this amount. These are costs properly included in a Rule 7 appeal bond as they are part of "the costs attendant to the delay associated with an appeal." *See, e.g., Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012) ("the Court finds good cause to impose an appeal bond in the amount of $60,000, which represents solely the appellate costs and administrative costs requested by Plaintiff"); *In re Am. Inves. Life Ins. Co.*, 695 F. Supp. 2d at 166-67; *In re Wal-Mart*, 2010 WL 786513, at *1-*2 (each of four objectors appealing from final approval of class action settlement required to post $500,000 bond in light of administrative costs and interest the class would lose as a result of the delay in compensation and injunctive relief due under the settlement agreement); *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (appealing objector required to post $61,000 bond for administrative costs that class will suffer as a result of delay in distribution from class action settlement).

### 3. Class Counsel Will Suffer From Lost Interest on the Fee From This Litigation.

As this Court is aware, Class Counsel undertook this litigation on a contingency basis, and Class Counsel has expended hundreds of thousands of dollars in hard expenses for which it will

have to wait even further to be compensated, as well as the over $8 million in lodestar Class Counsel has expended which will have to wait even longer to be paid. Using the WSJ Prime rate of 3.25% compounded annually for two years, interest on the $11 million approved by this Court is estimated to be $ 726,618.75 on the fees and expenses. Part of such an appropriate bond undoubtedly includes interest that could be earned on the class benefit and fee award during the pendency of the appeal. *See In re Wal-Mart Wage and Hour Empl. Practices Litig*., 2010 WL 786513 (each of four objectors appealing from final approval of class action settlement required to post $500,000 bond in light of administrative costs and interest the class would lose as a result of the delay in compensation and injunctive relief due under the settlement agreement); *Allapattah Servs., Inc. v. Exxon Corp.,* 2006 WL 1132371 at *18 (S.D. Fla. Apr. 7, 2006) (objector to $1 billion class action settlement required to post bond in the amount of $13.5 million in the event of appeal on behalf of the entire class to cover damages, costs, and interest as a result of the delay); *Barnes v. FleetBoston*, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) (appealing objector required to post bond in the amount of $645,111.60 to cover costs and interest for anticipated one-year delay in distribution of $12.5 million settlement to class).

    **4. Class Counsel Are Entitled to a Bond for the Costs of Printing and Copying and Preparation of Any Supplemental Record.**

FRAP 7 explicitly provides for costs for printing, copying and preparation of the record. A bond for such expenses is routine and need not be requested with specificity given the number of unknowns that counsel face when asking for such a bond. *See In re. Ins. Brokerage Antitrust Lit.*, 2007 WL 1963063 at *2-3 (D.N.J. July 2, 2007) ("Iaad O, however, contends that $25,000 is an exorbitant bond, and that it is impossible that the costs associated with this appeal will reach that amount. Iaad O claims that the copying, transcript and filing costs are minimal, and

would not exceed $1,000 (based on a calculation of volume rates for copying and rates for binding). Further, Iaad O contends that to justify the $25,000 bond, Plaintiffs should submit affidavits stating the copying service they intend to use, the transcripts they will require and whether the transcripts have been prepared, and other costs they anticipate incurring in defending this appeal. Iaad O does not offer any case law in support of its argument that Plaintiffs be required to make some sort of delineated showing of costs for a bond motion. Plaintiffs contend that it is not possible to anticipate all of the potential costs of a multi-party appeal, and so $25,000 is a reasonable amount. In addition to the printing and administrative costs associated with an appeal, as discussed in Rules 7 and 39, it is possible that the Plaintiffs will face different issues from different appellants, which may increase the expenses. Accordingly, this Court concludes that a $25,000 bond is reasonable, and Iaad O and the objectors appealing the Zurich Settlement will be jointly and severally responsible for posting the bond.") (citations omitted). As in *Insurance Brokerage*, a decision rendered under cost assumptions in existence seven years ago, Plaintiffs and Class Counsel here seek a bond of $25,000 to cover the expense of appeal.

> **5. An Appeal Bond to Cover the Lodestar of Class Counsel's Attorneys' Fees on Appeal is Appropriate Under FRAP 7 Because the Illinois Consumer Fraud Act and other State Consumer Fraud Acts Permit the Recovery of Attorneys' Fees.**

Class Counsel estimate conservatively that responding to the briefs of four appellants and preparing for and arguing the appeal will involve the expenditure of well over $100,000 in attorney lodestar. Accordingly, Class Counsel seek a bond that includes $100,000 for attorneys' fees.

A bond to cover attorneys' fees is permissible under FRAP 7 so long as the underlying substantive cause of action involves a statute with fee shifting provisions. While the Seventh Circuit has not weighed in on whether attorneys' fees are proper subject for a Rule 7 bond, Judge

7

Walton Pratt noted that there is a "Circuit split [that] deals more specifically with whether attorneys' fees can be secured by an appeal bond, which Plaintiffs do not request in this case. The majority view is espoused by the Ninth Circuit in *Azizian v. Federated Dep't Stores, Inc.,* 499 F.3d 950, 953 (9th Cir.2007)." *Heekin,* 2013 WL 752637 at *1 n.1. This "majority rule" is explained thusly by the *Azizian* Court:

> We agree with the Second, Sixth, and Eleventh Circuits and hold that the term "costs on appeal" in Rule 7 includes all expenses defined as "costs" by an applicable fee-shifting statute, including attorney's fees. We do so for a number of reasons. First, Rule 7 does not define "costs on appeal." At the time of its adoption in 1968, however, a number of federal statutes—including the Clayton Act—had departed from the American rule by defining "costs" to include attorney's fees. *Marek,* 473 U.S. at 8–9, 105 S.Ct. 3012. Courts had long awarded appellate attorney's fees to prevailing parties under these statutes. *See, e.g., Am. Can Co. v. Ladoga Canning Co.,* 44 F.2d 763, 772 (7th Cir.1930) (Clayton Act Section 4); *Louisville & N.R. Co. v. Dickerson,* 191 F. 705, 712 (6th Cir.1911) (Interstate Commerce Act § 16). Because "[a]gainst this background of varying definitions of 'costs,' [Rule 7's] drafters ... did not define the term," we conclude that they likely "intended [it] to refer to all costs properly awardable" at the conclusion of the appeal, including attorney's fees authorized by relevant statutory authority. *Marek,* 473 U.S. at 8–9, 105 S.Ct. 3012.
>
> Second, Rule 39 does not contain any "expression[ ] to the contrary." *See id.* at 9, 105 S.Ct. 3012. There is no indication that the rule's drafters intended Rule 39 to define costs for purposes of Rule 7 or for any other appellate rule. The 1967 Rules Advisory Committee note to Rule 39(e) states that "[t]he costs described in this subdivision are costs of the appeal and, as such, are within the undertaking of the appeal bond." Fed. R.App. P. 39(e) advisory committee's note (1967 adoption). We read this language to mean that the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal. Further, Rule 38 provides that the court of appeals may award "damages and ... costs," which include, according to that rule's advisory committee note, "damages, attorney's fees and other expenses incurred by an appellee." Fed. R.App. P. 38; *id.* advisory committee's note (1967 adoption). The discrepancy between the use of the term "costs" in Rule 39 and its use in Rule 38 strongly suggests that the rules' drafters did not intend for Rule 39 to create a uniform definition of "costs," exclusive of attorney's fees. *See Singer v. Shannon & Luchs Co.,* 868 F.2d 1306, 1307 (D.C.Cir.1989) (per curiam) ("Other circuit courts [including the Ninth Circuit] have held that while the term 'costs' in Rule 39 excludes attorneys' fees, the reference in *959 Rule 38 to 'just damages and single or double costs' comprises them.").
>
> Third, while some commentators have criticized *Adsani* and *Pedraza* for "attach[ing] significant consequences to minor and quite possibly unintentional

8

> differences in the wording of fee-shifting statutes," 16A Wright, Miller & Cooper, *supra,* § 3953, *Marek* counsels that we must take fee-shifting statutes at their word. 473 U.S. at 9, 105 S.Ct. 3012. This approach is consistent with the "ancient and sound rule of construction that each word in a statute should, if possible, be given effect." *Crandon v. United States,* 494 U.S. 152, 171, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) (Scalia, J., concurring in the judgment).
>
> Fourth, allowing district courts to include appellate attorney's fees in estimating and ordering security for statutorily authorized costs under Rule 7 comports with their role in taxing the full range of costs of appeal. In practice, district courts are usually responsible at the conclusion of an appeal for taxing all appellate costs, including attorney's fees, available to the prevailing party under a relevant fee-shifting statute. *See Perkins v. Standard Oil Co. of Cal.,* 399 U.S. 222, 223, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970) ("The amount of the award for [appellate] services should, as a general rule, be fixed in the first instance by the District Court, after hearing evidence as to the extent and nature of the services rendered.").

*Azizian v. Federated Dep't Stores, Inc.,* 499 F.3d at 953. Plaintiffs and Class Counsel respectfully submit that this Court should follow this majority rule based on the logic and reasoning of the *Azizian* court and include attorneys' fees on appeal as a cost in the Rule 7 bond here because the Illinois Consumer Fraud Act, and several other consumer fraud acts for that matter, provide for fee shifting. *See* 815 ILCS 505/10(a)(c) ("the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."), 32 Fl. St. Ann. 501.2105(1) ("In any civil litigation resulting from an act or practice involving a violation of this part … the prevailing party after judgment in the trial court and exhaustion of appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party."); N.Y.G.B.L. 349(h)("The court may award reasonable attorney's fees to a prevailing plaintiff.").

**II.     AN APPEAL BOND OF $1,202,763 IS APPROPRIATE UNDER THE FACTS AND THE LAW.**

A substantial appeal bond here is necessary under the facts and permissible under the law. The Federal Rules of Appellate Procedure empower district courts to "require an

9

appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The Court therefore retains jurisdiction "during the pendency of an appeal" to order appeal bonds. *See In re Advanced Elecs., Inc.*, 283 F. App'x 959, 963 (3rd Cir. 2008) (quoting *Venen v. Sweet*, 758 F.2d 117, 120-21 (3rd Cir. 1985)). "The nature and amount of the bond is a matter left to the sound discretion of the district court." *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987). At a minimum, the appeal bond should be sufficient to cover and secure the costs of the appeal. *See In re Wal-Mart Wage & Hour Employment Practices Litig.*, 2010 WL 786513, at *2. The Supreme Court defines "costs" to "refer to all costs properly awardable under the relevant substantive statute or other authority." *Marek v. Chesny*, 473 U.S. 1, 9 (1985).

There has been an increasing recognition of the great harm a single objector can inflict on the absent class in a class action lawsuit, and the role that such bonds can play in ensuring that the appeal process not be misused. Earlier this year, Judge Pratt Walton imposed a bond of $550,000 on each of two objectors to a class action lawsuit and engaged in a thorough analysis of the law governing such a bond request related to the appeal of a class action lawsuit. As Judge Pratt noted, "'[a]ppeal bonds are often required on appeals of class action settlements or attorneys' fee awards because the appeal effectively stays the entry of final judgment, the claims, process, and payment to all class members.' In class action cases, therefore, bonds are used to cover excess administrative costs that otherwise would not have been incurred." *Heekin v. Anthem*, 2013 WL 752637 at *1 (S.D. Ind. Feb. 27, 2013) (quoting *In re Uponor, Inc.,* 2012 WL 3984542, at *2 (D.Minn. Sept.11, 2012)). *See also In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 47659, at *40 (in the class action context "an appeal bond is 'necessary to provide some level of security to Lead Plaintiffs who have no assurances that Appellants have

the ability to pay the costs and fees associated with opposing their appeals.'") (citations omitted); *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) ("[T]he class is likely to be damaged if the appeal is rejected and there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions."); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 814 (6th Cir. 2004)); ("Federal courts have required an appeal bond from appellants. . . as a condition of maintaining objector appeals of class action settlements or attorneys' fee awards."); *Allapattah Servs., Inc.*, 2006 WL 1132371, at *18 (imposing appeal bond on class member appealing settlement on behalf of entire class when impact of appeal would be "highly detrimental" as it would stay "both the entry of final judgment on all claims . . . and payment to all Class members."). In particular, it has been noted that "an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond ... prior to filing the appeal." *Pedraza v. United Guaranty Corp.,* 313 F.3d 1323, 1333 (11th Cir. 2002). The same result should apply here.

In evaluating a bond request in an appeal of settlement final approval in a class action, Judge Pratt Walton noted as follows:

> While the Seventh Circuit has not enumerated a test for when an appeal bond is appropriate, courts generally consider the following factors in determining whether an appeal bond is appropriate: (1) the appellant's financial ability to post a bond, (2) the risk of nonpayment of appellee's costs if the appeal is unsuccessful, (3) the merits of the appeal, and (4) bad faith or vexatious conduct on the part of the appellants. *In re Uponor,* 2012 WL 3984542, at *2. As an initial matter, the trial Court recognizes that it is its place to determine whether an appeal is frivolous. However, the merits of an appeal may be relevant to the risk of nonpayment, "in that if the appellant is pursuing a clearly frivolous appeal one might infer that the appellant is abusing the judicial process and thus has no intention of paying any costs taxed on appeal."

*Id.* at *2 (quoting *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,* 2010 WL 4630846, at *1 (E.D.Wis. Nov.2, 2010)). *See also In re Nutella Mktg. & Sales Practices,*

11

No. 11-1086, 2012 U.S. Dist. LEXIS 172006, at *5-8 (D.N.J. Nov. 20, 2012) (assessing a $22,500 bond on appealing objectors after observing "the unresponsiveness of the Objectors' briefs in the present motion, coupled with the fact that the Objectors appear to be objectors who repeatedly raise objections in class actions around the country, further suggest that their appeal in this case is meritless."); *Allapattah Servs., Inc. v. Exxon Corp.,* 2006 WL 1132371 at *18 (S.D. Fla. Apr. 7, 2006) (objector to $1 billion class action settlement required to post bond in of $13.5 million in event of appeal on behalf of entire class to cover damages, costs, and interest as result of delay); *Barnes v. FleetBoston*, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) (appealing objector required to post bond of $645,111.60 to cover costs and interest for anticipated one-year delay in distribution of $12.5 million settlement to class); *In re Broadcom Corp. Sec. Litig.*, Case No. SACV 01-275 DR (MLGx), 2005 U.S. Dist. LEXIS 45656, at *9-11 (C.D. Cal. Dec. 9, 2005) (ordering objector to post appeal bond of over $1.2 million in response to appeal of final order approving class action settlement); *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 352 (E.D.N.Y. 2010) ("If the issue was of moment, the court would consider requiring an appealing objector to post an appropriate bond to protect the value of the settlement to the class members.").

The objectors have all read the settlement, and they know that by simply filing an appeal, the settlement, by its terms, as is the case with all class action settlements, is stayed from going into effect. For this reason, courts have imposed appeal bonds for costs of delay under FRAP Rule 8. See *In re. Checking Account Overdraft Litigation,* 2012 WL 456691 at *2 (S.D. Fla. Feb. 14, 2012) (imposing $621,338 bond and stating that "Objector–Appellants insist that they cannot be required to post a *supersedeas* bond under FRAP 8 because they have not sought a stay. However, because the filing of this appeal prevents distribution of the Settlement proceeds

as ordered by this Court's Final Judgment, it is an actual stay of Judgment and bond is appropriate."). The Court in *In Re Checking Account* acknowledged that costs to be included in an appeal bond are not limited to costs under Rule 39(e) but also may include at least a partial preservation of the status quo on behalf of the Class, relying in part on *In re Broadcom Securities Litig.*, SACV 01–275 (C.D.Cal. Dec. 5, 2005) (requiring bond including costs of delay equaling $517,700).

### A. NONE OF THE PUTATIVE APPELLANTS HAS DEMONSTRATED A FINANCIAL INABILITY TO POST THE BOND THAT CLASS COUNSEL SEEK HERE.

A bond is typically secured by paying 10% of the face value. Thus, if each Appellant here were required to post a $500,000 bond, it would cost $50,000 for the bond to be paid for. None of the putative appellants has demonstrated they lack the financial ability to post such a bond, and the burden is on the putative appellants to make such a showing. *See Heekin*, 2013 WL 752637 at *2 ("In this case, the Court finds that a bond is appropriate. First, neither Mr. DeJulius nor Mr. Paul has submitted to the Court that they are unable to financially sustain a bond."). *See also In re Pharmaceutical Industry Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (imposing a bond where "[t]here is no evidence that a bond would pose an undue hardship on the objector").

### B. THERE IS A SUBSTANTIAL RISK OF NON PAYMENT IF THE APPEAL IS UNSUCCESSFUL.

If a sizable bond is not required, the putative appellants would be liable for the full amount of the costs, and not just the 10% bond premium. Given that the expenses and losses to be bonded against here exceed a million dollars, there is no evidence that any of the Appellants in whose names the appeal is being brought have the financial ability to make such a payment. Further, none of the Appellants resides in the Seventh Circuit and Class Counsel would have to

file suit around the country to try to collect on any appeal cost related judgment. Such circumstances further weigh in favor of a Rule 7 appeal bond. *See In re Initial Pub. Offering Sec. Litig.,* 2010 WL 2884794, at *1-5 (S.D.N.Y. July 20, 2010) ("the Objectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them. In the event the Objectors are unsuccessful on appeal, plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs. As a result, there is a significant risk of non-payment."); *Fleury v. Richemont North America, Inc.*, 2008 WL 4680033, at *7 (N.D. Cal. Oct. 21, 2008).

Nor can the putative appellants' counsel be counted on to pay a cost related judgment. Mr. Dave Thomas' attorney Darrell Palmer on April 22, 2013 submitted an affidavit in *In re TFT-LCD Antitrust Litig* asserting he was unable to pay even the fine of $9,254.11 imposed on him by Judge Illston. See Exhibit B attached hereto ("my wife, Alison Paul and *I do not have the funds to pay these sanctions at this time*."). Presumably Mr. Palmer has more means than his clients.

### C. THERE IS NO MERIT TO THE APPEALS.

The likely merits of the appeal also factor into this Court's decision to set an appeal bond. It is recognized that "a district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) (citation omitted). Objectors here received an unusually prolonged and thorough hearing with a contested preliminary and final approval process and even an evidentiary hearing for the Lang Objectors. Under the abuse of discretion standard, the appeal is highly unlikely to be successful. *Compare IPO*, 721 F. Supp.2d at 214 ("the Objectors contend as an initial matter that it is not for the district

court to decide whether an appeal has merit. However, in upholding a district court's order for a Rule 7 bond, the Second Circuit unequivocally rejected the argument that a district court may not forecast the merits of the appeal. Having considered the Objectors' arguments on appeal, I predict that the October 5 Opinion and Order will be affirmed. Class action settlements are reviewed on appeal for abuse of discretion and there is nothing to suggest that this Court will be reversed on appellate review.").

### D. EACH OF THE PUTATIVE APPELLANTS HAS DEMONSTRATED VEXATIOUS CONDUCT.

Putative appellant Dave Thomas is represented by noted professional objector Darrell Palmer, whose vexatiousness is nearly legendary. Before this Court, he thumbed his nose at this Court's orders, refused to make his client available for deposition, failed to respond to Class Counsel, and failed to show up at the final approval hearing. He nonetheless has filed a notice of appeal for his client. As Judge Walton found in *Heekin*, "the Court does find evidence of bad faith or vexatious conduct on the part of appellants. . . . Plaintiffs have produced evidence that Mr. Palmer is likely a serial objector and other courts have recognized similar behavior. . . . As in *In re Uponor,* this Court finds such behavior in bad faith and also potentially violative of local and ethical rules." 2013 WL 752637 at *3. Moreover, by pursuing their intended appeal, objectors, through Mr. Palmer, their "professional objector" counsel, seek to hold hostage the significant settlement proceeds to be distributed to the Class. These types of professional objectors "undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients." *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010).

Mr. Palmer is joined in this appeal by other notorious professional objectors such as Christopher Bandas and Mike Pentz. The exploits of these lawyers was already set forth for the Court in Plaintiff's response to the objectors, D.E. 333-1 at 3-8. *See, e.g., IPO*, 721 F. Supp. 2d at 214 ("there is evidence of bad faith or vexatious conduct by the Objectors. Other courts have found that counsel for the Pentz, Siegel, and Weinstein Objectors are serial objectors and have required them to post bonds in other actions.").

Lang's animus towards Class Counsel could not be more manifest, and such personal animus has been considered to constitute a bad faith or vexatious basis for appeal. *See Id.* at 214 and n.24 (finding objector Bechtold to be in bad faith because he "holds personal, documented animus toward the IPO executive committee" in the form of Bechtold having brought a motion "to remove the IPO Executive Committee and other firms as lead counsel").

## CONCLUSION

For the reasons stated herein, Plaintiffs and Class Counsel respectfully request that this Court grant their request for an appeal bond in the amount of $1,202,763, or whatever amount this Court deems appropriate, to be paid jointly and severally by the appellants to cover the potential costs of this appeal.

**Dated: June 7, 2013**                    **Respectfully submitted,**

                                            /s/ Richard J. Burke

                                            Richard J. Burke
                                            **COMPLEX LITIGATION GROUP LLC**
                                            1010 Market Street, Suite 1340
                                            St. Louis, MO 63101
                                            (847) 433-4500
                                            rich@complexlitgroup.com

16

Paul M. Weiss
Julie D. Miller
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, Illinois 60035
(847) 433-4500
paul@complexlitgroup.com
julie@complexlitgroup.com

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market St., Suite 1380
Philadelphia, PA 19102
(215) 564-2300
jshub@seegerweiss.com

Steven R. Jaffe
Mark Fistos
**FARMER JAFFE, WEISSING, EDWARDS, FISTOS & LEHRMAN, P.L.**
425 North Andrews Ave., Suite 2
Ft. Lauderdale, FL 33301
(954) 524-2820
SJaffe@pathtojustice.com

Ben Schwartzman
**BANDUCCI WOODARD SCHWARTZMAN PLLC**
802 W. Bannock Street, Suite 500
Boise, Idaho 83702
(208) 342-4411
**BScwartzman@BWSlawgroup.com**

**Class Counsel for Plaintiffs and Certified Plaintiff Classes**