**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KENT EUBANK, JERRY DAVIS, RICKY FALASCHETTI, RITA CICINELLI, ROBERT JOSEPHBERG, JEFFREY ACTON, KENNETH HECHTMAN, JAMES NEIMAN, AMY CHASIN and EDWARD RUHNKE, individually and on behalf of all others similarly situated; | No.: 06 C 4481 |
| Plaintiffs, | Honorable Sharon Johnson Coleman |
| v. | Class Action |
| PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF NOTICE PLAN, APPOINTMENT OF NAMED PLAINTIFFS AS REPRESENTATIVES OF SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL AS COUNSEL FOR SETTLEMENT CLASS, AND RELATED RELIEF**

## Table of Contents

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND.............................................. 7

III.   SUMMARY OF PROPOSED CLASS SETTLEMENT ..................................... 10

IV.    ARGUMENT ....................................................................................................... 23

   A.   The Guidelines for the Preliminary Approval of the Settlement ..................... 23

   B.   The Settlement Agreement Satisfies the Criteria for Preliminary Approval ................ 26

      1.   The strength of the Settlement compares favorably to Plaintiffs' case ..................... 26

      2.   The complexity, length and expense of continued litigation favors settlement ........ 27

      3.   The opinion of competent counsel and the serious, informed, and non-collusive

          negotiations........................................................................................................ 28

      4.   The stage of the proceedings and the amount of discovery completed..................... 30

      5.   The deficiencies in the previous settlement do not exist in the Settlement............... 30

   C.   Certification of the Settlement Class is Appropriate....................................... 31

      1.   Rule 23 prerequisites for settlement-class certification are satisfied ........................ 31

      2.   Rule 23(a) ......................................................................................................... 32

      3.   Numerosity ........................................................................................................ 32

      4.   Commonality ..................................................................................................... 33

      5.   Typicality .......................................................................................................... 33

      6.   Adequate representation ..................................................................................... 34

      7.   Rule 23(b)(3) .................................................................................................... 35

V.     CONCLUSION.................................................................................................... 40

## Cases

*Armstrong v. Bd of Sch. Directors of the City of Milwaukee*,
  616 F.2d 305, 312 (7th Cir. 1980) .................................................................... 23, 24

*Barragan v. Evanger's Dog & Cat Food Co.*,
  259 F.R.D. 330, 334 (N.D. Ill. 2009) ....................................................................... 34

*Butler v. Sears, Roebuck and Co.*,
  702 F.3d 359, 362 (7th Cir. 2012) ............................................................................ 38

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268, 1276 (9th Cir. 1992) ........................................................................ 30

*De La Fuente v. Stokely-Van Camp, Inc.*,
  713 F.2d 225, 232 (7th Cir. 1983) ............................................................................ 35

*EEOC v. Hiram Walker & Sons*,
  768 F.2d 884, 889 (7th Cir. 1985).......................................................................... 25

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) .................................................................................... 24

*Fournigault v. Independence One Mortgage Corp.*,
  234 F.R.D. 641, 644 (N.D. Ill. 2006) ....................................................................... 38

*Gautreaux v. Pierce*,
  690 F.2d 616, 621 n.3 (7th Cir. 1982) ................................................................... 6, 23

*Holtzman v. Turza*,
  2009 U.S. Dist. LEXIS 95620, at *14 (N.D. Ill. Oct. 14, 2009)............................. 36

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330, 343 (N.D. Ill. 2010)................................................... 23, 24, 26,36

*In re Holocaust Victim Assets Litig.*,
  105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) ........................................................ 30

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Pracs. Litig.*,
  280 F.R.D. 362 (N.D. Ill. 2011)................................................................................ 42

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D 369, 375-76 (D.D.C. 2002) ..................................................................... 30

*In re Prudential Ins. Co. Sales Practices Litig.*,
  177 F.R.D. 216, 234 (D.N.J. 1997).......................................................................... 40

*In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016) ...................................... 23

*Isby v. Bayh*,
75 F.3d 1191, 1196 (7th Cir. 1996) ...................................................................................... 23

*Isby*,
75 F.3d at 1199 ................................................................................................................ 25, 26

*Kaufman v. American Express Travel Related Servs. Co.*,
264 F.R.D. 438, 442 (N.D. Ill. 2009) ...................................................................................... 34

*Kaufman v. American Express Travel-Related Services Co.*,
___ c, 2017 WL 6044109, at *5 (7th Cir. Dec. 7, 2017) ........................................................ 23

*Keele v. Wexler*,
149 F.3d 589, 594 (7th Cir. 1998) ......................................................................................... 34

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338, 344 (7th Cir. 1997) ......................................................................................... 39

*Mars Steel v. Continental Ill. Nat'l Bank & Trust*,
834 F. 2d 677, 681-82 (7th Cir. 1987) ................................................................................... 30

*McCabe v. Crawford & Co.*,
210 F.R.D. 631, 643 (N.D. Ill. 2002) ...................................................................................... 33

*Messner v. Northshore Univ. HealthSys.*,
669 F.3d 802, 815 (7th Cir. 2012) ......................................................................................... 37

*Mirfasihi v. Fleet Mortg. Corp.*,
356 F.3d 781, 786 (7th Cir. 2004) ..................................................................................... 41, 42

*Muro v. Target Corp.*,
2005 U.S. Dist. LEXIS 14409, at *39 (N.D. Ill. July 15, 2005) .............................................. 33

*Newberg on Class Actions* § 11.53; *Burns v. Elrod*,
757 F.2d 151, 157 (7th Cir. 1985) ......................................................................................... 39

*Newberg on Class Actions*
§ 8.32 (4th ed. 2010) .............................................................................................................. 42

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
231 F.R.D. 280, 282 (N.D. Ill. 2005) ...................................................................................... 35

*Rosario v. Livaditis*,
963 F.2d 1013, 1018 (7th Cir. 1992) .................................................................................. 35, 36

iv

*Saltzman v. Pella Corp.,*
    257 F.R.D. 471, 479 (N.D. Ill. 2009) ................................................ 1, 35

*Smith v. Sprint Communications Co., L.P.,*
    37 F.3d 612, 614 (7th Cir. 2004) .................................................... 38

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646, 653 (7th Cir. 2006) ................................................. 26

*Twigg v. Sears, Roebuck & Co.,*
    153 F.3d 1222, 1227 (11th Cir. 1998) ........................................... 43

*Wong v Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) ..................................................... 25, 26

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011) . 37
*Manual for Complex Litigation* (Fourth) § 21.312 .................................................. 43
Manual for Complex Litigation § 21.632 .................................................. 6, 24

**Rules**

Fed. R. Civ. P. 23(a)(1) .................................................. 33
Fed. R. Civ. P. 23(a)(2) .................................................. 34
Fed. R. Civ. P. 23(a)(4) .................................................. 3
Fed. R. Civ. P. 23(b)(3) .................................................. 1, 3, 11, 37, 39
Fed. R. Civ. P. 23(e) .................................................. 6, 23, 29, 39, 42, 43

**Exhibits**

Settlement Agreement……………………………………………………………Exhibit 1

Declaration of Shannon McNulty……………………………………………...…Exhibit 2

Declaration of R. Clifford………………………………………………………. Exhibit 3

Declaration of George Lang……………………………………………………... Exhibit 4

Declaration of John Yanchunis……………………………………………Exhibit 5

Declarations of Class Representatives…………………………………… Composite Exhibit 6

Plaintiffs, through undersigned counsel, submit this Memorandum of Law in support of Plaintiffs' Uncontested Motion for Preliminary Approval of Settlement, Conditional Certification of Settlement Class, Approval of Notice Plan, Appointment of Named Plaintiffs as Representatives of Settlement Class, Appointment of Class Counsel as Counsel for Settlement Class, and Related Relief. Attached as **Exhibit 1** is the parties' settlement agreement ("Settlement Agreement" or "Settlement" or "SA").

## I. INTRODUCTION

In this class action, named Plaintiffs, Kent Eubank, Jerry Davis, Ricky Falaschetti, Rita Cicinelli, Robert Josephberg, Jeffrey Acton, Kenneth Hetchman, James Neiman, Amy Chasin and Edward Ruhnke ("Named Plaintiffs"),[1] on behalf of themselves and others similarly situated ("Plaintiffs"), sue Defendants, Pella Corporation and Pella Windows and Doors, Inc. ("Pella" or "Defendants"), to recover damages that Plaintiffs suffered because of allegedly defective windows that were designed, manufactured and placed in the stream of commerce by Defendants. *See* Plaintiffs' Seventh Amended Class Action Complaint (Doc. 540). As current and former owners of homes and other structures containing these windows, Plaintiffs allege that the windows suffer from water intrusion and rot, a defect that potentially also damages surrounding building components and property. (Doc. 540). In 2009, the Court certified two classes, (1) a Rule 23(b)(3) six-state consumer protection class comprised of consumers whose Pella ProLine casement windows rotted and were replaced and who sought money damages, and (2) a Rule 23(b)(2) nationwide class comprised of consumers whose windows had not been replaced and who sought declaratory relief, *Saltzman v. Pella Corp.,* 257 F.R.D. 471, 479 (N.D.

---

[1] Because of Named Plaintiff Leo Bateman's lack of communication with the undersigned, the parties contemporaneously file a joint stipulation for dismissal without prejudice of his claims in this action as a Named Plaintiff under Fed. R. Civ. P. 41(a)(1)(A)(ii). *See* Plaintiffs' Response in Opposition to Defendants' Motion to

Ill. 2009) (Doc. 163).  In 2010, the Seventh Circuit affirmed, *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) (Doc. 181).

In 2012, the parties at that time reached a class settlement (Doc. 277), which was finally approved by the Court over objections (Doc. 353).  In 2014, the Seventh Circuit reversed that settlement and the Court's final approval of same, for, among other things, prior class counsel's improprieties, as well as deficiencies in the substantive terms of the settlement and in the claims process, *Eubank v. Pella Corp.*, 753 F.3d 718, 729 (7th Cir. 2014) (Doc. 412).  On remand, and from among a group of nine attorneys seeking appointment as class counsel, the Court appointed Robert A. Clifford and George K. Lang as co-lead class counsel (Doc. 469).  Following their appointment, Messrs. Clifford and Lang assembled the undersigned team of attorneys ("Class Counsel" or "Plaintiffs' Counsel").  Because nothing more than limited discovery concerning class certification occurred in the first phase of the case, current Class Counsel effectively started fresh and with a *tabula rasa*.  Class counsel engaged Defendants in comprehensive and document-intensive fact discovery, retained subject matter experts and engaged in expert discovery, extensive motion practice and trial preparation.

Class Counsel and their team of experts—informed by hundreds of thousands of documents, numerous fact and 30(b)(6) and expert depositions and reports—delved deeply into the relevant subjects of window design, building science, engineering, physics, wood preservatives, window manufacturing processes and operations, industry standards, statistics, warranty and claims analyses, and marketing issues, along with a whole host of cutting-edge legal questions.  **Exhibit 2**, Declaration of Shannon M. McNulty in Support of Plaintiffs' Motion for Preliminary Approval ("McNulty Dec." at ¶¶ 6-19, 23-24).  The discovery processes were

---

Dismiss and to Strike Class Allegations,  (Doc. 547 at p.16, n.6).

significantly adversarial and little ground was given or taken. Indeed not a single aspect of the discovery process escaped scrutiny. (McNulty Dec. ¶¶ 6-19, 23-24). Plaintiffs amended the operative complaint a number of times, surviving persistent dispositive motions based on material issues including theories of liability, aspects an subtleties of varying state laws, class definitions and nationwide or state law on which to base declaratory relief and trial plans (Docs. 482, 488, 492, 540). Plaintiffs successfully averted Defendants' repeated attempts to dismiss and to strike the class by filing the Seventh Amended Complaint (Doc. 540), which Defendants were ordered to answer. Nevertheless, Defendants asserted affirmative defenses. (Doc. 560). The Court first ordered that Plaintiffs' Rule 23(b)(2) class could not be tried with the Plaintiffs' Rule 23(b)(3) subclass claims and would have to be deferred. (Doc. 566, Hearing Tr., June 15, 2016). Defendants then moved for summary judgment (Doc. 603), under sundry factual premises and legal theories; having compiled a complete evidentiary record in support of their factual and legal claims; Plaintiffs responded in opposition; Defendants replied. (Docs. 604, 612, 634, 635, 646). In anticipation of trial, the parties cross-filed and briefed *Daubert* motions regarding testimony of ten expert witnesses. (Docs. 617, 630, 637, 638, 640, 641, 642). Having undertaken substantial and exhaustive fact and expert discovery on complex subjects, Plaintiffs prepared for trial scheduled to occur in October and November 2017. (Doc. 578).

Given the nature of the two certified classes, and the Court's decision to defer consideration of the Rule 23(b)(2) class until after the Rule 23(b)(3) trials for the six subclasses, the trial would not have concluded this dispute for the members of the classes. Instead, a perfectly successful outcome of the Rule 23(b)(3) consumer protection class expressly would not resolve the issues of (1) proximate cause, (2) actual damages, and (3) certain of Pella's defenses including statutes of limitations, issues which were expressly excluded by the order on class

certification.  *See Saltzman*, 606 F.3d at 393.  Complete relief for the (b)(3) class members would need to await numerous time consuming separate individual trials by each (b)(3) class member on the non-certified issues of proximate cause, actual damages, and Pella's defenses, all of which would have been expensive and time consuming, and of course may have resulted in uncertain or inconsistent results for class members.  **Exhibit 3,** Declaration of Robert A. Clifford in Support of Plaintiffs' Motion for Preliminary Approval ("Clifford Dec.") ¶¶ 7, 9.  Further, even assuming a perfectly successful outcome of the (b)(3) trial, and the subsequent (b)(2) declaratory relief class (which would be tried in a separate proceeding after the trial on the six (b)(3) subclasses), whose members had not yet replaced their windows, would not result in replacement of their defective windows nor in payment of damages that would make them whole.   (Clifford Dec. ¶ 7).  Instead, a successful trial outcome would arm these consumers with a series of declarations that each class member could then use in expensive separate individual trials throughout the country in an attempt to seek full relief.  (Clifford Dec. ¶ 7).  If every class member pursued this course of action, the result would have been the filing of thousands of cases and trials, a process that would likely take years to complete.  (Clifford Dec. ¶¶ 7, 9).

During the intensive discovery and motion practice, the notion of settlement was an equally contested subject between the parties.  (Doc. 582).  In very late 2016, the Court referred this action to United States Magistrate Judge M. David Weisman for discovery supervision and settlement discussion.  (Doc. 577).  Consequently, starting in March 2017 and over the course of several months, the parties participated in a number of in-person and telephonic settlement conferences with Judge Weisman.  (Clifford Dec. ¶ 8).  During this same time, the parties were engaged in mutual *Daubert* attacks.  In May 2017, the settlement discussions had been exhausted without any agreement between the parties.  (Doc. 596).  In July 2017, after the parties had filed

4

expanded briefs concerning summary judgment and expert challenges, the parties re-engaged Judge Weisman to supervise a settlement discussion. Finally, after months of negotiations facilitated and supervised by Judge Weisman, Judge Weisman made a mediator's recommendation that was ultimately accepted by both parties. The parties reached a nationwide, comprehensive settlement that affords concrete and comprehensive relief to consumers—nationwide—for damages incurred in replacing allegedly defective Pella windows. (Clifford Dec. ¶ 8).

Attached as Exhibit 1 is the parties' settlement agreement ("Settlement Agreement" or "Settlement" or "SA"). This painstakingly procured class Settlement creates a total common fund of $25,750,000 that will undeniably and materially deliver relief to consumers throughout the country. (SA Section IV) As explained below, this total common fund of $25,750,000 is comprised of (1) $23,750,000 ("Fund A") to pay Settlement Class Members during the claims period and (2) $2,000,000 ("Fund B") to pay Settlement Class Members who file claims during the extended claims period. (SA Section IV). Adding to the strength and value of the settlement are Defendants' agreement to pay separately for the class notice costs and expenses. (SA ¶ 4.02). With the exception of using any unclaimed funds from the $23,750,000 in Fund A to reimburse Defendants for the class notice costs and expenses, Fund A—which amounts to 92.2% of the Settlement's total common fund of $25,750,000—is expressly non-reversionary. (SA ¶ 5.04 4.) Only unexpended amounts of Fund B ($2 million reserved for future claims) will revert to Pella. Further, Defendants agree to pay separately Plaintiffs' fees, costs, and expenses in an amount—not to exceed $9,000,000—to be sought separately and, of course, subject to Court approval. (SA Section VI). In short, over $34.75 million has been designated to finally resolve this protracted litigation on a nationwide, comprehensive basis. (SA Sections IV, V, VI).

The Settlement provides a robust and targeted notice of substantial benefits that the Settlement Class Members may obtain through an efficient claim process, utilizing a simple, clear and straight-forward Claim Form. (Claim Form, SA Exhibit 1); (SA Exhibit 2).  Once approved, the Settlement creates a common fund or Settlement Fund of $25,750,000 to compensate prior or current owners of Pella ProLine Casement Windows for damages that they have incurred or will incur to replace or repair rotted Windows and other property—without the need for individual trials.  Those funds will be distributed to Settlement Class Members pursuant to the terms of the Settlement Agreement. (SA, Section V).  Furthermore, the Settlement Agreement requires Defendants to pay separately for the class notice costs and expenses. (SA ¶ 4.02).  Defendants further agree to pay, separately and independently from the Settlement Fund, up to $9,000,000 in attorney fees, costs, and expenses.  (SA, Section VI).  Notably, the Settlement Agreement's attorneys' fees, costs, and expenses provision is severable, permitting distribution of the Settlement Fund and other benefits regardless of whether the Court grants, in whole or in part, Class Counsel's motion for an award of attorneys' fees, cost and expenses.  (SA ¶¶ 6.05).  In exchange for these and other benefits, Settlement Class Members will provide Defendants with a release.  (SA, Section VIII).

Plaintiffs request the Court to preliminarily approve the Settlement pursuant to Rule 23(e).  Preliminary approval is a mechanism for the Court to ascertain whether there is any reason to notify the Settlement Class Members of the proposed settlement and to proceed with a fairness hearing after Settlement Class Members have been given an opportunity receive notice of the settlement and its terms, to opt-out of the class, and to voice any objections to the settlement.  *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see generally* Manual for Complex Litigation § 21.632, p. 513 (4th ed. Supp. 2013).

Without question, the proposed Settlement Agreement is a significant accomplishment in light of the contested merits of Plaintiffs' claims, Defendants' defenses, and the factual, evidentiary and legal risks of continued litigation through class trials, the likely appeal of any verdict obtained in the class trial, and, quite importantly, the risk and expenses necessarily attendant to the future individual trials on causation and damages for the (b)(3) class and future expensive, and time consuming individual trials on at least causation and damages for the (b)(2) class (Clifford Dec. ¶¶ 7, 9). The proposed Settlement Agreement meets the test for preliminary approval. See Clifford Dec.; McNulty Dec.; **Exhibit 4,** Declaration of George K. Lang in Support of Plaintiffs' Motion for Preliminary Approval ("Lang Dec."); **Exhibit 5**, Declaration of John A. Yanchunis in Support of Plaintiffs' Motion for Preliminary Approval ("Yanchunis Dec.").

Thus, Plaintiffs, without opposition from Defendants, request the Court enter the parties' agreed-upon Preliminary Approval Order attached as Exhibit 1 to Plaintiffs' Uncontested Motion for Preliminary Approval, filed concurrently with this memorandum.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As stated above, while the original complaint in this action was filed on August 18, 2006, and two classes were certified on June 4, 2009, improprieties observed by the Seventh Circuit led the Seventh Circuit to effectively clean the Plaintiff's house in 2014, when the previous settlement in this action was rejected on appeal, class counsel (other than George Lang) were removed, former named plaintiffs were "defrocked," and the case was remanded back to the District Court. Writing for the Seventh Circuit, Judge Posner issued the following stinging rebuke:

> After eight largely wasted years, much remains to be done in this case. For starters, Saltzman, Paul Weiss, and Weiss's firm, Complex Litigation Group, must be

> replaced as class representative (Saltzman), and as class counsel (Weiss and his firm), respectively. And since we are rejecting the settlement agreement, the plaintiffs named in the third amended complaint, whom that agreement caused to be substituted for the original named plaintiffs (other than Saltzman), must be discharged and the four original named plaintiffs (whom we've called the "defrocked" plaintiffs) reinstated.

*Eubank v. Pella Corp.*, 753 F.3d 718, 729 (7th Cir. 2014).

From these ashes arose the case now before the Court. On September 12, 2014, Class Counsel was appointed, and adversarial litigation commenced in earnest. Class Counsel Shannon McNulty's Declaration delineates some, but certain not all, of the extraordinary efforts made in this hotly contested litigation. In the few years since their appointment, and among many other things, Class Counsel

- Served extensive written discovery, including exhaustive, specific and detailed Interrogatories, and Requests for Production of documents. (McNulty Dec. ¶¶ 10-14).

- Obtained hundreds of thousands of documents from a variety of sources, caused the same to be downloaded into a searchable document management system data base and, along with consulting and testifying experts, reviewed the same. (McNulty Dec. ¶ 13).

- Amended the operative complaint a number of times, responded to consequent defense motions to dismiss and to decertify almost each new iteration of the operative complaint, and caused Pella, despite aggressive, nuanced, and complex motion practice, to finally answer and assert affirmative defenses to the Seventh Amended Complaint. (McNulty Dec. ¶¶ 9, 20).

- Vetted and substituted an almost completely new slate of Named Plaintiffs (i.e., substitute class representatives). (McNulty Dec. ¶ 8).

- Vetted and retained a completely new slate of expert witnesses, including a nationally recognized statistics and warranty analyst, a nationally recognized and accomplished and

one of the world's foremost wood scientists. (McNulty Dec. ¶¶ 6, 7, 12, 14, 15, 16).

- Took or defended approximately 33 depositions, including fifteen 30(b)(6) depositions and ten expert depositions. (McNulty Dec. ¶ 15).

- Undertook significant motions practice including, but not limited to, the following:

  o Motion to Dismiss and to Strike Class Allegations (Doc. 498)

  o Motion to Dismiss and to Strike Class Allegations (Doc. 543)

  o Motion to Decertify (Doc. 507)

  o Motion to Clarify (Doc. 553)

  o Motion for Summary Judgment (Doc. 603)

  o Cross-*Daubert* Motions concerning the following experts:

    ▪ Chin (Doc. 617)

    ▪ Saraf (Doc. 617)

    ▪ Schroter (Doc. 609)

    ▪ Winandy (Doc. 600)

    ▪ Middleswart (Doc. 617)

    ▪ Gerdes (*see* Doc. 617 and related filings)

    ▪ Ray (*see* Doc. 617 and related filings)

    ▪ Smith (*see* Doc. 617 and related filings)

    ▪ Wachs (*see* Doc. 606 and related filings)

As a result of these efforts, Plaintiffs' counsel developed facts they believed supported Plaintiffs' claims. (McNulty Dec. ¶ 23). Conversely, Defendants developed facts they believed supported their defenses along with evidence and challenges to Plaintiffs' experts that Defendants believed would result in dismissal of Plaintiffs' claims. In addition, the necessary

and practical means of repair were explored and the costs to perform those repairs were calculated.[2]

Class Counsel began lengthy and difficult negotiations with Defendants' counsel. (Clifford Dec. ¶¶ 7,8). Eventually, after over a year of supervised settlement discussions, including difficult written and oral discussions under the supervision and guidance of Judge Weisman, the parties finally reached a hard-fought and reasonable compromise. (Clifford Dec. ¶¶ 7, 9, 10).

### III. SUMMARY OF PROPOSED CLASS SETTLEMENT

The parties reached an agreement to settle this litigation that creates a $25,750,000 Settlement Fund against which Settlement Class Members may file a claim for Eligible Damage. (SA ¶¶ 2.22, 4.01). The Settlement Fund is segregated into two funds that are designed to pay claims based on the timing of those claims: (1) $23,750,000 ("Fund A") to pay Current Claimants during the Claims Period and (2) $2,000,000 ("Fund B") to pay Extended Period Claimants who submit claims during the Extended Claims Period (the time period from the end of the Claims Period until 15 years after the date of sale of a window). (SA Sections IV, V, VI). With the exception of using any unclaimed funds from the $23,750,000 in Fund A to reimburse Defendants for the class notice costs and expenses, Fund A—which is 92.2% of the Settlement Fund—is expressly non-reversionary. (SA ¶ 5.04 1.) Any unexpended amounts of Fund B ($2 million reserved for future claims) will revert to Pella. Defendants further agree to pay separately and independently from the Settlement Fund, up to $9,000,000 for reimbursement of

---

[2] Defendants strenuously dispute each and every allegation of impropriety, especially any claim they did anything wrong or that any of their actions or omissions caused the damage about which Plaintiffs complain. (SA ¶ 15.01). Defendants have presented their arguments and positions in an artful, organized and comprehensive manner. Each witness has been fully and expertly cross-examined, with many blows landed on each side. (McNulty Dec. ¶ 19, 22). Underestimating the strength and potential of Defendants' defenses at trial would be regrettable.

Plaintiffs' attorneys' fees, costs, and expenses, to the extent awarded by the Court. (SA ¶ 4.02). The attorneys' fees, costs, and expenses provision of the Settlement Agreement is severable, permitting distribution of benefits to Settlement Class Members regardless of whether the Court grants, in whole or in part, Plaintiffs' petition for fees, costs and expenses. (SA ¶ 6.05). In exchange for these and other benefits, Settlement Class Members will provide Defendants with a release. (SA ¶¶ 8.01-8.06). The parties agreed to the conditional certification of a Settlement Class for purposes of the Settlement. (SA ¶¶ 3.01, 3.02).

The key terms in the Settlement Agreement are:

*The Proposed Settlement Class*: The Settlement Class comprises the following:

[A]ll persons in the United States who are current or former owners of Structures containing Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between January 1, 1991 and December 31, 2009.

(SA ¶ 2.46). The Settlement Class excludes: (1) All persons who timely opt-out of the Lawsuit pursuant to the terms of the Settlement Agreement; (2) All persons who, individually or as a member of a class, have brought legal proceedings against Defendants (other than in the Lawsuit brought by the Named Plaintiffs), which, before entry of the Preliminary Approval Order in the Lawsuit brought by Named Plaintiffs, are resolved or agreed to be resolved by settlement, judgment, release, dismissal, or other final disposition resulting in the termination of the proceedings; and (3) All of Defendants' current employees. (SA ¶ 2.46(1-3)). The Settlement Class is an opt-out class under Rule 23(b)(3). (SA Sections VII and VIII). Class status can be objectively determined from individual and corporate records and self-identification via the claims process and the Claim Form attached to the Settlement Agreement. (SA Section VII).

*Payments to the Settlement Class*: Pella will dedicate $25,750,000 for a common Settlement Fund against which any Eligible Claimant may file a claim for Eligible Damage

caused by a Window, allocated as follows:

1.     Pella will deposit $23,750,000 into a fund ("Fund A") reserved for payment of claims for Eligible Damage submitted by Eligible Claimants during a Claims Period ending on a Claims Deadline date to be set by the Court.  (SA ¶ 4.04).

2.     Pella will reserve $2,000,000.00 ("Fund B") for payment of claims for Eligible Damage submitted by Extended Period Claimants (that is, Settlement Class Members who have not properly opted out of the Settlement and who submit Claims during the Extended Claims Period for Eligible Damage up to 15 years after their Windows were purchased.  (SA ¶ 2.38).

In addition to the amounts paid into the Settlement Fund, Defendants will pay the Class Notice Expenses, namely: the reasonable fees and expenses incurred by the Class Notice and Settlement Administrator ("Settlement Administrator") in preparing and mailing of the Class Notice and for preparing and completing notice by publication.  (SA ¶ 2.14).  Finally, in addition to the amounts paid into the Settlement Fund, Defendants will pay all amounts awarded by the Court for Plaintiffs' fees, costs, and expenses in an aggregate amount not to exceed $9,000,000. (SA Section VI).

***Summary of Procedures to Seek Benefits:***  The parties have made every effort to construct a simple and efficient claims process.  Settlement Class Members who have already repaired or replaced Eligible Damage are addressed separately from those who have not yet done so.  Both groups of Settlement Class Members may seek benefits by submitting a Claim Form to the Settlement Administrator.  (SA ¶ 5.05).  In addition, Settlement Class Members who suffer Eligible Damage that manifests after the Claims Period as explained further below, will still be eligible for warranty benefits as well as certain other benefits.  (SA ¶¶ 5.06, 5.07).

The Claim Form (SA, Exhibit 1) is designed to assist Claimants applying for benefits to

do so quickly, efficiently, and with reasonable ease. For example, the Claim Form contains clear instructions on completing the form, including diagrams and pictures that visibly show the location of stamps, etches and labels that easily identify qualifying Windows. Flexibility is important. Thus, alternatively, Claimants may submit documentation establishing that their windows qualify for benefits, such as a signed contractor statement. With respect to Eligible Damage, the process and Claim Form provides the Claimants with as much flexibility as possible to demonstrate the same. For example, the Claimant may provide contemporaneous documentation of wood deterioration damage to one or more windows or water damage to surrounding property along with a contractor's statement that such damage was caused, materially or substantially in part, by water penetrating between the aluminum cladding of the window and the window sash. Of course, other ways of establishing Eligible Damage are available, including submitting photographs or providing documentation from a Pella or window contractor.

The Notice and Settlement Administrator ("Settlement Administrator") will determine whether the Settlement Class Member has Eligible Damage and must document its determination. (SA ¶ 5.05).

**Summary of Benefits:**

Again, the Settlement establishes two settlement funds: Fund A for claims submitted during the settlement Claims Period (i.e., before the Claims Deadline), and Fund B for claims submitted after the settlement Claims Period (i.e., after the Claims Deadline and during the Extended Claims Period). (SA Sections IV and V). The benefits of each Fund can be summarized as follows.

**Fund A Benefits and Payments:**

Settlement Fund A is designed to satisfy Claims for Eligible Damage that are filed before the Claims Deadline. (SA ¶ 5.04). Depending on the time between the dates of sale and repair of the subject Window, the cash award will be for all or a portion of the following four categories of costs (1) the cost of the product (per window or sash), (2) the cost of the installation labor (per window or sash), (3) the cost of finishing (per window or sash), and (4) the cost to repair damage to other property.[3] There are two basic types of Settlement Fund A claims:

a.  Settlement Class Members who have already experienced Eligible Damage and have already repaired or replaced such damage (SA ¶ 5.04);

b.  Settlement Class Members who have experienced Eligible Damage but have yet to repair or replace such damage (SA ¶ 5.04); and

c.  Subject to the provisions of paragraphs 3 and 4 of Section 5.04 of the Settlement Agreement, an Eligible Claimants' recoveries from Fund A will depend on the Date of Sale of their Windows.

**Claimants who have repaired or replaced Eligible Damage** will receive a cash sum based on (1) the cost of the product (per window or sash), (2) the cost of the installation labor (per window or sash), (3) the cost of finishing (per window or sash), and (4) the cost to repair damage to other property. (SA ¶ 5.04(1)). For Eligible Damage to or from a Window that was repaired or replaced within 15 years after the Date of Sale, "the cash award will be the sum of these four categories of costs." (SA ¶ 5.04(1)). For Eligible Damage to or from a Window that

---

[3] For Eligible Damage to or from a Window that was repaired or replaced within 15 years after the Date of Sale, "the cash award will be the sum of these four categories of costs." (SA ¶ 5.04(1)). For Eligible Damage to or from a Window that was repaired or replaced more than 15 years after the Date of Sale, "the cash award will be 25% of the sum of these four categories of costs." (SA ¶ 5.04(1), also ¶¶ 5.03(4) and 5.04(2)(c)).

was repaired or replaced more than 15 years after the Date of Sale, "the cash award will be 25% of the sum of the four categories of costs."  (SA ¶ 5.04(1), also ¶ 5.03(4)).

In order to make the process run smoothly and fairly, the Parties have anticipated circumstances where it is not possible or difficult for the Settlement Administrator to identify the portions of Eligible Damage for which costs were incurred or need to be incurred.  Thus, the Settlement Agreement provides that if the Settlement Administrator is unable to identify and/or verify how much of the submitted costs were incurred for replacement product, installation, finishing, and/or damage to other property, respectively, based on the invoices, receipts, and/or other repair documentation submitted, then based on Pella historical claim data the costs will be allocated and payments made as follows:

(i)     If the Eligible Damage was repaired within 10 years after the Date of Sale, then costs shall be deemed allocated as follows:

|  | If damage to other property | If no damage to other property |
|---|---|---|
| 1.  cost of product: | 39% | 55% |
| 2.  cost of installation: | 23% | 34% |
| 3.  cost of finishing: | 8% | 11% |
| 4.  cost to repair damage to other property: | 30% | 0% |

(SA ¶ 5.04(1)(b)(i)).

(ii)    If the Eligible Damage was repaired more than 10 years after the Date of Sale, then costs shall be deemed allocated as follows:

|  | If damage to other property | If no damage to other property |
|---|---|---|
| 1.  cost of product: | 27% | 39% |
| 2.  cost of installation: | 33% | 46% |
| 3.  cost of finishing: | 10% | 15% |
| 4.  cost to repair damage to other property: | 30% | 0% |

(SA ¶ 5.04(1)(b)(ii)).

**Claimants who have not yet repaired Eligible Damage** as of the Direct Notice Date (the first notice sent out to potential Class Members) will receive either product or cash for replacement product, depending on vintage, and cash benefits for (1) the cost of the installation labor, (2) the cost of finishing, and (3) the cost to repair damage to other property. (SA ¶ 5.04(2).)

For Eligible Damage to or from a Window that has not yet been repaired or replaced and involves a Window with a Date of Sale that is within 15 years before the Direct Class Notice Date, and depending on the Date of Sale of the Window, Eligible Claimants will be entitled to receive the actual costs of installation, finishing, and the repair of damage to other property, together with either replacement product from Pella or additional cash for the cost of replacement product. For Eligible Damage to or from a Window that has not yet been repaired or replaced and involves a Window with a Date of Sale that is more than 15 years before the Direct Class Notice Date, Eligible Claimants are entitled to receive 25% of actual expenses necessary to repair or replace the four categories of costs. (SA ¶ 5.04(2)(c), also ¶ 5.03(4)).

The Settlement Agreement again contemplates situations where it will be difficult or not possible for the Settlement Administrator to determine how the actual costs to repair Eligible Damage should be broken down among the categories covered under the Settlement Agreement. If a Claimant submits a Claim for actual expenses necessary to repair or replace Eligible Damage, but the Settlement Administrator is unable to identify and/or verify how much of those costs are for the cost of replacement product, installation, finishing, and/or damage to other property based on the quotes, invoices, receipts, and/or other repair documentation submitted, then based on Pella historical claims data the costs will be allocated according to the following

default percentages, and amounts may be awarded in each category:

If the Eligible Damage involves a Window with a Date of Sale that is 10 years or less before the Direct Class Notice Date, then the costs shall be deemed allocated as follows:

|  | If damage to other property | If no damage to other property |
|---|---|---|
| cost of product: | 39% | 55% |
| cost of installation: | 23% | 34% |
| cost of finishing: | 8% | 11% |
| cost to repair damage to other property: | 30% | 0% |

(SA ¶ 5.04(2)(e) (i).

If the Eligible Damage involves a Window with a Date of Sale that is more than 10 years before the Direct Class Notice Date, then costs shall be deemed allocated as follows:

|  | If damage to other property | If no damage to other property |
|---|---|---|
| cost of product: | 27% | 39% |
| cost of installation: | 33% | 46% |
| cost of finishing: | 10% | 15% |
| cost to repair damage to other property: | 30% | 0% |

(SA ¶ 5.04 (2)( d)(ii).

**Fund B Benefits and Payments:**

Settlement Fund B provides benefits for Settlement Class Members with pre-2007 Windows that have not manifested any Eligible Damage before the Claim Deadline but may manifest Eligible Damage within 15 years of the Date of Sale  andduring the Extended Claim Period (the time period from the end of the Claims Period). (SA ¶ 5.06). The benefits are primarily based on the terms of the Limited Warranty and a program called the ProLine Service Enhancement Program ("PSEP"). These claims will be administered directly by Pella.  Thus,

17

after the Claims Deadline, Claimants will contact the Pella Customer Service Department at (888) 977-6387 in order to receive Fund B benefits under the Pella Limited Warranty and/or PSEP. (SA ¶ 5.07).

In addition, each Pella branch may choose to provide similar discounts on finishing and installation services for customers in these situations. (SA ¶ 2.38).

### *Contingency if Fund A is insufficient to pay Eligible Claimants:*

The Settlement Administrator will pay Claimants on the Claims Payment Date on a *pro rata* basis up to the available amounts in Fund A in a manner to be determined by the Settlement Administrator. (SA ¶ 5.04(3)).

### *Contingency if unclaimed funds remain in Fund A after paying Eligible Claimants:*

To the extent that funds remain in Fund A after the Settlement Administrator has made all payments to Eligible Claimants, the Settlement Administrator will distribute the unclaimed funds as follows: First, to reimburse Defendants for the Class Notice Expenses; second, to increase recovery on a *pro rata* basis of those Eligible Claimants whose claims were limited to 25% of actual expenditures necessary to address Eligible Damage; and, third, in a manner directed by the Court upon petition by the parties. (SA ¶ 5.04(4)).

### *Settlement Administration*:

The class settlement administration will be performed by Kurtzman Carson Consulting LLC ("KCC"), a leading class action settlement administrator jointly selected and proposed by the parties. (SA ¶ 7.01(11).) KCC's responsibilities include, without limitation: (a) processing submissions of claims under Fund A; (b) distributing payments and benefits to eligible Settlement Class Members for Fund A; (c) processing exclusion or opt-out requests from Settlement Class Members; (d) providing status reports about the claims process to the parties

relating to Fund A; and (e) preparing tax returns for any settlement bank accounts. (SA ¶ 7.01(11)).

*Notice Plan*:

As explained in more detail below, consistent with Rule 23 and due process, the Notice Plan and related forms are designed to provide effective direct and indirect notice to the Class. *See generally* Exhibit 2, Declaration and Notice Plan, SA ¶¶ 2.13, 2.33 and 5.05. KCC recommends a notice plan utilizing individual notice to all known Settlement Class Members, paid notice in well-read and targeted consumer magazines and on a variety of websites, and the distribution of a national press release. (Peak Dec. pp. 6-9.) KCC anticipates the Notice Plan will reach approximately 80% of likely Settlement Class Members on average 2 times each.[4] (SA Exhibit 2).

The Notice Plan provides for dissemination of a postcard notice, a summary notice and a long-form notice by mail or email to Settlement Class Members and by publication and website outreach to Settlement Class Members. (SA Exhibit 2) and (SA ¶¶ 2.33, 5.05, 7.01(6)). The Notice Plan includes publication of the Summary Notice in a manner best suited to reach Settlement Class Members. (SA Exhibit 2) (Clifford Dec. ¶ 11), (Yanchunis Dec. ¶ 25). The Notice Plan will inform Settlement Class Members of the pendency and status of the case, terms of the Settlement, the benefits available to members under it, how the case and the Settlement may affect their legal rights, important Settlement deadlines, instructions for objecting to the Settlement or opting-out of the Class, and information concerning the date of the Final Approval Hearing and how to find more information regarding the Settlement. (SA Exhibit 2); (SA ¶¶ 2.33, 5.05, 7.01(6).) A toll-free telephone line and a website (www.pellawindowsettlement.com)

will also be established to facilitate providing notice and information to, and access to same by, Settlement Class Members.  (SA ¶¶ 2.33, 5.05, 7.01(6).)

To avoid confusion among Settlement Class Members who may have already submitted a Claim under the previous settlement, which was rejected and set aside, the Long Form Notice will contain an instruction similar to the following:

> Plaintiffs and Defendants agreed to settle this class action lawsuit in 2011, and the Court finally approved the class settlement in April 2013.  You may have received notification of the class settlement, which then required you to submit forms whether you wanted to participate in the class settlement or whether you wanted to exclude yourself from the settlement.  You may have submitted these forms, including claim forms, regarding the settlement.  However, in June 2014, the class settlement was rejected and set aside on appeal.  The decision on appeal nullified the settlement and prompted the case to proceed on. With the exception of attorney George K. Lang, the attorneys previously representing the class were also replaced.  As a consequence, even if you made an election to exclude yourself from the prior, nullified settlement, you must make a new election as to this notice (if you still choose to request exclusion from the class).  You are therefore free to exclude yourself from this proceeding a second time or, by doing nothing, be deemed to remain a class member.

(SA ¶ 2.33).

*Settlement Class Member releases*:

Upon final approval of the Settlement, all Settlement Class Members who do not opt-out will release the Defendants and the related parties from all Released Claims, as that term is defined in the Settlement Agreement. (SA Section VIII).  This release broadly applies to all damages related to the Pella ProLine Casement Windows, except for personal injury claims.  *Id.*

*Service Awards for representatives of Settlement Class*:

The Settlement Agreement permits named Plaintiffs to seek, subject to Court approval,

---

[4] The Federal Judicial Center's (FJC) Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide considers reasonable a 70-95% reach among class members.  (SA Exhibit 2).

Service Awards for each of the Named Plaintiffs in an amount not to exceed Twenty-Five Thousand dollars ($25,000.00) per Named Plaintiff. (SA ¶ 6.04). Any Court-approved Service Awards will be paid out of Fund A of the Settlement Fund. (SA ¶ 6.04). The receipt of a Service Award is not in any way conditioned on a Named Plaintiff supporting this Agreement, and each Named Plaintiff has agreed to enter into this Agreement even if the Court declines to award Service Awards to the Named Plaintiffs. Class Counsel will file a motion for Service Awards to Named Plaintiffs, along with the necessary supporting documentation and detail, pursuant to the schedule set forth in the Preliminary Approval Order. (SA ¶¶ 6.02, 6.04). By agreement of the parties, the Service Award provision in the Settlement Agreement is severable, i.e., a failure to grant some or all of the requested Service Awards cannot be grounds for modification or termination of the Agreement. (SA ¶ 6.04).

*Plaintiffs' Attorneys' Fees, Costs, and Expenses*:

Per the Settlement, Plaintiffs will move for an award of attorneys' fees, costs and expenses. Defendants agree to pay an aggregate amount not to exceed $9,000,000, for Plaintiffs' attorneys' fees, costs and expenses, subject to Court approval. (SA ¶ 6.02). No other agreements exist between or among the parties as to payments to be made to Class Counsel or Plaintiffs. (Clifford Dec. ¶ 8). As with the Service Award, the parties have agreed that the attorneys' fees, costs, and expenses provision of the Settlement Agreement is severable, i.e., that a failure to grant some or all of Class Counsel's requested attorneys' fees, costs, and expenses cannot be grounds for modification or termination of the Settlement. (SA ¶ 6.04).

*Opt-out procedure and opportunity to object or intervene:*

Any member of the Settlement Class may request to be excluded from the Settlement Class by sending the Settlement Administrator an appropriate, timely request for exclusion or

opt-out before a date to be set by the Court. (SA ¶¶ 2.35, 7.01). Any request for exclusion or opt-out must be exercised individually by a Settlement Class Member or by a Settlement Class Member's attorney. (SA ¶ 7.01). Any Settlement Class Member who does not properly submit a timely, compliant written request for exclusion or opt-out from the Settlement Class will be bound by all proceedings, orders, and judgments in the Lawsuit. (SA ¶ 7.01).

Any Settlement Class Member who does not request exclusion from the Settlement Class may seek to intervene in the Lawsuit or to object to object to the Settlement, to Class Counsel's motion for fees, costs, and expenses, and to Plaintiffs' motion for Service Awards to Named Plaintiffs. (SA ¶ 7.01). To be considered, an objector or intervener Settlement Class Member must timely provide to the Settlement Administrator and file with the Court a statement of the objection or motion to intervene. (SA ¶ 7.01). The statement must: be in writing with the case caption and case number; contain the objector's or putative intervener's full name and current address; declare that the objector or putative Settlement Class Member intervener currently owns, or formerly owned, a Structure containing a Pella ProLine Casement Window(s); be signed and dated by the objector; provide a statement of the objector's or intervener's specific objections and the grounds and arguments regarding same. (SA ¶ 7.01). The submittal must include all documents and other writings the objector wishes the Court to consider and describe any and all evidence the objecting or intervening Settlement Class Member or governmental entity may offer at the Final Approval Hearing and be filed with the Court and served on the Settlement Administrator, Lead Class Counsel, and counsel for Defendants on or before a date set by the Court that is no later than 120 Days from the entry date of the Preliminary Approval Order. (SA ¶ 7.01). Any Settlement Class Member who objects or requests to intervene shall make themselves available to be deposed by Class Counsel and counsel for Defendants in the

county of the objector's or putative intervener's residence within thirty (30) Days of service of his or her timely written objection or motion to intervene. (SA ¶ 7.01).

Any objections or requests to intervene by a Settlement Class Member must be exercised individually by a Settlement Class Member, except that such objections or requests may be submitted by a Settlement Class Member's attorney on an individual basis. (SA ¶ 7.01). Any member of the Settlement Class or governmental entity that desires to appear in person at the Final Approval Hearing must timely file and serve Lead Class Counsel and counsel for Defendants a notice of appearance in the Lawsuit. (SA ¶ 7.01).

*Settlement termination*:

Unless the parties agree otherwise, the Settlement Agreement shall be terminated and become null and void if: (1) the Court declines to conditionally certify the Settlement Class as provided in the proposed Preliminary Approval Order; or (2) the Court materially alters any of the terms of this Agreement (as determined by the Parties); or (3) the Court does not enter the Preliminary Approval Order or the Final Approval Order in substantially the same form submitted by the Parties. (SA ¶ 11.01). Defendants may elect to unilaterally rescind the Agreement if at least 300 or more Settlement Class Members with verified Pella ProLine Casement Windows request exclusion or opt out from the Settlement Class. (SA ¶ 11.02). If the Agreement is terminated, then the parties' legal positions would revert to and be the same as they were immediately prior to execution of the Agreement, each party having the ability to exercise its legal rights as if the Settlement Agreement had not been executed. (SA ¶ 11.03).

## IV. ARGUMENT

### A. The Guidelines for the Preliminary Approval of the Settlement

"'Federal courts naturally favor the settlement of class action litigation.'" *In re: Sears,*

*Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Of course, Rule 23(e) requires judicial approval of class settlements. Specifically, the Court must preliminarily approve the proposed Settlement; members of the Settlement Class must be given notice of the proposed Settlement; and a hearing must be held, after which the Court must decide whether the proposed Settlement is fair, reasonable, and adequate. *See Kaufman v. Am. Express Travel-Related Servs. Co.*, 877 F.3d 276, 284-85 (7th Cir. 2017); *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Manual for Complex Litigation § 21.632, p. 513 (4th ed. Supp. 2013).

At this juncture, when considering the instant motion, the Court should determine whether the settlement is within the range of possible approval, i.e., within the range of what might be found fair, reasonable, and adequate. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010); *see also Armstrong v. Bd. of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "District court review of a class action settlement proposal is a two-step process." *Armstrong*, 616 F.2d at 314. As the Seventh Circuit explains:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Id.*

The Seventh Circuit has provided trial courts with direction on determining whether a settlement is fair, reasonable, and adequate.

> In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed.

*In re AT&T Mobility Wireless*, 270 F.R.D. at 346; *see also Wong v Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014) (setting forth relevant factors for determining fairness of class action settlement). The Court should recognize "that the first factor, the relative strength of the plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199; *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (*citing Isby*, 75 F.3d at 1199). That said, a settlement ought not be confused or conflated with a perfect trial win. The Court should "consider the facts in the light most favorable to the settlement." *Isby*, 75 F.3d at 1198-99. Further, "[t]he essence of settlement is compromise . . . . Thus the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *EEOC v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985). The Court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. As recently encapsulated by the Seventh Circuit:

> Though we have elucidated several factors to guide a district court's analysis of whether a proposed settlement is fair, reasonable, and adequate, we have repeatedly stated that "[t]he 'most important factor relevant to the fairness of a class action settlement' is ... 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Techs., Inc.*, 463 F.3d at

653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)); accord *Isby*, 75 F.3d at 1199. In analyzing this factor, the district court should consider "the range of possible outcomes and ascrib[e] a probability to each point on the range." *Synfuel Techs., Inc.*, 463 F.3d at 653 (alteration in original) (quoting *Reynolds* [*v. Beneficial Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002)]. This requires acknowledgment of potential defenses and the risk of failure for the class. See *Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011). However, we have instructed the district courts "to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *Isby*, 75 F.3d at 1196–97 (quoting *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)). We have also taught that the *Synfuel/Reynolds* evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indications that the settlement reasonably reflects the relative merits of the case. See *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014).

*Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 284–85 (7th Cir. 2017).

**B.   The Settlement Agreement Satisfies the Criteria for Preliminary Approval**

**1.   The strength of the Settlement compares favorably to Plaintiffs' case**

As stated above, a salient factor for the Court's consideration at this preliminary approval juncture is the strength of the Plaintiff's case balanced against the benefits offered in the Settlement.  *Isby*, 75 F.3d at 1196-97; *Synfuel Techs Inc.*, 463 F.3d at 653; *Reynolds*, 288 F.3d at 285; *Kaufman*, 877 F.3d 276, 284-85.  This issue was consistently addressed in the parties' settlement discussions supervised and facilitated by Judge Weisman (Clifford Dec. ¶ 8).  Here, the proposed Settlement before the Court is fair, reasonable, and adequate, and within the range of possible approval.  While Plaintiffs are proud of the long strides that they have accomplished in this action since remand, having effectively started anew after reversal of the prior settlement by the Seventh Circuit, and though Plaintiffs are confident about their trial posture, a complete win at trial of the claims at issue does not end the dispute, and ultimate success is far from certain.  Each class member in each of the certified classes would still be required, individually,

to later litigate proximate cause and damages. Undeniably, that cannot be accomplished without marshalling experts to set forth evidence and opinions, as well as to rebut Pella's defenses. Consequently, despite the issues resolved by and the declarations emanating from trial here, the subsequent, separate trials would still have been expert-driven, costly, time-consuming, and uncertain. (Clifford Dec. ¶¶ 7, 9). In stark contrast, the Settlement affords concrete, measurable relief to class members on a nationwide basis, and does so without need for individual trials on proximate cause and damages or the inherent delay, cost, and uncertainty of such individual trials. (Clifford Dec. ¶¶ 9-10).

Under these unique but self-evident circumstances, and by applying the reduced "range of possible approval" standard, the Court must grant Plaintiffs' Uncontested Motion. *Kaufman*, 877 F.3d 276, 284-85.

### 2. The complexity, length and expense of continued litigation favors settlement

The second factor calls upon the Court to evaluate the action's complexity, expense and time required to conclude the matter. In this instance, this factor vigorously favors preliminary approval. Simply put, this consumer-protection/product-defect hybrid class action is almost certainly one of the more complex, expensive and lengthy litigations of its kind in the country. Though certified under six states' consumer fraud laws, the (b)(3) class must still demonstrate a defect in the window. Not only are the legal issues unique, difficult and technical, the expert-driven testimony is esoteric and encompasses some of the more complex scientific topics and statistical analyses that may be encountered in trial practice. For example, the experts have engaged in epic battles over statistical analyses of claims, returns and allowances; disputes over adequate penetration and retention of various wood preservatives, proper design of drainage when utilizing the rain screen and barrier principles, and much more. (McNulty Dec. ¶¶ 6, 7, 12,

27

14-19, 23).

And with complexity comes expense. When the new litigation team was appointed, all facets of preparing this litigation for trial effectively commenced anew. Unable to rely on previous experts and discovery, which was minimal but related to class certification, Plaintiffs' trial team necessarily started from scratch. No former expert was utilized. Instead, Plaintiffs gathered an expert teams necessary to address the issues in this type of case. With the guidance of counsel, the experts conducted significant research, investigation, testing, document review and more. Counsel took dozens of depositions across the country. In short, since appointment of Lead Class Counsel, Plaintiffs' Counsel has advanced over $1 million in costs alone. (McNulty Dec. ¶ 21). Plaintiffs' Counsel believes this amount will easily double, if not more, should the litigation continue. (McNulty Dec. ¶ 21).

Despite the fact that the litigation has moved swiftly since current counsel was appointed, significant time has passed since the initial filing of this case. Even after an initial (b)(3) trial, and assuming Plaintiffs prevail on all claims comprising the six certified states, years of further litigation will necessarily follow in individual trials concerning causation and damages. Moreover, depending on the outcome of the first trial, the court's application of law relative to entering the (b)(2) declarations sought is a nuanced matter for which relief is still incomplete. With the prospect of the substantial, hard-fought results reached by the parties in the Settlement, the interests of affected consumers are concrete, measurable and wide-ranging; the interests of these consumers are clearly best-served by the Settlement. (Clifford Dec. ¶¶ 7-10); (McNulty Dec. ¶ 24); (Lang Dec. ¶¶ 6-11); (Yanchunis Dec. ¶¶ 19-24).

### 3. The opinion of competent counsel and the serious, informed, and non-collusive negotiations

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that

effects the dismissal of a class action. Before such a settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002). Plaintiffs' trial team is led by Robert A. Clifford, a nationally recognized and respected trial attorney. (Clifford Dec.). Mr. Clifford's desire and willingness to try cases is well-established and persisted throughout the litigation. Had the parties not reached a prospective settlement that offered meaningful relief in a relatively short time frame, and for as many consumers as possible, Mr. Clifford and Class Counsel would not have recommended settlement. (Clifford Dec. ¶ 6).

Not only do Class Counsel steadfastly agree that the Settlement is beneficial and in the best interest of the Settlement Class, the manner in which it was achieved lends the Settlement additional, firm credence. Specifically, United States Magistrate Judge M. David Weisman served as mediator in the Lawsuit. Judge Weisman's efforts were extraordinary, diligent and fair, ensuring the parties' negotiations were at arms-length and in good faith. Indeed the settlement amount actually came to fruition at his recommendation and with his diligent involvement as the Court-appointed mediator. (Clifford Dec at ¶¶ 7, 8, 9).

A proposed Settlement is presumed to be fair and reasonable when it resulted from arm's-length negotiations. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F. 2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D 369, 375-76 (D.D.C. 2002) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations") (internal quotation omitted); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached")

29

(internal quotation omitted). The presumption certainly applies here.

### 4. The stage of the proceedings and the amount of discovery completed

The proposed settlement came after the case had been completely worked up for trial, while numerous dispositive motions pended. In order to reach this stage, the parties engaged in extensive written discovery, document production, depositions of numerous personnel and employees of Defendants, depositions of Named Plaintiffs, disclosure of experts, expert written discovery and document production, exchange of expert reports and rebuttal reports and sur-rebuttal reports, depositions of experts and rebuttal experts, and in extensive procedural and case-dispositive motions practice. The case's lengthy docket report speaks for itself. Simply put, this has been a heavy-weight fight, which took the Plaintiffs' new legal team nearly three years to prosecute. The facts, issues, strengths and weaknesses are known to all. Each parties' counsel's knowledge, informed by extensive discovery and motions practice, bodes well for settlement approval. (McNulty Dec. ¶¶ 23, 24).

### 5. The deficiencies in the previous settlement do not exist in the Settlement

As the Court is well aware, a prior settlement was rejected by the Seventh Circuit. The problems that plagued the previous tainted litigation were cured when current counsel was appointed. The proposed settlement at issue now affirmatively and purposefully contains none of those deficiencies. For example,

> a. Previous class counsel had improper motives and improper relationships and agreements with class representatives. Current class counsel would never tolerate anything of the sort, and none of same exists now.
>
> b. The previous settlement provided incentive awards only to class representatives who approved the settlement, thereby creating a conflict of interest. The Settlement has no such condition; indeed, as noted above the Service Award provision of the Settlement is severable and, regardless of whether and for what amount the Court ultimately grants Service Awards for each of the Named Plaintiffs, the Settlement persists.

c. In the previous settlement, four class representatives did not approve the settlement; they were consequently removed and replaced. Now, all class representatives approve of the settlement and no Settlement Class Members have indicated any objections to the Settlement.

d. The Settlement allows Defendants to be reimbursed only for the Claims Notice Expenses—nothing else—from unclaimed funds from Fund A.

e. The previous settlement's valuation was deemed inflated and elusive by the Seventh Circuit. The current Settlement requires the deposit of $23,750,000 into Fund A and reservation of $2,000,000 for Fund B—clear numbers affording clear valuation, which translate into clear relief for the affected consumers.

f. The Seventh Circuit found that the previous settlement had a complicated notice to settlement class members. The current proposed Notice Plan is modern, simple, robust and targeted.

g. The proposed Settlement is clean and simple, requires no arbitrations, contains no caps per structure.

h. The Seventh Circuit found that the previous Claim Form to be long, and confusing. The proposed Claim Form is simple, self-explanatory, clear and flexible, and designed and tailored by counsel for the parties for that very purpose.

## C. Conditional Certification of the Settlement Class is Appropriate
### 1. Rule 23 prerequisites for settlement-class certification are satisfied

In 2009, the Court granted in part, and denied in part, plaintiffs' motion for class certification. (Doc. 163). To effectuate the Settlement at issue now, the Court must conditionally certify a Settlement Class, which is different than the two classes certified in 2009 by Judge Zagel (Doc. 169). Specifically, the Settlement Class comprises:

All persons in the United States who are current or former owners of Structures containing Pella ProLine® brand wood casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between January 1, 1991 and December 31, 2009 (hereinafter "ProLine Casement Windows"). The Settlement Class excludes: (1) All

31

persons who timely opt out of the Lawsuit pursuant to the terms of this Agreement; (2) All persons who, individually or as a member of a class, have brought legal proceedings against Defendants (other than in the Lawsuit brought by Named Plaintiffs), which, before entry of the Preliminary Approval Order in the Lawsuit brought by Named Plaintiffs, are resolved or agreed to be resolved by settlement, judgment, release, dismissal, or other final disposition resulting in the termination of the proceedings; and (3) All of Defendants' current employees.  (SA ¶ 2.46).

The proposed Settlement Class satisfies Rule 23's requirements.[5]

**2.** **Rule 23(a)**

Rule 23(a)(1)-(4) requires that any proposed class meet four (4) prerequisites: numerosity, commonality, typicality and adequacy of representation.  Here, each element is satisfied.

**a.** **Numerosity—Rule 23(a)(1)**

The Settlement Class Members are numerous, rendering permissive joinder impracticable.  "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002); *see also Muro v. Target Corp.*, No. 04 C 6267, 2005 WL 1405828, at *13 (N.D. Ill. July 15, 2005) ("Although there is no 'magic number' for numerosity, 'permissive joinder is usually deemed impracticable where the class members number 40 or more.'") (citation omitted).  Supported by KCC's Notice Plan, which estimates 743,000 Settlement Class Members based on information provided by Pella through Defendants' Counsel, numerosity is clearly met.  (SA Exhibit 2).

---

[5] While Defendants consent to conditional certification of the Settlement Class, Defendants continue to assert that the 2009 certified classes fail to meet the requirements of Rule 23 for certification under Rule 23(b)(2) or (b)(3). (SA ¶¶ 3.01, 15.02).

### b. Commonality—Rule 23(a)(2)

Commonality asks whether class members share at least one common question of law or fact. *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The element "does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs, so the 'low commonality hurdle is easily surmounted.'" *Kaufman v. American Express Travel Related Servs. Co.*, 264 F.R.D. 438, 442 (N.D. Ill. 2009) (citation omitted).

The Settlement Class satisfies the commonality requirement. The common nuclei of operative facts that led to Judge Zagel's 2009 class certification is far more developed now than it was then. The factual and exert discovery and the hearty dispositive motions practice yielded an evidentiary and legal evolution of the claims at issue—in Darwinesque fashion—to be tested, modified, refined and readied. Further, based on expert work and analysis, the alleged damages suffered by the Class are understood and have been addressed fairly in the Settlement. (McNulty Dec. ¶¶ 6-7, 12, 14-19, 23).

### c. Typicality—Rule 23(a)(3)

The typicality requirement under Rule 23(a)(3) is "liberally construed" and easily satisfied. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th

Cir. 1983)).

Again, the Settlement Class' claims derive from the same overarching operative facts and bases for relief. This element is satisfied.

### d. Adequate representation—Rule 23(a)(4)

Rule 23(a)(4) requires that the class representatives and class counsel "fairly and adequately protect the interests of the class." This element requires that the class representative (1) has a "sufficient interest in the outcome to ensure vigorous advocacy" and (2) does "not have interests that conflict with those of the class"; the element also requires that the class representative's lawyers be "qualified, experienced, and able to conduct the litigation." *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009), *affirmed on other grounds*, 728 F.3d 682 (7th Cir. 2013); *see also Rosario v. Livadtis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("[W]e have not previously interpreted Rule 23(a)(3) to require all class members suffer the same injury as the named class representative. Instead, we look to the defendant's conduct the plaintiff's legal theory to satisfy Rule 23(a)(3).") (citation omitted).

"Thus, the adequacy requirement places only a "modest" burden on a class representative to demonstrate '[a]n understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery.'" *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 398 (N.D. Ill. 2006) (quoting and citing *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 287, 393-94 (N.D. Ill. 2006)).

The Named Plaintiffs' interests and claims are entirely consistent with those held by the Settlement Class they represent. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010). As indicated by each of their declarations, attached hereto as "**Composite Exhibit 6,**" Named Plaintiffs fully understand and accept their charge as class

34

representatives of staying informed about the progress of the case and of conferring with Class Counsel regarding developments, including court filings and discovery and, of course, the Settlement and its terms. Named Plaintiffs also fully understand and accept their charge as class representatives of bringing suit on behalf of other people with similar concerns regarding the Windows and of their duty to act to protect the interests of other class members. *Id.* Further, since neither conflicting nor antagonistic claims exist among class members, there are no conflicts of interest, let alone disqualifying ones. *Rosario*, 963 F.2d at 1018.

Finally, Class Counsel are reputable and highly experienced litigators, having handled numerous consumer protection, products liability, and other types of complex class actions. The litigation in this case has been fierce, and Class Counsel have steadfastly held their ground and prosecuted the claims with diligence and vigor. Plaintiffs and their attorneys have demonstrated they are fully capable of litigating this case and that the interests of the Settlement Class have been and will be fairly and adequately protected. (Clifford Dec. ¶ 10); (McNulty Dec. ¶¶ 22-24).

### 3. Rule 23(b)(3)

Once Rule 23(a) is satisfied, the Court must proceed to consider the predominance and superiority requirements of Rule 23(b)(3), whether "questions of law or fact common to the class predominate over any [individualized questions], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy these requirements.

### a. Common questions predominate

The first part of Rule 23(b)(3) is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir. 2012)

(quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011)). "'Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality tends strongly to satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts.'" *Pella*, 257 F.R.D. at 484 (quoting *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006)).

Here, common questions that would be decided on a class-wide basis have been certified, and, as well, have since survived Defendants' attempts to decertify those common questions. Further, because conditional certification of a Settlement Class is sought here and there will be no trial, the Court need not inquire whether the case, if tried, would present manageability problems with individualized issues. *Smith v. Sprint Communications Co., L.P.*, 37 F.3d 612, 614 (7th Cir. 2004) (*quoting Amchem Prods.*, 521 U.S. at 591)).

### b. A class action is the superior method for adjudicating this controversy

The second Rule 23(b) element—superiority of class adjudication—is easily established here. "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Butler v. Sears, Roebuck and Co.*, 702 F.3d 359, 362 (7th Cir. 2012). Rule-makers designed the class action device for a case like this: a large number of claims, in the thousands, which would be uneconomical to pursue on an individual basis. As the Supreme Court stressed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods.*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

In this case, the potential number of Settlement Class Members is far too numerous, and the typical individual claim is too small for each individual Settlement Class Member to litigate in a separate action. The class action device is the only viable vehicle by which the vast majority of persons injured by Defendants' allegedly wrongful conduct may obtain a remedy. A class action is the appropriate and superior method for adjudication of these claims, and as such, Rule 23(b)(3) is satisfied.

### c. The Proposed Notice Plan Should Be Approved

Rule 23(e) requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(e). Courts have consistently recognized that Rule 23(e) and due process do not require that every class member receive actual notice, as long as the selected method will likely apprise interested parties. *Newberg on Class Actions* § 11.53; *Burns v. Elrod*, 757 F.2d 151, 157 (7th Cir. 1985) (notice must be reasonably calculated to reach most interested parties); *In re Prudential Ins. Co. Sales Practices Litig.*, 177 F.R.D. 216, 234 (D.N.J. 1997) (due process does not require perfection). The Notice Plan, discussed in further detail below, is consistent with Rule 23 and Due Process. (*See generally* SA Exhibit 2, SA ¶¶ 2.13, 2.33 and 5.05).

### 1. Proposed Notice Plan methods for providing notice meet criteria for approval

As set forth in the Settlement Agreement, the Notice Plan, developed by KCC, LLC, a well-respected notice and claims administrator, establishes a vigorous and informative methodology for providing notice to the Class. *See* Exhibit 2, Peak Dec. pp. 6-9. KCC estimates that the Class consists of approximately 743,000 members, located throughout the United States

in urban and rural settings. (SA Exhibit 2.) Of those, mailing addresses are available for approximately 370,000. (SA Exhibit 2.) Thus, the Notice Plan therefore affords much more than direct mail.

*First*, the Postcard Notice will be mailed to all known Settlement Class Members. Prior to mailing, the names and addresses will be vetted and checked against the USPS National change of Address database, certified via the Coding Accuracy Support System, and verified through Delivery Point Validation. A reasonable re-mailing policy and additional research through a third-party "look up service" will also be implemented. *See* Exhibit 2, Peak Dec. at ¶¶ 18-19.

*Second*, a Summary Notice will be published in three leading consumer publications (Good Housekeeping, People and Reader's Digest) with the goal of maximum exposure. These publications were strategically targeted to provide for the best possible notice to the applicable demographics of Settlement Class Members. *See* SA Exhibit 2.

*Third,* using comScore data and based on other factors, KCC recommends purchasing approximately 138 million internet "impressions"[6] to be distributed over the Google Display Network and Facebook over a period of 60 days. The online ads will include an embedded link to the case website (www.pellawindowsettlement.com). *See* SA Exhibit 2.

*Fourth,* an informational press release will be issued nationwide. *See* SA Exhibit 2.

*Fifth*, a toll-free telephone line will be established to provide direct support for potential Settlement Class Members to obtain additional information regarding the Settlement. The toll-free number will be displayed in all printed notice materials. (SA ¶ 5.05).

---

[6] "Impressions" are the total number of opportunities to be exposed to a media vehicle of vehicles containing

*Sixth*, a searchable case website (www.pellawindowsettlement.com) will be established with detailed information regarding the Settlement, the notice and claims process, the Released Claims, and all information relevant to preliminary and final approval. The website address will be displayed in all printed notice materials and will be accessible through a hyperlink embedded in the internet banner notices. (SA ¶ 7.01(6).)

The Notice Plan, includes various components, including direct mail, internet banner notices, and publication notice to known Settlement Class Members, and publication to unknown Settlement Class Members, and satisfies the requirements of Rule 23. *See, e.g.*, *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (approving a notice for a nationwide class that consisted of publication in one publication of national circulation and the posting of the notice on a website set up by a settlement administrator); *Kaufman*, 264 F.R.D. at 446; *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Pracs. Litig.*, 280 F.R.D. 362 (N.D. Ill. 2011) (approving notice plan consisting of publication, internet advertising, maintained website containing notice, targeted on-line advertising, and sponsored key-word search advertisements).

### 2. Proposed Notice Plan contents meet criteria for approval

"The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *AT&T Mobility*, 270 F.R.D. at 351 (quoting 3 *Newberg on Class Actions* § 8.32 (4th ed. 2010)).

The proposed Notice Plan satisfies the criteria. *See generally* SA Exhibit 2; SA ¶¶ 2.13,

---

notice." SA Exhibit 2.

2.33 and 5.05. The Notice Plan and related forms provide the Settlement Class with critical information about Settlement terms in a concise and neutral way and explain how Settlement Class Members' payments will be calculated and the right to seek compensation; describe the Settlement Fund; explain how Settlement Class Members may make an Opt-Out Request; inform Settlement Class Members of the right to object; disclose Class Counsel's intended fee, cost, and expense application; disclose Class Counsel's intended motion for Service Awards to Named Plaintiffs, provide the upcoming deadlines and the date of the Final Approval Hearing; and state how to get more information about the case, settlement, notice, or rights under the Settlement. As such, the notices more than satisfy the requirements for Rule 23(e) and due process. *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998); *see also Manual for Complex Litigation* (Fourth) § 21.312.

## V.   CONCLUSION

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and adequate, and falls within the range of what might ultimately be approved, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order attached as Exhibit 1 to Plaintiffs' Uncontested Motion.

DATED:  February 8, 2018                    Respectfully submitted,

*/s/ Shannon M. McNulty*
Robert A. Clifford
rac@cliffordlaw.com
Shannon M. McNulty
smm@cliffordlaw.com
CLIFFORD LAW OFFICES
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602
(312) 899-9090

George K. Lang

langlawoffice@att.net
LANG LAW OFFICE
60 B W. Terra Cotta, No. 301
Crystal Lake, Illinois 60012
(773) 575-5848

John A. Yanchunis
JYanchunis@ForThePeople.com
Marcio W. Valladares
MValladares@ForThepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505

Joel R. Rhine
jrr@rhinelawfirm.com
RHINE LAW FIRM, P.C.
1612 Military Cutoff Rd
Suite 300
Wilmington N.C. 28403
(910) 772-9960

Edward R. Moor
erm@moorlaw.net
MOOR LAW OFFICE, P.C.
One N. LaSalle Street, Suite 600
Chicago, Illinois 60602
(312) 726-6207

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 8, 2018, a copy of the foregoing PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF NOTICE PLAN, APPOINTMENT OF NAMED PLAINTIFFS AS REPRESENTATIVES OF SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL AS COUNSEL FOR SETTLEMENT CLASS, AND RELATED RELIEF was filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

*/s/ Shannon M. McNulty*
Robert A. Clifford
rac@cliffordlaw.com
Shannon M. McNulty
smm@cliffordlaw.com
CLIFFORD LAW OFFICES
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602
(312) 899-9090

42