## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter, "Agreement", as defined below) is entered into by and between (1) Kent Eubank, Jerry Davis, Ricky Falaschetti, Rita Cicinelli, Robert Josephberg, Jeffrey Acton, Kenneth Hechtman, James Neiman, Amy Chasin and Edward Ruhnke, (the "Named Plaintiffs"), for themselves and on behalf of the Settlement Class (as defined below) and all members of the Settlement Class (collectively "Plaintiffs", as defined below), and (2) Defendants Pella Corporation and Pella Windows and Doors, Inc. (collectively "Defendants"), for the purpose of settling and finally and completely resolving certain claims and lawsuits, as set forth herein, which the Named Plaintiffs, the Settlement Class, or any Settlement Class Member (as defined below) currently have against Defendants or any of the Releasees (as defined below), as well as any and all future or potential claims, whether known or unknown, which the Named Plaintiffs, the Settlement Class, and any Settlement Class Member could have or may have against Defendants or any of the Releasees arising out of or in any way relating to the design, manufacture, sale, distribution, marketing, warranty, service, use, performance, installation, purchase, or in any way relating to Pella ProLine Casement Windows (as defined below) as set forth herein.

## I.     RECITALS

**1.01.**    The purpose of this Agreement is to memorialize the terms and conditions of the Settlement through and by which the parties to this Agreement (the "Parties") wish to finally and conclusively resolve all Claims, arising out of or in any way relating to the design, manufacture, sale, distribution, marketing, warranty, service, use, performance, installation, purchase, or in any way relating to Pella ProLine Casement Windows, as set forth herein.

1.02.    Named Plaintiffs have alleged that certain windows manufactured and/or sold by Defendants contained manufacturing and design defects that Named Plaintiffs claim have caused or will cause damage, including wood rot, to class members' windows, window finishing, homes and/or personal property allegedly resulting from water intrusion.

1.03.    Named Plaintiffs have asserted various claims against Defendants in the Lawsuit (as defined below).

1.04.    Defendants deny the allegations in the Lawsuit and assert numerous defenses to the claims asserted by the Named Plaintiffs in the Lawsuit.

1.05.    The U.S. District Court for the Northern District of Illinois, Eastern Division, has certified certain litigation classes and subclasses in the Lawsuit.

1.06.    The Parties, after having engaged in extensive discovery in the Lawsuit, including written discovery, document production, depositions of numerous personnel and employees of Defendants, depositions of Named Plaintiffs, disclosure of experts, expert written discovery and document production, exchange of expert reports and rebuttal reports and sur-rebuttal reports, depositions of experts, having engaged in extensive procedural and case-dispositive motions practice, and having engaged in extensive arms-length settlement negotiations with the assistance of United States Magistrate Judge M. David Weisman serving as the mediator in the Lawsuit, have reached an agreement providing for a nationwide resolution of all claims, except personal injury claims, that have been or could have been asserted by any Named Plaintiff on behalf of themselves and the Settlement Class and by any Settlement Class Member against Defendants or any of the Releasees relating to Pella ProLine Casement Windows.

1.07.    Named Plaintiffs and Plaintiffs' counsel examined and considered the benefits to be provided to Settlement Class Members under this Agreement; considered the limited scope of the

Court's class-certification ruling and its ramifications for Settlement Class Members, including the limitations of relief available to the approved class after trial of the Lawsuit compared to the benefit afforded to the class by this Agreement in eliminating the need for subsequent litigation; considered the laws of the several States and the claims and defenses that Defendants could assert under those laws; considered the challenge of establishing various facts, such as the existence of defects in some or all Pella ProLine Casement Windows sold from 1991 to 2009, and whether and when Pella had sufficient knowledge of the alleged defects during any or all years in the relevant period; considered the inherent risks of litigation and the length of time required to complete the litigation and any appeals; and concluded the Agreement to be in the best interest of Settlement Class Members.

      **1.08.**   Defendants have at all times disputed, and continue to dispute, Named Plaintiffs' allegations in the Lawsuit and to deny any liability for any of the claims that have or could have been raised regarding Pella ProLine Casement Windows by Named Plaintiffs or any Settlement Class Member; however, Defendants believe that the comprehensive resolution of the issues relating to Pella ProLine Casement Windows as provided in this Agreement will avoid the inherent uncertainty and  substantial expense and disruption of continued litigation.

      **1.09.**   The Parties wish to compromise their differences and achieve peace with finality on the issues in dispute.

      **1.10.**   In consideration of all of the terms, conditions, covenants, and promises set forth herein, and subject to preliminary court approval, final court approval, entry of judgment and dismissal with prejudice, in the manner required by the U.S. District Court for the Northern District of Illinois, Eastern Division, and under the Federal Rules of Civil Procedure, such that the

Lawsuit is completely and finally concluded, it is hereby agreed by and between the Parties as follows:

## II.  <u>DEFINITIONS</u>

As used in this Agreement, the following definitions shall apply:

**2.01.**  "**Agreement**" means this Settlement Agreement and Release, including the exhibits attached hereto.

**2.02.**  "**Application**" means the motion or application to be filed in this Lawsuit by Lead Class Counsel, Class Counsel, any Settlement Class Member's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs, for an award of attorneys' fees, costs, expenses, and disbursements incurred in connection with this Lawsuit, including negotiating this Agreement and monitoring the Settlement administration process, in an amount totaling no more than nine millions dollars ($9 Million).

**2.03.**  "**CAFA Notice**" means notification of this Agreement to federal and state officials in accordance with 28 U.S.C. §1715.

**2.04.**  "**Claim**" or "**Claims**" means any and all past, present, future or potential claims, demands, losses, suits, proceedings, payment of obligations, adjustments, executions, offsets, actions, causes of action, costs, defenses, debts, sums of money, assertions of rights, accounts, reckonings, bills, bonds, covenants, contracts, controversies, agreements, promises, expenses (including without limitation court costs and attorneys' fees), requests for relief of any kind, statutory or regulatory obligations, judgments or any liabilities of any nature whatsoever, known or unknown, anticipated or unanticipated, fixed or contingent, matured or un-matured, accrued or un-accrued, whether in law or equity, whether sounding in tort, contract, equity, nuisance,

trespass, negligence or strict liability, and which have been, could have been, or may be asserted by or on behalf of any person.

**2.05.** **"Claimants"** mean all Settlement Claims Members who do not properly opt out of the Settlement and who submit claims during the Claims Period.

**2.06.** "**Claim Deadline**" means the date set by the Court 120 days after entry of the Preliminary Approval Order by which the Claim Form must be either postmarked or received by the Notice and Settlement Administrator.

**2.07.** "**Claim Form**" means the Court-approved form substantially identical in all material respects to the Claim Form attached hereto as Exhibit 1 that can be used by Settlement Class Members for submitting a Settlement Claim under the Claims Process terms of this Agreement as set forth in Section 5.05 of this Agreement.

**2.08.** "**Claims Payment Date**" means a date on which the Notice and Settlement Administrator will have completed the processing of all claims and will initiate disbursement of settlement funds to Settlement Class Members for all approved claims.

**2.09.** "**Claims Period**" means the 120-day period from entry of the Preliminary Approval Order through the Claim Deadline.

**2.10.** "**Claims Process**" means the process Settlement Class Members must follow to seek relief under this Agreement.

**2.11.** **"Class Administration Expenses"** means reasonable fees and expenses incurred by the Notice and Settlement Administrator for administering the Settlement, including (a) receipt and determination of Settlement Claims submitted by Settlement Class Members for benefits under the Settlement, (a) preparation of status reports to the Parties, (b) preparation of

tax returns for any settlement bank accounts, and (c) distribution of settlement payments to eligible Settlement Class Members who timely submit valid Claim Forms.

2.12.   "**Class Counsel**" means Lead Class Counsel and the following attorneys of record and their respective law firms:  Shannon M. McNulty, Edward R. Moore, Joel R. Rhine, Marcio W. Valladares, and John A. Yanchunis.

2.13.   "**Class Notice**" means the Court-approved Notice of Proposed Class Action Settlement that is substantially identical in all material respects to that attached hereto as Exhibit 2.1.

2.14.   "**Class Notice Expenses**" means reasonable fees and expenses incurred by the Class Notice Administrator for preparing and mailing of the Class Notice and for preparing and completing notice by publication.

2.15.   "**Court**" means the United States District Court, Northern District of Illinois, Eastern Division.

2.16.   "**Date of Sale**" or "**Dates of Sale**" means the date(s) the Pella ProLine Casement Windows at issue were sold by Pella Corporation or its authorized dealers or retailers.  If a Settlement Class Member cannot establish the date(s) that Pella ProLine Casement Windows at issue were sold, the Date of Sale shall be deemed to be the last day of the month following the month in which the windows at issue were manufactured.  For example, if a Settlement Class Member cannot establish the date that a Pella ProLine Casement Window at issue was sold and the window at issue was manufactured in February of 1998, the Date of Sale for that window would be deemed to be March 31, 1998.

**2.17.** "**Day**" or "**Days**" unless otherwise noted, means a calendar day or calendar days. In the event that any date or deadline set forth in this Agreement falls on a weekend or a federal holiday, such a date or deadline shall be deemed to be the first business day thereafter.

**2.18.** "**Defendants**" means Pella Corporation and Pella Windows and Doors, Inc.

**2.19.** "**Direct Class Notice Date**" means the date no later than thirty (30) Days after the entry of the Preliminary Approval Order, by which, in accord with the Notice Plan, the Notice and Settlement Administrator mails the Class Notice to Settlement Class Members for whom the Parties may have valid addresses. Pella agrees to undertake reasonable efforts to timely provide the Notice and Settlement Administrator and Class Counsel the customer names, addresses, and contact information in its possession so that such names and addresses and contact information are included in the list of addressees to receive mailed notices pursuant to the Notice Plan.

**2.20.** "**Effective Date**" means the first date that is three Days after the date on which the judgment entered pursuant to the Final Approval Order shall be deemed "Final." The judgment entered pursuant to the Final Approval Order shall be deemed "Final" on the date upon which the judgment is no longer subject to any further appeal or judicial reconsideration or review. Thus, "Final" means, without limitation, the date of expiration of the time for the filing or noticing of any appeal from, or other request for judicial reconsideration or review of, the judgment entered pursuant to the Final Approval Order, if no appeal or other request for judicial reconsideration or review was filed or noticed by that date; or, if an appeal or other request for further judicial review of the judgment entered pursuant to the Final Approval Order is timely filed or noticed, the date on which all appellate and/or other judicial proceedings resulting from such filing(s) or notice(s) have been finally terminated, and the judgment entered pursuant to the Final Approval Order is effective without the possibility of further review by any court.

**2.21.** "**Eligible Claimant**" means each Settlement Class Member who (1) is the current or former owner of real property in the United States with a Structure or Structures in which a Pella ProLine Casement Window is or was installed; (2) timely signs and submits, under penalty of perjury, a properly completed Claim Form signed by the claimant as a declaration under 28 U.S.C. § 1746; (3) timely supplies all information, documents, and photographs required by this Agreement and the Claim Form; and (4) meets all the relevant criteria set forth in the Agreement.

**2.22.** "**Eligible Damage**" means water related damage including to the Window or Windows and/or to the Sash because of water penetrating between the aluminum cladding of the window and the window Sash, as well as the consequences of such water penetration and damage, which includes;

1. Damage to the finishing on such Window;

2. Damage to other property surrounding such Window, such as water related damage to the Structure in which such window was installed; and

3. Labor costs necessary to replace a Window or its Sash because it was or is damaged from water penetration as described above and/or was or is causing damage to other property surrounding the window such that replacement was or is necessary to fix such damage.

**2.23.** "**Eligible Extended Period Claimant**" means each Settlement Class Member who (1) is the current or former owner of real property in the United States with a Structure or Structures in which a Pella ProLine Casement Window is or was installed; (2) timely complies with all the requirements in the Agreement; (3) timely contacts Pella Corporation's Customer Service Department at (888) 977-6387; and (4) meets all the relevant criteria set forth in the Agreement.

2.24. **"Extended Claims Period"** for each Pella ProLine Casement Window with Eligible Damage means the time period from the end of the Claims Period during which any PSEP benefits are available.

2.25. **"Extended Period Claimants"** mean all Settlement Class Members who have not properly opted out of the Settlement and who submit Claims for Eligible Damage during the Extended Claims Period.

2.26. **"Final Approval Hearing"** means the final settlement approval hearing(s) to be conducted by the Court in accord with the Federal Rules of Civil Procedure and due process to determine the fairness, adequacy, and reasonableness of this Agreement and counsels' fee, cost, expense, and disbursement Applications.

2.27. **"Final Approval Order"** means the Court's order granting final approval to this Agreement, awarding attorneys' fees, costs, expenses, and disbursements; and entering final judgment.

2.28. **"Lawsuit"** means the class action lawsuit that is the subject of this Agreement and which is pending in the Court as *Eubank, et al., v. Pella Corp. and Pella Windows and Doors, Inc.*, Case No. 06 C 4481.

2.29. **"Lead Class Counsel"** means Robert A. Clifford and George K. Lang.

2.30. **"Mail"** or **"Mails"** means the Notice and Settlement Administrator's delivering of a form, notice or other communication to a Settlement Class Member in accord with this Agreement through the U.S. Postal Service, through private mail- or package-delivery carriers such as UPS, FedEx, DHL, through electronic mail, through hand-delivery, or through a process-server.

2.31. "**Named Plaintiffs**" means Kent Eubank, Jerry Davis, Ricky Falaschetti, Rita Cicinelli, Robert Josephberg, Jeffrey Acton, Kenneth Hechtman, James Neiman, Amy Chasin and Edward Ruhnke.

2.32. "**Notice and Settlement Administrator**" means the individual(s) and/or firm(s) retained by agreement of the Parties and with approval of the Court to implement the Notice Plan and to administer this Agreement. The Notice and Settlement Administrator may also be referred to as the Settlement Administrator.

2.33. "**Notice Plan**" means the Court-approved plan and schedule for providing class-wide notice of the Settlement and certification of the Settlement Class, that is substantially identical in all material respects to that attached hereto as Exhibit 2, including the Class Notice, to the Settlement Class in accord with the Federal Rules of Civil Procedure and as approved and ordered by the Court, and the CAFA Notice. The Notice Plan will instruct the Settlement Class that the attempted settlement of this Lawsuit, which was finally approved by the Court in April 2013, was rejected and set aside and voided on appeal; the instruction should in all material respects be similar to the following language:

> "Plaintiffs and Defendants agreed to settle this class action lawsuit in 2011, and the Court finally approved the class settlement in April 2013. You may have received notification of the class settlement, which then required you to submit forms whether you wanted to participate in the class settlement or whether you wanted to exclude yourself from the settlement. You may have submitted these forms, including claim forms, regarding the settlement. However, in June 2014, the class settlement was rejected and set aside on appeal. The decision on appeal nullified the settlement and prompted the case to proceed on. With the exception of attorney George K. Lang, the attorneys previously representing the class were also replaced. As a consequence, even if you made an election to exclude yourself from the prior, nullified settlement, you must make a new election as to this notice (if you still choose to request exclusion from the class). You are therefore free to exclude yourself from this proceeding or, by doing nothing, be deemed to remain a class member."

**2.34.** "**Opt-Out List**" means the complete and accurate list compiled by the Notice and Settlement Administrator of all Settlement Class Members who have timely requested exclusion or opt-out from the Settlement Class and meet the requirements for exclusion under this Agreement.

**2.35.** "**Opt-Out Period**" means the period beginning on the Direct Class Notice Date and ending on the date set by the Court in the Preliminary Approval Order, which the Parties agree will be no more than 120 Days from entry date of the Preliminary Approval Order.

**2.36.** "**Pella ProLine Casement Window**" or "**Pella ProLine Casement Windows**" means Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between January 1, 1991 and December 31, 2009.  For purposes of this Settlement, it shall be presumed that a window was manufactured in the same calendar year in which it was originally sold unless clear evidence to the contrary appears.

**2.37.** "**Plaintiffs**" means the Named Plaintiffs and all members of the Settlement Class.

**2.38.** "**ProLine Service Enhancement Program**" or "PSEP" of "**PSEP Benefits**" refers to the program which provides the following services and benefits to claimants establishing water intrusion and wood durability damage:

1. Vintages covered

   a. The program covers service related to wood durability of ProLine® transom, awning and casement windows manufactured from 1991 through 2006 and units of the same style and vintage sold in other channels such as the 250 Series and the 450 Series.

2. Benefit options in years 11 through 15 after Date of Sale

a.     Branches will provide the customer the opportunity to purchase

replacement product on a sliding percent-off basis (discount) as follows:

| Vintage | % off Current Retailer's List Price |
|---------|-------------------------------------|
| Year 11 | 45% off * |
| Year 12 | 40% off * |
| Year 13 | 35% off * |
| Year 14 | 30% off * |
| Year 15 | 25% off * |
|         | *per unit/Sash basis |

b.     In addition, the branch may choose, in its sole discretion, to provide a

similar discount on finishing and installation for customers in these

situations.

**2.39.**   "**Preliminary Approval Order**" means the Order conditionally certifying the

Settlement Class, granting preliminary approval of the Settlement and this Agreement, and

approving the Notice Plan, to be entered by the Court without material alteration to the form

attached hereto as Exhibit 3.

**2.40.**   "**Released Claims**" means any and all past, present, future or potential Claims,

including without limitation any claims, demands, losses, suits, proceedings, payment of

obligations, adjustments, executions, offsets, actions, causes of action, costs, defenses, debts,

sums of money, assertions of rights, accounts, reckonings, bills, bonds, covenants, contracts,

controversies, agreements, promises, expenses (including without limitation court costs and

attorneys' fees), requests for relief of any kind, statutory or regulatory obligations, judgments or

any liabilities of any nature whatsoever, known or unknown, anticipated or unanticipated, fixed

or contingent, matured or un-matured, accrued or un-accrued, whether statutory, in law or equity,

whether sounding in tort, contract, equity, nuisance, trespass, negligence or strict liability that the Named Plaintiffs, the Settlement Class, and/or any of the Settlement Class Members ever had, now have, or may later claim to have at any time in the future against the Releasees, whether known or unknown, arising out of or in any way relating to the design, manufacture, sale, distribution, marketing, warranty, service, use, performance, installation, purchase, or in any way relating to Pella ProLine Casement Windows, including without limitation any and all Claims for breach of contract, breach of express or implied warranty, redhibition, strict liability, products liability, negligence, negligent misrepresentation, violations of state consumer protection and other statutory laws, declaratory relief, injunctive relief, unjust enrichment and/or fraud. The Released Claims include all known and unknown claims, actions, and causes of action, and this Agreement is expressly intended to cover and include all such claims, actions, and causes of action, for losses or damages of any type, with the exception of personal injury claims which are expressly not released.

2.41. "**Releasees**" means (1) Defendants; (2) any predecessors and successors in interest, any current or former parent corporations/entities, subsidiary corporations/entities and their subcontractors, affiliates, and assigns of Defendants; (3) companies acquiring any or all of Defendants' assets or capital stock; (4) any of Defendants' past or present divisions, suppliers, distributors, dealers, resellers, or sales branches; (5) current or former officers, directors, shareholders, agents, representatives and employees of Defendants; and (6) insurers of any of the foregoing persons or entities.

2.42. "**Retailer's List Price**" means the retail price, before any discounts, sales, special offers or similar reductions in price, of Pella brand products established from time to time by the Pella distributors in the list attached hereto as Exhibit 4.

**2.43.** "**Sash**" means the portion of a Pella ProLine Casement Window that is made up of the glazing (glass) and the surrounding aluminum clad wood frame and which is either vented (i.e. hinged so it may open) or fixed.

**2.44.** "**Settlement**" means this Agreement.

**2.45.** "**Settlement Claim**" or "**Settlement Claims**" means the timely submission of a fully and properly completed Claim Form(s) to the Notice and Settlement Administrator, including all required support. Only one Settlement Claim shall be submitted for each property with buildings in which Pella ProLine Casement Windows were installed, regardless of how many Eligible Claimants own or owned the property.

**2.46.** "**Settlement Class**" means all persons in the United States who are current or former owners of Structures containing Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between January 1, 1991 and December 31, 2009.

The Settlement Class excludes:

1. All persons who timely opt out of the Lawsuit pursuant to the terms of this Agreement.

2. All persons who, individually or as a member of a class, have brought legal proceedings against Defendants (other than in the Lawsuit by the Named Plaintiffs), which, before entry of the Preliminary Approval Order in the Lawsuit by Named Plaintiffs, are resolved or agreed to be resolved by settlement, judgment, release, dismissal, or other final disposition resulting in the termination of the proceedings.

3. All of Defendants' current employees and Pella's counsel.

2.47. "**Settlement Class Member(s)**" means the Named Plaintiffs and those persons who are members of the Settlement Class, as set forth in the Settlement Class as defined above. A Settlement Class Member shall not include any appointees, assignees, claims brokers, claims-filing services, claims consultants or third-party claims organizations.

2.48. "**Settlement Fund**" means the fund described in Section IV below.

2.49. "**Structure" or "Structures**" means one or more buildings (including, without limitation, residential homes or units, commercial buildings or units, storage facilities, garages, stores, apartments, and condominiums) located on a single plot of contiguous real property in the United States.

2.50. "**Window" or "Windows**" means "Pella ProLine Casement Window" or "Pella ProLine Casement Windows" as defined in Paragraph 2.36 above.

## III. CONDITIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS

3.01. For the purposes of implementing this Agreement, and for no other purpose, Defendants stipulate to the conditional certification in this Lawsuit of the nationwide Settlement Class, as set forth in the Preliminary Approval Order.

3.02. If for any reason this Agreement should fail to become effective, the Parties' stipulation to conditionally certify the nationwide Settlement Class provided for in this Agreement shall be null and void, and the Parties shall return to their respective positions in this Lawsuit as those positions existed immediately before the execution of this Agreement. Specifically, Defendants continue to deny the appropriateness of certifying this case as a litigation class, and only stipulate to the certification of the Settlement Class on the terms stated in this Agreement.

## IV.    SETTLEMENT AMOUNT

**4.01.**    Pella shall collectively dedicate a total of $25,750,000 for a common Settlement Fund against which any Eligible Claimant may file a claim for Eligible Damage, allocated as follows:

1. Pella shall pay $23,750,000.00 into a fund ("Fund A") for payment of claims for Eligible Damage submitted by Eligible Claimants during the Claims Period and of Service Awards.

2. Pella shall reserve $2,000,000.00 ("Fund B") for payment of claims for Eligible Damage submitted by Eligible Extended Period Claimants during the Extended Claims Period.

**4.02.**    In addition to the amounts paid into the Settlement Fund, Pella shall pay:

1. Class Notice Expenses; and

2. All amounts awarded by the Court pursuant to Paragraph 6.02 for attorneys' fees and all costs claimed of any type (including but not limited to expenses and disbursements), all in a total amount not to exceed $9,000,000.

**4.03.**    Class Administration Expenses shall be paid from the Settlement Fund, Fund A. Defendants shall not be responsible for any cost that may be incurred by, on behalf of, or at the direction of Plaintiffs, Plaintiffs' counsel, or Class Counsel in (a) responding to inquiries about the Settlement, this Agreement, or the Lawsuit; (b) defending this Agreement or the Settlement against any challenge to it; or (c) defending against any challenge to any order or judgment entered pursuant to the Settlement and this Agreement; or (d) completing the Claims Process.

**4.04.**    On or before ten (10) Days following the Effective Date, Defendants shall deposit the amount for Fund A, $23,750,000.00, reserved for payment of claims for Eligible Damage

submitted by Eligible Claimants during the Claims Period, into an account identified by the Notice and Settlement Administrator.

    **4.05.**    Pella's payment to the Settlement Fund provided in this Agreement will be in full satisfaction of all Settlement Class Members' Claims and potential Claims against Defendants.

## V.    <u>SETTLEMENT BENEFITS TO THE SETTLEMENT CLASS</u>

    **5.01.**  **SUMMARY OF RELIEF**

1. Settlement Class Members may seek benefits under this Agreement if they have suffered Eligible Damage.

2. Settlement Fund A provides benefits for Settlement Class Members' Eligible Damage, for

    a. Settlement Class Members who have already experienced Eligible Damage and have already repaired or replaced such damage; and

    b. Settlement Class Members who have experienced Eligible Damage but have yet to repair or replace such damage.

3. Settlement Fund B provides benefits for Settlement Class Members whose Pella ProLine Casement Windows have not manifested any Eligible Damage but may do so during the Extended Claim Period.

    **5.02.**  **SUMMARY OF PROCEDURES TO SEEK BENEFITS**

1. Settlement Class Members who have already replaced or repaired Pella ProLine Casement Windows prior to the Direct Class Notice Date may seek cash benefits under this Agreement through the Claims Process by submitting a Claim Form to the Notice and Settlement Administrator that contains the requisite information listed in the Claim Form.

2.  Settlement Class Members who have Eligible Damage that was not replaced or repaired prior to the Direct Class Notice Date may seek relief under this Agreement through the Claims Process by submitting a Claim Form to the Notice and Settlement Administrator that contains the requisite information listed in the Claim Form.

3.  Settlement Class Members who have Pella ProLine Casement Windows or Structures that manifest Eligible Damage after the Claims Period and during the Extended Claims Period may seek relief by contacting Pella's Customer Service Department at 888-977-6387.

4.  For the Claims Process described in Section 5.05 below, a Settlement Class Member can establish Eligible Damage by providing contemporaneous documentation of wood deterioration damage to one or more Windows and, if applicable, contemporaneous documentation of water damage to surrounding property as described in the definition of Eligible Damage, and a statement that such damage was caused, materially or substantially in part, by water penetrating between the aluminum cladding of the window and the window sash. The Notice and Settlement Administrator shall determine whether the Settlement Class Member has Eligible Damage. The Notice and Settlement Administrator shall document its determinations in writing, including the type of Eligible Damage established and, if applicable to a claim, the amounts incurred or to be incurred to repair or replace such Eligible Damage.

5.  The Parties shall be provided access to all Claim Forms, and supporting documentation submitted to and to be considered by the Notice and Settlement Administrator.

6.  The Parties shall be promptly provided copies of the Claim Form and supporting documentation for any fully and properly submitted claims.

7.  The Parties shall have the opportunity to review such information and provide a short objection thereto, which must be sent to, and reviewed by, the Notice and Settlement Administrator in making its determination on the claim.

8.  Determinations by the Notice and Settlement Administrator under the Claims Process are binding, final, and not appealable.

**5.03. SUMMARY OF LIMITATIONS**

1.  Settlement Class Members are eligible to seek benefits under this Agreement only if they have suffered Eligible Damage.  No recovery is allowed without satisfactory evidence of Eligible Damage.

2.  Non-recoverable damage includes, but is not limited to, (i) damage due to failure to follow Pella's installation instructions; (ii) damage due to improper installation, or home construction; (iii) damages due to misuse, or intentional, reckless, accidental, and/ or negligent physical damage to a window caused directly or indirectly by a Settlement Class Member or other person; (iv) damage to windows to the extent resulting from a natural disaster including, but not limited to fire, hurricane, wind, flood, earthquake or earth movement; and (v) damage caused by interior condensation.

3. Cash benefits can be recovered only for actual expenditures or for actual expenses necessary to address the Eligible Damage.

4. Cash benefits for Eligible Damage to or from a Window that was repaired or replaced more than 15 years after the Date of Sale, and cash benefits for Eligible Damage to or from a Window with a Date of Sale that is more than 15 years before the Direct Class Notice Date, subject to the provisions of Section 5.04, shall be limited to 25% of the actual expenditures necessary to address the Eligible Damage.

5. Settlement Class Members may not obtain double recovery of damages. The benefits provided by this Settlement are only available for expenditures beyond those for which Settlement Class Members have already been compensated. Settlement Class Member claims must be supported by some documentation of unreimbursed expenditures caused by their Eligible Damage, such as installation, finishing, labor, and material expenses, if applicable, at least in the amount to be paid. This Agreement affords no benefits or compensation for claims by current or former owners for loss of value of a Structure because of Eligible Damage.

6. Eligible Damage of Settlement Class Members that otherwise would be reimbursable under this Agreement but that is individually or collectively in excess of the Settlement Fund, as set forth above in Section IV, are not subject to payment under this Agreement. If the total amount of Settlement Class Members' Eligible Damage exceeds the amounts available in Settlement Fund A or Settlement Fund B, respectively and as applicable, then payment from the

Settlement Fund shall be made on a *pro rata* basis as set forth in Paragraph 5.04(3), below.

7. Any relief received under this Agreement shall not be deemed to extend the Windows' warranty period. The warranty period will continue to be determined only by the Date of Sale of the original Windows.

**5.04. "FUND A" BENEFITS FOR ELIGIBLE DAMAGE TO PELLA PROLINE CASEMENT WINDOWS MANIFESTING BEFORE OR DURING THE CLAIMS PERIOD.**

1. Eligible Claimants who repaired or replaced Eligible Damage on or before the Direct Class Notice Date are, subject to the provisions of paragraphs 3 and 4 of this Section 5.04, entitled to receive cash for actual expenditures and for actual expenses necessary to address Eligible Damage to or from a Window. The cash award will be for the following four categories of costs: (1) the cost of the product (per window or sash), (2) the cost of the installation labor (per window or sash), (3) the cost of finishing (per window or sash), and (4) the cost to repair damage to other property. For Eligible Damage to or from a Window that was repaired or replaced within 15 years after the Date of Sale, subject to the provisions of paragraphs 3 and 4 of this Section 5.04, the cash award will be the sum of these four categories of costs. For Eligible Damage to or from a Window that was repaired or replaced more than 15 years after the Date of Sale, subject to the provisions of paragraphs 3 and 4 of this Section 5.04, the cash award will be 25% of the sum of these four categories of costs. The amount payable for each of the four categories of costs shall be determined as follows:

   a. If a Claimant submits a Claim Form for actual costs previously incurred to repair or replace Eligible Damage, and the Notice and

Settlement Administrator *is able* to identify and/or verify how much of those costs were for the actual cost of replacement product, installation, finishing, and damage to other property based on the invoices, receipts and/or other repair documentation submitted, then such proof shall be used to determine the payment and allocation of such Eligible Damage to the categories above.

b.  If a Claimant submits a Claim Form for actual costs previously incurred to repair or replace Eligible Damage, and the Notice and Settlement Administrator is able to identify and/or verify that the amounts were actual costs incurred for Eligible Damage but the Notice and Settlement Administrator *is unable* to identify and/or verify how much of those costs were separately incurred for replacement product, installation, finishing, and/or damage to other property based on the invoices, receipts, and/or other repair documentation submitted, then the Parties agree that such costs should be deemed allocated for purposes of the above-stated categories according to the following percentages and paid on that basis.

(i)  If the Eligible Damage was repaired or replaced within 10 years after the Date of Sale, then costs shall be deemed allocated as follows:

|  | If damage to other property | If no damage to other property |
|---|---|---|
| 1.  cost of product: | 39% | 55% |
| 2.  cost of installation: | 23% | 34% |
| 3.  cost of finishing: | 8% | 11% |
| 4.  cost to repair damage to other property: | 30% | 0% |

(ii)  If the Eligible Damage was repaired or replaced more than 10 years after the Date of Sale, then costs shall be deemed allocated as follows:

|  | If damage to other property | If no damage to other property |
|---|---|---|
| 1.  cost of product: | 27% | 39% |
| 2.  cost of installation: | 33% | 46% |
| 3.  cost of finishing: | 10% | 15% |
| 4.  cost to repair damage to other property: | 30% | 0% |

2.  Eligible Claimants who have Eligible Damage to or from a Window that has manifested but has not yet been repaired or replaced as of the Direct Class Notice

Date are, subject to the provisions of paragraphs 3 and 4 of this Section 5.04, entitled to receive the following benefits:

    a.   If the Eligible Damage involves a Window with a Date of Sale that is 10 years or less before the Direct Class Notice Date, then Eligible Claimants are entitled to receive replacement product from Pella to repair or replace Eligible Damage, as well as amounts from Fund A for actual expenses necessary to repair or replace the Eligible Damage for:

        (1)   cost of installation labor;
        (2)   cost of finishing; and
        (3)   cost to repair damage to other property.

    b.   If the Eligible Damage involves a Window with a Date of Sale that is more than 10 years but within 15 years before the Direct Class Notice Date, then Eligible Claimants are entitled to receive amounts from Fund A for actual expenses necessary to repair or replace the Eligible Damage for:

        (1)   cost of product;
        (2)   cost of installation labor;
        (3)   cost of finishing; and
        (4)   cost to repair damage to other property.

    c.   If the Eligible Damage involves a Window with a Date of Sale that is more than 15 years before the Direct Class Notice Date, then Eligible Claimants are entitled to receive amounts from Fund A for 25% of actual expenses necessary to repair or replace the Eligible Damage for:

        (1)   cost of product;
        (2)   cost of installation labor;
        (3)   cost of finishing; and
        (4)   cost to repair damage to other property.

    d.   If a Claimant submits a Claim Form for actual costs necessary to repair or replace Eligible Damage, and the Notice and Settlement Administrator *is able* to identify and/or verify how much of those costs are for the cost of replacement product, installation, finishing, and damage to other property based on the quotes, invoices, receipts and/or other repair documentation submitted, then such proof shall be used to determine the payment and allocation of such Eligible Damage to the categories above.

    e.   If a Claimant submits a Claim Form for actual costs necessary to repair or replace Eligible Damage, and the Notice and Settlement

Administrator is able to identify and/or verify that the amounts are for actual costs necessary to repair Eligible Damages but the Notice and Settlement Administrator *is unable* to identify and/or verify how much of those costs are for the cost of replacement product, installation, finishing, and/or damage to other property based on the quotes, invoices, receipts, and/or other repair documentation submitted, then the Parties agree that such costs should be deemed allocated for purposes of the above-stated categories according to the following percentages and paid on that basis.

(i)     If the Eligible Damage involves a Window with a Date of Sale that is 10 years or less before the Direct Class Notice Date, then costs shall be deemed allocated as follows:

|   | | If damage to other property | If no damage to other property |
|---|---|---|---|
| 1. | cost of product: | 39% | 55% |
| 2. | cost of installation: | 23% | 34% |
| 3. | cost of finishing: | 8% | 11% |
| 4. | cost to repair damage to other property: | 30% | 0% |

(ii)    If the Eligible Damage involves a Window with a Date of Sale that is more than 10 years before the Direct Class Notice Date , then costs shall be deemed allocated as follows:

|   | | If damage to other property | If no damage to other property |
|---|---|---|---|
| 1. | cost of product: | 27% | 39% |
| 2. | cost of installation: | 33% | 46% |
| 3. | cost of finishing: | 10% | 15% |
| 4. | cost to repair damage to other property: | 30% | 0% |

3.  If Fund A is not sufficient to pay all Eligible Claimants for the full amount of Eligible Damage, Eligible Claimants shall be paid on the Claims Payment Date on a *pro rata* basis up to available amounts in Fund A in a manner to be determined by the Notice and Settlement Administrator.

4.  Distribution of Unclaimed Funds: If there are amounts left remaining in Fund A after the Notice and Settlement Administrator makes awards for Eligible Damage

to Eligible Claimants per the terms of this Agreement, those amounts shall be distributed as follows:

    a.  First, the Notice and Settlement Administrator will use amounts remaining in Fund A to reimburse Defendants for the Class Notice Expenses; no portion of any amounts remaining in Fund A under this paragraph will otherwise be returned or reimbursed to Defendants; and

    b.  Second, and after completing the distribution set forth in Paragraph 5.04(4)(a), the Notice and Settlement Administrator will use amounts remaining in Fund A to increase the recovery, on a *pro rata* basis, of those Eligible Claimants whose claims were limited to 25% of actual expenditures necessary to address Eligible Damage under Sections 5.03(4), 5.04(1) and 5.04(2)(c) above.

    c.  Third, and after the distributions set forth in Paragraph 5.04(4)(a) and 5.04(4)(b), in a manner directed by the Court upon petition by the Parties.

## 5.05. CLAIMS PROCESS FOR "FUND A"

1.  During the Claims Period, the Notice and Settlement Administrator shall establish and staff a telephone system to answer a toll-free telephone number, to return calls and to respond to inquiries by Settlement Class Members regarding the Settlement or the Agreement. The Class Notice shall direct persons who believe they may be Settlement Class Members to (1) call the toll-free number to request a copy of the long form notice, and a Claim Form be sent to them via regular

mail, facsimile, or email; or (2) visit the website
"www.pellawindowsettlement.com", which also shall be established prior to the
Direct Class Notice Date, where such information may also be accessed and/or
downloaded.

2. **Submitting claims.** Settlement Class Members must submit to the Notice and
Settlement Administrator a complete Claim Form provided for in this Agreement
together with the required documentation on or before the Claim Deadline.

3. Settlement Class Members must submit documentation and/or photographs for
each Pella ProLine Casement Window at issue, as specified in this Agreement and
the Claim Form, sufficient to show:

   a. That each window at issue is, in fact, a Pella ProLine Casement
   Window;

   b. The dates when the Pella ProLine Casement Window was
   manufactured or sold and installed;

   c. The damage is consistent with having been caused by water
   penetrating between the aluminum cladding and Sash of the window;

   d. Verification that the Settlement Class Member is/was the owner of
   the property at issue during the period when the Pella ProLine
   Casement Windows were/need to be repaired or replaced (examples
   of sufficient verification of property ownership include, without
   limitation, a copy of property tax bills for the relevant year, a copy of
   property deeds or deeds of trust, a copy of a declaration page from a
   policy of title or homeowners insurance, a copy of mortgage

statement, a copy of mortgage payment coupon, other documentation for the relevant year demonstrating ownership for the relevant year, including the property address).  If the Settlement Class Member is the owner of an individual living unit such as a condominium or townhouse, the Settlement Class Member must also provide satisfactory proof that he or she has/had the maintenance obligation during the period when the Pella ProLine Casement Windows were/need to be repaired or replaced for the types of damage described in this Agreement (an example of satisfactory proof would be a copy of the Covenants, Conditions and restrictions governing the condominium or townhouse);

e.   If any Eligible Damage already has been repaired or replaced, proof of actual costs of such repair or replacement, including copies of receipts, cancelled checks, and credit or debit card records for costs for labor, window product, paint, wallboard, or other materials necessary to repair or replace the damage; copies of receipts or other financial records showing the amount of expenditures incurred by the Settlement Class Member to repair or replace the damage; and documentation showing when the repair or replacement was made.  If necessary to account for actual costs incurred but not reflected in documentation available to show the repair or replacement,  a summary of the repair or replacement performed and costs of such

repair or replacement (e.g., costs for labor, window product, paint, wallboard, or other materials necessary to repair the damage);

f.    If any Eligible Damage to the Structure is evident but has not yet been repaired or replaced, proof of the costs to repair or replace such damage (such as a qualified contractor's written estimate), including costs for replacement product, for labor for installation, for labor for finishing (*i.e.* painting, staining or varnishing the exposed wood portion of the window), for paint, stain, or varnish, for wallboard, or other materials necessary to repair the damage to the Structure;

g.    Acknowledgement that no reimbursement, compensation, settlement, or adjudication from Defendants, a Pella distributor, a contractor or any other third party (whether or not related to Defendants or a Pella distributor) already has occurred regarding the Pella ProLine Casement Windows at issue; or alternatively stating the amount of reimbursement, compensation, settlement, or adjudication the Settlement Class Member received.

4.    **Processing Claims.** Processing of each Settlement Claim by the Notice and Settlement Administrator shall commence when the Notice and Settlement Administrator receives a Claim Form from a Settlement Class Member with the information, documents, and photographs required by the Claim Form and this Agreement. The Notice and Settlement Administrator shall advise, in writing, any Settlement Class Member who fails to submit all information, documents, or photographs required by the Claim Form and this Agreement and request the

Settlement Class Member to supply the missing information, documents, or photographs, by sending the Settlement Class Member a Notice of Incomplete Claim. Any request by the Notice and Settlement Administrator for additional information, documents, or photographs must be in writing and sent to the Settlement Class Member within 30 Days after the Notice and Settlement Administrator makes the determination that the Settlement Class Member failed to submit the necessary information, documentation, and/or photographs.

5. If a Settlement Class Member does not provide the Notice and Settlement Administrator with information, documents, or photographs requested as set forth in this Agreement, within sixty (60) Days after the Notice and Settlement Administrator sends such request, (1) the Settlement Claim will be considered denied to the extent the Settlement Class Member has failed to supply the missing information, documents, or photographs, without prejudice to the right of the Settlement Class Member to re-file a Claim Form within the Claims Period, and (2) the Notice and Settlement Administrator will send the Settlement Class Member a Notice Of Denied Claim. No Claim Form submitted for the first time after the expiration of the Claims Period will be considered or processed for benefits under this Agreement.

6. **Parties' Objection and/or Inspection Rights**.

   a. The Notice and Settlement Administrator shall promptly provide Lead Class Counsel and Defendants with copies of the Claim Form and supporting documentation submitted with each Settlement Claim upon request within five

(5) Days after determining that the Claim Form was fully and properly submitted.

b. Any Party and/or its representatives shall have thirty (30) Days from the Party's receipt of such Claim Form and supporting documentation to notify the Notice and Settlement Administrator of any objections to that Settlement Class Member's Settlement Claim. A separate written objection, no more than five (5) pages in length, must be made for each Settlement Claim to which objections are posed and must detail with specificity the basis for any objections and identify with specificity the Claim Form responses and/or supporting documentation to which objections are raised. Any objections to a Settlement Claim must be separately mailed to the Notice and Settlement Administrator via certified mail, return receipt requested and post marked no later than thirty (30) Days from the date that the party received the Claim Form and supporting documentation for that Settlement Claim. The party making the objection must bear all of its own costs incurred in reviewing any Settlement Claim materials and/or in making any objections, including without limitation any attorneys' fees and costs and mailing costs. To the extent that Defendants object to a Settlement Claim, Defendants shall undertake reasonable efforts to provide information or documents in their possession or control which would assist the Notice and Settlement Administrator in assessing the disputed Settlement Claim.

c. The Notice and Settlement Administrator shall review and take into consideration any timely submitted objections before making a good-faith

determination on whether and to what extent the Settlement Class Member has established Eligible Damage and entitlement to benefits under the terms of this Agreement. The Notice and Settlement Administrator's determination of the Settlement Claim shall be final and binding on the Settlement Class Member and Parties.

7. **Resolving Settlement Claims.** For Settlement Class Members whose Settlement Claims meet the terms of this Agreement, the Notice and Settlement Administrator will, after the Effective Date, send a Notice of Approved Claim, together with a check in the amount of any cash payment that is awarded, and/or a statement describing any benefits or cash payments for which the Settlement Class Member may be eligible along with an explanation of how to redeem and/or request such benefits and/or cash payments. The Notice and Settlement Administrator's decisions shall be final.

8. To Settlement Class Members whose Settlement Claims do not meet the terms of this Agreement, the Notice and Settlement Administrator will send them a Notice of Denied Claim. The Notice and Settlement Administrator's decisions shall be final. Settlement Class Members who submit a Claim Form but do not satisfy the eligibility criteria of this Agreement will not recover benefits under this Settlement.

**5.06. "FUND B" BENEFITS FOR ELIGIBLE DAMAGE TO PELLA PROLINE CASEMENT WINDOWS MANIFESTING AFTER THE CLAIMS PERIOD.**

1. Settlement Class Members who have Windows or Structures that manifest Eligible Damage after the Claims Period ends are eligible to make a claim for

warranty and PSEP Benefits (to be paid from Fund B) under the terms of the Pella Limited Warranty and PSEP.

2.  During the Extended Claims Period, Defendants shall pay any fees or costs from the Notice and Settlement Administrator from Fund B.

3.  If during the Extended Claims Period, Defendants provide benefits, as defined by 5.06(1), up to the total amount of Fund B, Defendants shall have no further obligation to provide benefits to Settlement Class Members. Pella Corporation, however, agrees to fully honor, and thus pay for, any warranty claims (not PSEP claims) through the year 2019 for Settlement Class Members that still have valid warranty claims. Pella Corporation may, at its sole discretion, elect to continue to provide PSEP Benefits to some or all Settlement Class Members.

4.  If, after the end of the Extended Claims Period, there are unexpended amounts remaining in Fund B, then those amounts shall revert to Pella.

**5.07. CLAIMS PROCESS FOR "FUND B"**

1.  For Extended Period Claimants who have Eligible Damage and otherwise meet the eligibility criteria of this Agreement and who seek relief as provided under this Agreement within the Extended Claims Period, Defendants will take steps that provide Settlement Class Members who contact Pella Customer Service Department at 888-977-6387, benefits under the Pella Limited Warranty and/or PSEP Benefits, which will be administered by Defendants directly and not the Notice and Settlement Administrator.

2.  Extended Claims Period claims may be made for homes that had previous claims for past damages, but such claims shall not include Windows that already were the subject of a prior claims submission.

3. During the Extended Claims period, Defendants shall be responsible for determining whether an Extended Period Claimant has experienced qualifying Eligible Damages.

## VI.  ATTORNEYS' FEES, COSTS AND PAYMENT TO CLASS REPRESENTATIVES

**6.01.**  Released Claims include, without limitation to the scope of the release defined in § 2.40 above, any and all claims for attorneys' fees, costs, expenses, or disbursements incurred by Lead Class Counsel, Class Counsel, any Settlement Class Member's counsel, and/or any law firms who have entered appearances for Settlement Class Members or Named Plaintiffs in connection with this Lawsuit.

**6.02.**  By the deadline established by the Preliminary Approval Order, Lead Class Counsel, Class Counsel, any Settlement Class Member's counsel, and/or any law firms who have entered appearances for Settlement Class Members or Named Plaintiffs shall file an Application (as defined above) asking the Court for an award of attorneys' fees, costs, expenses, and disbursements in the Lawsuit totaling no more than nine million dollars ($9 Million). Defendants will not object to or oppose an aggregate and total recovery of up to and including nine million U.S. dollars ($9 Millions) for all attorneys' fees, costs, expenses, and disbursements incurred. Counsel for any Settlement Class Member petitioning for fees, costs, expenses or disbursements must be made by the deadline established by the Preliminary Approval Order.  Defendants will have no obligation to pay any attorneys representing the Class or any Settlement Class Members in this Lawsuit more than the aggregate amount of nine million ($9 Million) for attorneys' fees, costs, expenses, and disbursements in this Lawsuit.

**6.03.**  Any objector electing to be represented by counsel shall be solely responsible for any fees, costs, expenses or disbursements incurred or charged by such counsel, and in no event shall the Parties or Class Counsel be responsible for such fees, costs, expenses or disbursements. The Court may, at its discretion, award fees, costs, expenses, or disbursements to an attorney hired by a Settlement Class Member for the purpose of objecting to this Agreement; any such

award shall be paid from the nine million ($9 Million) allocated in this Agreement for the fee and cost Application (as defined above). The Court shall require that any attorney hired by a Settlement Class Member for the purpose of objecting to the proposed Settlement or to the Application, and who intends to make an appearance at the Fairness Hearing, provide to Lead Class Counsel and counsel for Defendants and to file with the Clerk of the Court, in this Lawsuit, a notice of intention to appear no later than 120 Days from entry of the Preliminary Approval Order or as the Court may otherwise direct.

      **6.04.**    The Named Plaintiffs will ask the Court to award each of them a "Service Award" to compensate Named Plaintiffs for the time, effort, expense, and service that they personally invested in the Lawsuit in the amount of up to $25,000 per Named Plaintiff (as defined above), as approved by the Court and to be paid out of Fund A, described above, subject to Court approval. The receipt of a Service Award is not in any way conditioned on a Named Plaintiff's support of this Agreement, and each Named Plaintiff agrees to enter into this Agreement even if the Court declines to award any amount as a Service Award.

      **6.05.**    Any Service Awards and awards of attorneys' fees, costs, expenses, and disbursements sought pursuant to this Agreement are subject to and dependent upon the Court's approval. However, this Settlement is not dependent or conditioned upon the Court's approving any requests for payments sought pursuant to this Agreement, or awarding the particular amounts sought by requests made pursuant to this Agreement. In the event the Court declines or adjusts any counsel's fee, cost, expense and disbursement Application, this Agreement will continue to be effective and enforceable by the Parties.

      **6.06.**    Defendants agree that on or before ten (10) Days following the Effective Date, Defendants shall deposit the sum awarded and approved by the Court for attorneys' fees, costs, expenses and disbursements sought under this Agreement, up to nine million dollars **($9 Million)** into an account identified by Lead Class Counsel. Upon payment into the account identified by Lead Class Counsel as provided by this Agreement, Defendants shall have no liability in any

form arising from any Application for attorneys' fees, costs, expenses or disbursements, or arising from the disbursement of funds for attorneys' fees, costs, expenses, and disbursements from Lead Class Counsel's account.

## VII.   SETTLEMENT APPROVAL

**7.01.   PRELIMINARY APPROVAL.** As soon as practicable after the execution of this Agreement, but at the latest within twenty-eight (28) Days, the Parties shall jointly move the Court to enter the Preliminary Approval Order attached hereto as Exhibit 3. The Preliminary Approval Order shall specifically include provisions that:

1. Preliminarily approve the Settlement and find that this Agreement is fair, reasonable, and adequate to the Settlement Class.

2. Conditionally certify the Settlement Class for the purpose of effectuating the Settlement.

3. Designate Named Plaintiffs as the representatives of the Settlement Class.

4. Designate Class Counsel as counsel for the Settlement Class.

5. Set a date for the Final Approval Hearing no later than 210 Days after the entry date of the Preliminary Approval Order.

6. Regarding class notice,

   a. approve the form and content of the Class Notice attached as Exhibit 2.1;

   b. direct the Notice and Settlement Administrator to mail the Class Notice no later than thirty (30) Days after the entry of the Preliminary Approval Order to all Settlement Class Members for whom the parties have

addresses, using first-class mail, and having first updated the addresses using the National Change of Address database;

c.  direct the Notice and Settlement Administrator to post the Class Notice and this Agreement, along with other documents as agreed to by the Parties, on a website with the domain name "www.pellawindowsettlement.com" within ten (10) Days of the entry of the Preliminary Approval Order;

d.  direct the Notice and Settlement Administrator to prepare a notice for publication, to be published within forty-five (45) Days of the entry of the Preliminary Approval Order in the publications upon which the Parties and the Notice and Settlement Administrator mutually agree.

e.  direct the Notice and Settlement Administrator to file proof of mailing of the Class Notice and proof of compliance with the Notice Plan at or before the Final Approval Hearing, along with the Opt-Out List;

f.  direct Defendants to file with the Court a declaration of compliance with the notice requirements, including the CAFA notice requirements, after notice has been given; and

g.  find that the Class Notice and the Notice Plan to be implemented pursuant to this Agreement are reasonable, constitute the best notice practicable under the circumstances, constitute due and sufficient notice of the Settlement and the matters set forth in said notice to all persons entitled to receive notice, and fully satisfy the requirements of due process and of Fed. R. Civ. P. 23.

7. Regarding requests for exclusion, or "opt-outs", require that:

    a. Any member of the Settlement Class who desires to request exclusion from the Settlement Class submit to the Notice and Settlement Administrator an appropriate, complete, and timely request for exclusion or opt-out on or before a date set by the Court that is 120 Days from entry date of the Preliminary Approval Order;

    b. Any request for exclusion or opt-out be exercised individually by a Settlement Class Member, not as or on behalf of a group, class, or subclass, not by any appointees, assignees, claims brokers, claims filing services, claims consultants or third-party claims organizations; except that such exclusion request may be submitted by a Settlement Class Member's attorney on an individual basis;

    c. Any Settlement Class Member who does not submit a timely, written request for exclusion or opt-out from the Settlement Class will be bound by all proceedings, orders, and judgments in the Lawsuit.

8. Regarding objections and requests to intervene, require that:

    a. Any Settlement Class Member that has not submitted a timely request for exclusion from the Settlement Class, and each governmental entity, that wishes to object to the fairness, reasonableness, or adequacy of this Agreement or any term or aspect of the proposed Settlement, or to intervene in the Lawsuit, must provide to the Notice and Settlement Administrator (who shall forward it to Lead Class Counsel and counsel for Defendants) and file with the Court no later than 120 Days from

entry date of the Preliminary Approval Order a statement of the objection or motion to intervene, including any support the Settlement Class Member or governmental entity wishes to bring to the Court's attention and all evidence the Settlement Class Member or governmental entity wishes to introduce in support of his or her objection or motion, or be forever barred from objecting or moving to intervene.  Such a statement must (1) be made in writing, including a heading that refers to the Lawsuit by name and number; (2) contain the objector's or putative intervener's full name and current address; (3) declare that the objector or putative Settlement Class Member intervener currently owns, or formerly owned, a Structure containing a Pella ProLine Casement Window(s); (4) provide a statement of the objector's or intervener's specific objections to any matter before the Court and the grounds and arguments for the objection or request to intervene; (5) include all documents and other writings the objector wishes the Court to consider and describe any and all evidence the objecting or intervening Settlement Class Member or governmental entity may offer at the Final Approval Hearing, including but not limited to, the names and expected testimony of any witnesses; (6) be signed and dated by the objector or intervenor, and (7) be filed with the Court and served on the Notice and Settlement Administrator, Lead Class Counsel, and counsel for Defendants on or before a date set by the Court that is no later than 120 Days from the entry date of the Preliminary Approval Order.  Any

papers not filed and served in the prescribed manner and time will not be considered at the Final Approval Hearing, and all objections not made in the prescribed manner and time shall be deemed waived;

b. Any Settlement Class Member who objects or requests to intervene shall make themselves available to be deposed by Class Counsel and counsel for Defendants in the county of the objector's or putative intervener's residence within thirty (30) Days of service of his or her timely written objection or motion to intervene;

c. Any objections or requests to intervene by a Settlement Class Member must be exercised individually by a Settlement Class Member, not as or on behalf of a group, class, or subclass, not by any appointees, assignees, claims brokers, claims filing services, claims consultants or third-party claims organizations; except that such objections or requests may be submitted by a Settlement Class Member's attorney on an individual basis;

d. Any member of the Settlement Class or governmental entity, or their respective counsel, that desires to appear in person at the Final Approval Hearing for purposes of objecting to the Settlement or intervening in the Lawsuit, file with the Court and serve on Lead Class Counsel and counsel for Defendants a notice of appearance in the Lawsuit, in addition to simultaneously filing and serving with the written objections or intervention requests described above that also contains a statement of desire to appear personally at the Final Approval Hearing for purposes

of objecting to the Settlement, on or before a date set by the Court that is no later than 120 Days from the entry date of the Preliminary Approval Order;

e. Any responses to objections or motions to intervene must be filed with the Court and served upon Lead Class Counsel and counsel for Defendants on or before a date set by the Court that is no later than 180 Days from the entry date of the Preliminary Approval Order;

9. Regarding attorneys' fees, costs and expenses, require that:

a. Lead Class Counsel, Class Counsel, any Settlement Class Member's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs, must file and serve their Application(s) on or before a date set by the Court that is no later than 90 Days from the entry date of the Preliminary Approval Order;

b. Requests for Service Awards must be filed and served on or before a date set by the Court that is no later than 90 Days from the entry date of the Preliminary Approval Order.

c. Any objection to Lead Class Counsel's, Class Counsel's, and any Settlement Class Member's counsel, and/or law firms who have entered appearances for Settlement Class Member's or Named Plaintiffs' Application(s) be filed with the Court and served on Class Counsel and counsel for Defendants on or before a date set by the Court that is no later than 120 days from the entry date of the Preliminary Approval Order;

d. Lead Class Counsel, Class Counsel, any Settlement Class Member's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs must file and serve any reply in support of their Application(s) on or before a date set by the Court that is no later than 150 days from the entry date of the Preliminary Approval Order;

10. Regarding Settlement Claims, require that all Claim Forms from Settlement Class Members must be either received by the Notice and Settlement Administrator or postmarked on or before the Claim Deadline set by the Court;

11. Designate KCC LLC or a similarly qualified firm as the Notice and Settlement Administrator and instruct the Notice and Settlement Administrator to perform the functions specified in this Settlement Agreement, including:

a. Implement the Notice Plan;

b. Receive, evaluate, and either approve as meeting the requirements of this Agreement or disapprove as failing to meet those requirements, Claim Forms sent by Settlement Class Members seeking to receive benefits provided for in this Agreement, all in accordance with this Agreement;

c. Provide to Defendants and Lead Class Counsel respectively true and accurate lists of the names and addresses of all Settlement Class Members who have submitted Claim Forms and whose Claim Forms the Notice and Settlement Administrator has determined to be (i) complete and valid or (ii) incomplete or invalid;

    d.   Send to each Settlement Class Member who has submitted a Claim Form that the Notice and Settlement Administrator has determined not to be a valid Settlement Claim, and to Lead Class Counsel and Defendants' counsel, a Notice of Denied Claim;

    e.   Send to each Settlement Class Member who has submitted a Claim Form that the Notice and Settlement Administrator has determined to be a complete and valid Settlement Claim for which the appropriate relief is determined under the terms of this Agreement, a Notice of Approved Claim;

    f.   Process requests for exclusion from the Settlement in accordance with the terms of this Agreement;

    g.   Before mailing the Class Notice establish a toll-free telephone number that Settlement Class Members can call and which contains recorded answers to frequently asked questions, along with an option permitting callers to speak to live operators or to leave messages in a voicemail box, to request additional Claim Forms or additional information regarding the Settlement; and

    h.   Within thirty (30) Days after the payment of valid Settlement Claims for monetary compensation by the Notice and Settlement Administrator, provide (i) to Defendants' counsel and Lead Class Counsel a statement of the total number of Settlement Claims submitted, the total number of Settlement Claims determined to be valid, the total dollar amount paid to Settlement Class members pursuant to the Agreement, the total dollar

amount paid to Settlement Class Members for each category of benefits for both sash and full units (product, installation, finishing, other property) and (ii) to Defendants' counsel all original Claim Forms and supporting documentation for each Settlement Claim determined to be valid pursuant to this Agreement, with a copy set to Lead Class Counsel.

12. Preliminarily enjoin all Settlement Class Members and their legally authorized representatives, unless and until they have timely and properly excluded themselves from the Settlement Class from:

    a. Filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims;

    b. Filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Member who has not timely excluded his or herself (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to, or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims; and

     c.   Attempting to effect an opt-out of a class of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based on, relating to or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims.

13.   Adopt any additional provisions agreeable to the Parties that might be necessary to implement the terms of this Agreement and the proposed Settlement.

**7.02.  FINAL APPROVAL.**  At the Final Approval Hearing the Parties will jointly request the Court to enter a Final Approval Order.  The Parties agree to cooperate in drafting a proposed Final Approval Order at the appropriate time.  The Final Approval Order shall specifically include provisions that:

1.   Grant final approval of the certification of the Settlement Class, designate  the Named Plaintiffs as the representatives of the Settlement Class, and designate Class Counsel as counsel for the Settlement Class;

2.   Grant final approval of the Settlement and this Agreement as fair, reasonable, and adequate to the Settlement Class as demonstrated by an analysis of the criteria described in *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002) and in accord with the requirements of due process and  Fed. R. Civ. P. 23;

3.   Adjudge that the Class Notice and Notice Plan implemented for the Settlement Class Members were performed in a reasonable manner, constituted the best notice practicable under the circumstances, constituted due and sufficient notice of the Lawsuit and the Settlement, and fully satisfied the requirements of due process and Fed. R. Civ. P. 23;

4. Order the dismissal with prejudice of all claims, causes of action, and counts alleged in the Lawsuit relating to Pella ProLine Casement Windows, and incorporate by reference the releases and covenant not to sue stated in this Agreement, with each of the Parties to bear it's or his own costs and attorneys' fees, except as provided in this Agreement;

5. Provide for the release of all Released Claims and permanently enjoin the Settlement Class Members from asserting, filing, maintaining, or prosecuting any of the Released Claims in the future;

6. Having heard and considered any and all claims for attorneys' fees, costs, expenses, and disbursements by Lead Class Counsel, any Settlement Class Member's counsel, and/or law firms who have entered appearances for Settlement Class Members or Named Plaintiffs, authorize and direct the payment by Defendants, at the time set forth in the Agreement, into an account designated by Lead Class Counsel, for any such claim of attorneys' fees, costs, expenses, and disbursements approved by this Court, and the Final Approval Order shall determine the extent of Defendants' obligation for the payment of attorneys' fees, costs, expenses, and disbursements; and shall provide that Defendants have no obligation for any attorneys' fees, costs, expenses, or disbursements to any counsel, any law firm, any party, or any Settlement Class Member beyond that awarded in the Final Approval Order and consistent with the terms of this Agreement;

7. Authorize and direct the payment of $23,750,000.00 by Defendants to create Fund A, at the time set forth in the Agreement, into an account identified by the Notice and Settlement Administrator, to be distributed as set forth in the Agreement;

8. Preserve the Court's continuing jurisdiction over the administration of the Settlement and enforcement of this Agreement;

9. Determine that the Agreement and Settlement provided for herein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption of, concession of, or an admission by any Defendant of liability or non-liability or of the certifiability or non-certifiability of a litigation class, or of any alleged misrepresentation or omission in any statement or written document approved or made by any Defendant; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the provisions of this Agreement, as further set forth in this Agreement;

10. Approve the Opt-Out List and determine that the Opt-Out List is a complete list of all Settlement Class Members who have timely and properly requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Approval Order and Judgment;

11. Permanently enjoin all Settlement Class Members and their legally authorized representatives, unless they have timely and properly excluded themselves from the Settlement Class, from:

    a. Filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or

administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims;

b. Filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Member who has not timely excluded his or herself (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to, or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims; and

c. Attempting to effect an opt-out of a class of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based on, relating to or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the Lawsuit and/or the Released Claims.

12. Authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement and all Exhibits hereto as (1) shall be consistent in all material respects with the Final Approval Order and Judgment and (2) do not limit the rights of the Settlement Class Members.

**7.03. Agreement to Cooperate.**    Plaintiffs, Lead Class Counsel, and Defendants will cooperate and take all reasonable actions to effectuate the Settlement and the terms and

conditions of this Agreement. If the Court fails to enter either the Preliminary Approval Order or the Final Approval Order and Judgment, Named Plaintiffs, Lead Class Counsel, and Defendants will use all reasonable efforts that are consistent with this Agreement to cure any defect identified by the Court. If, despite such efforts, the Court does not enter the Preliminary Approval Order and Final Approval Order and Judgment, the Parties will return to their prior positions in the Lawsuit, in accordance with this Agreement.

## VIII.   RELEASES

8.01.   The Named Plaintiffs and each and every Settlement Class Member, regardless of whether any Settlement Class Member executes and delivers a written release, on behalf of themselves, as well as on behalf of all of their heirs, successors in interest, assigns, transferees and grantees, fully and forever release, remise, acquit and discharge Releasees from the Released Claims. By executing this Agreement, the Parties acknowledge that, upon entry of the Final Approval Order by the Court, the Lawsuit shall be dismissed with prejudice pursuant to the terms of the Final Order, an order of dismissal with prejudice shall be entered, and all Released Claims shall thereby be conclusively settled, compromised, satisfied, and released as to the Releasees. The Final Approval Order shall provide for and effect the full and final release, by the Named Plaintiffs and all Settlement Class Members, of all Released Claims.

8.02.   The Settlement Class Members hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the Released Claims, but that it is still their intention to hereby fully, finally, and forever settle, release, extinguish and waive all of the Released Claims, known or unknown, suspected or unsuspected, that they had, now have or, absent this Agreement, may in the future have had against Releasees. In furtherance of such

intention, the release herein given by the Settlement Class Members to the Releasees shall be and remain in effect as a full and complete general release of the Released Claims notwithstanding any discovery of the existence of any such additional or different claims or facts.

**8.03.    Express Waiver of California Civil Code 1542 and Waiver of Unknown Claims**.  The Settlement Class Members hereby acknowledge that **the release herein given expressly waives all the rights and benefits** of Section 1542 of the California Civil Code, or conferred by any comparable or similar statute or common law rule, regulation, or principle of law or equity established in any state or other jurisdiction.   Section 1542 of the California Civil Code reads as follows:

> Section 1542. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

**8.04.**    If any Settlement Class Member brings an action or asserts a claim against Releasees contrary to the terms of this Agreement, the counsel of record for such Settlement Class Member shall be provided with a copy of this Agreement.  If the Settlement Class Member does not within 20 Days thereafter dismiss his or her action and the action or claim is subsequently dismissed or decided in favor of the Releasees, the Settlement Class Member who brought such action or claim shall pay Releasees' costs and expenses, including reasonable attorneys' fees, incurred by Releasees in the defense of such action or claim.

**8.05.**    Except as otherwise provided, nothing in this Agreement shall be construed in any way to prejudice or impair the right of Defendants or Defendants' insurers to pursue such rights and remedies as they may have against each other or third parties, who are not Settlement Class Members, under or in connection with any insurance policies.

8.06.    Notwithstanding the above, the Court shall retain jurisdiction over the parties and the Agreement and with respect to the future performance of the terms of the Agreement, and to ensure that all payments and other actions required of any of the Parties by the Settlement and this Agreement are properly made or taken.

## IX.    COVENANT NOT TO SUE

9.01    The Named Plaintiffs, on behalf of themselves and the Settlement Class Members, (a) covenant and agree that neither the Named Plaintiffs nor any of the Settlement Class Members, nor any person authorized to act on behalf of any of them, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Agreement, against Releasees in either their personal or corporate capacity, with respect to any Claim, claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by Releasees in connection with the Released Claims, (b) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of any of them, and (c) agree that this Agreement shall be a complete bar to any such action.

## X.    CLASS MEMBERS' RIGHT TO OPT OUT

10.01.  A Settlement Class Member may opt out of the Settlement Class during the Opt-Out Period.  To exercise the opt-out right set forth in this Section, the Settlement Class Member must complete, sign, and return a request for exclusion.  The request must:

1.  Contain the Settlement Class Member's full name and current address;

2.  Identify the name and address of the Settlement Class Member's counsel, if any;

3.  Declare that the Settlement Class Member owns or owned a Structure or Structures in which Windows  manufactured between January 1, 1991 and

December 31, 2009, have or had been installed and provide the addresses for those properties;

4. Declare that the Settlement Class Member wants to be excluded from the Settlement Class;

5. Identify the date the Windows were installed and/or purchased and be willing to provide verification if requested;

6. Identify the date the Structure was constructed; and

7. Be signed and dated by the Settlement Class Member.

**10.02.** The request for exclusion must be sent by mail, addressed to the Notice and Settlement Administrator, postmarked on or before the end of the Opt-Out Period. Any Settlement Class Member who elects to opt out of the Settlement Class pursuant to this Section shall not be entitled to relief under this Agreement.

**10.03.** Defendants agree that to the extent the statutes of limitation and/or repose, or any other defense of lapse of time are or have been tolled by operation of law as to a Settlement Class Member's Claim, they will continue to be tolled as to any Settlement Class Member who opts out of the Settlement until 90 Days after the Notice and Settlement Administrator's receipt of the request to opt out or for such longer period as the law may provide without reference to this Agreement.

## XI.    PARTIES' RIGHTS OF TERMINATION

**11.01.** Unless the Parties agree otherwise in writing, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if (1) the Court declines to conditionally certify the nationwide Settlement Class as provided in the Preliminary Approval Order; or (2) the Court materially alters any of the terms of this Agreement (as determined by the

Parties); or (3) the Court fails to enter the Preliminary Approval Order or the Final Approval Order in substantially the same form submitted by the Parties.

**11.02.** If 300 or more Settlement Class Members with verified Pella ProLine Casement Windows request exclusion from the Settlement Class, Defendants may elect, unilaterally, to rescind this Agreement by notifying Lead Class Counsel and the Court not less than 20 Days before the date set for the Final Approval Hearing.

**11.03.** If this Agreement is terminated in a manner set forth in this Section, the legal position of each party shall be the same as it was immediately prior to the execution of this Agreement and each party may exercise its legal rights to the same extent as if this Agreement had never been executed.

## XII. NON-DISPARAGEMENT

**12.01**. The Parties and counsel hereto agree not to disparage each other, Pella brand products, or the compromised claims at issue in the Lawsuit or the Settlement.

## XIII. ENFORCEMENT OF THIS AGREEMENT

**13.01** In the event Defendants, the Named Plaintiffs, Class Counsel, or any Settlement Class Member fails to perform under this Agreement, counsel for the aggrieved party shall give counsel for the other party written notice of the breach. If the alleged breach is not cured to the satisfaction of the aggrieved party within 30 Days, the other party may apply to the Court for relief.

**13.02** In the event of a breach by Defendants, the Named Plaintiffs, Class Counsel, or any Settlement Class Member, the Court may exercise all equitable powers over the breaching party(ies) to enforce this Agreement, the Final Order, and Judgment, irrespective of the availability or adequacy of any remedy at law.

## XIV.   REPRESENTATIONS AND WARRANTIES

**14.01.**  Each of the Parties represents and warrants to, and agrees with, each of the other Parties as follows:

1. Each of the Parties has had an opportunity to receive, and has received, independent legal advice from his, her or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income-tax consequences of this Agreement, and fully understands and accepts the terms of this Agreement.

2. Settlement Class Members represent and warrant that no portion of any Claims that the Named Plaintiffs, the Settlement Class, and/or any of the Settlement Class Members ever had, now have, or may later claim to have at any time in the future against the Releasees, whether known or unknown, arising out of or in any way relating to the Pella ProLine Casement Windows, and no portion of any recovery or settlement to which they may be entitled, has been assigned, transferred, or conveyed by or for Settlement Class Members in any manner; and no person other than Settlement Class Members shall have any legal or equitable interest in the Claims or Settlement Claims referred to in this Agreement but the Settlement Class Members themselves.

3. None of the Parties is relying or has relied on any statement, representation, omission, inducement, or promise of any other party (or any officer, agent, employee, representative, or attorney for any other party) in executing this Agreement, or in making the Settlement provided for herein, except as expressly stated in this Agreement.

4. Each of the Parties has investigated the facts pertaining to the Settlement and this Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that party and his, her or its attorneys.

5. Each of the Parties has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having had the opportunity to consult with, and having in fact consulted with, his, her or its attorneys.

6. Each term of this Agreement, under the titles of the various paragraphs, is contractual and not merely a recital.

## XV.  MISCELLANEOUS

**15.01.** This Agreement is for settlement purposes only.  It has been entered into for the purpose of compromising and settling a disputed matter and is not an admission of any deficiency or defect with or in Pella ProLine Casement Windows or with or in the design, manufacture, sale, distribution, marketing, warranty, service, use, performance, installation, purchase, or in any way relating to Pella ProLine Casement Windows, any misrepresentations concerning the Pella ProLine Casement Windows, or any failure to disclose information concerning the Pella ProLine Casement Windows.  Neither the execution of this Agreement, nor any of its provisions or attachments, nor any action taken pursuant to its terms shall, in this action or in any other action or proceeding, be construed or considered as evidence of an admission by Defendants of the validity of any Claim that has or could have been made by the Named Plaintiffs, the Settlement Class, or any Settlement Class Member, and Defendants deny there are any deficiencies or defects with or in the Pella ProLine Casement Windows or with or in the design, manufacture, sale, distribution, marketing, warranty, performance, purchase, or in

any way relating to the Pella ProLine Casement Windows.  This Agreement, however, may be admitted as evidence in any action to enforce its terms.

**15.02.**  The certification of a Settlement Class pursuant to the terms of this Agreement shall not constitute, and shall not be construed as, an admission on the part of Defendants that this Lawsuit, or any other proposed class action, are appropriate for certification as a litigation class under any applicable law.  The Parties agree that as of the Effective Date, the Orders certifying the litigation classes in this Action shall be vacated, and the Final Approval Order and Judgment shall instead certify a Settlement Class pursuant to this Agreement.

**15.03.**  The Confidentiality Order shall remain in effect.

**15.04.**  This Agreement has been negotiated at arm's length by Lead Class Counsel and Defendants' counsel.  If a dispute should later arise regarding any of its terms, no Party shall be deemed to be the drafter of any particular provision of this Agreement.

**15.05.**  This Agreement shall be construed under and governed by the laws of the State of Illinois.

**15.06.**  Class Counsel have taken substantial discovery in this Lawsuit, including extensive document review and depositions of Defendant personnel with responsibility for design, manufacture, sale, distribution, marketing, warranty,  service, use, performance, installation, and purchase of the Pella ProLine Casement Windows.  Based on that discovery, as well as Class Counsel's knowledge of and participation in other class actions, Class Counsel have evaluated the factual bases for the claims asserted in this Lawsuit and the defenses raised by Defendants to those claims.  Class Counsel believe they have engaged in more than sufficient discovery to evaluate the terms of this Agreement on an informed basis and to negotiate a fair and reasonable resolution of this Action.

**15.07.**  This Agreement, including all attached Exhibits, shall constitute the entire agreement between the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreement or understandings between the Parties.  The Agreement may not be changed, modified, or amended except in writing signed by Lead Class Counsel and Defendants' counsel and subject to Court approval.  The Parties contemplate that the Exhibits may be modified by subsequent agreement of Defendants' counsel and Lead Class Counsel prior to dissemination to the Settlement Class Members, and subject to Court approval.

**15.08.**  This Agreement, if approved by the Court, shall be binding upon and inure to the benefit of the Parties, and their representatives, heirs, successors and assigns.

**15.09.**  Any notice, instruction, application for Court approval or application for Court order sought in connection with this Agreement or other document to be given by any Party to any other Party shall be in writing and delivered personally or by electronic mail followed by overnight courier, to the following representatives for the Parties:

| FOR SETTLEMENT CLASS: | DEFENDANTS' COUNSEL: |
|---|---|
| Robert A. Clifford<br>Clifford Law Offices<br>120 N. LaSalle Street, Suite 3100<br>Chicago, IL 60602<br>(312) 899-9090<br>rac@cliffordlaw.com<br><br>George K. Lang<br>Lang Law Office<br>60 B W. Terra Cotta, No. 301<br>Crystal Lake, IL 60012<br>(773) 575-5848<br>langlawoffice@att.net | John P. Mandler<br>Faegre Baker Daniels LLP<br>2200 Wells Fargo Center<br>90 S. Seventh St.<br>Minneapolis, MN 55402<br>(612) 766-7000<br>john.mandler@FaegreBD.com |

**15.10.**  Except as otherwise provided in this Agreement, any filing, submission, Claim, or notice or written communication shall be deemed filed, delivered, submitted, or effective as of

the date of its postmark when mailed via first-class U.S. Mail, registered or certified mail, postage prepaid, properly addressed to the recipient, or when delivered to any commercial one-or-two-day delivery service properly addressed to the recipient, or when actually received by the recipient, whichever occurs first.

**15.11.** In no event shall Defendants, Defendants' counsel, Named Plaintiffs, any Settlement Class Member, or Class Counsel have any liability for claims of wrongful or negligent conduct by any third party with respect to the implementation of any term of this Agreement.

**15.12.** The Parties and their respective counsel agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement.

**15.13.** The Parties are entering into this Agreement for the purpose of compromising and settling disputed claims. Nothing in this Agreement or in the documents relating to this Agreement shall be construed, deemed or offered as an admission by any of the Parties, or by any Settlement Class Member, for any purpose in any judicial or administrative action or proceeding, whether in law or in equity, regardless of whether this Agreement ultimately becomes effective.

**15.14.** Defendants will continue to provide service in the normal course of business to their customers, including Settlement Class Members, through the Effective Date.

**15.15.** This Agreement may be executed by the Parties in one or more duplicate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile or email transmission of any signed original of this Agreement and/or retransmission of any signed facsimile or scanned transmission shall be the

same as delivery of an original. At the request of any party, The Parties shall confirm facsimile transmission by signing a duplicate, original of this Agreement.

**APPROVED AS TO FORM:**

**CLIFFORD LAW OFFICES**

_____
Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

_____
George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

_____
Kent Eubank

_____
Jerry Davis

_____
Ricky Falaschetti

_____
Rita Cicinelli

_____
Robert Josephberg

_____
Jeffrey Acton

_____
Kenneth Hechtman

_____
James Neiman

_____
Amy Chasin

_____
Edward Ruhnke

**FAEGRE BAKER DANIELS LLP**

_____
John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN 55402-3901

_____
John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606
*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

_____
David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

_____
David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

**APPROVED AS TO FORM:**

**CLIFFORD LAW OFFICES**

Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

Kent Eubank

Jerry Davis

Ricky Falaschetti

Rita Cicinelli

Robert Josephberg

Jeffrey Acton

Kenneth Hechtman

James Neiman

Amy Chasin

Edward Ruhnke

**FAEGRE BAKER DANIELS LLP**

John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN 55402-3901

John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606
*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

**APPROVED AS TO FORM:**

**CLIFFORD LAW OFFICES**

Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

Kent Eubank

Jerry Davis

Ricky Falaschetti

Rita Cicinelli

Robert Josephberg

Jeffrey Acton

Kenneth Hechtman

James Neiman

Amy Chasin

Edward Ruhnke

**FAEGRE BAKER DANIELS LLP**

John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN  55402-3901

John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606
*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

**APPROVED AS TO FORM:**

**CLIFFORD LAW OFFICES**

 

_____
Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

 

_____
George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

 

_____
Kent Eubank

_____
Jerry Davis

_____
Ricky Falaschetti

_____
Rita Cicinelli

_____
Robert Josephberg

_____
Jeffrey Acton

_____
Kenneth Hechtman

_____
James Neiman

_____
Amy Chasin

_____
Edward Ruhnke

**FAEGRE BAKER DANIELS LLP**

 

_____
John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN  55402-3901

 

_____
John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606

*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

 

_____
David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

 

_____
David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

**APPROVED AS TO FORM:**

**CLIFFORD LAW OFFICES**

_____
Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

_____
George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

_____
Kent Eubank

_____
Jerry Davis

_____
Ricky Valaschetti

_____
Rita Cicinelli

_____
Robert Josephberg

_____
Jeffrey Acton

_____
Kenneth Hechtman

_____
James Neiman

_____
Amy Chasin

_____
Edward Ruhnke

**FAEGRE BAKER DANIELS LLP**

_____
John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN  55402-3901

_____
John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606

*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

_____
David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

_____
David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

## DECLARATION OF RITA CICINELLI

I, RITA CINCINELLI, under penalty of perjury declare as follows:

1.      I live in Ortonville, Michigan, County, Oakland.  I am over 18 years old, competent to testify, and have personal knowledge of the matters set forth in this declaration.

2.      I have sued Pella Corporation and Pella Windows and Doors, Inc. ("Pella") in this case for damages arising from Pella's ProLine Casement Windows.  In addition to myself, I am suing for everyone else who also purchased Pella ProLine Casement Windows.

3.      As generally set forth in the Seventh Amended Complaint in the lawsuit pending in federal court in Chicago, IL, *Eubank et al., v. Pella Corp. et al.*, Case No. 06 C 448, I own a house or building with Pella ProLine Casement Windows that I have replaced or will replace because those windows failed and caused me damage.

4.      I agreed to join this case as a Class Representative after discussing the options with my attorneys and after I retained them on a contingency basis.

5.      I understand the importance of and the responsibilities associated with my role as a Class Representative.  I also understand that I am bringing a lawsuit on behalf of other people with similar concerns regarding Pella ProLine Casement Windows.  I further understand that I have an obligation to act to advance and to protect the interests of the other Class Members.  At no time have I put my interests above the interests of the Class.

6.      In addition, I understand the importance of staying informed about the progress of the case and conferring with my attorneys regarding the appropriate actions to take in the case.  I have been active in this case from the beginning, speaking with my attorneys about the progress of the case, and reviewing court documents filed in my case, as well as other documents and information provided by Pella to my attorneys.  My attorneys have kept me informed of the progress of this case.  I have also provided information to my attorneys.  Finally, I was informed of the terms of the settlement, and I fully support the settlement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, that the foregoing statements are true and correct.

Executed this 8th day of December, 2017.

RITA CINCINELLI

**APPROVED AS TO FORM:**

**CLIFFORD LAW OFFICES**

Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

Kent Eubank

Jerry Davis

Ricky Falaschetti

Rita Cicinelli

Robert Josephberg

Jeffrey Acton

Kenneth Hechtman

James Neiman

Amy Chasin

Edward Ruhnke

**FAEGRE BAKER DANIELS LLP**

John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN 55402-3901

John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606

*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

APPROVED AS TO FORM:

**CLIFFORD LAW OFFICES**

Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

Kent Eubank

Jerry Davis

Ricky Falaschetti

Rita Cicinelli

Robert Josephberg

Jeffrey Acton

Kenneth Hechtman

James Neiman

Amy Chasin

Edward Ruhnke

**FAEGRE BAKER DANIELS LLP**

John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN 55402-3901

John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606

*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

**APPROVED AS TO FORM:**

**CLIFFORD LAW OFFICES**

_____
Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

_____
George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

_____
Kent Eubank

_____
Jerry Davis

_____
Ricky Falaschetti

_____
Rita Cicinelli

_____
Robert Josephberg

_____
Jeffrey Acton

_____
Kenneth Hechtman

_____
James Neiman

_____
Amy Chasin

_____
Edward Ruhnke

**FAEGRE BAKER DANIELS LLP**

_____
John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN  55402-3901

_____
John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606
*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

_____
David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

_____
David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

**APPROVED AS TO FORM:**

**CLIFFORD LAW OFFICES**                     **FAEGRE BAKER DANIELS LLP**

_____                  _____
Robert A. Clifford                            John P. Mandler
120 N. LaSalle Street, Suite 3100             2200 Wells Fargo Center
Chicago, IL 60602                             90 S. Seventh Street
                                              Minneapolis, MN 55402-3901
**LANG LAW OFFICE**

_____                  _____
George K. Lang                                John A. Roberts
60 B W. Terra Cotta, No. 301                  311 S. Wacker Drive, Suite 4300
Crystal Lake, IL 60012                        Chicago, IL 60606
*ATTORNEYS FOR PLAINTIFFS*
                                              *ATTORNEYS FOR DEFENDANTS*

**NAMED PLAINTIFFS:**                         **DEFENDANTS:**

_____                  _____
Kent Eubank                                   David N. Smart
                                              Senior Vice President
_____                  Chief Financial Officer
Jerry Davis                                   *For Pella Corporation*

_____
Ricky Falaschetti

_____                  _____
Rita Cicinelli                                David N. Smart
                                              Senior Vice President
_____                  *For Pella Windows and Doors, Inc.*
Robert Josephberg

_____
Jeffrey Acton

_____
Kenneth Hechtman

_____
James Neiman

_____
Amy Chasin

_____
Edward Ruhnke

**APPROVED AS TO FORM:**

| | |
|---|---|
| **CLIFFORD LAW OFFICES** | **FAEGRE BAKER DANIELS LLP** |

Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

Kent Eubank

Jerry Davis

Ricky Falaschetti

Rita Cicinelli

Robert Josephberg

Jeffrey Acton

Kenneth Hechtman

James Neiman

Amy Chasin

Edward Ruhnke

John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN 55402-3901

John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606
*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

**APPROVED AS TO FORM:**

**CLIFFORD LAW OFFICES**

Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

Kent Eubank

Jerry Davis

Ricky Falaschetti

Rita Cicinelli

Robert Josephberg

Jeffrey Acton

Kenneth Hechtman

James Neiman

Amy Chasin

Edward Ruhnke

**FAEGRE BAKER DANIELS LLP**

John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN 55402-3901

John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606
*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

**APPROVED AS TO FORM:**

**CLIFFORD LAW OFFICES**

_____
Robert A. Clifford
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602

**LANG LAW OFFICE**

_____
George K. Lang
60 B W. Terra Cotta, No. 301
Crystal Lake, IL 60012
*ATTORNEYS FOR PLAINTIFFS*

**NAMED PLAINTIFFS:**

_____
Kent Eubank

_____
Jerry Davis

_____
Ricky Falaschetti

_____
Rita Cicinelli

_____
Robert Josephberg

_____
Jeffrey Acton

_____
Kenneth Hechtman

_____
James Neiman

_____
Amy Chasin

_____
Edward Ruhnke

**FAEGRE BAKER DANIELS LLP**

_____
John P. Mandler
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN 55402-3901

_____
John A. Roberts
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606

*ATTORNEYS FOR DEFENDANTS*

**DEFENDANTS:**

_____
David N. Smart
Senior Vice President
Chief Financial Officer
*For Pella Corporation*

_____
David N. Smart
Senior Vice President
*For Pella Windows and Doors, Inc.*

59 of 59