**Dr. Sanford Shifrin**
**195 Brighton Drive**
**Aurora, OH 44202**

April 24, 2018

Clerk of the Court
United States District Court for the
Northern District of Illinois, Eastern Division
219 S. Dearborn St.
Chicago, IL 60604

*Eubank v. Pella Corporation* Settlement Administrator
P.O. Box 404041
Louisville, KY 40133-4041

Robert A. Clifford
Clifford Law Offices
120 N. LaSalle St., Suite 3100
Chicago, IL 60602

John P. Mandler
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 S. Seventh St.
Minneapolis, MN 55402



**FILED**

MAY -1 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

      RE:    Sanford Shifrin's objection to class action settlement in
                    *Eubank v. Pella Corp. et al.,* Case No. 06 C 4481

To Whom It May Concern,

     I am writing to object to the class action settlement in *Eubank v. Pella Corp.* On the date of my written objection, I own a home with Pella ProLine Casement windows manufactured by Pella from 1991 to 2009.

     I am objecting to this settlement because of the onerous—if not functionally impossible—nature of the class action claim form. The 12-page claim form (made all the more complicated by the 12-page, largely indecipherable notice) requires information that reasonable class members (many of whom are old or infirm) cannot provide, meaning these class members don't have any real opportunity to test whether they are entitled to class damages.

     In keeping with the claim form's objection process, which the form misleadingly describes as commencing on page 12, when it commences on page 11, I offer the following specific reasons for my objection:

The claim form's shortcomings begin at Section B. where it requires class members to obtain and study the settlement agreement if they hope to understand their proposed benefits. This section then describes eligible windows. But often (and as in my case) windows have been replaced or are inaccessible due to their height, particularly when in seniors' homes. In both instances, it is impossible to obtain the information required to make a claim, thus rendering the negotiated relief illusory. What's more, lay people are likely unfamiliar with many of the terms contained in the claim form, such as "casement," "awning," "transom window," "aluminum cladding," "finishing," and "window sash." This expected unfamiliarity makes it impossible for me and likely others to properly complete the claim form. Finally, Section B. includes many capitalized words (e.g., "Structure," "Date of Sale," and "Direct Class Notice Date"). It seems these are defined terms yet no definitions appear in proximity to these words' use, thus rendering them unclear to the average class member.

Section C. involves the data-completion process. It requests dollar totals for various, awkwardly worded repairs to windows and sashes, though sashes remains undefined. But instead of requesting accessible dollar figures for these categories, the claim form encourages class members to track down and rely contractors—perhaps from years ago, if even still accessible—and to attach this elusive information. For defective windows not yet repaired, the claim form requires contractor estimates. Of course, if no estimate has been prepared, this section is impossible to complete. This means that class members with such windows do not get to share in the class recovery.

Section D. is perhaps the claim form's most onerous and unreasonable requirement. It requires class members either to scale their (often inaccessible) windows or to recreate or relocate discarded windows to locate and read certain difficult-to-locate language that appears challenging to read even with young eyes. It's not surprise that even the claim form had to offer a blown-up version of two codes seemingly conceding the impossibility of reading them in real life.

Then, despite the number of windows subject to claim, the claim form offers room to describe only two windows' information. But when doing so, the claim form requires such particular and often unattainable information as the notice-of-damage date and whether the undescribed "sash" was damaged. This section also collapses past and present damages into a single and not-understandable line-item inquiry. This section again requires class members to attach documents from elusive contractors, if indeed class members even worked with contractors, class members can reach their contractors, class members' contractors still have the necessary information, and the contractors are responsive when class members requests don't generate income for them.

But if a class member has *more than* two damaged windows (as I do), though the claim form mentions an "ATTACHED 'ADDITIONAL WINDOW FORM,'" no addition window form appears nor does the claim form explain how to obtain one. And even if the claim form did, since this additional window form is not part of the original claim submission, class members would likely not know how to submit it and to relate it to their original claim form.

Next, the claim form requests specific dates of purchase. Often (as in my case), these dates are impossible to reconstruct. It is also largely impossible to know whether some or all windows were damaged on the same date, as the claim form requires class members indicate.

Finally, Section E. requires photos of damaged windows. But this is necessarily impossible when windows have been replaced. The claim form also requires documents demonstrating repairs. But often these documents are destroyed since class members had no reason to save them for a claims process. And for not-yet-replaced windows, the claim form requires detailed, signed, and sworn statements from often elusive and uncooperative contractors.

The best support for my objection, which I base on the notice's and claim form's onerous requirements and incomprehensibility, are the notice and claim forms themselves. I submit that even experienced lawyers can make little sense of these documents. If the purpose of a notice-and-claims process is to explain a class action settlement and to encourage claims, these documents do not achieve that. I struggled mightily to understand the notice and to complete the claim form and finally gave up from their sheer impenetrability and complexity. As hard as I tried, I was simply unable to make my claim. This is not how a class action notice-and-claims process should work, and it is precisely not the outcome that the claims process should encourage.

For all these reasons, I respectfully request that the Court deny final approval of this class action settlement and appoint new counsel and a new claims administrator to more mindfully fashion a notice-and-claims process that will promote the purpose of class action settlement, which is to provide meaningful relief to class members.

Dated: April 24, 2018

Very truly yours,

*Sanford Shifrin*

Dr. Sanford Shifrin