# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENT EUBANK, JERRY DAVIS, RICKY FALASCHETTI, RITA CICINELLI, ROBERT JOSEPHBERG, JEFFREY ACTON, KENNETH HECTHMAN, JAMES NEIMAN, AMY CHASIN and EDWARD RUHNKE, individually and on behalf of all others similarly situated,<br><br>                  *Plaintiffs*,<br><br>  v.<br><br>PELLA CORPORATION and PELLA WINDOWS AND DOORS, INC.,<br><br>                  *Defendants*. | No.: 06 C 4481<br><br>Hon. Sharon Johnson Coleman |

**MOTION FOR ATTORNEYS' FEES AND FOR INCENTIVE AWARD, AND MEMORANDUM OF LAW IN SUPPORT, OF THEODORE FRANK, ATTORNEY FOR OBJECTOR MICHAEL SCHULZ**

This case, the Court of Appeals explained, "underscores the importance . . . of objectors" in class litigation. *Eubank v. Pella Corp.*, 753 F.3d 718, 721 (7th Cir. 2014). When the first settlement landed before the Court of Appeals, the Circuit described it as "inequitable" and "scandalous"—a settlement that was "stacked against the class." *Id.* at 721, 724. The settlement "should have been disproved on multiple grounds." *Id.* at 723. But for the work of objectors, with Theodore Frank as their lead attorney on appeal, the class would have been between about $15 million and $22 million worse off. Seventh Circuit precedent supports an attorneys' fees award of over 30% of this added value or over 30% of the total fee award, *Kaufman v. American Express Travel Related Services Co.*, 877 F.3d 276, 287-88 (7th Cir. 2017), yet Frank requests only $1,500,000.

## BACKGROUND

### I. The District Court Approves a Settlement That Pays Class Counsel More in Attorneys' Fees Than the Class Will Receive in Benefits

#### A. The Settlement

Plaintiff Leonard Saltzman sued defendant Pella Corporation in 2006. Dkt. 1. Saltzman was represented in the case by his son-in-law, Paul M. Weiss of the Complex Litigation Group. *Eubank v. Pella Corp.*, 753 F.3d 718, 721 (7th Cir. 2014). The class action complaint alleged that Pella sold defective windows. Dkt. 1 ¶¶11-16. Saltzman sought damages under product-liability and consumer-protection laws. *Id.* ¶¶39-77.

In 2011, class counsel signed a settlement agreement with Pella. *See* Dkt. 277-1 ("Initial Settlement"). The Initial Settlement created two mechanisms by which class members could receive compensation for their defective windows. The relatively less cumbersome one, dubbed the "Claims Process," allowed for an award of up to $750 if a class member submitted a 12-page, notarized claim form. *Id.* ¶55. Alternatively, the "Arbitration Process" offered up to $6,000 in

compensation *but required the class member to show causation*. *Id.* ¶¶55, 61(b). Electing to arbitrate also required submission of a 13-page, notarized form. Dkt. 277-1. The class representatives asserted that the settlement was worth over $100 million to the class, Dkt. 291 at 8-10, while Pella claimed it was worth between $36 million and $54 million. Dkt. 290-1.

To class counsel, the settlement was worth $11 million—that was the maximum amount of attorneys' fees and expenses that Pella agreed to pay. Initial Settlement ¶¶50(7), 101. The trial court approved the settlement (over the objections described below). Class counsel requested, and the court ordered that he receive, the full $11 million. *Eubank*, 753 F.3d at 723.

### B. Opposition to the Settlement and Schulz's Objection

Objectors opposed the Initial Settlement both in the trial court and on appeal. The objectors included four class members, who had earlier served as class representatives but who were dismissed by Saltzman and Weiss after refusing to support the Initial Settlement. Class member Michael J. Schulz also objected. Schulz's attorney Christopher Bandas engaged Theodore Frank to handle any appeal. Declaration of Theodore Frank ¶2 ("Frank Decl.").[1] Frank is the leading attorney vindicating the rights of class members against unfair class action settlements through his work with the non-profit Center for Class Action Fairness (the "Center"), which he founded in 2009. Frank and the attorneys of the Center have represented class members in dozens of cases challenging unfair and abusive class action procedures, settlements, and fee requests. *Id.* ¶3. Those efforts have generated over $100 million in additional settlement benefits. *Id.* The Center has won reversal or remand of unfair class action settlements or

---

[1] At first, Bandas made the sole appearance on behalf of Schulz, while Frank ghostwrote briefs on behalf of Bandas. Frank performed the great majority of appellate work on behalf of Schulz. Frank Decl. ¶4. Bandas is not submitting a separate fee request; he will receive a portion of any fees that are awarded to Frank. *Id.* ¶16.

distributions in fifteen different federal appeals spanning five different circuits. *Id.* In cases where the Center did not have a client, such as this one, Frank has worked as a private attorney on appellate issues if he found merit in the objection.

Through Bandas and a local counsel, Schulz filed an objection in the trial court raising three main defects. First, he argued that Weiss—who at the time he negotiated the settlement was the subject of an attorney disciplinary investigation—was motivated to reach a quick settlement over a fair settlement as a result of his impending disciplinary problems. Weiss was thus impermissibly conflicted and inadequate to serve as class counsel. Dkt. 319 at 2-4; Dkt. 255. Second, Schulz argued that Saltzman was an inadequate class representative because of his close familial relationship to Weiss. Dkt. 319 at 4; Dkt. 255. Finally, Schulz argued that the settlement was not worth the $100 million value that class counsel had ascribed to it (or even the $36 million to $54 million that Pella claimed it to be worth). Dkt. 319 at 5-6.

The district court denied the objections and approved the settlement. Schulz appealed, as did the group of former class representatives.[2]

## II. Relying Heavily on Schulz's Arguments, the Seventh Circuit Reverses the District Court's Approval of the Settlement

Schulz led the charge on the appeal. In his briefing, Schulz added to and expanded upon the deficiencies he had first identified in his objection. *See* Frank Decl. Exs. 1-3. Schulz's counsel, Frank, received the majority of the objectors' time at oral argument. Counsel for the group of four objectors received the remaining time. *Id.* ¶ 6. For Schulz and the other objectors, the appeal was a wholesale victory, a complete win. The court not only rejected the settlement,

---

[2] Another class member, Ron Pickering, objected and appealed. Pickering's brief did not make any unique arguments. He filed no reply and presented no oral argument. Frank Decl. ¶ 6. A fourth appeal was filed by objector Dave Thomas, but was dismissed for a failure to prosecute.

but also concluded Saltzman and his lawyer, Weiss, were not adequate representatives of the class. *Eubank*, 753 F.3d at 729.

In reaching that conclusion, the Seventh Circuit drew heavily from Schulz's arguments. For example, the Seventh Circuit agreed with Schulz that "it was improper for the lead class counsel to be the son-in-law of the lead class representative." *Eubank*, 753 F.3d at 723. As Schulz explained, "[e]ven though a plaintiff is not entitled to share in the attorney's fees, a plaintiff might still be motivated to maximize the attorney's fee where there is a close relationship between the plaintiff and the attorney." Frank Decl. Ex. 1 at 16. The court adopted nearly identical reasoning, explaining that the relationship between Saltzman and Weiss "created a grave conflict of interest; for the larger the fee award to class counsel, the better off Saltzman's daughter and son-in-law [Weiss] would be financially." *Eubank*, 753 F.3d at 724.[3]

The Seventh Circuit also adopted Schulz's argument that Weiss's ethical and financial problems rendered him inadequate class counsel. Schulz pointed out that Weiss was the subject of a disciplinary investigation, explaining that "class counsel's own legal troubles created settlement leverage that prejudiced the class relative to a class counsel not facing sexual harassment allegations." Frank Decl. Ex. 1 at 19. "[I]f Weiss were suspended or disbarred before the case settled," Schulz continued, "he might be precluded from obtaining his share of a multi-million-dollar fee." *Id.* at 20. The Seventh Circuit said exactly the same thing: "Weiss's ethical embroilment was another compelling reason for kicking him and Saltzman off the case"

---

[3] The settling parties defended the adequacy of Saltzman as class representative by noting that four additional named plaintiffs bore no familial relationship to Weiss. But Schulz pointed out that those four named plaintiffs, chosen at the time of settlement, were chosen *precisely* because they supported the settlement after the original four did not. Frank Decl. Ex. 1 at 11. The Seventh Circuit invoked that very argument: "The appellees . . . point out that Saltzman was one of five class representatives, and the other four didn't have a conflict of interest," but the Court of Appeals rejected the new named plaintiffs because they were "selected by the conflicted lead class counsel." *Eubank*, 753 F.3d at 724.

4

because "[i]t was very much in [Weiss's] personal interest . . . to get the settlement signed and approved *before* the disciplinary proceeding culminated in a sanction that might abrogate his right to share in the attorneys' fee award in this case." *Eubank*, 753 F.3d at 724; *see id.* at 722.

Appellees defended Weiss's conflicts by arguing that he was just one of many attorneys representing the class. The Seventh Circuit, however, adopted Schulz's argument that Weiss had "*de facto* control of the litigation through power of the purse" because the Initial Settlement's provision vested in Lead Class Counsel the "sole discretion" to allocate any attorneys' fees, costs, expenses, and disbursements. *Compare* Frank Decl. Ex. 3, *with Eubank*, 753 F.3d at 721 ("Realistically *he* [*i.e.*, Weiss] was the lead class counsel.").

Even beyond those deficiencies, Schulz identified numerous indicia of "self-dealing" that, he argued, precluded approval of the settlement. Again, the Seventh Circuit agreed:

- Schulz pointed out that recovery under the settlement required claimants to "successfully jump[ ] through all the hoops of a 12-page claim form," among other requirements, which would "substantially" reduce the value of the settlement's benefits. Frank Decl. Ex. 1 at 23, 24. And, at least for the Arbitration Process, Pella retained the right to challenge payment of the claim for lack of causation. *Id.* at 24. The Seventh Circuit seized on these aspects of the settlement, agreeing with Schulz that the settlement's value to the class was likely "less than $1.5 million." *Eubank*, 753 F.3d at 724-26; *compare* Frank Decl. Ex. 1 at 23 (settlement worth "substantially less than $1.5 million").

- Schulz explained that Pella was already issuing some refunds to class members under its warranty program, and noted that the valuation of the settlement agreement did not account for money that class members would have received anyway under the warranty. Frank Decl. Ex. 1 at 23. The Seventh Circuit agreed that the settlement's treatment of payments received under the warranty further undermined the reasonableness of the settlement. *Eubank*, 753 F.3d at 726.

- Schulz noted that the class attorneys received their $11 million fee award immediately—in fact, they received $2 million even before the settlement was final—while the benefits to class members were paid out over time. Frank Decl. Ex. 1 at 24. The Seventh Circuit criticized this "suspicious feature of the settlement," commenting that class counsel's "feeble efforts" did not justify "generous attorneys' fees[ ]." *Eubank*, 753 F.3d at 724, 726; *see also id.* at 723 (noting "asymmetry").

5

- Schulz criticized the "clear sailing" and "kicker" provisions of the settlement as used in the original settlement, which prohibited Pella from contesting any fee request at or below $11 million and which ensured that any unawarded fees would revert to Pella rather than the class. The clear-sailing provision "lays the groundwork for lawyers to 'urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red carpet treatment on fees,'" Frank Decl. Ex. 1 at 28, while the kicker "deter[s] court scrutiny of the fee award," *id.* at 30. The Seventh Circuit again agreed, finding these provisions "questionable" and faulted the district court for refusing to delete them from the settlement agreement. *Eubank*, 753 F.3d at 723.

Indeed, Schulz was the only appellant to argue several of these points.[4]

Ultimately, Schulz argued, the "settlement requires class members to accept a $750 cap on claims through a burdensome claims process that in many ways gives class members no more than what they already had before the settlement"—*i.e.*, payment under the warranty. Frank Decl. Ex. 1 at 30. Pella was "required to pay nearly nothing it was not already paying. . . . What the class does receive is subject to Pella's challenge later, and even those who overcome Pella's challenges might get nothing but a coupon." Frank Decl. Ex. 2 at 14. "Pella, on the other hand: is exonerated from future lawsuits; surrenders no defenses; retains the right to challenge claims; . . . and caps its potential liability to every potential claimant." *Id.* at 14-15. The Seventh Circuit put it more colorfully: "Class counsel sold out the class." *Eubank*, 753 F.3d at 726. For a settlement worth *at most* $8.5 million, a highly compromised class counsel agreed to a settlement that guaranteed $11 million for himself. *Id.* That was not fair, adequate, and reasonable. It was Objector Schulz's advocacy that helped the Seventh Circuit reach that conclusion.

In the Seventh Circuit, Frank also opposed both a motion to dismiss the appeal and a petition for rehearing; Frank further protected the appeal through ghostwriting an opposition to a motion for a gigantic appeal bond that, if successful, might have derailed the appeal. Frank Decl.

---

[4] Schulz was the only objector-appellant, for example, who challenged the "kicker" provision or who argued that the inordinately complex claims process would reduce class recovery below $1.5 million.

¶8. Such scorched-earth tactics are not uncommon in appeals challenging a class settlement, in part because deficient class settlements so often result where class counsel abdicate their ethical duties to the class. *Id.* Because of Frank's experience in opposing unfair class settlements, he ably opposed these tactics. *Id.*

Unsurprisingly, the press lauded Frank's efforts in the Seventh Circuit. Reporting on the case, *Forbes* explained that "[w]ere it not for objectors (represented in this case by attorney Ted Frank . . .), there would be no one to point out the obvious conflicts of interest that riddle such cases." Frank Decl. Ex. 5. And a headline in *The Litigation Daily* proclaimed, "Objector Frank Convinces Posner To Toss Pella Deal." *Id.* Ex. 6.

### III. The Parties Reach a Revised Settlement That Triples the Relief for the Class

Back in district court on remand, class counsel—now Robert Clifford of the Clifford Law Offices (Weiss having been suspended from the practice of law for 30 months)—sought preliminary approval of a new settlement on February 8, 2018. *See* Dkt. 672. That settlement creates a $25,750,000 fund to compensate claims associated with the defective windows. *Id.* at 5. Of that fund, $23,750,000 will compensate class members during the claims period and is non-reversionary—with one exception, unclaimed funds will not revert to Pella. *Id.* An additional $2,000,000, which is reversionary, will be used to compensate claimants during an "extended period." *Id.* at 10. Thus, the Revised Settlement represents an increase in value of over $15 million above the Seventh Circuit's $8.5-million estimate of the Initial Settlement's value. The complex claims process of the Initial Settlement was also overcome by the appeal, with the Revised Settlement calling for a "simple and efficient claims process." *Id.* at 12-13.

Finally, the Revised Settlement provides for $9 million in attorneys' fees. *Id.* at 21.

7

**ARGUMENT**

I. **Frank Is Entitled to Fees for the Approximately $15 Million to $22 Million Improvement Achieved Through His Efforts on Appeal**

Counsel for an objector who confers a material benefit on the class is entitled to a fee award. *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 748 (7th Cir. 2011); 7B Charles A. Wright & Arthur Miller, *Federal Practice & Procedure* § 1803 n.6 (3d ed. 2004). As Judge Posner remarked in this very case, if "object[ors] persuade the judge to disapprove [the settlement], and as a consequence a settlement more favorable to the class is negotiated and approved, the objectors *will receive a cash award that can be* substantial." *Eubank*, 753 F.3d at 720 (emphasis added); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (holding that objectors' "lawyers who contribute materially to the proceeding" are entitled to a fee).

Objectors are entitled to attorneys' fees because they "serve as a highly useful vehicle for class members, for the court and for the public generally" to bring adversarial scrutiny to proposed class action settlements. *Great Neck Capital Appreciation Inv. P'ship, LP v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 412 (E.D. Wis. 2002). "Therefore, a lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service." *Id.* at 413. When those efforts "improve[ ] the settlement, assist[ ] the court, and/or enhance[ ] the recovery in any discernible fashion," the objectors' counsel are entitled to a fee. *Id.* at 413.

A. **A $1.5 Million Attorney's Fee Is Less Than the Amount Due to Frank**

Improve the settlement, assist the court, and enhance the recovery of the class is precisely what Objector Schulz did. In fact, Schulz's efforts enabled the class to increase its recovery from three-fold to ten-fold. In rejecting the flawed Initial Settlement, the Seventh Circuit

8

concluded it was worth far less than advertised—at most only $8.5 million. *Eubank*, 753 U.S. at 726-27. Schulz plausibly argued that the accurate characterization of the settlement's value was less than $2 million. Frank Decl. Ex. 2 at 8-15. On remand, though, the parties negotiated a settlement worth a guaranteed $23,750,000 and as much as $25,750,000. They had that opportunity only because Schulz challenged the settlement's deficiencies on appeal and won.

In exchange for earning that substantial benefit for the class, Frank seeks attorneys' fees of $1.5 million.[5] By each metric, that fee request is reasonable and justified. In the Seventh Circuit the "central consideration" in assessing the reasonableness of an attorneys' fee "is what [objector's] counsel achieved for the members of the class rather than how much effort [objector's] counsel invested in the litigation." *Redman v. Radioshack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014). Thus, the Seventh Circuit has approved objectors' fees calculated as a percentage of the total attorneys' fees that matches the percentage of class recovery attributable to the objectors' efforts. *Trans Union*, 629 F.3d at 747-48 (awarding objectors 37% of total fee award where objectors' efforts were responsible for 37% of the total benefit conferred).

Here, the appeal yielded between *two-thirds and ninety percent of the total class recovery*: an increase of between $15,250,000 and $21,750,000 resulting in a total class benefit of $23,750,000 (excluding the reversionary $2 million fund).[6] To be sure, "[t]he final settlement

---

[5] Counsel for Frank did confer with current class counsel, Clifford, concerning a negotiated fee award for Schulz. Clifford neither agreed nor disagreed, and simply advised that attorneys who believe they are entitled to a fee from the settlement fund should independently file a motion for such fees as directed in the Court's preliminary approval order. Dkt. 675.

[6] The total value may be slightly less. If any amount of the $23,750,000 remains after all claims have been paid, Pella is entitled to seek reimbursement of the notice costs that it paid. Because "[n]otice and fees . . . are costs, not benefits," any reimbursement should not be included in the value of the settlement. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014). Thus, if the claims do not exhaust the $23,750,000 fund and Pella is reimbursed the cost of notice, the increased value to the class may be less than $15,250,000. The settling parties do not appear to have disclosed the cost of notice, however, or to have estimated the likelihood that money will remain in the fund at the end of the claims period. We thus

9

was the result of the combined efforts" of class counsel and objectors' counsel. *Trans Union*, 629 F.3d at 747. Recognizing that fact, Frank proposes that one-third of the increased settlement value be attributed to objectors who prevailed on appeal, and two-thirds of the increased value be attributed to class counsel's efforts on remand. *See id.* at 747-48. Under that allocation, the counsel for objectors who prevailed on appeal would receive one-third of the $9 million in common benefit fees, or $3 million. Frank further proposes that he evenly split that $3 million with counsel for the other objector group that fully briefed the appeal and argued alongside Frank at oral argument. *See id.* (splitting attorneys' fees between objectors that prevailed on appeal). Thus, Frank requests an attorneys' fee award of $1.5 million. That $1.5 million fee award amounts to just 16.7% of the $9 million allocated for attorneys' fees.

The $3 million fee that Frank proposes for the objectors who succeeded on appeal (which he proposes splitting with another objector group) represents between 13.8% and 19.7% of the $15,250,000 to $21,750,000 increase in value that is attributable to objectors' efforts. That is well below the percentage that the Seventh Circuit has approved as a reasonable fee award to objectors. In *Kaufman*, 877 F.3d 276, for example, the court approved an attorneys' fee award for objectors that amounted to 34% of the increased value of the settlement. *Id.* at 287-88. The court did so, moreover, even though the *Kaufman* objectors had "filed 'a number of repetitive and meritless objections'" and thus the court questioned the extent to which they could rightfully claim credit for some of the improvements in the settlement. *Id.* at 288. Schulz did none of that here. If an attorneys' fee award amounting to 34% of the improvement is appropriate in

---

assume that the fund will be completely exhausted by claims. Even if not, the approximate magnitude of the benefit delivered will not change dramatically unless notice is unusually expensive.

*Kaufman*, then an award ranging between 13.8% and 19.7% of the benefit in this case is eminently reasonable.

        **B.    Efficiency and Risk Justify the Lodestar Multiple that Schulz's Counsel Would Receive**

District courts in the Seventh Circuit are under no obligation to cross-check the requested fees against the lodestar. *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 849 (N.D. Ill. 2015); *see also Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011); 5 *Newberg on Class Actions* § 15:88 (5th ed.) (noting in Seventh Circuit that "a cross-check is not applicable"). Indeed, the Seventh Circuit has emphasized that attorneys' fees do not depend on "how much effort . . . counsel invested in the litigation," but rather on "what . . . counsel achieved." *Redman*, 768 F.3d at 633. Taking account of "what counsel achieved" in this case, a $1.5 million fee is reasonable.

"[T]he reasonableness of a fee cannot be assessed in isolation from what it buys." *Redman*, 768 F.3d at 633. The $1.5 million fee Frank requests bought a lot—most notably, a tremendous increase in the value of the settlement. Schulz's counsel, Frank and Bandas, worked with exceptional efficiency and achieved exceptional results in the face of extraordinary opposition. In achieving those exceptional results, Frank amassed a lodestar of $161,125—an underestimate that does not include Bandas's time. Frank Decl. ¶¶ 15-16.[7] A $1.5 million fee on that lodestar would represent a multiplier of 9.3. Including Bandas's fees would drive the multiplier lower. (A conservative combined lodestar of $200,000 yields a 7.5 multiplier.) Under these circumstances, where Frank delivered an extremely valuable benefit for the class and

---

[7] The lodestar calculation does not include any of Bandas' hours and investment in the case because Bandas was unable to report with accuracy the time that he spent representing Schulz during the objection and appeal. Bandas will nonetheless share in any fee award. Frank Decl. ¶ 16.

worked with enviable efficiency, a $1.5 million fee represents a reasonable multiple of counsel's investment.

In fact, the lodestar multiplier is high *only* because Frank worked with efficiency and alacrity. For good reason, courts are "reluctant to rely heavily on a method for determining whether a contingency fee is reasonable that penalizes efficiency." *Kirby v. Berryhill*, No. 14 CV 5936, 2017 WL 5891059, at *1 (N.D. Ill. Nov. 29, 2017); *see also Grayson v. Berryhill*, No. 4:16-cv-61, 2017 WL 6209703, at *3 (N.D. Okla. Dec. 8, 2017) ("[I]f a firm can organize its practice efficiently by using less of its lawyers' time, yet still produce high quality legal work, it should not be penalized in the fee . . . ."); *Blatt v. Dean Witter Reynolds Intercapital Inc.*, 566 F. Supp. 1294, 1298 (S.D.N.Y. July 1, 1983) ("[T]o place exclusive reliance on time as a factor would penalize efficient performance of legal tasks."); *O'Rourke v. Healthdyne, Inc.*, Civ. A. Nos. 84-4295, 84-4296, 1986 WL 923, at *2 (E.D. Pa. Jan. 16, 1986) ("Awarding fees based on time alone may reward inefficiency and penalize those who are efficient and expeditious . . . .").

Objections are exceptionally risky and difficult. That too demonstrates the reasonableness of the fee. While a multiplier of 7.5 or 9.3 is high, it would not be a windfall here because so many objectors' successes go entirely uncompensated. Objectors often fail in procuring additional benefits for the class—even if an appeal succeeds—and thus risk receiving no fee at all. Between his non-profit work and his private practice, as of May 16, 2018, Frank has worked for objector-appellants on over thirty intermediate appeals of settlement approvals that have been ultimately decided on the merits. Though Frank and his team have had unprecedented success in this field—winning eighteen of those appeals—Frank has received court-awarded fees in only four of these cases. Frank Decl. ¶ 17. Attorneys who take on such risk are entitled to a multiple of their lodestar. *E.g.*, *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 978 (7th Cir. 2003).

12

Further, a multiplier of 7.5 or 9.3 is far from unprecedented. In *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. Civ. A. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005), the court awarded a multiplier of 15.6. *Id.* at *18; *see also In re Penthouse Exec. Club Compensation Litig.*, No. 10 Civ. 1145, 2014 WL 185628, at *10 (S.D.N.Y. Jan. 14, 2014) (noting multipliers as high as eight or "even higher"); *In re Qwest Commc'ns Int'l, Inc. Secs. Litig.*, No. 01-cv-1451, 2006 WL 8429707, at *4 (D. Colo. Sept. 29, 2006) (noting multipliers as high as ten).

While Frank has litigated against large multipliers in other cases, those cases either involved substantially less risk or were litigated substantially less efficiently, or achieved compromised results rather than the complete success of Schulz's fully-litigated appeal. Frank Decl. ¶18. Where, as here, counsel is heavily experienced and uniquely accomplished in subjecting class action settlements to detailed appellate scrutiny, and those abilities are orchestrated efficiently to deliver tremendous benefit to the class, a lodestar multiplier of 7.5 to 9.3 is well within reason.

## II.     Schulz Is Entitled to a $2,000 Incentive Award

Frank requests for Schulz a $2,000 incentive award. Frank Decl. ¶¶19-20. It is appropriate to award objectors incentive awards. *See, e.g.*, *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010); *In re Apple Inc. Secs. Litig.*, No. 5:06-cv-05208, 2011 WL 1877988, at *16 (N.D. Cal. May 17, 2011). Objector incentive awards are justified for the same reason as class representative awards: "to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). An objector such as Schulz, while not a named representative, acts on behalf of the class at cost to himself.

By objecting, Schulz exposed himself to the risk of private investigation and harassing discovery. He also forsook personal gain to benefit the entire class. Objectors, if they are

13

willing to selfishly sell-out the class, can settle their objections for substantial sums much larger than a $2,000 incentive payment. *See, e.g.*, Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal F. 403, 428-32. Just as class representatives receive incentive payments, so should objectors whose objections meaningfully contribute to class recovery. Schulz did that here. Because he did, the class is receiving *three times* what it would have received otherwise.

### III. Objectors' Fees and the Incentive Award Should Be Funded from the $9 Million for Attorneys' Fees

"[T]he 'common benefit' theory is premised on a court's equity power." *United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978); *accord Rodriguez v. Disner*, 688 F.3d 645, 654 (9th Cir. 2012). Although class counsel who negotiated the Revised Settlement was not responsible for the deficiencies in the Initial Settlement, the class nonetheless should not pay twice for a benefit it should have received from the outset. *See McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 651 (E.D. Pa. 2015) (debiting objector's fee award from class counsel's award because class' benefit was only achieved on the "second try").

Perhaps this is why many courts across the nation have paid objector fees from class counsel's award.[8] That practice recognizes several realities, equities, and best practices of settlement and class representation. *See Great Neck*, 212 F.R.D. at 416-17. In *Great Neck*, the

---

[8] *See e.g., McDonough*, 80 F. Supp. 3d at 662 (awarding objector's attorneys' fees out of class counsel's fee award); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067, 2014 WL 4446464, at *10 n.1 (D. Mass. Sept. 8, 2014) (same); *Lonardo*, 706 F. Supp. 2d at 816-817 (same); *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 277 (E.D.N.Y. 2009) (same); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 563, 573 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695, 697 (3d Cir. 2004) (same); *In re Ikon Office Solutions*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (same); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175, 176 (D. Mass. 1998) (same); *In re Horizon/CMS Healthcare Corp. Secs. Litig.*, 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998) (same); *In re Citigroup Secs. Litig.*, No. 07-cv-9901(SHS), Dkt. No. 286, Order at 1-2 (S.D.N.Y. Sept. 10, 2013) (same with objector's expenses).

court recognized its equitable discretion to require the class to pay objector's fees, but correctly declined to do so. *Id*. at 417. Instead, the *Great Neck* court awarded the objector fees from "class counsel and the defendants as they may agree but without diminution of the sum awarded to the class." *Id*.; *accord Ikon Office Solutions*, 194 F.R.D. at 197 (Objectors' "fees and costs will be taken from class counsel's award to avoid dilution of the settlement fund.").

Awarding all legal expenses from the initial fee pot is not merely equitable, it is also good policy. It incentivizes class counsel to reject settlements that are objectionable to class members and to courts. Plenty of unfavorable settlements are approved quickly, quietly and unopposed, without a single objection filed. *See generally In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) ("No class member objected either—but why should he have? His gain from a reduction, even a large reduction, in the fees awarded the lawyers would be minuscule."). If class counsel are not responsible for paying the fees of successful objectors, then there will be little, if any, incentive for them to reach good settlements from the very outset.

While the $9 million fee award is in a separate and segregated fund, that $9 million should be considered part of a "constructive common fund" for purposes of the court's equitable powers regarding the common benefit doctrine. "Courts have relied on 'common fund' principles and the inherent management powers of the court to award fees to lead counsel in cases that do not actually generate a common fund." *In re Gen. Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (evaluating separate negotiated fee award as part of a "constructive common fund"); *see also Redman*, 768 F.3d at 630 (treating coupons plus the awarded attorneys' fees as if they were both part of a common fund).

## **CONCLUSION**

The Court should award Schulz attorneys' fees in the amount of $1.5 million and Schulz an incentive payment of $2,000.

15

Dated: May 21, 2018                    Respectfully submitted,

*/s/ Thomas J. Wiegand*
Thomas J. Wiegand
MoloLamken LLP
300 North LaSalle Street
Chicago, IL  60654
(312) 450-6703 (telephone)
(212) 607-8151 (facsimile)
twiegand@mololamken.com

Eric R. Nitz (*admission application forthcoming*)
MoloLamken LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2021 (telephone)
(202) 536-2021 (facsimile)
enitz@mololamken.com

*Attorneys for Theodore Frank*

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed on May 21, 2018 the foregoing Motion for Attorneys' Fees and for Incentive Award, and Memorandum of Law in Support, of Theodore Frank, Attorney for Objector Michael Schulz, and accompanying documents, using the CM/ECF System, which will effect service on all parties.

/s/ <em>Thomas J. Wiegand</em>