## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KENT EUBANK, JERRY DAVIS, RICKY FALASCHETTI, RITA CICINELLI, ROBERT JOSEPHBERG, JEFFREY ACTON, KENNETH HECHTMAN, JAMES NEIMAN, AMY CHASIN and EDWARD RUHNKE, individually and on behalf of all others similarly situated; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.: 06 C 4481<br><br>Honorable Sharon Coleman Johnson |
| Plaintiffs, | )<br>) | Class Action |
| v. | )<br>) | |
| PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation, Defendants | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF COMPLEX LITIGATION GROUP LLC'S MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL BACKGROUND.......................................................................................... 4

ARGUMENT ....................................................................................................................... 7

   I.    CLG'S FEE REQUEST IS JUSTIFIED GIVEN THE BENEFIT CLG'S WORK
CONFERRED UPON THE CLASS.................................................................................. 7

      A.   CLG Engaged in Substantial Pre-Complaint Factual Investigation Which Benefitted the
Class – CLG Did Not Simply "Pile On" to a Case Filed By Others – CLG Originated This
Case........................................................................................................................... 10

      B.   CLG Engaged in Extensive Pre/Post-Complaint Legal Investigation. .............................. 11

      C.   CLG Engaged in Substantial Pre-Class Certification Briefing on a Wide Variety of
Issues........................................................................................................................ 12

      D.   CLG Expended Significant Time and Effort in Working With Plaintiffs' Experts and
Against Pella's Experts. ............................................................................................... 12

      E.   CLG Expended Substantial Time in Conducting and Responding to Discovery. ............. 13

      F.   CLG Expended Substantial Effort on Class Certification Briefing Which Involved
Multiple Rounds of Extensive Briefing. ....................................................................... 14

      G.   CLG Expended Substantial Effort Defending the Order Certifying the Class Before the
Seventh Circuit and Before the United States Supreme Court. ...................................... 14

      H.   CLG Expended Substantial Effort Interacting With Clients and the Members of the
Class.......................................................................................................................... 15

      I.   CLG Engaged in Substantial Post-Certiorari Discovery and Briefing............................. 15

      J.   CLG Expended Time and Effort After New Class Counsel Was Appointed by
Transitioning Its Case Files and By Communicating with Absent Class Members Who
Contacted the Firm..................................................................................................... 15

  II.    CLG'S HOURLY RATES AND EXPENSES ARE REASONABLE................................. 16

      A.   CLG's Submitted Hourly Rates Are Locked in at 2013 Levels and its Rates Are
Regularly Accepted by Courts Throughout the United States and Are in Line With the Rates
of Other Counsel in the Case. ...................................................................................... 16

      B.   The Expenses CLG Incurred Were Reasonable and Benefitted the Class. ....................... 17

CONCLUSION.................................................................................................................. 18

## PRELIMINARY STATEMENT

The Classes', and certain Plaintiffs', former Co-Lead Counsel in the above-entitled matter (the "Class Action") respectfully submit this Memorandum of Law in Support of its Motion For Award Of Attorneys' Fees, Costs And Expenses (the "Fee Petition"). The award sought here is both earned and justified as Complex Litigation Group LLC[1] ("CLG") (n/k/a Quantum Legal LLC) (hereinafter "Complex Lit"), litigated tirelessly on behalf of the Class for more than six years, achieving numerous legal victories, the most significant of which was the contested Class Certification reported at *Saltzman v. Pella,* 257 F.R.D. 471 (N.D. Ill. 2009), affirmed by the Seventh Circuit, reported at 606 F.3d 391 (7th Cir. 2010), and the defeat of Defendants' Petition for *Certiorari* in the United States Supreme Court, reported at 562 U.S. 1178 (2011), all of which were not only essential to the settlement of the Classes' claims, but its necessary legal antecedent. The Class did not exist, and does not exist now but for the efforts of Complex Lit.[2] The certification of the Classes, combined with its articulation of the common and predominant legal issues certified became the establish law of the case. Complex Lit's contribution to the adjudication of the rights of the Classes, by establishing Pella's legal duty, and its breach, was substantial. So significant, in fact, that Judge Zagel's class certification order has, according to Westlaw, been cited 284 times and the Seventh Circuit affirmation opinion 544 times.

Petitioning counsel are only requesting to be compensated for their time and expenses in obtaining Class Certification, without which this Settlement would have been legally impossible. The benefit that Complex Lit conferred in obtaining class certification should not be undervalued and cannot be seriously challenged. Nor can the significant impact of that class certification

---

[1] Formerly known as Freed & Weiss LLC.

[2] The Settlement Class is materially identical to the Classes certified by Judge Zagel in 2009.

opinion on advancing the rights of consumer in other class action litigation be understated. Commenting on the significant legal precedent established, the Chicago Tribune reported on this class certification opinion, noting that class certification "is a tall hurdle in consumer class actions because it's often difficult to find issues or facts that are common to all buyers" and that Complex Lit overcame that tall hurdle with a class certification order that "has survived layers of judicial scrutiny."[3]  Another article states that the *Pella* class certification decision "is required reading for class action practitioners".[4]  A law firm blog (wholly unrelated to Complex Lit) noted that the approach to class certification employed by Complex Lit set a path for "a new strategy for gaining class action status."[5] Complex Lit developed and defended this "new strategy" for which the Class has greatly benefited.

CLG undertook a significant risk in undertaking this litigation, and it expended thousands of hours of effort and hundreds of thousands of dollars in litigation costs and expenses without compensation to this point.  The Class and current Class Counsel relied heavily on the results Complex Lit obtained; in particular, the factual evidence Complex Lit developed (including expert witnesses, statistical data analysis, and engineering analysis), which underlies the current Settlement.  Current Class counsel argue that they "effectively started fresh and with a *tabula rasa*".  (D.E. #672, p. 2.)  This is an overstatement.  The same six-state classes and nationwide declaratory judgment class appertained throughout their tenure.  In fact, in their motion for preliminary approval, Current Class Counsel did not spend any effort to justify certification of the Settlement Class; instead, it relied wholly on the efforts of Complex Lit, which obtained the certification of the Classes before Judge Zagel.  (*See* D.E. # 672 at 36 ("Here, common questions

---

[3]    http://articles.chicagotribune.com/2011-05-10/business/ct-biz-0510-chicago-law--20110510_1_class-actions-number-of-potential-plaintiffs-windows.
[4] https://www.jdsupra.com/legalnews/pella-v-saltzman-the-seventh-circuit-t-39675/
[5] https://www.cssfirm.com/2011/06/15/pella-case-brings-new-strategy-for-gaining-class-action-status/

that would be decided on a class-wide basis have been certified, and, as well, have since survived Defendants' attempts to decertify those common questions.").)

Just from a purely quantitative perspective, the prior settlement was valued by Pella at between $17 and $26 million, excluding notice costs and attorneys' fees: "The settlement is expected to provide benefits of approximately $17-26 million". *See* Pella-Appellees Brief (D.E. #36, p. 22) filed in the Seventh Circuit (Case No. 13-2091). The current Settlement is valued at $25,750,000 (with a potential reverter of $2 million). *See* Plaintiffs' Memorandum of Law In Support of Preliminary Approval (D.E. #672, p. 5).

As such, Class Counsel's assertion that "[f]rom these ashes arose the case now before the Court" is poetic license at best.[6] But from a common fund aspect, this Settlement shows little improvement from the Classes point of view. In all candor, despite four additional years of litigation, and a great deal of ink having been spilt, the current Settlement is not of significantly greater value than the prior settlement, especially in light of the cap on recovery that this common fund settlement provides. Class certification is not an abstract exercise according to recent Supreme and Circuits Court of Appeal precedent. It requires a cohesive factual and legal case to survive scrutiny, sufficiently cohesive to, in fact, place the Defendant at risk of loss. The work Complex Lit performed, and expenses it advanced are entitled to *quantum meruit*.[7]

Complex Lit notes that, in an ideal world, the division of fees amongst counsel in a class

---

[6] Memorandum In Support of Preliminary Approval, D.E. #672, p. 8.

[7] Consistent with Fed. R. Civ. P. 23(h), because Complex Lit conferred a benefit on the Class, it is entitled to an award of attorneys' fees. *See, e.g., In re Weinhoeft*, No. 97-70416, 2000 WL 33963629, at *2 (Bankr. C.D. Ill. Sept. 28, 2000) ("In cases where a discharged attorney seeks to recover from a fund obtained by her successor, quantum meruit is the appropriate method for determining the appropriate fee."). Similar to the factors the Court will consider in approving Current Class Counsel's fee request, in evaluating Complex Lit's request for attorneys' fees "based on quantum meruit, the determination of the amount of attorney's fees is based on, among other things, the knowledge and skill of the attorney, the hours reasonably expended, the management of the case, and the customary fee in the community." *Vance v. Gallagher*, 280 F. App'x 533, 538–39 (7th Cir. 2008).

3

action case is best handled privately. Complex Lit reached out to John Yunchius, whom Complex Lit understood to be a lead counsel, numerous times via voicemails and emails seeking to discuss the matter of Complex Lit's fees. Not one of the emails or voicemails left by Complex Lit were returned. There are very few courts that welcome the resolution of attorneys' fee disputes; however, Petitioners have no other recourse. Accordingly, Complex Lit requests the assistance of this Court in the distributions of the requested gross attorneys' fee.

## PROCEDURAL BACKGROUND

Complex Lit filed the original Complaint on August 18, 2006 (D.E. #1) whereupon it was assigned to Judge James Zagel. The original Plaintiff was Dr. Leonard Saltzman. Thereafter, in Plaintiffs' First Amended Complaint (D.E. #20) dated November 8, 2006, Plaintiffs Kent Eubanks, Thomas Riva, Lubo and Maria Hadjippetkov, and William and Nancy Ehorn were added. Various other counsel having affiliated with Complex Lit, entered appearances on behalf of the putative class, including John Yanchunis, who entered his appearance on May 3, 3007 (D.E. # 68), and George Lang, then an employee of Complex Lit, who entered his appearance on August 18, 2006 (D.E. # 6). Complex Lit was first appointed as lead counsel by Order of Judge Zagel on June 4, 2009 (Dkt. # 162) and remained in that capacity until replaced by current Class Counsel (Dkt. # 469).

On May 16, 2008, Complex Lit filed the Motion For Class Certification (D.E. #110), which was granted by Judge Zagel on June 12, 2009 (D.E. #163). In his Order, Judge Zagel certified two classes: a nationwide Rule 23 (b)(2) declaratory judgment class of "all class members whose windows have manifest the alleged defect", and Rule 23(b)(3) statutory consumer fraud classes for the states of Illinois, California, Florida, Michigan, New Jersey, and New York. 257 F.R.D. 471, 487. An appeal was taken by Defendants to the Seventh Circuit,

which affirmed Judge Zagel's order on March 20, 2010, reported at *Saltzman v. Pella*, 606 F.3d 391. Defendants filed a Petition for *Certiorari* on September 13, 2010, which was denied on February 1, 2012, 562 U.S. 1178 (2012) (mem).

On May 11, 2011, the District Court ordered Plaintiffs to add subclass representatives for the statutory consumer fraud classes (D.E. #228). On October 28, 2011, Complex Lit filed the Second Amended Complaint (D.E. #245) adding Plaintiffs Tim Bastiaanse, Elizabeth D'Angelo, Joseph Palmiotto, and Tim Stefanik (D.E. #245-1). These Plaintiffs remain Class members in the current Settlement.

Following extensive mediation, Complex Lit and Defendants executed a Class Action Settlement Agreement (D.E. #277-1) and filed a Motion for Preliminary Approval of Class Action Settlement on June 19, 2012 (D.E. #277).

On February 28, 2012, Attorney George Lang ("Lang"), having been terminated for cause from Complex Lit, effectuated the termination of Complex Lit as counsel for Kent Eubanks, Thomas Riva and non-Class members William and Nancy Ehorn. Lang filed a Motion to Substitute Counsel under FRCP 23(g) (D.E. #255). The matter was fully briefed. Judge Zagel conducted an evidentiary hearing on all of Lang's claims of impropriety and deficiency and denied the motion. (D.E. #265.)

Thereafter, Lang filed an objection to Preliminary Approval ("Response in Opposition to Preliminary Approval", D.E. #286) re-asserting the claims of impropriety by Class Counsel Complex Lit. As grounds for objection, Lang asserted that the proposed settlement was "unreasonable" because the dollar value based on valuation range with a high possible outcome was $2,715,581,900, and a litigation value of $308,490,103.84 (*Id.* at 8) under *Reynolds.*[8]

---

[8] *Reynolds v. Beneficial Nat'l Bank* 288 F. 3d 277 (7th Cir. 2002). Current Class Counsel, Lang represented to the Circuit Court that the prior settlement should be reversed as inadequate because the

Complex Lit, in support of Preliminary Approval, provided a *Reynolds* evaluation showing a weighted average value of the settlement at between $34,358,934 for a high and $3,630,630 for a low and a weighted mean value of $50,000,000[9]. This valuation was the product of a statistical analysis of the only existing database of failed windows, the "Returns & Allowances" data, containing over 11,000 claims. Pella, for its part, valued the prior settlement at "$17 and $34 million".[10]

Preliminary Approval was granted on November 1, 2012 (D.E. #301). Current Class Counsel John Yanchunis filed his Declaration in support of Final Approval and for Attorneys' Fees on January 9, 2013 (D.E. #312-4). Final approval was granted by Judge Zagel on April 24, 2013 in a 3-page order that provided no discussion of why he found the settlement to be fair, reasonable and adequate, no discussion of why he found no conflicts of interest, no discussion of why he found no indicia of collusion, nor any discussion of the objections, or why he found them to be without merit. (D.E. #353.) Because Judge Zagel provided no record in support of his approval of the settlement in the Final Approval Order, in spite of ample validation in the record, the Order was reversed and remanded. Judge Posner opined at great length about the "warning signs" that the prior settlement presented. What Judge Posner neglected to mention was that an evidentiary record, in fact, existed repudiating each of these warning signs. The current Settlement is not a material improvement for the Class over the prior settlement in spite of the intervening four years. Nor should this Court be as willing as Judge Posner to assume that Judge Zagel did not carefully supervise the litigation.

---

"net expected value of the case was $308 million". Brief of Appellants Eubanks, Riva and Ehorn". Case 13-2091, D.E.#27-1, p. 23.

[9] D.E. #291, p. 12, Complex Lit's Reply In Support of Preliminary Approval.

[10] D.E. #289, p. 16, Defendants Reply Memorandum in Support of Preliminary Approval. Defendants provided their own statistical analysis of the R&A database however used a projected failure rate at 6.5% rather than the Plaintiffs' 14%.

Since 2014, Complex Lit has not performed any work on this case, although Complex Lit cooperated with new lead counsel by sending its files and work-product to Co-Lead Counsel, the Clifford Law Offices.

Current Class Counsel can seek up to $9,000,000 in attorneys' fees and costs pursuant to the terms of the Settlement Agreement. (D.E. #672-1) Current Class Counsel has not requested that Complex Lit submit its time and expenses nor has Current Class Counsel submitted any time or expenses from Complex Lit to the Court as part of the current Settlement. Complex Lit reached out several times to Current Class Counsel in the last several months in an effort to engage Current Class Counsel in a dialogue to resolve the matter of the attorneys' fee distribution. Complex Lit has not received any response by return email or phone call. Complex Lit thus asks this Court to resolve the amount of fees and expenses counsel, including Complex Lit, are entitled to receive in distribution from the Settlement.

## ARGUMENT

### I.  COMPLEX LIT'S FEE REQUEST IS JUSTIFIED GIVEN THE BENEFIT COMPLEX LIT'S WORK CONFERRED UPON THE CLASS.

It is well-settled that attorneys who achieve a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Substantial case law has developed guiding district courts in how to award fees, and "Attorneys' fee awards under Rule 23 are not strictly limited to class counsel. In this regard, the advisory committee notes to Rule 23 observe that, "'[i]n some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class,' including 'attorneys who acted for the class before certification but were not appointed class counsel.' Fed. R. Civ. P. 23(h), advisory committee's notes to 2003 amendment. Thus, the term 'attorney's fees' as used in Rule 23 is more expansive than simply the fee to be paid to class counsel."

7

*Dakota Medical, Inc. v. RehabCare Group, Inc.*, 2018 WL 646120, at *4 (E.D. Cal. Jan. 31, 2018); *see also In re. Adelphia Comm. Corp. v. Securities Derivative Litig.*, 2008 WL 4128702 (S.D.N.Y. Sept. 3, 2008) (approving allocation to non-lead counsel of "all time invested in the *Victor* and *Huhn* cases by C & T up until the appointment of lead plaintiffs and counsel, at C & T's regular hourly rates" because non-lead counsel had filed a complaint which had unique claims and "there is no doubt that the inclusion of claims under Section 11 and 12(a)(2) of the 1933 Act in the CCAC were of benefit to the class"; court did reject effort by non-lead counsel to obtain a multiplier of 110).

The typical class action fee petition seeks a collective amount to be awarded on a gross basis to all counsel who prosecuted the case. The division of fees amongst counsel is usually a private matter, often determined by each counsel's contribution of time, expenses and benefit conferred to the class. However, here, Current Class Counsel has refused to even engage in such a private ordering discussion with Complex Lit concerning the division of fees. Current Class Counsel did not include any of Complex Lit's time or expenses in its preliminary approval filings, and it has not requested Complex Lit's time and expenses to be included as part of the forthcoming fee petition of Class Counsel. Complex Lit has every reason to believe that Current Class Counsel intends to cut out Complex Lit from the division of fees despite Complex Lit's substantial time and efforts and extensive expenses in this case upon which the current Settlement is built.

While private ordering of the attorney's fees allocation is preferred and the normal course, "the court still has an obligation to assess the allocation" decisions of lead counsel to ensure fairness. *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2017 WL 5969318, at *1 (N.D. Cal. Feb. 28, 2017); *see also In re. Volkswagen and Audi Warranty Extension Litig.*, 89 F.

Supp. 3d 155, 180 (D. Mass. 2015) ("These opinions [of class counsel] do not, however, displace the Court's judgment. It remains the Court's responsibility meaningfully to review all of Non–Class Counsel's fee petitions and Class Counsel's comments and to make independent determinations as to what is fair and reasonable.").[11] Here, the presumed allocation to Complex Lit by lead class counsel is $0, despite the substantial benefit provided to the class by the efforts of Complex Lit who: (1) originated the case, (2) conducted the discovery, (3) created the liability and damages theories, (4) retained and paid experts, (5) succeeded in certifying a fifty state (b)(2) class and six state (b)(3) class, and (6) preserved that class certification order throughout the successive appeals process. These results inarguably benefitted the Class by serving as the underlying basis for certification of the Settlement Class and deserve to be compensated, and the supporting expenses reimbursed. *See In re. FPI/Agretech Securities Litigation*, 105 F.3d 469, 474 (9th Cir. 1997) ("we hold that the relative efforts of, and benefits conferred upon the class by, co-counsel are proper bases for refusing to approve a fee allocation proposal").

The time for which Complex Lit seeks compensation has been carefully reviewed and thousands of hours have been trimmed so as to exclude any time that could be argued to be controversial. For example, Complex Lit excluded the substantial amount of time it spent in negotiating and defending the prior settlement given the Seventh Circuit's rejection of that settlement. Further, Complex Lit has excluded the time of Paul Weiss, who the Seventh Circuit

---

[11] Any "opinions" that may be expressed by Current Class Counsel about the nature or quality of Complex Lit's work should necessarily be taken with a grain of salt as "counsel have inherent conflicts. They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?" *In re. Diet Drugs Prods. Liab. Litig.,* 401 F.3d 143, 173 (3d Cir. 2005). This maxim is particularly true here given the known antipathy that exists between Mr. Lang and Complex Lit. Indeed, Mr. Lang and Complex Lit have been involved in litigation for the last six years over disputed fee payments. Further, it is to be noted that Mr. Yanchunis joined Complex Lit's fee petition in the prior settlement seeking compensation for over $40,000 in time and expenses. He did not express any concern over the settlement terms or the quality of Complex Lit's work unrelated to the settlement at that time.

found might have been in a conflicted position in terms of settlement, and the time of Jamie Weiss, whose father was a lead plaintiff, whose presence the Seventh Circuit found concern with because of the familial relationship. All of their time is excluded even the time both expended on behalf of the class in litigating the case that had nothing to do with settlement. Additionally, the hours worked by administrative assistants and paralegals were also removed as part of this Petition.

The fee request Complex Lit presents to the Court represents the 7312.20 hours the other Complex Lit attorneys expended in battling Pella over the course of six years of litigation (excluding all the time devoted to settlement). It includes the time of current co-lead counsel George Lang, who was employed by Complex Lit until January 3, 2012. Lang's time alone is 2746.10 hours at a lodestar of $1,743,773.50, and it is doubtful that Lang will want to argue that his efforts while at Complex Lit did not confer a substantial benefit upon the class. The Declaration of Richard Burke attached hereto as Exhibit 1[12] details the hours the firm expended in the prosecution of this litigation (excluding the aforementioned and any costs or fees associated with preparing this submission).

Complex Lit's substantial investment of time and money which conferred a benefit upon the class involved the following:

      **A.**      **Complex Lit Engaged in Substantial Pre-Complaint Factual Investigation Which Benefitted the Class – Complex Lit Did Not Simply "Pile On" to a Case Filed By Others – Complex Lit Originated This Case.**

Complex Lit began conducting a factual and legal investigation in early 2006 to determine whether there was a cause of action against Pella. This involved working with potential clients and gathering the necessary factual background and investigating the defect,

---

[12] *See also* Richard Burke Declaration submitted in support of approval of the prior settlement. (D.E. #312-1.)

including in-home inspection of Pella windows and a review of documents, correspondence, agreements, and other relevant materials related to the relationship between Pella and the plaintiffs and the windows at dispute in this case. Complex Lit also researched and discussed issues concerning window construction, the various designs of windows, and whether the issues pertained to all Pella window owners or only those with particular lines of Pella windows.

### B. Complex Lit Engaged in Extensive Pre/Post-Complaint Legal Investigation.

With the initial factual investigation ongoing, Complex Lit investigated the litigation landscape, focusing on other defective window and product litigation and any specific issues related to windows with wood rot problems like those found on the Pella windows. In addition, Complex Lit researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims.

Once the initial factual and legal research were concluded, Complex Lit began: (1) formulating the consumer fraud, warranty, and declaratory relief claims; (2) drafting, preparing, and filing the Complaint; and (3) engaged in ongoing correspondence with clients regarding the complaint and the case in general. Throughout this process, there were written and telephonic strategic conferences within Complex Lit and amongst co-counsels to present the most viable Complaint on behalf of the plaintiffs and putative class. Such extensive investigation and the fact that Complex Lit filed the first complaint and carried it forward as lead counsel for a substantial period of time conferred a substantial benefit on the class. *Compare In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 195 (3d Cir. 2005) (substantial benefit created by non-lead counsel ""for example, [by] discovering wrongdoing through his or her own investigation, or by developing legal theories that are ultimately used by lead counsel in prosecuting the class

action.").  Notably, there were no tag-along or copycat lawsuits as is common in consumer class action cases.

### C.     Complex Lit Engaged in Substantial Pre-Class Certification Briefing on a Wide Variety of Issues.

As the litigation progressed, Complex Lit reviewed defendant's motion to dismiss, researched prospective responses, and engaged in substantial pre-class certification briefing. Complex Lit also researched additional potential claims and issues and drafted, prepared and filed an amended complaint, and briefed and researched a wide variety of discovery motions.

### D.     Complex Lit Expended Significant Time and Effort in Working With Plaintiffs' Experts and Against Pella's Experts.

Complex Lit worked extensively with and paid large bills for expert witnesses, including fenestration expert Charles Still, who has extensive engineering background in the design and manufacture of aluminum clad windows and doors. Complex Lit worked with Mr. Still while he conducted inspections of the named Plaintiffs homes, reviewed the engineering documents provided by Pella in discovery, reviewed the Pella Rule 30(b)(6) depositions taken by Complex Lit, and designed experiments upon exemplar ProLine casement windows for the purpose of determining, and illustrating, the nature and extent of engineering design defects in those windows and prepared an expert report upon which he was deposed.

Complex Lit also retained wood preservatives expert Lee Gjovik who Complex Lit worked with to get a full understanding of his opinion that the aluminum cladding of the Pella ProLine windows, if it allowed water to penetrate and expose the interior wood components, would lead to prolonged moisture exposure and wood rot and that the wood preservative employed by Pella would be ineffective to arrest wood deterioration. He further opined that the wood deterioration evident in the Plaintiffs' windows was the result of prolonged moisture

exposure, that the aluminum cladding prevented earlier detection of wood deterioration, and that the manifest wood rot was caused by a common design defect in the ProLine casement windows. Complex Lit also spent numerous hours consulting with a number of experts in the areas of economics, wood pathology, fenestration, wood preservation, statistics, and building and construction engineering. Complex Lit also worked with experts to assist them in deposing the technical experts proffered by Pella and to conduct data and statistical analysis based on Pella's Returns and Allowances database and other underlying data.

**E.    Complex Lit Expended Substantial Time in Conducting and Responding to Discovery.**

The parties engaged in substantial discovery. Defendants produced tens of thousands of pages of documents to Complex Lit, many of which were highly technical, and Complex Lit reviewed and analyzed them. Complex Lit was present at Plaintiffs depositions and home inspections which involved considerable time, travels and costs. Furthermore, Complex Lit deposed Defendants through several of their employees, preparing extensively to obtain the most information possible and traveling to Defendants' location for the depositions. Complex Lit deposed the following FRCP 30(b)(6) designees on 34 distinct topics of inquiry:

- Pella Vice President of Engineering, Robert Jablonski;

- Senior Product Design Engineer, Andy Middleswart;

- Customer Support Manager, Loretta Sprunk;

- Director of Information Technology Operations, Jim Thomas;

- Assistant Vice President of Marketing, Dan Tauke; and

- Comptroller Pella-Wood Division, Darin Wogan.[13]

During the inspection and discovery process, Complex Lit discovered an extended-

---

[13] Burke Declaration, ¶ 27.

warranty program that Pella was only providing to select customers for ProLine windows, called the ProLine Service Enhancement Program ("PSEP"). Also during this time, Complex Lit engaged in numerous written and telephonic discussions with opposing counsel.

**F.      Complex Lit Expended Substantial Effort on Class Certification Briefing Which Involved Multiple Rounds of Extensive Briefing.**

Complex Lit filed a Motion for Class Certification of the ProLine casement windows class in May 2008. Complex Lit engaged various experts (discussed above) regarding window technology and wood rot, consulted them, and produced written expert reports along with their motion for class certification. Judge Zagel requested additional briefing in November of 2008, which Complex Lit diligently researched and filed. In total, Complex Lit submitted over 200 pages of written class certification briefing, including the substantial appendices analyzing various causes of action under the laws of the 50 states. Complex Lit's Motion for Class Certification was granted in June of 2009.

**G.      Complex Lit Expended Substantial Effort Defending the Order Certifying the Class Before the Seventh Circuit and Before the United States Supreme Court.**

Defendants appealed Judge Zagel's order to the Seventh Circuit pursuant to FRCP Rule 23(f), and Complex Lit had to research and write a response brief addressing Defendants' arguments on appeal. In May 2010, the Circuit Court affirmed the class certification order. 606 F.3d 391 (7th Cir. 2010).

Defendants sought a *writ* of *certiorari* in the Supreme Court and Complex Lit had to extensively research the issues raised therein and ultimately filed a brief opposing the grant of *certiorari* after the Supreme Court asked for a written response. Any Supreme Court brief requires a substantial amount of effort, which Complex Lit expended, and the *certiorari* petition was denied by the Supreme Court in January 2011. 131 S.Ct. 998 (U.S. 2011).

### H. Complex Lit Expended Substantial Effort Interacting With Clients and the Members of the Class.

This Court is aware that this case generated significant publicity, and that the problems with Pella windows were reported all over the internet. During the course of the litigation, Complex Lit has received literally thousands of inquiries from Pella windows owners, which has required Complex Lit to take the time to communicate with each individual, determine to the best of their ability what type of windows each person has, collect data to help investigate the case, and regularly keep the people updated with progress in the case. To date, Complex Lit have communicated with over 4,000 individuals regarding problems with their Pella windows.

### I. Complex Lit Engaged in Substantial Post-Certiorari Discovery and Briefing.

After *certiorari* was denied, Complex Lit pushed forward with additional discovery on Pella, serving several additional requests and engaging in lengthy meet and confers along the way. Judge Zagel also asked for supplemental briefing on issues such as the meaning and impact of the Illinois Supreme Court's decision in *DeBouse v. Bayer AG*, 235 Ill.2d 544 (2009), as well as, a memorandum on the laws that underlay the 50 state Rule 23(b)(2) Class. Complex Lit worked diligently on these additional briefs in order to protect the class certification that they had obtained. Judge Zagel also requested that additional class representatives for each of the subclass (b)(3) states be added. This required the identification and vetting of class representatives from these states and amendment of the Complaint.

### J. Complex Lit Expended Time and Effort After New Class Counsel Was Appointed by Transitioning Its Case Files and By Communicating with Absent Class Members Who Contacted the Firm.

After the Seventh Circuit's decision on the prior settlement, Complex Lit engaged in the time and effort necessary to collect the existing litigation materials and transferring those materials to new class counsel. In addition, even as of today, Complex Lit still receives contacts

from class members with questions about the progress of the case or the settlement. Complex Lit could have ignored such inquiries but it never has. Instead, Complex Lit communicates with class members who contact Complex Lit and ensures they have the information to contact new class counsel. Complex Lit has done its best to remain a team player throughout.

## II.    COMPLEX LIT'S HOURLY RATES AND EXPENSES ARE REASONABLE.

### A.    Complex Lit's Submitted Hourly Rates Are Locked in at 2013 Levels and its Rates Are Regularly Accepted by Courts Throughout the United States and Are in Line With the Rates of Other Counsel in the Case.

To arrive at the base lodestar figure of $3,420,589.50, Complex Lit multiplied its adjusted total hours[14] by the 2013 hourly rates of the attorneys, paralegals and support staff who worked on this Class Action. The Burke declaration details the calculation of hours for each attorney, paralegal and support stuff that worked on the case, the 2013 hourly rate for that attorney or paralegal, and a general summary describing the category of services performed. The hours reported were compiled from contemporaneous time records maintained by each attorney, paralegal and support staff.   Complex Lit is prepared to submit to the Court for an *in camera* inspection the detailed daily time entries which support the summary attached to the Burke Declaration.

Complex Lit's hourly rates are reasonable. A reasonable hourly rate should be in line with the prevailing rate in the "community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Jeffboat, LLC v. Director, Office of Workers'*

---

[14] The total hours for which Complex Lit seeks compensation excludes all time spent in negotiating the 2012 settlement and defending the 2012 settlement at the District and Appellate Court levels. Complex Lit did this by: (1) excluding all time after January 18, 2011 (the date the Supreme Court denied certiorari; the first settlement meeting occurred on February 9, 2011) and (2) excluding all time that was entered under the category of services performed entitled "Settlement".

In addition, Complex Lit has excluded the time that was billed Paul Weiss, which was 1362.40 hours and consequently represented a total lodestar of $980,928.00 based on 2013 rates. Finally, Complex Lit excluded the time billed by Jamie Weiss, which was 211.60 hours and consequently represented a total lodestar of $136,482.00 based on 2013 rates.

*Comp. Programs*, 553 F.3d 487, 489 (7th Cir. 2009). Further, current hourly rates are generally applied to all time entries in calculating the lodestar figure instead of calculating the fee by looking at the hourly rate applicable for each year. *See Skelton*, 860 F.2d at 255 n.5. Notably, although it would have been perfectly permissible under the procedures in the Seventh Circuit, Complex Lit has only submitted its time calculated at 2013 rates, even though, in the intervening five years, its rates have risen.

### B. The Expenses Complex Lit Incurred Were Reasonable and Benefitted the Class.

Complex Lit spent over $174,420.56 out of its own pocket during its prosecution of the case for the class. These expenditures undoubtedly benefitted the class as they led directly to the certification of this Class and the development a viable theory of classwide liability which to this day supports the Settlement submitted for final approval. Complex Lit's expenditures fall into the following categories:

- **Travel.** This was a nationwide class involving witnesses and experts located throughout the country. Complex Lit could not have prosecuted this case without travelling. Complex Lit personnel traveled solely in coach using lowest price category tickets wherever possible and stayed at reasonably priced business hotels. Complex Lit's travel expenses totaled $13,714.91 as set forth in the chart attached as Exhibit C to the Burke Declaration.

- **Expert Witness Fees.** There would have been no case without expert witnesses. Complex Lit paid to retain the expert witnesses who determined the common defect which led to class certification and this settlement, as well as damages experts who calculated damages to the class. The expert work in this case was intensive and it involved not only developing the plaintiffs' theory of defect along with attendant destructive testing, but it also involved the dissection and dismantling of the expert witnesses retained by Pella. Complex Lit's expert

expenses totaled $96,660.35 as set forth in Exhibit C

- **Telecommunication and Document Production Fees.** This case involved dozens of long-distance telephone calls and substantial expenses related to document production, reproduction and on-line document management (i.e. photocopying). Complex Lit's expenses for each category totaled $1,441.10 and $28,552.59 respectively as set forth in Exhibit C.

- **Transcript and Deposition Expenses.** Over a dozen depositions were taken in total, and Complex Lit incurred expenses in paying for transcripts, court reporter and other deposition fees. Complex Lit's expenses for each category totaled $16,146.03 and $697.81 respectively as set forth in Exhibit C.

## CONCLUSION

For all the reasons stated herein, Complex Lit respectfully request that the Court award Complex Lit the amount of $3,595,010.06 as attorneys' fees, costs, and expenses.

Dated: May 21, 2018                     Respectfully submitted,


                                        __/s/ Richard J. Burke_____

                                        Richard J. Burke
                                        QUANTUM LEGAL LLC (f/k/a COMPLEX
                                        LITIGATION GROUP LLC)
                                        1010 Market Street
                                        Suite 1340
                                        St. Louis, MO 63101
                                        (847) 433-4500
                                        rich@qulegal.com

                                        Jeffrey A. Leon
                                        QUANTUM LEGAL LLC (f/k/a COMPLEX
                                        LITIGATION GROUP LLC)
                                        513 Central Ave., Suite 300
                                        Highland Park, Illinois 60035
                                        (847) 433-4500
                                        jeff@qulegal.com

Former Counsel For the Certified Plaintiff Classes and for Certain Named Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned, an attorney, affirms that on May 21, 2018, he filed an electronic copy of the foregoing document with the Clerk of Court using the ECF system, which will send notification of such filing to counsel of record.


      /s/ Richard J. Burke

Richard J. Burke
QUANTUM LEGAL LLC (f/k/a COMPLEX
LITIGATION GROUP LLC)
1010 Market Street
Suite 1340
St. Louis, MO 63101
(847) 433-4500
rich@qulegal.com