**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____

KENT EUBANK, JERRY DAVIS,
RICKY FALASCHETTI, RITA CICINELLI,
ROBERT JOSEPHBERG, JEFFREY ACTON,
KENNETH HECHTMAN, JAMES NEWMAN,       No.: 06 C 4481
AMY CHASIN and EDWARD RUHNKE,
individually and on behalf of all others       Hon. Sharon Johnson Coleman
of all others similarly situated;
                                              Class Action
                   Plaintiffs,

v.

PELLA CORPORATION, an Iowa corporation,
and PELLA WINDOWS AND DOORS, INC., a
Deleware Corporation

                   Defendants.
_____


**OBJECTION OF DONALD TUCKER TO PROPOSED SETTLEMENT AND REQUEST
FOR ATTORNEYS' FEES**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ............................................................................................................2

STANDING AND PROCEDURES TO OBJECT ........................................................3

OBJECTIONS ................................................................................................................4

    **I.  Poor class participation is the result of vague notice, a burdensome claims process, and the prospect of 25% relief for most class members.** ..............................................4

    **II. There are still several red flags of an unfair settlement.** ..............................................5

      A.  There is a clear-sailing provision. .............................................................6

      B.  Class counsels' $9 million fee is likely to be disproportionate. ....................6

      C.  Fee segregation retains conflict and ensures excess fees do not go to the class. ............8

    **III. The settlement is unfair to class members with a date of sale before March 22, 2003, who were inadequately represented.** ..............................................9

    **IV. Any fees should be calculated as a percentage of funds that reach the class.** ............11

    **V.  Fees cannot (and should not) be awarded under the lodestar method.** ....................12

    **VI. No private allocation of fees should be permitted.** ....................................13

CONCLUSION ............................................................................................................14

CERTIFICATE OF SERVICE ....................................................................................16

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Cradduck*, 5:13-CV-5074, 2015 WL 12915102 (W.D. Ark. Aug. 21, 2015) ................5

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., No. 07 CV -2898, 2012 WL 651727 (N.D. Ill.
    Feb. 28, 2012) ............................................................................................................10

*Averett v. Metalworking Lubricants Co.*, No. 115CV01509JMSMPB, 2017 WL 4284748 (S.D.
    Ind. Sept. 27, 2017) ....................................................................................................11

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ........................................................10

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ..........................................passim

*Florin v. Nationsbank*, 34 F.3d 560 (7th Cir. 1994) ..................................................13

*Gaskill v. Gordon*, No. 88 C 3404, 1995 WL 746091, at *3 (N.D. Ill. Dec. 14, 1995)...............12

*Gibson v. City of Chicago,* 873 F. Supp. 2d 975 (N.D. Ill. 2012) .................................12

*Harper v. City of Chicago Heights*, 223 F.3d 593 (7th Cir. 2000) .................................12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)..............................................................12

*In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987).....................................13

*In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015)............................................7

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..........................6, 7, 8

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) .............11

*In re Daou Sys., Inc., Sec. Litig.*, CIV. 98CV1537LAJB, 2008 WL 142377 (S.D. Cal. Jan. 14,
    2008)......................................................................................................................5

*In re Dry Max Pampers*, 724 F.3d 713 (6th Cir. 2013) .........................................5, 9

*In re High Sulfur Content Gasoline Prods. Litig.*, 517 F.3d 220 (5th Cir. 2008)..................13, 14

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 316 F.R.D. 240 (E.D. Wis. 2016).......................................................................................................................13

*In re Synthroid Marketing Litig.*, 325 F.3d 974 (7th Cir. 2003)...................................................12

*Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) .............................................................................8

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)....................................................9

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).........................................................passim

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014).................................................passim

*Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544 (7th Cir. 1999) ........................................12

*Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226 (N.D. Ill. 1993)...............................10

*Summers v. UAL Corp. ESOP Comm.*, No. 03 C 1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005).......................................................................................................................13

*Vought v. Bank of Am.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012) ....................................................6

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991)..............................6

## PRELIMINARY STATEMENT

The latest proposal is little improvement on the prior, which Judge Posner identified as a sellout of the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 726 (7th Cir. 2014). Only 1,600 members filed claims (0.2% of the class)[1] because of a confusing notice (Dkt. 672-3),[2] a limited 25% reimbursement for most members,[3] and a twelve-page claim form (Dkt. 672-2). That is not far off the 1,276 claims from the first settlement that the Seventh Circuit rejected. *Eubank*, 753 F.3d at 726; *see Pearson v. NBTY, Inc.*, 772 F.3d 778, 782-83 (7th Cir. 2014) (reversing settlement with 0.64% rate).

Unlike before, this is not a claims-made settlement. Yet, several reversionary provisions give Pella a financial incentive for minimal claims. Because so few claims were filed, it is likely more than $10 million in residual funds will be disbursed under § 504(4)(c). That provision allows the parties to petition for disbursement in an undefined manner—meaning funds could arguably return to Pella.[4] Dkt. 672-1, at 24-24. Unless these funds are distributed to the class, a $9 million fee for class counsel may exceed class recovery.

Class counsel assure the Court that this settlement is different from cases like *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) and *Pearson v. NBTY, Inc.*, 772 F.3d 778, because there is no clear-sailing provision (where defendant agrees not to oppose fee request). Dkt, 688, at

---

[1] 1,600 claims is 0.2% of the estimated 743,000 class members. Dkt. 688, at 12-13.

[2] *See also* http://www.pellawindowsettlement.com/media/1300230/v3_pek_notice_030118.pdf.

3 The settlement limits those with a date of sale prior to March 22, 2003 to 25% of expenses to repair or replace the window(s) in the initial disbursement (Dkt. 672-1, at 20, 23); because most of the class period (which is 1/1/1991-12/31/2009) is before 2003, a majority of the class seems to be entitled to only 25% initially. Dkt. 672-1, 14.

4 While § 5.04(4)(a) explains that no funds "under this paragraph will otherwise be returned or reimbursed to Defendants[,]" Section 5.04(4)(c) fails to specify the same.

19, 22-23. But that is false. There is a clear-sailing provision (Dkt. 672-1, at 33, § 6.02),[5] and the parties' bargain that Pella would not oppose the fee request appears to have compromised class benefits.

The latest settlement should be rejected, and class counsel should not be awarded a $9 million fee when the class may take less. Moreover, given the history of prior representation and that some attorneys who advocated in favor of the prior sham settlement are now seeking fees,[6] class counsel should not be given a lump sum to be allocated privately among the firms. Judicial supervision is essential.

## **BACKGROUND**

Donald Tucker owns a home at 226 San Fernando Lane, East Amherst, New York 14051. Ex. 1, Declaration of Donald Tucker, incorporated by reference as though set forth in full. Marrano Homes built the home from April to October 2001. *Id.* Mr. Tucker is the original owner and has maintained continuous ownership and possession to date. *Id.* 22 Pella casement windows were installed in the home. *Id.* Currently, 2 of the 22 windows are failing as depicted in the attached photographs. Ex. 2. Mr. Tucker received current Notice of Class Action Settlement on March 27, 2018. Ex. 3. Mr. Tucker obtained an estimate and filed a claim for total repair costs of $3,520.11. Ex. 4. The date of sale was before March 22, 2003, so Mr. Tucker is entitled to only 25% in initial disbursement ($880).

---

[5] "Defendants will not object to or oppose an aggregate and total recovery of up to and including nine million U.S. dollars ($9 Millions) for all attorneys' fees, costs, expenses, and disbursements incurred." Dkt. 672-1, at 33.

[6] Dkt. 688, at 6 (noting "Current Class Counsel John Yanchunis filed his Declaration in support of Final Approval and for Attorneys' Fees on January 9, 2013 (D.E. #312-4)").

## STANDING AND PROCEDURES TO OBJECT

Objector's full name and address are: Donald J. Tucker, 226 San Fernando Lane, East Amherst, New York 14051. Mr. Tucker is a person who, as of today's date, owns a home with Pella ProLine Casement Windows manufactured by Pella from 1991 to 2009, and is a member of the Settlement Class defined in the Class Notice. Ex. 1. Also, Objector received a postcard notice of settlement in the mail, and timely filed a claim, so as a class member has standing to object. Exs. 1, 3-4.

Objector is represented by local counsel, Jonathan P. Novoselsky of Jonathan Novoselsky, P.C., 303 W. Madison, 22nd Floor, Chicago, Illinois, 60606, admitted to practice in the Northern District of Illinois. Objector is also represented by Christopher Bandas, Bandas Law Firm, PC, as his general counsel in objecting to the settlement. Mr. Bandas' address is 500 North Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78401; his email and phone number are cbandas@bandaslawfirm.com, (361) 698-5200. Reserving the right to do so, Mr. Bandas does not intend on making an appearance for himself or his firm.

Mr. Tucker objects to the proposed settlement in *Kent Eubank et al v. Pella Corporation et al.*, Case No. 06 C 4481 for the reasons herein. While reserving the right to do so, Mr. Tucker does not intend on appearing or testifying at the fairness hearing, in person or through counsel, but asks that this objection be submitted on the papers for ruling at that time. Objector will not call any persons to testify at the Final Approval Hearing and relies upon the documents contained in the Court's file in support of these objections.[7]

---

[7] Objection is made to any procedures or requirements to object in this case that require information or documents other than those contained herein on grounds that such requirements seek irrelevant information to the objections, are vague and unnecessary, are not adequately described in the class notice, are unduly burdensome, are calculated to drive down the number and quality of objections to the settlement and violate Objector's and counsel's due process rights and/or Rule 23. Objector joins in and incorporates by reference the objections filed by other class member-objectors to the extent not inconsistent with this Objection.

## OBJECTIONS

**I.  Poor class participation is the result of vague notice, a burdensome claims process, and the prospect of 25% relief for most class members.**

After the Seventh Circuit rejected the former settlement that produced minimal claims, class counsel knew greater efforts were needed to induce claims. *Eubank*, 88 F.3d at 726. But, just 1,600 claims had been filed as of May 2018. Dkt. 688, at 13. The parties predicted this result; it is actually "above the rate range suggested by Defendants' experts." Dkt. 688, at 15. The settlement is not structured on a claims-made basis, but reversionary provisions provide Pella with major financial benefits from fewer claims. If funds remain after paying administrative costs and claims, Pella is reimbursed notice costs. Dkt. 672-1, at 25. If funds remain after a second distribution to those who only received a 25% reimbursement, the rest will be allocated under § 5.04(4)(c). Dkt. 672-1, at 25. Nothing in that paragraph precludes the return of the funds to Pella. *Id.* Pella also benefits from a poor notice program through a reversion of the $2 million Fund B (administered by Pella). Dkt. 672-1, at 32.

Pella's financial incentive for minimal claims coincides with a notice designed to reduce claims. Mr. Tucker's postcard notice, addressed to "Resident" provides that "Current or former owners of homes or other structures with Pella ProLine Series aluminum clad wood casement, awning, and/or transom windows, manufactured between 1991-2009, may be affected by a class action settlement." Ex. 3; *see* Dkt. 277-1, Ex. C, part C. 2. Obviously, few homeowners know the brand of windows in their homes. Notice could have instead been drafted to alert homeowners they are likely members of the class. For example, "Pella's records indicate you may be the current or former owner of a home…with Pella ProLine Series…made between 1991-2009, which may entitle you to benefits under a class action settlement." In *Adams v. Cradduck*, the court rejected a settlement with similarly vague notice, stating that "Rather than seeking to…inform putative class

4

members that they are entitled to settlement funds…the notice buries this simple fact in a jumble of legalese." 5:13-CV-5074, 2015 WL 12915102, at *3-4 (W.D. Ark. Aug. 21, 2015). Also, as in *Adams*, Mr. Tucker's post card notice obscures that class members may be fully reimbursed. Ex. 3.

The long form notice (Dkt. 672-3) is pages of confusing descriptions of recoveries. *See In re Daou Sys., Inc., Sec. Litig.*, CIV. 98CV1537LAJB, 2008 WL 142377, at *2 (S.D. Cal. Jan. 14, 2008) ("The ability of potential class members to understand what they can expect from the settlement is critical to their decision whether to…submit a claim."). This notice contains more sections (30) than the last (27). *Eubank*, 753 F.3d at 726. If class members do read the details, many will think they are entitled to only 25%.

It is no surprise that so few chose to go through the hassle of calling a contractor and completing the claim form for a 25% reimbursement. *Id.* at 725. As before, the notice and claims process discouraged claims. Pella traded silence on class counsels' fees for residual funds. This should not be met with Court approval. *Adams*, 2015 WL 12915102, at *3-4 (rejecting notice "designed to discourage disbursement to [ ] class members").

**II.     There are still several red flags of an unfair settlement.**

There is no admission by class counsel that Pella agreed not to contest fees or that the $9 million will likely top the amount that reaches the class. Considering the prior "scandalous" settlement, it is especially important to apply heightened scrutiny and "make sure that class counsel are behaving as honest fiduciaries…." *Eubank*, 753 F.3d at 723. That the settlement was the product of an arms-length negotiations is not sufficient. *Redman*, 768 F.3d at 629 (describing it as "naïve" to "bas[e] confidence in the fairness of the settlement…on 'arms-length negotiations by experienced counsel'"). In fact, class counsels' assurances echo those in favor of the past arrangement that sold out the class. Dkt. 285, at 1-2; *Eubank*, 753 F.3d at 726.

Courts "must be particularly vigilant [for] subtle signs that class counsel have allowed pursuit of their own self-interests…to infect the negotiations." *In re Dry Max Pampers*, 724 F.3d 713, 718 (6th Cir. 2013); *see Pearson*, 772 F.3d at 787 (courts must be "vigilant and realistic" in their review, nixing "selfish deal[s]" that "disserve" the class). Courts must examine agreements to ensure they are not a "selfish" result of the "built-in conflict of interest" among class counsel and the class. *Pearson*, 772 F.3d at 787; *Redman*, 768 F.3d at 629.

### A. There is a clear-sailing provision.

The first red flag is the clear-sailing provision, inexplicably disclaimed by class counsel. Dkt. 688, at 19, 22-23. The settlement provides "Defendants will not object to or oppose an aggregate and total recovery of up to and including [$9] million." Dkt. 672-1, at 33. That provision is regarded as "questionable" and suggestive of collusion. *Redman*, 768 F.3d at 637; *see also Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011). "The defendant won't agree to a clear-sailing clause without compensation—namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider." *Redman*, 768 F.3d at 637. These provisions "decouple class counsel's incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery." *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1100 (C.D. Ill. 2012).

### B. Class counsels' $9 million fee is likely to be disproportionate.

Another warning sign of an unfair settlement is that class counsel may pocket more than the class.[8] If we assume Mr. Tucker's $3,520 claim is typical, and half the claims are in the 25%

---

[8] The Court ought to see the sum of all claims before granting final approval. *See Eubank*, 753 F.3d at 723.

group, only \$3.52 million would initially be paid to the class,[9] (Dkt. 672-1, at 20, 23)[10] leaving \$20.23 million in Fund A. Deducting a hypothetical \$1 million of administration expenses and the return of a hypothetical \$500,000 in notice costs to Pella, \$18.7 million will be left. Dkt. 672-1, at 24-25. Under § 5.04(b) residual funds are applied pro rata to raise recovery for undercompensated class members. If they represent half of the claimants, an additional \$2.1 million would be distributed, **for a total \$5.6 million** to the class from Fund A;[11] the remaining \$16.6 million will be allotted under § 5.04(4)(c) "in a manner directed by the Court upon petition by the parties." Dkt. 672-1, at 25. It is class counsels' burden to show the settlement is fair, reasonable, and adequate. However, it seems a sizeable portion of Fund A may be allotted under § 5.04(4)(c). The Court should insist those funds be given directly to the class, and should reject any other distribution.[12]

It is unknown how much of the \$2 million from Fund B will go to the class and how much will revert to Pella. If all of Fund B is given to the class, the \$9 million fee would still exceed class recovery by \$1.4 million.[13] Class counsel taking "a disproportionate distribution of the settlement," is a blatant sign of conflicted interests. *Bluetooth*, 654 F.3d at 947. The relevant ratio is "(1) the fee to (2) the fee plus what the class members received." *Pearson*, 772 F.3d at 781. Under

---

9 800 (half of claimants entitled to full reimbursement) x \$3,520 (Objector's claim) = \$2,816,000. \$3,520 x .25 =\$880. 800 (remaining claims) x \$880 = \$704,000. \$2,816,000 + \$704,000 = \$3,520,000.

10 "[C]ash benefits for Eligible Damage to or from a Window with a Date of Sale that is more than 15 years before the Direct Class Notice Date, subject to the provisions of Section 5.04, shall be limited to 25% of the actual expenditures necessary to address the Eligible Damage."

11 \$2,816,000 - \$704,000 = \$2,112,000 residual distribution bringing all 25% claims to 100% reimbursement. \$3,520,000 +\$2,112,000 = \$5,632,000 total class distribution. These numbers are just rough estimates assuming Mr. Tucker's claim as representative.

12 That large of a percentage of the fund should not be distributed *cy pres*, which should only be employed as a last resort upon a showing that further distributions are impossible. *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015); *Pearson*, 772 F.3d at 784.

13 \$5,632,000 + \$2,000,000 = \$7,632,000. \$9,000,000 -\$7,632,000 = \$1,368,000.

7

§ 5.04(c), the $9 million fee could be up to 61% of recovery plus the fee. "[I]n consumer class actions…the presumption should…be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Id.* at 782. An award like the one here renders the settlement unfair. *See, e.g., Id.* at 781 (69% fee "outlandish"); *Redman*, 768 F.3d at 630-32 (55%-67% fee allocation unfair); *Eubank*, 753 F.3d at 727 (56% fee allocation unfair).

### C. Fee segregation retains conflict and ensures excess fees do not go to the class.

The third warning sign is the segregated fee structure. Class counsels' interests *conflict with* the class despite this provision.[14] *Pearson*, 772 F.3d at 787. It is not true, as class counsel insist, that the "fee awarded will impact only defendants—and not class members." Dkt. 688, at 20. The $9 million fee and clear-sailing provision are consideration that could have gone to the class.

The provision is designed to prevent the court from reducing fees or incentive awards. *See Pearson*, 772 F.3d at 786; *Bluetooth*, 654 F.3d at 949. Fee segregation thus protects class counsels' fee by discouraging scrutiny. *See Pearson*, 772 F.3d at 786 (calling it a "gimmick for defeating objectors). It carries a "strong presumption of…invalidity." *Id.* at 787; *Redman*, 768 F.3d at 637 (segregation is a "defect"); *Eubank*, 753 F.3d at 723 (segregation is a "questionable provision"); *but see Martin v. Reid*, 818 F.3d 302, 309 (7th Cir. 2016) (suggesting segregation is "to be encouraged" without addressing *Pearson*, *Redman*, or *Eubank*).

---

14 The Court should reject class counsels' false premise that having to seek fees by motion is "prima facie evidence that there is no conflict of interest between class members' recoveries and the payment of attorneys' fees." Dkt. 688, at 20.

### III. The settlement is unfair to class members with a date of sale before March 22, 2003, who were inadequately represented.

Under the current settlement, class members like Mr. Tucker with a sale before March 22, 2003, are limited to 25% in the initial distribution. Dkt. 672-1, at 20, 23. These members are penalized for the "eight largely wasted years" that culminated in an "inequitable" settlement rejected by the Seventh Circuit. *Eubank,* 753 F.3d at 721, 729. They should not shoulder the weight of the delay caused by misconduct of prior counsel acting in concert with Pella; the 15-year period should be tolled between 2011 and 2014, when the prior settlement was negotiated.

Additionally, these members only receive residual payments after Pella has been reimbursed notice expenses. Dkt. 672-1, at 25. Funds should go to the undercompensated members first. Similarly, these members are excluded from Fund B's PSEP benefits paid from Fund B. Dkt. 672-1, at 11-12, 31-32. With a settlement tailored to penalize class members who purchased before March 2003 (an apparent majority of the class), it is no wonder so few class members elected to pursue claims. If the settlement (and notice) cannot be revised to avoid this penalty, it must be rejected as unfair.

Curiously, some of the named representatives[15] are in the 25% group excluded from Fund B. Of note, each will receive $25,000, *five times* the amount most representatives received in the last settlement. Rule 23(a)(4) requires representative parties to protect the interests of the class. "The named plaintiffs are…fiduciaries of its members…charged with monitoring the lawyers who prosecute the case on behalf of the class." *Eubank,* 753 F.3d at 718. Disproportionate incentive awards raise doubt on whether the representative is a champion for the class. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006). When incentive payments "make the class

---

15 Named representatives Kent Eubank, Jerry Davis, Ricky Falaschetti, Rita Cicinelli, Robert Josephberg, and Amy Chasin appear to be within the 25% group. Dkt. 540, at 6-9, 11-12, 18.

representatives whole, or…more than whole[,]…[they] have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *Pampers*, 724 F.3d at 722. As here, "[t]he named plaintiffs are inadequate representatives under Rule 23(a)(4), and the district court abuse[s] its discretion in finding the contrary." *Id.*

For representatives in the 25% group, recovery plus $25,000 should take care of their damages and then some. The disproportionate award creates a disincentive to resist terms in the settlement unfair to other members. To the extent the unnamed members receive 100% through residual funds, they still take no part in Fund B's $2 million for future manifestations.

The $25,000 awards are a king's ransom next to the $31 per-capita recovery ($23.5 million Fund A % 743,000 class members = $31). And, the aggregate $250,000 for all ten representatives is roughly 1% of the gross fund,[16] far more than the 0.16% mean incentive award. *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV -2898, 2012 WL 651727, at *17 (N.D. Ill. Feb. 28, 2012) (awarding $25,000 awards amounting to .039% of the settlement, recognizing the mean incentive award is 0.16%).

In *Cook v. Niedert*, the court upheld a $25,000 incentive award where the representative "spent hundreds of hours with his attorneys and provided them with an 'abundance of information" and "reasonably feared workplace retaliation." 142 F.3d 1004, 1016 (7th Cir. 1998). No one has suggested these representatives spent hundreds of hours assisting in the case or faced any particular risk. Dkt. 688, at 33-34.[17] Mr. Tucker's interests were not fairly represented by the original or current class representatives or counsel. While the attorneys and class representatives are made

---

16 The $250,000 in aggregate incentive awards amounts to .97% of the total $25.7 million settlement.

17 Class counsel cite *Spicer v. Chi. Bd. Options Exch., Inc.* for the proposition that "$30,000 [was] awarded from [the] settlement fund of $10 million[,]" but neglect to mention that there were 3 representatives and the award was $10,000 for each. 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993).

whole and Pella limits its liability, Mr. Tucker and the majority of the class are left with rotting windows and a meager recovery.

**IV.    Any fees should be calculated as a percentage of funds that reach the class.**

Any fees awarded to class counsel should be limited to a percentage of *actual* class recovery plus the fee. *Redman*, 768 F.3d at 630. The Seventh Circuit has refused to accept a hypothetical $14.2 million "benefit" to the class members, when actual compensation for the class was less than $1 million. *Pearson*, 772 F.3d at 781. Using actual recovery "gives class counsel an incentive to design the claims process [to] maximize the settlement benefits actually received by the class" *Id*. With only 1,600 claims among 743,000 members, residual funds should be in the millions. Reimbursed notice costs and any residual funds under § 504(4)(c), unless distributed directly to the class, should not be included in the calculation. *See In re Capital One Tel. Consumer Prot. Act Litig*., 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015); *Averett v. Metalworking Lubricants Co.*, No. 115CV01509JMSMPB, 2017 WL 4284748, at *6 (S.D. Ind. Sept. 27, 2017). Any *cy pres* allocation must be excluded because "the recipient of that award [will not be] a member of the class." *Pearson*, 772 F.3d at 781. And, the Court should also not include any portion of the $2 million reversionary Fund B not distributed to the class. *Redman,* 768 F.3d at 630.

If as discussed previously, Mr. Tucker's claim is typical of the 1,600 claims filed, $5.6 million would actually reach the class after two disbursements. With the $9 million earmarked for class counsel, fees should be taken from a gross fund of $14.6 million. Twenty-five percent, which class counsel acknowledge as the benchmark, would produce a $3.6 million fee. $9 million, by contrast, would be an unconscionable 61%. *Pearson*, 772 F.3d at 781 (rejecting "outlandish 69 percent" fee after calculating the amount actually received by the class). A hypothetical *ex ante* bargain would never have allowed for that fee. *Williams v. Rohm & HaasPension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (discussing market-based fee analysis).

Though there were risks, Pella had already demonstrated a willingness to settle. According to Pella's briefing in the Seventh Circuit, it valued the prior settlement at between $17 million and $26 million. *See* Pella-Appellees' Brief, Case No. 13-2091, D.E. #36, p. 22. The quality of class counsels' performance must be tempered by the low claims rate and the unduly small recovery by the class. *Eubank*, 753 F.3d at 723. And considering prior class counsel "sold out the class[,]" the class members would have been leery of anything above the 25% benchmark calculated from actual class recovery plus fees. *Pella*, 753 F.3d at 723.

**V.     Fees cannot (and should not) be awarded under the lodestar method.**

Class counsels' fees should not be untethered from recovery using the lodestar method. *See In re Synthroid Marketing Litig.*, 325 F.3d 974, at 979-80 (7th Cir. 2003) (advantage of percentage-based recovery is the client, who "cares about the outcome alone" "need not monitor how many hours the lawyers prudently devoted to the case");*Gaskill v. Gordon*, No. 88 C 3404, 1995 WL 746091, at *3 (N.D. Ill. Dec. 14, 1995) ("percentage-of-the-fund approach . . . aligns more closely the interests of the attorneys with the interests of the parties"). Because there is no specific breakdown on how the firms accumulated their time, class counsels' submission of $8,051,377.50 lodestar among five law firms is inadequate, precluding the Court from purging unnecessary hours. Dkt. 688-1, at 5-6, Dkt. 688-2, at 9-10, 699-3, at 6-7. The petitioner must "exclude…hours that are excessive, redundant, or otherwise…unnecessary" and bears the burden of proving the hours. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). The court must exclude hours it deems inadequately documented or not reasonably expended on the litigation. *Id.*; *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 550 (7th Cir. 1999). "[W]hen a fee petition is vague or inadequately documented, a district court may strike the problematic entries or…reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593 (7th Cir. 2000). Time entries must be "sufficiently detailed to permit the Court to determine whether

12

the hours expended were…necessary to the conduct of the litigation." *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 987 (N.D. Ill. 2012). Class counsels' submission offers only total figures and conclusory discussion of class counsels' labor—no way for the court to identify excess billing. Dkt. 688-1, 688-2, 688-3. There is also no justification for a proposed 1.9 multiplier (Dkt. 688, at 28), when a 2 multiplier is considered a "sensible ceiling" in the Seventh Circuit. *Florin v. Nationsbank*, 34 F.3d 560, 565 (7th Cir. 1994). With so little likely to reach the class, this case calls for a negative multiplier. *Summers v. UAL Corp. ESOP Comm.*, No. 03 C 1537, 2005 WL 3159450, at *1 (N.D. Ill. Nov. 22, 2005) (negative multiplier of 40% where settlement did not provide "anywhere near a full remedy"). Under any standard, class counsels' proposed $9 million is unreasonable.

**VI.    No private allocation of fees should be permitted.**

The Court should not defer to class counsel to allocate fees. At least one attorney who previously advocated in favor of the former sellout of the class seeks compensation as class counsel here.[18] Assurances that fees will be distributed fittingly are hollow given the prior breaches of trust against the class members. *Eubank,* 753 F.3d at 721-22. Other circuits have recognized that "the district court has an independent duty…to ensure that attorneys' fees are reasonable and divided up fairly," and "[t]he district court cannot "delegate that duty to the parties." *In re High Sulfur Content Gasoline Prods. Litig.*, 517 F.3d 220, 227-28 (5th Cir. 2008); *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987); *see In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 316 F.R.D. 240 (E.D. Wis. 2016) (class counsel disclosing allocation) *rev'd on other grounds*, 869 F.3d 551 (7th Cir. 2017). The district court "must not … delegate that

---

[18] Dkt. 688, at 6 (noting "Current Class Counsel John Yanchunis filed his Declaration in support of Final Approval and for Attorneys' Fees on January 9, 2013 (D.E. #312-4)").

duty to the parties." *High Sulfur,* 517 F.3d at 228. While "lead counsel may be in a better position . . . to evaluate the contributions of all counsel seeking recovery of fees[,]" The allocation should be supervised by the court considering inherent conflicts among the attorneys. *High Sulfur,* 517 F.3d at 234-35.

**CONCLUSION**

This Court should reject the latest settlement. In the unlikely event that the settlement is approved, any attorneys' fees awarded to class counsel should be calculated as 25% of the funds that reach the class. The Court should supervise allocation of any funds among the firms.


DATED:  June 19, 2018                    Respectfully submitted,

                                         /s/ *Jonathan P. Novoselsky*
                                         Johnathan P. Novoselsky
                                         Jonathan Novoselsky, P.C.
                                         303 W. Madison, 22nd Floor
                                         Chicago, IL 60606
                                         312-286-8429
                                         872-228-8085 - fax
                                         ***Attorney for Objecting Class Member Donald Tucker***

Donald Tucker
Objecting Class Member

Dated June 19, 2018

## CERTIFICATE OF SERVICE

The undersigned certifies that today he filed the foregoing Objection and associated declaration on ECF which will send electronic notification to all attorneys registered for ECF-filing. The undersigned further certifies that he mailed the objection today by First Class U.S. Mail to:

Clerk of the Court
United States District Court
Northern District of Illinois, Eastern Division
219 S. Dearborn Street
Chicago, IL 60604

Eubank v. Pella Corporation Settlement Administrator
P.O. Box 404041
Louisville, KY 40233-4041

Robert A. Clifford
Clifford Law Offices
120 N. Lasalle Street
Suite 3100
Chicago, IL 60602

John P. Mandler
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

DATED: June 19, 2018

/s/ Jonathan P. Novoselsky
Johnathan P. Novoselsky