IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KENT EUBANK, JERRY DAVIS, RICKY FALASCHETTI, RITA CICINELLI, ROBERT JOSEPHBERG, JEFFREY ACTON, KENNETH HECHTMAN, JAMES NEIMAN, AMY CHASIN and EDWARD RUHNKE, individually and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> v. <br><br> PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation, Defendants <br><br> Defendants. | No.: 06 C 4481 <br><br> Honorable Sharon Coleman Johnson <br><br> Class Action |

**COMPLEX LITIGATION GROUP LLC'S RESPONSE TO CLASS COUNSELS'
MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES**

# **TABLE OF CONTENTS**

I. WITHOUT THE LITIGATED CERTIFIED CLASSES COMPLEXLIT GROUP SECURED, THIS CLASS SETTLEMENT WOULD NOT HAVE BEEN POSSIBLE..................................................................................................2

II. COMPLEXLIT GROUP THOROUGHLY PREPARED THE CASE FOR CLASS CERIFICATION WITHIN THE BOUNDARIES OF THE DISCOVERY LIMITATIONS SET BY JUDGE ZAGEL'S ORDERS...........................................5

III. COMPARATIVE DIFFERENCES BETWEEN THE CURRENT AND PRIOR SETTLEMENT DO NOT JUSTIFY AWARDING CURRENT CLASS COUNSEL THE ENTIRE FEE.....................................................................................7

CONCLUSION............................................................................................15

# **TABLE OF AUTHORITIES**

*Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999).....................................2

*Cascade Corp. v. Sprint Comm. Co., L.P.*, 845 F. Supp. 328 (D. Me. 2012).........................2

*In re. Lithium Ion Batteries Antitrust Litigation*, 2017 WL 1086331 (N.D. Cal. 2017)..............8

*In re. Modafinil Antitrust Litig.*, 837 F.3d 238 (3d Cir. 2016).........................................2

*In re: Pella*, 2017 WL 3118025 (D.S.C. July 21, 2017)...............................................3

*In re: Pella Corp. Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation*, 996 F. Supp. 2d 1380 (JPML 2014)....................................3

*In re: Whirlpool Corp. Front-Loading Washer Products Litig.*, 2016 WL 5338012 (N.D. Ohio 2016).......................................................................................................3

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001)..............2

*Soutter v. Equifax Information Services LLC*, 299 F.R.D. 126 (E.D. Va. 2014).....................2

Class Counsel has filed a fee petition in which it asks the Court to award it the entire attorneys' fee and expense reimbursement to be paid by Defendant Pella Corporation in this case. Complex Litigation Group LLC (f/k/a Freed & Weiss LLC n/k/a Quantum Legal LLC) ("ComplexLit Group") does not object to the amount of the fee, but it does object to Class Counsel claiming the entirety of the fee for themselves. ComplexLit Group thus asks this Court to award it the lodestar the Firm incurred in creating the foundational victory without which the current settlement would not have been possible: the certification of 23(b)(3) state classes and the nationwide 23(b)(2) class. An enormous amount of work ($3,420,589.50 in time, and $174,420.56 in out-of-pocket expenses), the necessity of which has never been questioned, went into pursuing, securing and protecting Judge Zagel's certification decision, including a Seventh Circuit appeal and a petition for *writ* of *certiorari* to the Supreme Court.

To be clear, ComplexLit Group does not object to Class Counsel being paid for their efforts. Rather ComplexLit Group objects to Class Counsel being paid the entire fee as if they, and only they, created the benefit the Class received through this settlement. ComplexLit Group's work securing and defending the certification of the classes created the necessary legal antecedents to the benefits received by the Class under this settlement. ComplexLit Group's fee request of $3,420,589.50 in lodestar and $174,420.56 in expense reimbursement, which is itself a significant trim of the Firm's time and expenses actually expended and, constitutes approximately one-third of the fee that Class Counsel seeks, and ComplexLit Group submits that awarding Class Counsel approximately 2/3 of the fee and ComplexLit Group a little more than 1/3 of the fee is a fair recognition of the benefits the Class received from ComplexLit Group's meritorious achievements in the case.[1]

---

[1] See D.E. 686 at 16-17 for an explanation of the calculation of the ComplexLit Group's fee

## I. WITHOUT THE LITIGATED CERTIFIED CLASSES COMPLEXLIT GROUP SECURED, THIS CLASS SETTLEMENT WOULD NOT HAVE BEEN POSSIBLE.

It is the rare class action case that settles on a classwide basis after class certification has been denied since "the denial of class status sounds the death knell of the litigation, because the representative plaintiff's claim is too small to justify the expense of litigation." *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 834 (7th Cir. 1999). Indeed, courts have long recognized the real world effect of a class certification decision. As the leading treatise puts it:

> The *class certification decision is generally the most important aspect of a class action case.* If a court certifies the case to proceed as a class action, the case's dynamics change dramatically, with the plaintiff having the capacity to bargain from a much-strengthened position. On the other hand, if class certification is denied, that is generally the "death knell" of the matter; while the plaintiff may nonetheless proceed individually, typically her claims will be so small, and the costs of litigating them so great, that she will not do so.

*Newberg* § 7:18 (emphasis added).[2]

No one can reasonably dispute that that the denial of class certification here would have sounded the death knell of this case. There exists an obvious and stark comparison which underscores the point. This case, which currently only includes a class of purchasers of Pella ProLine windows, originally included claims against two other lines of Pella windows: the

---

request, which also quantifies the millions of dollars in time that ComplexLit Group incurred but excluded from its request to this Court.

[2] *See also In re. Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) ("[A]cknowledging the practicalities of class litigation, we have said that class certification 'is often the defining moment in class actions (for it may sound the 'death knell' of the litigation on the part of plaintiffs...).'") (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 162 (3d Cir. 2001)); *Soutter v. Equifax Information Services LLC*, 299 F.R.D. 126, 130-31 (E.D. Va. 2014) ("As *Newberg* makes clear, the class certification decision is, as a practical matter, of dispositive consequence, notwithstanding that it is not dispositive in the same way as is a summary judgment motion."); *Cascade Corp. v. Sprint Comm. Co., L.P.*, 845 F. Supp. 328, 331 (D. Me. 2012) ("In the typical class action under Fed.R.Civ.P. 23(b)(3), the denial of class certification spells victory for the defendant and the end of any practical possibility of recovery by the plaintiffs because the costs of litigation are ordinarily too great compared to the value of individual recovery to make individual suits worthwhile.").

Architect and Designer series. After *certiorari* was denied by the Supreme Court and the Seventh Circuit's class certification affirmance was allowed to stand, other firms began filing Architect and Designer series cases and those window lines were ultimately excised from this case and sent via a JPML transfer order to the District of South Carolina. *See In re: Pella Corp. Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation*, 996 F. Supp. 2d 1380 (JPML 2014).

The Architect and Designer series windows purchasers will not be the beneficiary of any class action settlement as the judge in South Carolina denied class certification of the Architect and Designer series windows. As Judge Norton summarized,

> [o]n June 3, 2016, the court issued orders denying class certification .... holding that (1) when plaintiffs' breach of warranty claims were considered in their entirety, "individual issues predominate[d] over the common defect issue" under Federal Rule of Civil Procedure 23(b)(3), and (2) even if the class could escape the predominance inquiry by seeking certification on just the defect issue, certification was still inappropriate under the superiority requirement of Rule 23(b)(3). The court highlighted the individualized inquiries that would be required to assess causation of each class member's damages and to resolve Pella's affirmative defenses—particularly with respect to the statute of limitations.

*See In re: Pella*, 2017 WL 3118025, at *1 (D.S.C. July 21, 2017). While there are certainly factual differences between the claims here and those in South Carolina, the point does not change: ComplexLit Group overcame substantial odds to not only obtain the certification order, but to defend and preserve it from being reversed on appeal. This achievement deserves to be compensated.

Indeed, the achievement of class certification that was protected through appeals formed an important part of the basis for the court's approval of the fee award in *In re: Whirlpool Corp. Front-Loading Washer Products Litig.*, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) wherein the court noted that part of the important work done included the fact that the counsel had

"prevailed in this Court (and in *Sears*) on the question of class certification of the Biofilm claims" and had "maintained victory on certification during lengthy appellate proceedings, which helped shape the law in this Circuit and others." *Id.* at *22. Indeed, this Court presided over the *Kenmore* (*i.e. Sears*) case referenced by the *Whirlpool* court, and thus knows how critical a role class certification plays in class counsel ultimately being able to obtain classwide relief.

Judge Zagel also recognized the significance of class certification in approving the fee petition sought in connection with the earlier settlement in his comments on the record, stating:

> I have actually one remark about the significance of this case and the viewpoint from the bench. I had no particular consciousness that this might be a legally significant case until I was at some seminar, not involving class actions, and some lawyer from Maine, which is a long way from here, came up to me and said "oh, you wrote Saltzman and Pella; that's a big case." …. it was not long after -- not longer, I think it was maybe within two or three days of the Seventh Circuit's affirmance, and I thought it was interesting that someone from Maine would say this to me….Well, the interesting thing is is that when I looked at this I thought it was an interesting case, but I've decided many interesting cases that sink into the ocean and are never seen again.

(4/22/13 Tr. at 6, attached as Exhibit 1)

Class Counsel's own submissions to this Court explicitly relied on the class certification achievements of Complex Lit Group. The motion for preliminary approval of this settlement filed by current Class Counsel recognized the importance of, *inter alia*, the prior class certification accomplished by ComplexLit Group: the entirety of the argument supporting certification of the Settlement Class was that "common questions that would be decided on a class-wide basis ***have been certified***, and, as well, have since survived Defendants' attempts to decertify those common questions." [D.E. 672 at 36; emphasis added].

Class Counsel also explicitly relied on ComplexLit Group's results in arguing against the "Defendants' attempts to decertify". In filings submitted to this Court, Class Counsel argued that Defendants' decertification efforts should be rejected because Judge Zagel's class certification

4

order was "law of the case" [D.E. 518 at 8] and nothing more than "a motion for reconsideration" of the order ComplexLit Group had secured and defended through the appellate process. [D.E. 522 at 3]. Every time Pella sought to revisit or undermine the class certification order, Class Counsel relied upon the results obtained by the efforts of ComplexLit Group.[3] The "law of the case" and the "rigorous treatment" of the certified classes by the courts relied upon by Class Counsel resulted from the successful efforts of ComplexLit Group.

## II.  COMPLEXLIT GROUP THOROUGHLY PREPARED THE CASE FOR CLASS CERTIFICATION WITHIN THE BOUNDARIES OF THE DISCOVERY LIMITATIONS SET BY JUDGE ZAGEL'S ORDERS.

Class Counsel seem to predicate their claim to the entirety of the fee on the assertion set forth in Ms. McNulty's declaration that "[o]ur litigation team determined that while work had been done to prepare a settlement, the anticipated offers of proof were in a nascent stage. We essentially had to start the litigation from scratch with the intent to develop the case for trial, not simply a settlement." [D.E. 672-6 at ¶ 5] But the newly appointed Class Counsel did not "start from scratch." Rather, they started with the most difficult stage of any class action already resolve in their favor – class certification. Few counsel in class action cases begin their work with class certification already successfully behind them.

Ms. McNulty's statement is also objectively false in claiming that the case was "prepared for settlement." A case that is "prepared for settlement" does not proceed through contested

---

[3] See also Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss and to Strike Class Allegations [D.E. 518] at 8 (Arguing motion should denied because,"[h]aving survived Pella's attacks of insufficient pleadings at the dismissal stage and at the class certification stage, the basic elements of Plaintiffs' claims persist"); Plaintiffs' Reply to Defendants Response Brief Concerning Certain Rule 23(b)(2) and (3) Issues and Plaintiffs' Response in Opposition to Defendants' Motion to Decertify the Nationwide (b)(2) Class [D.E. 522] at 3 ("This Court certified, and the Seventh Circuit upheld, Rule 23(b)(2) and (b)(3) classes. Despite rigorous treatment by this Court and the Seventh Circuit, and despite Pella's having reached agreement in proposing the settlement structure for both the (b)(2) and (b)(3) classes, Pella erroneously suggest that the class is now at risk of decertification.").

5

class certification motions and appeals all the way through a Supreme Court *cert.* petition. To the extent Class Counsel insinuates that ComplexLit Group somehow took shortcuts because it was only "preparing a settlement", such an inference is belied by the extensive amount of work ComplexLit Group undertook to secure class certification, efforts that current co-lead Class Counsel George Lang is fully aware of and has never taken fault with. In particular, in addition to the extensive communications with Pella Proline window owners about the issues they were experiencing, ComplexLit Group reviewed the extensive documents produced by Pella, participated in in-home inspections, took and defended numerous depositions and filed hundreds of pages of briefs. These are many of the same tasks for which Class Counsel now seeks reimbursement and are discussed in detail in ComplexLit Group's Motion for Award of Attorneys' Fees Costs and Expenses [D.E. 686 at 7-15].

No shortcuts to class certification were taken. ComplexLit Group retained experts on window design and in statistical methods. A review of the extensive class certification briefing and Judge Zagel's class certification order clearly demonstrates the important role these expert opinions played in obtaining class certification. While Class Counsel, once they took over the case, was certainly within its rights to seek new experts for trial (which, in fact, is not all that unusual), the suggestion that the case was prepared for settlement is demonstrably wrong. The number of docket entries up through the time of class certification also demonstrate the point. At the time the Mandate issued reversing the settlement, there were 410 Docket Entries in the District Court record. The Minute Entry for Preliminary Approval was D.E. 669. If Docket Entries are a measure, current Class Counsel was involved in under 37% of the case.

The error in Ms. McNulty's implicit criticism is made all the more clear by Judge Zagel's discovery orders which precluded ComplexLit Group from preparing the case for trial at the

6

same time it was prepared for class certification. The March 20, 2007 scheduling and discovery order stated that

> [d]iscovery prior to Class Certification must be sufficient to permit the Court to determine whether the requirements of Federal Rule of Civil Procedure 23 are satisfied. However, in order to ensure that a Class Certification decision can be issued as soon as practicable, priority shall be given to discovery on class issues ("Phase I"). Once Class Certification is decided, the Court may…enter a second scheduling and discovery order, if necessary ("Phase II"). Phase I discovery shall be limited to those issues necessary for the determination of Rule 23 certification including a preliminary investigation of the merits of Plaintiffs' claims only as necessary for class certification purposes. The Parties shall not engage in Phase II discovery…until after the resolution of class certification issues.

[D.E. 47 at 1-2] ComplexLit Group was thus precluded from preparing the case for trial (the Phase II issues) by a court order prior to class certification.

Nonetheless, ComplexLit Group still pursued discovery on a broad range of issues it considered important for class certification, but Pella disagreed and moved the Court for a protective order against some of the discovery ComplexLit Group had served because, in Pella's view, the discovery went to Phase II issues. As Pella noted in its motion for a protective order, it sought an order "enforcing the provision in the [] Scheduling Order that limits Phase I discovery to those issues necessary for the determination of Rule 23 certification (*See* Docket Nos. 37, 48 and 49)" [D.E. 58 at 1] and "protecting [Defendants] from answering Plaintiffs' discovery". [*Id.* at 11] Judge Zagel granted Pella's motion. [D.E. 80]

Thus, Judge Zagel's discovery orders predicating the taking of Phase II discovery "if necessary" [D.E. 86] inherently recognized that denial of class certification would have been the death knell of this case. As a result, the case, at the time a settlement was reached in 2012 after protracted litigation around class certification, had been prepared to the fullest extent possible consistent with the orders of Judge Zagel, which limited and focused discovery on the class certification issues. [*See, e.g.*, D.E. 47, 82, 86.]

7

### III. COMPARATIVE DIFFERENCES BETWEEN THE CURRENT AND PRIOR SETTLEMENT DO NOT JUSTIFY AWARDING CURRENT CLASS COUNSEL THE ENTIRE FEE.

Any claim that current Class Counsel is entitled to the entirety of the fee also should be measured against the incremental benefit Class Counsel achieved over the prior settlement. This is the method by which objectors can be compensated. *See In re. Lithium Ion Batteries Antitrust Litigation*, 2017 WL 1086331, at *19 (N.D. Cal. March 20, 2017) ("Any award or payment of attorneys' fees made to the counsel of an objector to the Settlement shall only be made by Court order and upon a showing of the benefit conferred to the Classes. In determining any such award of attorneys' fees to an objectors' counsel, the Court will consider the incremental value to the Classes caused by any such objection.").

There was real value in the prior settlement. Judge Zagel certainly thought so, in spite of the failure of Judge Zagel to explain the merits of his final approval decision (a point of criticism in the Seventh Circuit opinion), the record provided extensive analysis of the value of the prior settlement. ComplexLit Group provided a detailed *Reynolds* analysis in its Reply In Support of Preliminary Approval.[D.E. 291] George Lang, who is currently co-lead Class Counsel, objected to the prior settlement, claiming the "litigation value" of the case was $380,000,000. [D.E. 286 at 8] This is in contrast to the current settlement, which Class Counsel submitted without any *Reynolds* analysis.

The current settlement claims to create a common fund of $25.75 million (as discussed below, the real fund size is $23.75 million). The prior settlement, which was a claims made settlement that did not cap Pella's potential exposure if there was a high claims rate, was objected to on a variety of procedural and substantive grounds. Most of the objections were directed at the Paul Weiss situation. The main progenitor of objections to the adequacy of the

8

terms of the settlement was attorney George Lang, who ended up as one of the two court-appointed co-lead counsel firms. Mr. Lang vociferously objected to the adequacy of the settlement consideration to Judge Zagel and to the Seventh Circuit, arguing that "[t]he net expected value of the case is $380 million, far above the settling parties' estimates of the settlement value...." [Eubank Appellant Br., 7th Cir. D.E. 27-1 at 23 heading 2] Mr. Lang was also the first person to raise the issues of alleged conflicts involving former ComplexLit Group partner Paul Weiss's ongoing ARDC proceedings related to claims of sexual harassment. [Eubank Appellant Br., 7th Cir. D.E. 27-1]

The Seventh Circuit ultimately rejected the settlement, primarily on procedural grounds related to Mr. Weiss's situation and the fact that Judge Zagel's final approval order did not specify his reasoning in sufficient detail. [7th Circuit D.E. 95] The only substantive concern the Seventh Circuit expressed over the settlement related to the complexity of the 17-page claim form – a concern that the Seventh Circuit felt was borne out by a relatively low claims rate. *Id.*

Mr. Lang, having had the prior settlement approval reversed, made a "bet" that he could do substantially better when he sought to become co-lead counsel. It is entirely fair and reasonable for this Court to evaluate Class Counsel's claim for the full fee against the incremental benefit they conferred, taking into account the cost to the Class from five years of delay the Class suffered in order to receive the purported incremental benefit.

The real question is whether current Class Counsel deserves all of the fee for the incremental differences it achieved at the expense of a five-year delay in the distribution of settlement benefits to the Class, many of whom had their windows continuing to rot *in situ* for the entire period or have carried the full replacement costs without any relief from any settlement benefit. ComplexLit Group submits that the incremental differences, balanced against the

9

delays, do not justify Class Counsel claiming the entire fee, especially when measured against the significant benefit ComplexLit Group conferred by obtaining and defending the certification order that made any classwide settlement possible.

This point is demonstrated by comparing a few key terms of the respective settlements. The first concerns the assertion that Class Counsel simplified the claims form. While there was a marginal simplification is undeniable from a mathematical standpoint (11 pages, 12 if the class member has more than two windows) is shorter than the 12 pages of the prior settlements' claim form), from a practical standpoint there is no meaningful difference in complexity. The rather detailed objection of Dr. Sanford Shifrin makes the point starkly. [D.E. 676] Dr. Shifrin gave up on filling out the claim form as he complained that some of the information required would have required him, an elderly gentleman, to climb a ladder to read window engravings. In addition, he noted that the claim form is replete with technical window terms that are undefined and that he, a doctor, could not even figure out what he was supposed to be looking for. While the objection sets forth the specific problems he had with the claim form in three pages of single spaced detail, he summarized his objection as being based on the "onerous – if not functionally impossible – nature of the class action claim form. The 12-page claim form … requires information that reasonable class members (many of whom are old or infirm) cannot provide.…" *Id.*

The extremely low claims rate here, despite the purportedly superior class benefits, belies the assertion that a superior claims form is in place. Class Counsel asserts in their preliminary approval brief that 1,600 claims have been submitted to date. [D.E. #688 at 13] Yet current Co-Lead Class Counsel George Lang, in his appeal brief to the Seventh Circuit in 2014, argued that "[t]he claims process was sufficiently burdensome that very few class members [12,190[4]] have

---

[4] There were 10,706 claim form and 1,484 arbitration forms filed. [D.E. #402 ¶4]

submitted claims." Here, the claims filed are 87% less than what was filed in response to the *prior* settlement. That number speaks volumes to Class Counsel's claim that they are entitled to the full fee based on an allegedly significantly superior settlement.

Second, the common fund here is not really $25.75 million. That assertion is incorrect, as all the claims will be paid from what the Settlement Agreement calls "Fund A" which is $23.75 million. The additional $2 million placed in "Fund B" is for future claimants who have not yet had damage manifest, and that $2 million is actually less than Pella's current potential liability under the PSEP program which Pella already operated independent of any settlement. As this Court may recall, the PSEP was a "secret" warranty program Pella created for its distributors in response to the alarming number of product failures. Pella did not publicize the PSEP program, and it was up to a distributor whether or not tell a customer about the PSEP program or to offer the benefits to the customer. Nor was the PSEP a legally enforceable entitlement. The prior settlement made the PSEP an explicit obligation of Pella that was to be applied to all claimants. The current settlement does the opposite, allowing Pella to cap its liability under the PSEP at the $2 million amount placed in Fund B. Section 5.07(3) is explicit that if Pella provides the PSEP benefits "up to the total amount of Fund B, Defendants shall have no further obligation to provide benefits to Settlement Class Members." Given this provision of the settlement, it is ironic that current co-lead counsel George Lang argued (incorrectly) against the prior settlement because "there **are no caps under the warranty and the PSEP**. The proposed settlement instead *now caps* those benefits -- which *were not capped before*. The Proposed Settlement thus provides less benefit than the original warranty and the PSEP. So any mention of extending the PSEP to the Class is really a thinly disguised euphemism for reducing benefits to the Class." [D.E. 292-1 at 4, emphases in original] It is actually the current

11

settlement that caps those PSEP benefits at the relatively paltry level of $2 million. It is not correct for Class Counsel to claim that taking these current Pella PSEP obligations and capping them and putting them into a fund is a creation of a benefit to the class. It is instead a limitation of a benefit already offered to the class.

Third, the fact that the current settlement contains a fixed common fund placed into Fund A while the settlement negotiated by ComplexLit Group was of a claims made variety is not a sign that the current settlement is markedly superior. ComplexLit Group always felt that the claims-made process was a benefit to the class as there was no risk of proration. A large claims rate under the current settlement would lead to enormous proration reductions of benefit paid to the class. Based on the known numbers in the record, there are 743,000 class members [D.E. #688 at 12] with 7,000,000 windows [D.E. #688 at 4] If all class members made claims on all of their windows, proration of the $25.75 million common fund would result in payments that amount to less than $35 per class member and less than $3.68 per window.

Pella, under the earlier settlement by ComplexLit Group, had agreed to pay all claims submitted without an overall cap (there were caps on what an individual class member could claim). A high claims rate could have subjected Pella to payments that were multiples higher than the currently capped $25.75 million dollar common fund. Class Counsel felt that, given the enormous amount of class member outreach it had experienced, claims rates would be high. In retrospect, that assumption turned out to be incorrect, but given the large, thousand-plus member database ComplexLit Group had compiled of class members who had reached out on their own, this was not unreasonable. Indeed, Pella itself had assumed a higher claims rate in its valuation, which led it to assume the settlement would have paid out $26 million in claims. Nonetheless, when current Class Counsel set out to negotiate the current deal, it already the benefit of the

12

knowledge that the claims rate would likely not be high, and it got Pella to pay the *exact amount* Pella thought it was going to have to pay under previous settlement. This is hardly an achievement that entitles current Class Counsel to the entire attorneys' fee, especially at the cost of five years of delay.

Indeed, the cost of delay must be factored into Class Counsel's claim that they deserve the entire fee. Co-lead George Lang was the titular leader of the objectors, and one could reasonably say he cost the class the immediate availability of benefits that would have been available five years earlier on the bet that he could do better. Of course, whatever betterment was achieved has to be compared against the delay. An abject example of the consequences of this delay and the way the current settlement actually penalizes class members for the five years of delay is the story told in the objection of class members Kenneth and Judy Andrews. The Andrews purchased and installed their windows in 2001. At the time of the prior settlement, the Andrews' windows were 12 years old, and those windows are now 17 years. Despite the fact that Andrews state that "the windows began to show mold and deterioration by the 5th year, the Andrews have not replaced the windows for reasons they explained in their objection, in which they expressed their view that they were "being punished for the slowness of the settlement" because they "could not afford replacement cost without settlement" and thus have, for the last ten years, been dealing with windows that "could not be opened and closed unless someone outside guided, pushed or lifted up on the windows while someone inside turned the crank" and have been "fight[ing] an ongoing battle with the mold." [D.E. 691] The Andrews are actually correct in claiming that they are "being punished by the slowness of the settlement" but for different reasons – the Settlement cuts compensation for windows repaired after they are 15 years old by 75%. (See Section 5.03(4) of the Settlement Agreement, which states that a

window "that was repaired or replaced more than 15 years after the Date of Sale ... shall be limited to 25% of actual expenditures necessary to address the Eligible Damage.") Not only have they had to live with rotting windows for an additional five years, but the five year delay also aged their windows into the 75% reduced benefit category.

Finally, current co-lead counsel George Lang criticized the prior settlement's arbitration procedure for larger dollar value claims because, he incorrectly asserted, it preserved Pella's causation defenses such as misuse, etc. [See D.E. 286 at 21] But the current settlement does essentially the same thing. Instead of an arbitration proceeding, the claims administrator is directed to reject any damages claims for "non-recoverable damages", and the list of such non-recoverable damages includes the *very same causation defenses* that could have been asserted in the prior settlement's arbitration process. See current Settlement at Section 5.03(2).

The arguments made herein should not be taken as a reason to disapprove of the settlement. Any settlement negotiation involves difficult choices that class counsel must make. ComplexLit Group made difficult choices in 2011-12 during the 11 months of settlement negotiations. Current class counsel made their own difficult choices and tradeoffs. The difference is that current class counsel had the benefit of the "floor" established by the prior settlement, and they have exaggerated the marginal improvements the current settlement delivers compared to the prior settlement. Under these circumstances, current class counsels' effort to claim the entire fee should be viewed as inequitable.

In their Memorandum in Support of Preliminary Approval, Class Counsel argue that "this consumer-protection/product-defect hybrid class action is almost certainly one of the more complex, expensive and lengthy litigations of its kind in the country ... Not only are the legal issues unique, difficult, and technical, the expert-driven testimony is esoteric and encompasses

some of the more complex scientific topics and statistical analysis that may be encountered in trial practice." [D.E. 673 at 27] These complexities were there from the beginning, and were raised by Defendant prior to current Class Counsel's appearance on the scene. They did not arise after remand. ComplexLit Group was aware of them and navigated a settlement to account for these many shoals. Because of those same obstacles, the current settlement is at best only a marginal, incremental improvement. And it might be added, the objectors who now claim entitlement to a portion of the fee, did nothing to ameliorate any of those difficulties.

## CONCLUSION

ComplexLit Group supports the award of the gross fee requested by Class Counsel, but believes that its lodestar of $3,420,589.50 in lodestar and $174,420.56 in expense reimbursement should be awarded to ComplexLit Group for the reasons stated herein.

Dated: June 20, 2018

Respectfully submitted,

/s/ Richard J. Burke

Richard J. Burke
QUANTUM LEGAL LLC (f/k/a COMPLEX
LITIGATION GROUP LLC)
1010 Market Street
Suite 1340
St. Louis, MO 63101
(847) 433-4500
rich@qulegal.com

Jeffrey A. Leon
QUANTUM LEGAL LLC (f/k/a COMPLEX
LITIGATION GROUP LLC)
513 Central Ave., Suite 300
Highland Park, Illinois 60035
(847) 433-4500
jeff@qulegal.com

Former Counsel For the Certified Plaintiff Classes and
for Certain Named Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, affirms that on June 20, 2018, he filed an electronic copy of the foregoing document with the Clerk of Court using the ECF system, which will send notification of such filing to counsel of record, including:

Robert A. Clifford
Clifford Law Offices
120 N. LaSalle Street
Suite 3100
Chicago, IL 60602

John P. Mandler
Faegre Baker Daniels LLP
220 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

Jonathan P. Novoselsky
Jonathan Novoselsky, P.C.
303 W. Madison Street
22nd Floor
Chicago, IL 60606

/s/ Richard J. Burke

Richard J. Burke
QUANTUM LEGAL LLC (f/k/a COMPLEX LITIGATION GROUP LLC)
1010 Market Street
Suite 1340
St. Louis, MO 63101
(847) 433-4500
rich@qulegal.com