IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| KENT EUBANK, JERRY DAVIS, RICKY FALASCHETTI, RITA CICINELLI, ROBERT JOSEPHBERG, JEFFREY ACTON, KENNETH HECHTMAN, JAMES NEIMAN, AMY CHASIN and EDWARD RUHNKE, individually and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> v. <br><br> PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation, <br><br> Defendants. | No.: 06 C 4481 <br><br> Honorable Sharon Johnson Coleman <br><br> Class Action |

**PLAINTIFFS' OMNIBUS[1] RESPONSE IN OPPOSITION TO FEE PETITIONS OF COMPLEX LITIGATION GROUP (DOC. 686) AND THEODORE FRANK (DOC. 683)**

---

[1] To minimize presenting duplicative or repetitive argument and law, Plaintiffs respectfully submit this Omnibus Response in opposition to the pending fee petitions. Plaintiffs reserve submitting a response to attorney John Pentz's fee petition in the event the Court grants Mr. Pentz's motion (Doc. 689) for leave to file his petition out of time. Plaintiffs oppose Mr. Pentz's motion (Doc. 689) for leave to file out of time because Mr. Pentz's terse and unsubstantiated motion fails to articulate good cause for the requested relief. Mr. Pentz, who appears on the docket as "Pro hac vice counsel attorney to be noticed", fails to explain why he was "unaware" of the fee petition deadline (to which Plaintiffs, Complex Litigation Group and Frank adhered) and "was alerted to the deadline only by the filing of the Motion for Attorney's Fees of Theodore Frank . . . ." (Doc. 689 at 1).

Plaintiffs, Kent Eubank, Jerry Davis, Ricky Falaschetti, Rita Cicinelli, Robert Josephberg, Jeffrey Acton, Kenneth Hetchman, James Neiman, Amy Chasin and Edward Ruhnke, on behalf of themselves and all others similarly situated ("**Plaintiffs**"), through their counsel, respond in opposition to the fee petitions filed by Complex Litigation Group LLC ("Complex Litigation Group")[2] (Doc. 686) and Theodore Frank (Doc. 683) as follows:

Complex Litigation Group and Theodore Frank filed fee petitions in this matter. Both sets of lawyers separately argue that their respective roles in this case are what ultimately caused the case to reach the settlement preliminarily approved by the Court on February 16, 2018 (Doc. 675). Each petitioner argues that each added value to the settlement that otherwise would not have been realized. With all due respect, none of these arguments has merit, and none of these arguments warrants an award of attorneys' fees to the respective petitioners.

I. **Applicable Legal Standard**

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." *Craftwood Lumber Co. v. Interline Brands, Inc.*, 11-CV-4462, 2015 WL 1399367, at *1 (N.D. Ill. Mar. 23, 2015) (citing Fed.R.Civ.P. 23(h)). In determining a reasonable fee, "the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Id.* (citing *Redman v. RadioShack Corp.,* 768 F.3d 622, 629 (7th Cir. 2014)).

"Attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 234 (N.D. Ill. 2016) (citing *Silverman v. Motorola Sols., Inc.,* 739 F.3d 956, 957 (7th

---

[2] Complex Litigation Group, formerly known as "Freed & Weiss LLC", is now known as "Quantum Legal LLC". (Doc. 686 at 1 & n. 1). For purposes of this Omnibus Response, Plaintiffs' reference to Complex Litigation Group also refers to Complex Litigation Group's former and later iterations.

Cir. 2013). "[C]ourts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*"). Indeed, "the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation." *Id.* at 634. "Such estimation is inherently conjectural," *In re Trans Union Corp. Privacy Litig.,* 629 F.3d 741, 744 (7th Cir. 2011), and the Seventh Circuit does not prescribe a preferred method of calculation. "[I]n common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 235 (N.D. Ill. 2016) (citing *Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.,* 743 F.3d 243, 246–47 (7th Cir. 2014)).

Equally significant, disqualification of counsel generally prevents any entitlement to a fee. See *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999) (the conflict of interest of the firm in question constituted a serious violation of the firm's duty to the class, and that such a violation required the termination of the firm's employment. Under these circumstances, the district court could properly deny the firm any recovery for services rendered prior to the disqualification, even if those services conferred some benefit on the class.); see also, *In re Marriage of Newton*, 2011 IL App (1st) 090683, 955 N.E.2d 572 ("Where the ethical rules have been violated and counsel has represented a party with conflicting, adverse interests, attorney's purported good faith is irrelevant to question of whether or not attorney may collect attorney fees. Rules of Prof.Conduct, Rule 1.9(a).).

When an objector recovers attorney's fees, the fee award is drawn from the settlement fund, and the total award to the class is diminished. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503–04 (N.D. Ill. 2015). Consequently, to recover fees, an objector must show that "his objection has secured a benefit for the class that outweighs the fees he is seeking." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687–88 (7th Cir. 2008); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) ("The principles of restitution that authorize [fee awards to objectors] . . . require . . . that the objectors produce an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class."). *See also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503–04 (N.D. Ill. 2015).

"As important to a proper evaluation of the objectors' contribution as the meagerness of the relief that they obtained by extending the litigation by several years is the lack of constructive activity in the district court." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687 (7th Cir. 2008). Similar to the objectors in *Mirfasihi*, in the instant case, the objectors did not propose terms of settlement or otherwise participate constructively in the litigation other than to appeal. A proper attorneys' fee award is based on success obtained *and* expense (including opportunity cost of time) incurred. *See, e.g., Farrar v. Hobby,* 506 U.S. 103, 114–15 (1992); *Hensley v. Eckerhart,* 461 U.S. 424, 435–37 (1983); *Cole v. Wodziak,* 169 F.3d 486, 487–88 (7th Cir. 1999).

## II. Complex Litigation Group is not entitled to the fee sought.

Complex Litigation Group was disqualified and removed from this case as a consequence of their handling of this matter. *See* Doc. 412; *Saltzman v. Pella Corp.,* 753 F.3d 718, 729 (7th Cir. 2014) (*Saltzman II*) ("For starters, Saltzman, Paul Weiss, and Weiss's firm, Complex

Litigation Group, must be replaced as class representative (Saltzman), and as class counsel (Weiss and his firm), respectively."); see also Doc. 467-1, p.13:1 (transcript of 8/14/14 proceedings). The debacle caused delay, detracted from the *bona-fide* and necessary work-up of this case, and ultimately resulted in a rejected settlement. Nevertheless, Complex Litigation Group seeks compensation for "their time and expense in obtaining Class Certification . . . ." (Doc. 686 at 1). Complex Litigation Group suggests that without class certification, the current proposed settlement would have been legally impossible. Notably, that assertion is not supported by any law or fact. Unquestionably, this Court and the Magistrate Judge oversaw, firsthand, the settlement proceedings in this case and know precisely that class certification was not influential, or even a factor, considered in the resolution of this matter.

Indeed, none of the arguments presented by Complex Litigation Group has merit. Petitioner cites class certification as the only basis for which Complex Litigation Group's petitioning this Court for a fee of $3.4 million dollars. In support of that argument, Complex Litigation Group cites to news articles that referenced the class certification, all of which predate the Seventh Circuit's *Saltzman II* opinion reversing the settlement and removing Complex Litigation Group as class counsel. *See* Doc. 412; *Saltzman II*, 753 F.3d at 729. That opinion was unequivocal and powerful; it speaks for itself. Petitioner also cites purported risk undertaken in the litigation, which has no import to the subject matter or analysis at hand. But, petitioner only has its self to blame for any risk that it assumed—and lost—as a consequence of its own conduct. Complex Litigation Group boldly, and erroneously, suggests that current Plaintiffs' counsel "relied heavily on the results Complex Lit obtained; in particular, the factual evidence Complex Lit developed (including expert witnesses, statistical data analysis, and engineering analysis) which underlies the current Settlement." (Doc. 686 at 2). In actuality, the role of Complex

Litigation Group, irrespective of its iterative firm names, in this litigation served only as a yoke on the necks of Plaintiffs' counsel and the class.

Plaintiffs' counsel emphasizes that although a file was transferred by Paul Weiss to Plaintiffs' counsel, the file was effectively useless. More specifically, no meaningful liability discovery had occurred in the case. Discharged class counsel had agreed to engage in bifurcated discovery (class versus merits discovery), including a Phase I and a Phase II, with Phase II (merits discovery) never undertaken by prior counsel in the eight years it had the case. Assuredly, the discovery concerning class certification was of no use to Plaintiffs' counsel, and the record from August 2014 through the present renders that fact crystal clear.

In particular, any statistical analysis that had been done by prior counsel, which is not readily evident in the record, does not remotely resemble the complex analysis submitted by Plaintiffs' counsel through their reliability experts Allise Wachs, Ph.D., and Fred Schenkelberg. Similarly, experts used by prior class counsel for class certification were insufficient for culling the necessary evidence on liability against Pella and for preparing the case for trial. Pleadings and briefs submitted by prior counsel evince clearly that the theory of the case at that time was merely nascent at best, a far cry the pleadings, papers and arguments submitted by Plaintiffs' counsel after having conducted discovery. Petitioner attempted to identify the defect, but the defect had not been adequately isolated or consistently described, including transitory periods of design change. The discovery did not focus on the consumer fraud theory, which was the only theory under which the case would proceed at trial. Irrefutably, not even the class representatives selected by petitioner could remain in the case, because they either did not have the subject ProLine casement windows (having, instead, different Pella window models not included in the class) or they did not reside in the six states certified under 23(b)(3). Plaintiffs' counsel had to

replace the class representatives, defend and amend the pleadings, and undertake, for the first time in the case, substantive merits discovery. Plaintiffs' counsel did that in less than four years, that is, in less than half the time petitioner had the file. As the Seventh Circuit articulated, much was left undone while petitioner turned its attention to designing a settlement that placed petitioner's financial worries and interests first, at the expense of the class. Doc. 412; *Saltzman II*, 753 F.3d at 721, 729.

That the case was certified had no effect on the preparation of the case for trial or the ability to reach a proposed settlement in the case. In fact, the certification as it existed was not as useful as one would generally expect. Class certification in this case comprised six states on the consumer fraud theory and a nationwide class for the prospect of declaratory relief. In either instance, certification did not change the fact that causation and damages were individualized thus elements expressly excluded from certification. For the six certified states, that meant, for instance, that even if a Michigan class representative prevailed at trial, every Michigan consumer still had to prove their own causation and damages. Likewise, if an Illinois class representative prevailed at trial, every Illinois consumer would still have to prove his or her own causation and damages. Unlike most cases with class certification, in this case, thousands of consumers would be caused to prove causation and damages, to a jury, in a courtroom, with experts and with their own counsel at their own cost and expense. Class certification typically provides a framework that allows for the success of one to serve as the success for many; not so here. In this case, the success of one class representative did not transfer or replicate to the other class members. Similarly, if successful, the nationwide class was entitled to a trial. More specifically, at the first multi-plaintiff trial, the Court may, based on the facts and law submitted at trial, enter some, all or none of the declarations. The declarations, if entered in favor of Plaintiffs, would simply allow

plaintiffs in other states to file the declarations in their own cause of action. Again, the class certification expressly precluded actual or tangible relief for all. Instead, each consumer would be subjected to prosecuting their own judicial or quasi-judicial proceeding and proving substantial elements (causation and damages) of their claims in the hope of obtaining a favorable judgment with tangible relief.

Complex Litigation Group contends that Plaintiffs' counsel "did not spend any effort to justify certification . . . ." Indeed, for the reasons described above, the certification had no influence on the resolution of this matter. Stated differently, a verdict in favor of Plaintiffs would not and could not cause the parties and their counsel to think that the case was concluded for all. Though petitioner argues that class certification would "place the Defendant at a risk of loss", in actuality, class certification in this case did *not* achieve that more typical result; there was no such benefit conferred upon the class. Every class member would still have to prove damages and causation. For the eight years Complex Litigation Group was engaged in this case, its only achievement was a class certification that simply did not confer a benefit upon the class. More importantly, the class certification was not a factor that caused the present settlement.

Complex Litigation Group contends that the current settlement "is not a material improvement" over its own discredited settlement effort. Petitioner further attempts to infuse irrelevant remarks about Judges Posner and Zagel. None of these points is accurate or relevant to Petitioner's effort to justify compensation for "their time and expense in obtaining Class Certification . . . ."

Complex Litigation Group complains that Plaintiffs' counsel did not return a voice message and, more specifically, would not engage in a private discussion of fees. Frankly, given the history of this case, Plaintiffs' counsel strongly favor transparency and equally disfavor any

8

private discussions with petitioner concerning fees. Plaintiffs' counsel favor the involvement of the Court in this instance of such a unique and well-known case history. The statement by petitioner that "Current Class Counsel intends to cut out Complex Lit from the division of fees" indicates that petitioner does not quite appreciate the case history and the extent to which consumers openly expressed anger over the work of Complex Litigation Group and that work's consequent delay.

Furthermore, Complex Litigation Group claims to seek compensation for the class certification, but nevertheless argues that Complex Litigation Group originated the case, conducted discovery, created liability and damage theories, retained and paid experts, and obtained class certification. Petitioner does not acknowledge that a nearly identical case had been filed by George Lang in Florida state court nearly three years prior to George Lang filing the case for Freed & Weiss in 2006; that the discovery was only class discovery and woefully inadequate for proving any theory of liability; that the theory of liability developed for class certification was not sufficient for the trial of this case; that the experts were not sufficiently vetted and qualified to be used in the merits phase of the case; and that the class certification did not influence the outcome of this matter, except in that it would ensure each consumer had a required burden of proof for both causation and damages.

Complex Litigation Group argues that it is seeking compensation for class certification, submitting 7,312.20 hours. Petitioner offers to the Court that it has excluded the time spent arguing in the Seventh Circuit, where the petitioner was relieved of its role in this case, for what it did and did not do. Petitioner notes that it has excluded the time of disbarred attorney, Paul Weiss, and the time of his wife, Jamie Weiss, whose father was then-plaintiff, Leonard Saltzman. None of this is as commendable as petitioner suggests. The Seventh Circuit's opinion concerning

9

the petitioner's handling of this matter, and the underlying facts, should cause petitioner to withdraw its petition or cause this Court to deny the petition in its entirety. Discharged counsel admonished by the Seventh Circuit should not be awarded a fee. Consumers who contacted Plaintiffs' Counsel, by both phone and email, do not support a fee to Complex Litigation Group. More likely, a reasonable consumer would not pay for the services provided in this case by Complex Litigation Group, and, frankly, the handling of the case, as it were, should not be rewarded with a fee. In particular, attorneys who step into a case after counsel are discharged should not compete with the discharged attorneys for a fee in the case for which the class was abandoned and sold out by the petitioning attorneys.

Moreover, Complex Litigation Group has submitted time for George Lang (2,746.1 hours) without the knowledge or consent of Mr. Lang. Mr. Lang was an employee at the time of the work in question. However, Complex Litigation Group taunts in its brief that Mr. Lang will not likely say the work he completed did not confer a benefit upon the class. This is not a game as portrayed by petitioner. After the wipeout of the first settlement, largely driven by Mr. Lang's objection to the settlement, Mr. Lang legitimately sought a leadership position from the Court. He offered to actually work the case. Complex Litigation Group made no similar contribution to the case. In Plaintiffs' pending fee petition (Docs. 687 and 688), Mr. Lang did not submit the time attributed to him by petitioner. Petitioner in its earlier pleadings notoriously criticized Mr. Lang, but now Mr. Lang's work in the case comprises a significant portion of petitioner's hours submitted. Petitioner's motion should be denied.

Complex Litigation Group argues that its pre-suit research conferred a benefit on the class. However, similar cases had been filed, including one involving George Lang prior to his employment by Freed & Weiss. Moreover, the pre-suit discovery was accomplished through

counsel's father-in-law. None of this conferred a benefit upon the class. In fact, had the pre-suit research been anywhere near thorough, petitioner would have quickly realized that it could not represent named plaintiff Saltzman in the case to begin with. The class would not have lost time in the prosecution of this matter.

Complex Litigation Group argues that it next developed claims for consumer fraud and warranty claims and drafted a complaint. Again, whatever drafts petitioner may have prepared did not confer a benefit upon the classes. There was plenty of motion practice against the petitioner's complaint (*see, e.g.*, Class Counsel Shannon McNulty's Declaration in support of Plaintiffs' Motion for Preliminary Approval, Doc. 672-6, *see also* Doc. 688 at 9-11) and petitioner contributed nothing to the current pleadings, particularly in response to the changes that occurred in state consumer law while the case was pending on appeal as a consequence of petitioner's handling of the case.

Complex Litigation Group retained experts who conferred no benefit upon the class and were insufficient for use in the preparation of this case for trial. The content and scope of the reports or Mr. Still and Mr. Gjovik, when compared with the reports of Plaintiffs' experts, only underscore the lack of work performed by prior counsel on the actual merits of the case.

Complex Litigation Group suggests that its multiple briefs on the issue of class certification conferred a benefit, but does not, and cannot, quantify that supposed benefit. Nevertheless, after petitioner had been discharged from the case, Plaintiffs' counsel engaged in motion practice, including the successful briefing of a motion to decertify and motions to dismiss. It was current Plaintiff's counsel who ultimately obtained an order from the Court requiring Pella to answer the complaint.

Complex Litigation Group contends that it was caused to transition the case and take calls from consumers. Undeniably, the fact of petitioner having to take calls is a consequence of the firm's own hand. Moreover, the transition existed only to the extent that Paul Weiss emailed files, which were incomplete and thus caused Plaintiffs' counsel to ask Pella to reproduce on a flash drive everything in the case, which Pella facilitated. To be clear, there were no meetings, and there were no efforts to seek input or work product from prior class counsel.

Complex Litigation Group did not confer a benefit on the class. In actuality, their conduct caused a rejected settlement, protracted proceedings and a delay in what should have always been the preparation of this case for trial. The consumers were adversely affected by petitioner's involvement in this matter. Petitioner has not, and cannot, point to a specific benefit that translated into actual dollars for the class. Moreover, the fee petition overlooks all of what created the failed settlement and protracted proceedings. Undeniably, in August 2014, when Plaintiffs' counsel were appointed lead, after eight years in suit, the case had yet to begin merits discovery and was in no way ready for trial. Indeed, Plaintiffs' counsel was still defending pleadings and the very narrow theory under which the case could proceed.

Petitioner further fails to acknowledge that the case was not merely about the existence of a defective design (which Plaintiffs' counsel, and not the petitioner, isolated and identified), but rather, the case was a consumer fraud case. That is, the fact remains that the case must rest upon the consumer fraud laws of each certified state, and that did not confer a benefit to a class, particularly where petitioner developed no evidence as to what specific misrepresentation Pella conveyed to consumers and what specific fraud was perpetrated by Pella on consumers. Nor did petitioner develop any evidence as to how or when Pella knew or should have known of the defect, such that its misrepresentations constituted an unfair or deceptive practice. Plaintiffs'

counsel developed that evidence and prepared this case for trial. That is what brought relief to consumers.

Whatever perceived benefit Complex Litigation Group supposes it secured for the class is marginal at best, has not been clearly identified or valued, and its value is nowhere near the $3.4 million in attorney's fees they now seek. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 504 (N.D. Ill. 2015). Complex Litigation Group should not be rewarded for having been ejected from this case. Consequently, Complex Litigation Group's fee petition should be denied in its entirety.

### III. Theodore Frank is not entitled to the fee sought.

Theodore Frank claims entitlement to a fee of $1.5 million dollars. Mr. Frank suggests that his representation of only one of four objectors to the prior settlement, objector Michael J. Schulz[3], is the reason for the current settlement. More specifically, Frank contends that because of his and Christopher Bandas' representation of Mr. Schulz, the current settlement is worth at least $15 million more than the original, failed settlement. Quite notably, Frank does not mention the four years of expensive and time consuming litigation that ensued after the objectors (led by Co-lead Class Counsel George Lang) argued in the Seventh Circuit, and the case was remanded.

Moreover, the $1.5 million dollars sought is not only for Mr. Frank. Mr. Frank submits that he will share part of that fee with Mr. Schulz's other lawyer, Mr. Bandas, who allegedly represented Mr. Schulz before engaging Frank for the purpose of objecting. The petition does not reveal what Mr. Bandas would conceivably receive from Frank[4], nor does the petition submit

---

[3] Michael J. Schulz is an expert witness on the subject of investigations of fires and explosions frequently retained by attorneys engaged in litigation. He has testified in federal and state courts across the country. *See* http://www.mjschulz.com/home html.

[4] In is petition, Frank notes, "At first, Bandas made the sole appearance on behalf of Schulz, while Frank ghostwrote briefs on behalf of Bandas. Frank performed the great majority of appellate work on behalf of Schulz . . . . Bandas is not submitting a separate fee request; he will receive a portion of any fees that are awarded to Frank." (Doc. 683 n.1).

13

time for work performed by Mr. Bandas, who Frank candidly concedes "was unable to report with accuracy the time that he spent representing Schulz during the objection and appeal." (Doc. 683, n. 7).[5] Lastly, Mr. Frank seeks $2,000.00 for Mr. Schulz[6].

Notably, Mr. Schulz, and his attorneys Christopher Bandas and Peter Higgins, have previously collaborated on filing objections to class settlements. Indeed, the objections filed by Schulz in other cases are consistent with the type of objections made in this case, and often denied. (*See* **Exhibits A, B & C**, attached). The routine manner in which Messrs. Bandas and Higgins object in class cases, including with the use of Mr. Schulz as the class member-objector, clearly made easier Mr. Frank's objection in this case. Mr. Frank elected to work with serial objectors who know their way around the objection and fee-petition processes.

Most recently, and relevant to this fee petition, Mr. Bandas, with whom Mr. Frank has sought to share his bid for a fee, has been the subject of a motion for Rule 11 Sanctions, in which the District Court observed Mr. Bandas' behavior as "an unseemly effort to extract fees from class counsel in exchange for the withdrawal of a meritless objection to the proposed class settlement." *Garber v. Office of Comm'r of Baseball*, 12-CV-03704 (VEC), 2017 WL 752183, at *4 (S.D.N.Y. Feb. 27, 2017). The court in *Garber* specifically cited the instances in which Mr. Bandas filed frivolous objections in an effort to obtain a fee, noting that:

> [n]umerous courts throughout the country have publicly excoriated Bandas for the frivolous objections that he has penned and injected into class action settlements. A district court in California, for example, wrote, "Bandas routinely represents

---

[5] Even when the interests of the class are not impacted, courts can refuse to enforce private agreements that are or have become inappropriate. See, In re Volkswagen & Audi Warranty Extension Litigation, 89 F. Supp. 3d 155, 182-83 (D. Mass. 2015), collecting cases. See also, *Paul B. Episcope, Ltd. v. Law Offices of Campbell & Di Vincenzo*, 373 Ill. App. 3d 384, 392, 869 N.E.2d 784, 791 (2007), where the court held that in Illinois, joint venture fee sharing agreements are recognized, but to be valid pursuant to [then] Rule 1.5(f), they must be in writing, signed by the client, and "the writing must not only authorize a division of fees, but also must set out the bases for the division, including the respective responsibility to be assumed and economic benefit to be received by the other lawyer."

[6] Mr. Schulz claims to have received a notice of the initial settlement. (Doc. 316-6). As of June 19, 2018, Mr. Schulz had not yet filed a claim in the current settlement.

objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain." Amended Order Granting Indirect Purchaser Plaintiffs' Motion to Compel Discovery from Objector Sean Hull (hereafter, "*CRT* Order") at 4, *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. CV-07-5944 (N.D. Cal. April 16, 2012), Dkt. 1155.[12] Similarly, a court in Illinois found: Bandas is a professional objector who is improperly attempting to "hijack" the settlement of this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified "legal fees." Bandas has filed virtually identical, frivolous objections in South Carolina, Iowa, Missouri and Florida in settlements of similar [ ] class actions. *6 Order Denying Objections to the Settlement and Fees and the Motion to Intervene and for Pro Hac Vice Admission, at 2, *Brown v. Wal-Mart Stores, Inc.*, No. 01 L 85 (Ill. Cir. Ct. Oct. 29, 2009). *Garber v. Office of Comm'r of Baseball*, 12-CV-03704 (VEC), 2017 WL 752183, at *5–6 (S.D.N.Y. Feb. 27, 2017).

*Garber*, 2017 WL 752183, at *4.

Ultimately, the *Garber* court concluded that Mr. Bandas is a "professional objector." *Id*. Nonetheless, because Mr. Bandas had not filed an actual appearance in *Garber*, the court did not believe it had jurisdiction to sanction Mr. Bandas. In 2014, Mr. Bandas was the subject of an Order to Show Cause against Mr. Bandas on the grounds that (1) Mr. Bandas and/or his employees affixed the "signature" of Mr. Blanchard on a document or documents filed with the Court; (2) Mr. Bandas ghost-wrote the second objection filed by Mr. Blanchard, pro per; and (3) Mr. Bandas caused objections to be filed for the improper purpose of pressuring the settling parties to pay a significant amount of money to make the objections go away. As in *Garber*, Mr. Bandas had not filed an actual appearance, thus causing the court to conclude that it lacked personal jurisdiction over Mr. Bandas, who has never appeared in this case. *In re Hydroxycut Mktg. & Sales Practices Litig.*, 09CV1088 BTM KSC, 2014 WL 815394, at *2–3 (S.D. Cal. Mar. 3, 2014). *See also Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 891 (C.D. Cal. 2016), in which Mr. Bandas and his co-counsel were identified by the court as a "serial objectors

who are well-known for routinely filing meritless objections to class action settlements for the improper purpose of extracting a fee rather than to benefit the Class."

Perhaps the most shocking culmination of Mr. Bandas' misadventures is the February 6, 2018, order signed by Judge Pallmeyer, which sets forth Mr. Bandas' *modus operandi*, namely, his use of an objector to set up an appeal in the hope of gaining payment for himself. *Edelson PC v. Bandas Law Firm PC*, 16 C 11057, 2018 WL 723287, at *14 (N.D. Ill. Feb. 6, 2018). Judge Pallmeyer noted the court's hope that "if there is ultimately no remedy for Plaintiff in this case, courts presiding over class actions will craft effective means to deter the alleged behavior of Bandas, Palmer, and other attorneys who seek private gain at the expense of deserving class members." *Id*.

There is no pending motion for sanctions in this case; however, the history and well-documented pattern of Mr. Bandas' behavior, coupled with Mr. Frank's criticism of other self-dealing counsel, cause one to consider whether Mr. Schulz had a legitimate basis to object, or if it was merely a contrived objection for the purpose of chasing a fee. Worth noting, Mr. Frank does not specifically detail his time in the case, and Mr. Bandas submits no time record at all, despite seeking to partake in the fee.[7]

In this case, the Court should not reward the conduct of the petitioners. The class should not be caused to pay Mr. Frank for having appeared to restate the plain and obvious deficiencies of the first settlement. Nor should the class pay Mr. Frank for the purpose of paying Mr. Bandas who is notorious for meritless objections and appeals, all for the singular point of obtaining a pay-off. To reward the conduct would only reinforce and incentivize bad actors.

---

[7] Along these lines, Frank notes in his petition, "In cases where [Frank's firm] the Center did not have a client, *such as this one*, Frank has worked as a private attorney on appellate issues if he found merit in the objection." (Doc. 683 at 1) (emphasis added).

16

Equally notable, Mr. Frank bases his fee petition on a few key, but flawed, concepts. First, Mr. Frank suggests that he was the reason that the Seventh Circuit remanded the case. Of course, Mr. Frank's objector was not the first to file the notice of appeal; that was done on behalf of Mr. Lang's clients. (Doc. 359). Additionally, the settlement's deficiencies were sufficiently evident such that the United States Seventh Circuit Court of Appeals was apprised of the problems well-before Mr. Frank presented oral argument. Though all counsel argued well before the Court, Mr. Frank did not successfully argue a new settlement, a viable theory for the case on the merits, a discovery plan to gain concrete evidence to support a theory of the case and present in response to summary judgment and at trial, or the like. And that point is critical to the analysis. Mr. Frank argued the obvious fatal flaws of the settlement, but the flaws were not so subtle or nuanced so as to be seen by only him. Mr. Lang was first to bring those to the Seventh Circuit's attention. (Doc. 467-1, pp. 9-10). Secondly, Mr. Frank does not address the fact that the case was not settled shortly after his argument. Occasionally, an objector can argue in a way that causes the parties to reform a proposed settlement, then-and-there. That was not the case here. Instead, Plaintiffs' counsel assumed the risk, expended all necessary resources, and prepared the case for trial. Trial preparation was the reason this case reached the point of a preliminary settlement; not because obvious objections were supplied to the Seventh Circuit nearly five years ago.

Finally, if Mr. Frank or Mr. Bandas were genuinely interested in this case, either or both of them could have sought appointment as a lead counsel, as Mr. Lang did. Neither sought to become involved in the case; nor did Mr. Schulz seek to serve as a class representative. None are entitled to a fee or a service award.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' counsel opposes any payment of fees to Complex Litigation Group, Mr. Frank and Mr. Bandas. The Court should deny the petitions in their entirety.

DATED: June 20, 2018　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Shannon M. McNulty*
　　　　　　　　　　　　　　　　　　　　　　Robert A. Clifford
　　　　　　　　　　　　　　　　　　　　　　rac@cliffordlaw.com
　　　　　　　　　　　　　　　　　　　　　　Shannon M. McNulty
　　　　　　　　　　　　　　　　　　　　　　smm@cliffordlaw.com
　　　　　　　　　　　　　　　　　　　　　　CLIFFORD LAW OFFICES
　　　　　　　　　　　　　　　　　　　　　　120 N. LaSalle Street, Suite 3100
　　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60602
　　　　　　　　　　　　　　　　　　　　　　(312) 899-9090

　　　　　　　　　　　　　　　　　　　　　　George K. Lang
　　　　　　　　　　　　　　　　　　　　　　langlawoffice@att.net
　　　　　　　　　　　　　　　　　　　　　　LANG LAW OFFICE
　　　　　　　　　　　　　　　　　　　　　　60 B W. Terra Cotta, No. 301
　　　　　　　　　　　　　　　　　　　　　　Crystal Lake, Illinois 60012
　　　　　　　　　　　　　　　　　　　　　　(773) 575-5848

　　　　　　　　　　　　　　　　　　　　　　John A. Yanchunis
　　　　　　　　　　　　　　　　　　　　　　JYanchunis@ForThePeople.com
　　　　　　　　　　　　　　　　　　　　　　Marcio W. Valladares
　　　　　　　　　　　　　　　　　　　　　　MValladares@ForThepeople.com
　　　　　　　　　　　　　　　　　　　　　　MORGAN & MORGAN
　　　　　　　　　　　　　　　　　　　　　　COMPLEX LITIGATION GROUP
　　　　　　　　　　　　　　　　　　　　　　201 N. Franklin Street, 7th Floor
　　　　　　　　　　　　　　　　　　　　　　Tampa, Florida 33602
　　　　　　　　　　　　　　　　　　　　　　(813) 223-5505

　　　　　　　　　　　　　　　　　　　　　　Joel R. Rhine
　　　　　　　　　　　　　　　　　　　　　　jrr@rhinelawfirm.com
　　　　　　　　　　　　　　　　　　　　　　RHINE LAW FIRM, P.C.
　　　　　　　　　　　　　　　　　　　　　　1612 Military Cutoff Rd
　　　　　　　　　　　　　　　　　　　　　　Suite 300
　　　　　　　　　　　　　　　　　　　　　　Wilmington N.C. 28403
　　　　　　　　　　　　　　　　　　　　　　(910) 772-9960

　　　　　　　　　　　　　　　　　　　　　　Edward R. Moor
　　　　　　　　　　　　　　　　　　　　　　erm@moorlaw.net
　　　　　　　　　　　　　　　　　　　　　　MOOR LAW OFFICE, P.C.

One N. LaSalle Street, Suite 600
Chicago, Illinois 60602
(312) 726-6207

## **CERTIFICATE OF SERVICE**

I certify that on June 20, 2018, a copy of the foregoing PLAINTIFFS' OMNIBUS RESPONSE IN OPPOSITION TO FEE PETITIONS OF COMPLEX LITIGATION GROUP (DOC. 686) AND THEODORE FRANK (DOC. 683) was filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

> */s/ Shannon M. McNulty*
> Robert A. Clifford
> rac@cliffordlaw.com
> Shannon M. McNulty
> smm@cliffordlaw.com
> CLIFFORD LAW OFFICES
> 120 N. LaSalle Street, Suite 3100
> Chicago, IL 60602
> (312) 899-9090