**Eubank, et al. v. Pella Corporation, et al.**
**U.S. DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS**
**Case No. 06-cv-4481**

FILED

JUN 2 6 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

WRITTEN OBJECTION OF CLASS MEMBERS FARRELL AND PEGGY HOCKEMEIER

Come now Farrell and Peggy Hockemeier, and for their written objection to the proposed Settlement state as follows:

1.     That at all times mentioned herein Farrell and Peggy Hockemeier have been the owners of the residence located at 39688 Highway H located in Ray County, Missouri.

2.     That the Hockemeiers built this residence in 1995-96.

3.     That the Hockemeiers purchased seventy-one new Pella ProLine windows for this residence at a cost of over Thirty Thousand Dollars ($30,000).  That the purchase orders and packing lists are included with the claim.

4.     That Pella told the Hockemeiers that the ProLine windows were "top-of-the-line" and guaranteed to seal out moisture.

5.     That the Hockemeiers' residence began to develop cracks in the stucco in 2003.

6.    That within the warranty period of ten years the Hockemeiers

contacted Pella concerning moisture intrusion behind their stucco clad

residence.

7.    That Pella ignored the Hockemeiers' complaints,

8.    That the Hockemeiers sent Pella a letter dated August 3, 2005

advising Pella that they believed the Pella windows were leaking water

behind the stucco.   This letter is included with the claim.

9.    That when Pella finally sent a representative to examine the

Hockemeiers' residence in the fall of 2005 the Pella representative

denied that the Pella windows could be responsible for the

Hockemeiers' moisture intrusion:  "Pella windows don't leak," he said.

10.    That the Pella representative instead blamed the Hockemeiers'

roofer and their stucco company for any moisture getting behind the

stucco on their residence.

11.    In fact, Pella knew that their ProLine windows did leak.

12.    However, the Hockemeiers believed the Pella representative and

hired roofers to add additional caulk and sealer to the roof of their

residence.

13.    That the cracks in the stucco on their residence became more numerous and the substrate beneath the stucco began to rot so that you could push your finger through the stucco.

14.    That the Hockemeiers called and emailed Pella repeatedly requesting Pella to return and examine their residence.

15.    That Pella refused to examine the Hockemeiers' windows unless the Hockemeiers paid Pella $150.  Further, Pella told the Hockemeiers that Pella would not consider their claim since the windows were no longer under warranty.

16.    That the Hockemeiers wrote Pella another letter on November 18, 2011 explaining that their claim should be considered since they had complained to Pella within the original warranty period.  (This letter is included with the claim.)

17.    That Pella responded by letter dated November 30, 2011 that the Hockemeiers' windows were out of warranty and that Pella would not come out and look at the Hockemeiers' windows unless the Hockemeiers paid Pella for the trip and the inspection.  However, Pella advised that a representative would contact the Hockemeiers, but no one ever did.  This letter is included with the claim.

18.     In 2012 the Hockemeiers had to have all their stucco removed from their house and much of the wooden substrate replaced due to water damage and rot.

19.     That the water intrusion was made through the Pella windows. Photographs showing the rot coming from the Pella windows are included with the claim.

20.     That the cost to repair and replace the Pella windows is the sum of $187,101.  The estimate of Total Home Remodeling is included with the claim.

21.     That this cost does not include the damage to the old stucco, or the ongoing damage to the new stucco.

22.     That the Hockemeiers have been required to file their claim in this action without knowing how many other claimants there will be, and without knowing the amount of such claims.

23.     That the Hockemeiers believe the Settlement Fund of Twenty-Five Million Dollars will be inadequate to compensate the amount of claims against Pella.

24.     That according to the Settlement Documents, if there is not enough money to compensate the claimants, each claimant will be forced to accept a pro rata share of the available fund.

25.     That it is unfair and unjust to allow Pella to escape responsibility for paying all legitimate claims by requiring claimants to accept a pro rata share.

26.     That these claimants request that the Court delete the requirement of a pro rata distribution from the Settlement Agreement and instead require Pella to pay all legitimate claims in full.


Respectfully Submitted,


6-20-18

Farrell and Peggy Hockemeier, Claimants