**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| KENT EUBANK, JERRY DAVIS, RICKY FALASCHETTI, RITA CICINELLI, ROBERT JOSEPHBERG, JEFFREY ACTON, KENNETH HECHTMAN, JAMES NEIMAN, AMY CHASIN and EDWARD RUHNKE, individually and on behalf of all others similarly situated; | ) ) ) ) ) ) ) ) | No.: 06 C 4481 |
| | ) | Honorable Sharon Coleman Johnson |
| Plaintiffs, | ) ) | Class Action |
| v. | ) ) | |
| PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation, Defendants | ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLEX LITIGATION GROUP LLC'S REPLY IN SUPPORT OF ITS MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES (DKT. #684) AND RESPONSE TO (1) PLAINTIFFS' OMNIBUS RESPONSE IN OPPOSITION TO FEE PETITIONS OF COMPLEX LITIGATION GROUP (DOC. 686) AND THEODORE FRANK (DOC. 683) (DKT. #698) AND (2) OBJECTOR MICHAEL SCHULZ'S OBJECTION TO COMPLEX LITIGATION GROUP LLC'S MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES; PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; AND OBJECTOR RON PICKERING'S MOTION FOR ATTORNEYS' FEES AND MEMORANDUM OF LAW <u>IN SUPPORT (DKT. #701)</u>**

# TABLE OF CONTENTS

I.   OBTAINING THE CONTESTED CLASS CERTIFICATION AND AFFIRMATION OF THAT CERTIFICATION WAS A SUBSTANTIAL BENEFIT TO THE CLASS AND THE LEGAL ANTECEDENT TO THIS SETTLEMENT. ................................................................ 3

II.  THE CONTROVERSY OVER THE PRIOR SETTLEMENT DOES NOT NULLIFY COMPLEXLIT GROUP'S REQUEST FOR *QUANTUM MERUIT* ATTORNEYS' FEES AND EXPENSE REIMBURSEMENTS FOR THE WORK IT PERFORMED IN SECURING CLASS CERTIFICATION. ................................................................................................. 8

    A.   Judge Posner's Concerns About the Appearance of a Conflict of Interest Do Not Effect ComplexLit Group's Entitlement to *Quantum Meruit* Legal Fees and Expense Reimbursements. ................................................................................................. 8

    B.   Current Class Counsel Yanchunis Supported the Prior Settlement and Filed a Fee Application at The Time of its Approval. ......................................................................... 13

    C.   The Prior Settlement Was In Line With, and in Fact Superior To, Prior Windows Settlements. ............................................................................................................... 16

III. NO OBJECTOR ADDRESSED THE AUTHORITY CITED BY COMPLEXLIT GROUP, AND THE ADDITIONAL CASES CITED BY THE OPPOSITION ARE INAPPOSITE. ........................................................................................................... 19

IV.  NOTHING SAID BY ANY OBJECTOR DEALS WITH COMPLEXLIT GROUP'S RIGHT TO BE REIMBURSED FOR OUT OF POCKET EXPENSES IT INCURRED WHICH DIRECTLY BENEFITTED THE CLASS. ................................................. 24

V.   COMPLEXLIT GROUP HAS ALREADY BEEN SEVERELY PUNISHED AND NO FURTHER PUNISHMENT IS WARRANTED, ESPECIALLY GIVEN THE SUBSTANTIALLY PARED DOWN SCOPE OF ITS FEE REQUEST. ............................... 25

i

The objections by Plaintiffs ("Class Counsel") (Dkt. #698) and Objector Michael Schulz ("Schulz") (Dkt. #701) to Complex Litigation Group LLC's ("ComplexLit Group") Motion for Attorneys' Fees, Costs and Expenses (Dkt. #686) have nothing to do with the best interests of the Class – instead, it is motivated solely by self-interest in financial gain.[1] The issue of the division of the attorneys' fees is a zero-sum game between all attorneys whom have filed fee petitions – any penny that the Court were to award to ComplexLit Group is a penny out of the pocket of Class Counsel and/or Schulz. As a result, the objections focus on irrelevant attacks on post-certification conduct or calls for punishment while ignoring the central basis for a determination of fees – what benefits were achieved for the class? *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); Fed. R. Civ. P. 23(h), advisory committee's notes to 2003 amendment; *see also* Awarding Attorneys' Fees and Managing Fee Litigation, Third Edition, Federal Judicial Center 2015 at 71 ("The central question is whether the actions of those seeking fees helped create or enhance the common fund."). Viewed in this applicable, objective light, ComplexLit Group deserves compensation for the certified classes it obtained, which is the necessary foundation for the Settlement and the existence of a common fund for the Class and the subsequent benefits obtainable by each Class member.

Complicating the issue is the harsh opinion by Judge Posner attacking the ethics of one attorney from ComplexLit Group whose actual involvement in the prior settlement was never established. More to the point, Judge Posner seemed to think that Judge Zagel was complicit. One would have to have an exceptionally low opinion of Judge Zagel to assume, as Judge Posner

---

[1] As Class Counsel stated, "[s]eparate from the relief available to consumers, Pella has agreed to separately allocated $9 million for attorneys' fees and expenses. That is, the $25.76 [sic] million afforded to consumers is not diminished by any payment by Pella for attorneys' fees, costs and expenses. … the provision that fees be paid separately and without regard to the settlement benefits also maximizes the recovery to the class members, as their recoveries will not be decreased regardless of the outcome of the instant motion." Dkt. #688 at 6-12.

did, that he would ever have approved a settlement where the facts are as Judge Posner incorrectly recited them. The truth is that Judge Zagel had extensive experience in this case and with the counsel before him. As the court file indicates, there were 300 docket entries before Judge Zagel, indicating a district judge who was directly and extensively involved in how the case unfolded, the reasonable basis upon which he approved the prior settlement, and how well the counsel before him performed. It should be remembered that Judge Posner affirmed the original class certification order, *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010), which included both the appointment of ComplexLit Group as Class Counsel, and Dr. Saltzman (Paul Weiss' father-in-law) as Class Representative. Dr. Saltzman owned a home with several of the faulty ProLine windows. Dr. Saltzman did not become Weiss's father-in-law *after* the class certification was approved. There is no evidentiary record of any of the ethical improprieties alluded to by Judge Posner. To the contrary, these ethical claims were raised in the district court prior to the granting of final approval of the settlement where, after an evidentiary hearing, Judge Zagel found the allegations of ethical improprieties to be without merit.

For their part, Class Counsel and Objector Schulz seize upon Judge Posner's well-known propensity for acerbity to advance their own economic interests. There was never any finding that ComplexLit Group "sold out the class" as Judge Zagel's scant order did not set out either the merits or the objections to the prior settlement. Nor was there ever any finding that Paul Weiss' ethical indiscretions had any impact on that settlement, again for the same reason- Judge Zagel did not comment upon it. Nor was ComplexLit Group ever disqualified; rather, it was "replaced" by Class Counsel without any findings of ethical violation by the single person empowered to make those decisions, Judge Zagel. Thus, the actual issue before the court is: What were the respective contributions of counsel vying for an award of attorneys' fees to the Class' benefit?

2

I. **OBTAINING THE CONTESTED CLASS CERTIFICATION AND AFFIRMATION OF THAT CERTIFICATION WAS A SUBSTANTIAL BENEFIT TO THE CLASS AND THE LEGAL ANTECEDENT TO THIS SETTLEMENT.**

What one would expect from Class Counsel is candor. Candor dictates the acknowledgement that this was an exceptionally difficult case throughout, including, *post*-certification. ComplexLit Group understood these difficulties because it considered them in its analysis justifying the prior settlement. When the newly appointed co-lead and other Class Counsel came into the case, they likely believed an adequate settlement to be $308 million. That is, after all, the amount co-lead George Lang told the Seventh Circuit in opposition to the prior settlement. Once current Class Counsel was responsible for navigating the shoals, apparently the case looked significantly smaller, around the $26 million they settled for. The values of the prior settlement ranged from $25-90 million. Judge Zagel found the appropriate value to be $90 million, yet against no fulsome order that was issued.

It is undisputed that the determination of a contested class certification motion is often the "death knell" of the case for either the case is dismissed on an individual basis upon a denial of certification or it is settled on a classwide basis upon the granting of class certification. Here, ComplexLit Group successfully obtained the certification of the six-state FRCP 23(b)(3) class and the nationwide FRCP 23(b)(2) class and defended the certification through the appeals process culminating in the denial of *certiorari* by the US Supreme Court. It is the very existence of this certified class that served as the impetus for this Settlement and was the foundation from which Class Counsel was able to move the case forward.

While Class Counsel's asserts that it "engaged in motion practice, including the successful briefing of a motion to decertify and motions to dismiss", *id* at 11, a review of those briefs demonstrates little more than reliance on the efforts of ComplexLit Group. *See* **Plaintiffs'**

**Response in Opposition to Defendants' Motion to Dismiss and to Strike Class Allegations** (Dkt. #518) at 8 ("Having survived Pella's attacks of insufficient pleadings at the dismissal stage and at the class certification stage, the basic elements of Plaintiffs' claims persist, and Pella should not be permitted to, once again, seek a ruling on an already decided matter. In fact, Pella should specifically be estopped from continuing to make the same argument on this decided law of the case."); **Plaintiffs' Reply to Defendants' Response Brief Concerning Certain Rule 23(b)(2) and (3) Issues and Plaintiffs' Response in Opposition to Defendants' Motion to Decertify the Nationwide (b)(2) Class** (Dkt. #522) at 1-3 ("On June 4, 2009, after extensive briefing and oral argument, this Court granted class certification pursuant to Rule 23(b)(2). []. Subsequently, Defendants ("Defendants" or "Pella") sought appellate review of this Court's ruling. After thorough briefing before the Seventh Circuit Court of Appeals, the panel upheld this Court's Order, extensively describing all the reasons that a 23(b)(2) class was appropriate for the facts of this case. [] … what Pella really presses here is a motion for reconsideration, which lacks substantive and procedural merit. … This Court certified, and the Seventh Circuit upheld, Rule 23(b)(2) and (b)(3) classes. Despite rigorous treatment by this Court and the Seventh Circuit, and despite Pella's having reached agreement in proposing the settlement structure for both the (b)(2) and (b)(3) classes, Pella erroneously suggests that the class is now at risk of decertification.").).

Thus, every "challenge" to the certified class by Defendant Pella was answered by Class Counsel not based on new arguments or a newly obtained order; rather, Class Counsel consistently relied on the success of ComplexLit Group in obtaining the certified classes.

Despite all the bluster in Class Counsel's Opposition Brief that ComplexLit Group's efforts to obtain the certified class "had no effect on the preparation of the case for trial or the ability to reach a proposed settlement in the case. In fact, the certification as it existed was not as

useful as one would generally expect" (Dkt. 698 at 7), the *entirety* of the argument for certifying the Settlement Class here was:

> Here, common questions that would be decided on a class-wide basis *have been certified*, and, as well, have since survived Defendants' attempts to decertify those common questions. Further, because conditional certification of a Settlement Class is sought here and there will be no trial, the Court need not inquire whether the case, if tried, would present manageability problems with individualized issues. *Smith v. Sprint Communications Co., L.P.*, 37 F.3d 612, 614 (7th Cir. 2004) (*quoting Amchem Prods.*, 521 U.S. at 591)).

Dkt. #672 at 36 (emphasis added). As a review of the case docket will easily disclose, there is but one order certifying a class in this case – the order obtained through the efforts of ComplexLit Group. Interestingly, if the certified classes obtained by ComplexLit Group were so "worthless", why didn't Class Counsel seek certification of a broader or different class during its four years of handling the case? Why did Class Counsel limit its amended complaints to only the six certified (b)(3) states and based solely on the consumer fraud claims or to the certified declarations for the nationwide (b)(2) class? *See, e.g.,* Seventh Amended Class Action Complaint (Dkt. #540). Why did Class Counsel limit the proposed class definition to only the certified Proline windows?[2]

There can be no reasonable dispute from any party that ComplexLit Group ably led this

---

[2] The disingenuous nature of Class Counsel's opposition is illustrated by the obfuscation it engages in. For example, Class Counsel states that "[d]ischarged class counsel had agreed to engage in bifurcated discovery (class versus merits discovery)". Dkt. #698 at 6. But Class Counsel should be aware, as cited in ComplexLit Group's opening Motion, that Judge Zagel ordered the bifurcation of discovery and that Pella sought and obtained a protective order to limit discovery to only those matters related to class certification. *See* Dkt. #697 at 6-7. Likewise, Class Counsel points out that "nearly identical case had been filed by George Lang in Florida state court nearly three years prior to George Lang filing the case for Freed & Weiss in 2006", *id.* at 9, but never states how far along the case was or what the ultimate outcome of that case was. Did Mr. Lang abandon that case and its plaintiffs and the putative class? Furthermore, what relevance does this have? Florida is one of the six certified states in the 23(b)(3) class that ComplexLit Group obtained so those Florida plaintiffs were covered by the certification order.

case, against long odds, to a certified class that has withstood multiple levels of review. Nor can any party dispute that the Class received a significant benefit from this certification and all the work that led to it, not to mention from the nearly $175,000 that ComplexLit Group spent from its own pocket for the benefit of the Class.[3]

While ignoring the substantial benefit the Class received from the efforts ComplexLit Group has submitted to this Court, Class Counsel and Objector Schulz argue that ComplexLit Group should receive the draconian punishment of zero fees and zero expense reimbursements, all based on the assertion, grossly distorted out of all context, that the prior settlement "sold out the class." Class Counsel's and Schulz's position is inequitable and unfounded because even if ComplexLit Group sold out the class, which it did not, such action occurred well after the certification order was obtained; in addition, ComplexLit Group has already been severely punished by being replaced as Class Counsel, and ComplexLit Group will be punished even if it receives what it seeks here because ComplexLit Group has substantially reduced the time it has submitted to the Court for reimbursement. Any such further "punishment" in the form of zeroing out of fees and expenses – especially when the persons being punished were not the subject of Judge Posner's criticism -- is not warranted. The ire of Judge Posner was squarely directed at former ComplexLit Group partner Paul Weiss, who has long since been disbarred (for conduct

---

[3] Class Certification is critical to whether Class Counsel had anything to try at all. Class Counsel complains that "[i]n either instance, certification did not change the fact that causation and damages were individualized thus elements expressly excluded from certification". Reply In Support Of Plaintiffs' Motion For Fees (Dkt. #719 at 3) This presumes that current Class Counsel was either, capable of certifying a class that did not have these nettlesome features, in which case they should have consented to decertification and sought a different certification order, or that the certification order prevented them from settling the case, which it clearly did not. Further Class Counsel makes the patently absurd arguments that class certification "was not a factor in the Settlement, and restrained Plaintiffs' Counsel's efforts in prosecuting the case and in reaching settlement". *Id*. at 3. It obviously did not prevent a settlement (one which they assert is fair adequate and reasonable) and there is no proffer of evidence of any "restrain[t] in prosecuting the case".

unrelated to this case) and has ceased practicing law. Importantly, timing matters here. At the inception of this case up to the denial of *certiorari*, none of the issues with which Judge Posner took umbrage existed. Moreover, during this relevant time period, there was never any hearing, district court adjudication, or ARDC proceeding from which any actual breach of duty was determined to have occurred.

ComplexLit Group respectfully requests that this Court speak to Judge Zagel about the professional and thorough way in which ComplexLit Group approached class certification. Because of the reassignment, this Court received this case well after ComplexLit Group had departed. Much of the back and forth between the attorneys seeking fees involves events that were presided over by Judge Zagel, who is in an excellent position to advise the Court as to the equities at issue here, as well as, an objective assessment of the facts and procedural history here. Such judicial consultation is expressly permitted by applicable judicial codes of conduct. *See* Commentary to Canon 3A(4), Code of Conduct for United States Judges ("A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities."); Comment to Rule 2.9(A)(5), ABA Model Judicial Code ("A judge may consult with other judges on pending matters, but must avoid *ex parte* discussions of a case with judges who have previously been disqualified from hearing the matter, and with judges who have appellate jurisdiction over the matter.").

As set forth above, there can be no dispute from any party that ComplexLit Group achieved the defining victory that made any settlement possible in this case: the certification of contested classes that have survived multiple attacks. The significance of this victory was set forth in detail in ComplexLit Group's response to Class Counsel's fee petition. *See* Dkt. #697. The only real question thus posed is whether the Oppositions' desire for this Court to "punish"

ComplexLit Group – a punishment which would directly benefit current Class Counsel (and possibly Schulz) – is justified or equitable. ComplexLit Group submits that the equities favors it position of an equitable fee sharing.

## II.   THE CONTROVERSY OVER THE PRIOR SETTLEMENT DOES NOT NULLIFY COMPLEXLIT GROUP'S REQUEST FOR *QUANTUM MERUIT* ATTORNEYS' FEES AND EXPENSE REIMBURSEMENTS FOR THE WORK IT PERFORMED IN SECURING CLASS CERTIFICATION.

### A.   Judge Posner's Concerns About the Appearance of a Conflict of Interest Do Not Effect ComplexLit Group's Entitlement to *Quantum Meruit* Legal Fees and Expense Reimbursements.

ComplexLit Group does not seek to defend, dismiss or excuse the conduct of Paul Weiss that led to his eventual disbarment, nor does it need to in order to obtain a *quantum meruit* fee here. The ARDC is the proper forum for claims of sexual harassment and assault. And the proper body to mete out punishment. But the objectors to ComplexLit Group's fee and expense petition seek to financially benefit themselves by using Judge Posner's commentary on Weiss while ignoring the context in which the words were delivered and the non-existent "record" to support Judge Posner's proffered interpretation.

ComplexLit Group's fee petition has not submitted any time by Mr. Weiss on the case, nor does it include time of the daughter of Saltzman. The remaining lawyers at the firm seek reimbursement of the nearly $175,000 in hard, out-of-pocket expenses the firm incurred in procuring class certification, and for the hundreds of hours they and other lawyers spent in pursuit of the same. Judge Posner's language aside, there was never any evidence that Paul Weiss's ARDC issues played any role whatsoever in the settlement. There were no affidavits, no testimony, no authenticated documents submitted into evidence, and no evidentiary hearing of any kind. In fact, after an actual hearing, Judge Zagel did rule on whether or not to disqualify ComplexLit Group, he declined to do so. [Dkt. #469.] Indeed, the Seventh Circuit made no

finding that the terms of the prior settlement were unfair or inadequate. To the contrary, the Seventh Circuit stated that the final approval opinion of Judge Zagel was too short and lacked enough (any) detail to permit the Seventh Circuit in its reviewing role to evaluate whether Judge Zagel properly exercised his discretion in reviewing and approving the settlement. There is no room for any other interpretation given the clear words used by the panel members in their opinion and at oral argument as the Panel opinion noted that the "approval of the settlement (over the objection of the former class representatives and other class members) is squeezed into two two-page orders (the second addressed to the attorneys' fee award) that ignore virtually all the objections to the settlement." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014). Consistent with the Court's ultimate conclusion, several comments by members of the Panel at argument reflected that concern:

- Judge Posner stated "The judge didn't seem to exercise any discretion. It's just a little meandering statement. I don't see any actual consideration of the issues….there's no detail....It's very hard to follow what he said….it's no good. It's not informative, it doesn't -- you don't get anything out of it…. why didn't he explain why he was rejecting the objections….The judge could have said I reject the objection because, but he never said anything like that….But we're talking about tens of millions of dollars. You'd think the judge could spend, you know, an hour reading and explaining what -- why he's letting this go forward." (Oral Argument Tr. at 18 and 29-30 (Apr. 22, 2014), attached as **Exhibit A**)

- Judge Williams stated "See, the problem is we can't just look at what was submitted to the District Court and the calculation and then make a determination. We have to look at what the judge wrote, and there's no breakdown in what the judge wrote….so you have huge problems with this order….he has to explain why he adopted the number and why he rejected the other position….don't you get that we can't make that judgment [whether the approval was an abuse of discretion] unless we know the judge's thinking? …. And why the Court adopted certain things?" (*Id*. at 23-24 and 30-31)

Judge Posner's opinion was based on the existence of "warning signs", *Eubank*, 753 F.3d at 728–29 ("almost every danger sign in class action settlement that our court and other courts have warned district courts to be on the lookout for was present in this case … Most were not

even mentioned by the district judge and those that were received a brush off.") Just because Judge Zagel did not put his thought process down on paper does not mean that his view of the evidence and his personal supervision of the case were in error.

Moreover, Class Counsel and the Objector's objection to ComplexLit Group's fee petition misconstrues Judge Posner's opinion replacing ComplexLit Group as class counsel. The Court did not disqualify ComplexLit Group, let alone find disqualification based on the adjudication of a conflict of interest. This is a fine point, but an important one. Rather, the Panel Opinion stated that "Saltzman, Paul Weiss and Weiss's firm must be replaced as class representative (Saltzman), and as class counsel Weiss and his firm) respectively." *Eubank*, 753 F.3d at 728–29. Replacement is not disqualification. Class counsel serve by appointment pursuant to the requirements of FRCP 23(g), and class counsel can be removed or replaced for any reason deemed necessary by a court. The Seventh Circuit did not "disqualify" ComplexLit Group because of a conflict of interest, but instead because it thought the improvident settlement rendered Saltzman an inappropriate class representative, and that ComplexLit Group be replaced by Class Counsel not encumbered by the difficulties ComplexLit Group was experiencing, irrespective of whether they were true.

In fact, the Seventh Circuit's opinion spoke directly to the issue of conflicts of interest in class actions. *See Eubank,* 753 F.3d at 722–23 (citing *Bash v. Firstmark Standard Life Ins., Co.*, 861 F.2d 159, 161 (7th Cir. 1988) ("conflicts of interest are built into the device of the class action, where a single lawyer may be representing a class consisting of thousands of persons not all of whom will have identical interests and views. Recognizing that strict application of rules on attorney conduct that were designed with simpler litigation in mind might make the class-action device unworkable in many cases, the courts insist that a serious conflict be shown before

they will take remedial or disciplinary action."

There was thus no determination that there was a conflict of interest, and, in fact, the Panel made clear it had no record on these subjects to review because Judge Zagel did not provide one in his order affirming the settlement. The Seventh Circuit's ruling on class representative Dr. Saltzman's familial relationship to Mr. Weiss does not create a conflict of interest between ComplexLit Group and the Class, but the impropriety of Saltzman to be class representative, and ComplexLit Group as class counsel. No conflict of interest negating the representation *ab initio* arises from this holding. Judge Posner found that Judge Zagel's order approving the settlement insufficient to merit affirmance. As to the record on whether the allegations of an actual conflict existed, it is to be remembered that an evidentiary hearing on March 16, 2012, was conducted by Judge Zagel and those allegations were found to be utterly without merit. The District Court heard Mr. Lang's testimony and considered many exhibits, as well as, assessing his demeanor and biases. The District Court found Mr. Lang's assertions unsupportable in all respects and denied the motion without need for cross examination. This is set forth in the transcript of the evidentiary hearing, attached hereto as **Exhibit B**, and was extensively discussed in ComplexLit Group's appellate brief (Case #13-2091, Seventh Circuit, Dkt. #66 at 6-7, 25, and 37.)[4]

Judge Posner's supposition regarding the firm's financial status as the basis for the prior settlement turned out to be supposition only. Indeed, this Court can certainly take notice of the fact that the purported acute need for funds in 2012 has not stopped ComplexLit Group from

---

[4] The same is also true as concerns the alleged conflict of interest from Dr. Saltzman serving as a class representative. The law on familial or business relationships was far from clear prior to the Seventh Circuit's ruling in *Pella*, and the existence of a similar close relationship did not lead to the elimination of attorneys' fees but instead a minimal reduction of the fee in the amount of $15,000. *See In re Southwest Airlines Voucher Litig.,* 799 F.3d 701, 716 (7th Cir. 2015).

surviving despite the setback the firm suffered in Pella. Any actual determination that the firm was motivated by a need for funds or Mr. Weiss's ethical troubles – as opposed to an appearance that these motivations could have guided the settlement -- would require an evaluation of the actual evidence, not supposition.

This distinction – that ComplexLit Group was replaced as class counsel because of the appearance of a conflict of interest, as opposed to having been disqualified after an evidentiary hearing for having an adjudicated conflict of interest, is crucial in the context of this motion for attorneys' fees. *Compare Chicago Prof. Sports Ltd. Partnership v. National Basketball Ass'n*, No. 1:90-CV-06247, 1992 WL398398, at *2 and *5 (N.D. Ill. Dec. 21, 1992) ("The NBA argues that an actual conflict of interest on the part of Sidley extinguishes any right of recovery for attorneys' fees that WGN might have had against the NBA since such a conflict should have precluded Sidley from ever having accepted the assignment from WGN.....[T]his is not a disqualification case. In [such] cases, we review whether a firm has established effective measures to prevent disclosure of confidential information received from former clients. By contrast, we are asked here only to consider the recoverability of admittedly reasonable attorneys' fees to which a party would be entitled under 15 U.S.C. § 26. We must here consider whether Sidley did in fact breach the NBA client confidence while representing WGN. Our analysis in this case is thus retrospective rather than prospective.") It is clear that the Seventh Circuit opinion reversing the prior settlement was never intended as an *ex post facto* disqualification of ComplexLit Group. "And when an action has been continued over the course of many years, the prospect of having those most familiar with its course and status be automatically disqualified whenever class members have conflicting interests would substantially diminish the efficacy of class actions as a method of dispute resolution." *Eubank*, 753 F.3d at 722 (citation omitted).

**B.    Current Class Counsel Yanchunis Supported the Prior Settlement and Filed a Fee Application at The Time of its Approval.**

Current Class Counsel, Mr. Yanchunis, had no problem in seeking payment for the tens of thousands of dollars in time and expenses his firm incurred in connection with their work up of the case through early 2012.  While not a lead counsel, Mr. Yanchunis had the same duties to the Class as did ComplexLit Group.  If he had not read the prior settlement, or did not understand its terms and why they were negotiated as they were, he certainly should not have sought to benefit by a fee application to Judge Zagel.  *See* Dkt. #312(4).  Yet, he had no apparent reservations even after Mr. Lang had filed his objection to preliminary approval.  Mr. Yanchunis's submission of a fee petition in connection with final approval of the earlier settlement is a clear affirmation on his part of the prior settlement.

Class Counsel Lang represented to the Seventh Circuit that the prior settlement was inadequate because the Classes claims were worth over $300,000,000.  Class Counsel has now realized that this case is not worth $300 million, but apparently only 1/10 of that amount.  Clearly, the very same factors that motivated ComplexLit Group to reach the prior settlement – the limited effect of class certification of 23(b)(3) classes – also led current Class Counsel to settle as well.  A comparison of ComplexLit Group's 2012 statements explaining its reasons for settling to Mr. Lang's 2012 rejection of that reasoning is telling, especially when Mr. Lang's 2012 statements are compared to what he and other members of the current Class Counsel have stated in support of the current Settlement in 2018.

As the chart below demonstrates, Mr. Lang argued against final approval of the prior settlement to the Seventh Circuit by claiming the risks were minimal and the value of the case high, but now he and the other Class Counsel have done a 180 degree turn in seeking final approval of their Settlement.

13

**Value of the Case**

| GEORGE LANG - 2012 | CLASS COUNSEL - 2018 |
|---|---|
| $308,000,000.00 [Brief of Appellants Eubanks, Riva and Ehorn, Case 13-2091, Dkt. #27-1, p. 23.] | $25,750,000.00 [Dkt. # 672, p. 5] |

**Six-state Issue Only Certified Class with a Class Trial Limited to Liability**

| GEORGE LANG - 2012 | CLASS COUNSEL - 2018 |
|---|---|
| Once Class Counsel sought certification of an issue only Class, they assumed the risk of later phases of litigation. To now say the risk of later phases of litigation is so great as to warrant settlement suggests Class Counsel never intended to do any more than file, get certified and settle (and extract a princely sum of attorney's fees). That is a fundamental breach of Class Counsel's obligations to representing the Class. [Dkt. # 286 at 32] | Throughout the settlement process, my co-counsel and I carefully weighed with the class representatives: (3) the risks and uncertainties of individual trials on causation and damages; (4) Defendants' vigorous defense of the litigation and continued denial of the claims contained in the Complaint; [Lang Decl. ¶8, Dkt. # 672-8 at 3-4; Clifford Decl. at ¶9, Dkt. # 672-7 at 5; Yanchunis Decl. ¶21, Dkt. # 672-9 at 7] |
| Pella states the settlement will provide "the end of a litigation process that would involve thousands of individual trials." Doc. 298, pg. 15. But the processes at end of the litigation have not yet been set. First, should a liability issue trial occur, and should the Class prevail, the declarations will allow resolution of claims through the warranty process without the need for further individual litigation. However, alternative options exist such as a benchmark trial for damages or even settlement. [Dkt. # 292-1 at 9] | The settlement reached by the parties obviates the need for a trial. While I believe in the strength of our allegations and evidence, any trial on the issues would likely become a battle of the experts coupled with the application of varying state, the outcome uncertain. As described above, even a verdict in favor of the class would only create more trials for individual consumers seeking relief. Undeniably, the settlement obviates the need for the filing and prosecution of thousands of separate and very expensive lawsuits which may have taken years to conclude…. [Clifford Decl. at ¶9, Dkt. # 672-7 at 5] |

14

| GEORGE LANG - 2012 | CLASS COUNSEL - 2018 |
|---|---|
| That this case involves an issue certified class should make no difference in the value analysis. A finding the windows were defective when they left the factory will have value by making a real and immediate impact on warranty claims and other pending litigation where causation and damages are being argued. [Dkt. # 286 at 7]

a proper analysis of the relative strength of Plaintiffs' case requires an examination of how successful the Plaintiffs will be at proving liability at trial, not examining the later phases of the litigation which will involve issues of causation and damages. This is an issue certified Class and testing the strength of the settlement should not summarily dismiss the strength of Plaintiffs' ability to prove the defect at trial. In fact, this is a case where Defendants have admitted to creating a secret warranty program to cover the defect alleged. [Dkt. # 286 at 31] | [A] hypothetically perfectly successful trial result for the six-state 23(b)(3) class would resolve only the claims of the named plaintiffs. Each class member in the six states would still have to file and prosecute a separate, individual trial on the elements of causation and damages. Further, following a perfectly successful result for the nationwide (b)(2) declaratory relief class, each class member in the remaining 44 states would still have to file and prosecute a separate, individual trial in their home jurisdiction on (at least) the elements of causation and damages. These separate trials would have been time consuming and expensive for the individual consumers, requiring the repetitive retention of experts and trial resources for each consumer seeking relief. It is questionable as to how many class members would have pursued litigation with the requirement to prove important elements of their individual claims, particularly in light of their individual damages, which in many cases, may have not been significant in relation to the cost of trial. [Clifford Decl. at ¶7, Dkt. # 672-7 at 4-5] |

**Purported Conflict of Interest in the Settlement's Terms**

| GEORGE LANG - 2012 | CLASS COUNSEL - 2018 |
|---|---|
| The settlement class in this case is doomed for the same reasons. First, class counsel were "disarmed." They entered into negotiations to settle a nationwide (b)(3) class when everyone knew they could not certify that class for litigation purposes due to variations in state consumer-fraud laws. They admitted as much, having limited their issue-certified subclasses to six states with "nearly identical" consumer-fraud laws, a strategy this Court approved. *Pella Corp.*, 606 F.3d at 396. They could not use the threat of litigation to "press for a better offer," and Pella knew it…Eubank Appellant Br., 7th Cir. Dkt. # 27-1 at 38-39] | Class Counsel entered into settlement negotiations with the same six-state (b)(3) issue only consumer-fraud classes |

| GEORGE LANG - 2012 | CLASS COUNSEL - 2018 |
|---|---|
| "The settlement cannot stand under *Sprint* because it certifies a nationwide consumer-fraud class without having state-by-state subclasses with independent class representatives. Instead, only four of the 50 states are represented (Illinois, Michigan, Minnesota, and New York). (R. 4139.) That does not provide the "structural assurance of fair and adequate representation" demanded by Rule 23.  [Eubank Appellant Br., 7th Cir. Dkt. # 27-1 at 38-39] | Settlement is nationwide with no variation of benefits on a state-by-state basis |

All of these comparisons of positions that have shifted over time are necessary for this Court to see the true motivation here.  Class Counsel in 2018 was motivated by the exact same factors to settle that motivated ComplexLit Group in 2012.

### C. The Prior Settlement Was In Line With, and in Fact Superior To, Prior Windows Settlements.

ComplexLit Group really does not desire to relitigate the prior settlement.  It was rejected and that cannot be undone.  Yet, it is clear that, in the Seventh Circuit, a settlement proffered for approval should be compared to those of a similar ilk that preceded it.  Thus, Judge Feinerman in 2016 noted approved a TCPA settlement wherein the "[t]he theoretical recovery per Collection Call Subclass member is about $1.00[] [and] [t]he actual recovery per *claimant* is approximately $52.50" over objections that "that recovery is well below the $500 statutory recovery available for each call or text" because "the recovery falls well within the range of recoveries in other recent TCPA class actions."  *Gehrich v. Chase Bank USA N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016).  *See also Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) ("attorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court.").

Judge Posner's reversal of the prior settlement, while filled with extraordinary harshness, was a finding that Judge Zagel did not defend his final approval with a reasoned opinion.  As

such, Judge Posner's concerns regarding the existence of warning signs take on added weight because there was simply nothing from Judge Zagel to rebut them. The structure and benefits of the prior settlement were influenced and guided by prior settlements approved by other courts and Judge Zagel, and the Seventh Circuit, were provided an extensive analysis comparing the prior Pella settlement to other settlements. The Seventh Circuit's opinion did not mention let alone analyze why the settlement terms ComplexLit Group had negotiated were better or worse than the settlement precedent ComplexLit Group had submitted. ComplexLit Group submits that the settlement it negotiated was better than the prior windows settlements, and frankly better than the current Settlement[5], all of which had capped per window and per structure compensation.

*Cartwright v. Viking Indust., Inc.*, No. 07-cv-2159 (E.D. Cal. May 5, 2010), a defective window class settlement where Pella was an interested party (Pella bought Viking in 1998), demonstrates both the excellence of the settlement reached here as well as the reasonableness of the fee. The *Viking* settlement was a claims-made, California-only, agreement with a hard cap of $500.00 per structure, and no arbitration opportunity to go over the cap was provided. Viking paid attorneys' fees of approximately $4.1 million for this settlement that just benefitted California residents. In comparison, the benefits to the class of the prior settlement (a $750 cap, or a $6,000 cap in Arbitration) were much greater, and Viking only settled a single state whereas the prior settlement sought relief for the entire country. And, the plaintiffs in Viking had a stronger liability case because the windows at issue in Viking were sold with a sticker on each window stating that the windows were under a lifetime warranty. The prior settlement also compared favorably to other home products settlements for products such as shingles and heating hoses. *See, e.g., In re: CertainTeed Corp. Roofing Shingles Products Liability Litig.*, 269 F.R.D.

---

[5] Especially when accounting for the time value of money.

468 (E.D. PA Aug. 31, 2010) (approving settlement of current and previous owners of structures with CertainTeed Shingles providing a replacement process and reimbursement for expenses). These cases all built upon the existing warranties of the manufacturer and even "secret" internal warranty plans offered to distributors, as was the case with the prior settlement that built on the Pella warranty and the PSEP.[6]

Further, claims processes far more onerous than the prior settlement's 12 page claim form had received approval prior to ComplexLit Group having negotiated the 2012 settlement. Indeed, in *CertainTeed,* a claims process was approved which, in addition to an 8 page claim form, required a claimant to "hav[e] a roofing professional remove and replace the sample shingle necessary to make a claim. The agreement further provides that CertainTeed is to have the right to remove any part of the roofing structure necessary to determine whether a causation defense exists, but CertainTeed is obliged to then restore the claimant's property to its prior condition. Finally, a claimant is required to submit a sample shingle and photographs of the

---

[6] The PSEP was not a contract between customers and Pella, and indeed Pella kept the warranty a secret made known only to distributors – a fact the Seventh Circuit itself noted in affirming class certification when it stated that "Pella [had] attempted to modify its warranty through a program but never informed the end consumers of the program's existence or of the defect." *Pella Corp. v. Saltzman*, 606 F.3d 391, 392 (7th Cir. 2010). Pella itself admitted the PSEP was only an agreement between Pella and its distributors to share in the cost of wood rot claims. (Dkt. #114 at 4.) Therefore the settlement took the PSEP "out of the closet and made the PSEP a contractual entitlement. But the Settlement did not stop there as the settlement improved the PSEP in several critical respects that contradict this Court's statement that the settlement cannot claim value from the PSEP. First, the PSEP created by Pella ran concurrently with the warranty, which was only ten years. (*Id*. at 8-12.) The prior Settlement not only made the PSEP a contractual right but it also extends the PSEP benefits for 21 years, and given that the defect usually manifests after the ten year warranty has run, this was a substantial benefit. (R. 4197, 4227-28, 4238.) Second, the certified classes were limited to original purchasers but the settlement ensures PSEP benefits for subsequent purchasers of homes with ProLine windows. (*Id*.) Third, the settlement improves the benefits that were available under the PSEP by increasing the scope and amount of covered benefits. (*Id*.) This Court plainly misapprehended the record in concluding that the PSEP was "not part of the value created by the settlement." It added huge value as the record verifiably establishes.

damaged structure." *Id.* at 475. There was nothing remotely similar in the prior Pella settlement. The Seventh Circuit might not have liked the claims process or the settlement structure, but those aspects of the settlement were guided by and were in line with other settlements involving home construction products.

### III. NO OBJECTOR ADDRESSED THE AUTHORITY CITED BY COMPLEXLIT GROUP, AND THE ADDITIONAL CASES CITED BY THE OPPOSITION ARE INAPPOSITE.

Class Counsel and Objector Schulz cite several cases and imply that a denial of the entirety of fees is somehow mandatory here. However, no order of disqualification to receive fees ever occurred. Judge Posner only stated that Saltzman and ComplexLit Group should be "replaced" as class representative and class counsel respectively. There is nothing arising in the reversal of the prior settlement that negates the efforts of counsel *ab initio* as it was only the disapproved prior settlement reviewed by the Circuit Court, not the representation from the beginning. The award of attorneys' fees here is discretionary as there is no *per se* rule. As another court in this District has noted, "[d]espite the NBA's contentions, there is no *per se* rule barring recovery of any attorneys' fees in the event of a conflict of interest. Where an actual conflict of interest is found, it is within the court's discretion to deny or to reduce the fees awarded. Although courts are empowered to deny attorneys' fees in such situations, they are not compelled to do so—the exercise of such power is discretionary." *Chicago Prof. Sports*, 1992 WL398398 at *5 (citing *Woods v. City National Bank & Trust Co.,* 312 U.S. 268 (1941)).[7]

---

[7] By analogy, the Bankruptcy Code also permits a court to award attorneys' fees to a firm that had labored under a conflict of interest. *See In re Wiredyne, Inc.*, 3 F.3d 1125, 1128 (7th Cir. 1993) ("The disgorgement of fees accumulated prior to the order for relief therefore is governed by section 329. The standard applied under sections 327 and 328 is inapposite. In determining whether attorneys' fees are unreasonable or excessive under section 329, courts are guided by section 330….Section 330 provides that a reasonable compensation for services rendered by an attorney is 'based on the nature, the extent, and the value of such services, the time spent on such

The cases relied upon by Class Counsel and Schulz are distinguishable.  For example, in *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012), the court "noted that class counsel's agreement to request incentive awards based on the amount of recovery "put class counsel and the contracting class representatives into a conflict position from day one," and that the effect of the incentive agreements "was to make the contracting class representatives' interests actually different from the class's interests in settling a case instead of trying it to verdict, seeking injunctive relief, and insisting on compensation greater than $10 million.'"  *Id.* at 651 (*citing Rodriguez v. W. Publ'g Corp.* (*Rodriguez I*), 563 F.3d 948, 959 (9th Cir. 2009).  As a result, "under California law, "[s]imultaneous representation of clients with conflicting interests (and without written informed consent) is an automatic ethics violation in California and grounds for disqualification'".  *Id.* at 657 (citing *Rodriguez I*, 563 F.3d at 960).[8]  Here, there was no actual

---

services, and the cost of comparable services other than in a case under this title....' 11 U.S.C. § 330. The existence of a conflict of interest is certainly a relevant factor in this analysis and is a justifiable reason to reduce or require disgorgement of attorneys' fees, but reduction or disgorgement is not mandatory.").

[8] The application of a California rule derived from the California Code of Conduct which precludes a California lawyer from receiving fees if they had labored under an actual, adjudicated, conflict of interest.  As one Arizona district court noted about this line of California cases, "[a]lthough California courts have held that a lawyer's conflict of interest violation renders the legal services valueless, resulting in a denial of fees in their entirety, Arizona law does not provide this automatic remedy."  *Shimko v. Goldfarb*, Nos. CV–04–78, CV–05–1387, 2008 WL 2662465, at *3 (D. Az. June 27, 2008).[8]  Nor does Illinois, which governs the conduct of the lawyers at ComplexLit Group, provide for the automatic forfeiture of fees.  As the First District of the Illinois Court of Appeals noted not long ago, "[i]n the absence of binding authority from our supreme court that an attorney can be completely disqualified from *quantum meruit* compensation due to: (1) some level of incompetence, even gross incompetence, during the attorney-client relationship; or (2) unethical conduct which occurred after the relationship terminated, we decline to establish such a rule ourselves."  *Cooper v. Urban Property Advisors*, LLC, 2013 IL App (1st) 121609-U, 2013 WL 5745600, at *18 (Ill. App. 1st Dist. Oct. 21, 2013).  Indeed, the First District noted that in prior cases where a fee was denied because of a conflict of interest, "the attorneys sought to enforce contingency fee contracts, which violated ethical provisions and public policy. In each case, both the trial and appellate courts refused to enforce the respective contracts and, after finding the contracts violated ethical provisions and public

conflict of interest from "day one" nor does applicable Illinois law[9] hold that the purported conflicts of interests of ComplexLit result in an "automatic ethics violation".[10]

The court set forth the factors a district court should consider in determining fee awards to disqualified counsel:

> In sum, under long-standing equitable principles, a district court has broad discretion to deny fees to an attorney who commits an ethical violation. In making such a ruling, the district court may consider the extent of the misconduct, including its gravity, ***timing***, willfullness, and ***effect on the various services performed by the lawyer***, and other threatened or actual harm to the client. *See* Restatement (Third) of Law Governing Lawyers § 37 (2000).

*Rodriguez*, 688 F.3d at 655 (emphasis added).[11] Thus, instead of adopting a *per se* rule that an actual conflict of interest resulting in disqualification automatically results in a denial of attorneys' fees, the Ninth Circuit stated that the district court "could have reasonably concluded that McGuireWoods was entitled to some attorneys' fees for its efforts and notable success in this case." *Id*. at 658.

---

policy, denied the attorneys any *quantum meruit* compensation. We find that these cases are distinguishable from the instant case because the conduct complained of in *Leoris* and *Licciardi* cases involved actual violations of ethics rules and public policy….[8] *Id.* at *17.

[9] *See Rodriguez*, 688 F.3d at 653 n.6 (stating that federal equitable doctrine controlled in this case under federal law but that in a case of "diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees.").

[10] The Illinois Rules of Professional Conduct reference two forms of Conflicts of Interest: RPC 1.7 Conflict of Interest: Current Client; and RPC 1.8 Conflict of Interest: Current Client: Specific Rules. RPC 1.7 deals with a "concurrent conflict of interest" by the representation of multiple clients with conflicting interests, and provides circumstances where it is permitted. RPC 1.8 involves conflicts tangential to the litigation, *e.g.*, business dealings with the client, use of information to clients to its disadvantage, etc. In this case, neither of these rules were violated by an improvident settlement.

[11] Unlike in *Rodriguez*, here the Court does not have "a special obligation to consider these equitable principles at the fee-setting stage in common fund class action cases, given the district court's fiduciary role to protect absent class members", *id*., 688 F.3d at 656 (citation omitted), because the division of fees among all lawyers will have zero effect on the Class as set forth above in Class Counsel's own words. *See supra*, footnote 1.

Importantly, despite the conflict existing from the inception of the representation, "[t]he district court awarded McGuireWoods the costs and expenses it incurred in bringing the action, and a *quantum meruit* award of $500,000 for services provided after the court's rejection of the incentive awards, at which point the conflict of interest had come to an end." *Id*. at 652. If attorneys are entitled to fees for efforts after a conflict of interest ends, then ComplexLit Group should be entitled to fees for efforts before any purported conflict of interest began.

In *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999), it was the ***appellate*** court reviewing an ***order of the district court*** which granted a motion to disqualify class counsel. The appellate court then held that the district court did not abuse its discretion in disqualifying class counsel and denying an award of fees. Here, Judge Zagel never made a finding of conflict of interest thereby disqualifying ComplexLit Group. In fact, he specifically denied Lang's motion to disqualify and replace ComplexLit Group after conducting an evidentiary hearing on the matter. *See* Dkt. ##255, 265. After that order, Judge Zagel then granted final approval of the settlement and appointed ComplexLit Group as class counsel. In *Petrovic*, the Eight Circuit did "not hold that a close familial relationship between a class counsel and a class representative necessarily calls for disqualification". *Id*. at 1155. Instead, it left that determination up the district court under an abuse of discretion standard. *Compare Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 93–94 (7th Cir. 1977) ("Although the cases which have been referred to offer some support for a *per se* approach, this court declines to adopt a *per se* analysis.").

*In re Marriage of Newton*, 2011 IL App (1st) 090683, 955 N.E.2d 572 (Ill. App. Ct. 2011), the disqualified attorney had an attorney-client relationship with both parties in a divorce. The attorney even "told [the new client] there was a[n actual] conflict of interest when she came in to see him. However, he entered into a retainer agreement with her and represented her." *Id*.

at 579. "The court conducted a hearing" on the issue and then entered its order of disqualification. *Id*. at 580. Here, there was (1) no actual conflict of interest between ComplexLit Group and the class at the start of the representation, (2) no actual knowledge of any conflict by complex Lit (again *Susman* denied adopting a per se rule), and (3) no hearing that preceded an order of disqualification. Instead, after such a hearing to have ComplexLit Group disqualified, Judge Zagel denied the motion. In addition, the attorney in *Newton* sought fees under two separate avenues for recovery: under 750 ILCS 5/508(c)(3) and pursuant to the fee agreement (i.e. contract). *Id*. at 584. The court denied fees under the former because the statutory provision "specifically conditions the enforceability of a fee agreement on meeting applicable court rules". *Id*. Here, no such statutory provision exists. Likewise, the contract was found to be "void *ab initio*", *id*. at 585, a finding inapplicable here. Moreover, the disqualified attorney argued that "they should be entitled to fees incurred *before* they were disqualified by the court's order". *Id* at. 589 (emphasis in original). The *Newton* court did not hold that a disqualified attorney is not entitled to fees for any part of the representation as a matter of law. Instead, it held that because the attorney "violated Rule 1.9 at the moment he agreed to meet with Hadley knowing he had a conflict", *id*., that there was essentially no period of time during which the attorney represented the client without a conflict of interest. Here, at best, ComplexLit Group can only have been determined (after an evidentiary hearing) that a conflict existed after the contested class certification was obtained. Finally, Newton did not address, and therefore sheds no light on, the appropriateness of quantum meruit recovery by the disqualified attorney. *Id*. at 585 n.2.[12]

---

[12] The other cases string cited by Class Counsel and/or Shultz are either distinguishable or actually prove ComplexLit Group's point. *See So v. Suchanek*, 670 F.3d 1304 (D.C. Cir. 2012) (appellate court approved methodology where after a trial where an ethics expert opined on

Likewise, in this case, there has been no finding that an actual ethical rule was violated, or that an actual conflict of interest existed or was acted upon. Indeed, this Court should note that both Mr. Weiss and Richard Burke had received inquiry letters from the ARDC after Judge Posner's opinion. The ARDC conducted an investigation and made no referral for disciplinary action or made any finding that a rule of professional conduct had been breached. All of the case law cited by Class Counsel and Schulz is rendered inapposite by these inalterable facts.

## IV. NOTHING SAID BY ANY OBJECTOR DEALS WITH COMPLEXLIT GROUP'S RIGHT TO BE REIMBURSED FOR OUT OF POCKET EXPENSES IT INCURRED WHICH DIRECTLY BENEFITTED THE CLASS.

It is undisputed that ComplexLit Group expended well over the submitted expenses of $174,420.56 in pursuing and obtaining class certification in this case. There is no objection that

---

potential conflicts of interest, the district court only required disgorgement of fees earned "during the two conflicted periods" of representation);

*Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999) ("Nor is automatic and complete forfeiture necessary for the remedy to serve its purpose. On the contrary, to require an agent to forfeit all compensation for every breach of fiduciary duty, or even every serious breach, would deprive the remedy of its equitable nature and would disserve its purpose of protecting relationships of trust. … It is within the discretion of the court whether the trustee who has committed a breach of trust shall receive full compensation or whether his compensation shall be reduced or denied.");

*In re Eastern Sugar Antitrust Litigation*, 697 F.2d 524 (3d 1982) (co-lead counsel for plaintiff class and his firm merged with the law firm representing one of the defendants in the same case; appellate court stated that the "return of fees paid for services rendered before the date of the impropriety may be an appropriate remedy for some ethical violations. Yet, because such a remedy provides the client with a windfall and deprives the attorney of fees earned while acting ethically, we believe such a sanction should be reserved for cases in which the breach of professional ethics is so egregious that the need for attorney discipline and deterrence of future improprieties of that type outweighs the former concerns.) (citing *Chicago & W. Towns R.R. v. Friedman*, 230 F.2d 364, 369 (7th Cir.) (permitting "reasonable allowance" for services performed before breach), cert. denied, 351 U.S. 943, 76 S.Ct. 837, 100 L.Ed. 1469 (1956)");

*Warnell v. Ford Motor Co.*, 205 F. Supp. 2d 956 (N.D. Ill. 2002) (district court, after a hearing, held that class counsel had a conflict of interest where it found that the "failure to disclose the intent to enforce the fee agreements was 'deceptive and unprofessional,' and ordered the disgorgement of all contingent fees collected from plaintiffs/class representatives but allowed class counsel to keep the entirety of the $3 million common fund award);

*Baez v. Rosenberg*, 409 Ill.App.3d 525, 949 N.E.2d 250 (Ill. App. Ct. 2011) (common fund doctrine inapplicable).

such costs and expenses were unreasonable. In fact, this expense number was significantly reduced by ComplexLit Group. Nor is there a dispute that the Class benefitted from the expenditures for which ComplexLit Group seeks recompense. There is zero law that says that ComplexLit Group is not entitled to reimbursement for these bona fide out-of-pocket expenses and it would be grossly inequitable to deny ComplexLit Group such reimbursement. *See Rodriguez*, 688 F.3d at 652 (awarding disqualified class counsel all expenses incurred and $500,000 on a *quantum meruit* basis).

## V. COMPLEXLIT GROUP HAS ALREADY BEEN SEVERELY PUNISHED AND NO FURTHER PUNISHMENT IS WARRANTED, ESPECIALLY GIVEN THE SUBSTANTIALLY PARED DOWN SCOPE OF ITS FEE REQUEST.

The reality is that Class Counsel does not want to share the attorneys' fee from the settlement it negotiated. To avoid having an equitable split, this Court is urged to punish ComplexLit Group by denying the firm fees and expenses for the work it performed that was directly beneficial to the Class. But, ComplexLit Group has already been severely punished and it would be inequitable to punish the firm any further.

The reputational impact of the *Pella* opinion, including all the incorrect "facts" assumed to be true by Judge Posner, alone on the firm was significant, and its lasting consequences are difficult to quantify. Further, the firm expended a substantial amount of time and out of pocket expenses in mediating, negotiating and defending the settlement. None of that time has been submitted to the Court as part of ComplexLit Group's currently pending motion for fees. ComplexLit Group has in effect "self-punished" by not seeking even one penny for the millions of dollars in time and thousands of dollars in expenses associated with the settlement work or the work of Paul Weiss and Jamie Weiss, even though much of their work was unrelated to settlement. Finally, the firm seeks *quantum meruit* for the heavily edited time it has submitted.

25

It does not seek a multiplier like the other attorneys are and this fact is another "punishment" from Judge Posner's opinion.

In short, this Court is being asked to make the ultimate exercise of discretion and to punish a law firm in total for the potential conflicts of interest possessed by a single attorney who is no longer practicing law. There has never been any actual evidence submitted, nor any hearing, to support the spurious accusations of an actual conflict of interest between ComplexLit Group and the Class. The Court should carefully note that Judge Posner's opinion does not critique any of the prior counsel who diligently toiled on this case for years – it was mere guilt by association. *See Eubank*, 753 F.3d at 721. The Court should also note that the ARDC did not deem the potential conflicts flagged by the Seventh Circuit to be worthy of disciplinary proceedings, nor even extensive investigation, despite the fact that the ARDC inquired about Judge Posner's concerns. Given the punishment already meted out and suffered by the firm, and given the carefully tailored and limited nature of the fee and expense request being made to this Court on a *quantum meruit* basis, ComplexLit Group respectfully suggests that the equities favor this Court granting ComplexLit Group the fees and expense reimbursement it seeks, or at least some portion of it. The Class clearly benefitted from class certification, and Class Counsel itself benefitted enormously from ComplexLit Group's class certification victory, without which the Settlement would not exist. That is more than a sufficient basis for a *quantum meruit* award.

## CONCLUSION

ComplexLit Group supports the award of the gross fee requested by Class Counsel, but believes that its $3,420,589.50 in lodestar and $174,420.56 in expense reimbursement should be awarded to ComplexLit Group for the reasons stated herein.

Dated: July 20, 2018                          Respectfully submitted,


    /s/ Richard J. Burke

Richard J. Burke
QUANTUM LEGAL LLC (f/k/a COMPLEX
LITIGATION GROUP LLC)
1010 Market Street
Suite 1340
St. Louis, MO 63101
(847) 433-4500
rich@qulegal.com

Former Counsel For the Certified Plaintiff Classes and
for Certain Named Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned, an attorney, affirms that on July 20, 2018, he filed an electronic copy of the foregoing document with the Clerk of Court using the ECF system, which will send notification of such filing to counsel of record.


     /s/ Richard J. Burke

Richard J. Burke
QUANTUM LEGAL LLC (f/k/a COMPLEX
LITIGATION GROUP LLC)
1010 Market Street
Suite 1340
St. Louis, MO 63101
(847) 433-4500
rich@qulegal.com

28