# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KENT EUBANK, JERY DAVIS, RICKY FALASCHETTI, RITA CICINELLI, ROBERT JOSEPHBERG, JEFFREY ACTON, KENNETH HECHTMAN, JAMES NEIMAN, AMY CHASIN, and EDWARD RUHNKE, individually and on behalf of all others similarly situated, | Case No. 06 C 4481 |
| Plaintiffs, | |
| v. | |
| PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation, | |
| Defendants. | |

<u>**DECLARATION OF ALEX THOMAS ON BEHALF OF NOTICE AND SETTLEMENT ADMINISTRATOR REGARDING NOTICE**</u>

I, Alex Thomas, declare:

1.      I am employed as a project manager by Kurtzman Carson Consultants LLC ("KCC"), a nationally-recognized notice and claims administration firm located at 462 South 4th Street, Louisville, KY 40202. KCC was retained and appointed as the Notice and Settlement Administrator in this case.  As the project manager, I oversee all aspects of the administrative services provided. I submit this declaration regarding the Notice Program in this action.

2.      On March 2nd, 2018, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715, KCC mailed via United States Postal Service Priority Mail a cover letter to the U.S. Attorneys General and the Attorney Generals for all 50 states,

along with a CD-ROM containing the following documents: the original *Class Action Complaint* and all subsequent Amended Complaints including the current and operative *Seventh Amended Class Action Complaint*, *Declaration and Notice Plan of Carla Peak*, *Settlement Agreement and Release, and a copy of the Court's Order Granting Preliminary Approval of Settlement and Conditional Class Certification for Purposes of Settlement*. Copies of the cover letter and the mailing list for the CAFA notice are attached hereto as Exhibit A.

3. On February 16, 2018, Pella Windows Inc. provided KCC a zip file that contained the mailing addresses of 370,806 homes in which Pella products were known to have been installed. KCC identified and removed 67 records with no valid physical address and 55,877 duplicate records. There remained a total of 311,329 records with a postal address that could be sent notice.

4. On March 2, 2018, KCC established a website for this settlement at www.pellawindowsettlement.com. On the website, visitors can view answers to frequently asked questions, download important case documents including the Claim Form, Settlement Agreement, Preliminary Approval Order, long-form Notice, Post-card Notice, Pella's Memo of Law in Support of Preliminary Approval, Plaintiffs' Memo of Law in Support of Motion for Preliminary Approval, 7th Amended Class Action Complaint, Answer to amended Complaint (Seventh Amended Complaint) by Pella, and the long-form Notice in Spanish.

5. On March 2, 2018, KCC established a toll free telephone number. Class Members can call and listen to answers to Frequently Asked Questions, request a Claim Form be sent to them, leave a voicemail, or speak to a live operator during standard business hours for more information.

6.    On March 22, 2018, KCC mailed 311,329 Postcard Notices to physical address available on the data list.  A true and correct copy of the Postcard Notice is attached as Exhibit B.

7.    KCC caused Indirect Notice in the form of Internet ads to be run from March 2, 2018 until April 5, 2018 through Google Display and Facebook. KCC caused supplemental Indirect Notices in the form of Internet ads to be run on Google Display and Facebook, from May 18, 2018 through May 30, 2018. Screen shots of the Internet Ads are attached as Exhibit C. KCC caused Indirect Notice in the form of Magazine publications to be published in the April 9, 2018 edition of People magazine, and in the May editions of Good Housekeeping and Readers' Digest magazine. Tear sheets of the Indirect Notice as published in these magazines are attached as Exhibit D. KCC caused Indirect Notice in the form of a Press Release released on March 2, 2018. A Copy of the Press release is attached as Exhibit E.

8.    The deadline to submit a request for exclusion ("opt-out") was *June 20, 2018*. To date, KCC has received and processed 53 timely opt-outs. A list of names of individuals who have opted-out of the settlement is attached as Exhibit F.

9.    The deadline to submit an objection to the settlement was June 20, 2018.  To date, KCC has received and processed 5 objections. The objections are attached here as Exhibit G.

10.   The deadline to submit a Claim Form was June 20, 2018.  To date, KCC has received and processed 4,721 timely Claim Forms. KCC received a high volume of claims near the end of the claim filing period, and is still processing paper claim forms into our system of record. There are approximately 5,283 additional claims that have been opened and scanned and are still being electronically entered.

11.     The total claimed dollar amount of the claims that have been entered into our system at this time is $64,334,438.60. KCC has not yet reviewed the validity or sufficiency of these claims or the dollar amount.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and that this declaration was executed this 20th day of August, 2018, at Louisville, Kentucky.

Alex Thomas

# EXHIBIT A





462 South 4th Street    800.211.5201    PHONE
Louisville, KY 40202    kccllc.com

3/2/2018

VIA PRIORITY MAIL

Jahna Lindemuth
Office of the Alaska Attorney General
P.O. Box 110300
Juneau, AK  99811-0300

Re:    Notice of Proposed Class Action Settlement Pursuant to 28 U.S.C. § 1715

Dear Jahna Lindemuth:

FAEGRE BAKER DANIELS LLP. represents PELLA CORPORATION and PELLA WINDOWS AND DOORS, INC. ("Defendants") in a putative class action lawsuit entitled EUBANK, et al. v PELLA CORPORATION, et al., Case No. 1:06-cv-04481.  The lawsuit is pending before the Honorable Sharon Johnson Coleman in the United States District Court for the Northern District of Illinois, Eastern Division.  This letter is to advise you that Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement in connection with this class action lawsuit on 2/8/2018.

| | |
|---|---|
| **Case Name:** | EUBANK, et al. v PELLA CORPORATION, et al. |
| **Case Number:** | 1:06-cv-04481 |
| **Jurisdiction:** | United States District Court, Northern District of Illinois, Eastern Division |
| **Date Settlement Filed with Court:** | **February 8, 2018** |

Defendants deny any wrongdoing or liability whatsoever, but have decided to settle this action solely in order to eliminate the burden, expense, and uncertainties of further litigation.  In compliance with 28 U.S.C. § 1715(b), the following documents referenced below are included on the CD that is enclosed with this letter:

1.    **28 U.S.C. § 1715(b)(1) – Complaint and Related Materials:**  A copy of the original *Class Action Complaint,* and all subsequent Amended Complaints, including a copy of the current and operative *Seventh Amended Class Action Complaint* are included on the enclosed CD.



Jahna Lindemuth
3/2/2018
Page 2

2.  **28 U.S.C. § 1715(b)(2) – Notice of Any Scheduled Judicial Hearing:** As of March 2, 2018, the Court has scheduled a final fairness hearing in this matter. for September 14, 2018, in Courtroom 1425 of the United States District Court for the Northern District of Illinois before the Honorable Sharon Johnson Coleman.

3.  **28 U.S.C. § 1715(b)(3) – Notification to Class Members:** A copy of the *Declaration And Notice Plan Of Carla Peak* is included on the enclosed CD. A copy of what are commonly referred to as the post-card notice, short-form notice, and long-form notice are included as Exhibits 2.1, 2.2, and 2.3 to the *Declaration And Notice Plan Of Carla Peak* included on the enclosed CD.

4.  **28 U.S.C. § 1715(b)(4) – Class Action Settlement Agreement:** A copy of the *Settlement Agreement And Release* is included on the enclosed CD.

5.  **28 U.S.C. § 1715(b)(5) – Any Settlement or Other Agreement:** As of March 2, 2018, no other settlement or agreement has been entered into by the parties to this Action or by and through their respective representatives.

6.  **28 U.S.C. § 1715(b)(6) – Final Judgmen**t: No Final Judgment has been reached as of March 2, 2018, nor have any Notices of Dismissal been granted at this time.

7.  **28 U.S.C. § 1715(b)(7)(A)-(B) – Estimate of Class Members:** For the period 1991 – 1997, Pella maintained sales data in number of units booked, and that for that period, Pella cannot break the sales data down on a state-by-state basis. After 1997, Pella maintained sales data in number of units shipped. Because Pella sales branches and national account stores (such as Lowes) are the primary retail outlets for Pella windows, rather than direct sales to settlement class members, Pella's sales data can only be meaningfully broken down by state based on the location of the Pella sales branches and national account stores to which the window units were shipped. Further, it is not feasible for Pella to provide the names of class members who reside in each State. Based on this sales data and assuming an average of 10 window units per home, below is a breakdown, by State, of the estimated number of homes with settlement class products installed in each state and the State's proportionate share of the settlement.

    Pursuant to 28 U.S.C. § 1715(b)(7)(B), it is estimated that there are approximately 368,727 homes in the class.



Jahna Lindemuth
3/2/2018
Page 3

| State | Number of Homes | Proportionate Share of Settlement |
|---|---|---|
| Alaska | 21 | 0.01% |
| Alabama | 2120 | 0.57% |
| Arkansas | 1190 | 0.32% |
| Arizona | 1307 | 0.35% |
| California | 5812 | 1.58% |
| Colorado | 8112 | 2.20% |
| Connecticut | 2986 | 0.81% |
| D.C. | 483 | 0.13% |
| Delaware | 853 | 0.23% |
| Florida | 3253 | 0.88% |
| Georgia | 2367 | 0.64% |
| Hawaii | 367 | 0.10% |
| Iowa | 26378 | 7.15% |
| Idaho | 1124 | 0.30% |
| Illinois | 52188 | 14.15% |
| Indiana | 21875 | 5.93% |
| Kansas | 15404 | 4.18% |
| Kentucky | 4362 | 1.18% |
| Louisiana | 646 | 0.18% |
| Maine | 837 | 0.23% |
| Massachusetts | 8534 | 2.31% |
| Maryland | 5613 | 1.52% |
| Michigan | 19253 | 5.22% |
| Minnesota | 13504 | 3.66% |
| Missouri | 10834 | 2.94% |
| Mississippi | 633 | 0.17% |
| Montana | 2135 | 0.58% |
| Nebraska | 17280 | 4.69% |
| North Carolina | 5380 | 1.46% |
| North Dakota | 1722 | 0.47% |
| New Hampshire | 1195 | 0.32% |
| Nevada | 417 | 0.11% |
| New Jersey | 11598 | 3.15% |
| New Mexico | 4437 | 1.20% |
| New York | 21828 | 5.92% |



Jahna Lindemuth
3/2/2018
Page 4

| | | |
|---|---|---|
| Ohio | 25199 | 6.83% |
| Oklahoma | 1155 | 0.31% |
| Oregon | 1369 | 0.37% |
| Pennsylvania | 16342 | 4.43% |
| Rhode Island | 1012 | 0.27% |
| South Carolina | 1689 | 0.46% |
| South Dakota | 3307 | 0.90% |
| Tennessee | 3692 | 1.00% |
| Texas | 5418 | 1.47% |
| Utah | 1692 | 0.46% |
| Virginia | 5776 | 1.57% |
| Vermont | 1100 | 0.30% |
| Washington | 2026 | 0.55% |
| Wisconsin | 20895 | 5.67% |
| West Virginia | 614 | 0.17% |
| Wyoming | 1393 | 0.38% |
| **TOTAL** | **368727** | **100%** |

8. **28 U.S.C. § 1715(b)(8) – Judicial Opinions Related to the Settlement:** A copy of the Court's *Order Granting Preliminary Approval of Settlement and Conditional Class Certification for Purposes of Settlement* is included in the CD.

If for any reason you believe the enclosed information does not fully comply with 28 U.S.C. § 1715, please contact FAEGRE BAKER DANIELS LLP immediately so that PELLA CORPORATION can address any concerns or questions you may have.

Thank you.

Sincerely,

*/s/*
Patrick Passarella
SENIOR VICE PRESIDENT

Enclosure – CD

| Last | First | Company | Address 1 | Address 2 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| Lindemuth | Jahna | Office of the Alaska Attorney General | P.O. Box 110300 | | Juneau | AK | 99811-0300 |
| Marshall | Steve | Office of the Alabama Attorney General | 501 Washington Avenue | PO Box 300152 | Montgomery | AL | 36130-0152 |
| Rutledge | Leslie | Arkansas Attorney General Office | 323 Center Street, Suite 200 | | Little Rock | AR | 72201-2610 |
| Brnovich | Mark | Office of the Arizona Attorney General | 1275 W. Washington Street | | Phoenix | AZ | 85007 |
| CAFA Coordinator | | Office of the Attorney General | Consumer Law Section | 455 Golden Gate Ave., Suite 11000 | San Francisco | CA | 94102 |
| Coffman | Cynthia | Office of the Colorado Attorney General | Ralph L. Carr Colorado Judicial Center | 1300 Broadway, 10th Floor | Denver | CO | 80203 |
| Jepsen | George | State of Connecticut Attorney General's Office | 55 Elm Street | | Hartford | CT | 6106 |
| Racine | Karl A. | District of Columbia Attorney General | 441 4th Street, NW, Suite 1100S | | Washington | DC | 20001 |
| Sessions | Jefferson | Attorney General of the United States | United States Department of Justice | 950 Pennsylvania Avenue, NW | Washington | DC | 20530-0001 |
| Denn | Matthew | Delaware Attorney General | Carvel State Office Building | 820 N. French Street | Wilmington | DE | 19801 |
| Bondi | Pam | Office of the Attorney General of Florida | The Capitol, PL-01 | | Tallahassee | FL | 32399-1050 |
| Carr | Chris | Office of the Georgia Attorney General | 40 Capitol Square, SW | | Atlanta | GA | 30334-1300 |
| Chin | Douglas S. | Office of the Hawaii Attorney General | 425 Queen Street | | Honolulu | HI | 96813 |
| Miller | Tom | Iowa Attorney General | Hoover State Office Building | 1305 E. Walnut Street | Des Moines | IA | 50319 |
| Wasden | Lawrence | State of Idaho Attorney General's Office | Statehouse | 700 W Jefferson St | Boise | ID | 83720-0010 |
| Madigan | Lisa | Illinois Attorney General | James R. Thompson Center | 100 W. Randolph Street | Chicago | IL | 60601 |
| Hill, Jr. | Curtis T. | Indiana Attorney General's Office | Indiana Government Center South | 302 West Washington Street, 5th Floor | Indianapolis | IN | 46204 |
| Schmidt | Derek | Kansas Attorney General | 120 S.W. 10th Ave., 2nd Floor | | Topeka | KS | 66612-1597 |
| Beshear | Andy | Office of the Kentucky Attorney General | 700 Capitol Ave | Capitol Building, Suite 118 | Frankfort | KY | 40601 |
| Landry | Jeff | Office of the Louisiana Attorney General | P.O. Box 94095 | | Baton Rouge | LA | 70804-4095 |
| Healey | Maura | Office of the Attorney General of Massachusetts | 1 Ashburton Place | | Boston | MA | 02108-1518 |
| Frosh | Brian | Office of the Maryland Attorney General | 200 St. Paul Place | | Baltimore | MD | 21202-2202 |
| Mills | Janet | Office of the Maine Attorney General | State House Station 6 | | Augusta | ME | 4333 |
| Schuette | Bill | Office of the Michigan Attorney General | P.O. Box 30212 | 525 W. Ottawa Street | Lansing | MI | 48909-0212 |
| Lori Swanson | Attorney General | Attention: CAFA Coordinator | 1400 Bremer Tower | 445 Minnesota Street | St. Paul | MN | 55101-2131 |
| Hawley | Joshua D. | Missouri Attorney General's Office | Supreme Court Building | 207 W. High Street | Jefferson City | MO | 65101 |
| Hood | Jim | Mississippi Attorney General's Office | Department of Justice | P.O. Box 220 | Jackson | MS | 39205 |
| Fox | Tim | Office of the Montana Attorney General | Justice Bldg. | 215 N. Sanders Street | Helena | MT | 59620-1401 |
| Stein | Josh | Office of the North Carolina Attorney General | Department of Justice | P.O. Box 629 | Raleigh | NC | 27602-0629 |
| Stenehjem | Wayne | North Dakota Office of the Attorney General | State Capitol | 600 E. Boulevard Avenue | Bismarck | ND | 58505-0040 |
| Peterson | Doug | Office of the Nebraska Attorney General | State Capitol | P.O. Box 98920 | Lincoln | NE | 68509-8920 |
| Foster | Joseph A. | New Hampshire Attorney General | State House Annex | 33 Capitol Street | Concord | NH | 03301-6397 |
| Porrino | Chrisopher S. | Office of the New Jersey Attorney General | Richard J. Hughes Justice Complex | 25 Market Street, P.O. Box 080 | Trenton | NJ | 8625 |
| Balderas | Hector | Office of the New Mexico Attorney General | P.O. Drawer 1508 | | Santa Fe | NM | 87504-1508 |
| Laxalt | Adam Paul | Nevada Attorney General | Old Supreme Ct. Bldg. | 100 North Carson Street | Carson City | NV | 89701 |
| Schneiderman | Eric | Office of the New York Attorney General | Department of Law | The Capitol, 2nd Floor | Albany | NY | 12224 |
| DeWine | Mike | Ohio Attorney General | State Office Tower | 30 E. Broad Street | Columbus | OH | 43266-0410 |
| Hunter | Mike | Oklahoma Office of the Attorney General | 313 NE 21st Street | | Oklahoma City | OK | 73105 |
| Rosenblum | Ellen F. | Office of the Oregon Attorney General | Justice Building | 1162 Court Street, NE | Salem | OR | 97301 |
| Shapiro | Josh | Pennsylvania Office of the Attorney General | 1600 Strawberry Square | | Harrisburg | PA | 17120 |
| Kilmartin | Peter | Rhode Island Office of the Attorney General | 150 South Main Street | | Providence | RI | 2903 |
| Wilson | Alan | South Carolina Attorney General | Rembert C. Dennis Office Bldg. | P.O. Box 11549 | Columbia | SC | 29211-1549 |
| Jackley | Marty J. | South Dakota Office of the Attorney General | 1302 East Highway 14, Suite 1 | | Pierre | SD | 57501-8501 |
| Slatery, III | Herbert H. | Tennessee Attorney General and Reporter | 425 5th Avenue North | | Nashville | TN | 37243 |
| Paxton | Ken | Attorney General of Texas | Capitol Station | P.O. Box 12548 | Austin | TX | 78711-2548 |
| Reyes | Sean | Utah Office of the Attorney General | State Capitol, Room 236 | 350 N State St | Salt Lake City | UT | 84114-0810 |
| Herring | Mark | Office of the Virginia Attorney General | 900 East Main Street | | Richmond | VA | 23219 |
| Donovan | T.J. | Office of the Attorney General of Vermont | 109 State Street | | Montpelier | VT | 05609-1001 |
| Ferguson | Bob | Washington State Office of the Attorney General | 1125 Washington St SE | P.O. Box 40100 | Olympia | WA | 98504-0100 |
| Schimel | Brad | Office of the Wisconsin Attorney General | Dept of Justice, State Capitol, RM 114 | East P.O. Box 7857 | Madison | WI | 53707-7857 |
| Morrisey | Patrick | West Virginia Attorney General | State Capitol | 1900 Kanawha Blvd E | Charleston | WV | 25305 |
| Michael | Peter K. | Office of the Wyoming Attorney General | State Capitol Bldg. | 200 W 24th St | Cheyenne | WY | 82002 |
| Ale | Talauega Eleasalo V. | American Samoa Attorney General | Exec. Ofc. Bldg, Utulei | Territory of American Samoa | Pago Pago | AS | 96799 |
| Barrett-Anderson | Elizabeth | Attorney General Office | 590 S. Marine Corps Drive | ITC Bldg, Suite 706 | Tamuning | Guam | 96913 |

| Manibusan | Edward | Northern Mariana Islands Attorney General | Administration Building | PO Box 10007 | Saipan | MP | 96950-8907 |
|---|---|---|---|---|---|---|---|
| Vazquez Garced | Wanda | Puerto Rico Attorney General | P.O. Box 902192 | San Juan | San Juan | PR | 902 |
| Walker | Claude E. | Department of Justice | Virgin Islands Attorney General | 34-38 Kronprindsens Gade, GERS Bldg, 2nd Floor | St. Thomas | VI | 802 |
| Skilling | April Dawn | Office of the Secretary | DOJ for the Federated States of Micronesia | P.O. Box PS 105 | Palikir, Pohnpei | FM | 96941 |
| | | Office of the Attorney General | P.O. Box 1365 | | Koror | PW | 96940 |
| | | Office of the Attorney General | P.O. Box 890 | | Majuro | MH | 96960 |
| Ryanne | Cozzi | KCC | 462 S. 4th St. | 10th Floor | Louisville | KY | 40202 |
| John | Mandler | Faegre Baker Daniels LLP | 2200 Wells Fargo Center | 90 S. Seventh Street | Minneapolis | MN | 55402 |

# EXHIBIT B

*Eubank v. Pella Corporation Settlement Administrator*
**P.O. BOX 404041**
**Louisville, KY 40233-4041**

2D

NOTICE OF CLASS ACTION SETTLEMENT

**Current or former owners of homes or other structures with Pella ProLine® Series aluminum clad wood casement, awning, and/or transom windows, manufactured between 1991 – 2009, may be affected by a class action settlement.**

www.pellawindowsettlement.com
1-866-658-6764



Postal Service: Please Do Not Mark Barcode

PEK-<<Claim8>>-<<CkDig>>

<<FName>> <<LName>>
<<Addr1>> <<Addr2>>
<<City>>, <<State>> <<Zip>>

**PEK**

Settlement has been reached with Pella Corporation ("Pella Windows") and about 43 dealers and distributors of Pella Proline® brand aluminum clad wood casement, awning, and/or transom windows manufactured by Pella Corporation between 1991 and 2009 ("Pella ProLine® Casement Windows"). The settlement covers water intrusion damage to qualifying windows and property. Defendants deny all of the claims in the lawsuit. The Court has not decided who is right.

**Who is Included?** You are included in the Settlement as a Settlement Class Member if you are a current or former owner of a structure in the United States containing Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between 1991 and 2009 (Pella ProLine® Casement Windows).

**What does the Settlement Provide?** Pella will dedicate $25.75 million for a Settlement Fund, of which $23.75 will be used for Fund A and $2 million will be used for Fund B. Fund A will be used to pay settlement administration costs and make up to $25,000 service award payments to each of the Class Representatives, before making payments to Settlement Class Members who file a valid Claim Form for Eligible Damage. Payments for Eligible Damage will vary based on the widow's date of sale, damage and repair costs, and if and when the damage occurred, among other things. Fund B will be used for warranty and Proline Service Enhancement Program benefits.

**How do I get a payment?** You must complete and submit a valid Claim Form by June 20, 2018. Claim Forms are available at www.pellawindowsettlement.com, by calling 1-866-658-6764 or by writing to the return address.

**Your Rights and Options**. If you do nothing, your rights will be affected but you will not get a Settlement payment or benefits. If you do not want to be legally bound by the Settlement, you must exclude yourself from it by **June 20, 2018**. Unless you exclude yourself, you will not be able to sue Defendants for any legal claim resolved by this Settlement or released by the Settlement Agreement. If you exclude yourself, you cannot get a Settlement payment or benefits but you are free to pursue any legal claims that you may have against Defendants in a different lawsuit. If you stay in the Settlement (that is, don't exclude yourself), you may object to it by **June 20, 2018**. More information can be found in the Detailed Notice and Settlement Agreement, which are available at www.pellawindowsettlement.com.

**The Final Approval Hearing.** The U.S. District Court for the Northern District of Illinois, located at 219 South Dearborn Street, Courtroom 1241, Chicago, Illinois 60604, will hold a hearing in this case (*Eubank v. Pella Corporation et al.,* Case No. 06-cv-4481) on September 14, 2018. At this hearing, the Court will decide whether to approve: the Settlement; all counsels' requests for attorneys' fees, costs, and expenses of up to $9 million; and up to $25,000 each as a service award to the Class Representatives. You may appear at the hearing, but you do not have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**SI DESEA RECIBIR ESTA NOTIFICACION EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.**

# EXHIBIT C



















**BODY ART**

DNA Tattoos: I've Got You Into My Skin



**CULTURAL TRADITIONS**

What's the Deal with Saudi Arabia's Sudden 'Revolution'?



**ETIQUETTE & LANGUAGES**

Nearly Every English Word Is Trademarked



**FADS**

The Movement That Has Men Dropping Out of Society in a 'Sexodus'

• · · ·



CULTURE & TRADITIONS / CULTURAL TRADITIONS

What's the Deal with Saudi Arabia's Sudden 'Revolution'?

Mohammed bin Salman seems to be modernizing the Middle Eastern country, but is it for real, or is it just for show?

By Diana Brown    Mar 6, 2018



CULTURE & TRADITIONS / RELATIONSHIPS

Common-law Marriage and Divorce Differ by State

Been together for years and assume you are common-law married? Better check the law in your state.

By Patrick J. Kiger    Mar 1, 2018



Over 40 and Can Still Run a 9 Minute Mile? See how much you can save on life insurance.

Over 40 and Can Still Run a 9 Minute Mile? See how much you can save on life insurance.

If you are a current or former owner of a home or other structure with Pella ProLine® aluminum clad wood Casement Windows, manufactured between 1991-2009, you may qualify for benefits from a class action settlement.

**Learn More**

www.pellawindowsettlement.com



KCC











a sign of "possible progress."

**Donald J. Trump** ✔
@realDonaldTrump

Possible progress being made in talks with North Korea. For the first time in many years, a serious effort is being made by all parties concerned. The World is watching and waiting! May be false hope, but the U.S. is ready to go hard in either direction!

6:11 AM - Mar 6, 2018

♡ 59.1K  ○ 25.4K people are talking about this

North Korea's apparent offer to give up its growing nuclear arsenal only if the "military threat" against it and its dynastic leadership were removed could complicate talks.

That broad wording could mean Pyongyang will insist the United States cease its annual military exercises with the South — or potentially leave the peninsula entirely, as North Korea has long sought.

The United States has more than 20,000 troops deployed in South Korea, and much of the U.S. military and national security apparatus is focused on the threat from North Korea.

Despite those question marks, the statement stunned many inter-Korean security experts and analysts in Washington.

"It's very encouraging. If North Korea has really committed to denuclearizing, that is a positive step forward," said Chun Yung-woo, a onetime national security advisor to former South Korean President Lee Myung-bak, who took a hard line with the totalitarian North.

"I must see if our understanding of North Korea's commitment is the same as what North

ADVERTISEMENT

If you are a current or former owner of a home or other structure with Pella ProLine® aluminum clad wood Casement Windows, manufactured between 1991-2009, you may qualify for benefits from a class action settlement.

**Learn More**

www.pellawindowsettlement.com

ADVERTISEMENT

TRIAL OFFER | **SUPPORT QUALITY NEWS** 4 weeks for 99¢

**SAVE NOW**





**Los Angeles Times**

TOPICS    SEARCH    SUBSCRIBE 4 weeks for only 99¢    LOG IN

### How to fight aging: Make your cells resistant to physiological stress

NAD is a molecule that helps regulate many key functions of the cell, such as metabolism and energy production. As we get older, there's less NAD, and signs of age...

SEE MORE

Sponsored Content by TRU NIAGEN

ADVERTISEMENT

If you are a current or former owner of a home or other structure with Pella ProLine® aluminum clad wood Casement Windows, manufactured between 1991-2009, you may qualify for benefits from a class action settlement.

Learn More

www.pellawindowsettlement.com

On Jan. 28, a GM Cruise Bolt EV with a human driving the car stopped behind a taxi on Duboce Avenue in San Francisco, when "the driver of the taxi exited his vehicle, approached the Cruise AV, and slapped the front passenger window, causing a scratch," the incident report said. There were no injuries and police were not called.

Cars capable of autonomous operation can be legally tested on public roads in California with permits if a human sits behind the steering wheel, ready to take control. Crashes, however minor, must be reported to the DMV.

Of the six accidents reported so far in 2018, three were in autonomous mode and three in manual mode. The four that did not involve human attack were of the fender-bender variety. None involved injuries and damage ranged from minor to none.

Newly issued regulations will allow cars with permits to be driven on public roads with no human driver on board starting April 2. The crash-report requirement will remain.

TRIAL OFFER | SUPPORT QUALITY NEWS
4 weeks for 99¢

SAVE NOW







Eubank v. Pella Corporation; 300x250
Placement: SFGate.com







A Must-own, Life Changing Stock for Your Biotech Portfolio

noesisnews.com

Advertisement

**STAY UP TO DATE**

COLD & FLU
TRACK WHAT'S HAPPENING NOW IN YOUR COMMUNITY
Powered By *Theraflu*

SAFETY & PREP
ARE YOU READY FOR THE NEXT STORM?
Sponsored by *State Farm*

ALLERGY
FIND OUT WHY YOU'RE SNEEZING TODAY
Powered By *Flonase*

If you are a current or former owner of a home or other structure with Pella ProLine® aluminum clad wood Casement Windows, manufactured between 1991-2009, you may qualify for benefits from a class action settlement.
Learn More
www.pellawindowsettlement.com

**RECOMMENDED**











# EXHIBIT D



**NOTICE OF CLASS ACTION SETTLEMENT**

If you are a current or former owner of a home or other structure with Pella ProLine® Casement Windows, manufactured between 1991 – 2009, you may qualify for benefits from a class action settlement.

*SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.*

A settlement has been reached with Pella Corporation and Pella Windows and Doors, Inc. ("Defendants") about allegedly defective Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows manufactured by Pella Corporation between 1991 and 2009 ("Pella ProLine® Casement Windows"). The settlement covers water intrusion damage to qualifying windows and property. Defendants deny all of the claims in the lawsuit. The Court has not decided who is right.

**Who Is Included?** You are included in the Settlement as a Settlement Class Member if you are a current or former owner of a structure in the United States containing Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between 1991 and 2009 (Pella ProLine® Casement Windows).

**What Does The Settlement Provide?** Pella will dedicate $25.75 million for a Settlement Fund, of which $23.75 million will be used for Fund A and $2 million will be used for Fund B. Fund A will be used to pay settlement administration costs and to make payments to or $25,000 service award payments to each of the Class Representatives, before making payments to Settlement Class Members who file a valid Claim Form for an Eligible Damage. Payments for Eligible Damage will vary based on the window's date of sale, damage and repair costs, and if and when the damage occurred, among other things. Fund B will be used for warranty and ProLine Service Enhancement Program benefits.

**How Do I Get A Payment?** You must complete and submit a valid Claim Form by **June 20, 2018**. Claim Forms are available at www.pellawindowsettlement.com, by calling 1-866-658-6764 or by writing to *Eubank v. Pella Settlement Administrator*, PO Box 404041, Louisville, KY 40233-4041.

**Your Rights And Options.** If you do nothing, your rights will be affected but you will not get a Settlement payment or benefits. If you do not want to be legally bound by the Settlement, you must exclude yourself from it by **June 20, 2018**. Unless you exclude yourself, you will not be able to sue Defendants for any legal claim resolved by this Settlement or released by the Settlement Agreement. If you exclude yourself, you cannot get a Settlement payment or benefits but you are free to pursue any legal claims that you may have against Defendants in a different lawsuit. If you stay in the Settlement (that is, don't exclude yourself), you may object to it by **June 20, 2018**. More information can be found in the Detailed Notice and Settlement Agreement, which are available at www.pellawindowsettlement.com.

**The Final Approval Hearing.** The U.S. District Court for the Northern District of Illinois, located at 219 South Dearborn Street, Courtroom 1241, Chicago, Illinois 60604, will hold a hearing in this case (*Eubank, et al. v. Pella Corporation, et al.*, Case No. 06-cv-4481) on September 14, 2018. At this hearing, the Court will decide whether to approve: the Settlement; all counsels' requests for attorneys' fees, costs, and expenses of up to $9 million; and up to $25,000 each as a service award to the Class Representatives. You may appear at the hearing, but you do not have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

www.pellawindowsettlement.com
1- 866-658-6764

## INSIDE THE GH TEST KITCHEN

### Mint Julep Cupcakes

**ACTIVE** 30 MIN.
**TOTAL** 50 MIN.
PLUS COOLING



**CUPCAKES:**
¾ cup granulated sugar
¼ cup fresh mint, finely chopped
1½ cups all-purpose flour
1½ tsp baking powder
¼ tsp kosher salt
½ cup (1 stick) unsalted butter, at room temp
2 large eggs
1½ tsp pure vanilla extract
¾ cup whole milk
2 Tbsp bourbon

**FROSTING:**
1 8-oz pkg. cream cheese, at room temp
6 Tbsp unsalted butter, at room temp
½ tsp pure vanilla extract
Pinch kosher salt
1½ cups confectioners' sugar
Fresh mint, for serving

1. Heat oven to 350°F. Line 12-cup muffin pan with paper liners.
2. **Make cupcakes:** In bowl of electric mixer, combine sugar and mint. Rub mixture with fingers so sugar becomes a bit wet. Let sit 10 min.
3. Meanwhile, in medium bowl, whisk together flour, baking powder and salt.
4. Add butter to bowl with sugar mixture and, using paddle attachment, beat until light and fluffy, about 3 min. Reduce mixer speed

to medium and add eggs 1 at a time, beating each until incorporated before adding the next. Beat in vanilla.
5. Reduce mixer speed to low and add flour mixture in three parts, alternating with milk and beating just until incorporated.
6. Divide batter between muffin-pan cups (about ¼ cup each) and bake until wooden pick inserted into center comes out clean, 18 to 22 min. Transfer to wire rack and let cool 5 min., then brush tops with bourbon.
7. **Make frosting:** Using electric mixer, beat cream cheese, butter, vanilla and salt until smooth. Reduce mixer speed to low and gradually beat in confectioners' sugar. Refrigerate until slightly stiffened, about 20 min. Frost cooled cupcakes and top with mint leaves.

*MAKES 12* About 380 cal, 21.5 g fat (13 g sat), 5 g pro, 200 mg sodium, 42 g carb, 1 g fiber



GH TEST KITCHEN

### USE EVERYTHING BETTER GUIDE



**Raspberry-Peach Slushie**

In blender, layer 1½ cups **lemonade**, 1 8-oz container **vanilla yogurt**, 2 cups **frozen peaches**, 1 6-oz container fresh **raspberries** and 2 cups **ice**. Then puree until smooth.



## MMM...MORNING

### Raspberry Swirl Rolls

**ACTIVE** 25 MIN.
**TOTAL** 2 HR. 55 MIN.

½ cup whole milk
1 ¼-oz pkg. active dry yeast
3 Tbsp granulated sugar
3 cups all-purpose flour
4 Tbsp unsalted butter, melted
1 tsp kosher salt
Oil, for pan
½ cup raspberry jam
2 tsp lemon zest
3 Tbsp fresh lemon juice
2 cups frozen raspberries (do not thaw)
2 Tbsp heavy cream, for brushing
½ cup sour cream
¼ cup confectioners' sugar, sifted
½ tsp pure vanilla extract

1. In small saucepan, heat milk and ½ cup water on medium-low until warm but not hot to the touch.
2. Meanwhile, in large bowl, whisk together yeast, granulated sugar and 1 cup flour. Stir in warm milk. Cover and set aside until thick and foamy, about 15 min.
3. Mix in melted butter and salt. Gradually mix in remaining 2 cups flour. Cover and let rise until doubled in size, about 1 hr.

4. Meanwhile, lightly coat 11" by 8" casserole dish with oil. Line pan with parchment paper, leaving 3-in. overhang on 2 long sides; oil parchment. In small bowl, combine jam, lemon zest and 1 Tbsp lemon juice.
5. Turn dough out onto floured surface. Roll into 12" by 9" rectangle. Spread with jam mixture and top with raspberries. Starting from long side, roll dough into tight log, pinching seam to seal.
6. Slide long piece of unflavored dental floss under log of dough about 1 in. from end. Holding floss taut, lift ends and cross to cut off 1 piece dough. Repeat to

cut 12 1-in.-thick rolls. Transfer rolls, cut sides up, to prepared pan, spacing equally. Cover and let rise until rolls have doubled in size and are touching, 50 to 60 min.
7. Meanwhile, heat oven to 375°F. Brush rolls with heavy cream and bake until puffed and light golden brown, 25 to 27 min. Let cool on wire rack 10 min.
8. Make frosting: In medium bowl, combine sour cream, confectioners' sugar, vanilla and remaining 1 Tbsp lemon juice. Spread over warm rolls.

*SERVES 12* About 235 cal, 7.5 g fat (4 g sat), 4 g pro, 170 mg sodium, 38 g carb, 2 g fiber



SMUDGED to BRILLIANT

All-Purpose Cleaner

WEIMAN STAINLESS STEEL WIPES

MAKE THE UPGRADE

# Reader's digest

**MAY 2018**

**EXCLUSIVE**

# 50 SECRETS
# HOSPITALS
# DON'T TELL YOU

A **READER'S DIGEST SPECIAL REPORT** ... 56

## CREATE YOUR OWN
# A-HA!
## MOMENT

From **PSYCHOLOGY TODAY** ... 70

## "I JOINED THE CAJUN NAVY"

A **HURRICANE DIARY** ... 80

## THE MAN WHO CANNOT FEEL PAIN

From **WIRED** ... 94

## When Kindness Changes Lives

From **THE WASHINGTON POST** ... 108

## The History of the World—in Dumb Jokes

An **RD ORIGINAL** ... 90

## 12 Super-Health Foods

Excerpt from **FOODS THAT HARM, FOODS THAT HEAL** ... 35

## Crash the Royal Wedding!

Humor by **ANDY SIMMONS** ... 15



Removable bookmark brought to you by **GEICO**

ALLER

John P.
Age: 42 SEX: M
ADMIT: 8/15/16

FALL RISK

WALLACE MEMORIAL HOSPITAL

13 THINGS YOU DIDN'T KNOW ABOUT MOTHER'S DAY

bouncing baby boy on April 19, 2016. Kaur and her 79-year-old husband, Mohinder Singh Gill, spent decades trying to have a baby—and finally succeeded after saving up enough money for fertility treatments.

**11** Becoming a future mom is good for your brain. Pregnancy not only alters a woman's skin and hair but may also affect her brain. According to a small 2010 study published by the American Psychological Association, the changes include a small but significant increase in gray matter in the parts of the brain responsible for sensory perception, reasoning, and judgment. These changes may play a role in shaping maternal behavior and motivation in the development of higher cognitive function.

**12** She's got the same name in every mother tongue. Babies in nearly every country on the planet speak the word *mama* in almost exactly the same way.

**13** But don't accuse her of smothering you. Of the mother lode of words with *mother* as their root, perhaps the most recent is *motherboard*: the main circuit of a computer. A surprise to some is that *smother* doesn't come from the same source—no matter how much you think it's in your mom's DNA. 

* * *

## ESSENTIAL ABBREVIATIONS FOR YOUR WORK E-MAILS

TL;DR—Too long; didn't read

RS;TD—Read some; then deleted

SS;IC—Saw subject; ignored completely

TI;SS—Totally irrelevant; still sending

DR;ARA—Didn't read; accidentally replied all

SU;SDR—Saw urgent; still didn't read

OV;SE—On vacation; stop e-mailing

SOV;SSE—Still on vacation; seriously stop e-mailing

WR;GF—Won't read; got fired

WI;MS—Where is; my stapler

Source: mcsweeneys.net

NOTICE OF CLASS ACTION SETTLEMENT

**If you are a current or former owner of a home or other structure with Pella ProLine® Casement Windows, manufactured between 1991 – 2009, you may qualify for benefits from a class action settlement.**

*SI DESEA RECIBIR ESTA NOTIFICACION EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.*

A settlement has been reached with Pella Corporation and Pella Windows and Doors, Inc. ("Defendants") about allegedly defective Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows manufactured by Pella Corporation between 1991 and 2009 ("Pella ProLine® Casement Windows"). The settlement covers water intrusion damage to qualifying windows and property. Defendants deny all of the claims in the lawsuit. The Court has not decided who is right.

**Who Is Included?** You are included in the Settlement as a Settlement Class Member if you are a current or former owner of a structure in the United States containing Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between 1991 and 2009 (Pella ProLine® Casement Windows).

**What Does The Settlement Provide?** Pella will dedicate $25.75 million for a Settlement Fund, of which $23.75 million will be used for Fund A and $2 million will be used for Fund B. Fund A will be used to pay settlement administration costs and make up to $25,000 service award payments to each of the Class Representatives, before making payments to Settlement Class Members who file a valid Claim Form for an Eligible Damage. Payments for Eligible Damage will vary based on the window's date of sale, damage and repair costs, and if and when the damage occurred, among other things. Fund B will be used for warranty and ProLine Service Enhancement Program benefits.

**How Do I Get A Payment?** You must complete and submit a valid Claim Form by June 20, 2018. Claim Forms are available at www.pellawindowsettlement.com, by calling 1-866-658-6764 or by writing to *Eubank v. Pella* Settlement Administrator, PO Box 404041, Louisville, KY 40233-4041.

**Your Rights And Options.** If you do nothing, your rights will be affected but you will not get a Settlement payment or benefits. If you do not want to be legally bound by the Settlement, you must exclude yourself from it by June 20, 2018. Unless you exclude yourself, you will not be able to sue Defendants for any legal claim resolved by this Settlement or released by the Settlement Agreement. If you exclude yourself, you cannot get a Settlement payment or benefits but you are free to pursue any legal claims that you may have against Defendants in a different lawsuit. If you stay in the Settlement (that is, don't exclude yourself), you may object to it by June 20, 2018. More information can be found in the Detailed Notice and Settlement Agreement, which are available at www.pellawindowsettlement.com.

**The Final Approval Hearing.** The U.S. District Court for the Northern District of Illinois, located at 219 South Dearborn Street, Courtroom 1241, Chicago, Illinois 60604, will hold a hearing in this case (*Eubank, et al. v. Pella Corporation et al.*, Case No. 06-cv-4481) on September 14, 2018. At this hearing, the Court will decide whether to approve: the Settlement; all counsels' requests for attorneys' fees, costs, and expenses of up to $9 million; and up to $25,000 each as a service award to the Class Representatives. You may appear at the hearing, but you do not have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**www.pellawindowsettlement.com**
**1- 866-658-6764**

**NOTICE OF CLASS ACTION SETTLEMENT**

**If you are a current or former owner of a home or other structure with Pella ProLine® Casement Windows, manufactured between 1991 – 2009, you may qualify for benefits from a class action settlement.**

*SI DESEA RECIBIR ESTA NOTIFICACION EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.*

A settlement has been reached with Pella Corporation and Pella Windows and Doors, Inc. ("Defendants") about allegedly defective Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows manufactured by Pella Corporation between 1991 and 2009 ("Pella ProLine® Casement Windows"). The settlement covers water intrusion damage to qualifying windows and property. Defendants deny all of the claims in the lawsuit. The Court has not decided who is right.

**Who Is Included?** You are included in the Settlement as a Settlement Class Member if you are a current or former owner of a structure in the United States containing Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between 1991 and 2009 (Pella ProLine® Casement Windows).

**What Does The Settlement Provide?** Pella will dedicate $25.75 million for a Settlement Fund, of which $23.75 million will be used for Fund A and $2 million will be used for Fund B. Fund A will be used to pay settlement administration costs and make up to $25,000 service award payments to each of the Class Representatives, before making payments to Settlement Class Members who file a valid Claim Form for an Eligible Damage. Payments for Eligible Damage will vary based on the window's date of sale, damage and repair costs, and if and when the damage occurred, among other things. Fund B will be used for warranty and ProLine Service Enhancement Program benefits.

**How Do I Get A Payment?** You must complete and submit a valid Claim Form by June 20, 2018. Claim Forms are available at www.pellawindowsettlement.com, by calling 1- 866-658-6764 or by writing to *Eubank v. Pella* Settlement Administrator, PO Box 404041, Louisville, KY 40233-4041.

**Your Rights And Options.** If you do nothing, your rights will be affected but you will not get a Settlement payment or benefits. If you do not want to be legally bound by the Settlement, you must exclude yourself from it by June 20, 2018. Unless you exclude yourself, you will not be able to sue Defendants for any legal claim resolved by this Settlement or released by the Settlement Agreement. If you exclude yourself, you cannot get a Settlement payment or benefits but you are free to pursue any legal claims that you may have against Defendants in a different lawsuit. If you stay in the Settlement (that is, don't exclude yourself), you may object to it by June 20, 2018. More information can be found in the Detailed Notice and Settlement Agreement, which are available at www.pellawindowsettlement.com.

**The Final Approval Hearing.** The U.S. District Court for the Northern District of Illinois, located at 219 South Dearborn Street, Courtroom 1241, Chicago, Illinois 60604, will hold a hearing in this case (*Eubank, et al. v. Pella Corporation et al.*, Case No. 06-cv-4481) on September 14, 2018. At this hearing, the Court will decide whether to approve: the Settlement; all counsels' requests for attorneys' fees, costs, and expenses of up to $9 million; and up to $25,000 each as a service award to the Class Representatives. You may appear at the hearing, but you do not have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**www.pellawindowsettlement.com**
**1- 866-658-6764**



Princess in pants! Elsa (Levy) expands her royal wardrobe.

No. 6 **Frozen: The Musical**

**BROADWAY**

MUSICAL Get ready to have "Let It Go" stuck in your head all over again. Perfectly cast with Patti Murin and Caissie Levy as sibling princesses Anna and Elsa, the sparkling show hits all the notes of Disney's 2013 megahit while expanding the plot. (What *was* Elsa up to in her ice castle all that time?) Kristen Anderson-Lopez and Robert Lopez's new songs blend seamlessly with favorites like "For the First Time in Forever." At its core *Frozen* is about two sisters finding their way back to each other—a poignant message that will melt your heart. *(St. James Theatre)*



Musgraves, who got married to Ruston Kelly last fall, has said their relationship inspired the album.

No. 7 **Kacey Musgraves: Golden Hour**

**MUSIC**

COUNTRY No artist pushes country-pop's boundaries like the 29-year-old Texan. Her latest album's 13 gems include plenty of plaintive pedal steel, but highlight "High Horse" sounds more fit for an electronic festival's stage than a dusty saloon, and funky "Velvet Elvis" channels Danger Mouse's retro soul. Still, Musgraves remains an ace country songwriter, as on the strummer "Slow Burn," where she turns prosaic details— like her grandma getting mad when Musgraves pierced her nose—into lyrical gold. *(March 30)*

# EXHIBIT E

# Current and former owners of homes or other structures with Pella ProLine® Casement Windows, manufactured between 1991-2009, may qualify for benefits from a class action settlement.

NEWS PROVIDED BY
**Clifford Law Offices** →
08:00 ET

SHARE THIS ARTICLE

     

CHICAGO, March 6, 2018 /PRNewswire/ -- Clifford Law Offices announce that a settlement has been reached with Pella Corporation and Pella Windows and Doors, Inc. ("Defendants"). The settlement covers water intrusion damage to qualifying windows and property.

You are included in the Settlement if you are a current or former owner of a structure in the United States containing Pella ProLine® brand aluminum clad wood casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between 1991 and 2009 ("Settlement Class Members").

Pella will dedicate $25.75 million for a Settlement Fund. The Settlement Fund will be used to pay settlement administration costs and make up to $25,000 service award payments to each of the Class Representatives, before making payments to Settlement Class Members who file a valid Claim Form for an Eligible Damage. Payments for Eligible Damage will vary based on the window's date of sale, damage and repair costs, and if and when the damage occurred, among other things. The Settlement Fund will also be used for warranty and ProLine Service Enhancement Program benefits.

You must complete and submit a valid Claim Form by **June 20, 2018** to get a settlement payment. You may also choose to do nothing, or exclude yourself from the settlement, or object to it by **June 20, 2018**.

The U.S. District Court for the Northern District of Illinois, located at 219 South Dearborn Street, Courtroom 1241, Chicago, Illinois 60604, will hold a hearing in this case (*Eubank, et al. v. Pella Corporation et al.*, Case No. 06-cv-4481) on September 14, 2018. At this hearing, the Court will decide whether to approve: the Settlement; all counsels' requests for attorneys' fees, costs, and expenses of up to $9 million; and up to $25,000 each as a service award to the Class Representatives. You may appear at the hearing, but you do not have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

More information can be found in the Detailed Notice and Settlement Agreement, which are available at www.pellawindowsettlement.com. You may also call 1-866-658-6764.

SOURCE Clifford Law Offices

# EXHIBIT F

**Eubank et. al. v Pella Opt-outs August 20, 2018**

| ClaimID | FirstName | LastName | Name1 |
|---|---|---|---|
| PEK-800000013 | NICOLAS | ROCKLER | |
| PEK-800000021 | CLYDE & SANDY | WILSON | |
| PEK-800000030 | HAROLD | HASE | GERRIE HASE |
| PEK-800000048 | MAHNAZ | DEAN | |
| PEK-800000056 | SAIED | TADAYON | |
| PEK-800000064 | BIJAN | TADAYON | |
| PEK-800000072 | DAVID DEAN | BARKEY | |
| PEK-800000080 | DEAN | BARKEY | |
| PEK-800000099 | JIM | GRITZNER | ZOE GRITZNER |
| PEK-800000102 | DAVID | SPANGENBERG | MICHELE SPANGENBERG |
| PEK-800000110 | LINDA | RODRIGUEZ | |
| PEK-800000129 | RONALD P | DAVIS | TINNY B DAVIS |
| PEK-800000137 | WENDY R | BANAK | |
| PEK-800000145 | JERRY SPEIGHT | GRIMES | |
| PEK-800000153 | NATHAN | BROWN | |
| PEK-800000161 | ERIC | MATTHIESEN | |
| PEK-800000170 | SCOTT | HADDIX | |
| PEK-800000188 | FRANK | DAHARSH | JEANNE DAHARSH |
| PEK-800000196 | JEFFREY DON | BERGSTEN | JULIA ANN BERGSTEN |
| PEK-800000200 | THERESA | RIESS | MARTIN RIESS |
| PEK-800000218 | JEFFREY | BAKER | SARAH BAKER |
| PEK-800000226 | BRAD | CHAMBERLAIN | KATHY CHAMBERLAIN |
| PEK-800000234 | BRADLEY | CZYZEWSKI | |
| PEK-800000242 | DOUGLAS | WEMHOFF | JUDY WEMHOFF |
| PEK-800000250 | CONSTANCE | QUESTENHAGEN | |
| PEK-800000269 | THOMAS | JAHNKE | LINDA JAHNKE |
| PEK-800000277 | CAROL | DENOYER | |
| PEK-800000285 | ANDREW | PERET | |
| PEK-800000293 | CLIFFORD | MCDONALD | JUDY MCDONALD |
| PEK-800000307 | JON ERIC | HALL | |
| PEK-800000315 | CHOONOH | MA | |
| PEK-800000323 | VICKI | EMERSON | |
| PEK-800000331 | ANDREW | WOLF | LINDA WOLF |
| PEK-800000340 | GREG | HOLLOWAY | |
| PEK-800000358 | STEVE | HAMPTON | SUSAN HAMPTON |
| PEK-800000366 | THOMAS | MANTYCH | EILEEN MANTYCH |
| PEK-800000374 | JONATHAN | GOLBERG | DEBORAH GOLBERG |
| PEK-800000382 | EDWIN | DOWNEY | LOUISE DOWNEY |
| PEK-800000390 | HARLEN | BRIGGS | |
| PEK-800000404 | MARTY | MEYER | |
| PEK-800000412 | CHERYL | WILSON | |
| PEK-800000420 | DAVID | DINGES | |
| PEK-800000439 | REBECCA | SURAN | |
| PEK-800000447 | ROSARIO | TESTA | |
| PEK-800000455 | RICHARD | GRAYLIN | CHELSEA GRAYLIN |

| | | | |
|---|---|---|---|
| PEK-800000463 | TARRON EUGENE | MEAIKE | |
| PEK-800000471 | GREG | SHAW | |
| PEK-800000480 | DAVID | ZAWOSKI | LYNN ZAWOSKI |
| PEK-800000498 | WILLIAM | WISNIEWSKI | |
| PEK-800000501 | STEVE | SHAW | |
| PEK-800000510 | KRISTEN | KOEGEL | JAMES O KEANE |
| PEK-800000528 | MARK | AUSENHUS | |
| PEK-800000536 | TIMOTHY B | HIGGINS | ALFINA C. HIGGINS |

# EXHIBIT G

The Name of L... ... Rei
Objection to the Lawsuit of:

Kent Eubank et al. v. Pella Corporation et al
Case No. 06 C 4481;

by: Reginald Ewin Bossier
2322 Beau Chene drive
Biloxi, Ms 39532

Todays date June 13, 2018; I own and have
owned for 11 years last April my home
at above address 2322 Beau Chene Biloxi Ms 395

objection #1 the suit against Pella Corp et al is for
Pro Line® Casement windows manufactured by Pella
from 1991 — 2009. My house was finished
being Built at the end of 2004 and the windows & doors
in it are all Pella custom Built by 2002 in
the same style as Pro Line® aluminium over
wood casement products. The windows &
doors in my house should be covered as
they have been Built in the same fashion
as Pro line® with aluminium over wood and
are suffering the same Rot as Pro line®

objection #2 limiting the settlement to just
Pro Line® is not Fair and should
include all Pella Products with such
known design Flaws such as exzibited in
included Photos (see Fig: 1-4 (A,B,C))

There are 50+ PellA products units in this house, all are specifically Designed For ~~the~~ Placement in this house

for some reason all the glass etch #'s are the same and no Product ID STAMP probably because they were Custom Built for this house. They are still aluminum Clad wood casement design and should be included in this settlement, Please NoTify me of your decision 228-437-6800 or 228-341-5696 I've included a Professional Photo on a Bruisness card so you can see a well designed house in need of quality windows such as Pella is supposed to be but with the threat of them all rotting away because of Aluminum ~~clad~~ over wood really devalues the place I counted over 50+ Windows & Doors manufactured all by Pella in this house, I cost a fortune to have the Pella name on and now I've been trying to sell it $750000 less than it cost 11years ago. and can't get it the rotted windows & Don't help.

9

## Categories and Cost of Eligible Damage

The 6 unit stacked to make one large window (Photo Fig 2.A) has leaked enough of over the years to cause damage to the wall below window and cabnets adjacent to the window. We have MOLD and mushrooms growing out of the corner of the bottom of the cabnet next to the window the true extent of damage is yet to be seen till the window is removed & replaced. I called Pella to get information on what to do about the rot and they said it would have to be replaced. But to come an assess the damage they wanted to charge me $350.00 to make a visit here. I thought that they would have wanted to see how their Product Peformed or not. I am worried about all the other Pella Products in this house wheather they will last or not. Only Full replacement of the Rotted Products will help me in this Situation. Please Grant me some Refief

Thanks

R.E.B.

OBjection #3 IDentification of Eligible DAmage and CosTs: It is obvious the damage to these 12 of 50 PelLA Products in this home, BuT identification of each individual UniT is difficult Because they all have the same eTching and on the windows that lock, and are Built like Doors only have the Pella Coin at the Top of each window (see Fig. 1,D, Photo)

This house was completed in 2004-2005 and purchased by me in 2007 April so the manufacture of these windows Fall in the 1991-2009 Time FRame, The windows are ALuminum CLAD wood CAse ment windows that were custom made by Pella Specificly for this house so PelLA's method of manufacturing Pro Line® cross "over To these poorly designed aluminum Clad wood Case windows when they were artchitecturally PLANNed & Ordered From Pella

I noticed an issue with the windows way back in 2010 BuT thought it was MolD on the paint. years later it turned out to be rotting from the inside out to the Paint where now its only the Paint left holding it together

(see Fig.4, Photo)

June 13, 2018

Lawsuit reference: Kent Eubank et al. v. Pella Corporation et al.,
Case # 06C4481

Reginald Edwin Bossier
2322 Beau Chene Dr.
Biloxi, Ms. 39532
228-697-2707
228-341-5696
228-437-6800

I, Ed Bossier have owned my home at above address for 11yrs this past april.

Objection #1: The suit against Pella Corp. et.al, is for Pro Line casement windows manufactured by Pella from 1991-2009. My home was finished at the end of 2004 and the windows and door in it are all Pell custom built by 2002 in the same stlye as Proline aluminun over wood casement products. The windows and doors in my home should be covered as they have been built in the same fashion as Proline with aluminum over wood and are suffering the same rot issues as Proline.

Objection #2: Limiting the lawsuit to just Proline is unfair and should include all Pella products with such known design flawssuch as exhibited photos (see Fig:1-4 a,b,c,d,)

Objection #3: Identification of eligible damageand costs, It si obvious of the damage to these 12 of 50 Pella products in my home. Identification of each individual unit is difficult because they all have the same etching on the windows that look and are built like doors only have Pella coin at top of each window. (see Fig 1, D)

This home was completed in 2004-2005 and I purchased in 2007 and the manufacturer of these windows fall in the 1991-2009 time frame. The windows are aluminum clad wood casement that were custom made specifically for this home so Pella's method of manufacturing Proline crossed over to these poorly designed aluminum clad wood casementwindowswhen they were architecturally planned and ordered from Pella. I noticed an issue back in 2010 but thought it was mold on the paint. Years later it turned out to be rotting from the inside out to the paint where now only the paint is holding it together. (see Fig.4)

Categories and cost of eligible damages. The 6 unit stacked to make one large window (Fig.2,A) has leaked enough over the years to cause damage to the wall beneath the window and cabinet against the window. We have mold and mushrooms growing out of the corner of the bottom of the window next to cabinet inside kitchen. Could be harmful black mold!! I believe the mold to be behind too. will only see extent of damage once removed and replace. I called Pella to get info on what to do about the rot and they said they would have to be replaced. Their Assessment fee would be $250.00 to make a visit. I am worried about the other Pella products now in my home. Only full replacement of these rotten products will help me in this situation. Please, please, grant me some relief.

Thank You,
Sincerely,

Reginald Edwin Bossier 6/13/18

Brasley
3N680 E Laura Ingalls Wilder Rd.
St. Charles, IL 60175

May 30, 2018

Eubank v. Pella Corporation Settlement Administrator
PO Box 404041
Louisville, KY 40233-4041

RE: Objection to proposed settlement

To whom it may concern:

We are objecting to the proposed 25% prorated replacement value of our defective Pella windows. Our home was built in 2003 making them 15 years old so falling into this category. We also are objecting to the limitation on types of windows in the settlement agreement. According to court documents, only casement, awning or transom windows are covered. All of our Pella windows including single hung and double hung were manufactured with the same defective trait that causes water to penetrate between the aluminum cladding and window sash resulting in damage. Therefore arguably these types of windows should be included in the settlement agreement.

Supporting our objection argument due to the percentage of relief at 25% as follows:
1) In purchasing a new home, based on historical data and trends, the average life of window should be close to 30 years. You are depreciating the full value windows at a significantly higher rate for a brand new home at 20 years.
2) Our home is currently not re-sellable at its fully assessed value due to the fact that our home has defective windows that have visible mold and damage. An inspector noted that a new homeowner would likely require the replacement cost of these windows be factored into a reasonable selling price, lowering our home value by roughly $55,000. This is equity lost. We have no other options for financial support to replace our defective windows. We even attempted submitting a claim to insurance, which was denied as insurance companies do not cover product defects or damage related them. We are in need of having to sell our home within the next year and need to have the windows replaced to get the fair market value.
3) Pella has quoted a price for replacement that works in their own profits. We, the homeowners part of the settlement class, should not be paying anything but cost back to Pella or the percentage they are offering needs to be higher, putting their profits back in to that percentage for a zero sum gain to be completely fair. Why should Pella make any profit replacing the defective windows they sold to us back in 2003?

Supporting our objection argument that single hung and double hung windows should be included in the settlement agreement:
These windows were manufactured with the same defect found in casement, awning and transom windows. Excluding these will only result in multiple additional class action lawsuits as they have incurred the same damage found in other types of windows. This appears to be an attempt for Pella to limit their liability. The same detoriation and damage that is a result of

water penetrating between the aluminum cladding and window sash is occurring in these types of windows in our home.

The life expectancy of windows in a custom-built home should be closer to 30 years, not 15 years and we would like to request that the full replacement cost of the defective windows we have submitted be replaced at 100% because of the poor product quality they installed.  I have also enclosed attached a letter from our insurance Company Farmers acknowledging visible water damage to the windows and denying an eligible claim for replacement because the product damage was not caused by an act of nature.

Thank you.

Michael Brasley

Amy Brasley

**Eubank, et al. v. Pella Corporation, et al.**
**U.S. DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS**
**Case No. 06-cv-4481**

<u>**WRITTEN OBJECTION OF CLASS MEMBERS FARRELL AND PEGGY HOCKEMEIER**</u>

Come now Farrell and Peggy Hockemeier, and for their written objection to the proposed Settlement state as follows:

1. That at all times mentioned herein Farrell and Peggy Hockemeier have been the owners of the residence located at 39688 Highway H located in Ray County, Missouri.

2. That the Hockemeiers built this residence in 1995-96.

3. That the Hockemeiers purchased seventy-one new Pella ProLine windows for this residence at a cost of over Thirty Thousand Dollars ($30,000). That the purchase orders and packing lists are included with the claim.

4. That Pella told the Hockemeiers that the ProLine windows were "top-of-the-line" and guaranteed to seal out moisture.

5. That the Hockemeiers' residence began to develop cracks in the stucco in 2003.

6.    That within the warranty period of ten years the Hockemeiers contacted Pella concerning moisture intrusion behind their stucco clad residence.

7.    That Pella ignored the Hockemeiers' complaints,

8.    That the Hockemeiers sent Pella a letter dated August 3, 2005 advising Pella that they believed the Pella windows were leaking water behind the stucco.   This letter is included with the claim.

9.    That when Pella finally sent a representative to examine the Hockemeiers' residence in the fall of 2005 the Pella representative denied that the Pella windows could be responsible for the Hockemeiers' moisture intrusion:  "Pella windows don't leak," he said.

10.    That the Pella representative instead blamed the Hockemeiers' roofer and their stucco company for any moisture getting behind the stucco on their residence.

11.    In fact, Pella knew that their ProLine windows did leak.

12.    However, the Hockemeiers believed the Pella representative and hired roofers to add additional caulk and sealer to the roof of their residence.

13.     That the cracks in the stucco on their residence became more numerous and the substrate beneath the stucco began to rot so that you could push your finger through the stucco.

14.     That the Hockemeiers called and emailed Pella repeatedly requesting Pella to return and examine their residence.

15.     That Pella refused to examine the Hockemeiers' windows unless the Hockemeiers paid Pella $150.  Further, Pella told the Hockemeiers that Pella would not consider their claim since the windows were no longer under warranty.

16.     That the Hockemeiers wrote Pella another letter on November 18, 2011 explaining that their claim should be considered since they had complained to Pella within the original warranty period.  (This letter is included with the claim.)

17.     That Pella responded by letter dated November 30, 2011 that the Hockemeiers' windows were out of warranty and that Pella would not come out and look at the Hockemeiers' windows unless the Hockemeiers paid Pella for the trip and the inspection.  However, Pella advised that a representative would contact the Hockemeiers, but no one ever did.  This letter is included with the claim.

18.    In 2012 the Hockemeiers had to have all their stucco removed from their house and much of the wooden substrate replaced due to water damage and rot.

19.    That the water intrusion was made through the Pella windows. Photographs showing the rot coming from the Pella windows are included with the claim.

20.    That the cost to repair and replace the Pella windows is the sum of $187,101. The estimate of Total Home Remodeling is included with the claim.

21.    That this cost does not include the damage to the old stucco, or the ongoing damage to the new stucco.

22.    That the Hockemeiers have been required to file their claim in this action without knowing how many other claimants there will be, and without knowing the amount of such claims.

23.    That the Hockemeiers believe the Settlement Fund of Twenty-Five Million Dollars will be inadequate to compensate the amount of claims against Pella.

24.    That according to the Settlement Documents, if there is not enough money to compensate the claimants, each claimant will be forced to accept a pro rata share of the available fund.

25.    That it is unfair and unjust to allow Pella to escape responsibility for paying all legitimate claims by requiring claimants to accept a pro rata share.

26.    That these claimants request that the Court delete the requirement of a pro rata distribution from the Settlement Agreement and instead require Pella to pay all legitimate claims in full.


Respectfully Submitted,


6-20-18

Farrell and Peggy Hockemeier, Claimants

## Kent Eubank et al. v. Pella Corporation et al., Case No. 06 C 4481

Kenneth D. (Judy) Andrews

1545 Garfield Avenue

Granite City, Il 62040

618-877-6939

May 15, 2018

To Whom It May Concern:

We are living in our home at 1545 Garfield Avenue where the Pella windows are installed. Eight panes of ProLine casement windows and two double hung windows were installed at same time. I am objecting to the settlement terms because percentage of settlement and the following:

1. Suit was first filled 06-04-2009, our windows were 8 years old at that time. Not 20 years old as they are now. We have been waiting for settlement as we could not afford replacement cost without settlement. We have been waiting 12 years.

2. Window began to show mold and deterioration by the 5th year.

3. For the last 10 years widows could not be opened and closed unless someone on outside guided, pushed or lifted up on the windows while someone inside turned the crank. We fight an ongoing battle with the mold.

4. The 2 double hung windows are still in very good condition. Casement windows should be in same condition since they are all the same age.

5. We have been depraved of the use of the windows as they were designed to work.

6. We are being punished for the slowness of settlement if we are not given money to replace windows. We will not be made whole by settlement without window replacement.

Thank you for your consideration.

Kenneth Andrews
Judy Andrews

**Dr. Sanford Shifrin**
**195 Brighton Drive**
**Aurora, OH 44202**

April 24, 2018

Clerk of the Court
United States District Court for the
Northern District of Illinois, Eastern Division
219 S. Dearborn St.
Chicago, IL 606604

*Eubank v. Pella Corporation* Settlement Administrator
P.O. Box 404041
Louisville, KY 40133-4041

Robert A. Clifford
Clifford Law Offices
120 N. LaSalle St., Suite 3100
Chicago, IL 60602

John P. Mandler
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 S. Seventh St.
Minneapolis, MN 55402

RE:     Sanford Shifrin's objection to class action settlement in
        *Eubank v. Pella Corp. et al.,* Case No. 06 C 4481

To Whom It May Concern,

I am writing to object to the class action settlement in *Eubank v. Pella Corp.* On the date
of my written objection, I own a home with Pella ProLine Casement windows manufactured by
Pella from 1991 to 2009.

I am objecting to this settlement because of the onerous—if not functionally
impossible—nature of the class action claim form. The 12-page claim form (made all the more
complicated by the 12-page, largely indecipherable notice) requires information that reasonable
class members (many of whom are old or infirm) cannot provide, meaning these class members
don't have any real opportunity to test whether they are entitled to class damages.

In keeping with the claim form's objection process, which the form misleadingly
describes as commencing on page 12, when it commences on page 11, I offer the following
specific reasons for my objection:

The claim form's shortcomings begin at Section B. where it requires class members to obtain and study the settlement agreement if they hope to understand their proposed benefits. This section then describes eligible windows. But often (and as in my case) windows have been replaced or are inaccessible due to their height, particularly when in seniors' homes. In both instances, it is impossible to obtain the information required to make a claim, thus rendering the negotiated relief illusory. What's more, lay people are likely unfamiliar with many of the terms contained in the claim form, such as "casement," "awning," "transom window," "aluminum cladding," "finishing," and "window sash." This expected unfamiliarity makes it impossible for me and likely others to properly complete the claim form. Finally, Section B. includes many capitalized words (e.g., "Structure," "Date of Sale," and "Direct Class Notice Date"). It seems these are defined terms yet no definitions appear in proximity to these words' use, thus rendering them unclear to the average class member.

Section C. involves the data-completion process. It requests dollar totals for various, awkwardly worded repairs to windows and sashes, though sashes remains undefined. But instead of requesting accessible dollar figures for these categories, the claim form encourages class members to track down and rely contractors—perhaps from years ago, if even still accessible—and to attach this elusive information. For defective windows not yet repaired, the claim form requires contractor estimates. Of course, if no estimate has been prepared, this section is impossible to complete. This means that class members with such windows do not get to share in the class recovery.

Section D. is perhaps the claim form's most onerous and unreasonable requirement. It requires class members either to scale their (often inaccessible) windows or to recreate or relocate discarded windows to locate and read certain difficult-to-locate language that appears challenging to read even with young eyes. It's not surprise that even the claim form had to offer a blown-up version of two codes seemingly conceding the impossibility of reading them in real life.

Then, despite the number of windows subject to claim, the claim form offers room to describe only two windows' information. But when doing so, the claim form requires such particular and often unattainable information as the notice-of-damage date and whether the undescribed "sash" was damaged. This section also collapses past and present damages into a single and not-understandable line-item inquiry. This section again requires class members to attach documents from elusive contractors, if indeed class members even worked with contractors, class members can reach their contractors, class members' contractors still have the necessary information, and the contractors are responsive when class members requests don't generate income for them.

But if a class member has *more than* two damaged windows (as I do), though the claim form mentions an "ATTACHED 'ADDITIONAL WINDOW FORM,'" no addition window form appears nor does the claim form explain how to obtain one. And even if the claim form did, since this additional window form is not part of the original claim submission, class members would likely not know how to submit it and to relate it to their original claim form.

Next, the claim form requests specific dates of purchase. Often (as in my case), these dates are impossible to reconstruct. It is also largely impossible to know whether some or all windows were damaged on the same date, as the claim form requires class members indicate.

Finally, Section E. requires photos of damaged windows. But this is necessarily impossible when windows have been replaced. The claim form also requires documents demonstrating repairs. But often these documents are destroyed since class members had no reason to save them for a claims process. And for not-yet-replaced windows, the claim form requires detailed, signed, and sworn statements from often elusive and uncooperative contractors.

The best support for my objection, which I base on the notice's and claim form's onerous requirements and incomprehensibility, are the notice and claim forms themselves. I submit that even experienced lawyers can make little sense of these documents. If the purpose of a notice-and-claims process is to explain a class action settlement and to encourage claims, these documents do not achieve that. I struggled mightily to understand the notice and to complete the claim form and finally gave up from their sheer impenetrability and complexity. As hard as I tried, I was simply unable to make my claim. This is not how a class action notice-and-claims process should work, and it is precisely not the outcome that the claims process should encourage.

For all these reasons, I respectfully request that the Court deny final approval of this class action settlement and appoint new counsel and a new claims administrator to more mindfully fashion a notice-and-claims process that will promote the purpose of class action settlement, which is to provide meaningful relief to class members.

Dated: April 24, 2018                         Very truly yours,

                                              Dr. Sanford Shifrin



US POSTAG
$ 00.4.

Mailed From 44113
04/25/2018
031A 0004192170

CLEVELAND
OH 440
PM 7 L

Dr. Safaed Rifin
195 Brighton Dr.
Aurora, OH 44202

RECEIVED
APR 8.8 2018
BY

Eubank v. Pella Corp. Settlement Ad...
P.O. Box 404041
Louisville, KY 40233-4041

40233-404141