**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____

KENT EUBANK, JERRY DAVIS,
RICKY FALASCHETTI, RITA CICINELLI,
ROBERT JOSEPHBERG, JEFFREY ACTON,
KENNETH HECHTMAN, JAMES NEWMAN,       No.: 06 C 4481
AMY CHASIN and EDWARD RUHNKE,
individually and on behalf of all others          Hon. Sharon Johnson Coleman
of all others similarly situated;
                                                                    Class Action
                                   Plaintiffs,

v.

PELLA CORPORATION, an Iowa corporation,
and PELLA WINDOWS AND DOORS, INC., a
Deleware Corporation

                                   Defendants.
_____

---

**DONALD TUCKER'S REPLY IN SUPPORT OF OBJECTION**

---

i

## TABLE OF CONTENTS

I.     Class Counsel Continue to Mislead the Court. ................................................. 1

II.    Tucker was Not Paid or Promised $5,000. .................................................... 1

III.   The Apparent 1% Claims Rate, Lower than the Last Settlement, Does Not
       Mitigate Notice Defects. ....................................................................... 4

IV.    A Substantial Majority of the Class Was Inadequately Represented. ........................ 8

V.     The Clear-Sailing Provision Coupled with the Segregation Clause Warrants
       Disapproval. .................................................................................. 10

VI.    Class Counsels' Take It or Leave It Approach is Not Consistent with Rule 23. ........ 11

CONCLUSION .................................................................................... 12

CERTIFICATE OF SERVICE .......................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Cradduck*, No. 5:13-CV-5074, 2015 WL 12915102 (W.D. Ark. Aug. 21, 2015)............ 7

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., No. 07 CV -2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ........................................................................................................................... 9

*Eubank v. Pella*, 753 F.3d 718 (7th Cir. 2014) ......................................................................... 5, 6

*Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2013 WL 3814474 (N.D. Cal. July 22, 2013) ........................................................................................................................................ 5

*Hensley v. Eckerhar*t, 461 U.S. 424, 433-34 (1983); *Harper v. City of Chicago Heights*, 223 F.3d 593 (7th Cir. 2000)...................................................................................................................... 10

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)............................. 11

*In re Daou Sys., Inc., Sec. Litig.*, CIV. 98CV1537LAJB, 2008 WL 142377 (S.D. Cal. Jan. 14, 2008) ........................................................................................................................................ 6

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013)....................................................... 9

*In re Southwest Airlines Voucher Litig*., 799 F.3d 701 (7th Cir. 2015)........................................ 1

*In re TJX Cos. Retail Sec. Breach Litig*., 584 F.Supp.2d 395 (D. Mass. 2008)............................ 5

*Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) ........................................................................... 11

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006).................................................... 9

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).......................................................... 1, 11

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ...................................................... 1

*Rubio-Delgado v. Aerotek, Inc.*, No. 13-CV-03105-SC, 2015 WL 3623627 (N.D. Cal. June 10, 2015) ........................................................................................................................................ 5

**Rules**

FED. R. CIV. P. 23 ....................................................................................................................... 12

## I.     Class Counsel Continue to Mislead the Court.

Class counsel previously misinformed the Court by claiming the proposed settlement does not include a clear-sailing provision. Dkt.688, at 19, 22-23. That is not true. It does. Dkt. 672-1, at 33, § 6.02.[1] Significantly, their false assertion allowed them to distinguish similar arrangements rejected by the Seventh Circuit. Dkt. 688, at 19, 22-23 (claiming this settlement does not include a clear-sailing provision, unlike *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015), *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), and *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014)).[2]

Class counsels' response to Donald Tucker's objection depends on a similar distortion of facts to accommodate argument. Class counsel take a snippet of Tucker's testimony and claim he was paid $5,000 to object to the settlement. Dkt. 735, at 41. That also is not true. It is not consistent with Tucker's attorney-client representation agreement, which class counsel had in their possession when they made the false representation. *See* Exhibit A, attached hereto. And it is not supported by Tucker's deposition testimony when read in context.

## II.    Tucker was Not Paid or Promised $5,000.

Tucker's signed attorney-client representation agreement specifies that any compensation up to $5,000 may come as an incentive award from the court or payment from class counsel or defendant in relation to his services as an objector. Ex. A, at § 3.2. Nowhere does it contemplate payment from Tucker's counsel as consideration for objecting to the settlement. Further, the

---

[1] "Defendants will not object to or oppose an aggregate and total recovery of up to and including nine million U.S. dollars ($9 Millions) for all attorneys' fees, costs, expenses, and disbursements incurred." Dkt. 672-1, at 33.

[2] Considering class counsels' lack of candor on the clear-sailing provision, their bravado on confusing Tucker about this provision during his deposition is troubling. Dkt. 735, at 42.

agreement specifies that "[n]o incentive award or payment has been promised to you, and your service as an objector in this case is not conditioned on your receipt of any incentive payment or award." *Id*. at § 3.2.

Tucker's testimony, read in context, is consistent with the agreement. Tucker did not recall the details of the representation agreement because he was more concerned with the unfair settlement than recouping any fee.

A. Whether or not the agreement I have with Mr. Bandas is a contingent fee?

Q. Yeah.

A. Is that what the question was?

Q. That's right.

A. The reason why I'm hesitating is because also, I don't think I know. I don't remember, because the fee arrangement wasn't that important to me. What was important to me was making sure that I came forward and assisted other members of the class who weren't getting the same benefits as others. So the money -- I don't know. I don't know if it's contingent fee. I don't know if it's some other fee. I don't know. It doesn't really matter to me.

Dkt. 735-5, at 181.

Nevertheless, Tucker believed any payment would be similar to an incentive award, which would be awarded in the event of a successful objection. *Id.* at 182. Tucker misunderstood that such an award would come from the same pool as counsels' fees, but conceded he did not recall the particulars of the agreement. *Id.* at 181. The agreement makes clear that any fees to counsel are separate from any incentive awards or payments to the objector. Ex. A, at § 3.1. There is simply no truth to the class counsels' claim "that Tucker's involvement as an objector was bought by Bandas with a promised payment of $5,000.00." Dkt. 735, at 41.[3]

---

[3] Class counsel also call into question Tucker's role as an objector because of one of his attorney's representation of Michael Schulz in objecting to the prior settlement. Dkt. 735, at 43. Yet, as class

Q. You expect that Mr. Bandas will be paid from proceeds you receive in this case or you pay him hourly?

A. In my agreement, I think that there is proposed compensation of $5,000. That number seems to stick in my head, *similar to a class rep fee*.

Q. Okay. And you would -- you personally would pay him that $5,000?

A. No. He would pay me 5,000 out of his money to assist in objecting to the settlement, *similar to a class rep*.

Q. Okay. I see. To date, have you received any payment from Mr. Bandas?

A. No.

Dkt. 735-5, at 182 (emphasis added).

Thus, Tucker recognized any payment would be along the lines of an award to a class representative after prosecution of the objection. Class counsel knew as much because they followed that questioning by asking if Schulz "has a similar service award, the same as you have with Bandas?" Dkt. 735-5, at 184. The idea counsel recruited Tucker through a claimed $5,000 promise is also belied by the fact that Tucker reached out to Mr. Bandas, and not *vice versa*. *Id.* at 68-69. Tucker was incensed that he would recover only 25% because of the delay caused by prior class counsel and Pella advocating in favor of the prior sham settlement . *Id.* at 69. In fact, he wrote two or three drafts of an objection to the settlement himself before even contacting Bandas. *Id.* at 67, 72-73; *see also* Exhibits 7 to Transcript of the Deposition of Donald Tucker, a true and correct copy of which is attached hereto as Exhibit B.

Further, while class counsel paint Tucker as a self-interested objector, he repeatedly described his concern with the inequities of the settlement:

---

counsel note, Schulz and Tucker waived any potential conflict. *Id.* (citing Dkt. 735-5, at 55-57). Further, no conflict exists because both objectors share a mutual interest in obtaining the best settlement possible.

Q. Do you understand that there are class members who really are depending on the relief afforded by this settlement?

A. I know that probably one-third of the class is looking for it, but you know what my concern is is that there are a lot of people out there who are not getting benefits.

Q. Well, a moment ago, you told me that it was you that you were concerned about.

A. I never said that it was just me that I was concerned about. I'm concerned about the other 650,000 people that won't be submitting claims. I'm concerned about my neighbor, who I -- who I've offered to assist in filling out the claims form, and they said, for what, 400 bucks? I'm concerned about my friend who lives in Lancaster, New York, who says why am I going to fill out this claim form, it's going to take me more time than it's worth. Those are the people that I'm concerned about. I just don't care about myself.

*Id.* at 136.

Q. Is it your position that the parties in this case have created a selfish deal?

A. Yes.

Q. And how so?

A. Because I think the defendant is paying a lot less than they should be paying in order to settle this case. I think the attorneys are getting a lot more than they should be, if the settlement numbers are what I may think they will come out to be. I think the class representative getting $25,000 is ridiculous. That's selfish. So yeah, I think there's a lot of indications that this is a settlement that benefits everybody but the class.

Q. You've never worked on a case like this, right? Right?

A. Do I have to in order to understand the settlement?

*Id.* at 154-155.

### III. The Apparent 1% Claims Rate, Lower than the Last Settlement, Does Not Mitigate Notice Defects.

The parties scoff at Tucker's reliance on claims data showing just 1,600 claims had been filed as of May 21, 2018. Dkt. 695, at 1, 4 (citing Dkt. 688, at 13). Those figures, presented by class counsel, were the only ones available to class members at the June 20, 2018 objection and

claims deadline. Dkt. 688, at 13. Tucker's extrapolations from class counsels' numbers were thus reasonable.

10,000 claims were ultimately filed because of "a high volume of claims near the end of the claim filing period[,]" Dkt. 735-1, at 3. Of course, "KCC has not yet reviewed the validity or sufficiency of these claims or the dollar amount." Dkt. 735-1, at 4. But even at 10,000 claims, just 1% of the 743,000 class members filed claims.[4] That is significantly below typical claims rates in consumer class actions. *See Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2013 WL 3814474, at *4 (N.D. Cal. July 22, 2013) (discussing "the prevailing rule of thumb" for claims rates "with respect to consumer class actions is 3-5%"); *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F.Supp.2d 395, 404 (D. Mass. 2008) ("It is not unusual for only 10 or 15% of the class members to bother filing claims."). **It is even lower than the claims rate for the previously rejected settlement, which produced 12,163 claims in total**. *Eubank v. Pella*, 753 F.3d 718, 726 (7th Cir. 2014) (total of 12,163 claims filed, including 1,276 claims initially filed, 9,500 simple claims filed after final judgment, and another 1,387 requiring arbitration).

The fact that the parties are now discussing a *pro rata* reduction of settlement benefits based on the 1% claims rate reveals they anticipated an absurdly low claims rate to arrive at their estimated per-claimant recovery. Stated another way, they were *counting* on a low turnout. To the extent a *pro rata* reduction is required, the vague and confusing notice allowed the parties to inflate benefits for purposes of settlement approval and attorneys' fees. *Cf. Rubio-Delgado v. Aerotek, Inc.*, No. 13-CV-03105-SC, 2015 WL 3623627, at *7 (N.D. Cal. June 10, 2015) (denying approval where parties sought "to inflate the appearance of an adequate *pro rata* settlement amount"). On

---

[4] 10,004 is 1.3% of the estimated 743,000 class members. Dkt. 688, at 12-13.

the other hand, as Tucker previously noted, to the extent funds remain in Fund A, Pella benefits through reversionary dollars. Dkt. 672-1, at 25, 32. In either case, Tucker was right, the class did not receive the best notice practicable.

Class members should have been informed in a way that alerted them that they were likely members of the settlement class. Instead, the notice vaguely described that "Current or former owners of homes or other structures with Pella ProLine Series aluminum clad wood casement, awning, and/or transom windows, manufactured between 1991-2009, may be affected by a class action settlement." It's fantasy to believe an average home owner would recognize he or she is a member of the class from that language. Tucker doesn't need to cite evidence to support the obvious fact that most home owners do not know the brand names or models of windows in their homes.

As Tucker noted, the notice and claim form share many of the defects Judge Posner identified in the prior settlement. The long form notice (Dkt. 672-3) is pages of confusing descriptions of recoveries. *See In re Daou Sys., Inc., Sec. Litig.*, CIV. 98CV1537LAJB, 2008 WL 142377, at *2 (S.D. Cal. Jan. 14, 2008) ("The ability of potential class members to understand what they can expect from the settlement is critical to their decision whether to … submit a claim."). It actually contains more sections (30) than the last (27), which Judge Posner already believed was excessive. *Eubank*, 753 F.3d at 726.

Similar to the prior deal, "the modesty of the settlement," with at least half of the class receiving 25%[5] or less with a *pro rata* reduction, "and complexity of the forms[,]" resulted in an unduly small portion of the class seeking settlement benefits. *Id.* Tucker completed a twelve page

---

[5] Pella admits that "a substantial majority of the claims amount will likely relate to ProLine Casement Windows older than 15 years, and only be eligible for 25% recovery." Dkt. 732, at 22.

form (the same length as the rejected settlement claim form from the prior settlement, *Id.* at 725), submitted a contractor's estimate, and attached a number of photographs supporting his claim. Dkt. 695-5, 695-5. For that, he was met with a harassing deposition[6] during which class counsel badgered him over unrelated matters such as the names of his employer's clients. Dkt. 735-5, at 26-29, 65. Even now, class counsel attack him for not being able to distinguish in his claim form that not all twenty-two windows in his home were casement windows. Dkt. 735, at 42. Tucker did not concede he "does not have twenty-two windows" or that he "only has two Pella windows, at most." Dkt. 731, at 42. Rather, he conceded that not all twenty-two windows were casement windows as discussed by class counsel during the deposition. Dkt. 735-5, at 138-41. Of course, class counsel neglect to mention that the two windows which he identified as having eligible damage in the claim form, are in fact, Pella ProLine Casement Windows. With that sort of reception to claims, it is no wonder 99% of the class chose to forego the settlement altogether.

Otherwise, class counsels' response doesn't defend the verbiage in the notice, but turns its attention to Tucker's knowledge of the facts of one of the twenty-eight opinions cited in his objection, *Adams v. Cradduck*. Dkt. 735, at 41. Less important to class counsel are the principles in *Adams* demonstrating the failings of the notice here. As in *Adams*:

> the notice of settlement … itself is designed to discourage disbursement to putative class members. The identities of the putative class members are known, which is how addresses for the notice were selected in the first place. Yet, it isn't until several paragraphs into the notice that putative class members are informed that they *might* qualify for class membership…. Rather than seeking to immediately and clearly inform putative class members that they are entitled to settlement funds unless they opt out, the notice buries this simple fact in a jumble of legalese.

*Adams*, No. 5:13-CV-5074, 2015 WL 12915102, at *3 (W.D. Ark. Aug. 21, 2015).

---

[6] Tucker urges the Court to read the entirety of the deposition to get a sense of how little of class counsels' questioning was actually directed at the *bona fides* of his objection. Dkt. 735-5.

Class counsel also portray Tucker as uniformed for not having read certain documents. Yet, he testified he read the class notice, the Seventh Circuit's opinion rejecting the prior settlement, most of the order granting preliminary approval, the opposition to Pella's motion for summary judgment, other objections filed in the case, and a number of other docket entries. Dkt. 735-5, at 109-10. Further, as noted, Tucker himself drafted several versions of an objection himself. The irony of class counsels' argument is their own response carelessly operates under the mistaken belief that they are still seeking preliminary approval of the settlement. Dkt. 735, at 15-19 (setting for the standard for preliminary approval, and discussing the factors "at this preliminary approval juncture").

Similar notice and claim form defects identified by Judge Posner in the last settlement, as well as those mentioned in *Adams*, call for rejection of the settlement. As it stands, 99% of the class takes nothing while the 1% ostensibly take even less than they anticipated because somewhat more members than the absurdly low estimate participated in the settlement.

**IV.    A Substantial Majority of the Class Was Inadequately Represented.**

Class members like Tucker with windows with a date of sale before March 22, 2003 receive just 25% (or less) of what other members receive thanks to "eight largely wasted years" at the hands of prior class counsel and Pella. *Eubank*, 753 F.3d at 721, 729. Tucker would not be penalized with a 25% share relative to other members had the same settlement been presented initially. Neither class counsel nor Pella can explain why these members should be saddled with the weight of the delay caused by Pella and prior class counsel. Meanwhile, it is worth mentioning that the $23.5 million Fund A is around the same value that Pella estimated for the last settlement, which was $22.5 million. *Pella*, 753 F.3d at 726.

Pella believes class members like Tucker should just be thankful for the years they "enjoyed" their windows. Dkt. 732, at 20. Like many others, Tucker did not receive fifteen years

of service. Dkt. 634, at 4 (class counsel noting the "windows were designed so as to result in premature rotting of the wood components, reducing the windows useful life to as little as three to five years"). His windows were already rotting at the time of the last settlement in 2014. The windows were supposed to stop water from entering his home, but the Pella windows in Tucker's family room leaked water under the carpet and pad to the subfloor. When Tucker had hardwood floors put in earlier this year, he could see water stains on the sub floor below the window where it was warped.

Otherwise, there is no sound explanation for allocating any residual funds from Fund A to Pella first before the under-reimbursed class members like Tucker, or for excluding these class members from Fund B. Dkt. 672-1, 11-12, 25, 31-32. Class counsel do little to dispute that the $25,000 representative award clouded the judgment of representatives in this group. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006). That award is *five times* the amount most representatives received in the last settlement. And, in the aggregate, it is around 1% of the gross fund, which is far above the mean incentive award. *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV -2898, 2012 WL 651727, at *17 (N.D. Ill. Feb. 28, 2012).

According to class counsel, Tucker does not know what the representatives went through, even though he already sat for a harassing deposition, responded to written discovery, drafted several versions of an objection, had an inspection completed, prepared the claim form, and agreed during deposition to allow inspection of his home. Regardless, the class representatives' awards are clearly disproportionate, and class counsels' vigorous defense of them demonstrates the role these funds played in swaying the representatives' decisions.

Class members like Tucker, who are punished because of delay caused by Pella and former class counsel, have not received adequate representation under the present proposal. In its current form, the settlement should not be approved.

## V. The Clear-Sailing Provision Coupled with the Segregation Clause Warrants Disapproval.

Caught in their deception, class counsels' response makes little mention of the clear-sailing provision. So, Pella is left to defend it. That alone speaks to the troubles accompanying this type of provision. In fact, Pella actually argues, subtly, in favor of class counsels' proposed $9 million fee. Dkt. 732, at 34. According to Pella, "a conservative estimate of the contemplated attorneys' fee as a percentage of total recovery is less than 30%." Dkt. 732, at 34. Pella calculates the $9 million as a 28.1% recovery (Dkt. 732, at 34), but generously fails to exclude class administration expenses that come out of Settlement Fund A. Dkt. 672-1, at 16. *Compare with Redman*, 768 F.3d at 630 (instructing district courts that the "ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received").

Knowing they would receive no resistance from Pella, class counsel didn't even submit their lodestar in such a manner to allow the Court to "exclude … hours that are excessive, redundant, or otherwise … unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *Harper v. City of Chicago Heights*, 223 F.3d 593 (7th Cir. 2000). They provided no breakdown of how they accumulated their time, precluding the Court from purging unnecessary hours.

Although clear-sailing provisions are not *per se* unlawful, we know the "defendant won't agree to a clear-sailing clause without compensation—namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider." *Redman*, 768 F.3d at 637. Worse, the parties have structured the settlement so that any

reduction in fees will not benefit class members like Tucker who receive just 25% relative to others' recoveries. Dkt. 672-1, at 16; *see also* Dkt. 688, at 20 (claiming the fee award "will only impact defendants—and not class members"). Judge Posner specifically identified this as a "questionable provision" in the last settlement, yet the parties nevertheless included it again. *Eubank*, 753 F.3d at 723. In the context of a class action settlement, this provision serves to shield class counsels' fees from scrutiny, and is nothing more than "a gimmick for defeating objectors." *Pearson*, 772 F.3d at 786; *but see Martin v. Reid*, 818 F.3d 302, 309 (7th Cir. 2016) (suggesting segregation is "to be encouraged" without addressing *Pearson*, *Redman*, or *Eubank*).

Of course, as with every class action, class counsel claim they negotiated the benefits to the members first, "selflessly leaving for any later consideration of or negotiation for their award of attorneys' fees." *Pearson*, 772 F.3d at 786. According to the Seventh Circuit, however, "[t]hat claim is not realistic." *Id*. Further, "the mere presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, it not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 948 (9th Cir. 2011). "[T]he Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Id*. The fact that Pella is actually attempting to justify the $9 million fee speaks volumes to the role it played in securing the settlement.

**VI.    Class Counsels' Take It or Leave It Approach is Not Consistent with Rule 23.**

Class counsels' fallback position is objecting class members who don't like the latest settlement should have just opted out and initiated their own actions rather than objected to the latest settlement. Yet, they previously acknowledged that "not many consumers could afford to replace rotting windows, and instead, were waiting for this litigation to conclude." Dkt. 688, at 14.

11

The idea that the Court should just disregard objections because the class members were not forced to participate in the settlement is antithetical to Rule 23, which permits class members to remain in the class and lodge objections to proposed settlements. FED. R. CIV. P. 23(e)(5). Class members are not required to choose between participating in the settlement and voicing dissension under Rule 23.

## CONCLUSION

Class counsels' continued efforts to mislead the Court should be rejected. Tucker was not paid to object. He firmly believes the proposed settlement is inherently unfair in punishing him and other class members for the "eight wasted years" caused by Pella and class counsels' prior "scandalous" settlement. The fact that so few class members bothered to file claims, even fewer than before, demonstrates that the silent majority feels the same.

For years, Pella has known that these windows are defective and caused wood rot. Dkt. 634, at 4. And for years, they have avoided liability, in part due to the prior collusive settlement. The Court should reject the latest arrangement which rewards that delay and unfairly punishes members like Tucker with a date of sale before March 22, 2003. Alternatively, fees should be substantially reduced as set forth in Tucker's objection.

DATED: August 30, 2018                           Respectfully submitted,

                                                 /s/ *Jonathan P. Novoselsky*
                                                 Johnathan P. Novoselsky
                                                 Jonathan Novoselsky, P.C.
                                                 303 W. Madison, 22nd Floor
                                                 Chicago, IL 60606
                                                 312-286-8429
                                                 872-228-8085 - fax
                                                 ***Attorney for Objecting Class Member Donald Tucker***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that today he filed the foregoing Reply and associated exhibit on

ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED:  August 30, 2018

/s/ *Jonathan P. Novoselsky*
Johnathan P. Novoselsky

# EXHIBIT A

## CLASS ACTION OBJECTOR
## POWER OF ATTORNEY AND CONTINGENT FEE AGREEMENT

This agreement ('Agreement') is made between DONALD J. TUCKER ("Client(s)" or "you") and BANDAS LAW FIRM, P.C. (hereinafter "Attorneys" or "BLF").

In consideration of the mutual promises contained herein, Client(s) and Attorneys agree as follows:

1. **SCOPE AND METHOD OF REPRESENTATION**

   1.1 **Attorneys' Legal Services.** You agree Attorneys will: Prepare and file on your behalf an objection to proposed class action settlements in the following matter and represent you in any appeal there from (the "Objection"): *Kent Eubank et al. v. Pella Corporation et al.*, Case No. 06 C 4481; U.S. District Court, Northern District of Illinois, Eastern Division.

   1.2 **Method of Representation.** BLF is a Texas law firm located at 500 N. Shoreline, Suite 1020, Corpus Christi, Texas 78401, (361) 698-5200. Our lawyers are licensed in Texas and in certain federal courts. However, if necessary, Attorneys will seek admission before the Court *pro hac vice* and/or as required by the applicable federal and/or state and/or local rules of practice applicable this litigation and/or will seek to associate local counsel in order to effectuate this representation in compliance with any such rules. Client authorizes that Attorneys prepare any Objection(s) for filing with the Court and, if necessary, any appeals there from.

   1.3 **Purpose of Representation:** As a member of the above referenced class, your legal rights are affected by the proposed settlement in that case. As a class member, you have the right to comment and object to the proposed settlement as prescribed by the Court in the notice of proposed class action settlement and Rule 23 of the Federal Rules of Civil Procedure. As a class member, you have the right to seek legal advice and have a lawyer represent you with respect to making any comments or objections to the proposed settlement. You acknowledge that, prior to the execution of this agreement, you contacted me seeking legal advice about your rights and options as a class member. You further acknowledge the following: (1) that you were not solicited by me or any other lawyer; (2) you have not been paid or promised any money, incentive or any other consideration to assert your rights as a class member with an interest in the proposed settlement; and (3) you authorize the disclosure of this fee agreement to the Court or any counsel in the case if requested.

   1.4 The scope of our representation is limited. Although we will craft the legal arguments used in your objection, and handle the logistics of filing the objection, Bandas Law Firm will not make an appearance in the district court and your objection may be submitted without oral argument at the fairness hearing. You understand and agree that this might affect the chances that the district court

will approve a settlement or fee request over your objection. In the event of adverse decisions that we believe raises meritorious appellate issues, we will file a notice of appeal on your behalf, and either make an appearance or retain an attorney to make an appearance in appellate proceedings.

2.  **YOUR REPRESENTATIONS AND DUTIES AS AN OBJECTOR**

2.1   You represent that you are a member of the proposed settlement class based upon your review of the class definition contained in the class notice you have reviewed at the following website:
www.pellawindowsettlement.com

2.2   If requested, you represent you can demonstrate you are a member of the settlement Class through documentation or by affidavit.

2.3   Subject to the limitations in Paragraph 3.3 below, in return for your agreement and representations made herein, attorneys agree that no settlement or resolution will be made of your objection or any appeal there from without your prior approval and you shall retain the right to determine whether to proceed with this objection or any appeal there from, including the right to approve any settlement or resolution of same.

3.  **ATTORNEYS' FEES, EXPENSES AND PAYMENTS TO YOU**

3.1   **Class Action Settlement:** If the proposed class action settlement is approved by the Court, you will receive the full amount of any benefits you are entitled to receive under the settlement as a class member (If a Claim is required you will usually need to file a claim to receive benefits; Attorneys may assist you in filing a claim, but they are not required to do so). Attorneys shall not be entitled to receive any portion of your share of the benefits under the class settlement and have no interest in any benefits you may be entitled to receive as a class member. You understand that by objecting to this particular settlement you may make your receipt of benefits under this particular settlement less likely in the event a court rejects the settlement based upon the arguments asserted by Attorneys on your behalf.

3.2   **Incentive Award or Payment:** Attorneys may petition the Court for a payment to you, or may ask class counsel or defendant(s) to make a payment to you, in recognition of your service as an objector and/or for other factors related to your service as an objector. This is referred to herein as an Incentive Award or Incentive payment. You understand any incentive award or payment sought will never exceed $5,000. You understand that it cannot be determined with certainty in advance whether you will qualify for an incentive payment or award at all. You understand that Attorneys must follow all applicable laws and rules (including but not limited to seeking court approval, if applicable) as it may apply to incentive payments and awards, and such laws and/or rules may prevent or limit Attorneys' ability to obtain such an incentive award or payment for you. No incentive award

or payment has been promised to you, and your service as an objector in this case is not conditioned on your receipt of any incentive payment or award. In the event an incentive award or payment is not made, you will receive only the benefits set forth in section 3.1, if any.

3.3 **Attorneys' Fees:** You will not be responsible to pay attorneys' fees or expenses of any kind. Attorneys are not sharing any portion of your recovery under paragraphs 3.1 or 3.2 above, if any, and Attorneys have no contingent interest in your recovery under paragraphs 3.1 and 3.2 above. You agree Attorneys may seek and/or receive a fee for their services if they are successful in pursuing an objection to the class settlement or any appeal there from if agreed to by opposing counsel and/or awarded by the Court, subject to applicable rules and laws. The attorneys' fees will be paid by the defendants and/or as part of the attorneys' fees awarded to class counsel and/or by award of the Court, and never from your portion of any recovery or settlement under paragraphs 3.1 or 3.2. You acknowledge you do not have any interest in any such fees, if any. You further acknowledge the attorneys' fees may substantially exceed any awards or payments to you as set forth above in Paragraphs 3.1 through 3.2. You further acknowledge that Attorneys may seek and/or receive fees either through application to the Court and/or as a negotiated amount. Client acknowledges that Attorneys shall have the right to seek and/or compromise any attorneys fees independently of Client. Co-counsel Joe Kasouf will be entitled to 20% of any attorneys' fees recovered, and the Bandas Law Firm will be entitled to 80% of any attorneys' fees recovered.

## 4. CONFLICTS OF INTEREST

Attorneys have explained and you understand that, if successful, the objection or any appeal there from may result in the disapproval or rejection of the proposed settlement which may, in turn, cause you to lose your right to receive settlement benefits under the proposed settlement, to which you object. You acknowledge and agree to this risk and waive any conflict of interest arising from the objection or any appeal there from.

## 5. ADMINISTRATIVE MATTERS

5.1 **Termination:** Attorneys reserve the right to withdraw from this matter if you fail to honor this Agreement or for any reason permitted or required under the rules of the court or state in which the class action is pending.

5.2 **Association of Co-counsel:** Attorneys may associate lawyers apart from those with Bandas law Firm, P.C. to assist in representing you if, before any association becomes effective, you agree to the terms of the arrangement including (1) the identity of all lawyers or law firms involved, (2) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and (3) the share of the fee each lawyer or law firm will receive, or if the division is based on the proportion of services performed, the basis on which the division will be made.

5.3    **No Guaranty of Results:**  Attorneys will use their best efforts in representing you in this matter, but we cannot guarantee the outcome of any given matter.  You acknowledge Attorneys have made no promises or guarantees concerning the outcome of this matter, and nothing in this agreement shall be construed as such a promise or guarantee.

5.4    **Entire Agreement:**  This Agreement contains the entire agreement between us regarding this matter and the fees, expenses and payments relative thereto.  This Agreement shall not be modified except by written agreement signed by both parties.

       I certify and acknowledge that I have had the opportunity to read this Agreement, that I have voluntarily entered into this Agreement fully aware of its terms and conditions, and that I have received a copy of this Agreement.

       Signed and accepted on this _25th_ day of May, 2018.

**Client(s):**

_____

Donald J. Tucker

**Attorneys:**

_____

Christopher A. Bandas

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KENT EUBANK, JERRY DAVIS,
RICKY FALASCHETTI, RITA CICINELLI,
ROBERT JOSEPHBERG, JEFFREY ACTON,
KENNETH HECHTMAN, LEO BATEMAN,
JAMES NEIMAN, AMY CHASIN and
EDWARD RUHNKE, individually and on behalf
of all others similarly situated; Plaintiff,

No.: 06 C 4481

Honorable James B. Zagel

v.

PELLA CORPORATION, an Iowa corporation,
and PELLA WINDOWS AND DOORS, INC.,
a Delaware corporation, Defendants.

## NOTICE OF OBJECTION TO CLASS SETTLEMENT

**NAME:**    Donald J. Tucker, Esq.
            "Objector"

**ADDRESS:**    226 San Fernando Lane
                East Amherst, New York 14051

### FACTS

Objector currently owns the home located at 226 San Fernando Lane, East
Amherst, New York 14051. The home was built for Objector by Marrano Homes
over the course of six months from April to October 2001. A deed conveying the
premises was filed in October 2001 and recorded in the Erie County Clerks office.
Objector is the original owner of the home and has maintained continuous
ownership and possession to the current date.

When built by Marrano, approximately 22 Pella casement windows were
installed in the home. Currently, 2 of the 22 windows are experiencing failure as
depicted in the attached photographs.



1





Pella
1 GCC CBA
1 GMAC HS
CIG-2 2-01





Pella
1 GCC  CBA
1 GMAC  HS
CIG-2  1-01

The damage was first discovered in its minor form prior to when the initial Class Settlement notice was sent in 2012. At that time, Objector printed the claim form packet and began to prepare the document for claim submission. However, for precisely the reasons set forth in *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), Objector reluctantly aborted his claim out of pure frustration with the complexity of the form in relation to the minimal compensation contemplated in the settlement.

Objector received his current Notice of Class Action settlement in the mail on Tuesday, March 27, 2018. After reviewing the terms of the settlement contained in the Settlement Agreement, Detailed Notice of Settlement and other documents, Objector is challenging the settlement's fairness on behalf of those members of the class as follows:

> Any member of the class for Eligible Damage to or from a window that has not been repaired or replaced and involves a Window with a Date of Sale that is more than 15 years *before the Direct Class Notice Date* entitled to receive 25% of the actual expenses necessary to repair or replace the four categories of costs.

### Point 1

### The Settlement is Unfair to Class Members with A Date of Sale before March 22, 2003

Under the current terms of the settlement, any Class Member with a Date of Sale prior to March 22, 2003 is only eligible for a 25% award of the actual expenses necessary to repair or replace the window(s). In effect, these Class Members are being penalized 75% of their recovery due solely to the delays brought about by the flaws, errors and appeals precipitated by the initial 2011 settlement. Had the current settlement been reached in 2011, Objector would be entitled to the full replacement cost of the shoddy windows manufactured by Defendant. Instead, Objector is able to recover a fraction of the cost based on what the 7th Circuit described as "eight largely wasted years" that culminated in a settlement that was "inequitable" and even "scandalous."

4

Objector and those similarly situated should not be prejudiced by the acts of prior Class attorneys and defense counsel who orchestrated a sham settlement that inured to their benefit but disfavored the economically damaged class. The fact Defendant was complicit in advancing a settlement that resulted in meager benefits to the Class, unjust compensation to Class counsel and a likelihood that Defendant would pay only a fraction of the claims it faced should not allow Pella to reduce its exposure to Objector in the current settlement.

The prior illusory and fraudulent settlement reached by Class counsel and Defendant only emphasized the extent of overreaching engaged in by Pella to minimize its indemnity payments to injured customers. Knowing that Class counsel was in a precarious ethical posture and may forfeit enormous fees without an expedited resolution, Defendant knowingly used this leverage to conspire with the attorney to reach an agreement they assumed would be approved without scrutiny. The *Eubank* court noted as much when it said:

> The disciplinary proceeding against Weiss was already under way when the settlement agreement was negotiated. It was very much in his personal interest, as opposed to the interest of the class members, to get the settlement signed and approved *before* the disciplinary proceeding culminated in a sanction that might abrogate his right to share in the attorneys' fee award in this case. He could negotiate a quick settlement only by giving ground to Pella, <u>which upon discovering the box that Weiss was in would have stiffened its terms (it plays hardball, as its conduct throughout this litigation has demonstrated).</u>

As noted by the Court, Pella did not come to the settlement table with clean hands looking to arrive at a resolution that was fair and just. Instead, it took advantage of a situation negotiating terms favorable to its financial interests thereby making itself an accomplice to a fraud advanced on the Court and the Class. When the Appellate Court finally flushed out the scheme, several more years were wasted which is now being used by Defendant to trim the size of the Class entitled to a full recovery.

Objector and those similarly situated should not be penalized by the delays resulting from the untoward conduct of prior counsel acting in concert with Defendant. Just as fraud tolls the statute of limitations until its discovery, the period of years since

2014 until now should also be tolled bringing Objector within the time period to receive full reimbursement to replace his faulty windows.

In New York, CPLR 213(8) states as follows:

> An action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or with reasonable diligence could have discovered it.

The statute prevents injustice to unwary Plaintiffs who learn of a party's fraud after the limitations period has expired. The circumstances of the instant case are no different. While former Class Counsel and Defendant orchestrated a scandalous and fraudulent settlement that only benefited themselves, class members were deceived into believing that a $90,000,000 or $31,000,000 settlement was reached providing substantial benefits---only to be presented with a 27 page claim form calculated to foster noncompliance. Class Counsel and Defendant knew how to limit the number of claims and provide a windfall for themselves. And, the devious plan would have worked if the court did not expose fraud's ugly head.

Objector submits that the time between the Courts decision in 2014 and the Direct Class Notice Date should be tolled. Those class members with a Date of Sale 15 years before April 22, 2014 should be entitled to full reimbursement of eligible costs at 100% recovery.

### Point 2
### The Class Members Entitled to Full Reimbursement
### Should Encompass Anyone who Purchased
### An Eligible Window Between 1991-2009

Under the current Settlement, class members who purchased a window between 1991-2009 are eligible for compensation. However, after applying the exclusionary definition for those entitled to 25% reimbursement, ONLY 33% of those that purchased windows between 1991-2009 are receiving full reimbursement. At least 2/3 of the Class will only receive a 25% reimbursement for eligible damages. This is absolutely absurd and unfathomable. How can any fair minded judge, class counsel or class representative

view this settlement as equitable when 66% of the class is being awarded a mere 25% token payment?

The class is described as anyone purchasing an eligible window between 1991-2009. But, if a class member bought their window 15 years before March 22, 2018, they are entitled to 25% of the costs to replace the window. Therefore, the cutoff date for full reimbursement is March 22, 2003. Since the class only contains those purchasing windows for the 18-year period between 1991-2009, the class members entitled to full reimbursement is whittled down to only 1/3 of those submitting claims. Those who purchased windows in the 12-year period between 1991 and March 22, 2003, only recover 25%.

Under this Settlement, Class Counsel will collect $9,000,000 in fees for 3 years of work which only represented a favorable resolution for 33% of it's clients. To say that 66% of the class has been sold out is an understatement. As the *Eubank* court noted citing *Creative Montessori Learning Centers v. Ashford Gear LLC,* 662 F.3d 913, 918 (7th Cir.2011), "...the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers — the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." Once again, under the current settlement, there are only a few winners---Class Counsel; Pella; Class Representatives and 33% of the class. Meanwhile, 66% of the class is left with a meager contribution to the repair/replacement bill. The settlement here is as unfair, scandalous and manipulative as the first one and should be disapproved.

### Point 3

### Class Counsel, Representatives Eubank, Davis, Falaschetti, Cicinelli, Josephberg & Chasin Violated Their Fiduciary Responsibility to Objector and Others and Should be Denied Incentive Awards

Rule 23(a)(4) of the Federal Rules of Civil Procedure requires that the representative parties will fairly and adequately protect the interests of the class. Moreover, Class Counsel has a fiduciary responsibility to obtain all class members entitled to compensation an amount that will fairly and justly compensate them for

damages. By selecting a cut off for full reimbursement as a Date of Sale 15 years before the Direct Class Notice, Objector's interests were not adequately represented based on the history of this case.

For Representatives Eubank, Davis, Falaschetti, Cicinelli, Josephberg & Chasin---who stand in a similar subgroup as Objector---the cut off date presents little or no financial harm. These representatives are applying for incentive awards of $25,000 thereby lessening the financial impact and allowing for full replacement of their faulty windows. Additionally, Class Counsel will receive $9,000,000 for work performed in negotiating a new settlement that represents $3,000,000 per year since the initial settlement was overturned in 2014. Meanwhile, Objector is left with a meager 25% reimbursement, which is less than that amount contemplated by the original voided settlement.

In charting the winners and losers under this settlement, Objector is certainly not scribbled into the "Win" column. In fact, Objector has been a victim from sale of the product to settlement of the claim. Objector's interests were not fairly represented by the original and current class representatives or the former and current class counsel. Objectors claim has been comprised throughout the process while class counsel and its representatives capitalize on the opportunity to maximize their attorneys' and incentive fees at the expense of the class. "From the selfish standpoint of class counsel and the Defendant, ... the optimal settlement is one modest in overall amount but heavily tilted toward attorneys' fees." While the attorneys, Defendant and the highly compensated representatives are made whole, Objector and others are left with rotting windows, mold, water seepage that damages surrounding property, a 25% pittance and a repair/replacement bill that Objector should not have to pay.

Would Representatives Eubank, Davis, Falaschetti, Cicinelli, Josephberg and Chasin be satisfied with the settlement but for their $25,000 incentive payment? If those representatives were not receiving an incentive to settle, would they remain silent rather than advance the position now being taken by Objector? Would Class Counsel or Defendant listen? Or, even care? Probably not.

8

It is important to note, as did the 7th Circuit, that the named plaintiffs are the representatives of the class. They are fiduciaries of its members. They are the ones who look out for other class members who have no say in the litigation. Their role is to monitor class counsel and participate in the process when needed. But their ultimate responsibility is to protect the class *as if* they were *not* receiving an incentive at the end. Although the incentive is meant to serve as compensation for time spent at a deposition or signing affidavits supporting the settlement (which certainly doesn't justify a $25,0000 payday), it is not meant as an incentive or hush money to support whatever class counsel and Defendant agree to and then, provide their seal of approval knowing they are made whole on disbursement day. The incentive not only dilutes their fiduciary responsibility to the class members, it also disincentives them to resist any terms that are patently unfair to others. The reality of the matter is this. Class Counsel, Class Representatives and Defendant have one goal in resolving this litigation under the terms of the current agreement. Enrich themselves, reduce their exposure, get the money as quickly as possible, construct it in a manner that nobody understands and rush to conclusion hoping process is not impeded by Objectors.

**Point 4**

**The Current Settlement Represents Only a Fraction
of Defendant's Profits Since 1991**

Although Defendant is a private corporation, financial information is reported in several reliable publications and some of Defendant's own annual reports. The class members in this case include those current or former owners of Pella ProLine casement windows used in their homes. The current settlement of approximately $27.5M is merely a fraction of the billions in sales revenues Defendant has realized since 1991 when it changed its business model and began manufacturing substandard windows.

Defendant is a private company that has been in business since the 1920's. For many years of its existence, the company focused on quality---pitching its top of the line windows to the high priced and designer end of the home building market. However, after this large margin upscale market began to diminish in the late 80's, Defendant shifted its focus to capture the growing middle market of the home improvement and

building industry. In the early 1990's, Defendant invested $35 million to reorganize the way it did business from manufacturing to distribution.

Importantly, Defendant overhauled its operations and products to more nimbly compete in the middle market. From reducing it's manufacturing operations size, offering cheaper products and speeding delivery---with compromised quality---to home center distribution outlets, Defendant streamlined its processes and improved their revenues. Defendant became known in the industry for its lean business practices which were implemented from the shop floor to the marketing and IT departments. However, as the current class action demonstrates, that focus on efficiency came with a severe reduction in quality. But, this did not change the prices since Defendant's products were still more costly than its major competitors. Thus, Defendant used its past reputation as a premium window builder to sell sub-par windows being built at much lower costs and quality. While Defendant reaped the awards of its new business model, their customers suffered with windows that leaked, became wet, rotted and damaged surrounding property caused by water penetration.

By the year 2000, it is estimated that Defendant's revenue was $878 million and $914 million in 2001. Since then, Defendant has earned over $1 billion per year. In one year alone, Pella spent $24 million advertising its products. Yet, even though Defendant has generated over $10 billion in revenue since it began making substandard windows in 1991, they now are permitted to win again with a settlement spanning the course of 27 years that represents a tiny fraction of their sales over the same span of time. This is unconscionable.

In the 2012 settlement that was overturned, Defendant touted that the value could be worth as much as $90 million. If Defendant was willing to pay $90 million 5-6 years ago, how is it now that the settlement being advanced is 1/3 that amount and denying full reimbursement to some of the class members---including Objector? It is manifestly unfair to remove Objector's claim from full reimbursement with an arbitrary cut off date when all Class members suffer from the same problem---*a substandard window purchased at a premium window price that is rotten and defective.*

Defendant's revenue over the class period is in large part due to the voluminous sales of its faulty windows. The revenue over this timeframe lacks any fair proportionality to the settlement being advanced. To mount its turnaround from a company with flat profits in the 1980's, Defendant adopted Japanese *kaizen* methods to reduce costs through quick and "imperfect" solutions to costly problems. Objector submits that Defendant is using the same methods to bring about an imperfect settlement here, that only serves to *kaizen* Objector and the benefits he is entitled too. Twenty billion v. twenty seven million. The settlement doesn't even reflect one month of sales in a year or, a year's worth of advertising expense let alone the hundreds of millions of dollars in harm caused over the course of twenty-five years of sales.

To limit Objector and the majority of the class to a 25% cap on damages is wholly unfair given they stand in no different shoes than those able to seek a full recovery. Objector has suffered damages at the hands of Defendant's calculated efforts to make more money with an inferior product produced through business methods designed to increase cost savings and efficiencies. While Defendant bloats its balance sheet to compensate stockholders, corporate officers and investors, consumers like Objector who purchased windows based on a reputation for quality are left with a 25% donation for their troubles. The Court should not allow this injustice to occur.

Based on the above and what the Class Action Complaint alleges as Pella's Fraudulent Concealment of the defective windows throughout this time period, Objector requests that no class member be excluded from full reimbursement for the faulty windows sold by Defendant. All class members should be entitled to full reimbursement for currently owned defective windows manufactured since 1991.

WHEREFORE, Objector respectfully requests that the Court deny the proposed settlement. In the alternative, Objector asks that the Court (1) deem that the time period between the voiding of the prior settlement (April 22, 2014) and the Date of Direct Notice of the current agreement be tolled until final approval; (2) modify the current settlement agreement to include full cost of reimbursement to any member of the class owning a Window with a Date of Sale that is 20 years prior to April 22, 2014; (3) request a full accounting of time and expense from the class representatives justifying a cash

award incentive payment of $25,000; (4) request detailed hourly billing records from each lawyer, paralegal, legal assistant, document reviewer and administrative staff from BOTH Class Counsel **and** defense counsel to compare (with redactions for client communications) and assure the court that a fee of $9,000,000 is justified for work performed since appointment as co-lead counsel in 2014; (5) order that this Objector statement be posted to the home page of www.pellawindowsettlement.com web site so that other similarly situated class members to Objector can review the statement and join as Objectors; (6) disclose any claims submitted by the June 20, 2018 deadline that fall into the same subclass as Objector so those uninformed claimants can be notified of the prior proceedings and the objections contained in this brief; (7) full disclosure on the settlement web site of Defendant's financial information since 1993, including revenues, expenses, profit & loss statements, corporate tax returns, budgeted reserves for the current litigation, investment income, CEO and officer compensation; full expert valuation of the company's value; (8) provide a full accounting and break down of all lawyers and firms who will share in the Class Counsel fee of $9,000,000 and the distribution of fees to those respective firms; (9) full disclosure as to whether any of the Class Counsel fees will be paid to former class counsel or the firm Freed & Weiss for work performed in the previous settlement and (10) for such other relief as this Court deems just, reasonable and fair under the circumstances.

Dated: April 2, 2018

**DONALD J. TUCKER, ESQ.**
226 San Fernando Lane
East Amherst, New York 14051
(716) 545-0107
thetuckerlawoffice@gmail.com

**Copies to:**

**Clerk of the Court**
United States District Court
Northern District of Illinois, Eastern Division
219 S. Dearborn Street
Chicago, IL 60604

**Settlement Administrator**
Eubank v. Pella Corp. Settlement
P.O. Box 404041
Louisville, KY 40233-4041

**Class Counsel**
Robert A. Clifford
Clifford Law Offices
120 N. Lasalle Street
Suite 3100
Chicago, IL 60602

**Defendant's Counsel**
John P. Mandler
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402