# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KENT EUBANK, JERRY DAVIS, RICKY FALASCHETTI, RITA CICINELLI, ROBERT JOSEPHBERG, JEFFREY ACTON, KENNETH HECHTMAN, JAMES NEIMAN, AMY CHASIN, and EDWARD RUHNKE, individually and on behalf of all others similarly situated; | ) ) ) ) ) ) ) ) | Case No. 06-cv-4481

Judge Sharon Johnson Coleman |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| PELLA CORPORATION, an Iowa corporation, and PELLA WINDOWS AND DOORS, INC., a Delaware corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This class action concerning defective windows, initiated in 2006, has had a lengthy history. After the class was certified, an initial settlement effort was reversed by the Seventh Circuit, which removed class counsel and the lead plaintiff from the case. After new counsel was appointed, the case resumed in earnest, and the parties have now presented this Court with a proposed settlement agreement, as well as multiple conflicting requests for fees, costs, and incentive awards. In light of the lengthy history of this case and the delays that the class has already suffered, the Court has deliberated carefully on the motions now before it so as to reduce the risk of further delays in the execution of the settlement in this matter. After careful consideration, the plaintiffs' amended motion for final approval [734] is granted, and the plaintiffs' unamended motion for final approval [728] is therefore stricken as moot. Theodore Frank's motion for attorney's fees and an incentive award [683], the Plaintiffs' motion for attorneys' fees, costs, and service awards [687], Ron

Pickering's motion for attorney's fees [690], and Complex Litigation Group LLC's motion for attorney's fees, costs, and expenses [684] are granted in part and denied in part.

**Background**

This class action concerns alleged defects in Pella's aluminum-clad windows that resulted in water penetration, causing premature product failure and damage to the underlying structures. In 2009, Judge Zagel certified a Rule 23(b)(3) six-state consumer protection class comprised of consumers seeking money damages for replaced Pella ProLine casement windows and a Rule 23(b)(2) nationwide class comprised of consumers whose windows had not been replaced and who sought declaratory relief. That decision was appealed, and was subsequently affirmed in 2010.

In 2012, the parties reached a settlement which Judge Zagel approved over objections. Four separate objectors or groups of objectors challenged that approval, including, as is relevant here, Schulz and Pickering. The Seventh Circuit agreed with the objectors and reversed the district court's approval of the settlement, based on a conflict of interests implicating class counsel and the lead plaintiff and on settlement terms unfavorable to the class. On remand, Judge Zagel appointed Robert Clifford and George Lang as lead class counsel and litigation of the case, which had not yet progressed beyond class certification discovery, began in earnest. Starting in 2014, the parties engaged in rigorous discovery, briefed motions to dismiss and a motion for summary judgment, and cross-filed *Daubert* motions concerning the testimony of ten expert witnesses key to the parties' positions. Trial was scheduled for October and November 2017, although the trial would only have resolved the claims of the Rule 23(b)(3) subclasses and would not have resolved the individualized questions of causation, damages, and affirmative defenses specific to the class.

In late 2016, this case was referred to Magistrate Judge M. David Weisman. Settlement talks with Judge Weisman began in March 2017 and continued for several months but were initially unsuccessful. Following summary judgment briefing and *Daubert* motion practice, the parties

recommenced their settlement efforts and, with assistance from Judge Weisman, reached the present nationwide settlement agreement. The settlement agreement in this case creates a two-part common fund, with $23,750,000 (Fund A) set aside to pay Settlement Class Members who submit claims during the claims period and an additional $2,000,000 (Fund B) set aside to pay Settlement Class Members who file claims during an extended claim period. Under the terms of the settlement, the defendants are responsible for the class notice costs and expenses, as well as for paying the plaintiffs attorney's fees, costs, and expenses up to $9,000,000 as this Court sees fit. Given the volume of claims submitted to date, Fund A is essentially nonreversionary, although Fund B can revert to Pella if unexhausted.

Fund A satisfies claims filed before the claim deadline. If eligible windows were replaced within 15 years of their purchase, claimants can recover the sum of the product cost, installation cost, finishing cost, and cost to repair other property damage. If eligible windows were replaced outside that time period, Fund A provides for a recovery of 25% of those costs. The settlement also provides for payments based on historic claim data where it is impossible to verify the portion of the submitted costs incurred for each claim component. Alternatively, if eligible windows have not yet been replaced Fund A provides for benefits to support their replacement, with cash benefits to cover the cost of installation, finishing, and damage repair. Once again, windows that were under 15 years old at the time of class notice receive full coverage, while those over 15 years old receive 25% coverage. The settlement further provides that, if the submitted claims exceed the value of Fund A, Fund A will be distributed on a pro rata basis. Fund B provides benefits for those with windows from before 2007 that did not manifest a defect before the claim deadline but later manifest damage within fifteen years of their date of sale and during the extended claims period. Those benefits are provided by Pella consistent with the benefits provided through Pella's Limited Warranty and the ProLine Service Enhancement Program.

Following the preliminary approval of this settlement, notice was circulated through direct mailings, press releases, magazine advertisements, internet advertisements, a settlement website, and a toll-free telephone number. When the plaintiffs' motion for final approval was filed, over 10,000 claims had been received and over 4,700 had been processed. At that time, it was clear that Fund A would be distributed in its entirety. As of the claims deadline, only 53 opt-outs had been received, representing only 0.007% of class members.

**Legal Standard**

A court may approve a settlement that would bind class members only if it determines after a hearing that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(3). When evaluating the fairness of a settlement, courts must consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)).

Federal courts naturally favor the settlement of class action litigation. *Isby*, 75 F.3d at 1196. The structure of class actions under Rule 23, however, gives class action lawyers an incentive to negotiate settlements that enrich themselves but give scant rewards to class members, while the burden of discovery simultaneously incentivizes defendants to agree to an early settlement that treats the class action lawyers preferably to the class. *Thorogood v. Sears, Roebuck & Co.*, 627 F.3d 289, 293 (7th Cir. 2010). It is for this reason that Courts must carefully assess the fairness of any proposed settlement, with an eye towards the relationship between the remedy offered and the parties' strategic posture.

**Discussion**

As has been previously set forth, this litigation has had a thirteen year history. At the time settlement was proposed, a number of *Daubert* motions were before the Court, each capable of substantially altering the strength of the parties' merits arguments. Even if those motions had been resolved and this case had proceeded to trial, a trial would not have been dispositive and resolution of individualized proofs and defenses would have been required, in hearings likely requiring expert testimony in themselves. The settlement, by contrast, provides immediate, measurable relief without the delay and uncertainty of further proceedings. Such resolution is especially important, in this Court's opinion, in light of the fact that some class members continue to be injured by their inability to remove or replace the products in question. In light of this urgency and the uncertainty embodied by the previously pending *Daubert* motions, this Court concludes that the defendants' settlement offer was reasonable in light of the relative strength of the plaintiffs' case.

Similarly, the proposed settlement is reasonable in light of the undeniable complexity, length, and expense of ongoing litigation. As previously noted, the resolution of the *Daubert* motions and the trial that this Court scheduled would not have resolved this case but would have been only the first step in a much longer process requiring detailed individualized findings. Completion of this arduous process would likely have required tens of millions of dollars in additional attorney fees, as well as further delaying any potential recovery without affording a commensurate benefit to the class.

The opinions of competent counsel also weigh heavily in favor of accepting this settlement. Following the Seventh Circuit's determination that the prior settlement was a result of inappropriate representation, Robert Clifford took over as the leader of the plaintiffs' litigation team, assisted by Shannon McNulty and a number of other well-known plaintiffs' lawyers. Clifford's law firm is known for litigating high-profile and high-stakes cases, and several of the lawyers assisting him

represented the class in this case prior to the ill-fated settlement attempt. The Court is confident that Clifford and the lawyers representing the class would not have accepted the proposed settlement here if they believed that a better result could be obtained through continued litigation. The lengthy negotiations held before Judge Weisman, himself an experienced litigator, are strongly suggestive of precisely the sort of arms-length negotiations that ensure fair and reasonable settlement agreements. Although a handful of objections to the settlement agreement have been raised, they do not call the fairness of the settlement into question given the size of the putative class.

The fairness of the proposed settlement is also reflected by the strength of participation. Following a robust notice program, over ten-thousand claims have been submitted. As of the claim deadline, however, only 53 opt-outs had been received, reflecting 0.007% of all settlement class members and 0.017% of all class members who were directly sent notice. This is a remarkably low opt-out rate, and is strongly indicative of the fairness of this settlement. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 680 (7th Cir. 1987) (characterizing a 1.5% opt-out rate as surprisingly small for a supposedly-unfair settlement).

A quantitative valuation of continued litigation under *Reynolds* further supports the fairness of the settlement here. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014). Pella, in a detailed accounting that this Court finds facially plausible, sets forth an expected value of continued litigation of $17,821,730. This valuation accounts for the likelihood that the plaintiffs would prevail at the common issue trials, as well as the subsequent likelihood of success for individual plaintiffs in the individualized post-trial proceedings. The settlement value here compares favorably to that calculated risk, especially when the time value of the settlement is accounted for.

*Class Certification*

Originally, the Court certified two classes: a Rule 23(b)(2) declaratory judgment class for all class members whose windows had not manifested the alleged defect or been replaced but had some wood rot and a Rule 23(b)(3) statutory consumer fraud class consisting of subclasses in California, Florida, Illinois, Michigan, New Jersey, and New York, comprised of members whose windows exhibited wood rot and were replaced. The proposed settlement class is defined far more broadly, encompassing all persons in the United States who are current or former owners of Structures containing Pella ProLine brand wood casement, awning, and/or transom windows (including 250 and 450 series) manufactured by Pella Corporation between January 1, 1991 and December 31, 2009. The proposed settlement class excludes: (1) all persons who timely opt out of the Lawsuit pursuant to the terms of the settlement agreement; (2) all persons who, individually or as a member of a class, have brought legal proceedings against the defendants (other than in this case) which were resolved before the entry of the preliminary approval order in this case; and (3) the defendants' current employees.

In order to be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives set forth in Rule 23(b). *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) requires that a proposed class meet requirements of numerosity, typicality, commonality, and adequacy of representation. *Id.* When certification is sought under Rule 23(b)(3), the proponents of the class must also show that questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members and, relatedly, that a class action is superior to other available methods of resolving the controversy. *Id.*

There can be no dispute that the numerosity requirement is satisfied. Over ten thousand claimants have submitted claims pursuant to the proposed settlement. Clearly, the class here is sufficiently large to render joinder impractical and to satisfy numerosity.

In order to establish commonality, litigants need only establish that class members share a common question of law or a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). As the Court previously found when it entered the original class certification order, common questions of fact exist as to whether Pella's ProLine windows suffered from an inherent defect, when Pella knew of the defect, and what steps Pella took to address the defect. Although the current class definition expands the scope of the class, these common questions remain and the settlement class therefore satisfies the commonality requirement.

Typicality is established if the claims and defenses of the representative parties are typical of those of the class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The typicality requirement is liberally construed, and can be satisfied when the class representative's claims arise from the same course of conduct and legal theory giving rise to the claims of the broader class. *Id.*, *Rosario*, 963 F.2d at 1018. As previously noted, the class and class representatives here derive their claims from common operative facts and legal grounds for relief, and the typicality requirement is therefore satisfied.

Finally, the Court is required to conclude that the class representatives and class counsel fairly and adequately protect the interests of the class. Following the Seventh Circuit's disqualification of prior counsel, class counsel were selected by this Court based on their qualification and experience.[1] Class counsel has affirmed the wisdom of that selection through declarations setting forth, in detail, their preparations to take this case to trial, the settlement process, and the reasons that they support the current settlement. The class representatives, moreover, have

---

[1] The counsel the Court selected in that order were Robert A. Clifford, George A. Lang, Shannon M. McNulty, John A. Yanchunis, Mario W. Valladares, Joel R. Rhine, and Edward R. Moor.

demonstrated their understanding of the facts underlying their claims and their active engagement in this matter, as demonstrated by the declarations that they have filed. [672-10]. Several of the lawyers and class representatives in this case, moreover, have been involved in this case since the outset and took an active role in opposing the first settlement attempt, further demonstrating their active involvement and commitment to serving the best interests of the class.

In light of the considerations set forth above, this Court finds that the elements of Rule 23(a) have been satisfied. The requirements of Rule 23(b)(3) have also plainly been met. Here, common questions of law and fact regarding the alleged defect in Pella's products predominate over individualized factual questions concerning purchase date, installation, and minor product variations. A class action, moreover, is clearly preferable to litigating the classes' numerous claims through individual cases or consolidated proceedings in light of the efficiencies that the class action mechanism offers. The Court accordingly concludes that certification of the settlement class is warranted.

*Objections*

The Court turns its attention to the multiple pro se objections to the settlement in this case.[2] Objectors Shifrin and Theissen complain that the claims process in this case is too complicated. Shifrin, in particular, complains that the claims process requires class members to provide proof of the cost of previously executed repairs, to provide accurate estimates of repair costs, and to provide information from the windows, which may be inaccessible. Given the nature of this litigation and the dollar values at issue, however, it is not unreasonable for the parties to ensure that those claiming settlement funds have the contested windows or to require evidentiary support for damages claims. Although the objectors complain of the specificity required, they identify no alternative means by which confirmation of a putative class member's claims could occur. The Court,

---

[2] An objection was also filed by Donald Tucker in this matter. That objection was subsequently voluntarily withdrawn. The Court accordingly gives it, and the arguments contained in the filing withdrawing it, no consideration.

moreover, notes that these proofs are no more burdensome than the proofs that these objectors would be required to submit if they elected to take their claims to trial.

Objectors Brasley and Bossier contend that other Pella windows should be a part of the settlement class because they share a defect common to the Proline windows at issue. The Brasleys seek to have all single and double-hung Pella windows included in the settlement, and Bossier seeks to have custom-built Pella windows included. These objectors, however, have pointed to no evidence establishing that the windows in question are subject to the same defects as those subject to the class action settlement. Indeed, they have not even identified whether the windows they want to add to this settlement are from the same product line as those at issue here. The windows that these objectors seek to place at issue were not a part of the underlying litigation or trial preparation, and it is therefore unsurprising that they are not a part of the resulting settlement. The Court further notes that these objectors have had the opportunity to pursue independent claims based on the products in question—which have never been within the scope of this lawsuit—but have failed to do so. The Court accordingly sees no flaws in the scope of the settlement based on Brasley and Bossier's objections.

Objectors Andrews, Lee, and Carnivale complain that the settlement is unfair because of the delay in settling this case. There is, however, no legal basis that this Court is aware of that would allow it to consider the parties zealous litigation of this matter prior to settlement in assessing whether the settlement now before it is fair and reasonable. To the extent this case was unreasonably delayed by the prior failed settlement effort, that delay was not the fault of class counsel here, and the Court does not see how rejecting this settlement would rectify or mitigate that delay. The Court, moreover, notes that the delay these objectors complain of will only be magnified if this settlement is rejected given the extensive motion practice, common claims trials, and individualized adjudications that would be required before any award could be made.

Objector Theissen, who was previously mentioned, also conclusory objects "because the lawyers take a larger percent than they should." As the Court will subsequently discuss, however, the attorney fee award provided for by the settlement agreement is not unreasonable in light of the value of the settlement and the duration and complexity of this case.

The remaining objections all concern the settlement's 25% prorating of claims for windows purchased over 15 years ago and the pro-rata distribution of the funds set aside to pay those claims.[3] The parties, however, have convincingly explained why windows over fifteen years old are treated differently, including that Pella's windows had a limited expected service life and that as a result full replacement of windows nearing the end of their service life would not reflect the actual value of the windows. The Court, moreover, is highly cognizant of the fact that "[t]he essence of settlement is compromise." *EEOC v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985). The pro rata distribution of funds was necessary so that a firm value could be placed on the settlement, an obvious precursor to reaching a settlement agreement. Similarly, the diminution of compensation for aged windows reflects a necessary balancing between the strength of conflicting damages claims, evidentiary issues which would hinder claims for products over fifteen years old, and the parties' desire to reach a fair and just resolution that would resolve this matter.

The Court accordingly concludes that class certification of the settlement class is appropriate and that the settlement before it is fair, just, and reasonable in light of the history of this case, the strength of the class' claims, and the potential value of this litigation.

*Attorney's Fees, Costs, Expenses, and Service Awards*

---

[3] The Hockemeier objectors add an extra element to this argument, asserting that the 25% prorating is especially unfair in light of the costs incurred rebuilding their house after leaking Proline windows irreparably damaged their stucco walls. On the parties' representation, however, Proline windows were not designated or marketed for use in stucco or floating walls, and it is therefore uncertain whether the Hockemeiers would be entitled to any recovery for the resulting damages outside the context of this settlement.

The Court turns its attention to the multiple requests for attorney's fees and costs pending before it. Pursuant to the settlement agreement, the defendants have agreed to pay $9 million in attorney's fees and costs separately from the settlement funds being paid to the class, which are to be allocated by this Court as it sees fit.

The Court initially turns its attention to recently raised issues concerning serial class action objector Christopher Bandas and the question of whether this Court must strike Michael Schulz' fee request. Bandas first appeared pro hac vice in this case in 2013 on behalf of Schulz, who objected to the initial settlement in this action. When the district court denied that objection, Bandas engaged Theodore Frank to handle the appeal. Frank, along with other objectors, ultimately prevailed. Bandas subsequently reappeared in this action in June 2018, appearing through local counsel and without leave to proceed pro hac vice on behalf of yet another objector, Donald Tucker.

On January 17, 2019, Judge Pallmeyer entered an agreed final judgment order against Bandas in another matter which provided, in pertinent part, that Bandas and his law firm, "having consulted with their clients, shall immediately and unconditionally withdraw objections and filings related thereto any and all objections now pending in Illinois state and federal courts . . . and . . . shall accept no compensation of any kind related to those matters." *Edelson PC v. The Bandas Law Firm PC et al*, no. 16-cv-11057, dkt. 178 (N.D. Ill. Jan. 17, 2019) (Pallmeyer, J.).

In light of this order, there can be no dispute that Bandas must withdraw "any filings related" to objections "now pending" in this Court, and, indeed, Tucker has already withdrawn his objections to the current settlement. The plaintiffs and Objector Pickering, however, also contend that Judge Pallmeyer's order encompasses Schulz' fee petition on behalf of Theodore Frank. Schulz' objection, however, is not "now pending" in a federal court; it was resolved years ago when the Seventh Circuit reversed final approval of the settlement in this action. Bandas, moreover, lacks the authority to "withdraw" Schulz's fee petition, a document that he did not file and is not a party to.

After close review, the Court does not read Judge Pallmeyer's order as having any direct effect on Schulz, who was not subject to the proceedings giving rise to the order. There is nothing before this Court to suggest that Bandas' misconduct, which concerned the unauthorized practice of law, is attributable to Frank, and this Court can see no reason why Frank, a well-known and well-respected class action lawyer, should be subject to punishment based solely on his representation of a common client. The Court accordingly declines to hold that Schulz' motion for attorney's fees on Frank's behalf must be withdrawn.

Within this Circuit, there are two acceptable methods of calculating attorney's fees in class action cases. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). Under the lodestar method, the Court determines the reasonable amount of hours expended by counsel and counsel's reasonable hourly rate. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). The Court then considers whether a multiplier is necessary in light of the risk that counsel assumed in bringing this kind of case. *Id.* Under the percentage method, the Court fixes attorney's fees as a percentage of the total recovery paid to the class. *See generally Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 773–74 (11th Cir. 1991).

As an initial matter, the Court notes that the settlement in this case sets aside $9 million for attorney's fees, effectively capping the available funds which those entitled to recover fees for their efforts must share. That limit, although brought about by the parties' agreement resolving this case, reflects an appropriate percentage of the total possible recovery here and therefore would likely have been the approximate upper limit of recovery that this Court would have allowed. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (affirming a fee award amounting to roughly 30% of the total recovery). Notwithstanding that limit, however, counsel are collectively seeking a total of approximately $14 million in fees and costs. It will surprise none to learn that such an award, exceeding half of the maximum potential settlement value in this case, had no chance of being

approved by this Court. Given the lengthy course of this complicated case, the Court is unsurprised that the value sought for counsels' collective efforts exceeds the compensation that would be appropriately due. Nevertheless, the Court is now placed in the wholly unpleasant position of weighing competing claims to the limited available funds so that counsel may be reasonably compensated for their efforts.

The Court turns first to the fee request of Complex Litigation Group. Complex Litigation Group was the original class counsel in this case. As class counsel, CLG obtained the favorable class certification ruling, defended that ruling on appeal, and then negotiated the first attempted settlement in this case. Although current class counsel disputes the impact of CLG's efforts on the present status of this case, there can be no dispute that CLG spent substantial time preparing and bringing this case prior to their removal. CLG has provided no specific evidence of its hours, but a summary exhibit establishes that it billed a total of 7,312.20 hours on this matter between its inception and January 18, 2011. CLG accordingly seeks to recover a lodestar value of $3,420,589.50, as well as $174,420.56 in costs.

CLG, however, was removed as class counsel by the Seventh Circuit based on a "fatal conflict of interests" implicating the lead plaintiff and class counsel and a settlement that "flunked the 'fairness' standard by the one-sidedness of its terms." *Eubank v. Pella Corp.*, 753 F.3d 718, 729 (7th Cir. 2014). Acknowledging the impact of this disqualification, CLG has limited its claimed attorney's fees to the period before the settlement negotiations began and has omitted the substantial hours billed by the conflicted attorneys.

Despite attempting to account for the conflict of interests the Seventh Circuit recognized, CLG has nonetheless persisted in challenging the adequacy of the Seventh Circuit's ruling and arguing that the long-rejected settlement it negotiated was not unreasonable. This Court declines CLG's invitation to relitigate the findings of the Seventh Circuit regarding a settlement which is not

presently before this Court. Nor does this Court believe that CLG's arguments or references to the absence of punitive actions by the ARDC in any way lessen the significance of the Seventh Circuit's ruling and the underlying conduct that it describes. Although CLG does not seek to recover for the time billed by the two partners who were directly related to the lead class representative, CLG has offered nothing to suggest how long that conflict existed, whether the attorneys' now seeking to recover for their time knew of that conflict (presumably they did), or the extent to which that conflict might have tainted their representation. Of critical importance to this Court, there is nothing presently before it to suggest that CLG made any effort to mitigate that conflict or to limit its detrimental impact on the class.

CLG also fails to acknowledge the substantial harm that their ill-begotten settlement has caused to the class in this case. That settlement effort, the subsequent litigation overturning it, and the ultimate replacement of class counsel delayed this case for over four years. There can be no reasonable dispute that this delay substantially harmed the class, both by delaying the repair of defective windows and by causing further loss of the evidence necessary to establish the class members' claims. The Eighth Circuit has expressly held that a district court does not abuse its discretion in denying attorney's fees to a firm that was removed as class counsel due to a conflict of interest, even if the firm's efforts conferred some benefit on the class. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999). The Ninth Circuit, after lengthy review of the applicable legal considerations, has held the same, noting that denial of fees is especially warranted where counsel was capable of perceiving the conflict and where the conflict was not readily disclosed to the district court. *Rodriguez v. Disner*, 688 F.3d 645, 654–66 (9th Cir. 2012). Illinois law similarly has recognized that conflicted attorneys cannot recover fees, even if they are ultimately successful in the underlying litigation. *In re Marriage of Newton,* 2011 IL App (1st) 090683, ¶47, 955 N.E.2d 572 (2011).

Here, there is nothing before this Court to establish the extent of the conflict that gave rise to CLG's removal although it appears to have been readily apparent given the relationship between the lead plaintiff and class counsel and the unorthodox inclusion of a $2 million advance of attorney's fees in the settlement. CLG has offered neither evidence nor argument to establish that any aspect of its representation was untainted by the "scandalous" conflict that the Seventh Circuit recognized. *See Rodriguez*, 688 F.3d at 654 (quoting *Image Technical Service, Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1358 (9th Cir. 1998)) (reasoning that "payment is not due for services not properly performed").

The Court, moreover, must be cognizant of the limited funds available to compensate counsel in this case. It would be inequitable for this Court to deprive deserving counsel of compensation for time spent working on behalf of the class in order to reward counsel who directly harmed the interests of the class through conduct that they must have realized was not proper. Although CLG clearly dedicated time and energy to this case, hours billed do not themselves justify attorney's fees; the Court must be cognizant of counsel's broader impact on the litigation and on the interests of the class. The Court, moreover, notes concerning flaws in CLG's fee request, including the fact that CLG's lodestar calculation is based on billing rates that were not in use during the time period that it seeks to recover attorney's fees for. Although the Court declines to award CLG fees, the Court does grant CLG its costs of $174,420.56 in this matter in order to reimburse those expenses that it incurred on behalf of the Class.

Theodore Frank and John Pentz, both of whom represented objectors during the appeal from the first class action settlement, also seek to recover their attorney's fees and costs. There can be no dispute that the multiple objectors in this case did the class a valuable service on appeal. Although Pentz did not argue the appeal or file a reply brief, his briefing was considered by the Seventh Circuit and contributed to the Seventh Circuit's opinion. Frank, conversely, briefed the

appeal (albeit under Bandas' signature) and played a key role at the oral argument in this case. It is well recognized that objectors who add value to litigation through their successful objections are entitled to recover a substantial share of overall attorney's fees. Seventh Circuit caselaw has previously placed such recoveries around 20% of the total attorney's fees. *In re Trans Union Corp. Privacy Litigation*, 629 F.3d 741, 748 (7th Cir. 2011). Frank proposes that the objectors receive a $3 million award, to be split evenly. Frank, however, concedes that his lodestar is only $161,125.00.[4] Pentz requests an award of at least $400,000, although his evidence only supports a lodestar of $48,000.[5] The remaining objectors have not requested any attorney's fees in this matter, a fact which this Court takes into consideration when assessing what portion of the total fees is owed to two of the four objectors who played a role in this case.

The Court is cognizant of the need to reward objectors, both as compensation for their labors and to incentivize future representations of objectors despite financial disincentives to do so. Here, there can be no dispute that the objectors added value to the settlement of this case and prevented an inequitable outcome. Unlike in other cases, however, here class counsel had to perform substantial work after remand in order to realize any value from those objections. Without discovery, amendments, and briefing the objections would have been meaningless and would not have improved the prospective outcome for the class. Conversely, without the objections class counsel would never have had the opportunity to pursue the monetary value it has now gained for the class.

The $3 million fee award that Frank requests on the objectors' behalf reflects a lodestar multiplier of 9.3for Frank and 31.25 for Pentz. The latter award is patently unreasonable, and the former award, although perhaps reasonable under different circumstances, is out of synch with the

---

[4] This lodestar does not reflect any work that Bandas performed in the district court.
[5] Pentz' declaration attached to his fee request established that he devoted 80 hours to the objectors, at an hourly rate of $600/hour. Pentz also claimed that his co-counsel dedicated 20 hours to the case but failed to offer any evidence establishing co-counsel's reasonably hourly rate.

practicalities of the case before this Court. The Court believes that a multiplier of six— which would provide Franks $966,750 and Pentz $280,000 in attorney's fees—is warranted. Although objector awards are not ordinarily calculated based on lodestar value, here the use of that method is warranted by the objectors' differing levels of activity on appeal, which bears on their impact on the ultimate outcome of this case. Although Frank urges this Court to disregard the objector's lodestar values, he also argues that Pentz contributed nothing on appeal and should therefore receive no award. This Court, however, did not decide the objectors appeal and therefore cannot conclusively determine which brief or argument was decisive in or contributed to the Seventh Circuit's decision. As the Court cannot fairly assess the respective value of Pentz' and Frank's contributions, the use of their lodestar values as a baseline provides the best metric for their entitlement to compensation. The multiplier that this Court has implemented is eminently appropriate in light of the risks that counsel for objectors take on and the extended delay in payment present here. The Court further notes that the fee award being provided to Pentz and Frank collectively in this case is equivalent to half of the award that all of the objectors would be entitled to under the calculation method applied in *Transunion*.

The Court accordingly turns to class counsel's fee request. Class counsel calculates a lodestar value of $8,051,377.50 and report fees and costs in the amount of $1,109,414.79.[6] In light of the complexity of this case and quality of work performed, class counsel proposes a lodestar multiplier of 1.9, for a total attorney's fees value of $9 million. This argument, however, is moot, since the attorney's fees and costs that class counsel seeks to recover already exceed the available $9 million set aside for this purpose, a limitation consistent with caselaw setting reasonable limits on

---

[6] Shulz objects to this lodestar calculation based on the lack of evidentiary support for the hours claimed, ambiguities concerning the hours billed by Lang and Yanchunis, and inefficient use of labor. In light of Schulz' concession that class counsel are entitled to the majority of the common-benefit fund fees and the fact that class counsel are already receiving substantially less than their calculated lodestar, the Court declines to address those arguments. Any marginal overpayment resulting from these identified deficiencies would constitute a well-earned multiplier of the fee award that would be justified by the risks commensurate in class counsels' representation.

what fees may be recovered. As previously set forth, moreover, the Court has awarded attorney's fees in the amount of $1,246,750 to counsel for the objectors and $174,420.56 in costs to CLG. Although the Court has no reason to question class counsel's efforts or the quality of the representation that it provided, this Court is therefore compelled to limit class counsel's award of attorney's fees and costs to $1,109,414.97 in costs and $6,469,414.47 in attorney's fees, which amounts to about 85% of the total fee award in this case.

Finally, the Court turns to the question of service awards. Schulz moves for a service award of $2,000 in recognition of his objection to the now-overturned settlement in this case.[7] Although class counsel attempts to paint Schulz as a serial objector undeserving of such an award, they have offered no specific evidence to support that claim. Even if he were a serial objector, moreover, class counsel cannot credibly claim that the objectors in this case, Schulz included, did not add value to this case or benefit them. The Court accordingly concludes that this extremely limited and reasonable incentive payment is justified. *See generally In re Southwest Airlines Voucher Litigation*, 898 F.3d 740, 745 (7th Cir. 2018) (acknowledging the need to incentivize objectors through compensation for their efforts). Class counsel, in turn, ask that each of the named plaintiffs receive a service award of $25,000, to be paid out of Fund A.[8] Incentive awards compensating class representatives for work done on behalf of the class are appropriate if such an award is necessary to induce individuals to accept the responsibilities of being a named representative. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). In deciding whether such an award is necessary, courts consider the plaintiff's actions to protect the interests of the class, the degree to which the class has benefited from those actions, and the time that has been expended in pursuit of the litigation. *Id.*

---

[7] Ron Pickering and the other objectors did not request similar service awards.
[8] The named plaintiffs are identified by the settlement agreement as Kent Eubank, Jerry Davis, Ricky Falaschetti, Rita Cicinelli, Robert Josephberg, Jeffrey Acton, Kenneth Hechtman, James Neiman, Amy Chasin, and Edward Ruhnke.

Class counsel argues, and this Court agrees, that the work of these named plaintiffs has exceeded the expectations of the ordinary case. The named plaintiffs have been subjected to extensive written and oral discovery, have repeatedly allowed prolonged inspections of their homes, and have actively assisted counsel in making strategic decisions regarding this case. In light of this consistent, at times inconvenient, but ultimately necessary participation in this action, the Court agrees that the named plaintiffs are entitled to incentive payments. In light of the volume of claims submitted, however, this Court cannot justify awarding over $250,000 in incentive payments, despite the fact that such payments might well be warranted. The Court accordingly awards the named plaintiffs incentive payments of $10,000 each in recognition of their service to the class.

**Conclusion**

For the foregoing reasons, the Court grants the plaintiffs' amended motion for final approval [734] of the settlement and therefore strikes the plaintiffs' unamended motion for final approval [728] as moot. Theodore Frank's motion for attorney's fees and an incentive award [683] is granted in part and denied in part; the Court awards Frank $966,250 in attorney's fees and awards objector Schulz a $2,000 incentive payment, to be paid from Fund A. John Pentz's motion for attorney's fees [690] is granted in part and denied in part; the Court awards Pentz $280,000 in attorney's fees. Complex Litigation Group's motion for attorney's fees, costs, and expenses [684] is granted in part and denied in part; the Court awards CLG costs in the amount of $174,420.56. Class counsel's motion for attorney's fees, costs, and service awards [687] is granted in part and denied in part; the Court awards class counsel $1,109,414.97 in costs and $6,469,414.47 in attorney's fees. The Court further awards the named plaintiffs $10,000 incentive payments, to be paid from Fund A. All pending matters having been concluded, the Court enters the accompanying Final Approval Order.

SO ORDERED.

Sharon Johnson Coleman
United States District Court Judge

DATED:  3/15/2019